No. 23-50224

# In the United States Court of Appeals for the Fifth Circuit

———————————

Leila Green Little; Jeanne Puryear; Kathy Kennedy; Rebecca Jones; Richard Day; Cynthia Waring; Diane Moster,

*Plaintiffs-Appellees*,

v.

Llano County; Ron Cunningham, in his official capacity as Llano County Judge; Jerry Don Moss, in his official capacity as Llano County Commissioner; Peter Jones, in his official capacity as Llano County Commissioner; Mike Sandoval, in his official capacity as Llano County Commissioner; Linda Raschke, in her official capacity as Llano County Commissioner; Amber Milum, in her official capacity as Llano County Library System Director; Bonnie Wallace, in her official capacity as Llano County Library Board Member; Rochelle Wells, in her official capacity as Llano County Library Board Member; Rhoda Schneider, in her official capacity as Llano County Library Board Member; Gay Baskin, in her official capacity as Llano County Library Board Member,

*Defendants-Appellants*.

———————————

On Appeal from the United States District Court
for the Western District of Texas
Case No. 1:22-cv-424-RP

———————————

## Motion For Stay Of Preliminary Injunction Pending Appeal And Motion To Expedite Appeal

———————————

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Defendants-Appellants*

# Certificate of Interested Persons

Counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiffs | Plaintiffs' Counsel |
|---|---|
| • Leila Green Little<br>• Jeanne Puryear<br>• Kathy Kennedy<br>• Rebecca Jones<br>• Richard Day<br>• Cynthia Waring<br>• Diane Moster | Ellen V. Leonida<br>Matthew Borden<br>J. Noah Hagey<br>Max Bernstein<br>Ellis E. Herington<br>BraunHagey & Borden LLP<br><br>Ryan A. Botkin<br>Katherine P. Chiarello<br>María Amelia Calaf<br>Wittliff \| Cutter PLLC |

| Defendants | Defendants' Counsel |
|---|---|
| • Llano County,<br>• Ron Cunningham<br>• Jerry Don Moss<br>• Peter Jones<br>• Mike Sandoval<br>• Linda Raschke<br>• Amber Milum<br>• Bonnie Wallace<br>• Rochelle Wells<br>• Rhonda Schneider<br>• Gay Baskin | Jonathan F. Mitchell<br>Mitchell Law PLLC<br><br>Dwain K. Rogers<br>Matthew L. Rienstra<br>Llano County Attorney's Office |

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
*Counsel for Defendants-Appellants*

i

# TABLE OF CONTENTS

Certificate of interested persons ................................................................. i

Table of contents ..................................................................................... ii

Table of authorities ................................................................................ iii

Facts and procedural history .................................................................... 2

   I.  The Court should stay the preliminary injunction pending appeal ................ 6

     A.  The appellants are likely to succeed on the merits of their appeal ............ 6

     B.  The appellants will suffer irreparable harm absent a stay ...................... 15

     C.  A stay will not harm the plaintiffs or any other party interested in this litigation ................................................................................ 16

     D.  A stay of the preliminary injunction is in the public interest .................. 17

   II.  The Court should expedite the appeal ......................................... 18

Conclusion ........................................................................................... 19

Certificate of conference ......................................................................... 20

Certificate of service .............................................................................. 21

Certificate of compliance ........................................................................ 22

Certificate of electronic compliance ......................................................... 23

# T<small>ABLE OF</small> A<small>UTHORITIES</small>

**Cases**

*Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017)..........................................14

*Board of Education v. Pico*, 457 U.S. 853 (1982) ..................................10, 11

*Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995)........10, 11

*Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005) .............................. 5, 11, 15

DaimlerChrysler Corp. v. Cuno, 547 U.S. 332 (2006)............................................14

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ...................................................6

*Jones v. District of Columbia*, 177 F. Supp. 3d 542 (D.D.C. 2016) ...........................9

*Louisiana World Exposition, Inc. v. Logue*, 746 F.2d 1033 (5th Cir. 1984) ...............18

*Texas Medical Providers Performing Abortion Services v. Lakey*, 667 F.3d 570 (5th Cir. 2012) ...................................................................7

