No. 23-50224

# In the United States Court of Appeals for the Fifth Circuit

LEILA GREEN LITTLE, JEANNE PURYEAR, KATHY KENNEDY, REBECCA JONES, RICHARD DAY, CYNTHIA WARING, AND DIANE MOSTER,

*Plaintiffs-Appellees,*

v.

LLANO COUNTY, RON CUNNINGHAM, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY JUDGE, JERRY DON MOSS, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, PETER JONES, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, MIKE SANDOVAL, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, LINDA RASCHKE, IN HER OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, AMBER MILUM, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY SYSTEM DIRECTOR, BONNIE WALLACE, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, ROCHELLE WELLS, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, RHONDA SCHNEIDER, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, AND GAY BASKIN, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Texas, Austin Division
1:22-cv-00424-RP

## APPELLEES' CORRECTED RESPONSE IN OPPOSITION TO APPELLANTS' MOTION FOR STAY OF PRELIMINARY INJUNCTION PENDING APPEAL AND MOTION TO EXPEDITE APPEAL

(Counsel Listed Inside Cover)

Katherine P. Chiarello
(TX Bar No. 24006994)
Ryan A. Botkin
(TX Bar No. 00793366)
María Amelia Calaf
(TX Bar No. 24081915)
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
katherine@wittliffcutter.com
ryan@wittliffcutter.com
mac@wittliffcutter.com

*Attorneys for Plaintiffs-Appellees*

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dwain K. Rogers
Texas Bar No. 00788311
County Attorney

Matthew L. Rienstra
Texas Bar No. 16908020
First Assistant County Attorney

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

*Attorneys for Defendants-Appellants*

No. 23-50224

# In the United States Court of Appeals for the Fifth Circuit

LEILA GREEN LITTLE, JEANNE PURYEAR, KATHY KENNEDY, REBECCA JONES, RICHARD DAY, CYNTHIA WARING, AND DIANE MOSTER,

*Plaintiffs-Appellees,*

v.

LLANO COUNTY, RON CUNNINGHAM, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY JUDGE, JERRY DON MOSS, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, PETER JONES, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, MIKE SANDOVAL, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, LINDA RASCHKE, IN HER OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, AMBER MILUM, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY SYSTEM DIRECTOR, BONNIE WALLACE, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, ROCHELLE WELLS, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, RHONDA SCHNEIDER, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, AND GAY BASKIN, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER,

*Defendants-Appellants.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees**
Leila Green Little
Jeanne Puryear
Kathy Kennedy
Rebecca Jones

Richard Day
Cynthia Waring
Diane Moster

**Plaintiffs-Appellants' Counsel**
Katherine P. Chiarello
Ryan A. Botkin
María Amelia Calaf
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701

Max B. Bernstein
Marissa R. Benavides
BraunHagey & Borden LLP
118 West 22nd Street, 12th Floor
New York, New York 10011

**Defendants-Appellants**
Llano County
Ron Cunningham
Jerry Don Moss
Peter Jones
Mike Sandoval
Linda Raschke
Amber Milum
Bonnie Wallace
Rochelle Wells
Rhonda Schneider
Gay Baskin

**Defendants-Appellants' Counsel**
Jonathan F. Mitchell
Mitchell Law PLLC

Dwain K. Rogers
Matthew L. Rienstra
Llano County Attorney's Office

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................ 8

BACKGROUND .......................................................................................... 10

    A.    The Parties ................................................................................ 10

    B.    Defendants Censor Books with which They Disagree ........................ 10

    C.    The Proceedings Below ................................................................ 13

ARGUMENT .............................................................................................. 14

I.     DEFENDANTS' MOTION IS PROCEDURALLY IMPROPER ................................ 14

II.    ALL FOUR *NKEN* FACTORS WEIGH AGAINST STAYING THE
     PRELIMINARY INJUNCTION ................................................................ 16

    A.    Defendants Have Not Shown that They Are Likely to Succeed on the Merits .... 18

        1.    The District Court Correctly Found That Defendants Engaged in
            Impermissible Viewpoint and Content-Based Discrimination ................. 19

        2.    Defendants' Conduct Violated the First Amendment .............................. 21

        3.    The District Court Properly Determined that Defendants' Voluntary
            Cessation Does Not Obviate Plaintiffs' First Amendment Claims .......... 26

    B.    Defendants Have Not Suffered and Will Not Suffer Any Injury From the
        Preliminary Injunction ................................................................ 27

    C.    Plaintiffs Will Suffer an Irreparable Deprivation of Their First Amendment
        Rights If a Stay Is Granted ............................................................ 28

    D.    The Public Interest Weighs Heavily Towards Keeping an Injunction That
        Protects First Amendment Freedoms ................................................ 29