*United States v. American Library Ass'n Inc.*, 539 U.S. 194 (2003) ...........5, 11, 15, 16

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669 (1973) ...................................................... 8

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) .................................7

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) .......................6, 8, 9

**Rules**

Fed. R. App. P. 8(a)(1) ...........................................................................1

A public library must continually "weed" books from its shelves to make room for new arrivals and ensure that its collection remains up-to-date and responsive to the needs of the community. This is standard practice in the library profession, and even small libraries weed and permanently remove thousands of books each year from their shelves and catalogs. From February 1, 2021, to March 18, 2022, the Llano County Library System weeded more than 7,000 books, which were sold or donated and removed from circulation. *See* Milum Decl. ¶ 6 (attached as Exhibit 3).

The plaintiffs in this case disagree with the Llano County head librarian's decision to weed 17 of the thousands of books that she weeded in 2021, and they have falsely accused her of weeding those 17 books because she disapproves of their content. On March 30, 2023, the district court granted a preliminary injunction and ruled that the First Amendment prohibits a public library from engaging in "content discrimination" or "viewpoint discrimination" when weeding books. *See* Order, ECF No. 133, at 17 (App. 511). Then it ordered the defendants to return to the shelves *every* single book that had *ever* been removed because of viewpoint or content, in addition to the 17 books that the plaintiffs had sued over, and enjoined the defendants from removing *any* book from the library catalog for *any* reason during the pendency of the litigation. *See id.* at 25–26 (App. 519–520).

The defendants have appealed the preliminary-injunction order and respectfully request a stay pending appeal. *See* Fed. R. App. P. 8(a)(1). On April 11, 2023, the defendants moved for a stay in the district court. Their motion acknowledged that the district court had already rejected most of their arguments, with the expectation that the district court would swiftly deny the motion and allow them to request a

stay from this Court. When that did not happen, the defendants moved for expedited consideration on April 19, 2023, and asked the district court to summarily deny the motion for stay pending appeal if it remained unpersuaded by the defendants' arguments. The district court denied the motion to expedite the next day "for lack of good cause shown." Text Order (attached as Exhibit 4). The district court still has not ruled on the motion for stay pending appeal, so it has failed to afford the relief requested within the meaning of Rule 8(a)(2)(A)(ii).

The defendants-appellants respectfully request a stay pending appeal from this Court. The defendants-appellants also ask the Court to expedite this appeal because trial is set for October 16, 2023, and it will be difficult for the Court to resolve this appeal before final judgment unless it expedites consideration.

## Facts And Procedural History

On April 25, 2022, seven patrons of Llano Library sued Llano County, Amber Milum (the library director), the county judge, every county commissioner, and several volunteer members of the library advisory board. *See* Complaint, ECF No. 1 (App. 001–031). The complaint alleged that the defendants were violating the plaintiffs' constitutional "right to access and receive information" by weeding certain books from Llano Library, and it accused the defendants of weeding books because they "subjectively disliked the content." *Id.* at ¶ 143 (App. 028).[1] On May 9, 2022, the plaintiffs moved for a preliminary injunction that would compel the return of 17

---

1.   The complaint also asserted a due-process claim, but the district court did not grant preliminary relief on that claim and it is not an issue in the appeal.

previously weeded books to the library shelves. *See* Mot. for Prelim. Inj., ECF No. 22 (App. 34–275).

In response to the lawsuit, the Llano Library accepted a donation of the 17 disputed books and made them available for the plaintiffs to read and check out through the library's "in-house checkout" system.[2] The in-house checkout system contains books that are donated or loaned to Llano Library from staff members or other friends of the library.[3] These in-house books are not placed on the shelves or in the catalog and do not have bar codes, but are nonetheless made available for library patrons to read and check out.

The donation and availability of the 17 disputed books through the in-house checkout system does not moot the plaintiffs' First Amendment claims, as the plaintiffs still have Article III injury from the fact that the 17 books are no longer on the library's shelves. But it does eliminate any possible violation of the plaintiffs' supposed First Amendment "right to access and receive information," as each plaintiff is aware of the in-house checkout system and the availability of the disputed books,[4] and the plaintiffs have the same ability to check out the disputed books from Llano Library that they had before the books were weeded.