III.    DEFENDANTS DO NOT HAVE GOOD CAUSE TO EXPEDITE
     THEIR APPEAL OF THE PRELIMINARY INJUNCTION ................................... 29

CONCLUSION ............................................................................................ 30

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Barber v. Bryant*,
  833 F.3d 510 (5th Cir. 2016) ...............................................................17

*Beverly v. United States*,
  468 F.2d 732 (5th Cir. 1972) ........................................................ 16, 17

*Board of Education v. Pico*,
  457 U.S. 853 (1982)................................................................. 23, 24, 25

*Campbell v. St. Tammany Parish School Board*,
  64 F.3d 184 (5th Cir. 1995) ......................................................... 23, 25

*Chase Home Finance LLC v. Hall*,
  No. 08-50415, 2009 WL 1426913 (5th Cir. May 22, 2009)................................30

*Chem. Weapons Working Grp. (CWWG) v. Dep't of the Army*,
  101 F.3d 1360 (10th Cir. 1996) .................................................... 15, 16

*Chiras v. Miller*,
  432 F.3d 606 (5th Cir. 2005) ....................................................... 24, 25

*Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410 (1993)........................................................................22

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
  704 F.3d 413 (5th Cir. 2013) .............................................................26

*Hilton v. Braunskill*,
  481 U.S. 770 (1987).........................................................................17

*Iancu v. Brunetti*,
  139 S. Ct. 2294 (2019).....................................................................22

*In re Montes*,
  677 F.2d 415 (5th Cir. 1982) .............................................................15

*Int'l Soc. for Krishna Consciousness, Inc. v. Lee*,
  505 U.S. 672 (1992).........................................................................22

*Matal v. Tam*,
    137 S. Ct. 1744 (2017) .........................................................................22

*NetChoice, L.L.C. v. Paxton*,
    49 F.4th 439 (5th Cir. 2022) ......................................................... 23, 24

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................ 9, 16, 17, 18

*Opulent Life Church v. City of Holly Springs, Miss.*,
    697 F.3d 279 (5th Cir. 2012) ..............................................................28

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) .............................................................................22

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) .............................................................................22

*Robinson v. Hunt County*,
    921 F.3d 440 (5th Cir. 2019) ...............................................................22

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) .............................................................................22

*Ruiz v. Estelle*,
    650 F.2d 555 (5th Cir. 1981) ......................................................... 15, 18

*Sund v. City of Wichita Falls*,
    121 F. Supp. 2d 530 (N.D. Tex. 2000) ................................................25

*Texans for Free Enter. V. Texas Ethics Comm'n*,
    732 F.3d 535 (5th Cir. 2013) ......................................................... 28, 29

*Texas v. United States*,
    40 F.4th 205 (5th Cir. 2022) ...............................................................17

*U.S. v. Cluck*,
    Nos. 98-50440, 98-50682, 1999 WL 642875, (5th Cir. July 27, 1999) ..............29

*U.S. v. Porter*,
    No. 95-60163, 1995 WL 581640, (5th Cir. Aug. 30, 1995) .......................... 29, 30

*United States v. American Library Association, Inc.,*
  539 U.S. 194 (2003) ..................................................................24

*United States v. Fluitt*,
  No. 22-30316, 2022 WL 3098734 (5th Cir. Aug. 4, 2022) ..................27

*W. Virginia State Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943) ..................................................................25

**RULES**

Fed. R. App. P. 8(a)(2)(A)(ii) .......................................... 14, 15

Fed. R. Civ. P. 62(c) ................................................................15

Fifth Circuit Rule 27.4 ............................................................29

Fifth Circuit Rule 27.5 ............................................................29

Fifth Circuit Rule Rule 8 .......................................... 14, 15, 16

**OTHER AUTHORITIES**

*Fed. Prac. & Proc. Civ.* § 2949 (3d ed. 2023) ..........................20

Plaintiffs-Appellees Leila Green Little, Jeanne Puryear, Kathy Kennedy, Rebecca Jones, Richard Day, Cynthia Waring, and Diane Moster ("Plaintiffs") respectfully submit this Opposition to Defendants-Appellants' ("Defendants") Motion to stay the District Court's preliminary injunction pending appeal.

## **INTRODUCTION**

Defendants' Motion is procedurally and substantively improper. For both reasons, it should be denied.

The District Court correctly enjoined Defendants from removing books from the Llano County Public Libraries in violation of the First Amendment after receiving two days of live testimony, hundreds of exhibits and 120 pages of briefing and supporting evidence. Substantial evidence supports the District Court's finding that Defendants' removal of 17 books—which appeared on a Banned Book list that Defendants internally circulated—was based on viewpoint and content discrimination. That finding is fatal to Defendants' appeal.