---

2. *See* First Milum Decl., ECF No. 49-1, at ¶¶ 10–11 (App. 283–285); Second Milum Decl., ECF No. 53, at ¶¶ 3–4 (App. 289–290); Third Milum Decl., ECF No. 100-5, at ¶¶ 5–8 (App. 344); Stipulation of Undisputed Facts, ECF No. 126, at ¶¶ 1–7 (App. 491–493).

3. *See* First Milum Decl., ECF No. 49-1, at ¶¶ 10 (App. 283).

4. *See* Stipulation of Undisputed Facts, ECF No. 126, at ¶¶ 1–7 (App. 491–493).

The plaintiffs refused to accept this arrangement and demanded a preliminary injunction that would return each of the 17 disputed books to the library shelves—even though they could not show "irreparable harm" when the 17 books remained available for them to check out at Llano Library. A two-day hearing on the motion for preliminary injunction was held in October of 2022. Although the plaintiffs had alleged a conspiracy among the defendants to purge the library of all books containing nudity, LGBTQ content, or critical race theory, the evidence showed that Amber Milum alone made the decision to "weed" each of the 17 disputed books.[5] Milum also declared under oath that her decisions to weed those 17 books had nothing to do with their content or viewpoints, and she weeded those books solely because she determined that they met the criteria for weeding that librarians apply when deciding whether a book should remain on the shelves.[6] The evidence also showed

---

5. *See* Hr'g Tr. Vol. 1 at 130:23–131:3 ("Q. Were any of your ultimate decisions to weed any book from the library shelves influenced in any way by anyone on the commissioners' court? A. No. Q. Were they influenced by anyone on the library advisory board? A. No."); *id.* at 90:16–17, 92:23–93:1, 97:9–12, 98:6–8, 98:24–99:3, 100:3–5, 101:13–19, 103:10–13; Milum Decl., ECF No. 49-1, at ¶ 16 (App. 286) ("I was never instructed or pressured by the County Judge or any of the County Commissioners to weed or otherwise permanently remove any books from the Llano County libraries. I was also never instructed to remove any books from the libraries by the Llano County Advisory Board."); Third Milum Decl. ¶ 15, ECF No. 100-5, (App. 346) ("I alone made the decisions to weed the 17 disputed books in this case. No other defendant in this case, including Bonnie Wallace, Rochelle Wells, Rhonda Schneider, Jerry Don Moss, or Ron Cunningham, has ever weeded a book from Llano library or directed me to weed a book. Nor has any of these individuals pressured or attempted to pressure me to weed any book from the library.").

6. *See* Milum Decl., ECF No. 49-1, at ¶ 15 (App. 346) ("I did not consider the content of any of the books I weeded when I made the decision to weed them. I

that library weeding manuals *require* librarians to consider the content and viewpoints of books when making weeding decisions,[7] even though the plaintiffs insisted that the First Amendment categorically prohibits public librarians from engaging in "content discrimination" or "viewpoint discrimination." *But see Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005) ("'Public library staffs *necessarily consider content* in making collection decisions and enjoy broad discretion in making them.'" (emphasis added) (quoting *United States v. American Library Ass'n Inc.*, 539 U.S. 194, 205 (2003) (plurality opinion of Rehnquist, C.J.))).

On March 30, 2023, the district court granted the motion for preliminary injunction and ruled that the First Amendment prohibits a public library from engaging in "content discrimination" or "viewpoint discrimination" when weeding books. *See* Order, ECF No. 133, at 17 (App. 511). Then it issued a preliminary injunction that goes far beyond what the plaintiffs had requested and awards relief that the plaintiffs do not even have Article III standing to pursue. The plaintiffs had sought a preliminary injunction that would order the defendants to return to the library shelves only the 17 disputed books. *See* Proposed Order, ECF No. 76-1 (App. 292–294). The district court's order, however, demands the return of "*all* print books that were removed because of their viewpoint and content, *including*" the 17

---

also did not consider any of the viewpoints expressed in any of the books I weeded. I weeded the books based on the objective criteria I always use in determining which books to weed."); *id.* at ¶ 17 (App. 346–347) ("No book was removed based on its content or viewpoint during this process.").