With no alleged injury except having to re-list 17 books in the library catalog (which Defendants already have done), Defendants seek to circumvent this Court's review of the record below and the District Court's extensive findings and conclusions. They also seek to force Plaintiffs to brief this motion—which largely overlaps the merits of Defendants' appeal—in three days, with fewer than half the words allotted for an appeal.

At the same time, Defendants seek to bypass this Court's stay procedures, which require them to resolve the issues in District Court first. Instead, they ask this Court to rule on evidence and theories that they deprived the District Court of the opportunity to address, including their new contention that the preliminary injunction forces them to restore thousands of books that they had removed from the shelves prior to any dispute arising—an incorrect reading of the injunction which could, and should, have been resolved below.

On the merits, Defendants do not meet any, much less all four of the factors in *Nken v. Holder*, 556 U.S. 418, 427 (2009), for staying an injunction pending appeal. Given the District Court's extensive factual findings of viewpoint and content-based discrimination, they cannot show a strong likelihood of success. Nor have they proven that they would suffer any irreparable injury from preserving the status quo, given that they already replaced the 17 banned books (the "Banned Books") to the library catalog. By contrast, allowing them to again remove the books would irreparably injure Plaintiffs and harm the public interest in having a library system free from censorship.

For each of these reasons, Defendants' motion should be denied. The Court should require full briefing on the merits on a reasonable schedule based on this Court's Rules and the Federal Rules of Appellate Procedure.

# BACKGROUND

## A.    The Parties

Plaintiffs-Appellees Leila Green Little, Jeanne Puryear, Kathy Kennedy, Rebecca Jones, Richard Day, Cynthia Waring, and Diane Moster ("Plaintiffs") are patrons of the Llano County Library. (D.App.495.)[1]

Defendants are Llano County and the individuals who ordered and effected the removal of books from the County's three libraries. Defendant Cunningham serves as County Judge and Defendants Moss, Jones, Sandoval, and Raschke serve as County Commissioners. (D.App.84.) Defendant Milum is the Library System Director. (*Id.*) Defendants Wallace, Wells, Baskin, and Schneider advocated for the book removal and were subsequently appointed by the Commissioners Court to sit on the County's Library Board. (*Id.*)

## B.    Defendants Censor Books with which They Disagree

The District Court found that Defendants removed 17 books from the Llano County libraries because they disagreed with the viewpoints of the authors and the contents of the books. (D.App.511.) In doing so, the District rejected as pretext

---

[1] Citations to "D.App.#" are to the respective page number of Defendants' continuously numbered appendices attached to their stay motion, with one exception. Plaintiffs cite to the unpaginated preliminary injunction hearing transcripts Defendants entered at Dkt. 17 as "Dkt.17 at #" to avoid confusion. Citations to "P.App.#" are to the respective page number of Plaintiffs' continuously numbered appendix attached to this stay opposition.

Defendants' claims that they were merely "weeding" the books pursuant to standard library procedures.

Defendants began removing the relevant books in summer 2021, when Moss and Cunningham directed Milum to permanently remove seven children's books[2] from the Llano County Library System. (D.App.496-497; Dkt.17 at 69, 174, 129-30.) Their directions were prompted by complaints from Defendants Schneider and Wells—now Library Advisory Board members—who disapproved of the books' contents. (D.App.496-497; Dkt.17 at 2, 66, 179.) Based on those complaints, Cunningham and Moss "told [Milum] to take the books out of the system"; Milum followed her superiors' directives, taking the books from the shelves and permanently deleting them from the library catalog. (D.App.497; Dkt.17 at 66, 68, 174, 129-30.)[3]

In the following months, Milum removed more books from the library system, at Cunningham's direction. (D.App.497.) These included Maurice Sendak's Caldecott Award-winning book *In the Night* Kitchen, which contains

---

[2] These books, known in this action as the "Butt Books" and "Fart Books," contain cartoons illustrations of farting and rear ends.

[3] At the hearing, Milum attempted to deny that she removed the Butt and Fart Books at least in part because she was so directed by Moss, but after reviewing her contemporaneous notes of the meeting—"an accurate reflection of the conversation"—she agreed she had been so instructed. (Dkt.17 at 67.) She also agreed that "Cunningham also directed [her] to remove the books." (Dkt.17 at 69.)

illustrations of a naked toddler (Dkt.17 at 72-73, 97); and *It's Perfectly Normal* by Robie Harris, an illustrated children's health book. (Dkt.17 at 30-31, 77, 351.)