7. *See* Milum Decl. ¶ 8 (attached as Exhibit 3); CREW Manual, ECF No. 117-2 (App. 381–488).

books at issue in this litigation. *See* Order, ECF No. 133, at 25 (App. 519) (emphasis added). The Court's order also enjoins the defendants from "removing *any* books from the Llano County Library Service's catalog for *any* reason during the pendency of this action." Order, ECF No. 133, at 26 (App. 520) (emphasis added). This, too, goes beyond what the plaintiffs asked for, as they had requested a more limited injunction that would prohibit removal of books absent documentation of "(a) the individual who decided to remove or conceal the book and (b) the reason or reasons for that removal or concealment." Proposed Order, ECF No. 76-1 (App. 294).

# I.   The  Court  Should  Stay  The  Preliminary Injunction Pending Appeal

There are four factors to consider when deciding whether to stay an order pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Each of these factors favors a stay.

## A.   The Appellants Are Likely to Succeed on the Merits of Their Appeal

To obtain a preliminary injunction, the plaintiffs needed to make a "clear showing" of: (1) Likely success on the merits; (2) A likelihood that the plaintiffs will suffer irreparable harm absent preliminary relief; (3) That the balance of equities tips in the plaintiffs' favor; and (4) That a preliminary injunction is in the public interest. *See Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). A prelim-

inary injunction is "an extraordinary remedy," and it may not be granted unless the plaintiffs "*clearly carried* the burden of persuasion on *all four requirements*." *Texas Medical Providers Performing Abortion Services v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012); *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (same).

The preliminary injunction is unlikely to survive appellate review for numerous reasons. First, none of the plaintiffs are suffering any violation of their "right to access and receive information" because every one of the 17 disputed books remains available for them to check out through the Llano Library's in-house checkout system. *See* Stipulation, ECF No. 126, at ¶¶ 3–7 (App. 491–493). Second, the plaintiffs cannot make *any* showing of irreparable harm when they can check out each of the 17 disputed books from Llano Library without a preliminary injunction. *See id.* Third, the district court erred in holding that the First Amendment forbids "viewpoint discrimination" or "content discrimination" in public-library weeding decisions, as content and viewpoint consideration are both inevitable and permissible when weeding books. Fourth, even if one assumes that the Constitution prohibits content- or viewpoint-based weeding decisions, the plaintiffs failed to make a "clear showing" that Amber Milum engaged in viewpoint or content discrimination when weeding the 17 disputed books. Finally, the district court's injunction is overbroad and awards relief that the plaintiffs did not request and do not have standing to pursue.

### 1.    The In-House Checkout System Does Not Violate The Plaintiffs' First Amendment Right To Access Information

The plaintiffs' First Amendment claims cannot get off the ground when each of the 17 disputed books remains available for them to check out through Llano Library's in-house system. The district court's opinion does not explain how the defendants can be violating the plaintiffs' "right to access and receive information" when each plaintiff remains able to check out every one of the disputed books at Llano Library. The district court correctly held that the defendants have not *mooted* the plaintiffs' claims by offering the disputed books through the in-house checkout system, as the plaintiffs remain "injured" by the continued absence of those books from the library shelves. *See* Order, ECF No. 133, at 12–13 (App. 506–507); *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) ("[A]n identifiable trifle is enough for standing" (citation and internal quotation marks omitted)). But the plaintiffs *still* must show that their First Amendment rights are being violated before they can obtain a preliminary injunction. And the district court does not attempt to explain how the in-house checkout system violates the plaintiffs' "right to access and receive information" when every one of the 17 disputed books remains available for the plaintiffs to read and check out.