Shortly thereafter, Defendants curated the "Wallace List," a "list of books that [Defendant] Bonnie Wallace thought were inappropriate and should be removed from the Llano County Library System." (D.App.497-498; Dkt.17 74, 83, 91.) Milum's "boss" Cunningham sent her the Wallace List on November 10, 2021, forwarding an email describing the books on the list as "pornographic filth." (D.App.497-498; Dkt.17 at 92, 98-99.) These "inappropriate" and "pornographic" books included titles Defendants described as "CRT and LGBTQ" books like: *Caste: The Origins of Our Discontent* by Isabel Wilkerson; *They Called Themselves the K.K.K: The Birth of an American Terrorist Group* by Susan Campbell Bartoletti; *Spinning by Tillie Walden; Being Jazz: My Life as a (Transgender) Teen* by Jazz Jennings*; Shine by Lauren Myracle; Under the Moon: A Catwoman Tale* by Lauren Myracle*; Gabi, a Girl in Pieces* by Isabel Quintero; and *Freakboy* by Kristin Elizabeth Clark. (D.App.498.) Milum testified that: "When I received [the Wallace List], we went and pulled all of those books." (Dkt.17 at 84; D.App.498.)

At the hearing, Defendants claimed that they had only removed the 17 books pursuant to standard "weeding" procedures. They also argued that they had mooted the need for an injunction because their lawyer had purchased copies of the Banned

Books and donated them to library without putting them in the library catalog so that patrons could find them. The District Court found that Defendants' "weeding" explanation was a pretext and rejected their legal contention as to mootness for the reasons discussed in Section II.A.3 below.

## C.    The Proceedings Below

Plaintiffs filed this action on April 25, 2022. (D.App.1.) On May 9, 2022, Plaintiffs filed their preliminary injunction motion. (D.App.34.) After agreeing to produce certain documents and deponents prior to the preliminary injunction hearing (D.App.276-78), Defendants opposed Plaintiffs' preliminary injunction motion on July 15, 2022. (P.App.1.) On July 29, 2022, the motion was fully briefed. (P.App.27.)

The District Court conducted a two-day hearing on Plaintiffs' preliminary injunction motion. (*See generally* Dkt.17.) The parties put on seven witnesses and introduced 32 documents for approximately nine hours of testimony. (*Id.*) After the hearing, Plaintiffs submitted a post-hearing brief. (P.App.175.) Defendants responded (D.App.295), Plaintiffs replied (P.App.206), and Defendants submitted a sur-reply. (D.App.358.) The parties' pre- and post-hearing briefs totaled 120 pages. On March 23, 2023, the parties filed a stipulation of undisputed facts. (D.App.491.)

On March 30, 2023, in a 26-page opinion, the District Court issued a preliminary injunction (the "Preliminary Injunction") instructing that "the books at issue be made available for checkout through the Library System's catalogs," but leaving to Defendants' discretion the "proper placement of the books [within the library] or restrictions on access." (D.App.495.) Defendants filed a notice of appeal the same day. (P.App.285.)

On April 11, 2023, Defendants moved the District Court to stay the Preliminary Injunction pending appeal. (P.App.315.) On April 19, 2023, Defendants filed a motion requesting that the District Court summarily deny their stay motion without giving Plaintiffs an opportunity to respond in order to "allow the defendants to request a stay pending appeal from the Fifth Circuit under Rule 8(a)." (P.App.361.) On April 20, 2023, the District Court denied Defendants' motion to summarily deny their stay motion. (P.App.393.) The motion to stay the Preliminary Injunction remains pending before the District Court.

## ARGUMENT

## I.    DEFENDANTS' MOTION IS PROCEDURALLY IMPROPER

Defendants cannot stay the District Court's preliminary injunction while the same motion is pending in the District Court. Rule 8 requires that a stay motion must "state that, a motion [for a stay] having been made, the district court denied the motion or failed to afford the relief requested [in the motion] and state any

reasons given by the district court for its action." Fed. R. App. P. 8(a)(2)(A)(ii). The District Court has not denied Defendants' stay motion. Defendants' motion should thus be denied as procedurally improper.

This Court has explained that "the district court should have the opportunity to rule on the reasons and evidence presented in support of a stay" prior to appellate consideration. *Ruiz v. Estelle*, 650 F.2d 555, 567 (5th Cir. 1981) (per curiam); *see also In re Montes*, 677 F.2d 415, 416 (5th Cir. 1982) (refusing request to suspend injunction without district court decision as appellate court "cannot take evidence or hear matters initially" and is "dependent entirely on the record made in a trial court"). That is because "the fundamentally different roles of appellate and trial courts mandate consideration of [a stay motion's] new evidence by the district court under Fed. R. Civ. P. 62(c) before Rule 8 proceedings in th[e appellate] court . . . Only upon completion of the district court's factfinding role, should [the appellate] court consider any relief pending appeal." *Chem. Weapons Working Grp. (CWWG) v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996).