### 2.    The Plaintiffs Failed To Establish "Irreparable Harm" When The 17 Books Remain Available Through Llano Library's In-House Checkout System

The plaintiffs must make a "clear showing" that *they* will suffer irreparable harm absent a preliminary injunction. *See Winter*, 555 U.S. at 20 ("A plaintiff seek-

ing a preliminary injunction must establish . . . that *he is* likely to suffer irreparable harm in the absence of preliminary relief." (emphasis added)); *Jones v. District of Columbia*, 177 F. Supp. 3d 542, 546 n. 3 (D.D.C. 2016) ("[T]he irreparable harm prong . . . only concerns harm suffered by the party or parties seeking injunctive relief . . . . [A]ny alleged harm to third parties is properly addressed under the public interest prong"). The plaintiffs cannot establish irreparable harm when each of the 17 disputed books remains available for them to check out through Llano Library's in-house checkout system.

The district court's opinion does not explain how the *plaintiffs* will suffer irreparable harm from using the library's in-house checkout system. The district court notes that *other* library patrons might not be aware of the in-house collection. *See* Order, ECF No. 133, at 23 (App. 517). But effects on non-parties are irrelevant to the irreparable-harm inquiry; only harms to the seven named plaintiffs may be considered. *See Winter*, 555 U.S. at 20; *Jones*, 177 F. Supp. 3d at 546 n.3. And each of the seven plaintiffs heard the testimony describing the in-house checkout system and the availability of the 17 disputed books through the in-house collection. *See* Stipulation, ECF No. 126, at ¶¶ 3–7 (App. 491–493). The plaintiffs cannot suffer "irreparable harm" from a library that offers them the 17 books through an in-house checkout system—especially when the plaintiffs presented no evidence or arguments showing how this arrangement imposes any inconveniences on them.

3.    **The District Court Erred In Holding That The First Amendment Forbids "Viewpoint Discrimination" Or "Content Discrimination" In Public-Library Weeding Decisions**

The district court's opinion holds that "viewpoint discrimination" is categorically forbidden in a public library's weeding decisions, and that any content-based weeding decision must satisfy the strict-scrutiny standard. *See* Order, ECF No. 133, at 17 (App. 511) ("[T]he First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination."); *id.* at 20 (App. 514) ("Content-based restrictions on speech are presumptively unconstitutional and subject to strict scrutiny."). The district court's stance is indefensible and unlikely to survive appellate review.

The district court appears to believe that *Board of Education v. Pico*, 457 U.S. 853 (1982), and *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995), prohibit content or viewpoint discrimination in a public library's weeding decisions. *See* Order, ECF No. 133, at 17 (App. 511) (citing *Pico* to support its claim that "the First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination."); *id.* at 20 (App. 514) (holding that *Campbell* is incompatible with the defendants' claim that "'content discrimination is permissible and inevitable in library-book selection.'"). Neither *Pico* nor *Campbell* says anything of the sort. Justice Brennan's plurality opinion in *Pico* acknowledges that content discrimination is permissible in library-book selection, and it allows libraries to remove books that are "pervasively vulgar" or lack "educational suitability." *Pico*, 457 U.S. at 871 (plurality op.). *Campbell* re-affirms the *Pico* plurality's al-

lowance for content-based weeding. *See Campbell*, 64 F.3d at 188–89 ("The Court in its plurality opinion implicitly recognized . . . that an unconstitutional motivation would not be demonstrated if the school officials removed the books from the public school libraries based on a belief that the books were 'pervasively vulgar' or on grounds of 'educational suitability.'"). The *Pico* plurality opinion says only that school libraries may not weed books "in a narrowly partisan or political manner"[8]—a far cry from the total prohibition on viewpoint or content discrimination that the district court endorsed.