Enforcement of this Rule is particularly important here, where Defendants' main arguments for irreparable harm are based on evidence and theories that the District Court has not had the opportunity to address. In *Ruiz*, this Court denied a stay motion for failure to satisfy Rule 8(a) when the motion contained arguments and evidence that were not included in the stay motion below. 650 F.2d at 566-67.

The Tenth Circuit in *CWWG* likewise held that appellants could not bypass the district court when their stay request was "sought predominantly on the basis of new evidence concerning events which occurred after the district court denied the motion for a preliminary injunction" and "has not yet been considered by the district court." *CWWG*, 101 F.3d at 1362.

Defendants' stay motion here similarly raises new factual and legal arguments. Defendants argue below that the Llano County Library System is at risk of closing due to the Injunction. (Mot. at 6.) This contention is incorrect. Plaintiffs have submitted evidence that the County Commissioners decided to keep the libraries open after a public hearing. (P.App.383 n.3.)

Defendants argue that the Injunction requires them to return every library book weeded since the libraries opened. (Mot. at 17.) This interpretation is erroneous, and best determined by the Court that issued the Injunction.

Given these ongoing disputes below, Defendants' attempt to bypass Rule 8 is inappropriate. Defendants cite no authority to support such efforts. Accordingly, the Court should deny this motion and allow the District Court to rule on Defendants' stay motion below.

## II.   ALL FOUR *NKEN* FACTORS WEIGH AGAINST STAYING THE PRELIMINARY INJUNCTION

"[T]he accepted standard for review of [a district court's stay decision] is whether or not the trial court abused its sound discretion in denying the stay,"

*Beverly v. United States*, 468 F.2d 732, 740 n.13 (5th Cir. 1972), not whether the preliminary injunction was properly granted. Here, because Defendants moved the Court for a stay without allowing the trial court to exercise any discretion, there is no order to review. Even if there were, Defendants do not come close to meeting their burden of proving that they are entitled to a stay.

"A stay [pending appeal] is an extraordinary remedy." *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022) (per curiam) (quotation omitted) (denying federal agency's request to stay vacatur of agency rule). It is "an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S.at 427 (internal citations omitted). "The party *requesting* a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Id.* at 433–34 (emphasis added). In deciding whether to stay a preliminary injunction pending appeal, federal courts consider four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors of this standard carry the greatest weight. *Id.* at 511.

Defendants misstate the standard and the burden on their motion, claiming that, Plaintiffs must make "a clear showing" that they were entitled to a preliminary injunction. But doing so would "invert the customary role of a stay, requiring a definitive merits decision earlier rather than later." *Nken*, 556 U.S. at 432 (statute permitting preliminary injunction under heightened evidence standard did not apply to stay request). As this Court held in *Ruiz*, "[W]e do not decide the merits of [movant's] appeal from the lower court's injunction; instead, we consider only whether the district court's injunction should be stayed pending complete review." 650 F.2d at 565. This level of review properly limits the Court's attention to whether a stay is necessary to maintain the status quo pending resolution of the appeal; otherwise the Court would "in effect decide[] the merits, in an expedited manner . . . that does not so much preserve the availability of subsequent review as render it redundant." *Id.* The burden therefore is on Defendants to show the District Court abused its discretion in applying the four *Nken* factors such that they are entitled to the extraordinary remedy of a stay.

## A.     Defendants Have Not Shown that They Are Likely to Succeed on the Merits

Defendants cannot satisfy the requisite "strong showing" of likelihood of success on their appeal. *Nken*, 556 U.S. at 433. First, the District Court has already weighed and rejected Defendants' post-hoc explanation for their discriminatory conduct. Second, Defendants cannot point to any legitimate flaws in the District

Court's legal conclusions. Third, as the District Court explained, Defendants' efforts to moot this case through voluntary cessation do not negate Plaintiffs' claims.

### 1.    The District Court Correctly Found That Defendants Engaged in Impermissible Viewpoint and Content-Based Discrimination

The District Court found that "Plaintiffs have clearly shown that Defendants' decisions were likely motivated by a desire to limit access to the viewpoints to which Wallace and Wells objected," including views on LGBTQ and racial equity. (D.App.513.) "[T]here is no real question that [Defendant Milum's] targeted review [of the Banned Books] was directly prompted by complaints from patrons and county officials over the content of these titles." The Court's findings were based on substantial evidence. (D.App.515; *see generally* D.App.512-515 (collecting record evidence of viewpoint and content-based discrimination).)