More importantly, a prohibition on content-based weeding decisions is incompatible with *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005), which holds that "'[p]ublic library staffs *necessarily consider content* in making collection decisions and enjoy broad discretion in making them.'" *Id.* at 614 (emphasis added) (quoting *United States v. American Library Ass'n Inc.*, 539 U.S. 194, 205 (2003) (plurality op.). The district court acknowledged this passage but insisted that it applies only to the selection and not the removal of library materials. *See* Order, ECF No. 133, at 13 (App. 507) ("[T]his discretion . . . applies only to materials' selection."). But neither *Chiras* nor the plurality opinion in *American Library* made any distinction between "selection" and removal decisions. And the distinction makes no sense because public libraries must enjoy the same latitude in "selecting" new materials that they have in weeding the books that no longer belong in their collection—and

---

8. *See Pico*, 457 U.S. at 870 (plurality op.); *id.* at 872 ("[S]chool boards may not remove books from school library shelves simply because they dislike the ideas contained in those books.").

that must to be removed to create the shelf space needed to accommodate the new arrivals. An outdated book that is no longer accurate should be weeded and replaced with a newer and more accurate source, and both the decision to weed and the decision to "select" the replacement are equally content-based and equally within the discretion of the library.

Finally, the district court never addressed the undisputed evidence showing that weeding manuals *require* public librarians to engage in content and viewpoint discrimination when deciding whether to remove a book. Librarians weed books according to the "MUSTIE" factors, an acronym that stands for Misleading, Ugly, Superseded, Trivial, Irrelevant, or (available) Elsewhere.[9] Three of these six MUSTIE factors—"Misleading," "Superseded," and "Trivial"—*require* a librarian to discriminate against content that the librarian considers misleading, superseded, or trivial.[10] Viewpoint discrimination is also required, as weeding manuals instruct librarians to remove and replace materials that contain "biased, racist, or sexist terminology or *views*." CREW Manual, ECF No. 117-2, at 19 (App. 400). A public library cannot function if its librarians are prohibited from making content- or viewpoint based weeding decisions, or if its librarians can be subjected to lawsuits whenever a library patron suspects that a weeding decision was influenced by the content or viewpoints expressed in a book. *See* Milum Decl., ¶¶ 7–8 (attached as Exhibit 3).

---

9. *See* Third Milum Decl., ECF No. 100-5, ¶ 24 (App. 349).
10. *See* Milum Decl., ¶ 8 (attached as Exhibit 3).

> **4.     The Plaintiffs Failed To Make A "Clear Showing" That Amber Milum Engaged In Viewpoint Or Content Discrimination When Weeding The 17 Disputed Books**

Even if one assumes that the First Amendment prohibits content- or viewpoint-based weeding decisions, the plaintiffs failed to make a "clear showing" that Amber Milum engaged in content or viewpoint discrimination when weeding the disputed books. Milum has denied repeatedly and under oath that her decisions to weed those books had anything to do with their content or viewpoints. *See* First Milum Decl., ECF No. 49-1, ¶ 15 (App. 286) ("I did not consider the content of any of the books I weeded when I made the decision to weed them. I also did not consider any of the viewpoints expressed in any of the books I weeded. I weeded the books based on the objective criteria I always use in determining which books to weed."); Third Milum Decl., ECF No. 100-5, ¶ 38 (App. 354) ("I did not read any of those books before weeding them, and I am not even aware of the 'viewpoints' or 'positions' (if any) that might be expressed in any of those books."); *id.* at ¶ 37 ("I did not consider any of the 17 books that I weeded to be pornographic or in any way inappropriate for a public library. I weeded those books solely based on my application of the CREW/MUSTIE factors."); *id.* at ¶ 36 ("I have never in my entire career weeded a book because of its viewpoints, and I have never considered the content of a book when making a weeding decision except to the extent that the MUSTIE factors might require me to consider whether a book should be considered 'misleading,' 'superseded,' 'trivial,' or 'irrelevant.'"); *id.* ("For the plaintiffs to accuse me of weeding books because I disapprove of nudity, critical race theory, or LGBTQ content is false and defamatory."). The district court did not claim that Milum is lying

13

in these declarations. On the contrary, it acknowledged the existence of "conflicting testimony" without attempting to resolve whether Milum is telling the truth. *See* Order, ECF No. 133, at 20–21 n.7 (App. 514–515). But the existence of "conflicting testimony" is incompatible with a "clear showing" that Milum weeded the books because of their content or viewpoint.