Defendants do not challenge the District Court's finding that county official Defendants Cunningham and Moss directed Milum to remove the Books based on their own discriminatory views, or the record on which its findings were based. Defendants point only to Milum's contradictory and self-serving declarations, then claim the District Court did not "attempt[] to resolve whether Milum is telling the truth." (Mot. at 14.) But the District Court already explained its basis for rejecting Milum's narrative as a "pretextual" and "post-hoc justification." (D.App.514.)

The Injunction identifies the robust evidentiary record that contradicts Milum's statements, including: communications from Defendants Wallace and Wells to Defendants Cunningham, Moss, and Milum complaining about the Banned Books as "pornographic filth" and "CRT and LGBTQ books," (D.App.512 (citing emails, call logs, and complaint logs)); communications from Defendants Cunningham and Moss to Milum directing her to remove the Banned Books from the shelves, (*id.* (citing emails and meeting logs))[4]; emails and hearing testimony confirming Milum closed the library to check for "inappropriate books" at the direction of the Commissioners Court (*id.*); and testimony from Milum that "the books that she pulled were books that Wallace, Wells, or the Commissioners identified as 'inappropriate'" (*id.*). [5] The District Court was entitled to credit Milum's live testimony, subject to the crucible of cross-examination, over post-hoc declarations written by her lawyer who was, himself, a participant in the underlying book banning. *See* 11A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2949 (3d ed. 2023) (when injunction depends on credibility,

---

[4] In one email thread including Moss, Wells reported that Moss and Cunningham had "instructed" Milum to "remove certain books," and she thanked Moss "for [his] help in this situation and all [he had] done to remedy it!" (Dkt.17 at 220.) Wells then reported that the work of ascertaining which of the "CRT and LGBTQ book[s]" were in the Library had been completed.

[5] Defendants admitted that the reason the "CRT and LGBTQ" books were "selected for weeding" was because they were on the "[Wallace List]." (Dkt.17 at 84.) And Milum readily admitted that *no books other than those on the Wallace List* were weeded at this time. (*Id.* at 86.)

---

"it seems desirable to require that the determination be made on the basis of their demeanor during direct and cross-examination, rather than on the respective plausibility of their affidavits."). The Court observed that additional evidence of Defendants' dislike of the Banned Books included that Defendants did not follow their own weeding criteria in removing the books. (D.App.512-15.)

Each of these findings alone, and especially together, supports the District Court's determination that Defendants engaged in viewpoint and content-based discrimination.

### 2.      Defendants' Conduct Violated the First Amendment

Defendants' additional attacks on the District Court's legal conclusions fail for two reasons: first, the District Court correctly applied strict scrutiny to its finding that Defendants were motivated by improper viewpoint and content-based discrimination; and second, the District Court correctly identified binding precedent that does not allow Defendants to remove books based on that discrimination simply because they operate a public library.

### a.      The District Court's Factual Findings Trigger Strict Scrutiny of Defendants' Book Removal Decisions

Defendants argue that the District Court ruled that "'viewpoint discrimination' is categorically forbidden in a public library's weeding decisions, and that any content-based weeding decision must satisfy the strict-scrutiny standard." (Mot. at 10.) The District Court's actual ruling was substantially

narrower: that strict scrutiny applies in this case because Defendants engaged in viewpoint and content-based discrimination. (D.App.516.)

This holding is correct under longstanding First Amendment principles. *Iancu v. Brunetti,* 139 S. Ct. 2294, 2299 (2019) (if a speech restriction "is viewpoint-based, it is unconstitutional"); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."). "Official censorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint discrimination." *Robinson v. Hunt County*, 921 F.3d 440, 447 (5th Cir. 2019) (citing *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017)).

Similarly, content discrimination violates the First Amendment unless the law is narrowly tailored to achieve a compelling government interest. *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) ("Content-based regulations are presumptively invalid."). An action that is "content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015) (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)).

      **b.**    **Removing materials from public libraries based on viewpoint and content discrimination violates the First Amendment**

Defendants assert that the District Court erred in relying on *Board of Education v. Pico*, 457 U.S. 853 (1982) and *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995). (Mot. at 15.) Their arguments are incorrect. *Pico* and *Campbell* squarely address the removal of books from a library.

*Pico* holds that "the First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination," (D.App.511 (Injunction Order citing *Pico*, 457 U.S. at 871)), and *Campbell* similarly holds that "the 'decision to remove [books] must withstand greater scrutiny within the context of the First Amendment than would a decision involving a curricular matter'" (D.App.513 (quoting *Campbell*, 64 F.3d at 189-90)). "To hold otherwise" that removal is not subject to heightened scrutiny "would be to entirely disregard *Campbell*." (D.App.514.) *See Pico*, 457 U.S. at 871-72 ("[O]ur holding today affects only the discretion to *remove* books . . . simply because they dislike the ideas contained in those books . . . ." (emphasis in original)).