### 5.    The Preliminary Injunction Is Overbroad

The preliminary-injunction order goes far beyond what the plaintiffs requested and awards relief that the plaintiffs do not have Article III standing to pursue. The plaintiffs asked the district court to order the return of only the 17 disputed books. *See* Proposed Order, ECF No. 76-1 (App. 293). The district court's order, however, demands the return to the shelves of "*all* print books that were removed because of their viewpoint and content, *including*" the 17 books at issue in this litigation. *See* Order, ECF No. 133, at 25 (App. 519) (emphasis added). The plaintiffs, however, made no showing (let alone a "clear showing") that they are suffering Article III injury from the removal of any library materials other than the 17 books that they have complained about. *See DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief" that is sought." (citation omitted)); *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) ("Because a preliminary injunction 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief,' the plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction.").

The preliminary injunction also restrains the defendants from "removing *any* books from the Llano County Library Service's catalog for *any* reason during the pendency of this action." Order, ECF No. 133, at 26 (App. 520) (emphasis added). This, too, goes far beyond what the plaintiffs asked for, and the plaintiffs lack Article III standing to pursue relief of that scope because they cannot be injured by the removal of a book that they have no interest in reading. The plaintiffs had requested a more limited injunction that would prohibit removal of books absent documentation of "(a) the individual who decided to remove or conceal the book and (b) the reason or reasons for that removal or concealment." Proposed Order, ECF No. 76-1 (App. 294).

## B.    The Appellants Will Suffer Irreparable Harm Absent a Stay

A public library cannot function if its librarians can be sued whenever they weed material for content- or viewpoint-based reasons—or whenever a library patron suspects that they *might* have weeded a book because of its content or viewpoints. *See* Milum Decl. ¶¶ 7–8 (attached as Exhibit 3). Content and viewpoint discrimination are inevitable in library weeding decisions, and library weeding manuals *require* librarians to consider a book's content and viewpoints when applying the "MUSTIE" factors. *See id.* at ¶ 8. That is why this Court has held that "'[p]ublic library staffs *necessarily consider content* in making collection decisions and enjoy broad discretion in making them.'" *Chiras*, 432 F.3d at 614 (quoting *American Library*, 539 U.S. at 205 (plurality opinion of Rehnquist, C.J.))); *id.* ("'[J]ust as forum analysis and heightened judicial scrutiny are incompatible with the role of public television stations and the role of the NEA, they are also incompatible with the

discretion that public libraries must have to fulfill their traditional missions.'" (quoting *American Library*, 539 U.S. at 205 (plurality opinion of Rehnquist, C.J.))). The county is now considering whether to close its libraries in response to the Court's order, as it cannot expose its librarians and county officials to lawsuits or contempt citations whenever a disgruntled library patron disagrees with a weeding decision. *See* Cunningham Decl. ¶¶ 6–8 (attached as Exhibit 1).

Even if the county allows its libraries to remain open, the categorical prohibition on weeding in the preliminary injunction will prevent the library from removing patently obsolete books or materials that have been damaged beyond repair. *See* Milum Decl. ¶ 9 (attached as Exhibit 3). The preliminary injunction also purports to compel the return of *every* book that has *ever* been weeded for its content or viewpoints, and there is no way for the defendants to determine the reasons behind every previous weeding decision—many of which were made by librarians who are no longer employed by the county. *See id.* at ¶ 10. Nor is it possible for the defendants to re-shelve previously weeded books that are no longer in the library's possession and may not even be in print. *See id.*

### C.   A Stay Will Not Harm The Plaintiffs Or Any Other Party Interested In This Litigation

The plaintiffs will suffer no harm from a stay because each of the 17 books will remain available through the Llano Library's in-house checkout system—and each of the plaintiffs is aware of the in-house checkout system and the availability of those 17 books. *See* Stipulation, ECF No. 126, at ¶¶ 3–7 (App 491–493). The plaintiffs have yet to explain how they could be "harmed" by obtaining these books

through the in-house checkout system rather than the library shelves, and the district court failed to explain how the in-house library system inflicts any harm (let alone irreparable harm) on the plaintiffs. Nor will a stay harm other parties interested in the litigation, as there is no evidence that anyone else wants to check out the 17 disputed books, and their lackluster circulation record[11] makes it impossible to infer that a stay would inflict harm on other library patrons.