This Court recently reiterated this principle in an analogous context. In *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022), the Court considered the validity of a Texas law that would prohibit social media platforms from removing posted user content that they dislike. The social media companies argued that their

editorial discretion to select what content may be made available was equal to their discretion to remove content after it had already been posted. The Court rejected this argument, stating there is no authority "even remotely suggesting that *ex post* censorship constitutes editorial discretion akin to *ex ante* selection." *Id.* at 464 (emphasis in original).

The cases on which Defendants rely also recognize the distinction between selection and removal. *Chiras v. Miller*, 432 F.3d 606, 619 (5th Cir. 2005), a school textbook selection case, relied on that difference in distinguishing that matter from *Pico*: "Because *Pico* addressed the *removal* of an optional book from the school library, not the *selection* of a textbook for use in the classroom, we decline to apply *Pico* to the facts before us." 432 F.3d at 619 (emphasis added). The Supreme Court in *United States v. American Library Association, Inc.* also only addressed the constraints on content selection in holding that blocking pornography downloads on library public computers is a permissible form of content selection. 539 U.S. 194, 212 (2003).

Defendants argue that schools may engage in discriminatory book removal. Mot. at 10-12. This is inapposite. Public schools, unlike public libraries, are recognized "vehicles for inculcating fundamental values," *Pico*, 457 U.S. at 864; *Chiras*, 432 F.3d at 611 ("states enjoy broad discretionary powers in the field of public education . . . to establish public school curricula which accomplishes the

states' educational objectives"). Courts therefore permit schools to remove books they determine to be "pervasively vulgar" or lacking "educational suitability." *Id.* at 871. Even then, "local school boards may not remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal to 'prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.'" *Pico*, 457 U.S. at 871 (*quoting W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)); *see also Campbell*, 64 F.3d at 189 (*Pico's* most narrow concurrence "does not reject the plurality's assessment of the constitutional limitations on school officials' discretion to remove books from a school library").

These limited exceptions for schools—none of which would permit Defendants' removal of books here—do not extend to public libraries, in which people of all ages and orthodoxies engage in freewheeling inquiry and exploration of ideas. The First Amendment protects school libraries from all but the most narrow forms of education-motivated censorship *a fortiori* it is even more protective of the free flow of information in public libraries. *See, e.g.*, *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 548 (N.D. Tex. 2000) ("The [First Amendment] principles set forth in *Pico*—a school library case—have even greater force when applied to public libraries.")

### 3. The District Court Properly Determined that Defendants' Voluntary Cessation Does Not Obviate Plaintiffs' First Amendment Claims

The District Court correctly determined that "Defendants' creation of an 'in-house checkout system' comprises precisely the type of posturing the voluntary cessation exception is meant to prevent." (D.App.506); *see also Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (defendants cannot "evade sanction by predictable protestations of repentance and reform after a lawsuit is filed"). Allowing that system to resume would place a significant and disproportionate burden on Plaintiffs' ability to access books Defendants deem unacceptable. *See, e.g.*, *Sund*, 121 F. Supp. 2d at 534. Plaintiffs would have no reliable way of knowing whether and when the Books are actually available. Instead, they must repeatedly visit the library and request the status of any Book they wish to check out.

Defendants acknowledge that Plaintiffs "remain 'injured' by the continued absence of those books from the library shelves." (Mot. at 8.) While they characterize denying Plaintiffs' constitutional rights as a mere "trifle," *id.*, the District Court's Order found that Defendants' original book removal and their secret library system are both intended to obstruct Plaintiffs' exercise of their fundamental right to access information. (D.App.507.) This is a First Amendment injury.

**B.      Defendants Have Not Suffered and Will Not Suffer Any Injury From the Preliminary Injunction**

Defendants have not identified any irreparable injury they would suffer absent a stay. As noted in Section I, Defendants' arguments (Mot. at 14-15) that the libraries will close and the Injunction requires them to restore books removed decades ago are factually and legally incorrect.[6] Even if Defendants had closed the libraries, it would be a circumstance of their own making. Defendants previously planned to close the Library System in the event of an injunction, not from fear of "expos[ing] its librarians and county officials to lawsuits" (Mot. at 16), but to continue their unconstitutional censorship. (P.App.392 (Feb. 2, 2023 text message from Defendant Wallace stating "Llano's County leaders are amazing!! The judge had said, if we lose the injunction, he will CLOSE the library because he WILL NOT put the porn back into the kid's section!").)

Defendants' second alleged harm, that librarians will not be able to remove books if they are damaged, is neither concrete nor an actual injury. "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant [for a stay]." *United States v. Fluitt*, No. 22-30316, 2022 WL 3098734, at *2 (5th Cir. Aug. 4, 2022).