### D.    A Stay of the Preliminary Injunction Is in the Public Interest

A stay of the preliminary injunction will ensure that the county's librarians can continue doing their jobs without fear of being cited for contempt. It is impossible for the county's librarians to track down and return to the shelves every single book that has even been weeded because of content or viewpoint. The Llano County libraries weed *thousands* of books every year, and many of these books were weeded by librarians who are no longer employed by the county. *See* Milum Decl. ¶¶ 6, 10 (attached as Exhibit 3). The library cannot possibly determine whether or to what extent its erstwhile employees considered a book's contents or viewpoints when making weeding decisions. *See id.* at ¶ 10.  And weeded books are no longer in the library's possession because they have been sold or donated, so the library cannot simply "return" previously weeded books to the shelves within 24 hours of a judicial edict. *See id.* A stay of the preliminary injunction will also deter other library patrons from filing "me-too" lawsuits over previous weeding decisions that they

---

11. *See* First Milum Decl., ECF No. 49-1, at ¶¶ 13–14 (App. 285–286); Third Milum Decl., ECF No. 100-5, at ¶ 19 (App. 347–348).

disagreed with, which will enable the county's librarians to work without fear of being sued for their past or future weeding decisions.

## II.  THE COURT SHOULD EXPEDITE THE APPEAL

The plaintiffs moved for preliminary injunction on May 9, 2022, and a two-day hearing was held on October 28 and 31, 2022. The district court, however, did not issue grant the preliminary injunction until March 30, 2023—five months after the hearing, and only six and a half months before the trial date of October 16, 2023. If this Court does not rule before the district court enters final judgment, the appeal will become moot. *See Louisiana World Exposition, Inc. v. Logue*, 746 F.2d 1033, 1038 (5th Cir. 1984).

The district court's delay in ruling on the preliminary-injunction motion makes it difficult for this Court to issue a timely ruling without expediting the appeal. It is also imperative that this Court rules before the trial because the district court's belief that the First Amendment prohibits content- or viewpoint-based weeding decisions is untenable, and it would waste judicial resources to have the case tried on this demonstrably false premise. The county has already spent more than $100,000 defending this lawsuit, and it cannot recover the costs spent on an appeal that becomes moot or a needless trial even if it ultimately prevails in the litigation. *See* Cunningham Decl. ¶¶ 7, 9 (attached as Exhibit 1).

The appellants are prepared to file their opening brief within 14 days after issuance of a briefing order, and can file their reply within 7 days of service of the appellees' brief. The appellants respectfully ask the Court to order a briefing schedule

that would allow oral argument to be held in July. We will file a separate motion asking for expedited consideration of this motion to expedite the appeal.

## Conclusion

The motion for stay pending appeal should be granted. The Court should expedite the appeal and order a briefing schedule that allows oral argument to be held in July.

Respectfully submitted.

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: April 25, 2023                    *Counsel for Defendants-Appellants*

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for the plaintiffs-appellees, and they oppose the motion for stay pending appeal as well as the motion for expedited consideration.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I certify that on April 25, 2023, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Fifth Circuit and served through CM/ECF upon:

ELLEN V. LEONIDA
MATTHEW BORDEN
J. NOAH HAGEY
MAX BERNSTEIN
ELLIS E. HERINGTON
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

RYAN A. BOTKIN
KATHERINE P. CHIARELLO
MARÍA AMELIA CALAF
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com

*Counsel for Plaintiffs-Appellees*

     /s/ Jonathan F. Mitchell
     JONATHAN F. MITCHELL
     *Counsel for Defendants-Appellants*

# Certificate of Compliance

### with type-volume limitation, typeface requirements, and type-style requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,198 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.


                                    /s/ Jonathan F. Mitchell
                                    Jonathan F. Mitchell
Dated: April 25, 2023               *Counsel for Defendants-Appellants*

## CERTIFICATE OF ELECTRONIC COMPLIANCE

Counsel also certifies that on April 25, 2023, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through http://www.pacer.gov.

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Defendants-Appellants*