---

[6] On April 13, 2023, after holding a public hearing, the Commissioners' Court voted to remove the proposed closure of the library system from consideration. *See* Commissioner Court Minutes, Llano County Texas, Apr. 13, 2023, https://www.co.llano.tx.us/upload/page/0961/2023%20Minutes/11LCCC%20SPECIAL%20CALLED%20MINUTES%2004-13-2023.pdf.

This leaves restoring the 17 Banned Books to the library catalog. Defendants have already done this.[7]

### C. Plaintiffs Will Suffer an Irreparable Deprivation of Their First Amendment Rights If a Stay Is Granted

Defendants' assertion that Plaintiffs would suffer no harm from a stay of the preliminary injunction because "because each of the 17 books will remain available through the Llano Library's in-house checkout system" (Mot. at 16.) ignores both the evidence below and binding Fifth Circuit precedent. Defendants do not address the extensive findings by the District Court finding irreparable harm caused by Defendants' conduct and finding that the "in-house checkout system" does not to mitigate that harm. (D.App.516-17.) Nor do the Defendants engage with this Court's precedent holding that the "loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Texans for Free Enter. V. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). Indeed, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012).

---

[7] See Llano County Library System Catalog, https://llano.biblionix.com/catalog/, in which the Banned Books now appear.

**D.**    **The Public Interest Weighs Heavily Towards Keeping an Injunction That Protects First Amendment Freedoms**

As the District Court found, "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013).  Defendants offer no countervailing interest that would be served by a stay. Contrary to Defendants' arguments (Mot. at 17), there is no public interest in issuing a stay to deter other library patrons from enforcing their First Amendment rights elsewhere. Such an effect would injure, not protect, the public.

**III.    DEFENDANTS DO NOT HAVE GOOD CAUSE TO EXPEDITE THEIR APPEAL OF THE PRELIMINARY INJUNCTION**

Defendants have no reason to expedite their appeal because they do not face any imminent or irreparable injury. They are not entitled to bypass other litigants simply because Plaintiffs might ultimately prevail on the merits of their claims.

Fifth Circuit Rule 27.5 requires that: "Only the court may expedite an appeal and only for good cause." *See U.S. v. Cluck*, Nos. 98-50440, 98-50682, 1999 WL 642875, at *1, (5th Cir. July 27, 1999) (per curiam) (denying motion to expedite appeal for lack of good cause); *U.S. v. Porter*, No. 95-60163, 1995 WL 581640, at *6, (5th Cir. Aug. 30, 1995) (per curiam) (same; incarcerated person's desire to avoid potential overdetention was not good cause). Fifth Circuit Rule 27.4 further requires that, "[w]here . . . the party has a serious need for the court to act within a

specified time, the motion must state the time requirement and describe both the nature of the need and the facts that support it."

As set forth *supra* Section II.C, Defendants cannot identify any harm to them from adhering to the Injunction, which requires only that they replace the 17 books that they removed. Defendants' concern that the District Court might rule on the merits of Plaintiffs' claims before this appeal is decided is insufficient cause to expedite the appeal. Such an outcome, which remains speculative at best, *see Porter*, 68 F.3d at 468, is an accepted part of the judicial process. *See Chase Home Finance LLC v. Hall*, No. 08-50415, 2009 WL 1426913, at *1 (5th Cir. May 22, 2009) (dismissing appeal of preliminary injunction as moot upon district court's judgment entering permanent injunction).

## <u>CONCLUSION</u>

For the reasons stated above, the Court should deny Defendants' Motion.

Dated: May 1, 2023                Respectfully submitted,

*/s/ Katherine P. Chiarello*
Katherine P. Chiarello
(TX Bar No. 24006994)
María Amelia Calaf
(TX Bar No. 24081915)
Ryan A. Botkin
(TX Bar No. 00793366)
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730

Fax: 512-960-4869
katherine@wittliffcutter.com
mac@wittliffcutter.com
ryan@wittliffcutter.com

*Attorneys for Plaintiffs-Appellees*

# <u>CERTIFICATE OF COMPLIANCE</u>

     This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5176 words.

     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Katherine P. Chiarello*
Katherine P. Chiarello

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of May, 2023, I electronically submitted the foregoing Corrected Opposition to Appellants' Motion for Stay of Preliminary Injunction Pending Appeal and Motion to Expedite to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the Court's ECF system, which sent a Notice of Electronic Filing to the attorneys of record.

*/s/ Katherine P. Chiarello*

Katherine P. Chiarello

## **CERTIFICATE OF ELECTRONIC COMPLIANCE**

Counsel also certifies that on May 1, 2023, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through http://www.pacer.gov.

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.