# EXHIBIT 2

No. 23-50224

# In the United States Court of Appeals for the Fifth Circuit

LEILA GREEN LITTLE, JEANNE PURYEAR, KATHY KENNEDY, REBECCA JONES, RICHARD DAY, CYNTHIA WARING, AND DIANE MOSTER,

*Plaintiffs-Appellees,*

v.

LLANO COUNTY, RON CUNNINGHAM, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY JUDGE, JERRY DON MOSS, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, PETER JONES, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, MIKE SANDOVAL, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, LINDA RASCHKE, IN HER OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, AMBER MILUM, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY SYSTEM DIRECTOR, BONNIE WALLACE, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, ROCHELLE WELLS, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, RHONDA SCHNEIDER, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, AND GAY BASKIN, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER,

*Defendants-Appellants.*

Appeal from the United States District Court for the Western District of Texas, Austin Division 1:22-cv-00424-RP

## APPENDIX TO APPELLEES' OPPOSITION TO APPELLANTS' MOTION FOR STAY OF PRELIMINARY INJUNCTION PENDING APPEAL AND MOTION TO EXPEDITE APPEAL

(Counsel Listed Inside Cover)

Katherine P. Chiarello
(TX Bar No. 24006994)
Ryan A. Botkin
(TX Bar No. 00793366)
María Amelia Calaf
(TX Bar No. 24081915)
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
katherine@wittliffcutter.com
ryan@wittliffcutter.com
mac@wittliffcutter.com

*Attorneys for Plaintiffs-Appellees*

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dwain K. Rogers
Texas Bar No. 00788311
County Attorney

Matthew L. Rienstra
Texas Bar No. 16908020
First Assistant County Attorney

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

*Attorneys for Defendants-Appellants*

# <u>TABLE OF CONTENTS</u>

**Document**                                                                                          **Page**

Dkt. No. 049 - Defendants' Opposition to
    Motion for Preliminary Injunction ...................................................... P.App.1

Dkt. No. 059 - Plaintiffs' Reply in Support of Motion
    for Preliminary Injunction ................................................................ P.App.37

Dkt. No. 091 - Plaintiffs' Post Preliminary Injunction Hearing Brief ...... P.App.185

Dkt. No. 098 - Plaintiffs' Reply in Support of Post Preliminary Injunction Hearing
    Brief ................................................................................................ P.App.216

Dkt. No. 117 - Defendants' Surreply in Support of Their Post Preliminary
    Injunction Hearing Brief .................................................................. P.App.235

Dkt. No. 123-00 - Plaintiffs' Motion to Compel and for Sanctions ......... P.App.242

Dkt. No. 127-00 - Plaintiffs' Motion to Compel and for Sanctions ......... P.App.263

Dkt. No. 129 - Defendants' Response ....................................................... P.App.288

Dkt. No. 132 - Defendants' Response ....................................................... P.App.291

Dkt. No. 134 - Notice of Appeal ............................................................... P.App.295

Dkt. No. 136 – Plaintiffs' Motion to Extend Discovery ........................... P.App.297

Dkt. No. 141 - Plaintiffs' Reply in Support of
    Motion to Compel and for Sanctions .............................................. P.App.315

Dkt. No. 144 - Plaintiffs' Reply in Support of
    Motion to Compel and for Sanctions .............................................. P.App.320

Dkt. No. 146 - Defendants Motion for Stay Pending Appeal ................... P.App.325

Dkt. No. 152 - Defendants' Opposition to
    Motion to Extend Discovery............................................................ P.App.341

Dkt. No. 154 - Defendants' Motion to Expedite ....................................... P.App.371

Dkt. No. 156 - Plaintiffs' Reply in Support of Motion to Extend Discovery
    ........................................................................................................ P.App.376

Dkt. No. 159 - Plaintiffs' Opposition to Defendants' Motion for Stay Pending Appeal ............................................................................................ P.App.382

2023-04-20 - Order Denying Motion to Expedite ..................................... P.App.403

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |
|---|---|
| **Leila Green Little**, et al.,<br><br>              Plaintiffs,<br><br>v.<br><br>**Llano County**, et al.,<br><br>              Defendants. | Case No. 1:22-cv-00424-RP |

## RESPONSE IN OPPOSITION TO PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Table of contents ................................................................................................. i

Table of authorities ............................................................................................ ii

Statement of facts ............................................................................................... 2

Argument ............................................................................................................. 7

    I.   The plaintiffs misstate the standard for a preliminary injunction .................. 8

    II.  The plaintiffs have failed to make a "clear showing" of likely success on merits ......................................................................................................... 9

        A.  The library has not in any way deprived the plaintiffs of their ability to "receive information" or "receive ideas" .......................................... 10

        B.  Even if the library had deprived the plaintiffs of access to the disputed books, its actions would still be entirely constitutional ............ 11

        C.  The plaintiffs have failed to make a "clear showing" that they will succeed in obtaining the relief in their proposed order ......................... 13

    III. The plaintiffs have failed to make a "clear showing" that they will suffer irreparable harm ............................................................................... 14

    IV. The plaintiffs have failed to make a "clear showing" that the balance of equities or the public interest weighs in their favor ................................ 14

Conclusion ........................................................................................................ 15

Certificate of service ......................................................................................... 16

P.App.2

# TABLE OF AUTHORITIES

**Cases**

*Board of Education v. Pico*, 457 U.S. 853 (1982) .................................................. 1, 9

*Califano* v. *Yamasaki*, 442 U. S. 682 (1979) ......................................................... 14

*Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005) .............................................. 10, 11

*Egli v. Chester County Library System,*
  394 F. Supp. 3d 497 (E.D. Pa. 2019) ............................................................. 12

*Gay Guardian Newspaper v. Ohoopee Regional Library System,*
  235 F. Supp. 2d 1362 (S.D. Ga. 2002) .......................................................... 12

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam)..................................... 8

*Roho, Inc. v. Marquis*, 902 F.2d 356 (5th Cir. 1990) ............................................. 8

*Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530 (N.D. Tex. 2000) ................. 1, 9

*Texas Medical Providers Performing Abortion Services v. Lakey,*
  667 F.3d 570 (5th Cir. 2012)............................................................................ 8

*United States v. American Library Ass'n Inc.*, 539 U.S. 194 (2003) ........... 9, 11, 12

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013).............................. 9

P.App.3

The motion for preliminary injunction should be denied out of hand because the plaintiffs can access each of the disputed books from the Llano County library system through one or more of the following three ways: (1) Through Inter Library loan; (2) Through the library's "in-house checkout" system, in which a personal or donated book is made available to library patrons for check out; or (3) Through Bibliotheca/CloudLibrary, the successor to OverDrive that serves as the Llano County library system's online database of books. *See* Declaration of Amber Milum ¶¶ 9–11 (attached as Exhibit 1). So there is no conceivable violation of their supposed "right to receive information"[1] or their "right to receive ideas."[2] The plaintiffs have not identified any book that they are unable to obtain or check out from the Llano County library system, and their claims that the library has "banned" and "censored" the disputed books are hyperbolic and preposterous when each of those books remains available for physical check out and online reading through the defendants' library system.

Nor can the plaintiffs establish any ongoing First Amendment injury from the cancellation of OverDrive, because the library has implemented a new online database of books that can be accessed through Bibliotheca and its CloudLibrary app. *See* Declaration of Ron Cunningham ¶ 10 (attached as Exhibit 2). The Bibliotheca/CloudLibrary database offers access to significantly more books than the erstwhile OverDrive system, while simultaneously providing effective parental controls that were unavailable through OverDrive. *See id*. at ¶ 10. This sinks any possible claim of prospective First Amendment injury that could support a preliminary injunction.

---

1. Mot. for Prelim. Inj., ECF No. 22, at 10 (quoting *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547 (N.D. Tex. 2000)).
2. Mot. for Prelim. Inj., ECF No. 22, at 10 (quoting *Board of Education v. Pico*, 457 U.S. 853, 867–68 (1982) (plurality opinion)).

P.App.4

Finally, the plaintiffs cannot establish irreparable harm because they can *still* check out and read every one of the disputed books through the Llano County library system—and they cannot establish irreparable harm from the cancellation of OverDrive because the library has adopted and implemented a *more* expansive online database of books through Bibliotheca and its CloudLibrary app. Nor can the balance of equities support a preliminary injunction when the plaintiffs are not being harmed in the slightest. Every one of the disputed books that they want to check out remains available for them to check out, and the library has expanded rather than contracted its online collection of books by switching from OverDrive to Bibliotheca.

## STATEMENT OF FACTS

The plaintiffs contend that the Llano County library system is violating their First Amendment rights and inflicting irreparable harm by removing the following titles from the bookshelves:

1. *Caste: The Origins of Our Discontent* by Isabel Wilkerson;
2. *They Called Themselves the K.K.K.: The Birth of an American Terrorist Group* by Susan Campbell Bartoletti;
3. *Spinning* by Tillie Walden;
4. *In the Night Kitchen* by Maurice Sendak;
5. *It's Perfectly Normal: Changing Bodies, Growing Up, Sex and Sexual Health* by Robie Harris;
6. A read-aloud picture book series including *My Butt is So Noisy!*, *I Broke My Butt!*, and *I Need a New Butt!* by Dawn McMillan;
7. A read-aloud picture book series including *Larry the Farting Leprechaun*, *Gary the Goose and His Gas on the Loose*, *Freddie the Farting Snowman*, and *Harvey the Heart Has Too Many Farts* by Jane Bexley;
8. *Being Jazz: My Life as a (Transgender) Teen* by Jazz Jennings;
9. *Shine* by Lauren Myracle;
10. *Gabi, a Girl in Pieces* by Isabel Quintero; and
11. *Freakboy* by Kristin Elizabeth Clark.[3]

---

3. *See* Day Decl., ECF No. 22-2, at ¶ 4; Jones Decl., ECF No. 22-3, at ¶ 3; Kennedy Decl., ECF No. 22-4, at ¶ 3; Little Decl., ECF No. 22-5, at ¶ 3; Moster Decl., ECF No. 22-7, at ¶ 3; Puryear Decl., ECF No. 22-9, at ¶ 3; Waring Decl., ECF No. 22-11, at ¶ 3.

P.App.5

And each of the plaintiffs has submitted declarations complaining that they "cannot check out" these books and announcing that they "would check out these books" if they were restored to the library shelves.[4]

The plaintiffs' claim that they "cannot check out" these books is false. *See* Milum Decl. ¶¶ 9–10, 18–19. Each of these titles remains available to the plaintiffs to obtain or read through the Llano County library system in at least one the following three ways: (1) Through Inter Library loan; (2) Through the library's "in-house checkout" system, in which a personal or donated book is made available to library patrons for check out even though it does not appear on the shelves; or (3) Through Biblio-theca/CloudLibrary, which serves as the Llano County library system's online data-base of books. *See* Milum Decl. ¶¶ 9–11 (attached as Exhibit 1). The following chart shows how each of the disputed books can *currently* be obtained or read through the Llano County library system:

| Title | Author | Availability |
|---|---|---|
| *Caste: The Origins of Our Discontents* | Wilkerson, Isabel | Bibliotheca/CloudLibrary |
| *They Called Themselves the K.K.K.: The Birth of an American Terrorist Group* | Bartoletti, Susan Campbell | Inter Library loan |
| *Spinning* | Walden, Tillie | Inter Library loan |
| *In the Night Kitchen* | Sendak, Maurice | Inter Library loan |
| *It's Perfectly Normal: Changing Bodies, Growing Up, Sex and Sexual Health* | Harris, Robie | Bibliotheca/CloudLibrary |
| *My Butt is So Noisy!, I Broke My Butt!, I Need a New Butt* | McMillan, Dawn | Inter Library loan, Physical copies available for in-house checkout |

---

4.  *See* Day Decl., ECF No. 22-2, at ¶ 4; Jones Decl., ECF No. 22-3, at ¶ 3; Kennedy Decl., ECF No. 22-4, at ¶ 3; Little Decl., ECF No. 22-5, at ¶ 3; Moster Decl., ECF No. 22-7, at ¶ 3; Puryear Decl., ECF No. 22-9, at ¶ 3; Waring Decl., ECF No. 22-11, at ¶ 3.

P.App.6

| *Larry the Farting Leprechaun, Gary the Goose and His Gas on the Loose, Freddie the Farting Snowman, Harvey the Heart Has Too Many Farts* | Bexley, Jane | Inter Library loan, Physical copies available for in-house checkout |
| *Being Jazz: My Life as a (Transgender) Teen* | Jennings, Jazz | Bibliotheca/CloudLibrary and one physical copy (Currently checked out and overdue) |
| *Shine* | Myracle, Lauren | Inter Library loan |
| *Gabi, a Girl in Pieces* | Quintero, Isabel | Inter Library loan, and Bibliotheca/CloudLibrary |
| *Freakboy* | Clark, Kristin Elizabeth | Inter Library loan |

Milum Decl. at ¶ 10.

In addition to this present-day availability, a donor has pledged to give physical copies of each of the books listed in the chart for inclusion in Llano County's "in-house checkout" if those books are not already available for checkout through the library's in-house checkout system. *See* Milum Decl. at ¶ 11. The library system has promised to accept this gift and will add each of those titles to its collection of books available for in-house checkout. *See id*. This will ensure that each of the plaintiffs can check out physical copies of each of the disputed books from the Llano County library system without having to use Inter Library loan or Bibliotheca if they find those alternatives inconvenient.[5]

So the plaintiffs not being "denied their right to access" these books, as they assert throughout their brief. *See* Mot. for Prelim. Inj., ECF No. 22, at 1 ("Each moment that Plaintiffs are denied their right to access the banned books, they suffer immediate and irreparable harm."); Milum Decl. ¶¶ 18–19. Nor have the books been "banned" or "censored." The plaintiffs can currently check out physical copies of

---

5.    The defendants will immediately notify the Court when the donor's gift arrives and the books are added to the library's in-house checkout collection. *See* Milum Decl. at ¶ 11.

P.App.7

these books or read online versions, and they will be able to check out physical copies of *every* book listed in the chart as soon as the donor's gift is added to the library's in-house checkout collection. *See id.* at ¶¶ 18–19.

The plaintiffs also gripe about the cancellation of OverDrive, but they ignore the fact that the library has adopted a new and more expansive online database of books to replace the OverDrive system. *See* Cunningham Decl. ¶ 10. None of this is acknowledged or addressed in the motion for preliminary injunction or its supporting declarations, and the plaintiffs make no attempt to explain how the switch from Over-Drive to Bibliotheca/CloudLibrary violates the First Amendment or inflicts irrepara-ble harm. Instead, the plaintiffs pretend as though the defendants scrapped OverDrive and replaced it with nothing. *See* Mot. for Prelim. Inj., ECF No. 22, at 7–8; *id.* at 12–13; *id.* at 18; Jones Decl., ECF No. 22-3, at ¶ 5. Kennedy Decl., ECF No. 22-4, at ¶ 4; Little Decl., ECF No. 22-5, at ¶ 12; Waring Decl., ECF No. 22-11, at 7. They do not even assert, let alone demonstrate, that the Bibliotheca/CloudLibrary online database is inferior to OverDrive in any way.

Finally, the plaintiffs' claim that the library system removed the disputed books because of viewpoint or content discrimination or pressure from community activists is false. Each of the books that was removed from the shelves met the library system's established criteria for "weeding," a continual process in which libraries take down books that have declined in popularity, are not being checked out often, or whose condition has deteriorated. *See* Milum Decl. ¶¶ 3–8, 12–16. Each of the books taken from the shelves met the criteria for weeding and would have been removed regardless of the content or viewpoints expressed in those books—and they would have been removed even if no one in the community had ever complained about them. *See* Mi-lum Decl. ¶¶ 6–7 (declaring that the "butt" and "fart" books were weeded "because they were not being circulated sufficiently to warrant keeping them on the shelves, not because of the viewpoints or content expressed in either of those books."); *id.* at

P.App.8

¶ 8 (declaring that *In the Night Kitchen* and *It's Perfectly Normal* were not "in high demand, [and] they were weeded consistent with my normal weeding procedures. I would have weeded each of these books regardless of the viewpoints or content expressed in those books, and I would have done so even if no one in the community had ever complained about them."); *id*. at ¶ 12 (declaring that *Freakboy*, *Shine*, *Caste: The Origins of our Discontents*, *Gabi, a Girl in Pieces*, and *They Called Themselves the K.K.K.: The Birth of an American Terrorist Group* were removed from the shelves because they met the critieria for weeding); *id*. at ¶ 12 ("My decision to weed the six books had nothing to do with the viewpoints or content expressed in any of those books. I would have weeded each of those six books regardless of the viewpoints or content expressed in those books, and I would have done so even if no one in the community had ever complained about them."); *see also id*. at ¶¶ 13–15.

More importantly, the library system *declined* to remove 41 books that that been opposed by members of the community — and they declined to take this step because those books did *not* meet the library's criteria for weeding. When Amber Milum, the director of the Llano County Library System, received the list of objectionable books that had been prepared by Bonnie Wallace, she "reviewed each of the 47 physical books and in the process, [and] I discovered that 6 of the books should be weeded: '*Freakboy*,' '*Shine*,' '*Caste: The Origins of our Discontents*,' '*Gabi, a Girl in Pieces*,' and '*They Called Themselves the K.K.K.: The Birth of an American Terrorist Group*.'" Milum Decl. ¶ 12. As for the remaining 41 books:

> The remaining 41 books did not meet the criteria for weeding and seemed to be relatively popular with our patrons. I therefore decided to leave those 41 books on the shelves so our patrons could continue to check them out.

*Id.* So the plaintiffs' claim that books were removed "based on Defendants' wholly subjective views of the propriety of those books"[6] is patently and demonstrably false. And so is their assertion that the defendants "targeted books with content that conflicted with their personal political and religious beliefs." Mot. for Prelim. Inj., ECF No. 22, at 5.

Many of the plaintiffs' remaining factual assertions are irrelevant to their constitutional claims or the relief requested in their motion for preliminary injunction. The plaintiffs mention a book on critical race theory that was moved from the library shelves and placed behind the front desk,[7] but they are not asking for that book to be returned to the shelves in their proposed order,[8] and they do not assert in their declarations that they have any desire to read or check out that book. The plaintiffs complain about closed meetings held by the library board,[9] but they present no argument for how those closed meetings were unlawful, nor do they explain how they would be likely to succeed on the merits of any such claim. Finally, the plaintiffs complain about the treatment of Suzette Baker,[10] a librarian who was terminated for insubordination, but Ms. Baker is not a party to this case and the plaintiffs are not seeking reinstatement or any type of relief on her behalf. *See* Proposed Order, ECF No. 22-12.

## ARGUMENT

The present-day availability of each of the disputed books—along with the successful implementation of the Bibliotheca/CloudDrive online database—leaves the plaintiffs' motion for preliminary injunction without a leg to stand on. There is no conceivable violation of the plaintiffs' First Amendment rights when they remain able

---

6.  *See* Mot. for Prelim. Inj., ECF No. 22, at 5.
7.  *See* Mot. for Prelim. Inj., ECF No. 22, at 6.
8.  *See* Proposed Order, ECF No. 22-12.
9.  *See* Mot. for Prelim. Inj., ECF No. 22, at 8–9.
10. *See* Mot. for Prelim. Inj., ECF No. 22, at 9; Baker Decl., ECF No. 22-1.

P.App.10

to check out or read online *each* of the books that they falsely claim they have been "denied their right to access." Mot. for Prelim. Inj., ECF No. 22, at 1. And the plaintiffs have failed to identify any violation of their constitutional rights that might arise from the library's decision to replace OverDrive with Bibliotheca—especially when Bibliotheca provides the plaintiffs (and everyone else) with access to a *more* expansive database of online books. *See* Cunningham Decl. ¶ 10. Nor can the plaintiffs show "irreparable harm" when they can access each of the disputed books through the Llano County library system, and when they have been given access to a far greater collection of online books than they enjoyed under the OverDrive regime.

## I. THE PLAINTIFFS MISSTATE THE STANDARD FOR A PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary remedy," and it may not be granted unless the movant has "*clearly carried* the burden of persuasion on all four requirements." *Texas Medical Providers Performing Abortion Services v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012) (emphasis added); *see also Mazurek v. Armstrong*, 520 U.S. 968, 971, 972 (1997) (per curiam) ("It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." (emphasis in original) (citation and internal quotation marks omitted)). That means the plaintiffs must make: (1) a clear showing that they will likely succeed on the merits; (2) a clear showing that they will suffer irreparable harm absent a preliminary injunction; (3) a clear showing that their injury outweighs any harm that will result if a preliminary injunction is granted; and (4) a clear showing that a preliminary injunction will not disserve the public interest. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). A failure to present a "clear showing" on any one of the four components compel the court to deny preliminary injunctive relief. *See Lakey*, 667 F.3d at 574.

P.App.11

The plaintiffs refuse to acknowledge the "clear showing" requirement, and they do not even assert that they have "clearly carried" their burden of persuasion on any of the four prongs of the preliminary-injunction test. But the law of the Fifth Circuit requires a "clear showing" from the plaintiffs on *each* of these four requirements. *See Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) ("This court has repeatedly cautioned that 'a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements.'" (citation and some internal quotation marks omitted)). The plaintiffs come nowhere close to making a "clear showing" on any of the four components of the preliminary-injunction test.

## II. The Plaintiffs Have Failed To Make A "Clear Showing" Of Likely Success On Merits

The plaintiffs contend that the defendants are violating their First Amendment rights by depriving them of their "right to receive information" and their "right to receive ideas." Mot. for Prelim. Inj., ECF No. 22, at 10 (quoting *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547 (N.D. Tex. 2000) and *Board of Education v. Pico*, 457 U.S. 853, 867–68 (1982) (plurality opinion)).

This claim encounters two immediate and insurmountable problems. The first problem is that the defendants have *not* deprived the plaintiffs of their ability to receive information or ideas because each of the disputed books remains available for them to check out or read online through the Llano County library system. *See* Milum Decl. ¶¶ 9–10, 18–19. The second problem is that even if the library had completely refused to provide the plaintiffs with access to these books, its actions would *still* be constitutional because public libraries have "broad discretion" to choose the materials that they make available to patrons. *See United States v. American Library Ass'n Inc.*, 539 U.S. 194, 204 (2003) (plurality opinion of Rehnquist, C.J.) ("[P]ublic libraries must have broad discretion to decide what material to provide to their patrons.");

P.App.12

*Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005) ("'Public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.'" (citation and internal quotation marks omitted)). The plaintiffs have no answer to any of this.

### A. The Library Has Not In Any Way Deprived The Plaintiffs Of Their Ability To "Receive Information" Or "Receive Ideas"

The plaintiffs' entire First Amendment argument rests on a false factual premise: That the defendants have deprived them of access to the books that were removed from the library shelves. *See* Mot. for Prelim. Inj., ECF No. 22 (claiming throughout their brief that the disputed books had been "banned" or "censored"). As has already been explained, each of the disputed books remains available for the plaintiffs to check out or read online through the Llano County library system. *See* Milum Decl. ¶¶ 9–11, 18–19. All they have to do is stop by the reference desk and request the book through Inter Library loan, or ask for the book through the library's "in-house check-out" system. They can also read some (though not all) of the disputed books online through the library's Bibliotheca/CloudLibrary database. *See id*. at ¶ 10. And physical copies of *all* of the disputed books will soon be available for "in-house checkout" when the upcoming donor gift is received and processed. *See id*. at ¶ 11.

The plaintiffs also refuse to deal with the fact that the library's switch from Over-Drive to Bibliotheca has *increased* the number of books available in the library's online database. *See* Cunningham Decl. ¶ 10. Instead, their motion and declarations act as though the replacement of OverDrive has permanently deprived them of *any* online-reading option in the Llano County library system.[11] Yet the plaintiffs should be thanking rather than suing the county for implementing this change.

---

11. *See* Mot. for Prelim. Inj., ECF No. 22, at 7–8; *id*. at 12–13; *id*. at 18; Jones Decl., ECF No. 22-3, at ¶ 5. Kennedy Decl., ECF No. 22-4, at ¶ 4; Little Decl., ECF No. 22-5 at ¶ 12; Waring Decl., ECF No. 22-11, at 7.

P.App.13

So none of the plaintiffs' First Amendment claims can even reach first base.

**B.    Even If The Library Had Deprived The Plaintiffs Of Access To The Disputed Books, Its Actions Would Still Be Entirely Constitutional**

Matters get worse for the plaintiffs as we move from the facts to the law. If we ignore the actual facts and pretend as though the defendants eliminated any possible way for the plaintiffs to check out or read the disputed books through the county's public-library system, the defendants' actions would *still* be entirely constitutional. The Supreme Court's ruling in *United States v. American Library Ass'n Inc.*, 539 U.S. 194 (2003)—which the plaintiffs do not even cite—makes abundantly clear that public libraries "have broad discretion to decide what material to provide to their patrons." *Id*. at 204 (plurality opinion of Rehnquist, C.J.); *see also Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005) ("'Public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.'" (quoting *American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.)).[12] *American Library Association* also makes clear that public libraries are not "traditional" or "designated" public forums that trigger rules against content discrimination or viewpoint discrimination:

> [F]orum analysis and heightened judicial scrutiny are . . . incompatible with the discretion that public libraries must have to fulfill their traditional missions. Public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.

*American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.); *see also Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005) ("'[J]ust as forum analysis and heightened judicial scrutiny are incompatible with the role of public television

---

12.    Chief Justice Rehnquist's opinion in *American Library Association* is a plurality opinion and not a majority opinion, but to the extent that passages from his plurality opinion appear in *Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005), they have the status of binding precedent in this Court.

P.App.14

stations and the role of the NEA, they are also incompatible with the discretion that public libraries must have to fulfill their traditional missions.'" (quoting *American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.)). So it would not even matter whether the defendants were motivated by content or viewpoint discrimination when they removed the disputed books from the shelves. They would need only to posit a rational basis for doing so, and a decision to remove books from the shelves in accordance with established "weeding" criteria[13] easily satisfies rational-basis review. *See American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.)) ("[G]enerally the First Amendment subjects libraries' content-based decisions about which print materials to acquire for their collections to only rational [basis] review." (citation and internal quotation marks omitted)); *Egli v. Chester County Library System*, 394 F. Supp. 3d 497, 504 (E.D. Pa. 2019) ("Libraries are not required to accommodate every book or proposed talk, but instead must determine based on their professional judgment which materials are deemed to have 'requisite and appropriate quality' to occupy the limited space available." (quoting *American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.)); *Gay Guardian Newspaper v. Ohoopee Regional Library System*, 235 F. Supp. 2d 1362, 1371 (S.D. Ga. 2002) ("Librarians may ordinarily take some comfort in the fact that . . . their content selection/removal decisions need only have a rational basis.").

In all events, the defendants did *not* engage in either viewpoint discrimination or content discrimination, even if the plaintiffs could somehow find a way to show that the rules against viewpoint or content discrimination apply. Amber Milum's declaration conclusively refutes the plaintiffs' insinuations of improper motive, as it painstakingly explains how each of the books that she removed from the shelves met the library's established criteria for "weeding." *See* Milum Decl. ¶¶ 3–8, 12–16. Milum's

---

13.   *See* Milum Decl. ¶¶ 3–8, 12–16.

P.App.15

declaration also shows that the library *refused* to remove 41 books that had generated complaints but did *not* meet the criteria for weeding. *See* Milum Decl. ¶ 12 ("The remaining 41 books did not meet the criteria for weeding and seemed to be relatively popular with our patrons. I therefore decided to leave those 41 books on the shelves so our patrons could continue to check them out."). Lest there be any doubt on this score, Ms. Milum has declared in no uncertain terms:

> I would have weeded each of those . . . books regardless of the viewpoints or content expressed in those books, and I would have done so even if no one in the community had ever complained about them.

Milum Decl. ¶ 12; *see also id.* at ¶ 8 (same). So much for the plaintiffs' innuendo about these book removals being driven by the defendants' "subjective viewpoints." Mot. for Prelim. Inj., ECF No. 22, at 11.

Of course, none of this even matters because the defendants have not done *anything* that deprives the plaintiffs of their ability to access *any* book that was previously available to them. But even if the defendants had acted in a manner that cut off the plaintiffs' ability to access or obtain these books through the Llano County library system, the plaintiffs would not even have the beginnings of a First Amendment claim against the county or its officials.

### C. The Plaintiffs Have Failed To Make A "Clear Showing" That They Will Succeed In Obtaining The Relief In Their Proposed Order

The plaintiffs' proposed order goes far beyond demanding the return of the books listed in the plaintiffs' declarations. It also purports to enjoin the defendants from "closing future meetings of the Library Board to members of the public." Proposed Order, ECF No. 22-12. But the motion for preliminary injunction presents no argument for how the closing of these meetings violates the law or inflicts irreparable harm, so the plaintiffs have waived any argument for this relief at the preliminary-injunction stage.

P.App.16

The proposed order also purports to enjoin the defendants from "removing any books from the Llano County Library Service's physical shelves for any reason during the pendency of this action." Proposed Order, ECF No. 22-12. That requested relief is far too overbroad, as it would prevent ordinary weeding and inhibit the library from making room for new items. The plaintiffs have not presented any argument for why they would be entitled to an injunction of that scope. *See Califano* v. *Yamasaki*, 442 U. S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs").

## III. THE PLAINTIFFS HAVE FAILED TO MAKE A "CLEAR SHOWING" THAT THEY WILL SUFFER IRREPARABLE HARM

The plaintiffs cannot establish irreparable harm because they have no conceivable First Amendment injury, as each of them can *still* check out and read every one of the disputed books through the Llano County library system. The plaintiffs also cannot establish irreparable harm from the cancellation of OverDrive because the library has adopted and implemented a *more* expansive online database of books through Bibliotheca and its CloudLibrary app. Nor have the plaintiffs produced evidence that the defendants are about to deprive them of access to *any* book that they might want to read or obtain through the Llano County library system. Their claims of irreparable harm are chimerical and rest on the same false factual premises as their First Amendment claims.

## IV. THE PLAINTIFFS HAVE FAILED TO MAKE A "CLEAR SHOWING" THAT THE BALANCE OF EQUITIES OR THE PUBLIC INTEREST WEIGHS IN THEIR FAVOR

Because there is no conceivable harm being inflicted on the plaintiffs—let alone "irreparable" harm—the plaintiffs cannot clearly show that the balance of equities tips in their favor. Nor can the public interest be served by enjoining defendants who have done nothing that even remotely approaches unlawful or unconstitutional conduct. The plaintiffs' arguments on these points rest entirely on their insistence that

P.App.17

the defendants are violating their First Amendment rights, but that claim has been soundly refuted. *See* Part II, *supra*.

<div align="center">

**CONCLUSION**

</div>

The motion for preliminary injunction should be denied.

<div align="right">

Respectfully submitted.

</div>

<table>
<tr><td valign="top">

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Shawn E. Cowles
Deputy Attorney General for Civil Litigation

Christopher D. Hilton
Chief, General Litigation Division

Landon A. Wade
Texas Bar No. 24098560
Todd A. Dickerson
Texas Bar No. 24118368
Assistant Attorneys General

Leif A. Olson
Texas Bar No. 24032801
Special Counsel

Office of the Attorney General
P.O. Box 12548 (MC-019)
Austin, Texas 78711-2548
(512) 463-2120 (phone)
(512) 320-0667 (fax)
landon.wade@oag.texas.gov
todd.dickerson@oag.texas.gov
leif.olson@oag.texas.gov

*Counsel for Intervenor-Defendant*
*State of Texas*

</td><td valign="top">

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dwain K. Rogers
Texas Bar No. 00788311
County Attorney

Matthew L. Rienstra
Texas Bar No. 16908020
First Assistant County Attorney

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

*Counsel for Defendants*

Dated: July 15, 2022

</td></tr>
</table>

## CERTIFICATE OF SERVICE

I certify that on July 15, 2022, I served this document through CM/ECF upon:

ELLEN V. LEONIDA
MATTHEW BORDEN
J. NOAH HAGEY
SARAH SALOMON
PRATIK GHOSH
AMY SENIA
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
salomon@braunhagey.com
ghosh@braunhagey.com
senia@braunhagey.com

RYAN A. BOTKIN
KATHERINE P. CHIARELLO
MARÍA AMELIA CALAF
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com

*Counsel for Plaintiffs*

         /s/ Jonathan F. Mitchell
         JONATHAN F. MITCHELL
         *Counsel for Defendants*

P.App.19

United States District Court
Western District of Texas
Austin Division

Leila Green Little, *et al.*,
    Plaintiffs,
v.
Llano County, *et al.*,
    Defendants,
and
The State of Texas,
    Intervenor-Defendant.

Case No. 1:22-cv-424-RP

## DECLARATION OF AMBER MILUM

My name is Amber Milum, and I am over the age of 18 and fully competent in all respects to make this declaration. I have personal knowledge of the matters herein stated.

1.      I serve as Director of the Llano County Library System, a position I have held since February 2021. I manage Llano County's three library branches: the Llano Library, the Kingsland Library, and the Lakeshore Library. Library staff at each of the three branches report to me, and I report to the Llano County Judge. As Director, I ensure all aspects of the Llano County Library System run smoothly. In addition to other responsibilities, I am responsible for ensuring sufficient staffing at the libraries, ordering supplies and books, and resolving any maintenance and IT issues. I have worked in the Llano County libraries since 2013. Prior to becoming Director of the Llano County Library System, I served as the library director for the Kingsland library.

2.      As Director, I am in charge of ordering books for each of the three libraries and making sure there is room on the shelves for the new additions. We typically buy around 60 books per library per month. To determine what books to buy, I consider books and authors that are popular at the time and also acquire new books that are popular. I typically look at online lists such as the New York Times Best Sellers list. I also look at the statistics from our libraries to see which

authors and topics are in high demand. I also consider feedback from our patrons about which books they would like to see in the libraries. Our patrons have a list of authors they like and can fill out a form to request that the library purchase any given book. In my selection of books, I try to make sure that our libraries have a diverse collection so that all citizens of Llano County are able to check out books that appeal to them.

3.      The Llano County libraries have a limited amount of shelf space. To make room for the new books we purchase, we must take other books off the shelves. This is a process called "weeding," which is a practice libraries use to ensure their collections remain up-to-date. Weeding involves removing books from our collection that, among other reasons, have declined in popularity, have not been checked out often, or are in poor condition. Books that have been weeded from the Llano County libraries are most often either placed in a "free bin" so that patrons can take them if they would like to, or they are made available for purchase in book sales. The proceeds from the book sales go to the Friends of the Library.  There is one Friends of the Library organization associated with each of the three libraries in the Llano County Library System, and each Friends of the Library organization donates money to its associated library branch.

4.      At the Llano County Library System, we use the "CREW" method to determine which books to weed. The "CREW" method is an established weeding guide for modern libraries that was established in 1976. It is the method taught by the Texas State Library and Archives Commission, which we look to for guidance. "CREW" is an acronym that stands for "Continuous Review, Evaluation, and Weeding." To identify prime candidates for weeding, the CREW method suggests using the "MUSTIE" factors. "MUSTIE" is an acronym that stands for:

- **M**isleading (and/or factually inaccurate)
- **U**gly (in poor physical condition)
- **S**uperseded (by a new editions or better book on the subject)
- **T**rivial (of no discernible literary or scientific merit)
- **I**rrelevant to the needs and interests of the community

- **E**lsewhere (information can be obtained expeditiously elsewhere or at no cost)

I use the MUSTIE factors in determining which books I weed from the libraries.

5.      As the "CREW" acronym suggests, weeding is a continual process that is done throughout the year. At the Llano County libraries, there is a big weed that normally happens around August of each year. But I, along with the other branch librarians, am constantly on the lookout for books to be weeded so that our libraries have a current collection for our patrons. A total of 8,143 books/DVDs were weeded from the Llano County libraries from January 1, 2021, through March 31, 2022. This is a typical number of books/DVDs to be weeded from our libraries in a 15-month period.

6.      In the summer of 2021, a number of patrons became concerned about two books that were on the shelves of the children's section: "*I Broke My Butt*" and "*My Butt is So Noisy.*" These are illustrated books that show a child's naked buttocks. The same concerned patrons began to check these books out repeatedly. As a result, no one else was able to check out the books, although I am unaware of anyone else who actually wanted to check out these books. I weeded these two books because they were not being circulated sufficiently to warrant keeping them on the shelves, not because of the viewpoints or content expressed in either of those books.

7.      Also in the summer of 2021, the library purchased some books that had not yet been put on the shelves: "*I Need a New Butt*," (which I originally discussed with patrons at the same time of the discussions referenced in the previous paragraph), "*Larry the Farting Leprechaun,*" *Harvey the Heart Had Too Many Farts,*" "*Gary the Goose and His Gas on the Loose*," and "*Freddie the Farting Snowman*." I decided to weed these books in July and August of 2021 because I felt they would have the same fate as the "*I Broke My Butt*" and *"My Butt is So Noisy"* books, and that they would not circulate sufficiently if added to the system.

8.     In the fall of 2021, some members of the community became concerned that there were books in the children's section that depicted nude children and sexual acts. I was asked by Commissioner Jerry Don Moss to identify books in the children's section of the library that depicted naked children and sexual acts. Two of the books identified were "*It's Perfectly Normal*" and "*In the Night Kitchen.*" "*It's Perfectly Normal*" contains graphic illustrations of naked persons at various ages, including infants and adolescents. The book also contains illustrations of adults engaging in sexual intercourse. "*In the Night Kitchen*" contains illustrations of a naked toddler whose genitals are depicted throughout the book. In reviewing these two books, I noted they had been checked out too infrequently to remain on the shelves. "*In the Night Kitchen*" had been checked out only a little over once per year since it was purchased in 1999. "*It's Perfectly Normal*" had only been checked out seven times in the fifteen years it had been on the shelves. It had not been checked out at all since 2018. Since neither book appeared to be in high demand, they were weeded consistent with my normal weeding procedures. I would have weeded each of these books regardless of the viewpoints or content expressed in those books, and I would have done so even if no one in the community had ever complained about them.

9.     In October 2021, members of the community became concerned that children were able to access books that depict sexual acts through its online database of books at the time: OverDrive. I was tasked by Judge Ron Cunningham and the Llano County Commissioners to find a way to implement parental controls on OverDrive. After going back and forth with representatives from OverDrive, I learned that even if parental controls were implemented, a child using OverDrive could still easily change the settings to remove any filters. The County Judge and the Commissioners ultimately decided to terminate access to OverDrive. In January 2022, the Llano County Library System began the approval and contractual process required to partner with another online database for books, namely Bibliotheca. That process was completed on March 14,

2022. Bibliotheca (via its CloudLibrary App) significantly more content than OverDrive and is much more user-friendly. After the switch to Bibliotheca, the library was able to block minors from accessing the online server through our Apollo ILS (Integrated Library System). This had the effect of allowing a parent to permit their minor child to access any content the parent thought was appropriate via the parent's Bibliotheca/CloudLibrary account. Community feedback in response to the switch from OverDrive to Bibliotheca has been overwhelmingly positive.

10.     Each of the seven plaintiffs is able to access books and library materials on Bibliotheca through the Llano County Library System, and they have been able to do so since May 9, 2022, when the Bibliotheca/CloudLibrary system went live for library patrons. Each of the following books is currently available to the plaintiffs in at least one of the following three ways: (1) On Bibliotheca/CloudLibrary; (2) For check out from the Llano County library system through Inter Library loan; or (3) For check out directly from the Llano County library system through its "in-house checkout" system, in which a personal or donated book is made available to library patrons for check out. The following chart explains the extent to which each of the disputed books remains available to the plaintiffs for online reading or physical check out:

| Title | Author | Availability |
|---|---|---|
| *Caste: The Origins of Our Discontents* | Wilkerson, Isabel | Bibliotheca/CloudLibrary |
| *They Called Themselves the K.K.K.: The Birth of an American Terrorist Group* | Bartoletti, Susan Campbell | Inter Library loan |
| *Spinning* | Walden, Tillie | Inter Library loan |
| *In the Night Kitchen* | Sendak, Maurice | Inter Library loan |
| *It's Perfectly Normal: Changing Bodies, Growing Up, Sex and Sexual Health* | Harris, Robie | Bibliotheca/CloudLibrary |
| *My Butt is So Noisy!, I Broke My Butt!, I Need a New Butt* | McMillan, Dawn | Inter Library loan, Physical copies available for in-house checkout |

DocuSign Envelope ID: D9537E23-935E-4595-BF93-5ED7731AAE34

| *Larry the Farting Leprechaun, Gary the Goose and His Gas on the Loose, Freddie the Farting Snowman, Harvey the Heart Has Too Many Farts* | Bexley, Jane | Inter Library loan, Physical copies available for in-house checkout |
| *Being Jazz: My Life as a (Transgender) Teen* | Jennings, Jazz | Bibliotheca/CloudLibrary and one physical copy (Currently checked out and overdue) |
| *Shine* | Myracle, Lauren | Inter Library loan |
| *Gabi, a Girl in Pieces* | Quintero, Isabel | Inter Library loan, and Bibliotheca/CloudLibrary |
| *Freakboy* | Clark, Kristin Elizabeth | Inter Library loan |

The Inter Library loan system allows the Llano Library System to order many books that are not directly available from the Llano libraries. Patrons ask that a librarian process the loan request, which the librarian orders using the NRE Gateway website. Most patrons are already aware of the ability to request a book via the loan process, and those patrons that request a book not currently in the library catalog are informed that a loan is an option. The loan system involves numerous libraries located in Texas and other states. Loaned books are usually subject to a nominal postage fee and on average arrive in the Llano library within a few days to several weeks.

11.     In addition to the current availability of these books described in the chart in paragraph 10, a donor who wishes to remain anonymous has pledged to me that he will donate physical copies of each of the books listed in the chart for inclusion in Llano County's "in-house checkout" if those books are not already available for checkout through that in-house checkout system. I have promised that donor that I will accept his gift and add each of those books to our collection of titles available for in-house checkout. This will ensure that each of the plaintiffs can check out physical copies of each of the disputed books from the Llano County library system without having to use Inter Library loan or Bibliotheca if they find those alternatives inconvenient.

I will notify the Court immediately when the donor's gift arrives and the books are added to our in-house checkout collection.

12.  In November 2021, I was forwarded an email from Judge Cunningham that he had received from Bonnie Wallace. I was not familiar with Bonnie Wallace at the time. The list attached to the Judge's November 2021 email contained a list of 59 books that were either on the library shelves or available on OverDrive. 12 books were on OverDrive and 47 books were in the physical libraries. I was not instructed to do anything with respect to the books on the list, but I decided to review them out of curiosity. I reviewed each of the 47 physical books and in the process, I discovered that 6 of the books should be weeded: "*Freakboy*," "*Shine*," "*Caste: The Origins of our Discontents*," "*Gabi, a Girl in Pieces*," and "*They Called Themselves the K.K.K.: The Birth of an American Terrorist Group*." The remaining 41 books did not meet the criteria for weeding and seemed to be relatively popular with our patrons. I therefore decided to leave those 41 books on the shelves so our patrons could continue to check them out. My decision to weed the six books had nothing to do with the viewpoints or content expressed in any of those books. I would have weeded each of those six books regardless of the viewpoints or content expressed in those books, and I would have done so even if no one in the community had ever complained about them. These books were either put into our book sale shelf and sold to patrons or donated to a local book resale shop.

13.  "*Freakboy*" was weeded because it had been checked out only once since it was added to the library's collection in 2015. The last and only time it was checked out was June 13, 2016. "*Spinning*" was weeded because it had been checked out only four times since it was added to the library's collection in 2018 and had not been checked out at all in the last two years. "*Gabi, a Girl in Pieces*" was weeded because it had been checked out only three times since it was added to the library's collection in 2016, and it also had not been checked out at all in over two years.

*"They Called Themselves the K.K.K.: The Birth of an American Terrorist Group"* was weeded because it had only been checked out twice since it was added to the library's collection in 2011, and it had not been checked out at all since 2011. It is expected that books be checked out multiple times per month to avoid being weeded. I weeded these books so that we could make room for other books that would be more popular with our patrons.

14. *"Shine"* was weeded because it had only been checked out nine times over a ten-year period. I do not recall exactly why *"Caste: The Origins of Our Discontents"* was weeded. However, given it was only in the library system for a year, it is most likely that the book was weeded due to physical damage. Furthermore, as of May 9, 2022, this book is available for checkout via the Bibliotheca/CloudLibrary system.

15. I did not consider the content of any of the books I weeded when I made the decision to weed them. I also did not consider any of the viewpoints expressed in any of the books I weeded. I weeded the books based on the objective criteria I always use in determining which books to weed.

16. I was never instructed or pressured by the County Judge or any of the County Commissioners to weed or otherwise permanently remove any books from the Llano County libraries. I was also never instructed to remove any books from the libraries by the Llano County Advisory Board. The advisory board has no authority to direct me to perform any acts. The advisory board also does not have authority to pre-approve any book purchases. Those decisions are made by me only. I am aware that the Judge referenced "pulling" books with nudity or sexual content in at least one email to me. My understanding of "pulling" in that context was that the books were to be pulled from the shelves and reviewed to determine the appropriate section of the library in which they should be shelved, such as the adult, young adult, or children's sections.

DocuSign Envelope ID: D9537F23-935E-4595-BF93-5E97731AA52A

17.     In December, the libraries were closed to the public for three days to organize the books in the libraries and re-label some of the books. As part of the organization process, my staff and I ensured that any books depicting nudity or sexual acts were properly labeled and placed in appropriate sections of the library. No book was removed based on its content or viewpoint during this process.

18.     Each of the plaintiffs claims that they "cannot check out" the books listed in the chart in paragraph 10 "because they are no longer on library shelves." Day Decl., ECF No. 22-2, at ¶ 4; Jones Decl., ECF No. 22-3, at ¶ 3; Kennedy Decl., ECF No. 22-4, at ¶ 3; Little Decl., ECF No. 22-5, at ¶ 3; Moster Decl., ECF No. 22-7, at ¶ 3; Puryear Decl., ECF No. 22-9, at ¶ 3; Waring Decl., ECF No. 22-11, at ¶ 3. Those statements are false. Each of the plaintiffs can check out physical copies of the following books through Inter Library loan: *They Called Themselves the K.K.K.: The Birth of an American Terrorist Group* by Susan Campbell Bartoletti; (2) *Spinning* by Tillie Walden; (3) *In the Night Kitchen* by Robie Harris; (4) *My Butt is So Noisy!*, *I Broke My Butt!*, and *I Need a New Butt* by Dawn McMillan; (5) *Larry the Farting Leprechaun*, *Gary the Goose and His Gas on the Loose*, *Freddie the Farting Snowman* by Dawn McMillian; (6) *Shine* by Lauren Myracle; (7) Gabi, a Girl in Pieces by Isabel Quintero; and (8) *Freakboy* by Kristin Elizabeth Clark. Each of the plaintiffs can also check out physical copies of the following books directly from the Llano County libraries: (1) *My Butt is So Noisy!*, *I Broke My Butt!*, and *I Need a New Butt* by Dawn McMillan; (2) *Larry the Farting Leprechaun*, *Gary the Goose and His Gas on the Loose*, *Freddie the Farting Snowman* by Dawn McMillian.

19.     In addition, each of the plaintiffs will be able to check out physical copies of *every* book listed in in paragraph 10 as soon as we receive the promised gift from the anonymous donor mentioned in paragraph 11.

20.     All the facts and information contained within this declaration are within my personal knowledge and are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___7/15/2022_____ in Llano, Texas.

DocuSigned by:

*Amber Milum*

AMBER MILUM

**United States District Court**
**Western District of Texas**
**Austin Division**

Leila Green Little, *et al.*,
   Plaintiffs,
v.
Llano County, *et al.*,
   Defendants,
and
The State of Texas,
   Intervenor-Defendant.

Case No. 1:22-cv-424-RP

## DECLARATION OF RON CUNNINGHAM

My name is Ron Cunningham, and I am over the age of 18 and fully competent in all respects to make this declaration. I have personal knowledge of the matters herein stated.

1.     I serve as County Judge for Llano County, a position I have held since 2019. In this capacity, I preside over commissioners' court, represent the county in many administrative functions, serve as the budget officer, cover broad judicial duties, such as presiding over misdemeanor criminal and small civil cases, probate matters and appeals from the Justice of the Peace Court, and serve as head of emergency management for the county.

2.     Part of my duties include overseeing the Llano County Libraries. The Director of the Llano County Library System, Amber Milum, reports to me and the Llano County Commissioners.

3.     Around the summer of 2021 it came to my attention that some Llano County library patrons were concerned about pornographic and overtly sexual books in the libraries' children's section. In December 2021, the Commissioners and I allowed for our Director to close the libraries for three days in order to allow them to fully evaluate the books and contents of those books in the children's section.  It was during this closure that the Director of the Library and her staff made

P.App.30

the decision to rearrange the children and junior sections. This decision was neither directed nor influenced by me or the commissioners.

4.      The first specific book that came to my attention was "*It's Perfectly Normal*," which depicts multiple naked persons ranging from infants to adults. It also depicts adults engaged in sexual intercourse. I learned that the book had been weeded by Ms. Milum because it had not been checked out very often.

5.      It also came to my attention at this time that there was at least one book the library had ordered but had not been placed on the shelves, namely "*Freddie the Farting Snowman."* I asked Ms. Milum if she thought this type of book was a good representation of Llano County and we made the decision not to put this book on the shelves. I subsequently became aware of other books related to the same subject, namely "*I Need a New Butt*," "*Larry the Farting Leprechaun*," *Harvey the Heart Had Too Many Farts*," and "*Gary the Goose and His Gas on the Loose*," that were not placed on the shelves by Ms. Milum.

6.      In November 2021, I received an email from Bonnie Wallace that contained a list of books. I did not look at the list. I forwarded the email to Ms. Milum for her to consider. To this day I am unaware of the books that are on the list.

7.      Also in the fall of 2021, members of the community became concerned that children were able to access adult material that depicted sexual acts on the online book database Llano County used at the time, OverDrive. I tasked Ms. Milum with figuring out a way to implement parental control filters on OverDrive so that these materials would not be accessible by children absent parental consent. Through conversations with OverDrive representatives, Ms. Milum determined, and OverDrive confirmed, that even if filters were implemented, children accessing OverDrive could easily change the settings to remove the filters. As a result, the Commissioners Court voted to suspend access to OverDrive while we looked for a solution for this problem.

8.      Even before the events that led to this lawsuit occurred, I had made it a priority to make changes to the Llano County Library Advisory Board, as it appeared it needed to be revamped. The board had been made up of the same individuals for a number of years. They had not met regularly as they were supposed to have been. And they had not updated their policies since 2006. As a result, The Commissioners and I decided to restructure the board. As part of the restructuring, we expanded the board from 7 members to 13 members so that the board reflected a broader representation of the community. The Commissioners and I were in charge of appointing the board members, with myself and each commissioner responsible to select one or more members of the Advisory Board.  The appointments of the board were made and approved consistent with past practices of Llano County Commissioners Court.

9.      After the Library Advisory Board was restructured and new members appointed in January 2022, the board was tasked with reviewing current library policies and making recommendations to the Commissioners Court regarding those policies. They were also tasked with proposing updates to their own bylaws, which had not been updated since 2006.  Finally, the board was tasked with proposing a solution to the OverDrive issue. The board does not have any authority to act on its own. It has the authority only to make recommendations for consideration to the Commissioners Court.

10.     To this point, the newly restructured board has made only two official recommendations to the Commissioners. It has recommended that its proposed bylaws be implemented, and after review and implementation of certain modifications to the Advisory Board's proposal by the Commissioners, the bylaws were approved as modified. The board also recommended that the county switch from OverDrive to Bibliotheca as its online book resource. Bibliotheca (also known by the name of the associated app, CloudLibrary), is more user-friendly, and contains significantly more content than OverDrive, among other benefits. After adoption of

the Biliotheca, the Library System blocked minors from accessing the online server through our Apollo ILS (Integrated Library System). Parents are still able to permit their minor child to access any content the parent thinks appropriate via the parent's Bibliotheca/CloudLibrary account. After conferring with the Director of the Library and receiving her recommendation for Bibliotheca as well, the Commissioners and I approved this recommendation. Bibliotheca was made available to all Llano County adult residents with library cards on May 9, 2022

11.     I have never instructed any library staff, including Ms. Milum, to remove any books from the Llano County library shelves. Nor have I removed any books. It is not within my duties as County Judge to either acquire or remove books from the libraries. I have only directed that books depicting child nudity and sexual acts be placed in appropriate sections of the library. To the extent any books have been removed, it is my understanding that those books have been removed from the shelves pursuant to the library's weeding policies. Furthermore, although I did in at least one email to Ms. Milum direct her to "pull" books with "sexual activity or questionable nudity," it was the shared understanding of both myself and Ms. Milum that "pull" in the context used meant to remove such books from the shelves for review prior to making a decision on whether to re-shelve the books in a different section of the library such as the adult section.

12.     All the facts and information contained within this declaration are within my personal knowledge and are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15 day, June 2022 in Llano, Texas.

RON CUNNINGHAM

**United States District Court**
**Western District of Texas**
**Austin Division**

Leila Green Little, *et al.*,
   Plaintiffs,
v.
Llano County, *et al.*,
   Defendants,
and
The State of Texas,
   Intervenor-Defendant.

Case No. 1:22-cv-424-RP

## DECLARATION OF JERRY DON MOSS

My name is Jerry Don Moss, and I am over the age of 18 and fully competent in all respects to make this declaration. I have personal knowledge of the matters herein stated.

1.    I serve as County Commissioner for Llano County's Precinct 4, a position I have held since 2007. In this capacity, I serve as one of four elected County Commissioners who, along with the County Judge, are tasked with shared oversight of the County's budget and operations, such as approving procurement contracts, setting tax rates, and similar matters.

2.    Part of my duties as County Commissioner involve approving the budget and policies of the three libraries that make up the Llano County Library System. The county's flagship library in the city of Llano is within my precinct. I do not oversee the day-to-day operations of the libraries as that job is performed by the Library Director, currently Ms. Amber Milum.

3.    Around the summer of 2021, I received complaints from concerned Llano County residents that there were books in the libraries' children's sections that depicted child nudity and sexual acts. As these concerns grew stronger, I personally visited the Llano library to speak with the librarians about the issue. I was directed to what I was told was the "worst" book in the children's section: "*It's Perfectly Normal.*" The book had been placed in the "10 and under" section

of the children's area books. I saw that the book depicted nude persons ranging from infants to adults throughout. It also contained illustrations of adults engaging in sexual intercourse. It was my opinion that this book and other such books should be placed in a different section for adults.

4.     During this time, I spoke occasionally with Amber Milum, Director of the Llano County Library Systems. I made clear to Ms. Milum that I was not her boss and could not tell her what to do. I was simply trying to get a better understanding of the issues that had been brought to my attention. After discussion with Ms. Milum, she and I determined that the Llano County libraries should be closed for three days during Winter Break to reorganize the libraries' collections and ensure that the books were placed in their proper sections. I placed this item on the Commissioner Court's agenda, and it was approved. Although I had no personal knowledge of this until a later date, I subsequently learned that as part of the library reorganization, books were re-labeled so that their subject matter could be more easily identified. I never directed or suggested that any books be removed from the library based on their content.

5.     Through this lawsuit, I have learned that I was copied on an email sent from Bonnie Wallace to Judge Ron Cunningham that had a list of books attached to it. I do not recall ever seeing this email. I did not know what books were on the attached list at that time, and in fact only learned of the list's existence when it was brought to my attention during my deposition in this lawsuit. I have also learned through this lawsuit of emails sent to me that attribute removal of books to me and thanking me for it. These emails misunderstand what actually occurred. I never removed any books or ordered any books to be removed from the libraries. To my knowledge, any books that have been taken off the library shelves have been removed pursuant the library's weeding policies as explained to me by Ms. Milum.

6.     All the facts and information contained within this declaration are within my personal knowledge and are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ____ day, June 2022 in Llano, Texas.

JERRY DON MOSS

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
JULY 29
2022 JUL 19 PM 3: 33
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION**

P.App.37

# INTRODUCTION

In opposition to the abundant evidence that Defendants removed books from Llano County libraries based on viewpoint discrimination, Defendants now assert that the books about critical race theory, gender, and sexuality that appeared on their list of "pornographic filth" were "weeded" pursuant to standard procedure. This story is a pretext, contradicted by Defendants' sworn testimony, their contemporaneous notes and correspondence, and common sense. In any event, Defendants' pretext also reflects viewpoint discrimination: Defendants admit that they targeted books on their disfavored list for weeding based on complaints about the books' content. Further, by their own admissions, Defendants did not follow their own "standard procedures": they removed books that met none of their weeding criteria, further evidencing discriminatory intent. Because Defendants' conduct is based on viewpoint discrimination, there is no viable justification for it, nor do Defendants offer one.

In the face of incontrovertible evidence of their viewpoint-based discrimination, Defendants press two unavailing arguments. First, Defendants claim that they were free to discriminate against books they do not like because libraries should be allowed to choose what books to stock. This argument is foreclosed by *Campbell v. St. Tammany Parish Sch. Bd.*, 64 F.3d 184 (5th Cir. 1995), which held that the government cannot remove books from libraries simply because it disagrees with them. Second, Defendants claim that Plaintiffs can find the banned books elsewhere. This is, at best, an unavailing voluntary cessation argument. Unless a defendant can prove that there is absolutely no possibility of recurrence, having broken the law once, they cannot be trusted to follow the law absent judicial relief. That is especially true here, where Defendants are making shifting and inconsistent claims and hiding evidence of their misconduct. Defendants' behavior underscores the necessity of the injunction Plaintiffs seek.

1

P.App.38

## ARGUMENT

### I. PLAINTIFFS HAVE MADE A CLEAR SHOWING THAT DEFENDANTS HAVE ENGAGED IN VIEWPOINT DISCRIMINATION

Because they understand that the First Amendment prohibits viewpoint discrimination, Defendants' first claim is that they did not engage in it. Their story, however, is contradicted by their own testimony and documents, and would not excuse their conduct even if believed.

#### A. Defendants Offer Contradictory and Pretextual Bases for Removing Books from the Library System Shelves

The following facts are undisputed: (1) In sworn interrogatory responses and testimony, Defendants admitted to removing *In the Night Kitchen*, *It's Perfectly Normal*, and the "butt" and "fart" books from shelves because of "inappropriate content" (Decl. of Sarah Salomon ("Salomon Decl.") Exs. 1, 2 at 42:5-20, 43:2-12, 129:3-8, 17-23, & 3 at 46:10-47:4); (2) In early November 2021, a pro-censorship group combed through the library catalog to determine which Krause list books were available, because they believed those titles contained inappropriate content related to sexuality, gender identity, and racial equality (Decl. of Amy Senia in Supp. of Pls.' Mot. for Prelim. Inj. ("Senia Decl."), ECF No. 22-10, Exs. 8, 22, 23; Salomon Decl. Ex. 4 at 31:13-32:16, 40:21-41:4); (3) On November 10, 2021, Defendant Wallace sent a list of the fifty-nine Krause list books available in the Library System to Defendant Cunningham and others, labeling those books "pornographic filth" (Senia Decl. Ex. 7; Decl. of Amber Milum ("Milum Decl."), ECF No. 49-1, ¶ 12); (4) The same day, Defendant Cunningham forwarded the list to Defendant Milum and ordered her to "pull[ ] immediately" "any and all books that depict any type of sexual activity or questionable nudity" (Senia Decl. Ex. 7); (5) A few days later, at least seven Krause list books had been pulled (Senia Decl. Exs. 6, 9, 23); and (6) Defendant

2

P.App.39

Milum had hidden *How to Be an Antiracist* behind the front desk. (Salomon Decl. Ex. 2 at 74:13-75:18.)

Now, Defendants claim that—although they rounded the banned books up for review due to complaints about their content—they removed the books according to standard weeding procedures. (Milum Decl. ¶¶ 6-8, 12-15; Decl. of Jerry Don Moss ("Moss Decl."), ECF No. 49-3, ¶ 11.) As a threshold matter, Defendants cannot make this argument because they deliberately obstructed discovery into these issues. (Salomon Decl. ¶¶ 9-12.) For example, they refused to produce a list of books which remain in the Library System despite not having been checked out for more than three years, a list that could be used to test whether Defendants followed their own weeding policy. (Salomon Decl. Ex. 2 at 31:21-32:1.) They have also refused to produce the list of books removed from library shelves since March 2022. (Salomon Decl. Ex. 2 at 33:19-34:6.)[1]

Moreover, Defendants' story does not stand up to scrutiny. Their declarations contradict their sworn testimony and should be disregarded. *See Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (A party "may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation"). For example, Defendant Milum claims she "was never instructed or pressured to weed or otherwise permanently remove any books from the Llano County libraries." (Milum Decl. ¶ 16.) She wrote in a contemporaneous note, however, that Defendant Moss "told me that I should take [the butt books] out of the system" (Salomon Decl. Ex. 5), and testified that Defendant Cunningham

---

[1] Defendants' tactics were plainly intended to prevent full discovery into their conduct. For example, they removed all the attachments from the emails they produced and converted the emails to pdf format, stripping all metadata to prevent effectively examining them about what they received, when, and from whom. (Salomon Decl. ¶¶ 9-12.)

P.App.40

directed her to remove books from library shelves because people found them offensive.
(Salomon Decl. Ex. 2 at 43:2-12.)

Although Defendant Milum testified that a book should not be weeded based on a single
factor (Salomon Decl. Ex. 2 at 24:5-10), she could not identify more than one factor justifying
the weeding of *any* book that was removed. (Milum Decl. ¶¶ 6-12.) [2] Indeed, all but one[3] were
"weeded" despite not meeting any criteria:

- Defendant Milum claims the "butt books" were weeded because "they were not being circulated sufficiently," *but admits that they could not circulate because patrons who disapproved of the books "began to check [them] out repeatedly."* (Milum Decl. ¶ 6.)

- Defendant Milum, who purchased the "fart" books because she believed they had "value" for children, claims she preemptively weeded them because "they would not circulate sufficiently," *but acknowledges that she deleted them from the system before they could ever circulate, in response to Defendant Cunningham's direct request.* (Salomon Decl. Exs. 2 at 55:2-8, & 5; Milum Decl. ¶ 7.)

- Defendant Milum asserts that in *In the Night Kitchen* was weeded because it "had been checked out only a little over once per year since . . . 1999"—which would not satisfy the criteria for weeding it in any event—*but admits that In the Night Kitchen was still in regular circulation and being checked out by patrons.* (Milum Decl. ¶ 8; Salomon Decl. Ex. 2 at 130:21-131:1.)

- *Spinning, Gabi, a Girl in Pieces, Shine*, and *Caste* have all been checked out multiple times in the past three years—indeed, Shine was most recently checked out in July 2021, months before it was removed from shelves. (Senia Decl. Ex. 6.)

- *Caste* had been checked out three times in the eleven months before it was removed. (*Id.*) Although Defendant Milum now speculates that *Caste* was weeded due to damage, she testified there was "no record" of any damage. (Milum Decl. ¶ 14; Salomon Decl. Ex. 2 at 92:7-11.)

- Contrary to Defendant Milum's assertion, *It's Perfectly Normal*, a non-fiction book, was not eligible for weeding because it had been checked out in the past five years. (Baker

---

[2] Although Defendant Milum now claims a book must be checked out multiple times per month to avoid weeding, she previously testified that a book is weeded if it is not checked out "within three years." (Salomon Decl. Ex. 2 at 31:21-32:1.) Former Kingsland head librarian Suzette Baker has confirmed that the rule for fiction books is three years, and for non-fiction books it is five years. (Decl. of Suzette Baker ("Baker Decl.") ¶ 6.)

[3] Only one banned book—*Freakboy*—arguably met a weeding factor. (Senia Decl. Ex. 6.)

P.App.41

Decl. ¶ 11.) Defendants have admitted that *It's Perfectly Normal* was removed due to inappropriate content. (*See* Moss Decl. ¶ 3; Senia Decl. Ex. 3.)

- Even though *They Called Themselves the K.K.K.* had low circulation, it is the only book in the Library System considering the history of the K.K.K, and thus ineligible for weeding. (Baker Decl. ¶ 14.)

A rule must be "uniformly enforced" to "rebut" the inference that it is "pretextual," and the "infrequent circulation" criteria has been anything but. *Campbell v. St. Tammany Par. Sch. Bd.*, 231 F.3d 937, 941 (5th Cir. 2000). Defendant Milum openly admits that there are books on the shelves that have not been checked out in over three years without being weeded. As described above, Defendants refuse to produce that list. (Salomon Decl. Ex. 2 at 81:10-13, 84:12-85:17.) Moreover, rounding up books because of their viewpoint is not "standard weeding procedure." (Salomon Decl. Ex. 2 at 67:15-17; Baker Decl. ¶ 7.) Even under Defendants' pretextual explanation, they violated the First Amendment by targeting certain books due to complaints regarding their content, and thereafter manufacturing a reason to pull them. "[O]nce [Defendants'] justification has been eliminated, discrimination [is] the most likely alternative explanation." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000).

### B. Switching Electronic Providers in Response to this Lawsuit Does Not Extenuate Defendants' Viewpoint Discrimination

Defendants do not deny that from Fall 2021 to May 9, 2022, the County had no access to a digital catalog, and that Defendants took this overbroad step to prevent access to a single book: *Gender Queer*. (Senia Decl. Exs. 11, 14; Decl. of Ron Cunningham ("Cunningham Decl."), ECF No. 49-2, ¶¶ 7, 10.) Rather, Defendants complain that Plaintiffs are "pretend[ing]" the library's new online service, Bibliotheca, does not exist. (Opp'n, ECF No. 49, at 5.) But Bibliotheca only went live on May 9, 2022—weeks after Plaintiffs filed this suit. (Cunningham Decl. ¶ 10; Compl., ECF No. 1.) This is textbook voluntary cessation: Defendants cannot "evade sanction by

P.App.42

predictable protestations of repentance and reform after a lawsuit is filed." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (citation omitted).

Having a new online provider does not eliminate the need for an injunction because it leaves Defendants free to resume their wrongful conduct. *Meza v. Livingston*, 607 F.3d 392, 399 *decision clarified on denial of reh'g*, 2010 WL 6511727 (5th Cir. Oct. 19, 2010). Moreover, Defendants are up to their old tricks. The Library Board has sought to exercise direct power over removal decisions in at least the following ways: (1) instructing Defendant Milum to remove "all of the young adult and junior books" from the initial book purchase list Defendants received from Bibliotheca, due to a "concern about . . . inappropriate content" (Salomon Decl. Exs. 4 at 114:4-10, 126:12-15, 6 & 7)[4]; and (2) after Defendant Milum placed the initial Bibliotheca purchase order, demanding that she remove additional books that weren't "right for [Llano County's] demographics." (Salomon Decl. Exs. 2 at 105:21-25 & 4 at 124:20-125:13.) If the Library Board has been thwarted in these censorship efforts, it is only because "once the lawsuit hit" it was placed "on hiatus." (Salomon Decl. Ex. 4 at 68:3-12.) Absent court intervention, Defendants will "revert to the offending conduct." *Ctr. for Biological Diversity*, 704 F.3d at 425.

## II.   DEFENDANTS CANNOT JUSTIFY THEIR VIEWPOINT DISCRIMINATION

### A.   The Discretion Afforded Librarians in Catalog Selection Decisions Does Not Extend to Viewpoint-Based Censorship

Defendants assert that their motivation in banning books "does not even matter." (Opp'n at 12.) This argument may be slightly less Orwellian than the claim Defendants have elsewhere advanced that their censorship is government speech (Mot. to Dismiss, ECF No. 42), but it is no more correct. As set forth in greater detail in Plaintiffs' Opposition to the Motion to Dismiss

---

[4] This restriction is particularly perplexing, given that minors can't even access Bibliotheca and so are not at risk of seeing "inappropriate content" there. (Cunningham Decl. ¶ 10.)

P.App.43

(ECF No. 50), the Fifth Circuit has held that under the First Amendment, government officials

"are prohibited from . . . remov[ing] books from . . . library shelves 'simply because they dislike

the ideas contained in those books.'" *Campbell*, 64 F.3d at 188 (quoting *Bd. of Educ., Island*

*Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 857 (1982)); (*see also* Salomon Decl.

Ex. 3 at 34:20-35:16 (agreeing no book should "excluded because of race or nationality or the

political or religious views of the writer").)

Citing the plurality opinion in *United States v. Am. Libr. Ass'n Inc.*, 539 U.S. 194 (2003),

Defendants nevertheless claim they can censor books because libraries "have broad discretion to

decide what material to provide" as part of "making collection decisions." (Opp'n at 11.) But this

case does not concern collection decisions, it concerns ***removal*** decisions plainly subject to First

Amendment scrutiny.[5] Indeed, even if this case were about "discretion" in book selection,

Defendants would not be permitted to discriminate based on "viewpoint." *See Arkansas Educ.*

*Television Comm'n v. Forbes*, 523 U.S: 666, 118 S. Ct. 1633 (1998).

### B.     Defendants Purported Alternative Means of Accessing the Books Do Not Excuse Their Viewpoint Discrimination

Defendants' main argument is that there is no issue here because Plaintiffs can access the

banned books through other sources. (Opp'n at 1-5.) Defendants did not begin offering these

"alternative sources" until after this lawsuit was filed. It would be an exaggeration to describe

Defendants' new solutions as voluntary cessation; but, needless to say, they do not obviate the

need for a preliminary injunction. *Ctr. for Biological Diversity*, 704 F.3d at 425. Moreover,

---

[5] The other cases cited by Defendants—*Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005) and *Egli v. Chester Cnty. Libr. Sys.*, 394 F. Supp. 3d 497 (E.D. Pa. 2019)—concern initial selection decisions by a school board for its curriculum and by a library for its collection, respectively. As such, they are inapposite. And *Gay Guardian Newspaper v. Ohoopee Reg'l Libr. Sys.*, 235 F. Supp. 2d 1362 (S.D. Ga. 2002), concerns the free literature table in the lobby outside a library, an entirely different forum than that at issue here.

P.App.44

because Defendants have refused to comply with discovery, they cannot claim they have only censored these eleven books and "fix" the problem by providing those books alone.

More fundamentally, First Amendment violations "cannot be justified by the fact that there may be other . . . circumstances for . . . expression. The symbolic effect of removing the [book] . . . is more significant than the resulting limitation of access to the story." *Pratt v. Indep. Sch. Dist. No. 831, Forest Lake, Minn.*, 670 F.2d 771, 779 (8th Cir. 1982) (citations omitted); *see also Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 582 (6th Cir. 1976) (The First Amendment violation is "[not] minimized by the availability of the disputed book" elsewhere.)

As Plaintiffs have explained, the effect of Defendants' misconduct goes far beyond the removal of these eleven books. Defendants have transformed the public libraries from "place[s] dedicated to quiet, to knowledge, and to beauty," *Pico*, 457 U.S. at 868, to partisan battlegrounds where disagreement is suppressed. (Decl. of Rebecca Jones ("Jones Decl.") ¶ 5; Decl. of Leila Green Little ("Little Decl.") ¶ 12; Decl. of Jeanne Puryear ("Puryear Decl.") ¶ 6.) This chilling effect has only worsened since Defendants have begun providing pretextual explanations for their censorship. (Decl. of Kathy Kennedy ("Kennedy Decl.") ¶ 6; Decl. of Diane Moster ("Moster Decl.") ¶ 6; Decl. of Cynthia Waring ("Waring Decl.") ¶ 8.) Defendants have refused to provide discovery on the full scope of their activities, but it is now clear that they will go to extreme lengths to conceal it. (Decl. of Richard Day ("Day Decl.") ¶ 8; Little Decl. ¶¶ 8-9.)

To borrow Defendants' phrase, "matters get worse" as we move from law to facts. The Supreme Court has given "the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content." *Turner Broadcasting, Inc. v. F.C.C.*, 512 U.S. 622, 641, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994). Each of Defendants' purported solutions does exactly that. First, Defendants rely on an anonymous donor who

P.App.45

provided copies of certain banned books on July 21, 2022, eight months after they were pulled. (Supp. Decl. of Amber Milum ("Milum Supp. Decl."), ECF No. 53.) Defendants cannot mitigate their First Amendment violation by creating a secret lending library where, if people somehow discover it exists, they may be able to access certain of the banned books. Moreover, those nine books are just the tip of the iceberg. Will this donor be a replenishing fount for all banned books, whose titles Defendants refuse to reveal? And, as part of the library's nebulous "in-house checkout" system, these books will not even be put on shelves, just somehow "made available" for Plaintiffs. (Milum Supp. Decl. ¶ 10.) Prior to its mention in Defendants' Opposition, Plaintiffs had never even heard of in-house checkout, nor had any of the librarians they asked about it. (Little Decl. ¶ 5; Waring Decl. ¶ 6; Day Decl. ¶ 6; Moster Decl. ¶ 5; Jones Decl. ¶ 7; Kennedy Decl. ¶ 5; Puryear Decl. ¶ 5.)

Defendants next claim that Plaintiffs can access the banned books via Inter Library loans, and that patrons are regularly informed of this option. (Milum Decl. ¶ 10.) None of the Plaintiffs were informed of this solution when they sought to check out the banned books. (Little Decl. ¶ 3; Waring Decl. ¶ 3; Day Decl. ¶ 3; Moster Decl. ¶ 3; Jones Decl. ¶ 3; Kennedy Decl. ¶ 3; Puryear Decl. ¶ 3.) Nor is it a real solution—a patron must wait weeks prior to the book arriving and must pay for postage. (Milum Decl. ¶ 10.) Finally, Defendants claim that certain banned books are available on Bibliotheca. (Opp'n at 3-4.) But Plaintiffs should not be forced, due to Defendants' misconduct, to use e-readers where they would prefer to read a book in hardcopy. (Day Decl. ¶ 4; Puryear Decl. ¶ 4; Moster Decl. ¶ 4.) Crucially, Defendants' solutions only work if "a patron knows *in advance* that she wants th[e] eleven specific titles" that were banned. *Sund v. City of Wichita Falls, Tex.*, 121 F. Supp. 2d 530, 550 (N.D. Tex. 2000). It does nothing to

P.App.46

assuage their legitimate suspicion that, as they "browse," still more books are missing from the shelves due to censorship. *Id.*

## III. PLAINTIFFS HAVE MADE A CLEAR SHOWING OF IRREPARABLE HARM AND THE BALANCE OF THE EQUITIES

Defendants claim Plaintiffs have not been irreparably harmed because they can check out the banned books via alternative means and have access to Bibliotheca.[6] (Opp'n at 14.) As explained above, this is pure misdirection: Plaintiffs have described the chilling effects of Defendants activities in detail. (Kennedy Decl. ¶ 6; Moster Decl. ¶ 6; Waring Decl. ¶ 8; Little Decl. ¶¶ 8-9.) The "loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). And far from presenting "powerful evidence of harm to its interests," *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012), Defendants have presented no evidence at all, forfeiting this factor. Finally, Defendants have no "interest in administering [a regulation] in a way that violates federal law." *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 471 (5th Cir. 2017). But "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter.*, 732 F.3d at 539.

## CONCLUSION

In the face of unmistakable evidence of viewpoint discrimination, Defendants have withheld evidence and offered a pretextual explanation that still incorporates viewpoint discrimination. Plaintiffs respectfully ask the Court to grant the preliminary injunction.

---

[6] Defendants also claim that the preliminary injunction Plaintiffs seek is overbroad because it prevents them from weeding to make room for new purchases. (Opp'n at 14.) But the Library System has not acquired *a single new book* since October 2021. (Little Decl. ¶ 7; Puryear Decl. ¶ 6.)

P.App.47

Dated: July 29, 2022                    Respectfully submitted,


Ellen V. Leonida (CA Bar No. 184194)
Matthew Borden (CA Bar No. 214323)
J. Noah Hagey (CA Bar No. 262331)
Sarah Salomon (CA Bar No. 308770)
Pratik Ghosh (NY Bar No. 5754940)
**BraunHagey & Borden LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel & Fax: 415-599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
salomon@braunhagey.com
ghosh@braunhagey.com


Ryan A. Botkin (TX Bar No. 00793366)
Katherine P. Chiarello (TX Bar No. 24006994)
María Amelia Calaf (TX Bar No. 24081915)
Kayna Stavast Levy (TX Bar No. 24079388)
**Wittliff | Cutter PLLC**
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

11

P.App.48

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2022, a true and correct copy of the foregoing document was served via personal messenger service to the following:

**Dwain K. Rogers**
Llano County Attorney
**Matthew L. Rienstra**
First Assistant County Attorney
801 Ford Street, Room 111
Llano, Texas 78643
drogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

**Jonathan F. Mitchell**
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
jonathan@mitchell.law

Ellen V. Leonida

P.App.49

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| Leila Green Little, *et al.*, | § |
| | § |
| | § |
| Plaintiffs, | § |
| | § |
| v. | §    Civil Action No. 1:22-cv-00424-RP |
| | § |
| Llano County, *et al.*, | § |
| | § |
| Defendants. | § |
| | § |

## DECLARATION OF SARAH SALOMON

I, Sarah Salomon, declare:

1.      I am an attorney at BraunHagey & Borden LLP and counsel of record for Plaintiffs in the above-captioned matter. I make this declaration based on personal knowledge and if called upon to testify, I could and would testify competently to the facts stated herein.

2.      Attached hereto as **Exhibit 1** are Defendants' Responses to Plaintiffs' First Set of Interrogatories.

3.      Attached hereto as **Exhibit 2** are the excerpts of Defendant Amber Milum's deposition that are cited in Plaintiffs' Reply in support of their Motion for a Preliminary Injunction.

4.      Attached hereto as **Exhibit 3** are the excerpts of Defendant Jerry Don Moss's deposition that are cited in Plaintiffs' Reply in support of their Motion for a Preliminary Injunction.

5.      Attached hereto as **Exhibit 4** are the excerpts of Defendant Bonnie Wallace's deposition that are cited in Plaintiffs' Reply in support of their Motion for a Preliminary Injunction.

P.App.50

6.      Attached hereto as **Exhibit 5** is a document produced by Defendant Milum reflecting contemporaneous notes regarding requests she received from community members, Defendant Cunningham, and Defendant Moss to remove certain books from library shelves.

7.      Attached hereto as **Exhibit 6** is an April 5, 2022 email chain between Defendant Wallace, Defendant Milum and others on the Library Board regarding book purchases for Bibliotheca.

8.      Attached hereto as **Exhibit 7** is an April 13, 2022 email chain with Defendant Wallace, Defendant Milum and others on the Library Board regarding books that the Library Board wanted removed from a recent purchase of materials from Bibliotheca.

9.      As set forth in Plaintiffs' concurrently-filed Motion to Compel, Defendants have obstructed expedited discovery after agreeing to respond to it in full.

10.      On June 22, 2022, Defendants made a production of documents. However, the list of books Defendants have removed from shelves from March 31, 2022 to May 11, 2022 (when the expedited discovery motion was filed) was not included in the production, even though that list is responsive to Plaintiffs expedited Requests for Production 1 and 4. To date, Defendants have only identified the books that were weeded between January 1, 2021 and March 31, 2022, though Defendant Milum confirmed on the record at her deposition that she could easily run a report for books that had been deleted through the present.

11.      Defendants have also refused to produce responsive discovery that would challenge their supposed "legitimate" bases for weeding the books identified in Plaintiffs' Preliminary Injunction Motion. During her deposition, Defendant Milum explained that, according to the Library System's standard weeding procedure, a book is weeded if it is not checked out at least within three years. Defendant Milum further confirmed that she could pull a

2

P.App.51

report of books that currently remain on shelves even though they have not been checked out in the last three years. However, Defendants have also refused to produce that report.

12.     Furthermore, despite clear instructions in Plaintiffs' Requests for Production to produce documents "in their native format," Defendants produced all emails as PDFs stripped of any metadata and without their attachments. Plaintiffs have raised this issue with Defendants multiple times without resolution. Defendants also appear to have made an incomplete production that does not include Yahoo emails sent by library personnel in their official capacities.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated:  July 29, 2022                By:   _____
                                           Sarah Salomon

3

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

Leila Green Little, *et al.*,
Plaintiffs,
v.
Llano County, *et al.*,
Defendants,
and
The State of Texas,
Intervenor-Defendant.

Case No. 1:22-CV-00424-RP

## DEFENDANTS' RESPONSE TO PLAINTIFFS' INTERROGATORIES TO DEFENDANT LLANO COUNTY SET ONE

TO:   **Plaintiffs,** Leila Green Little, et al., by and through their attorneys of record, Ellen Leonida, BraunHagey & Borden, LLP, 351 California Street, 10th Floor, San Francisco, CA 94104, and Ryan A. Botkin, Wittliff | Cutter PLLC, 1209 Nueces Street, Austin, Texas 78701; **Defendants,** Llano County, et al., by and through their attorneys of record, Dwain K. Rogers, Llano County Attorney, Matthew L. Rienstra, First Assistant County Attorney, 801 Ford Street, Llano, Texas 78643, and by Intervenors, Ken Paxton, Attorney General of Texas, Brent Webster, First Assistant Attorney General, Shawn E. Cowles, Deputy Attorney General for Civil Litigation, Christopher D. Hilton, Chief, General Litigation Division, Landon A. Wade, Attorney in Charge, P.O. Box 12548 (MC-019), Austin, Texas 78711.

**COMES NOW** Defendant, Llano County, in the above entitled and numbered cause and serves its objections and answers to Plaintiff's First Set of Discovery Requests.

Respectfully submitted,

By: *Dwain K. Rogers*
**Dwain K. Rogers**
Attorney in Charge
Texas Bar No. 00788311
County Attorney
**Matthew L. Rienstra**
First Assistant County Attorney
Texas Bar No. 16908020
Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
drogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us
Counsel for Defendants

1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants Objections, Answers, and Responses to Plaintiff's First Set of Discovery Requests was served by facsimile and electronic mail on this the 22nd day of June 2022, to the following:


**Dwain K. Rogers**
Attorney in Charge
Texas Bar No. 00788311
County Attorney

**Matthew L. Rienstra**
First Assistant County Attorney
Texas Bar No. 16908020

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
drogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us
Counsel for Defendants

2

## OBJECTIONS TO DEFINITIONS

Objection is made to the following definition, "INAPPROPRIATE CONTENT", as used in Plaintiff's Interrogatories to Defendant, for the following reasons:

a.  Assumes facts not in evidence;

b.  Not relevant, Defendant has not filed an answer to the Plaintiff's complaint with any defensive contention regarding: "INAPPROPRIATE CONTENT";

c.  The definitions are overbroad as applied to how the Llano County community views the term "INAPPROPRIATE" or its antonym Appropriate.

## INTERROGATORIES

### INTERROGATORY NO. 1:

IDENTIFY any MATERIALS that were RESTRICTED or removed from the LIBRARY SYSTEM from June 2021 to present that YOU have reason to believe were RESTRICTED or removed on the basis of INAPPROPRIATE CONTENT.

### OBJECTION:

Objection is made as to the definition of "INAPPROPRIATE CONTENT," as it:

a.  Assumes facts not in evidence;

b.  Not relevant, Defendant has not filed an answer to the Plaintiff's complaint with any defensive contention regarding: "INAPPROPRIATE CONTENT";

c.  The definition is overbroad as applied to how the Llano County community views the term "INAPPROPRIATE" or its antonym Appropriate.

### RESPONSE:

Subject to the above objection and without waiving same Llano County relies on the answer of Amber Milum, the Llano County Library System director, to wit:

"The only physical books that were removed or restricted were the "butt" books[1], "fart" books[2] and "In the Night Kitchen." The "butt" books and "In the Night Kitchen" were located in the children's

---

[1] "butt" books – "I Need A New Butt!", "I Broke My Butt!", "My Butt is So Noisy!" – Author, Dawn McMillan

[2] "fart" books – "Harvey the Heart Had Too Many Farts", Gary The Goose and His Gas on The Loose", "Freddie the Farting Snowman", Larry The Farting Leprechaun" – Author, Jane Bexley

P.App.56

section of the Llano library. The "fart" books were ordered and delivered yet were never placed in the children's section.

The children's section is an area of the library in which books are located for young readers between the age of one and ten years of age. "Butt" books and "fart" books are picture books that, according to the publisher, are for ages between one and eight years of age.

"Butt" books are children picture books depicting small children displaying their naked buttocks to various individuals, some of whom are adults.

"Fart" books are also picture books.

SIGNED on _June 22_ , 2022.

_Ron Cunningham_
**Ron Cunningham, Llano County Judge**
801 Ford Street, Room 101
Llano, Texas 78643

On behalf of this Defendant, we have made the above Objections.

_Dwain K. Rogers_
**Dwain K. Rogers**
Attorney in Charge
Texas Bar No. 00788311
County Attorney

**Matthew L. Rienstra**
First Assistant County Attorney
Texas Bar No. 16908020

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
drogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us
Counsel for Defendants

4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

Leila Green Little, *et al.*,
Plaintiffs,

v.

Llano County, *et al.*,
Defendants,
and
The State of Texas,
Intervenor-Defendant.

Case No. 1:22-CV-00424-RP

## DEFENDANTS' RESPONSE TO PLAINTIFFS' INTERROGATORIES TO DEFENDANT AMBER MILUM, SET ONE

TO:  **Plaintiffs,** Leila Green Little, et al., by and through their attorneys of record, Ellen Leonida, BraunHagey & Borden, LLP, 351 California Street, 10th Floor, San Francisco, CA 94104, and Ryan A. Botkin, Wittliff | Cutter PLLC, 1209 Nueces Street, Austin, Texas 78701; **Defendants,** Llano County, et al., by and through their attorneys of record, Dwain K. Rogers, Llano County Attorney, Matthew L. Rienstra, First Assistant County Attorney, 801 Ford Street, Llano, Texas 78643, and by Intervenors, Ken Paxton, Attorney General of Texas, Brent Webster, First Assistant Attorney General, Shawn E. Cowles, Deputy Attorney General for Civil Litigation, Christopher D. Hilton, Chief, General Litigation Division, Landon A. Wade, Attorney in Charge, P.O. Box 12548 (MC-019), Austin, Texas 78711.

    **COMES NOW** Defendant, Amber Milum, in the above entitled and numbered cause and serves her objections and answers to Plaintiff's First Set of Discovery Requests.

Respectfully submitted,

By: _Dwain K. Rogers_
**Dwain K. Rogers**
Attorney in Charge
Texas Bar No. 00788311
County Attorney
**Matthew L. Rienstra**
First Assistant County Attorney
Texas Bar No. 16908020
Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
drogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us
Counsel for Defendants

1

P.App.58

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants Objections, Answers, and Responses to Plaintiff's First Set of Discovery Requests was served by facsimile and electronic mail on this the 22nd day of June 2022, to the following:


**Dwain K. Rogers**
Attorney in Charge
Texas Bar No. 00788311
County Attorney

**Matthew L. Rienstra**
First Assistant County Attorney
Texas Bar No. 16908020

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
drogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us
Counsel for Defendants

P.App.59

## OBJECTIONS TO DEFINITIONS

Objection is made to the following definition, "INAPPROPRIATE CONTENT", as used in Plaintiff's Interrogatories to Defendant, for the following reasons:

   a.  Assumes facts not in evidence;

   b.  Not relevant, Defendant has not filed an answer to the Plaintiff's complaint with any defensive contention regarding: "INAPPROPRIATE CONTENT";

   c.  The definitions are overbroad as applied to how the Llano County community views the term "INAPPROPRIATE" or its antonym Appropriate.

## INTERROGATORIES

### INTERROGATORY NO. 1:

IDENTIFY any MATERIALS that were RESTRICTED or removed from the LIBRARY SYSTEM from June 2021 to present that YOU have reason to believe were RESTRICTED or removed on the basis of INAPPROPRIATE CONTENT.

### OBJECTION:

Objection is made as to the definition of "INAPPROPRIATE CONTENT," as it:

   a.  Assumes facts not in evidence;

   b.  Not relevant, Defendant has not filed an answer to the Plaintiff's complaint with any defensive contention regarding: "INAPPROPRIATE CONTENT";

   c.  The definition is overbroad as applied to how the Llano County community views the term "INAPPROPRIATE" or its antonym Appropriate.

### RESPONSE:

Subject to the above objection and without waiving same, the only physical books that were removed or restricted were the "butt" books[1], "fart" books[2] and "In the Night Kitchen," by Maurice Sendak. The "butt" books and "In the Night Kitchen" were located in the children's section of the

---

[1] "butt" books – "I Need A New Butt!", "I Broke My Butt!", "My Butt is So Noisy!" – Author, Dawn McMillan

[2] "fart" books – "Harvey the Heart Had Too Many Farts", Gary The Goose and His Gas on The Loose", "Freddie the Farting Snowman", Larry The Farting Leprechaun" – Author, Jane Bexley

P.App.60

Llano library. The "fart" books were ordered and delivered yet were never placed in the children's section.

The children's section is an area of the library in which books are located for young readers between the age of one and ten years of age. "Butt" books and "fart" books are picture books that, according to the publisher, are for ages between one and eight years of age.

"Butt" books are children picture books depicting small children displaying their naked buttocks to various individuals, some of whom are adults.

"Fart" books are also picture books.

SIGNED on  6-22  , 2022.

**Amber Milum**
102 E. Haynie Street
Llano, Texas 78643

On behalf of this Defendant, we have made the above Objections.

**Dwain K. Rogers**
Attorney in Charge
Texas Bar No. 00788311
County Attorney

**Matthew L. Rienstra**
First Assistant County Attorney
Texas Bar No. 16908020

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us
Counsel for Defendants

P.App.61

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

Leila Green Little, *et al.*,
Plaintiffs,

v.

Llano County, *et al.*,
Defendants,
and
The State of Texas,
Intervenor-Defendant.

Case No. 1:22-CV-00424-RP

## DEFENDANTS' RESPONSE TO PLAINTIFFS' INTERROGATORIES TO DEFENDANT JERRY DON MOSS, SET ONE

TO:     **Plaintiffs,** Leila Green Little, et al., by and through their attorneys of record, Ellen Leonida, BraunHagey & Borden, LLP, 351 California Street, 10th Floor, San Francisco, CA 94104, and Ryan A. Botkin, Wittliff | Cutter PLLC, 1209 Nueces Street, Austin, Texas 78701; **Defendants,** Llano County, et al., by and through their attorneys of record, Dwain K. Rogers, Llano County Attorney, Matthew L. Rienstra, First Assistant County Attorney, 801 Ford Street, Llano, Texas 78643, and by Intervenors, Ken Paxton, Attorney General of Texas, Brent Webster, First Assistant Attorney General, Shawn E. Cowles, Deputy Attorney General for Civil Litigation, Christopher D. Hilton, Chief, General Litigation Division, Landon A. Wade, Attorney in Charge, P.O. Box 12548 (MC-019), Austin, Texas 78711.

      **COMES NOW** Defendant, Jerry Don Moss, in the above entitled and numbered cause and serves his objections and answers to Plaintiff's First Set of Discovery Requests.

Respectfully submitted,

By: _____

**Dwain K. Rogers**
Attorney in Charge
Texas Bar No. 00788311
County Attorney
**Matthew L. Rienstra**
First Assistant County Attorney
Texas Bar No. 16908020
Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
drogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us
Counsel for Defendants

1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants Objections, Answers, and Responses to Plaintiff's First Set of Discovery Requests was served by facsimile and electronic mail on this the 22nd day of June 2022, to the following:


**Dwain K. Rogers**
Attorney in Charge
Texas Bar No. 00788311
County Attorney

**Matthew L. Rienstra**
First Assistant County Attorney
Texas Bar No. 16908020

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
drogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us
Counsel for Defendants

2

## OBJECTIONS TO DEFINITIONS

Objection is made to the following definition, "INAPPROPRIATE CONTENT", as used in Plaintiff's Interrogatories to Defendant, for the following reasons:

a.    Assumes facts not in evidence;

b.    Not relevant, Defendant has not filed an answer to the Plaintiff's complaint with any defensive contention regarding: "INAPPROPRIATE CONTENT";

c.    The definitions are overbroad as applied to how the Llano County community views the term "INAPPROPRIATE" or its antonym Appropriate.

## INTERROGATORY

### INTERROGATORY NO. 1:

IDENTIFY any MATERIALS that were RESTRICTED or removed from the LIBRARY SYSTEM from June 2021 to present that YOU have reason to believe were RESTRICTED or removed on the basis of INAPPROPRIATE CONTENT.

### OBJECTION:

Objection is made as to the definition of "INAPPROPRIATE CONTENT," as it:

a.    Assumes facts not in evidence;

b.    Not relevant, Defendant has not filed an answer to the Plaintiff's complaint with any defensive contention regarding: "INAPPROPRIATE CONTENT";

c.    The definition is overbroad as applied to how the Llano County community views the term "INAPPROPRIATE" or its antonym Appropriate.

### RESPONSE:

Subject to the above objection and without waiving same, Jerry Don Moss relies on the answer of Amber Milum, the Llano County Library System director, to wit:

"The only physical books that were removed or restricted were the "butt" books[1], "fart" books[2] and "In the Night Kitchen", by Maurice Sendak.  The "butt" books and "In the Night Kitchen" were

---

[1] "butt" books – "I Need A New Butt!", "I Broke My Butt!", "My Butt is So Noisy!" – Author, Dawn McMillan

[2] "fart" books – "Harvey the Heart Had Too Many Farts", Gary The Goose and His Gas on The Loose", "Freddie the Farting Snowman", Larry The Farting Leprechaun" – Author, Jane Bexley

3

P.App.64

located in the children's section of the Llano library. The "fart" books were ordered and delivered yet were never placed in the children's section.

The children's section is an area of the library in which books are located for young readers between the age of one and ten years of age. "Butt" books and "fart" books are picture books that, according to the publisher, are for ages between one and eight years of age.

"Butt" books are children picture books depicting small children displaying their naked buttocks to various individuals, some of whom are adults.

"Fart" books are also picture books.

SIGNED on 6-22 , 2022.

Jerry Don Moss
2001 N. State Hwy 16, Suite B
Llano, Texas 78643

On behalf of this Defendant, we have made the above Objections.

**Dwain K. Rogers**
Attorney in Charge
Texas Bar No. 00788311
County Attorney

**Matthew L. Rienstra**
First Assistant County Attorney
Texas Bar No. 16908020

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
drogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us
Counsel for Defendants

P.App.65

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

Leila Green Little, *et al.*,
Plaintiffs,

v.

Llano County, *et al.*,
Defendants,
and
The State of Texas,
Intervenor-Defendant.

Case No. 1:22-CV-00424-RP

## DEFENDANTS' RESPONSE TO PLAINTIFFS' INTERROGATORIES TO DEFENDANT BONNIE WALLACE, SET ONE

TO:   **Plaintiffs,** Leila Green Little, et al., by and through their attorneys of record, Ellen Leonida, BraunHagey & Borden, LLP, 351 California Street, 10th Floor, San Francisco, CA 94104, and Ryan A. Botkin, Wittliff | Cutter PLLC, 1209 Nueces Street, Austin, Texas 78701; **Defendants,** Llano County, et al., by and through their attorneys of record, Dwain K. Rogers, Llano County Attorney, Matthew L. Rienstra, First Assistant County Attorney, 801 Ford Street, Llano, Texas 78643, and by Intervenors, Ken Paxton, Attorney General of Texas, Brent Webster, First Assistant Attorney General, Shawn E. Cowles, Deputy Attorney General for Civil Litigation, Christopher D. Hilton, Chief, General Litigation Division, Landon A. Wade, Attorney in Charge, P.O. Box 12548 (MC-019), Austin, Texas 78711.

**COMES NOW** Defendant, Bonnie Wallace, in the above entitled and numbered cause and serves her objections and answers to Plaintiff's First Set of Discovery Requests.

Respectfully submitted,

By: _Dwain K. Rogers_
**Dwain K. Rogers**
Attorney in Charge
Texas Bar No. 00788311
County Attorney
**Matthew L. Rienstra**
First Assistant County Attorney
Texas Bar No. 16908020
Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
drogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us
Counsel for Defendants

1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants Objections, Answers, and Responses to

Plaintiff's First Set of Discovery Requests was served by facsimile and electronic mail on this the

22nd day of June 2022, to the following:


*Dwain K. Rogers*

**Dwain K. Rogers**
Attorney in Charge
Texas Bar No. 00788311
County Attorney

**Matthew L. Rienstra**
First Assistant County Attorney
Texas Bar No. 16908020

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
drogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us
Counsel for Defendants

2

## OBJECTIONS TO DEFINITIONS

Objection is made to the following definitions, "LIBRARY BOARD", "SEXUAL CONTENT", and "INAPPROPRIATE CONTENT", as used in Plaintiff's Request for Admissions, for the following reasons:

    a.    Assumes facts not in evidence;

    b.    Not relevant, Defendant has not filed an answer to the Plaintiff's complaint with any defensive contention regarding: "INAPPROPRIATE CONTENT";

    c.    The definitions are overbroad as applied to how the Llano County community views the term "INAPPROPRIATE" or its antonym Appropriate.

## INTERROGATORIES

### INTERROGATORY NO. 1:

IDENTIFY any MATERIALS that were RESTRICTED or removed from the LIBRARY SYSTEM from June 2021 to present that YOU have reason to believe were RESTRICTED or removed on the basis of INAPPROPRIATE CONTENT.

### OBJECTION:

Objection is made as to the definition of "INAPPROPRIATE CONTENT," as it:

    a.    Assumes facts not in evidence;

    b.    Not relevant, Defendant has not filed an answer to the Plaintiff's complaint with any defensive contention regarding: "INAPPROPRIATE CONTENT";

    c.    The definition is overbroad as applied to how the Llano County community views the term "INAPPROPRIATE" or its antonym Appropriate.

### RESPONSE:

I am a private citizen and not an employee of the county. The only knowledge I possess is second hand. I have <u>heard</u> that "butt" books[1] were removed and possibly "In the Night Kitchen", by Maurice Sendak.

---

[1] *"butt" books – "I Need A New Butt!", "I Broke My Butt!", "My Butt is So Noisy!" – Author, Dawn McMillan*

P.App.68

SIGNED on   *o-22*  , 2022.

**Bonnie N. Wallace**
1681 R.R. 2323
Llano, Texas 78643


On behalf of this Defendant, we have made the above Objections.

**Dwain K. Rogers**
Attorney in Charge
Texas Bar No. 00788311
County Attorney

**Matthew L. Rienstra**
First Assistant County Attorney
Texas Bar No. 16908020

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us
Counsel for Defendants

4

# EXHIBIT 2

```
 1              IN THE UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF TEXAS
 2                      AUSTIN DIVISION
 3   LEILA GREEN LITTLE, ET     *
     AL.,                       *
 4                              *
     PLAINTIFFS,                *
 5                              * CIVIL ACTION NO.
     VS.                        * 1:22-CV-00424-RP
 6                              *
     LLANO COUNTY, ET AL.,      *
 7                              *
     DEFENDANTS                 *
 8
 9
         *******************************************
10           ORAL AND VIDEOTAPED DEPOSITION OF
                       AMBER MILUM
11                    JUNE 28, 2022
                   (REPORTED REMOTELY)
12       *******************************************
13
14           ORAL AND VIDEOTAPED DEPOSITION OF AMBER
15   MILUM, produced as a witness at the instance of the
16   PLAINTIFF(S), and duly sworn, was taken in the
17   above-styled and numbered cause on JUNE 28, 2022,
18   from 9:14 A.M. to 1:19 P.M., before AMY PRIGMORE,
19   CSR, in and for the State of Texas, reported by
20   stenographic means, at the offices of THE WITNESS,
21   Llano, Texas, pursuant to the Federal Rules of
22   Civil Procedure, the First Emergency Order
23   Regarding the COVID-19 State of Disaster, and the
24   provisions stated on the record or attached hereto.
25
                                            Page 1
```

```
 1               A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFF(S):
     (REMOTELY)
 4        Pratik Ghosh
          Ellen V. Leonida
 5        Sarah Salomon
          BRAUN HAGEY & BORDEN LLP
 6        351 California Street 10th Floor
          San Francisco, CA 94104
 7        ghosh@braunhagey.com
          415-599-0210
 8
 9
     FOR THE DEFENDANT(S):
10   (REMOTELY)
          Dwain K. Rogers
11        LLANO COUNTY ATTORNEY
          Llano County Courthouse
12        801 Ford Street
          Llano, Texas 78643
13        325-247-7733
14
15   FOR THE DEFENDANT(S):
     (REMOTELY)
16        Jonathan F. Mitchell
          MITCHELL LAW PLLC
17        111 Congress Avenue, Suite 400
          Austin, Texas 78701
18        512-686-3940
          jonathan@mitchell.law
19
20
     FOR THE DEFENDANT(S), STATE OF TEXAS:
21        Landon A. Wade
          TEXAS ATTORNEY GENERAL
22        300 W 15th St, 10th Flr
          Austin TX 78701
23        landon.wade@oag.texas.gov
24
25
                                     Page 2
```

P.App.72

```
1     ALSO PRESENT (REMOTELY):

           Austin Redcay, Videographer

2          Taleaka Yates

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

P.App.73

```
 1              P R O C E E D I N G S

 2                    * * *

 3              THE VIDEOGRAPHER:  We are on the       09:14:13

 4   record at 9:14 a.m.  This begins the video recorded  09:14:33

 5   deposition of Amber Milum, taken in the matter of    09:14:37

 6   Leila Green Little, et al, versus Llano County, et    09:14:42

 7   al.                                                   09:14:47

 8              This deposition is being held             09:14:48

 9   remotely.  My name Austin Redcay, and I'm the        09:14:49

10   videographer.  The court reporter is Amy Prigmore,   09:14:53

11   both of us representing Veritext.                    09:14:55

12              Will counsel please introduce            09:14:57

13   themselves for the record, after which the reporter  09:14:59

14   will swear in the witness.                           09:15:01

15              MR. GHOSH:  My name is Pratik Ghosh.     09:15:02

16   That is P-R-A-T-I-K, G-H-O-S-H, of the law firm of   09:15:04

17   Braun Hagey & Borden, on behalf of Plaintiffs.      09:15:10

18              MR. ROGERS:  My name is Dwain            09:15:13

19   Rogers, D-W-A-I-N, R-O-G-E-R-S, Llano County         09:15:14

20   attorney, representing the County and Amber Milum.   09:15:18

21              MR. MITCHELL:  Jonathan Mitchell,        09:15:23

22   J-O-N-A-T-H-A-N, M-I-T-C-H-E-L-L, of Mitchell Law,   09:15:26

23   LLC, representing the County and Amber Milum.        09:15:33

24              AMBER MILUM,

25   having been first duly sworn, testified as follows:
```

Page 6

P.App.74

```
1        And then it goes on to -- to describe          09:39:37

2   MUSTIE.                                              09:39:39

3        Do -- do you see where it says that?           09:39:41

4   A.   Yes.                                            09:39:42

5   Q.   Directly under that, it says:  Decisions are   09:39:42

6   based on some combination of these criteria; that   09:39:46

7   is, an item will probably not be discarded based on 09:39:48

8   meeting only one of these criteria.                 09:39:52

9        Do you agree with that statement?              09:39:54

10  A.   Yes.                                            09:39:56

11  Q.   Then it goes on to say:  Other criteria that   09:40:02

12  might also be considered include age, condition,    09:40:10

13  frequency of use/circulation, multiple -- multiple  09:40:13

14  copies, and currency/accuracy.                      09:40:17

15       Do you agree with that sentence?               09:40:20

16  A.   Yes.                                            09:40:22

17  Q.   Okay.  Within the -- the CREW weeding          09:40:23

18  method, is there any principle that states that     09:40:34

19  librarians should remove books that they disagree   09:40:40

20  with?                                               09:40:44

21  A.   I'm sorry.  Repeat that again.                 09:40:45

22  Q.   Sure.  Within the CREW review method, are      09:40:48

23  there any principles that state that librarians     09:40:55

24  should remove books that they disagree with?        09:40:59

25  A.   No.                                            09:41:01
```

Page 24

```
 1    the -- who put the book in the library?        09:50:04

 2         A.   I -- I don't remember.                09:50:06

 3         Q.   Okay.  Do you remember weeding the book?  09:50:07

 4         A.   No.                                   09:50:11

 5         Q.   Let's go to another book that was removed  09:50:14

 6    that same day, called, Being Jazz, My Life as a   09:50:20

 7    (Transgender) Teen, by Jazz Jennings.           09:50:27

 8              Do you have any knowledge of this title?  09:50:29

 9         A.   Yes.                                  09:50:31

10         Q.   Okay.  And what is your, I guess, knowledge  09:50:31

11    of the title?                                   09:50:35

12         A.   I -- I've seen it on the shelves.  I've  09:50:37

13    never read it.                                  09:50:39

14         Q.   Okay.  It looks like this book was also  09:50:40

15    weeded on November 12, 2021.                    09:50:46

16              Is that right?                        09:50:48

17         A.   Yes.                                  09:50:48

18         Q.   Do you know why it was weeded?        09:50:50

19         A.   Because it had not been getting checked out.  09:50:57

20         Q.   And is -- is the practice -- is -- is the --  09:50:59

21    what is the rule with regards to a book that isn't  09:51:07

22    checked out very frequently?                    09:51:11

23         A.   If it's not getting checked out at least  09:51:11

24    within three years, we will weed it, because it's  09:51:15

25    just -- it's wasting space, when we could put   09:51:21
```

Page 31

P.App.76

| | | |
|---|---|---|
| 1 | something else on the shelves. | 09:51:25 |
| 2 | Q.  Okay.  And is it your testimony today that | 09:51:25 |
| 3 | that was the only reason why Being Jazz was weeded? | 09:51:32 |
| 4 | A.  Yes. | 09:51:37 |
| 5 | Q.  It wasn't weeded for any other reason? | 09:51:38 |
| 6 | A.  No. | 09:51:40 |
| 7 | Q.  I just want to direct your attention -- | 09:51:40 |
| 8 | actually, before I do that, if I wanted to check | 09:51:51 |
| 9 | out, Caste: The Origins of Our Discontents, would I | 09:51:53 |
| 10 | be able to do that from the Llano County Library, | 09:52:00 |
| 11 | assuming I had a library card? | 09:52:05 |
| 12 | A.  It doesn't look like it's in the system, but | 09:52:06 |
| 13 | if we had it, you would be able to. | 09:52:08 |
| 14 | Q.  And it looks like that book was, in fact, | 09:52:10 |
| 15 | checked out last January, January 22nd, and two | 09:52:13 |
| 16 | more times other than that. | 09:52:18 |
| 17 | Do you see that? | 09:52:20 |
| 18 | A.  Yes. | 09:52:20 |
| 19 | Q.  Okay.  So, given that it has been checked | 09:52:20 |
| 20 | out in the last three years, at least three times, | 09:52:25 |
| 21 | do you know why it would be weeded? | 09:52:30 |
| 22 | A.  I -- I don't.  I don't know.  It -- it could | 09:52:32 |
| 23 | have been damaged, when they brought it back.  I -- | 09:52:40 |
| 24 | I don't remember that -- that one. | 09:52:46 |
| 25 | Q.  Okay.  I just want to direct your attention | 09:52:47 |

Page 32

```
 1        A.   Yes.                                    10:06:23

 2        Q.   Okay.  So on August 5th, 2021, you wrote --   10:06:24

 3   or actually, I -- I have the order wrong.  So     10:06:29

 4   strike that.                                      10:06:31

 5             It looks like Mr. Cunningham wrote to you,   10:06:39

 6   on the morning of Thursday, August 5th:  Amber, I   10:06:41

 7   am still receiving calls, letters, and e-mails,   10:06:46

 8   concerning the farts, and butts books.  I think it   10:06:48

 9   is best to remove these books from the shelves for   10:06:51

10   now.  Thank you, Ron Cunningham.                  10:06:53

11             Do you see that?                         10:06:58

12        A.   Yes.                                    10:06:58

13        Q.   Okay.  So here, Mr. Cunningham is telling   10:06:59

14   you to remove these books from the shelves at the   10:07:04

15   library, because of complaints.                   10:07:06

16             Is that right?                           10:07:08

17             MR. ROGERS:  Objection; assumes          10:07:09

18   facts not in evidence.                             10:07:17

19        Q.   (BY MR. GHOSH)  You can answer.          10:07:17

20        A.   Yes.                                    10:07:19

21        Q.   Okay.  The reason that there were complaints   10:07:19

22   is because certain individuals, certain patrons,   10:07:21

23   found these books offensive.                      10:07:24

24             Is that right?                           10:07:25

25             MR. ROGERS:  Same objection.             10:07:34
```

Page 42

P.App.78

```
 1        A.   Yes.                                    10:07:25
 2        Q.   (BY MR. GHOSH)   Okay.   So the reason you   10:07:26
 3   ultimately removed these books from the shelves is   10:07:29
 4   because certain individuals found these books        10:07:30
 5   offensive?                                            10:07:33
 6             MR. ROGERS:   Same objection.              10:07:34
 7        A.   Yes.                                        10:07:35
 8        Q.   (BY MR. GHOSH)   And you were directed to do   10:07:36
 9   so by one of the individuals you described as your   10:07:42
10   supervisor, Mr. Ron Cunningham.                      10:07:44
11             Is that right?                             10:07:46
12        A.   Yes.                                        10:07:46
13        Q.   Okay.   A few hours later, you respond to   10:07:47
14   Mr. Cunningham's e-mail, on Thursday, August 5th,    10:07:54
15   2021, at what looks like 11:38 a.m.                   10:07:57
16             You write:  Yes, sir.  Commissioner Moss   10:08:00
17   suggested that as well.  The, quote, unquote, fart   10:08:02
18   books have never been on the shelves.  I will         10:08:05
19   delete them out of the system.  The other two,       10:08:08
20   quote, unquote, butt books have been checked out.    10:08:11
21   So I am waiting for them to return so I can delete   10:08:13
22   them as well.  I'm sorry for all the problems.       10:08:16
23             So were these the only books that were     10:08:27
24   causing what you describe as problems in the         10:08:30
25   library?                                             10:08:33
```

Page 43

```
 1        A.   No.                                    10:38:28

 2        Q.   Okay.  Other than -- you know, you -- you  10:38:31

 3   said you made the decision to purchase these butt   10:38:38

 4   and fart books because you thought they would, you  10:38:41

 5   know, have some value to children who wanted to     10:38:44

 6   read.                                               10:38:46

 7        Is that right?                                 10:38:46

 8        A.   Yes.                                      10:38:46

 9        Q.   Did any patrons request that you purchase 10:38:48

10   these books?                                        10:38:53

11        A.   No.                                       10:38:54

12        Q.   Okay.  In the last year, have any patrons 10:38:54

13   requested that you purchase books regarding the     10:39:03

14   LGBTQ subject area?                                 10:39:06

15        A.   Probably.  I don't know off the top of my 10:39:08

16   head.                                               10:39:18

17        Q.   Okay.  So -- so when you say probably, I  10:39:18

18   guess, what are you basing that answer off of?      10:39:25

19        A.   I know that I've had a few.  I -- I just  10:39:27

20   don't know when they were or what they were.  I     10:39:39

21   don't -- I don't remember.                          10:39:43

22        Q.   Got it.  And -- and just like certain people 10:39:43

23   were angry about these, you know, quote, butt or    10:39:52

24   fart books, you also received letters and e-mails   10:39:55

25   that you produced to us, of people that had         10:39:58
```

Page 55

P.App.80

| | | |
|---|---|---|
| 1 | books on this list? | 10:54:48 |
| 2 | MR. ROGERS: Same objection. | 10:54:51 |
| 3 | A. It wasn't to review books on this list. | 10:54:52 |
| 4 | Q. (BY MR. GHOSH) Oh, okay. So, what was it | 10:54:55 |
| 5 | for, then? | 10:54:57 |
| 6 | A. It was to just review every book on our | 10:54:58 |
| 7 | shelf, to get -- to know what we actually had, | 10:55:01 |
| 8 | because we were all new to the -- to the library. | 10:55:03 |
| 9 | Q. And that happened in November of 2021? | 10:55:08 |
| 10 | A. November or December. | 10:55:11 |
| 11 | Q. Okay. So after you received this list, you | 10:55:18 |
| 12 | did a comprehensive review of every book in your | 10:55:21 |
| 13 | library, just to see what you had? | 10:55:24 |
| 14 | A. Yes. | 10:55:26 |
| 15 | Q. Okay. How -- how often do you do a | 10:55:26 |
| 16 | comprehensive review of every book in the library? | 10:55:30 |
| 17 | A. We do a -- a weeding every August. | 10:55:32 |
| 18 | Q. And what does -- what -- were you at the | 10:55:39 |
| 19 | meeting in August 2019? | 10:55:43 |
| 20 | A. What meeting? | 10:55:52 |
| 21 | Q. The -- the one you just testified to, the | 10:55:53 |
| 22 | one where you conduct sort of this comprehensive | 10:55:55 |
| 23 | review of books. | 10:55:58 |
| 24 | A. Oh. Just every August, each library will | 10:56:00 |
| 25 | either print out a report, or go to the shelves, | 10:56:04 |

Page 67

P.App.81

| | | |
|---|---|---|
| 1 | year? | 11:03:14 |
| 2 | A.  No.  Most people will look at our catalog, | 11:03:14 |
| 3 | and if they don't see it, then they know it's not | 11:03:25 |
| 4 | in our system. | 11:03:28 |
| 5 | Q.  Okay.  But nobody has specifically come to | 11:03:29 |
| 6 | you, asking for that book, or other similar books? | 11:03:31 |
| 7 | A.  I -- I don't recall.  We could have it on | 11:03:34 |
| 8 | our request list. | 11:03:36 |
| 9 | Q.  Okay.  Okay. | 11:03:36 |
| 10 | Here, it says there is a book -- and I will | 11:03:42 |
| 11 | highlight it for you right now.  It's this column | 11:03:48 |
| 12 | right here (indicating). | 11:03:50 |
| 13 | And under the purchased by category, it says | 11:03:50 |
| 14 | that you purchased the book, and it was added to | 11:03:53 |
| 15 | the system October 22nd, 2020.  And the book is | 11:03:55 |
| 16 | called, How to Be an Antiracist. | 11:03:59 |
| 17 | Do you remember that book? | 11:04:03 |
| 18 | A.  A little bit.  I remember the title. | 11:04:04 |
| 19 | Q.  Okay.  Do you know how this book made its | 11:04:10 |
| 20 | way onto Ms. Wallace's list? | 11:04:14 |
| 21 | A.  No. | 11:04:16 |
| 22 | Q.  Okay.  Is that a book that you were ever | 11:04:18 |
| 23 | asked to remove? | 11:04:24 |
| 24 | A.  No. | 11:04:26 |
| 25 | Q.  Okay.  Did you ever restrict any books | 11:04:26 |

Page 74

P.App.82

| | | |
|---|---|---|
| 1 | related -- actually, strike that, please. | 11:04:33 |
| 2 | If I were to say the acronym, CRT, would it | 11:04:37 |
| 3 | mean anything to you? | 11:04:43 |
| 4 | A. Critical race theory. | 11:04:44 |
| 5 | Q. Okay. And you're familiar with that term, | 11:04:46 |
| 6 | generally? | 11:04:50 |
| 7 | A. A little, yeah. | 11:04:50 |
| 8 | Q. Does the library keep books about that | 11:04:51 |
| 9 | subject matter, critical race theory? | 11:04:55 |
| 10 | A. I believe we have the book at the Kingsland | 11:04:57 |
| 11 | Library. | 11:05:02 |
| 12 | Q. Okay. Were you ever asked to restrict | 11:05:02 |
| 13 | access to that book? | 11:05:05 |
| 14 | A. No. | 11:05:07 |
| 15 | Q. Okay. You never put that book behind the | 11:05:07 |
| 16 | front desk so that people would have to ask you for | 11:05:20 |
| 17 | it? | 11:05:24 |
| 18 | A. I believe I did, yeah. | 11:05:25 |
| 19 | Q. And -- | 11:05:26 |
| 20 | A. But we also have other books back there for | 11:05:28 |
| 21 | people to ask for. | 11:05:31 |
| 22 | Q. And how do you determine when a book, you | 11:05:32 |
| 23 | know, gets put behind your desk, versus put up on a | 11:05:36 |
| 24 | shelf for everybody to see? | 11:05:40 |
| 25 | A. It -- it just depends on -- on, like, what | 11:05:41 |

Page 75

```
 1   of these books were in our teen area.  So it -- it      11:12:18

 2   was just probably one that it -- it wasn't getting       11:12:23

 3   checked out as much as it should.                        11:12:26

 4        Q.  How about this?  Let me ask a slightly          11:12:28

 5   different question.                                      11:12:32

 6            Did you remove every single book that wasn't    11:12:32

 7   checked out for three years, or slightly less?           11:12:34

 8        A.  Probably, yeah, so that way, we could get       11:12:37

 9   new books in that area.                                  11:12:42

10        Q.  So there are currently no books in the Llano    11:12:43

11   County Library that haven't been checked out for         11:12:51

12   three years, or slightly less?                           11:12:53

13        A.  No.  There -- there probably is, yes.           11:12:55

14        Q.  Okay.  And the reason why Spinning and Shine    11:13:01

15   were selected to be weeded is because you looked at      11:13:04

16   them because Ms. Wallace had them on her list.           11:13:08

17            Isn't that right?                               11:13:11

18                MR. ROGERS:  Objection; misstates           11:13:12

19   testimony.                                               11:13:13

20        A.  I'm sorry.  Repeat that.                        11:13:14

21        Q.  (BY MR. GHOSH)  The reason that Shine and       11:13:15

22   Spinning were selected to be weeded and reviewed to      11:13:19

23   be weeded, as opposed to other books, were because      11:13:22

24   Ms. Wallace had them on her list.                        11:13:27

25            Isn't that right?                               11:13:31
```

Page 81

```
1     two -- within the last three years.                11:15:53

2        A.   Right.                                      11:15:57

3        Q.   But it was still weeded.                    11:15:57

4        A.   And sometimes, we would -- we used to check 11:15:59

5     out new books, other books, to our display.  And   11:16:01

6     so, that would actually show a checkout.  But then  11:16:04

7     when you would go and look at the report, a person  11:16:07

8     might not have checked it out, you know, but it was 11:16:09

9     on display four times, or -- you -- you know.        11:16:12

10    It -- it could have been that as well.  I don't      11:16:14

11    recall.                                              11:16:16

12        Q.   Yeah.  And are you able to -- to pull a      11:16:16

13    report, in -- in your sort of ordinary course, of    11:16:20

14    books that haven't been checked out in the last      11:16:26

15    three years, but are still on the shelf?             11:16:28

16        A.   Yes.  I could probably do a report like     11:16:30

17    that.                                                11:16:34

18             MR. GHOSH:  Okay.  I -- I think             11:16:42

19    we're going to take a break in one second.  Dwain,   11:16:43

20    we -- we would like to request that -- that report.  11:16:46

21             I understand you may have                    11:16:50

22    objections, and -- and, you should state them on     11:16:51

23    the record now.  But we would just like to make      11:16:53

24    that document request, if possible.                  11:16:55

25             MR. ROGERS:  All right.                     11:17:01
```

Page 84

P.App.85

```
 1              MR. GHOSH:  And to be clear about        11:17:02
 2   it, we're just asking for the spreadsheet of books  11:17:03
 3   that have not been checked out in the past three    11:17:07
 4   years, but are still available to be checked out    11:17:09
 5   from the library system.                            11:17:11
 6              And if -- and sorry.  Court              11:17:14
 7   Reporter, if you could just wait for Mr. Rogers to  11:17:16
 8   lodge any response or objection before going off    11:17:19
 9   the record.  I don't want to cut him off.           11:17:22
10              MR. ROGERS:  Sure.  And I guess -- I     11:17:25
11   guess the first thing I would object to is that it  11:17:27
12   sounds like that document doesn't exist.  And I     11:17:29
13   don't think we have a -- an RFP on file that would  11:17:32
14   be -- that that would necessarily even be           11:17:37
15   responsive to.                                      11:17:42
16              But, I guess, if we can -- perhaps,      11:17:50
17   what we can do, Pratik, is talk offline and --      11:17:52
18              MR. GHOSH:  Yeah.  That -- that's        11:17:56
19   totally fine.  I just wanted to give you the        11:17:57
20   opportunity -- I made a request.  I didn't want     11:17:58
21   to -- I didn't want to have the last request for no 11:18:00
22   reason --                                           11:18:02
23              (Multiple voices.)                       11:18:03
24              MR. ROGERS:  Understood.                 11:18:03
25   Understood.  But I will lodge those objections at   11:18:04
```

Page 85

```
 1   have been deleted for that.                    11:45:18

 2       Q.  You don't -- you don't know that it was  11:45:22

 3   damaged, correct?                              11:45:24

 4       A.  Correct.                               11:45:25

 5       Q.  One way or another?                    11:45:25

 6       A.  Right.  I -- I don't remember.         11:45:27

 7       Q.  And there's no actual record of it being  11:45:29

 8   damaged.  There's not, like, a piece of paper that  11:45:33

 9   says, hey, these books were damaged when we      11:45:34

10   reviewed them.                                 11:45:36

11       A.  No.                                    11:45:37

12       Q.  Okay.  But there is a record of Ms. Wallace  11:45:37

13   complaining about it, and disagreeing with it, and  11:45:44

14   calling books like this filth, right?          11:45:50

15           MR. ROGERS:  Objection; assumes        11:45:56

16   facts not in evidence, vague.                  11:45:58

17       Q.  (BY MR. GHOSH)  You can answer the question.  11:45:59

18       A.  In the e-mail, yes.                    11:46:01

19       Q.  And shortly after she made that description  11:46:02

20   of this book, it was removed, right?           11:46:06

21       A.  Yes.                                   11:46:08

22       Q.  The next book, Being Jazz, My Life as a  11:46:08

23   (Transgender) Teen -- Teen, sorry, by Jazz      11:46:16

24   Jennings.  This book was on Ms. Wallace's list,  11:46:19

25   right?                                         11:46:25
```

Page 92

| | | |
|---|---|---|
| 1 | Ms. Bonnie Wallace asked that the board get | 12:02:29 |
| 2 | approval rights for any new purchases you make on | 12:02:32 |
| 3 | the library? | 12:02:41 |
| 4 | A. Yes. | 12:02:42 |
| 5 | Q. And what was your reaction to that? | 12:02:42 |
| 6 | A. I went and, I believe, gave them a list of | 12:02:44 |
| 7 | what we were looking at. | 12:02:59 |
| 8 | Q. Okay. Has the library board ever sought to | 12:03:00 |
| 9 | reverse or change any purchasing decisions that | 12:03:16 |
| 10 | you've made? | 12:03:19 |
| 11 | A. Yes. | 12:03:19 |
| 12 | Q. Okay. And how many times has that happened? | 12:03:22 |
| 13 | A. Once. | 12:03:26 |
| 14 | Q. Okay. Do you know when that occurred? | 12:03:28 |
| 15 | A. Possibly March. | 12:03:38 |
| 16 | Q. Okay. And do you know what the objection -- | 12:03:50 |
| 17 | what the board's objection was to the books you | 12:03:55 |
| 18 | purchased or you wanted to purchase, I guess? | 12:03:59 |
| 19 | A. They didn't believe that the patrons would | 12:04:02 |
| 20 | check them out. | 12:04:06 |
| 21 | Q. Okay. And did they give you a reason why? | 12:04:09 |
| 22 | A. They didn't believe that it was right for | 12:04:11 |
| 23 | our demographics. | 12:04:17 |
| 24 | Q. For -- for which demographic? | 12:04:18 |
| 25 | A. Llano County. | 12:04:22 |

Page 105

P.App.88

```
 1    whole thing, and adults were -- were around.  Just    12:36:54
 2    like the -- the butt book.                             12:37:01
 3        Q.  I see.  And was In the Night Kitchen meant     12:37:02
 4    for adults?                                            12:37:11
 5        A.  No.                                            12:37:11
 6        Q.  This was another children's book.              12:37:12
 7            Is that right?                                 12:37:14
 8        A.  Yes.                                           12:37:14
 9        Q.  Okay.  And these complaints were               12:37:15
10    principally -- were they by adults or were they        12:37:23
11    made by children?                                      12:37:25
12        A.  Neither.                                       12:37:26
13        Q.  So, who -- who made these complaints?          12:37:26
14        A.  No one made a complaint about the book.  It    12:37:28
15    was brought to our attention, when we were going       12:37:32
16    through everything, the -- the collection.             12:37:36
17        Q.  And why was this book removed without any      12:37:38
18    complaints?                                            12:37:48
19        A.  With everything that was going on and being    12:37:48
20    said, and us looking through our collection, about     12:37:59
21    all of the sexual content or nudity, that book just    12:38:06
22    kind of fell into the -- the nudity part.  And so,     12:38:14
23    it was just being looked at more.                      12:38:21
24        Q.  And so, the major concern here was that you    12:38:23
25    really didn't want to incite any sort of               12:38:26
```

                                              Page 129

| | | |
|---|---|---|
| 1 | unnecessary controversy or backlash where you | 12:38:30 |
| 2 | didn't need to. | 12:38:33 |
| 3 | Is that right? | 12:38:34 |
| 4 | A. Right. | 12:38:34 |
| 5 | Q. Okay. So it was just kind of easier to just | 12:38:35 |
| 6 | remove these books -- this book specifically? | 12:38:40 |
| 7 | A. With -- with the content in it, and that it | 12:38:43 |
| 8 | was a very old book. Yes, it was getting checked | 12:38:52 |
| 9 | out. It was kind of worn. So that just kind of, | 12:38:57 |
| 10 | you know, went with it, for -- for me to -- to weed | 12:39:02 |
| 11 | it. | 12:39:06 |
| 12 | Q. Got it. I want to talk about -- actually, | 12:39:06 |
| 13 | let -- let's just go back to In the Night Kitchen | 12:39:14 |
| 14 | just very briefly. | 12:39:18 |
| 15 | Did you -- did you have, like, a record of | 12:39:19 |
| 16 | the book being worn? | 12:39:22 |
| 17 | A. No. It -- it's mainly when -- when we're | 12:39:23 |
| 18 | looking at them, assessing, you know, the whole | 12:39:27 |
| 19 | book. But it -- I -- I believe that book was added | 12:39:31 |
| 20 | in '99. So it did have some -- some wear on it. | 12:39:34 |
| 21 | Q. But it was -- it was still being checked | 12:39:41 |
| 22 | out, right -- | 12:39:43 |
| 23 | A. Yes. | 12:39:43 |
| 24 | Q. -- by -- by patrons? | 12:39:43 |
| 25 | A. Yes, it was. | 12:39:44 |

Page 130

P.App.90

```
 1        Q.  It was a popular book.              12:39:45

 2            Was there any thought about maybe just    12:39:48

 3   replacing it?                                12:39:50

 4        A.  I -- I'm not sure if that was on my list or  12:39:50

 5   not.                                         12:39:55

 6        Q.  Okay.                               12:39:57

 7        A.  Possibly.                           12:39:58

 8        Q.  Yeah.  I just briefly want to go back to  12:39:59

 9   November of 2021 now.  You had received a sort of  12:40:03

10   directive, from commissioner -- or sorry, County  12:40:13

11   Judge Cunningham, as a result of the list that   12:40:17

12   Bonnie Wallace had circulated to him and others.  12:40:22

13   And you began what you describe as a compressive  12:40:25

14   review of books for depictions of nudity, and other  12:40:27

15   content like that.                           12:40:30

16            Is that right?                      12:40:30

17        A.  Yes.                                12:40:31

18              MR. ROGERS:  Object as compound,    12:40:32

19   vague, misstating testimony.                 12:40:33

20        Q.  (BY MR. GHOSH)  Okay.  You said that you  12:40:38

21   conducted this review, with other individuals.   12:40:40

22            Is that right?                      12:40:43

23        A.  Yes.                                12:40:44

24        Q.  Okay.  When you were conducting this review  12:40:44

25   of content, for things that may have been offensive  12:40:52
```

Page 131

```
1    COUNTY OF HARRIS
2    STATE OF TEXAS
3
4                 REPORTER'S CERTIFICATE
5
6         I, AMY PRIGMORE, Certified Shorthand
7    Reporter in and for the State of Texas, hereby
8    certify that this transcript is a true record of
9    the testimony given remotely by the witness named
10   herein, after said witness was duly sworn remotely
11   by me.
12        I further certify that the deposition
13   transcript was submitted on _____,
14   _____ to the witness or to the attorney for the
15   witness for examination, signature, and return to
16   me by _____, _____.
17        I further certify the amount of time used
18   by each party at the deposition is as follows:
19        Pratik Ghosh - (00h00m)
          Dwain K. Rogers - (00h00m)
20        Jonathan F. Mitchell - (00h00m)
          Landon A. Wade - (00h00m)
21
22        I further certify that I am neither
23   attorney nor counsel for, related to, nor employed
24   by any of the parties to the action in which this
25   testimony was taken.  Further, I am not a relative
```

                                              Page 157

P.App.92

```
 1    or employee of any attorney of record in this

 2    cause, nor do I have a financial interest in the

 3    action.

 4              SUBSCRIBED AND SWORN TO by the undersigned

 5    on this the 5TH day of JULY, 2022.

 6

 7

 8

 9

10

11

12

13

14
              AMY PRIGMORE, Texas, CSR 3929

15            Expiration Date:  4/30/2023

16

17

18

19

20

21

22

23

24

25

                                            Page 158
```

# EXHIBIT 3

```
 1              IN THE UNITED STATES DISTRICT COURT

                  WESTERN DISTRICT OF TEXAS

 2                      AUSTIN DIVISION

 3    Leila Green Little, et        §

      al.,                          §

 4                                   §     Civil Action No.

              Plaintiffs,           §     1:22-cv-00424-RP

 5                                   §

      v.                            §

 6                                   §

      Llano County, et al.,         §

 7                                   §

              Defendants.           §

 8    ─────────────────────────────────────────────────

 9         REMOTE ORAL AND VIDEOTAPED DEPOSITION OF

10                     JERRY DON MOSS

11                      June 28, 2022

12    ─────────────────────────────────────────────────

13              REMOTE ORAL AND VIDEOTAPED DEPOSITION OF

14    JERRY DON MOSS, located in the Law Library, Llano

15    County Courthouse, 801 Ford Street Llano, Texas,

16    produced as a witness at the instance of the

17    Plaintiffs, and duly sworn, taken in the above-styled

18    and numbered cause on June 28, 2022, from 1:31 p.m. to

19    4:18 p.m., before Joseph D. Hendrick, Certified

20    Shorthand Reporter in and for the State of Texas,

21    reported by machine shorthand, pursuant to Notice and

22    the Federal Rules of Civil Procedure and any provisions

23    stated on the record or attached hereto.

24

25    Job No. 5299892

                                            Page 1
```

P.App.95

```
1                    A P P E A R A N C E S
                 (All Appearing Remotely Via Zoom)
2
     FOR THE PLAINTIFFS:
3        Ellen V. Leonida
         Sarah Salomon
4        Pratik Ghosh
         BRAUNHAGEY & BORDEN LLP
5        351 California Street, 10th Floor
         San Francisco, CA 94104
6        (415) 599-0210
         leonida@braunhagey.com
7        salomon@braunhagey.com
         ghosh@braunhagey.com
8
     FOR THE DEFENDANTS:
9        Dwain K. Rogers
         LLANO COUNTY ATTORNEY
10       801 Ford Street
         Llano, TX 78643
11       (325) 247-7733
         drogers@co.llano.tx.us
12
         Jonathan F. Mitchell
13       MITCHELL LAW PLLC
         111 Congress Avenue, Suite 400
14       Austin, TX 78701
         (512) 686-3940
15       jonathan@mitchell.law
16   ALSO PRESENT:
         Landon A. Wade
17       Office of the Attorney General of Texas
         209 W. 14th St.
18       Austin, TX 78701-1614
19       Norm Harris, Videographer
20
21
22
23
24
25
                                          Page 2
```

P.App.96

```
 1                          - - -

 2                P R O C E E D I N G S

 3            (June 28, 2022 - 1:31 p.m.)

 4                          - - -

 5              THE VIDEOGRAPHER:  We are going on the

 6    record at 1:31 p.m.

 7              My name is Norm Harris representing

 8    Veritext.

 9              The date today is June the 28th, 2022.

10              This deposition is being conducted remotely

11    using virtual technology and is being taken by counsel

12    for the plaintiff.

13              The caption of the case is Leila Green

14    Little, et al., versus Llano County, et al.

15              This case is filed in the United States

16    District Court, Western District of Texas, Austin

17    Division, Case Number 1:22-cv-00424-RP.

18              The name of the witness is Jerry Don Moss.

19              Attorneys, please state your appearance as

20    well as your location.

21              MS. LEONIDA:  This is Ellen Leonida for

22    plaintiffs, and I am in San Francisco, California.

23              MR. ROGERS:  Dwain Rogers, Llano County

24    Attorney for the County and Commissioner Moss, and I am

25    in Llano, Texas.
```

<div align="right">Page 5</div>

P.App.97

1          MR. MITCHELL:  Jonathan Mitchell, counsel

2     for the County and Commissioner Moss, from Mitchell

3     Law, PLLC.  I am in Austin, Texas.

4          THE VIDEOGRAPHER:  Okay.  Our court

5     reporter will swear in the witness.

6          THE REPORTER:  Would you raise your right

7     hand, please.

8          THE WITNESS:  (Complied)

9          THE REPORTER:  Do you swear or affirm that

10    the testimony you are about to give in this case will

11    be the truth, the whole truth, and nothing but the

12    truth, so help you God?

13          THE WITNESS:  I do.

14                    JERRY DON MOSS

15      having been duly sworn, testified as follows:

16                      EXAMINATION

17    BY MS. LEONIDA:

18       Q.    Good afternoon, Mr. Moss.

19       A.    Good afternoon.  How are you?

20       Q.    I'm well.  How are you?

21       A.    Good.

22       Q.    Have you ever been deposed before?

23       A.    No, ma'am.

24       Q.    Have you ever had to testify about

25    anything?

                                              Page 6

P.App.98

```
 1    renting the meeting room.
 2         Q.    Okay.  So I want to talk now about the
 3    Materials Selection Policy.  And having learned my
 4    lesson from the last two series of questions, I'm just
 5    going to put it on the screen for you now.
 6         A.    Thank you.  Okay.
 7         Q.    So, can you see this Materials Selection
 8    Policy?
 9         A.    Yes, ma'am.
10         Q.    And this is the policy that applies now
11    from August of twenty oh -- from 2006 to now, it's the
12    current policy, right?
13         A.    I believe so.
14         Q.    Can you read the highlighted part of that
15    policy?  I can make it bigger for you.
16         A.    Do you want me to read it out loud?
17         Q.    Yes, please.
18         A.    Just the highlighted part?
19         Q.    Just the highlighted part.
20         A.    "'In no case should any book be excluded
21    because of race or nationality or the political or
22    religious views of the writer.  There should be the
23    fullest practicable -- practicable provision of
24    material presenting all points of view concerning the
25    problems and issues of our times . . . international,
```

Page 34

P.App.99

1    national and local; and media or other reading

2    materials of sound factual authority should not be

3    proscribed or removed from the library shelves because

4    of partisan or doctrinal disapproval'.  The library

5    does not promulgate particular beliefs or view -- or

6    views, nor is the selection of any given media

7    equivalent or -- to endorsement of the viewpoint of the

8    author expressed" herein.  "...therein."  Sorry.

9         Q.     Thank you.  Do you -- do you agree with

10   that, with that, personally --

11        A.     Yes --

12        Q.     -- that policy?

13        A.     Yes, I do.

14        Q.     And that is definitely the county's policy,

15   correct?

16        A.     Yes, ma'am, I think so.

17        Q.     So, the fact that a book exists in Llano

18   County Library System doesn't mean that -- that the

19   county agrees with what that book says, correct?

20        A.     Will you repeat that?

21        Q.     Sure.  The fact that a book is in the Llano

22   County Library System doesn't mean that Llano County

23   agrees with what that book says, does it?

24        A.     I -- I don't -- I don't guess.  I don't

25   know.  I don't have any idea what all the books are in

Page 35

P.App.100

```
 1    things you want me to look at.  Huh.  Yeah, I see some
 2    of that.
 3         Q.    Okay.  Just let me know when you're done.
 4    I have -- I --
 5         A.    Okay.
 6         Q.    -- just have some follow-up questions about
 7    this.
 8         A.    Okay.  Hold on a second, please.  Okay.
 9    I've read all of that that is on the screen.
10         Q.    Okay.  So the first question that I have is
11    you see there's a reference there that I highlighted
12    about, "Commissioner Moss and Judge Cunningham have
13    instructed Amber, the head librarian, to remove certain
14    books..."?
15         A.    I see that.
16         Q.    Okay.  What books were those?
17         A.    There's something missing there and any --
18    any books that I have talked to her about, which, once
19    again was strictly my opinion, I made it very clear
20    that she doesn't work under me, but was a book out -- a
21    couple of books out of the children's section of the
22    library -- not out of the library.  The -- there's --
23    to answer the second part of that question, there's
24    a -- the butt books that we had talked about earlier,
25    and I just seen the -- a part of one of them that was
```

                                            Page 46

P.App.101

1    never on the shelf to start with as far as I

2    understand, and then there's a book that's called, It's

3    Perfectly Normal that was in the ten-and-under section

4    that shows people having sex.

5              Did I answer your question?

6        Q.    Yes, so those are -- those are the books

7    that Ms. -- is it Ms. or Mrs. Wells?

8        A.    I don't have no idea.

9        Q.    Okay.

10       A.    Well, I guess it's Mrs. Wells.

11       Q.    So those are the books that Mrs. Wells is

12   talking about when she says that -- that you and Judge

13   Cunningham have instructed Amber, the head librarian,

14   to remove certain books?

15       A.    I assume so.  But I don't know what Judge

16   Cunningham has done or hasn't done.

17       Q.    Okay.  Did you have a meeting with

18   Mrs. Wells, do you remember having a meeting with

19   Mrs. Wells around the time of this email?

20       A.    I am horrible with timelines, so I'm not

21   sure about the time of this email, but I have met with

22   Ms. Wells before.

23       Q.    Okay.  Were some of those meetings before

24   Thanksgiving of last year?

25       A.    I think so, yes.

Page 47

```
 1              REPORTER'S CERTIFICATION
 2           DEPOSITION OF JERRY DON MOSS
 3                  June 28, 2022
 4         I, Joseph D. Hendrick, Notary Public and
 5    Certified Shorthand Reporter in the State of Texas,
 6    hereby certify to the following:
 7         That the Witness, JERRY DON MOSS, was duly
 8    sworn by the officer and that the transcript of the
 9    oral deposition is a true record of the testimony given
10    by the witness;
11         I further certify that pursuant to FRCP
12    Rule 30(f)(1) the signature of the deponent:
13              X      was requested by the deponent or
14    a party before the completion of the deposition and is
15    to be returned within 30 days from date of receipt of
16    the transcript;
17              _____ was not requested by the
18    deponent or a party before the completion of the
19    deposition;
20         I further certify that the amount of time
21    used by each party is as follows:
22              Ellen V. Leonida - 02:29:42
23              Sarah Salomon - 00:00:00
24              Pratik Ghosh - 00:00:00
25              Dwain K. Rogers - 00:00:00

                                       Page 103
```

```
 1              Jonathan F. Mitchell - 00:00:00
 2              I further certify that I am neither counsel
 3      for, related to, nor employed by any of the parties or
 4      attorneys in the action in which this proceeding was
 5      taken;
 6              Further, I am not a relative or employee of
 7      any attorney of record, nor am I financially or
 8      otherwise interested in the outcome of the action.
 9              Subscribed and sworn to on this date:
10      July 3, 2022.
11
12
13
14
15
16
17
18
                Joseph D. Hendrick, CSR #947
                Expiration Date: 04/30/2023
19              Notary Comm. Exp. 01/13/23
                Veritext Legal Solutions
20              Firm Registration No. 571
                300 Throckmorton Street, Ste. 1600
21              Fort Worth, TX  76102
                Telephone (800) 336-4000
22
23
24
25
                                            Page 104
```

# EXHIBIT 4

P.App.105

```
 1              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF TEXAS
 2                     AUSTIN DIVISION
 3     LEILA GREEN LITTLE, et     )
       al.,                       )
 4                                )
            Plaintiffs,           )
 5                                ) CIVIL ACTION
       v.                         ) NO. 1:22-cv-00424-RP
 6                                )
       LLANO COUNTY, et al.,      )
 7                                )
            Defendants.           )
 8
 9
10         REMOTE ORAL AND VIDEOTAPED DEPOSITION OF
11                     BONNIE WALLACE
12               Wednesday, June 29, 2022
13
14             REMOTE ORAL AND VIDEOTAPED DEPOSITION OF
15     BONNIE WALLACE, produced as a witness at the instance of
16     the Plaintiffs, Leila Green Little, et al., and duly
17     sworn, was taken in the above-styled and numbered cause
18     on the 29th of June, 2022, from 11:03 a.m. to 3:17 p.m.,
19     before Sharon Ross, Certified Shorthand Reporter in and
20     for the State of Texas, reported remotely by
21     computerized stenotype machine, pursuant to the Texas
22     Rules of Civil Procedure and/or any provisions stated on
23     the record or attached hereto.
       Reported by:
24     SHARON ROSS, Texas CSR #1961,
       Hawaii CSR #432, RMR, CRR, CRC
25     Realtime Systems Administrator
```

Page 1

P.App.106

```
 1                          APPEARANCES
 2

    For Plaintiffs Leila Green Little, et al.:
 3         Ms. Sarah Salomon (via webconference)
 4         Ms. Ellen V. Leonida (via webconference)
           Mr. Pratik Ghosh (via webconference, when noted)
 5         BRAUNHAGEY & BORDEN LLP
           351 California Street, 10th Floor
 6         San Francisco, California  94104
           415.599.0210
 7         Salomon@braunhagey.com
           Leonida@braunhagey.com
 8         Ghosh@braunhagey.com
 9

    For Defendants Llano County, et al.:
10         Mr. Dwain K. Rogers (via webconference)
11         Llano County Attorney
           Mr. Matthew Rienstra (via webconference)
12         First Assistant County Attorney
           Llano County Courthouse
13         801 Ford Street, Room 111
           Llano, Texas  78643
14         325.247.7733
           Drogers@co.llano.tx.us
15         Mrienstra@co.llano.tx.us
16             - and -
17         Mr. Jonathan Mitchell (via webconference)
           MITCHELL LAW PLLC
18         111 Congress Avenue, Suite 400
           Austin, Texas  78701
19         512.686.3940
           Jonathan@mitchell.law
20

21   Also Present:
22         Mr. Landon Wade
23         Ms. TaLeakca Yates
24
25
                                               Page 2
```

P.App.107

| | | |
|---|---|---|
| 1 | PROCEEDINGS | 11:03 |
| 2 | THE VIDEOGRAPHER: We are now on the record | 11:03 |
| 3 | for the video deposition of Bonnie Wallace. | 11:03 |
| 4 | The time is 11:03 a.m., June 29th, 2022, in | 11:03 |
| 5 | the matter of Leila Green Little, et al. versus Lane | 11:03 |
| 6 | County, et al., Civil Action No. 1:22-cv-00424 -- excuse | 11:03 |
| 7 | me; I said Lane County -- Llano County, et al., Civil | 11:03 |
| 8 | Action No. 1:22-cv-00424-RP, being held in the United | 11:03 |
| 9 | States District Court for the Western District of Texas, | 11:03 |
| 10 | Austin Division. | 11:03 |
| 11 | The court reporter is Sharon Ross. The | 11:03 |
| 12 | videographer is Gus Phillips, and both are | 11:03 |
| 13 | representatives of Veritext Court Reporting. | 11:03 |
| 14 | Will counsel please state their appearances | 11:03 |
| 15 | for the record, beginning with the plaintiff? | 11:03 |
| 16 | MS. SALOMON: Good morning, everyone. This | 11:03 |
| 17 | is Sarah Salomon of BraunHagey & Borden on behalf of | 11:04 |
| 18 | plaintiffs. | 11:04 |
| 19 | MR. ROGERS: Good morning. Dwain Rogers, | 11:04 |
| 20 | Llano County Attorney, representing Defendant and | 11:04 |
| 21 | defending the deposition today. | 11:04 |
| 22 | MR. MITCHELL: Jonathan Mitchell from | 11:04 |
| 23 | Mitchell Law PLLC representing the defendants. | 11:04 |
| 24 | THE VIDEOGRAPHER: Will the court reporter | 11:04 |
| 25 | please administer the oath? | 11:04 |

Page 6

P.App.108

```
 1              THE REPORTER:  Okay.  Ms. Wallace, if you

 2   could raise your right hand, please, I will place you

 3   under oath.

 4                      BONNIE WALLACE,

 5   having been first duly sworn, testified as follows:

 6                      EXAMINATION

 7   BY MS. SALOMON:

 8        Q.  Good morning, Ms. Wallace.  How are you doing     11:04

 9   today?                                                     11:04

10        A.  I'm blessed.  How are you today, Sarah?           11:04

11        Q.  Doing well.  Could you please state your full     11:04

12   name for the record?                                       11:04

13        A.  Yes.  My name is Bonnie Wallace.                  11:04

14        Q.  And, Ms. Wallace, have you been deposed before?   11:04

15        A.  I have, but many years ago.                       11:04

16        Q.  Since it's been many years ago, I'm just going    11:05

17   to go over a couple of, you know, ground rules for         11:05

18   today's proceedings so that we're on the same page.        11:05

19   Does that sound good?                                      11:05

20        A.  Yes, ma'am.                                       11:05

21        Q.  So even though we're appearing virtually, per     11:05

22   the oath you swore, all the answers that you will -- you   11:05

23   give today have to be completely true and accurate just   11:05

24   as if you were testifying in court.                        11:05

25              Do you understand that?                         11:05
```

Page 7

P.App.109

```
 1    exhibit as Exhibit 26.                              11:40

 2         Q.  (BY MS. SALOMON)  And, Ms. Wallace, you see 11:40

 3    here that this is on Chair Matt Krause's letterhead? 11:40

 4         A.  I see that.                                 11:40

 5         Q.  And do you understand this to be the letter 11:40

 6    transmitting that long list of books that you just   11:40

 7    mentioned?                                           11:40

 8         A.  I've never seen the letter before; but if you 11:40

 9    say it is, then I'll take your word for it.          11:40

10         Q.  Got it.  So I'll represent to you that the list 11:40

11    that you were describing was attached to this letter. 11:40

12         A.  That's fair.                                11:40

13         Q.  And Mr. Krause says to "Please identify how 11:40

14    many copies of each book" on the -- "in the attached 11:41

15    addendum" are in your district.                      11:41

16              And then he also goes on to say, "Please   11:41

17    identify any other books or content in your district" on 11:41

18    "the following topics:  Human sexuality, sexually    11:41

19    transmitted diseases, or human immunodeficiencies    11:41

20    various (HIV) or acquired immune deficiency syndrome 11:41

21    (AIDS), sexually explicit images, graphic"           11:41

22    representations "of sexual behavior that is in violation 11:41

23    of the law or contain materials that might make students 11:41

24    feel discomfort, guilt, anguish, or any ... form of  11:41

25    psychological distress because of their race or sex or 11:41
```

                                                    Page 31

```
 1   convey that a student, by virtue of their race or sex,    11:41
 2   is inherently racist, sexist, or oppressive, whether      11:41
 3   consciously or unconsciously."                            11:41
 4             So that's a book of subjects that               11:41
 5   Representative Krause is asking districts to determine     11:42
 6   if they have books in those subjects on the shelves,      11:42
 7   right?                                                    11:42
 8             MR. ROGERS:  I'll object to the extent she      11:42
 9   may not have personal knowledge, therefore, calls for     11:42
10   speculation.                                              11:42
11        Q.  (BY MS. SALOMON)  You can go ahead.              11:42
12        A.  It appear -- it appears to be, yes.              11:42
13        Q.  And fair to say that Representative Krause is    11:42
14   indicating some concern about the appropriateness of      11:42
15   such topics?                                              11:42
16        A.  Apparently so.                                   11:42
17        Q.  So in or around November 2021, you were part of 11:42
18   a community group that was looking at the Krause list;    11:42
19   is that right?                                            11:42
20        A.  I had never seen it.                             11:42
21        Q.  Were you --                                      11:42
22        A.  I mean, I never -- I've still never seen it      11:43
23   until your letter right now and that wasn't the list,     11:43
24   but I've heard about it.                                  11:43
25        Q.  Got it.  So you've heard about it?               11:43
```

Page 32

```
1        Q.   (BY MS. SALOMON)   Did you have any          11:53
2    conversations in the two weeks after sending the      11:53
3    pornographic filth email with anybody about what you had  11:53
4    raised?                                                11:53
5        A.   Yes.                                          11:53
6        Q.   Who did you have conversations with?          11:53
7        A.   Many, many, many people who were surprised at 11:53
8    the copy of the picture of the blowjob from Gender     11:53
9    Queer.                                                 11:54
10       Q.   Did you have a verbal conversation with       11:54
11   Mr. Cunningham in those --                             11:54
12       A.   No.                                           11:54
13       Q.   -- two weeks?                                 11:54
14       A.   No.                                           11:54
15       Q.   Did you have a conversation with Mr. Jerry Don 11:54
16   Moss in those two weeks?                               11:54
17       A.   No.                                           11:54
18       Q.   Did you have a conversation with any other    11:54
19   county commissioner in those two weeks?                11:54
20       A.   No.                                           11:54
21       Q.   All right.   And you said earlier that you had 11:54
22   received a list of about 60 inappropriate books from   11:54
23   Ms. Jones?                                             11:54
24       A.   Yes.                                          11:54
25       Q.   And just give me one second.                  11:54
```

Page 40

P.App.112

1          And you also attached a list of          11:55

2    inappropriate books to your email regarding pornographic    11:55

3    filth?          11:55

4          A.   Yes.   It was the same list.          11:55

5          Q.   So I'm going to mark this document as          11:55

6    Exhibit 29.          11:55

7               And you can see here on the furthest left    11:55

8    column that this is a list of books.   Is that right,    11:55

9    Ms. Wallace?          11:55

10              THE VIDEOGRAPHER:   Counsel, I apologize.    11:55

11   You've accidentally shared your whole desktop instead of    11:55

12   just the document.          11:55

13              MS. SALOMON:   Oh.   No, I appreciate you    11:55

14   letting me know.   Let me -- let me redo that.          11:55

15        Q.   (BY MS. SALOMON)   Is that better?          11:56

16        A.   Yes.   That's correct, ma'am.          11:56

17              MS. SALOMON:   Thanks so much.   So I'm going    11:56

18   to mark this document as Exhibit 29.          11:56

19              (Wallace Exhibit 29 marked.)          11:56

20        Q.   (BY MS. SALOMON)   And, Ms. Wallace, you can see    11:56

21   here that this is a list of books, right?          11:56

22        A.   Yes, I see that.          11:56

23        Q.   And this is a list of books that you had          11:56

24   circulated as the pornographic filth?          11:56

25        A.   Yes.          11:56

                                        Page 41

```
 1        Q.  Okay.                                         12:44

 2        A.  -- they're more detailed.                     12:44

 3        Q.  Got it.  And is there a subcommittee or       12:44

 4   committee that would do any kind of review of the      12:44

 5   appropriateness of books that are currently on the     12:44

 6   shelves?                                               12:44

 7        A.  Well, I would imagine that would be the       12:44

 8   acquisitions.  I don't serve on that, but I don't -- so 12:44

 9   I don't know, but I don't think that they've gotten that 12:44

10   far.                                                   12:44

11             We -- once the lawsuit hit, then we were --  12:44

12   we were paused.  We're on hiatus for the moment.       12:45

13        Q.  Okay.  And we spoke a little bit earlier about 12:45

14   Amber Milum.  She's the head librarian, right?         12:45

15        A.  Yes, ma'am.                                   12:45

16        Q.  And Ms. Milum has been tasked with getting the 12:45

17   library board statistics and reports, if needed?       12:45

18        A.  Correct.                                      12:45

19        Q.  And she could also, for example, get you      12:45

20   financials, if that was something that the finance     12:45

21   committee needed?                                      12:45

22        A.  Well, the finances are paid through the county 12:45

23   clerk.  So we get that kind of information usually from 12:45

24   the county clerk.                                      12:45

25        Q.  Okay.  Got it.  Is there any other way that   12:45
```

Page 68

| | | |
|---|---|---|
| 1 | mistaken; and so you have access to everyone else's | 14:23 |
| 2 | libraries as well. | 14:23 |
| 3 | (Mr. Pratik Ghosh is now present.) | 14:23 |
| 4 | Q. (BY MS. SALOMON) But the Llano version of it | 14:23 |
| 5 | does not have any access to children's or teens' books? | 14:23 |
| 6 | A. Correct. | 14:23 |
| 7 | Q. And do you recall any kind of conversation | 14:23 |
| 8 | about why Llano would restrict access to teens' and | 14:23 |
| 9 | children's books? | 14:23 |
| 10 | A. Because of inappropriate content, I presume. | 14:24 |
| 11 | Q. I'm going to mark an exhibit. | 14:24 |
| 12 | MS. SALOMON: So this -- and I believe, | 14:24 |
| 13 | Ms. Ross, we're up to Exhibit 37; is that right? | 14:24 |
| 14 | THE REPORTER: Yes. | 14:24 |
| 15 | MS. SALOMON: Great. Okay. So I'm going | 14:24 |
| 16 | to mark this as Exhibit 37. | 14:24 |
| 17 | (Wallace Exhibit 37 marked.) | 14:24 |
| 18 | Q. (BY MS. SALOMON) And I'll scroll through so | 14:24 |
| 19 | that you can read it. Just let me know when you're | 14:24 |
| 20 | ready. | 14:25 |
| 21 | A. I'm ready. | 14:25 |
| 22 | Q. So this email is a chain between you and Amber | 14:25 |
| 23 | Milum, cc'ing some others, related to a book order, | 14:25 |
| 24 | right? | 14:25 |
| 25 | A. Yes. | 14:25 |

Page 114

```
 1   board?                                            14:40

 2        A.  No.                                       14:40

 3        Q.  Has it been presented to the commissioners'  14:40

 4   court?                                             14:40

 5        A.  No.                                       14:40

 6        Q.  Has it been presented to any sec -- subsection  14:40

 7   of the commissioners' court for approval?          14:41

 8        A.  No.                                       14:41

 9        Q.  And so this portion that says "Electronic book  14:41

10   and audiobook collections must reflect the demographics  14:41

11   of the county (refer to most recent census and election  14:41

12   results report)," that is not the approved method of  14:41

13   selecting and vetting books for the online collection?  14:41

14        A.  We -- no.  We don't have a -- we don't have a  14:41

15   policy yet.  This was a draft.  This was, I believe, the  14:41

16   very first draft.                                  14:41

17             And then our board was paused for the     14:41

18   interim.  So it was never even presented to the board --  14:41

19   to the advisory board as a whole.                  14:42

20        Q.  Are you aware of whether anyone on the library  14:42

21   advisory board has collected census and election results  14:42

22   reports for purposes of book review?               14:42

23        A.  I re -- I believe I forwarded the election  14:42

24   result report from the most recent primary that we had  14:42

25   to the committee -- to this collection committee.  I  14:42
```

Page 124

P.App.116

don't know about census information. 14:42
Q. But they -- they did receive the election results report? 14:42 14:42
A. Yes. I sent it. 14:42
Q. And where did you get the election results report? 14:42 14:42
A. I'm the Llano County GOP treasurer. So I am included when the results come out -- the reports come out. 14:42 14:42 14:42
Q. And you sent that to -- sorry. Just for clarity's sake, you sent that to the collections committee? 14:42 14:43 14:43
A. I did. 14:43
MS. SALOMON: I'm going to go ahead and mark the next exhibit. All right. So this should be Exhibit 41. 14:43 14:43 14:43
THE REPORTER: 40. 14:43
THE WITNESS: 40. 14:43
MS. SALOMON: This should be Exhibit 40. This is, like, embarrassing. Okay. This should be Exhibit 40. 14:43 14:43 14:43
(Wallace Exhibit 40 marked.) 14:43
Q. (BY MS. SALOMON) And I'll scroll for you. All right. Let me know when you're ready. 14:44 14:44
A. I'm ready. 14:44

```
 1        Q.  So this is an email from Amber Milum dated    14:44
 2   April 5th, 2022, to a bunch of different folks,        14:44
 3   including yourself.                                     14:44
 4        A.  It's to the library advisory board as a whole. 14:44
 5        Q.  Got it.  And she says, "Hello, everyone.  I    14:44
 6   have reviewed one of" the -- "of Anne's book lists that 14:44
 7   she put together for us."  Excuse me.  "I went ahead and 14:44
 8   purchased the list after I removed all of the young     14:44
 9   adult and junior books from the list."                  14:44
10             Do you see that?                               14:45
11        A.  I do.                                           14:45
12        Q.  And so, as we discussed earlier, there was     14:45
13   concern about the young adult and junior books having   14:45
14   inappropriate content, right?                            14:45
15        A.  Correct.                                        14:45
16        Q.  And then Amber says that aside from those       14:45
17   books, she went ahead and purchased the list?           14:45
18        A.  That's what she says.                           14:45
19        Q.  Okay.  And -- sorry.  I actually didn't mean to 14:45
20   go off.  That was a mistake.  Where did it go?          14:45
21             And Amber references in this that it was       14:45
22   one of Anne's book lists.  Do you know who Anne is?     14:45
23        A.  Yes.  Anne was the acquisitions coordinator for 14:45
24   Bibliotheca.  She was one of them.                       14:46
25        Q.  I see.  So she's one of the folks who had       14:46
```

Page 126

```
 1                    REPORTER'S CERTIFICATION
 2
 3        I, SHARON ROSS, Certified Shorthand Reporter, do
     hereby certify:
 4
          That on Wednesday, June 29, 2022, at 11:03 a.m.,
 5   appeared before me BONNIE WALLACE, the witness whose
     deposition is contained herein; that prior to being
 6   examined was by me duly sworn;
 7        That the deposition was taken down by me in machine
     shorthand and was thereafter reduced to typewriting;
 8   that the foregoing represents, to the best of my
     ability, a true and correct transcript of the
 9   proceedings had in the foregoing matter.
10        That a request for an opportunity to review and
     make changes to this transcript:
11
                 Was made by the deponent or a party (and/or
12               their attorney) prior to the completion of
                 the deposition.
13        X      Was not made by the deponent or a party
                 (and/or their attorney) prior to the
14               completion of the deposition.
                 Was waived.
15
16        I further certify that I am not an attorney for any
     of the parties hereto, nor in any way concerned with the
17   cause.
18        Dated July 5, 2022.
19
20
21              Sharon Ross
22              _____
23              SHARON ROSS, HI CSR NO. 432,
24              TX CSR NO. 1961, CRR, RMR, CRC
25              Realtime Systems Administrator

                                             Page 144
```

P.App.119

# EXHIBIT 5

Spoke to all about the 'butt' books


July 9, 2021, 10:00 am----Rochell Wells

July 9, 2021, 12:30 pm---Kathy Tribble

July 9, 2021, 2:00 pm-----Jackie Cherico

July 9, 2021, 2:50 pm-----Vivian Koerner (spoke to Tina)

July 9, 2021, 4:30 pm-----Sidonie Thornton


July 13, 2021, 1:00 pm---- Amy Jordan

July 13, 2021, 2:30 pm----Sherry Simpson

July 16, 2021, 10:47 am---Jo Ares (through my personal Facebook messaging)



EXHIBIT
5
P. App. 121

8-5-21

2:24pm

i have deleted the (4) "fart" books from the system. I am waiting for the two "butt" books to be returned so i can delete them as well.

[signature]

[initials]

MILUM 4 RFP - 00579

P.App.122

Amber,
I am still receiving calls, letters and emails concerning the Farts and Butts
books. I think it is best to remove these books from the shelves for now.
Thank you,

**Ron Cunningham**
Llano County Judge
325.247.7730
801 Ford Street
Suite 101
Llano, Texas 78643
**Judge Ron Cunningham**  rcunningham@co.llano.tx.us
**Jennifer Buchanan–Administrative Assistant** jbuchanan@co.llano.tx.us

MILUM 4 RFP - 00580

P.App.123

RE: Books

From: amilum@co.llano.tx.us <amilum@co.llano.tx.us>
Sent: Thu, Aug 5, 2021 at 11:38 am
To: Ron Cunningham

---

Yes Sir, Commissioner Moss suggested that as well. The "fart" books have never been on the shelves. I will delete them out of the system. The other two "butt" books have been checked out so I am waiting for them to return so I can delete them as well.

I'm sorry for all the problems,

*Amber Milum*

**Llano County Library System Director**
102 E. Haynie St.
Llano, TX 78643
325.247.5248
http://www.llano-library-system.net/


-----Original Message-----
From: "Ron Cunningham" <rcunningham@co.llano.tx.us>
Sent: Thursday, August 5, 2021 9:47am
To: "Amber Milum" <amilum@co.llano.tx.us>
Subject: Books

MILUM 4 RFP - 00581

P.App.124

8-3-21
Around 4:00pm

Commissioner Moss came back in to talk to
me about the "butt" books. he said he has
been getting calls about them +
Rochelle "the one that has them checked out" has
been calling him + he told me that i should
take them out of the system. book wouldn't be
so bad if it didn't have all the butt pictures.
told me to pick my battles. He is going to
tell everyone its over.

e said the next step would be to take this to
CC and if that happens the would vote to take
them off the shelf + it would be bad publicity
for the library.

MILUM 4 RFP - 00582

P.App.125

10:00am
7-9-21

Rochelle Wells
Spoke to her about the "butt" books
this morning. She does not want them
in the library. ←period!



CURIOSITY   PASSION
**OwnYourProfession**
INNOVATION

April 19-22 | San Antonio

texas library association
**2017 annual conference**

Vivian Koerner
7/9 @ 2:50
Voiced concerns over "Butt"
books and ~~would~~ would
Prefer they don't go out.
Liked the ideas of genre
tags, and having to ask
for books.

4:30pm
7-9-21

Sidonie Thornton
325-872-7100
talked to me about the
"butt" books. She was
nice + does not want
the books on the shelf.
Said the same exact
thing the other ladies
have said...

7-13-21
1:00pm

Amy Jordan
...didn't like the "butt"
...oks was very nice
...t dumping on the band
...agon. but felt a bit
...ncomfortable reading
...m. Sat + read all the
...ooks.

2:00pm
7-9-21

Jackie Cherico
spoke to me about the
"butt" books expressed
her concern. was very
nice + she said she
is here to help +
likes the option the other
lady mentioned.

MILUM 4 RFP - 00583

P.App.126

MILUM 4 REP - 00584

P.App.127

**The "Butt" books: (I need a new butt) are not "grooming" books.**

**Grooming** is when **someone** builds a relationship, trust and emotional connection with a child or young person so they can manipulate, exploit and abuse them. Children and young people who are groomed can be sexually abused, exploited or trafficked.

7-9-21
12:30pm

Kathy Tribble talked to me today about the "butt" books she was nice + said maybe an option will be to have them in the system but not on the shelves for kids to access themselves.

2:30pm
7-13-21

Sherry Simpson came in to talk about the "butt" books. Very nice. things had happened to her so she see's it + does not want the books on the shelves.

MILUM 4 RFP - 00585

P.App.128

Re: "I Need a New Butt" book

Rochelle Wells <rochellewells@hotmail.com>
Fri 7/9/2021 3:53 PM
To: Amber Milum <amilum@co.llano.tx.us>

Amber,
  Thank you for meeting with me today. I looked on Amazon and found that I'm not the only person who disliked these books. Below I've attached a snapshot of the few of the negative comments.
  I hope you consider these comments and decide to keep the books from being put on the shelves.
  Thank you again for listening and also bringing in good books as well.

Rochelle Wells

# Top reviews from other countries

 Nadine Berry

⭐☆☆☆☆ **Verified Purchase**

## Not appropriate for young children

Reviewed in the United Kingdom on January 8, 2019

I bought this book for my nieces and not being a parent myself, my view is that this should come with a PG/ age appropriate guide. Having read the book, i decided against giving it to them as it is quite rude and certainly not appropriate for my 5 year old niece. i would be mortified if she repeated any of the content at school or to her friends.

55 people found this helpful

Report

 Kathy Frost

⭐☆☆☆☆ **Verified Purchase**

## Could 've been a fun book butt.....

Reviewed in the United Kingdom on December 4, 2018

It wasn't funny....started well but the rhyme did not work.....quite frankly it was boring and the pics were poor....the last one I thought was rather gruesome for a child's book....what a waste of money...this insolvent be going to the kids.

41 people found this helpful

Report

# Top reviews from the United States

 **Kayinsun**

★☆☆☆☆ **Verified Purchase**

## CREEPY

Reviewed in the United States on December 25, 2018

creepy book...pics show full butts not just cracks here and there...one pic shows a man painting on a boy's butt, another has the boy walking as a naked Model on the red carpet with adults watching, another has the boy going into a dark adult nightclub with a bumper on his butt...I will not be reading this to my child anytime soon..too much effort to return. Creepy stuff!

671 people found this helpful

| Helpful | Report |
| --- | --- |

 **Kindle Customer1**

★☆☆☆☆ **Verified Purchase**

## Spectacular gift failure

Reviewed in the United States on November 28, 2018

Our grandkids ages 4 & 6 have terrific senses of humor. They love Amelia Bedelia for instance. Since the 4 yr old especially finds butts etc hilarious I thought they'd love this. Neither of them thought this was funny. The 4 yr old announced after page 1 that "this doesn't make sense, everyone knows there's a crack there!" There was a smile about the idea of using a bumper only after I explained the word "bum." They both thought pages were missing at the end. I did too. Neither has been interested in reading it again and I don't think I can donate it because I'm sure some will find it offensive.

323 people found this helpful

| Helpful | Report |
| --- | --- |



| Helpful | Report |
| --- | --- |

 **amyfay**

★☆☆☆☆

**Shocked and appalled**

Reviewed in the United States on May 22, 2021

I guess common sense about teaching children decency and morals has completely gone out the window. I actually thought this was a joke when I saw this book and then I heard it read on a video. What is wrong with you people that you believe this is OK to read to children.... See more

2 people found this helpful

| Helpful | Report |
| --- | --- |

 **Stephanie Gerold**

★☆☆☆☆

**It's a no for us**

Reviewed in the United States on December 22, 2020

I bought this book for my 4 year old, he thinks butts are hilarious. I did not like it, I did not think much of it was funny, and some of it made me slightly uncomfortable. I found myself glad his dad was not listening.

3 people found this helpful

| Helpful | Report |
| --- | --- |

 **SpiffyDog**

★☆☆☆☆

**VERY INAPPROPRIATE**

Reviewed in the United States on May 13, 2021

THIS IS VERY INAPPROPRIATE AND SHOULD BE REMOVED!

3 people found this helpful



11:23 🕐 ✉ 🖼 💬 😊     📶 🔋 51% 🔋

←           📞   📹 • ⓘ



## Jo Ares

**Facebook**

You're not friends on Facebook

1 mutual friend: Kristy Morris

Studied Marketing at Northwood University Collegiate DECA

**VIEW PROFILE**

As a mother in Llano I would appreciate it if the Llano Public library did not order the "I broke my butt" series of books.

Please come in and speak to me directly about the issue you have with the "I broke my butt" books.

::   📷   🖼   🎤   Aa       😊   👍

|||         ◯         ‹



MILUM 4 RFP - 00589

P.App.132





**Jo**
Active 4 minutes ago

11:47 AM

The issue about the books were brought up after I purchased them even though they were not fully processed and ready to be out on the shelves. I have been discussing with patrons the issues they have with the book. That's why they havent been on the shelves yet. As for the money to purchase books mostly comes from donations. I purchase all the books for the library system, with recommendations from patrons and other staff.

12:02 PM

What patrons help choose books?

The libraries have a form patrons can fill out requesting certain authors, books or even genres. I purchase what I can from those forms.



MILUM 4 RFP - 00591

P.App.134



The libraries have a form patrons can fill out requesting certain authors, books or even genres. I purchase what I can from those forms.

Who requested these nasty books?

12:25 PM

No one.

So why did you order them with donated money?

People will donate for sections as well as specific books. So the staff and I can choose whatever books we think will be good for that area. We check reviews as well. I chose the books. Everything that that we saw about the books was positive. Yes, after the purchase we discovered negative reviews further down the list on Amazon.

MILUM 4 RFP - 00592

P.App.135



7/16/2021                                        These Freaking Books!

## These Freaking Books!

**From:** tina.llanolibrary@co.llano.tx.us <tina.llanolibrary@co.llano.tx.us>
**Sent:** Thu, Jul 15, 2021 at 4:59 pm
**To:** amilum@co.llano.tx.us

A patron came in today who wanted to see the butt books, but because Rhonda has them checked out the patron couldn't see them to make their own decision about them. Rhonda went on to say that, "I'm just going to keep them checked out because I don't find them appropriate."

MILUM 4 RFP - 00594

P. App. 137

## Concerned parent

**From:** Elysia Barkley <elysiafaith@yahoo.com>
**Sent:** Fri, Jul 9, 2021 at 1:12 pm
**To:** amilum@co.llano.tx.us

Good afternoon Amber,
I wanted to respectfully voiced my concern over the recent purchase of the butt and fart books. I am a mother of six and a homeschooler. We absolutely love the Llano library because it has seemed like a safe place. This purchase is not protecting our children.

The little I saw very much seemed to groom children for pedophiles. This is extremely scary as a parent. Having an old artist painting on a child's butt is very disturbing! A child should not think that is normal behavior!

There are so many rich books for children to learn from, but books on farts and butts are just dumbing down our children and not using the budget in a way that benefits our children.

I would absolutely love to see books on biblical character building, historical fiction, anything from Focus on the Family, Who Was books (I actually donated a bunch of them to the library because the Llano library just didn't have enough historical information for my kids and knew that other children could benefit from them once we were done) Because we homeschool we often need historical or scientific information to write reports and the Llano library just does not have enough of that and we've had to go to Round Rock many times to get what we needed.

We absolutely love the Llano Library and it's charm and I hope that you can understand the concern we as parents have.

When purchasing books for our children I would ask that you think of the kind of people you want them to become. As a parent I am raising future leaders and everything they put in their minds develops their character, please help us do this by the books you buy!

Thank you!

Elysia

*Phone #*
*512-698-8921*

Sent from Yahoo Mail for iPhone

https://apps.rackspace.com/versions/webmail/19.0.7-RC/popup.p...

# Kids book

From: Melissa Macdougall <mmacdougall@co.llano.tx.us>
Sent: Fri, Jul 9, 2021 at 10:45 am
To: Amber Milum

I watched the video for "I Need a New Butt" — silly, a little crude for some tastes — but not really much different from Captain Underpants in my opinion.

MILUM 4 RFP - 00596
P.App.139
7/9/2021, 10:57 AM

## The Butt Book!

From: astarkes@co.llano.tx.us <astarkes@co.llano.tx.us>
Sent:  Fri, Jul 9, 2021 at 10:49 am
To:    amilum@co.llano.tx.us

Hey, Amber!

Just wanted to let you know I watched the video on the "controversial" children's book, and I see no signs of grooming in the story or content whatsoever. It honestly reminded me of being that age again, as butt and fart jokes were way funnier at that age!

To me it feels harmless. Kids are gonna have a riot over it in the best way, and some kids need that silliness to smile. We had Captain Underpants. Let them have butts!

Besides, if you want to get super logical, kids are not going to see it as anything but a silly, ridiculous book. The parents in my view are over reacting and are not looking through the lens of a kid.

I'm so sorry you are having to deal with this, but know that all of us here got your back, and if you ever need a good rant, my e-mail box is always open!

Stay strong, Amber!!

Amanda Starkes
Teen Librarian
Kingsland Library

8-3-21

Morning - Commissioner Moss came into the
library wanting to see the "Butt" Books.
i told him 2 were checked out this
Morning + that i have the other one
W/the issue in a file i showed him
the book and he asked to take it
W/him so he could read it. i said
Sure and then he left.

/Amber

| Scan | Clear Screen | Restore Member | Find Material | | Switch to Check In |



**Relatives:** ANDREW (Adult) - 10026499, ROCHELLE (Adult) - 10030752, Sonora/Rochelle (Teen) - 10028320, Andrew (Trace) / Rochelle (Child) - 10030874, Blu/Rochelle (Child) - 10030354

| Number | Name | Type | Expires | Contact | Internet: Yes |
|--------|------|------|---------|---------|----------------|
| 10030752 | WELLS, ROCHELLE (Adult) | A - 2 | 2/26/2022 | 831-521-4965 | Member Info |

| 0 Reserves | 1 Note | Member Owes: $0.00 | Manage Fines and Problems | Print Items Out |

**Currently Out: 7 items:** | Renew All | Renew Selected (0) | Change Due |

| | Material # | Call # | Title | Author | Out | Due | Days Out | Renew-able | |
|---|-----------|--------|-------|--------|-----|-----|----------|-----------|---|
|  | 10110467 | 648.8 THO | Decluttering your home : tips, techniques and trade secrets | Thomas | 7-23-2021 | 8-6-2021 | 11 | Y | Info |
| | 10104639 | 648.1 RAP | The organically clean home : 150 everyday organic cleaning p | Rapinchuk | 7-23-2021 | 8-6-2021 | 11 | Y | Info |
| | 10118874 | E MCK 2X2LIST 2020-21 | Duck! | McKinlay | 8-3-2021 | 8-17-2021 | 0 | Y | Info |
| | 10119523 | E MCM | I broke my butt | McMillan | 8-3-2021 | 8-17-2021 | 0 | Y | Info |
| | 10119522 | E MCM | My butt is so noisy | McMillan | 8-3-2021 | 8-17-2021 | 0 | Y | Info |
| | 10031276 | E MCP | Drawing lessons from a bear | McPhail | 8-3-2021 | 8-17-2021 | 0 | Y | Info |
| | 10034653 | E MCP | Pig Pig gets a job | McPhail | 8-3-2021 | 8-17-2021 | 0 | Y | Info |

Checkouts Today: 27

You are at branch: **Llano County**

Install Biblionix Print Helper

2021-01-ex 01

MILUM 4 RFP - 00599

P.App.142

7-20-21   4:00pm

Suzette spoke 4 Commissioner Sandoval
about the "butt" books & Suzette showed
him the youtube, i showed them
of the little girl reading the book. He
said its not "grooming" + he doesn't see
any thing wrong 4 it.


7-16-21   all day

Spoke to Commissioner Maschke about
the "butt" books. She didn't see any thing
wrong 4 them + said if people don't
like them then they shouldn't read them


Spoke 4 the Judge as well + he didn't
think they were "grooming" either + said
~~told~~ the library does not censor.


{ Everyone on my side + say i should
leave the books on the shelf. }

MILUM 4 RFP - 00600

P.App.143

MILUM 4 RFP - 00601

P.App.144

## FW: idea for transparency of library book orders

From: Ron Cunningham <rcunningham@co.llano.tx.us>
Sent: Mon, Aug 2, 2021 at 10:53 am
To: Amber Milum

Amber,
Would you please give me a call once you have reviewed the below email?
Thank you,

Ron Cunningham
Llano County Judge
325.247.7730
801 Ford Street
Suite 101
Llano, Texas 78643
Judge Ron Cunningham  rcunningham@co.llano.tx.us
Jennifer Buchanan-Administrative Assistant jbuchanan@co.llano.tx.us

-----Original Message-----
From: Rochelle Wells <rochellewells@hotmail.com>
Sent: Monday, August 2, 2021 10:07 AM
To: Ron Cunningham <rcunningham@co.llano.tx.us>
Cc: Eva Carter <evacarter@me.com>; JoLeigh Ares <joleighares@yahoo.com>
Subject: re: idea for transparency of library book orders

Judge Cunningham,
I hope your weekend was restful. Our meeting (along with Eva Carter and JoLeigh Ares) left me
encouraged.
I was going to speak with Amber about the idea of putting up a list of future books orders so
that there was transparency, but when I went in she was already gone and another week has gone
by after that. I still would like to go in and speak with her, but wasn't sure if you had
already done this.
I guess I'm emailing to see if you had done so.

Graciously,
Rochelle Wells

*Never had a conversation w/ RW [illegible] RW would not bring up topic.*

MILUM 4 RFP - 00602



**Jo Ares**

Facebook

You're not friends on Facebook
1 mutual friend: Kristy Morris
Studied Marketing at Northwood University Collegiate
DECA

**VIEW PROFILE**



As a mother in Llano I would
appreciate it if the Llano Public
library did not order the "I broke my
butt" series of books.



Please come in and speak to me
directly about the issue you have
with the "I broke my butt" books.

MILUM 4 RFP - 00603

P.App.146



MILUM 4 RFP - 00604

P.App.147



MILUM 4 RFP - 00605

P.App.148



**Jo**
Active 4 minutes ago

11:47 AM

The issue about the books were brought up after I purchased them even though they were not fully processed and ready to be out on the shelves. I have been discussing with patrons the issues they have with the book. That's why they havent been on the shelves yet. As for the money to purchase books mostly comes from donations. I purchase all the books for the library system, with recommendations from patrons and other staff.

12:02 PM

What patrons help choose books?

The libraries have a form patrons can fill out requesting certain authors, books or even genres. I purchase what I can from those forms.



MILUM 4 RFP - 00606
P.App.149



MILUM 4 RFP - 00607

P.App.150



12:25 PM

No one.

So why did you order them with donated money?

People will donate for sections as well as specific books. So the staff and I can choose whatever books we think will be good for that area. We check reviews as well. I chose the books. Everything that that we saw about the books was positive. Yes, after the purchase we discovered negative reviews further down the list on Amazon.

12:43 PM

 So you decide

Yes I do.



# EXHIBIT 6

P.App.152

**1st Bibliotheca Cloudlibrary order 2022.4**

Amber Milum <amilum@co.llano.tx.us>

Tue 4/5/2022 11:40 AM

To: Gay Baskin <gaybaskin@yahoo.com>;Bonnie Wallace <mrs.bobwallace@gmail.com>;Rochelle Wells <rochellewells@hotmail.com>;Anita Hilton <anitahiltons@gmail.com>;Susie Sitton <sitton9260@yahoo.com>;Sharon Maki <sharon_maki@hotmail.com>;Cindy Travers <cindytravers@outlook.com>;Nancy Miller <nancy@millertexas.net>;Robyn Tibbs <tibbs.robyn@outlook.com>;Ravelle Kundinger <ravellek@aol.com>;Rhonda Schneider <saltresources@icloud.com>;Cheryll Mabray <cheryllamabray@gmail.com>;Louann Raley <louannraley@gmail.com>

Bcc: Ron Cunningham <rcunningham@co.llano.tx.us>

Hello Everyone,

I have reviewed one of Anne's book lists that she put together for us. I went ahead and purchased the list AFTER I removed all of the young adult and junior books from the list. Ryan said it would be a good idea to already have items purchased for when we play with the app later today (I hope the books are in the app by then). I have attached the list of 91 items. I have also sent in the membership application as well as paid the annual subscription. I believe all we are waiting for now is to be accepted into Cloudlink.

Looking forward to the training today, Hope everyone has a great day!

*Amber Milum*

**Llano County Library System Director**
102 E. Haynie St.
Llano, TX 78643
325.247.5248
http://www.llano-library-system.net/

Milum 2 RFP - 00184



EXHIBIT

P. A05.153

# EXHIBIT 7

**Re: Bibliotheca**

Bonnie N. Wallace <mrs.bobwallace@gmail.com>
Wed 4/13/2022 4:53 PM
To: Amber Milum <amilum@co.llano.tx.us>
Cc: Gay Baskin <gaybaskin@yahoo.com>;Nancy Miller <nancy@millertexas.net>;Rochelle Wells
<rochellewells@hotmail.com>;Robyn Tibbs <tibbs.robyn@outlook.com>;Rhonda Schneider <Saltresources@icloud.com>
Amber,

I was able to connect with Ryan this afternoon and explain to him what had transpired with our first
order. I explained that Ann had only sent you the lists but not copied anyone else, and that you didn't
realize that no one else had seen the list. I explained that you had the foresight to remove all the YA
and teen books which we had requested NOT be included in either list, and then you had ordered the
rest.

So, I explained that we would like some of the books and all of the audio books removed, we would
like a credit for that material, and that we were willing to purchase other material that would equal
110% of that amount. In other words, it would be mutually beneficial if they could work with us
through this initial purchase. He said that this is above his pay grade but that he will discuss with his
superiors and keep me posted.

The Collection Committee is reviewing the list to see which books they would like to remove as well as
creating a list of new material that they would like to purchase. This list will be supplied to Ryan
before 8am tomorrow morning, at his request.

I thanked him profusely for working with us and told him that I anticipated a long and successful
partnership with him and with Bibliotheca!

I'll keep you posted. Thank you for your help.

On Wed, Apr 13, 2022 at 12:22 PM Bonnie N. Wallace <mrs.bobwallace@gmail.com> wrote:
Amber,

I know you were as disappointed as we were. We had NO idea Ann had sent you a list. I am sorry
you are having to deal with this.

Thank you for keeping on this.

Bonnie N Wallace

On Apr 13, 2022, at 11:34 AM, Amber Milum <amilum@co.llano.tx.us> wrote:

Bonnie,

Milum 2 RFP - 00310



EXHIBIT

P. App. 155

I spoke with Ryan yesterday afternoon. He said that he can manually remove an item, but they don't have a way to refund or exchange them. I am working on a new list to add to what we have. I will have that soon.

I was under the impression that the committee worked with Ann to make the previous lists.

Thank you for the support and the help,

*Amber Milum*

**Llano County Library System Director**
102 E. Haynie St.
Llano, TX 78643
325.247.5248
http://www.llano-library-system.net/

**From:** Bonnie N. Wallace <mrs.bobwallace@gmail.com>
**Sent:** Wednesday, April 13, 2022 8:44 AM
**To:** Amber Milum <amilum@co.llano.tx.us>
**Subject:** Bibliotheca

Amber,

Would you prefer I contact Ryan to discuss our first iCloud Library book purchase? I'm happy to do that, as I know it could make you uncomfortable. You will not be blamed, as I feel you were doing the best you knew how to do, and we are all just figuring this out.

You are AMAZING and I'm so proud of you. Just let me know if you'd rather me do it.

Have a blessed day!

**Bonnie N. Wallace**
(956) 330-8106 (cell)

--
**Bonnie N. Wallace**
(956) 330-8106 (cell)

DocuSign Envelope ID: 3F6A3DB6-C569-424A-96F2-EDC307348E05

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DECLARATION OF DIANE MOSTER IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

I, Diane Moster, declare:

1.      I make this declaration based on personal knowledge. If called upon to testify, I could and would testify competently to the following facts.

2.      I attempted to check out to check out *Caste: The Origins of Our Discontents* from the Llano Library on March 10, 2022. I was unable to check this book out because I was told by a librarian it had been removed and was no longer available to be checked out in the Llano County Library System.

3.      Nobody at the library told me that this book was available through inter-library loans. I have previously asked Llano County librarians for books that I could not find on the shelves, and nobody ever suggested inter-library loans to me.

4.      Although I have the Kindle application on my iPad, I found the Bibliotheca/cloudLibrary interface to be difficult to navigate. Moreover, I prefer reading physical books to digital books. For me, having a book in my hands to read is important, to make

DocuSign Envelope ID: 3F6A3DB6-C569-424A-96F2-EDC307348E05

references to passages of my choice. I do not know how to do this with Bibliotheca/cloudLibrary.

5. I have never heard of "in-house checkout" at the Llano County Library System. The suggestion that I should have to use this alternative system for books Defendants dislike is offensive and impractical. The idea of my grandson having to ask for the "fart books" from the "in-house checkout" system and single himself out because he is not allowed to check them out normally is degrading.

6. Defendants' conduct has created an atmosphere of fear and distrust that goes beyond the removal of the books that I am aware have been pulled from shelves. Despite having made public statements reflecting that these books were removed due to their content, Defendants are now saying they were removed as part of a routine weed. Now, when I browse the library shelves, I am not sure whether books are missing for legitimate reasons, or because Defendants disagree with their content. This uncertainty has made me feel even less at home in Llano's libraries, which had previously been a source of joy for me. The availability of a diverse, inclusive and current catalog of books in the library no longer exists.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: July 28, 2022                    By: _Diane Moster_____
                                              Diane Moster

DocuSign Envelope ID: 9BF85DE5-BC11-477E-9834-45315AC0B550

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DECLARATION OF RICHARD DAY IN SUPPORT OF PLAINTIFFS' REPLY IN**
**SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

I, Richard Day, declare:

1.     I make this declaration based on personal knowledge. If called upon to testify, I could and would testify competently to the following facts.

2.     I attempted to check out *They Called Themselves the K.K.K.* from the Llano Library in April 2022. I was unable to check this book out because I was told by a librarian that it had been removed and was no longer available to be checked out in the Llano County Library System.

3.     Nobody at the library told me that this book was available through an inter-library loan. Rather, I was only told that this book was not in the library catalogue.

4.     I prefer physical books to digital books.

5.     In or around May 2022, I became aware that the Library System had replaced OverDrive with Bibliotheca/cloudLibrary. I tried to use Bibliotheca/cloudLibrary but found it difficult to navigate.

DocuSign Envelope ID: 9BF85DE5-BC11-477E-9834-45315AC0B550

6.      I have never heard of "in-house checkout" at the Llano County libraries, nor have I received any instructions on how to access "in house checkout." I would not use the "in-house checkout" system because it is inconvenient and because it would draw unnecessary attention to me and to the books I want to read.

7.      On July 15, 2022, I was told by a member of the Llano County Library Advisory Board that the Llano County Library System would not be purchasing any new books and had not purchased any new books since October 2021.

8.      Defendants' conduct has created an atmosphere of fear and distrust that goes beyond the removal of the books that I am aware have been pulled from shelves. Despite having made public statements reflecting that these books were removed due to their content, Defendants are now saying they were removed as part of a routine weed. Now, when I browse the library shelves, I am not sure whether books are missing for legitimate reasons, or because Defendants disagree with their content. This uncertainty has made me feel even less at home in Llano's libraries, which had previously been a source of joy for me.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated:  July 28, 2022                          By: _____

                                                   Richard Day

DocuSign Envelope ID: 448168C0-854E-4753-A141-A387736B4256

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DECLARATION OF CYNTHIA WARING IN SUPPORT OF PLAINTIFFS' REPLY IN**
**SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

I, Cynthia Waring, declare:

1.      I make this declaration based on personal knowledge. If called upon to testify, I could and would testify competently to the following facts.

2.      I attempted to check out *Spinning, Shine, Gabi, Being Jazz,* and *They Called Themselves the K.K.K.* from the Llano Library in April 2022. I was unable to check these books out because I was told by a librarian that the books had been removed and were no longer available to be checked out in the Llano County Library System.

3.      Nobody at the library told me that these books were available through inter-library loans. A Llano County librarian told me that if a book is not on the shelves, the library does not have that book.

4.      I have previously used inter-library loans to read library books, but prefer not to use them. The last time I did so it cost me money, took three trips to the library to accomplish, and I only received one of three books that I ordered.

DocuSign Envelope ID: 448168C0-854E-4753-A141-A387736B4256

5.     In or around May 2022, I became aware that the Library System had replaced OverDrive with Bibliotheca/cloudLibrary. I tried to use Bibliotheca/cloudLibrary but found it very difficult to use and librarians I asked for help were not able to assist me.

6.     I have never heard of "in-house checkout" at the Llano County libraries. From its name, it sounds as though I could only read an "in-house checkout" book at a physical location, as opposed to checking it out from the system.

7.     I find it exceedingly insulting. It is an obvious, poorly devised attempt to again deny equal and open access. All that this proposal could entail is contrary to what I know, revere and have experienced in public libraries. Openly displayed, non-discriminatory multi-faceted subjects and different types of media is basic to a library experience. A library includes a comprehensive catalogue and is a place I can explore for new finds and new books. I don't know how a library patron would even know this program exists. How would they find out which books were part of the "in-house checkout" program? Are the books in the catalog? Why are these books away from the general content of the library for preview and display? Are they notated with some special marking? This entire process makes a spectacle of the people that would want to inquire, preview or check these books out. The books I choose to check out, read or inquire about in a public library is generally protected and for good reason. It is personal and private. It should remain so.

8.     The Llano library was a cool and quiet spot for me to visit in my jaunts to town. It was full of books and had computers and newspapers to explore and use. I wrote letters and made phone calls to my publicly elected officials when its trials became known to me. The citizens of Llano County, including myself and my husband, lost access to thousands of books through the shutdown of Overdrive for months. The shelves are now sparse. One room devoted

DocuSign Envelope ID: 448168C0-854E-4753-A141-A387736B4256

to young readers is often dark and the door is often closed. Certainly, our library is not the vibrant and welcoming space it once was. For me, their deceit, intimidation, and closed doors and closed minds have certainly made it very difficult to find that cool spot of refuge I once enjoyed. I miss it very much.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: July 28, 2022          By: _Cynthia Waring_

                                  Cynthia Waring

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DECLARATION OF REBECCA JONES IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

I, Rebecca Jones, declare:

1.      I make this declaration based on personal knowledge. If called upon to testify, I could and would testify competently to the following facts.

2.      I attempted to check out *I Broke My Butt!* on December 27, 2021, *It's Perfectly Normal* on January 10, 2022, *Being Jazz* on February 11, 2022, *Caste: The Origins of Our Discontents* on March 10, 2022, and *Spinning* on April 14, 2022. I was unable to check these books out because I was told by a librarian that the books had been removed and were no longer available to be checked out in the Llano County Library System.

3.      When I attempted to check these books out, I was not informed by anyone at the Llano County Library System that these books could be obtained through an inter-library loan.

4.      Although I have previously used inter-library loans to read library books, I would not use the program again because of the cost and the length of time it takes to receive a book.

5.      In December 2021, I was told by Amber Milum that the last new books were added in October 2021 and that the library would not be purchasing any new books.

DocuSign Envelope ID: 9E740D68-C7E7-4BCF-B311-2DF47D697F3F

6.      In or around May 2022, I became aware that the Library System had replaced OverDrive with Bibliotheca/cloudLibrary. I have tried to use Bibliotheca/cloudLibrary. I find cloudLibrary difficult to navigate. The librarians I have asked for help were not able to assist me. The audio player is frustrating to operate, and I am unable to use the e-reader for extended periods of time as it causes strain on my eyes. For that reason, I prefer reading physical books to ebooks in the app.  If available, I prefer to read in audiobook format.

7.      I have never heard of "in-house checkout" at the Llano County Library System. On July 22, 2022, I spoke to a Llano County librarian, and she had no idea that it existed either. I find the idea of in-house checkout system for only the specific books named in this lawsuit offensive, manipulative and absurd.

8.      Defendants' removal of the handful of books that I am aware of is egregious. But their oft-repeated public statements are at odds with these thin excuses for their continuing actions. Our government officials are pandering to the prejudices of a vocal few, who are now emboldened to justify their actions, inexplicably, as appropriate for Llano's "demographics."

9.      The tactic of borrowing and not returning disapproved books by defendants in this case, rather than being punished appropriately, is validated by removal of the titles from the catalog. And now that Defendants have announced their practice of weeding "offensive" titles in contradiction to established standards, I fear they will again use a large, unscheduled weed to hide the next round of books they want to disappear.

10.      I doubt that the narrow range of books that might eventually be approved by the current Library Board will be of particular interest to me. I fear that some Defendants would gladly see our beloved library empty and shuttered.

DocuSign Envelope ID: 9E740D68-C7E7-4BCF-B311-2DF47D697F3F

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: July 28, 2022

By: _____
Rebecca Jones

DocuSign Envelope ID: 85353BC6-ACDA-491F-9A77-0F7BBECC5BC7

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DECLARATION OF KATHY KENNEDY IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

I, Kathy Kennedy, declare:

1.      I make this declaration based on personal knowledge. If called upon to testify, I could and would testify competently to the following facts.

2.      I attempted to check out "*It's Perfectly Normal*", "*My Butt Is So Noisy!*", and "*I Need a New Butt!*" on January 12, 2022, and "*Being Jazz*", "*Shine*", "*Spinning*", and "*Freakboy*" in April 2022. I was unable to check these books out because I was told by a librarian they had been removed and were no longer available to be checked out in the Llano County Library System.

3.      Nobody at the library told me that this book was available through inter-library loans. I have previously asked Llano County librarians for books that I could not find on the shelves, and nobody ever suggested inter-library loans to me.

4.      I found Bibliotheca/cloudLibrary interface to be difficult to navigate. Moreover, I prefer audiobooks or physical books to digital books.

DocuSign Envelope ID: 85353BC6-ACDA-491F-9A77-0F7BBECC5BC7

5.      I have never heard of "in-house checkout" at the Llano County Library System. The suggestion that I should have to use this alternative system for books that Defendants dislike is offensive and impractical as it would draw unnecessary attention upon me and the books that I would like to check out. I would be less likely to check out a book if it was only available through some "in-house checkout" system instead of being generally available.

6.      Defendants' conduct has created an atmosphere of fear and distrust that goes beyond the removal of the books that I am aware have been pulled from shelves. Despite having made public statements reflecting that these books were removed due to their content, Defendants are now saying they were removed as part of a routine weed. Now, when I browse the library shelves, I am not sure whether books are missing for legitimate reasons, or because Defendants disagree with their content. This uncertainty has made me feel even less at home in Llano's libraries, which had previously been a source of joy for me. The availability of a diverse, inclusive, and current catalog of books in the library no longer exists.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated:  July 28, 2022                    By:    _Kathy Kennedy_
                                                Kathy Kennedy

DocuSign Envelope ID: 322AFE56-621C-40AA-B97A-3B86CE0F4645

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
|  | § | |
| Plaintiffs, | § | |
|  | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
|  | § | |
| Llano County, *et al.*, | § | |
|  | § | |
| Defendants. | § | |
|  | § | |

## DECLARATION OF JEANNE PURYEAR IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

I, Jeanne Puryear, declare:

1.      I make this declaration based on personal knowledge. If called upon to testify, I could and would testify competently to the following facts.

2.      I attempted to check out *My Butt Is So Noisy!*, *I Broke My Butt*, *I Need a New Butt!*, *Larry the Farting Leprechaun*, *Gary the Goose and His Gas on the Loose*, *Freddie the Farting Snowman* and, *Harvey the Heart Has Too Many Farts* from the Llano Library on April 22, 2022. I was unable to check these books out because I was told by a librarian that the books had been removed and were no longer available to be checked out in the Llano County Library System.

3.      When I attempted to check these books out, I was not informed by anyone at the Llano County Library System that these books could be obtained through an inter-library loan.

4.      In or around May 2022, I became aware that the Library System had replaced OverDrive with Bibliotheca/cloudLibrary. I tried to use Bibliotheca/cloudLibrary but found it difficult to use and the librarians I asked for help were not able to assist me. Moreover, I prefer

DocuSign Envelope ID: 322AFE56-621C-40AA-B97A-3B86CE0F4645

physical books to digital books. An additional feature of Bibliotheca/cloudLibrary that I dislike is that you cannot place a hold on a book unless your home library has it.

5.      I have never heard of "in-house checkout" at the Llano County Library System. The idea of having to specifically request books that Defendants do not see fit to put on the shelves from this system is humiliating, especially given all the community talk about the books in the "in-house checkout" system. I feel that going to a physical library location and asking for books from the "in house checkout" system would make a spectacle of me.

6.      I have been told by Amber Milum on more than one occasion that the last new physical book order was in October 2021. Additionally, my understanding of Ms. Milum's comments is that even that final order in October 2021 was not catalogued or put on the library shelves.

7.      I am a former member of the County's Library Board and was fired from this position when the Commissioners Court decided to appoint new board members earlier this year. Commissioner Jerry Don Moss's refusal to speak with me prior to this lawsuit being filed about his reasons for refusing to reappoint me was unsettling.

8.      Furthermore, I now understand that Judge Cunningham has indicated that the reason the previous Library Board was dismantled was because of low frequency of meetings. I find it offensive that the Commissioner's Court would use the fact that the Library Board did not meet as frequently during the COVID-19 pandemic for safety purposes as an excuse to dismantle the Library Board. When I was a member, Llano Library Board meetings were held quarterly. Based on the information that has been provided in this lawsuit, it appears the new Board meets much more frequently and is much more involved in the day-to-day tasks of the library, including financial, collection, and removal decisions. Furthermore, even though Defendants are

DocuSign Envelope ID: 322AFE56-621C-40AA-B97A-3B86CE0F4645

now calling it the "Library Advisory Board," it was always referred to as The Llano County
Library Board, and the January 5, 2020 bylaws reflect that.

9.      Defendants' conduct has created an atmosphere of fear and distrust throughout the
libraries that goes well beyond the removal of books that I am aware have been pulled from
shelves. Despite having made public statements reflecting that these books were removed due to
their content, Defendants are now saying they were removed as part of a routine weed. So, why
haven't replacement copies been put on the shelves? As explained above, my understanding is
that no new books have been put on shelves since October 2021.

10.     Now, when I browse the library shelves, I am not sure whether books are missing
for legitimate reasons, or because Defendants disagree with their content.  This has made me feel
even less at home in Llano's libraries, which had previously been a source of comfort, ease and
familiarity for me.

I swear under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct to the best of my knowledge.


Dated:  July 28, 2022                    By:    _Jeanne Puryear_
                                                 —E139231SDAF7465.
                                                 Jeanne Puryear

DocuSign Envelope ID: 634F33E9-354C-4D56-ACBE-2F8C5FCBF066

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| Leila Green Little, *et al.*, | § |
| | § |
| | § |
| Plaintiffs, | § |
| | § |
| v. | §    Civil Action No. 1:22-cv-00424-RP |
| | § |
| Llano County, *et al.*, | § |
| | § |
| Defendants. | § |
| | § |

**DECLARATION OF LEILA GREEN LITTLE IN SUPPORT OF PLAINTIFFS' REPLY**
**IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

I, Leila Green Little, declare:

1.     I make this declaration based on personal knowledge. If called upon to testify, I could and would testify competently to the following facts.

2.     I attempted to check out *In the Night Kitchen, It's Perfectly Normal, My Butt Is So Noisy, I Broke My Butt, Larry the Farting Leprechaun, Gary the Goose and His Gas on the Loose, Freddie the Farting Snowman*, and *Harvey the Heart Has Too Many Farts* from the Llano Library on April 20, 2022. I was unable to check these books out because I was told by a librarian that the books had been removed and were no longer available to be checked out in the Llano County Library System.

3.     When I attempted to check these books out, I was not informed by anyone at the Llano County Library System that these books could be obtained through an inter-library loan.

4.     I prefer physical books to digital books. I frequently go to the library to check out books to read with my children. *In the Night Kitchen* is one of our favorites and we have checked it out multiple times over the past few years.

DocuSign Envelope ID: 634F33E9-354C-4D56-ACBE-2F8C5FCBF066

5.      I have never heard of "in-house checkout" at the Llano County libraries. The idea that I have to know what books are in this new system is disheartening. I don't know how books would be chosen for participation in this program or how library patrons would know which books were available this way.

6.      Furthermore, it does not appear to me that books in the "in-house checkout" system are in the Llano County Library System catalog. I am aware that Defendant Milum has said that the nine books donated to the "in house checkout system" would be made available by July 27, 2022. But, I have searched for each of these books in the Library System's online catalog, and nothing comes up, except *Being Jazz*, which is listed as being checked out. Outside of the papers filed in this lawsuit, I am unsure how library patrons would ever find out about the existence of the "in-house checkout" system, or about what books are being made available via this system.

7.      On April 14, 2022, I attended a Friends of the Llano Library meeting where Amber Milum spoke. She informed everyone present that the library would not be purchasing any new books indefinitely. The library has not purchased any new books since October 2021.

8.      Overwhelming evidence has been presented that reflects Defendants' censorship of books in a coordinated effort. In fact, Defendants have made public statements that contradict the explanations they have provided as part of this lawsuit. Attached hereto as **Exhibit 1**, for example, is an article published in December 2021, reflecting Judge Cunningham's public statements that *I Need a New Butt* and *Freddie the Farting Snowman* had been removed for being inappropriate and would not be available for public scrutiny. Judge Cunningham further stated that he and Commissioner Moss had "inspected some library books and removed two."

DocuSign Envelope ID: 634F33E9-354C-4D56-ACBE-2F8C5FCBF066

9.     To know that private citizens have exerted tremendous power to censor books by lobbying our elected officials has left me disgusted and caused me to lose confidence in the very foundation of our local government's basic level of operation. The more information becomes made available to me, the more evidence of "inappropriateness" comes to light—though it is not in picture books as Defendants have claimed, but in behavior of Defendants.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated:  July 28, 2022                    By:    _Leila Green Little_____

                                                    Leila Green Little

# EXHIBIT 1

P.App.175

July 28, 2022



# Burnet Bulletin

Visit our *Remarkable* Multi-Specialty Clinic Near You in Marble Falls
HCM MEDICAL GROUP

How Healthcare is supposed to feel
HillCountryMemorial.org



## 'Banned' Llano books unavailable for review

By Phil Reynolds Contributing Writer on Wednesday, December 8, 2021

Burnet, TX 78611

Kingsland ACE HOME IMPROVEMENT
2607 W Ranch Rd 1431 • Kingeland, T



AutoW Marb
Home of WARRANTY FORE
Coverage so g can't put a pri
Across from W
AutoWorldMarbleFalls.com



Ms LOLLIPOP FUN & GIFTS
208 Main Street, Marble Falls •
www.MsLollipop







The "inappropriate" books received several reviews on Amazon as being suitable for all ages. Contributed

○ ○ ○

Two children's books removed from the Llano County Library System as being inappropriate will not be available for public scrutiny, Llano County Judge Ron Cunningham said Monday.

The two books are *I Need a New Butt* by Dawn McMillan and *Freddie the Farting Snowman* by Jane Bexley. Both are available online from Amazon – the McMillan either as an e-book or a paperback, the Bexley volume only as an e-book. Both books are intended for children.

Amazon quotes Norman Public Schools (with no further location given) as saying about I Need a New Butt: "A silly story that will cause boys and girls to giggle from beginning to end!"

Amazon says of *Freddie the Farting Snowman*, "This book is appropriate for ALL AGES who don't mind silly toot humor (that is not overly gross)" (emphasis Amazon's).

McMillan, a New Zealand author, writes "both funny and serious" children' books, according to her biography. Less information is available about Bexley, whose books appear to specialize in flatulence for children. Both authors have written several books besides the two under discussion.

The controversy over the books arose after some Llano County residents protested at the Commissioners Court meeting Monday, Nov. 8, complaining of "inappropriate" books being made available to minors at the Llano County Library System. The system has libraries in Llano, Buchanan Dam and Kingsland.

The discussion continued at the next Commissioners Court meeting, with Cunningham pointing out that he and Precinct 4 Commissioner Jerry Don Moss had inspected some library books and removed two – the two cited above, though the titles were not given at the time.

At the same time, other speakers warned of censorship and Library Director Amber Milum added that parents can sign a document that controls what their children can check out of any of the county libraries. She added that parents also can receive e-mails that tell what books their children check out of the library. And Milum said books, CDs and other materials intended for adult audiences are marked so a parent should be able to glance at the cover and tell what type of material the child has.

Cunningham took the opportunity to refute a rumor that he had said librarians must monitor every book a child picks up.

"I said parents have a responsibility to monitor their children," he said.

"I will point out that it was said that city taxes help fund the libraries. That's not true. The county funds (all three libraries)," he added.

Up Next - David Carr, Bucky Brooks predict 2022 stats for Cowboys

www.nerdwallet.com

**N** nerdwallet

MORTGAGE LENDE



*Fielder Custom P...*
Fielder Custom Pools Builds and D...
In The Hill Country and the H...

www.fielderpo...
512-751-8290 · 2900 County Rd 403 · M...



GALLOWA...
INSURAN...
— Now Hiring —
INSURANCE PROFE...
to service existing custom...
generate new business for our p...

✓ Competitive sa...
✓ Annual bonus
✓ Paid time off
✓ Training provid...

3 LOCATION...
MARBLE FALLS · BURNET · H...
Send resume to kyte@galloway...



FIRST STATE
OF BURN...

136 E. Washington ·
512-756-2191 · www.fsl...
FDIC         NMLS #485756



CHEVROLET · BUICK
GRANITE H...
707 W YOUNG ST · LLANO
M-F 7:30 AM- 5:30 PM · SAT 9:0
325-247-4151 · www.granite...



JC Tritoons with Me...
Magnum trailers i...
We have a variety of colors and options
Check out our website @ www.mmosedlerco....

Ri T Ma...
830...
⚡ MERCURY      6925 Hw...
JC Tritoon    Granite Sh...

P.App.177

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
|  | § | |
| Plaintiffs, | § | |
|  | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
|  | § | |
| Llano County, *et al.*, | § | |
|  | § | |
| Defendants. | § | |
|  | § | |

## DECLARATION OF SUZETTE BAKER IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

I, Suzette Baker, declare:

1.      I make this declaration based on personal knowledge. If called upon to testify, I could and would testify competently to the following facts.

2.      The Llano County Library System has three locations, Llano City, Kingsland, and Lakeshore (Buchanan Dam). Each location has a head librarian that manages the location and reports to the director. Head librarians are responsible for maintaining their location and ensuring all maintenance and IT issues are reported to the appropriate department while keeping the director in the loop. The head librarians are responsible for creating the schedules of employees at their location, scheduling meeting room usage, and any emergency issues that may arise. Until I was terminated in March 2022, I was the head librarian of the Library System's Kingsland branch. Including my work at the Kingsland branch, I have worked as a librarian for a total of eleven years.

3.      The director of the library system is in charge of attaining purchase orders and ordering books for the individual branches. The head librarian of each branch is in charge of

P.App.178

compiling lists of books appropriate for each location and ensuring there is space for these purchases. These lists are created on the retail sites of Ingram and Amazon, and include books and DVDs. Each head librarian considers the unique demographics of their library while making media considerations. They draw upon patron requests, best seller lists, and collection knowledge. Upon verifying availability of selected media, head librarians submit these lists to the director for purchase. The media is then delivered to the appropriate library and the head librarian is tasked with adding them to the system.

4.     The libraries maintain their collections using the "CREW" method of weeding. "CREW" is an acronym that stands for "Continuous Review, Evaluation, and Weeding." To identify eligible books for weeding, the CREW method uses the "MUSTIE" factors. "MUSTIE" is an acronym that stands for:

- **M**isleading (and/or factually inaccurate)

- **U**gly (in poor physical condition)

- **S**uperseded (by a new editions or better book on the subject)

- **T**rivial (of no discernible literary or scientific merit)

- **I**rrelevant to the needs and interests of the community

- The material may be obtained expeditiously **E**lsewhere through Inter Library loan or reciprocal borrowing.

5.     Twice a year, the library system has a "big weed," where librarians do a comprehensive review of the books on shelves. Generally, these happen in February and August, the slowest months for the library system. During these big weeds, books are assessed using the CREW method. Books are judged on circulation and condition.

P.App.179

6.      The library system has set guidelines for when books are eligible for weeding due to infrequent circulation. Non-fiction books are able to be weeded after five years of not circulating, if their subject matter is no longer valid, if they are not unique to our system, or if in poor condition. Fiction books are able to be weeded after three years of not circulating or if in poor condition. Reference books are not weeded unless they are falling apart, or the library system has duplicates.

7.      Weeding is not done continuously unless there are extenuating circumstances. It would place an unrealistic burden on librarians to be constantly looking for books to weed on a day-to-day basis, which is why the library system schedules two "big weeds" in August and February. Outside of the standard times for comprehensive weeds, books are occasionally weeded if a patron returns them with damage or if they are lost.

8.      I have reviewed the list of books that the Library System's director, Amber Milum, has indicated were weeded according to standard practice in Fall and Winter of 2021. Under my understanding of the applicable weeding factors, and the facts in the record regarding these books, only one of those books, Freakboy, met applicable weeding standards.

9.      The childrens' books I Broke My Butt and My Butt is So Noisy, both by Dawn McMillan, were added to the Llano Library System on June 4, 2021, and were each circulated four times. By library standards, that would make these very popular books and not eligible for weeding.

10.      The books I Need a New Butt (Dawn McMillan), and Larry the Farting Leprechaun, Harvey the Heart Had Too Many Farts, Gary the Goose and His Gas on the Loose, and Freddie the Farting Snowman, all by Jane Bexley, should have been added to the system

3

based on the popularity of the other books in this series. It is not standard practice to "weed" books prior to their having been entered into circulation.

11.     The book It's Perfectly Normal: Changing Bodies, Growing Up, Sex and Sexual Health by Robie Harris is a non-fiction sex education book. This book was added to the system in January 2006 and was last checked out in 2018. As a non-fiction book, this did not fit the CREW method of weeding because it had not been five years since the last check out. If there was concern that this book was not appropriate for children, it should have been placed in the adult section, not weeded.

12.     The book In the Night Kitchen by Maurice Sendak is a Caldecott Medal awarded fiction children's book. It was added to the system in August of 1999 and was checked out 33 times, with the last checkout being in September 2020. Unless this book was in poor condition, it should not have been weeded. If in poor condition, it should have been replaced due to popularity.

13.     The adult book Caste: The Origins of Our Discontents by Isabel Wilkerson is a non-fiction book added to the system in December 2020. It was checked out three times, with the last being January 2021. By Library System standards, this was a popular book and not eligible for weeding. If it was in poor condition, it should have been replaced due to popularity.

14.     The adult book They Called Themselves the KKK: The Birth of an American Terrorist Group by Susan Campbell Bartoletti is a non-fiction book was added to the system in May of 2011 and last checked out in August of 2011. Although the circulation of this book is low, it is the only book in the Library System considering the history of the K.K.K., to my knowledge. The uniqueness of the subject matter would make this book ineligible for weeding.

P.App.181

15.     The young adult book <u>Spinning</u> by Tillie Walden is an Eisner Award winning non-fiction book added to the system in September 2018 and checked out four times, with the last checkout being in May of 2019. As a non-fiction book, it does not meet the criteria for weeding, given these circulation numbers.

16.     The young adult book <u>Being Jazz: My Life as a Transgender Teen</u> by Jazz Jennings is a non-fiction book added to the system in October of 2016 and checked out in July of 2017. This book was never returned and should have been replaced, not weeded.

17.     The young adult book <u>Shine</u> by Lauren Myracle is an Amelia Elizabeth Walden Awarded fiction book was added to the system in January 2012, and last checked out in July 2021. This book did not meet the criteria for weeding, given its recent circulation.

18.     The young adult book <u>Gabi: A Girl in Pieces</u> by Isabel Quintero is a fiction book that was added to the system in January 2016, and last checked out in June of 2018. This book did not meet the criteria for weeding, given its circulation in the last three years.

19.     The young adult book <u>Freakboy</u> by Kristin Elizabeth Clark is a fiction book that was added to the system in January of 2015, and last checked out in June of 2016. Since this book was not checked out in the last three years, it did meet a criteria for weeding.

20.     I am also aware of Ms. Milum's claim that even if parental controls were implemented, a child using OverDrive could have easily changed the settings to remove any filters. If parental controls were implemented, OverDrive would have only been accessible to children if their parents gave them unfettered access to devices that support the reading service. The library system cannot act "in loco parentis." The Library System's Materials Policy states that "[r]esponsibility for the reading of children rests with their parents or legal guardians.

5

Selection should not be inhibited by the possibility that media may inadvertently come into possession of children."

21.     By shutting down the OverDrive reading service, the Director, County Commissioners and County Judge removed library access for the handicapped and homebound community within Llano County with no warning.

22.     I am also aware that Ms. Milum has indicated that certain books that were removed from shelves in Fall and Winter 2021 are now available via the library's "in-house checkout" system. Prior to my termination in March 2022, I was not aware of any such "in-house checkout" system. It appears to be a newly created program.

23.     The American Library Association defines censorship as an "attempt to remove material from curriculum of library, thereby restricting access of others." By making books available for "in-house checkout," instead of entering books into the Library System and placing them on the shelves, the director is censoring books available to the patrons of Llano County.

24.     Furthermore, I am aware that Ms. Milum has stated that obtaining books via an Inter Library loan is a viable alternative for certain books that were removed from shelves in Fall and Winter 2021. During my time at the library, the Inter Library loan service was not regularly used for multiple reasons. First, a book can take weeks to arrive via Inter Library loan. Second, the patron would have to pay a postage fee of at least three dollars to obtain the book this way. In the Kingsland branch, for example, many patrons are low income and could not afford to pay three dollars for an individual book obtained via this service.

25.     During my time as an employee of the Library System, I saw approximately 10 requests placed via the Inter Library loan service in three years. Librarians did not regularly recommend to patrons that they use this service when the Library System did not have a book in

P.App.183

stock. Moreover, only ALA and TILA-accredited libraries can be part of the Inter Library loan

system. If the Llano Library System were to lose its accreditation, it would no longer be able to

participate.

26.     Prior to my termination in March 2022, the County collected my email

correspondence related to my official Library System duties. That email collection included

emails from the Yahoo account that I was instructed to set up to conduct official business for the

Library System prior to being provided a Library System email address. Ms. Milum and the

other librarians working within the Library System also had Yahoo accounts for conducting

official library business.

Dated:  July 29, 2022                     By:     */s/ Suzette Baker*
                                                   Suzette Baker

                                                   *With consent*

P.App.184

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| LEILA GREEN LITTLE, JEANNE PURYEAR, KATHY KENNEDY, REBECCA JONES, RICHARD DAY, CYNTHIA WARING, AND DIANE MOSTER, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Civil Action No. 1:22-cv-00424-RP |
| LLANO COUNTY, RON CUNNINGHAM, in his official capacity as Llano County Judge, JERRY DON MOSS, in his official capacity as Llano County Commissioner, PETER JONES, in his official capacity as Llano County Commissioner, MIKE SANDOVAL, in his official capacity as Llano County Commissioner, LINDA RASCHKE, in her official capacity as Llano County Commissioner, AMBER MILUM, in her official capacity as Llano County Library System Director, BONNIE WALLACE, in her official capacity as Llano County Library Board Member, ROCHELLE WELLS, in her official capacity as Llano County Library Board Member, RHONDA SCHNEIDER, in her official capacity as Llano County Library Board Member, and GAY BASKIN, in her official capacity as Llano County Library Board Member, | § § § § § § § § § § § § § § § § § § § § § § § | |
| Defendants. | § § § | |

## PLAINTIFFS' POST-HEARING BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

<u>**TABLE OF CONTENTS**</u>

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

I.    DEFENDANTS BEGIN A CAMPAIGN OF CENSORSHIP WITH THE BUTT AND FART BOOKS................................................................................. 2

II.   DEFENDANTS REMOVE BOOKS CONTAINING NUDITY. ...................................... 4

III.  DEFENDANTS REMOVE PRO-LGBTQ AND RACIAL EQUITY BOOKS. ............................................................................................ 4

IV.  AFTER LITIGATION BEGINS, DEFENDANTS PRETEXTUALLY CLAIM THEY REMOVED THE BANNED BOOKS AS ROUTINE WEEDING. .................................................................................... 6

      A.    The Books Defendants Removed Do Not Meet Their Own Criteria for Weeding. 6

      B.    Defendants' Testimony About Weeding Was Contradictory and Implausible ...... 9

      C.    Defendants' Contemporaneously Stated Reasons for Removing Books Had to Do with Viewpoint and Content, Not Weeding......................................................... 10

V.   DEFENDANTS PROPOSE INADEQUATE POST-LITIGATION "ALTERNATIVES" TO TRADITIONAL ACCESS. .................................................... 11

      A.    Interlibrary Loan Is Costly, Slow, and Does Not Include All of the Banned Books. ............................................................................................................ 12

      B.    The Bibliotheca eBook Catalog Omits Most of the Banned Books and Requires Access to Expensive Technology. ....................................................................... 12

      C.    Defendants' Secret Lending Library Is Unknown to Patrons and Functionally Unknowable. ....................................................................................................... 12

ARGUMENT .................................................................................................... 13

I.    LLANO COUNTY'S VIEWPOINT AND CONTENT DISCRIMINATION GIVE PLAINTIFFS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS. ....................................................... 14

      A.    Content- and Viewpoint-Based Removal of Books from a Public Library Violates the First Amendment........................................................................................... 14

      B.    Defendants Removed the Wallace List Books Because They Disagreed with the Viewpoints Expressed........................................................................................... 16

P.App.186

C.      Defendants' Removal of Books Was Unconstitutionally Content Based ............. 17

D.      Defendants' Actions Did Not Serve a Compelling Government Interest, Nor Were They Narrowly Tailored. ...................................................................................... 18

E.      The Evidence Shows Defendants' Argument That They Properly Weeded the Books Is a Pretext. ................................................................................................. 19

II.     PLAINTIFFS SUFFERED AND CONTINUE TO SUFFER IRREPARABLE HARM. ................................................................................... 20

III.    THE EQUITIES AND THE PUBLIC INTEREST WEIGH IN FAVOR OF A PRELIMINARY INJUNCTION .................................................................... 23

V.     THE PROPOSED INJUNCTION IS NARROWLY TAILORED TO PRESERVE PLAINTIFFS' FIRST AMENDMENT RIGHTS AND DOES NOT IMPOSE UNDUE BURDEN ON DEFENDANTS. ................................... 24

CONCLUSION ................................................................................................... 24

CERTIFICATE OF SERVICE ........................................................................... 25

P.App.187

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bd. of Educ. v. Pico*,
  457 U.S. 853 (1982).................................................................................. 14, 15

*Campbell v. St. Tammany Par. Sch. Bd.*,
  64 F.3d 184 (5th Cir. 1995) .................................................................... 14

*Carey v. Brown*,
  447 U.S. 455 (1980).................................................................................. 18

*Chiras v. Miller*,
  432 F.3d 606 (5th Cir. 2005) .................................................................. 15

*Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410 (1993).................................................................................. 17

*Counts v. Cedarville Sch. Dist.*,
  295 F. Supp. 2d 996 (W.D. Ark. 2003).................................................. 15, 23

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
  704 F.3d 413 (5th Cir. 2013) .................................................................. 21

Denver Area Educational Telecommunications Consortium, Inc. v. F.C.C.
  518 U.S. 727 (1996)............................................................................... 23, 24

*Egli v. Chester Cnty. Libr. Sys.*,
  394 F. Supp. 3d 497 (E.D. Pa. 2019) .................................................... 15

*Elrod v. Burns*,
  427 U.S. 347 (1976) (plurality opinion) ............................................... 14, 21

*Franciscan All., Inc. v. Burwell*,
  227 F. Supp. 3d 660 (N.D. Tex. 2016) ................................................. 24

*Gay Guardian Newspaper v. Ohoopee Reg'l Libr. Sys.*,
  235 F. Supp. 2d 1362 (S.D. Ga. 2002)................................................... 15

*Iancu v. Brunetti*,
  139 S. Ct. 2294 (2019)........................................................................ 15, 16, 17

*Ingebretsen v. Jackson Pub. Sch. Dist.*,
  88 F.3d 274 (5th Cir. 1996) ................................................................. 14, 20

*Int'l Soc. for Krishna Consciousness, Inc. v. Lee*,
  505 U.S. 672 (1992)........................................................................... 17, 18, 19

P.App.188

*Matal v. Tam,*
    137 S. Ct. 1744 (2017) ..................................................................................... 16

*Minarcini v. Strongsville City Sch. Dist.,*
    541 F.2d 577 (6th Cir. 1976) .......................................................................... 14

*Opulent Life Church v. City of Holly Springs, Miss.,*
    697 F.3d 279 (5th Cir. 2012) .......................................................................... 13

*Pratt v. Ind. Sch. Dist. No. 831,*
    670 F.2d 771 (8th Cir. 1982) .......................................................................... 14

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ......................................................................................... 17

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ................................................................................. 2, 15, 17

*Robinson v. Hunt County,*
    921 F.3d 440 (5th Cir. 2019) ..................................................................... 16, 17

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
    515 U.S. 819 (1995) ......................................................................................... 16

*Sable Communications of Cal., Inc. v. F.C.C.,*
    492 U.S. 115 (1989) ......................................................................................... 18

*Sorrell v. IMS Health, Inc.,*
    564 U.S. 552 (2011) ......................................................................................... 14

*Sund v. City of Wichita Falls,*
    121 F. Supp. 2d 530 (N.D. Tex. 2000) ..................................................... passim

*Texans for Free Enter. v. Texas Ethics Comm'n,*
    732 F.3d 535 (5th Cir. 2013) ................................................................. 2, 14, 20

*Texans for Free Enter.,* 732 F.3d at 539 ................................................................. 23

*Texas v. Johnson,*
    491 U.S. 397 (1989) ......................................................................................... 16

*Turner Broad. Sys., Inc. v. F.C.C.,*
    512 U.S. 622 (1994) ......................................................................................... 14

*United States v. Am. Libr. Ass'n, Inc.,*
    539 U.S. 194 (2003) ......................................................................................... 15

*United States v. Playboy Ent. Grp., Inc.,*
    529 U.S. 803 (2000) ............................................................................. 15, 18, 21

P.App.189

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) .................................................................................... 24

*Williams-Yulee v. Fla. Bar*,
    575 U.S. 433 (2015) .................................................................................... 18

**Other Authorities**

11A Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, Fed. Prac. and Proc. §
    2948.1 (3d ed. 2008) .................................................................................... 21

P.App.190

**INTRODUCTION**

The evidence adduced at the October 2022 Hearing ("Hearing") on Plaintiffs' Motion for Preliminary Injunction confirmed what has been evident from the start of this case: Defendants violated Plaintiffs' First Amendment rights by unconstitutionally removing books from the Llano County libraries because county officials disapproved of the viewpoints and contents of those books. Defendants' contemporaneous communications uniformly evince their antipathy toward three categories of books: (1) books adopting favorable views of the LGBTQ community or advancing the position that systemic racial disparities exist in the United States; (2) books containing illustrations of nudity for comedic or educational purposes; and (3) several light-hearted children's books designed to acknowledge children's curiosity about basic bodily functions. During the second half of 2021, Defendants removed all three categories of books because they disagreed with the viewpoints expressed in the LGBTQ and racial equity books and they disapproved of the contents of all three categories.

Defendants offered two post-hoc justifications for their unconstitutional actions. *First*, they tried to recast their removal of the books as part of the routine process of "weeding" unused and damaged books from library shelves. But evidence presented at the Hearing revealed this to be bare pretext—the removed books did not meet the criteria for weeding and all contemporaneous evidence showed that Defendants removed the books based on their content and viewpoint. *Second*, Defendants claimed that "alternative"—and more burdensome—means of accessing the disputed books, including interlibrary loan, electronic books, and a secret repository at one library branch (created personally by Defendants' litigation counsel after he had been retained), meant that the books they had targeted were still available to the public. These efforts at voluntary cessation do not eliminate the need for relief.

Plaintiffs have met the standard for issuance of a preliminary injunction. Plaintiffs are likely to prevail on the merits because viewpoint and content discrimination are repugnant to the First Amendment. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). There is no government interest, much less a compelling one, in banning the books at issue. Indeed, Defendants have not even attempted to argue otherwise. Irreparable harm is also easily established because the "loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). Finally, the balance of equities and public interest also militate strongly in favor of Plaintiffs. On the one hand, Defendants incur no injury in allowing people to read books if they want to do so. On the other hand, Plaintiffs and the public will suffer if no relief is issued. The First Amendment protects free discourse and the right to read about unpopular ideas, and the public has a compelling interest in seeing that the marketplace of ideas remains a free one.

## BACKGROUND

### I. DEFENDANTS BEGIN A CAMPAIGN OF CENSORSHIP WITH THE BUTT AND FART BOOKS.

In the summer of 2021, at the direction of her Llano County superiors, Library Director Amber Milum—who personally selected the Butt and Fart Books[1] as valuable additions to the children's section of the public library based on her training and experience[2]—permanently

---

[1] The "Butt Books" as referenced herein are Dawn McMillan titles: (1) *My Butt Is So Noisy*, (2) *I Broke My Butt*, and (3) *I Need a New Butt*. The "Fart Books" as referenced herein are Jane Bexley titles: (1) *Larry the Farting Leprechaun*, (2) *Gary the Goose and His Gas on the Loose*, (3) *Freddie the Farting Snowman*, and (4) *Harvey the Heart Had Too Many Farts*.

[2] Milum found the series of lighthearted children's books appropriate for the Llano Library, based on solely positive reviews, and "thought they would be funny." She never changed her mind that "they were appropriate for the age range" to which they were targeted. *See* Hr'g Tr. Vol. 1 at 59:24-60:23; 64:3-8.

P.App.192

removed all seven titles from the Library.

This censorship was put into motion by the complaints of Rochelle Wells and Rhonda Schneider.[3] *See, e.g.*, Hr'g Tr. Vol 1 at 24:20-22; 64:1-2; 177:9-178:14; Ex. 52 at 1-2. Wells and Schneider first conducted their own personal campaign to keep these titles out of circulation because of their assessment of the content; they began repeatedly checking out the Butt and Fart Books, keeping them off the shelves and inaccessible to other library patrons. Hr'g Tr. Vol 1 at 24:20-24; Vol. 2 at 5:23-6:10; 106:23-107:3. Then, they escalated their concerns to library staff and senior Llano County officials. Wells, who simply "believe[s] the Fart Books don't belong in our library," asked the librarian (Milum) and the two top Llano County officials (Moss and Cunningham) to remove the Butt and Fart Books from the Library. Hr'g Tr. Vol 1. at 178:10-190:6.

In direct response to these requests by Wells—which were based on her concerns over a single illustration on *one* page of *one* of the books—Moss and Cunningham directed Milum to remove the Butt and Fart Books. Ex. 2A; Hr'g Tr. Vol. 1 at 67:1-3, 172:7-11, 127:24-128:5. On August 3, 2021, Moss met with Milum, and "told [her] to take the books out of the system;" and Milum followed her superior's directive, taking the books from the shelves and permanently deleting them from the library catalog specifically because of their content. *See* Ex. 52 at 1-2; Hr'g Tr. Vol. 1 at 64:18-21; 66:9-25; 172:7-11; 127:24-128:5.[4]

---

[3] At the time of these initial complaints, both Wells and Schneider were simply local residents. But, as the book-banning campaign progressed, each was elevated to placement on the Llano County Advisory Board, replacing longtime board members who were ousted with no contemporaneous explanation.

[4] At the hearing, Milum attempted to deny that she removed the Butt and Fart Books at least in part because she was so directed by Moss, but after reviewing her contemporaneous notes of the meeting—"an accurate reflection of the conversation,"—she agreed she had been so instructed.

## II.     DEFENDANTS REMOVE BOOKS CONTAINING NUDITY.

After the removal of the Butt and Fart Books, Cunningham instructed Milum to remove from the shelves "[a]ny books with photos of naked or sexual conduct regardless if they are animated or actual photos." Ex. 60; Hr'g Tr. Vol. 1 at 69:1-17; Hr'g Tr. Vol. 2 at 139:18-140:4. Following this directive, the library was closed for three days, and librarians were instructed to remove any book that depicted nudity of any kind. Hundreds of books, including books about potty training and getting dressed, were removed from shelves. Hr'g Tr. Vol. 1 at 29:21-30:20; 109:8-14.

One of the casualties of this review was Maurice Sendak's classic, Caldecott Award-winning book *In the Night Kitchen*, first published over fifty years ago. Milum removed *In the Night Kitchen* from the library system because it includes illustrations of a naked toddler. Hr'g Tr. Vol. 1 at 70:13-18, 71:9-15, 95:5-8. Defendants also purged *It's Perfectly Normal* by Robie Harris, an illustrated children's health book that had been on the shelves since 2006. Hr'g Tr. Vol. 1 at 28:14-21, 29:13-20, 75:3-11; Hr'g Tr. Vol. 2 at 140:5-10. *It's Perfectly Normal* helps readers understand puberty and discusses ways to stay safe on the internet. Hr'g Tr. Vol. 1 at 28:10-24. After Moss ordered the removal of this particular book from the Llano Library, Wells thanked him for "making [Milum] remove the book because of its 'disgusting' photos." *See* Ex. 19.

## III.    DEFENDANTS REMOVE PRO-LGBTQ AND RACIAL EQUITY BOOKS.

Having successfully convinced county officials to execute their censorship campaign on children's books, Wells and Schneider began targeting books outside the children's section. On

*See* Hr'g Tr. Vol. 1 at 65:7-9; Ex. 2B. She also agreed that "Cunningham also directed [her] to remove the books." *See* Hr'g Tr. Vol. 1 at 67:1-3.

October 25, 2021, Texas State Representative Matt Krause (Chairman of the Texas House "Committee on General Investigating") published a 16-page list of supposedly "objectionable" books on race, sexuality, and gender identity (the "Krause List"). Ex. 6.

Just three days after the Krause List was issued, on October 28, 2021, Milum emailed Cunningham about *How to Be an Antiracist* by Ibram X. Kendi, which she referred to as the "Critical race theory book" and which Milum noted she and Cunningham had previously discussed. Ex. 7; Hr'g Tr. Vol. 1 at 78:2-21. Milum's email explains that Milum "wanted to let [Cunningham] know before it came up in any of [his] meetings" that, although the book was still in the system, it was now hidden behind the front desk and was "no longer on the shelf." Ex. 7.

In the meantime, Wells and her associates agreed via email to take a "couple of pages each" of the "16 pages of [Krause List] books" to ascertain if any of the titles were available in the Llano County Library. Ex. 8. The resulting table of Krause List titles available at the Llano County public libraries, referred to herein as the "Wallace List," was "the list of books that Bonnie Wallace thought were inappropriate and should be removed from the Llano County Library System."[5] Hr'g Tr. Vol. 1 at 72:13-21, 81:6-9, 89:15-25.[6] Milum's "boss" Cunningham

---

[5] The books on the Wallace List included *Caste: The Origins of Our Discontent* by Isabel Wilkerson; *They Called Themselves the K.K.K: The Birth of an American Terrorist Group* by Susan Campbell Bartoletti; *Spinning* by Tillie Walden; *Being Jazz: My Life as a (Transgender) Teen* by Jazz Jennings; *Shine* by Lauren Myracle; *Under the Moon: A Catwoman Tale* by Lauren Myracle; *Gabi, a Girl in Pieces* by Isabel Quintero; and *Freakboy* by Kristin Elizabeth Clark.

[6] Subsequently, in an email thread including Moss, Wells reported that Moss and Cunningham had "instructed" Milum to "remove certain books," including *Lawn Boy*, *Gender Queer*, and "the Butt Book," and she thanked Moss "for [his] help in this situation and all [he had] done to remedy it!" Ex. 8.; Hr'g Tr. Vol. 2 at 9:10-19. Wells then reported that the work of ascertaining which of the "CRT and LGBTQ book[s]" were in the Library had been completed. Their next steps were to "research the content of the ones [they had] found," along with related other titles and to send a list "of the ones that are found to be inappropriate, along with a summary, to Commissioner Moss." Ex. 8.

sent her the Wallace List on November 10, 2021, forwarding an email describing the books on

the list as "pornographic filth." Ex. 5; Hr'g Tr. Vol. 1 at 90:1-9, 96:21-97:6. As Milum put it at

her deposition, "When I received [the Wallace List], we went and pulled all of those books."

Hr'g Tr. Vol. 1 at 82:8-9.

Defendants thus admitted that the reason that these "CRT and LGBTQ" books were

"selected for weeding" was because they were on the "[Wallace List]." *See id.* at 82:3-10, 82:24-

83:3, 84:12-13 (*Shine*), 84:8-9 (*Spinning*), 84:10-11 (*Being Jazz*), 84:16-17 (*Gabi, A Girl in

Pieces*), 84:18-19 (*Freakboy*), 84:20-21 (*Caste*), 94:23-25 (*They Called Themselves the KKK*).

And Milum readily admitted that *no books other than those on the Wallace List* were weeded at

this time. *Id.* at 84:2-7.

## IV.    AFTER LITIGATION BEGINS, DEFENDANTS PRETEXTUALLY CLAIM THEY REMOVED THE BANNED BOOKS AS ROUTINE WEEDING.

Although no contemporaneous document supports the contention, after this litigation was

initiated, Defendants contrived a pretextual explanation to excuse their censorship. They claimed

that the books were "weeded," meaning removed from the catalog, pursuant to library policies.

### A.    The Books Defendants Removed Do Not Meet Their Own Criteria for Weeding.

"Weeding" is the process by which a library removes books to make space for new

purchases. Hr'g Tr. Vol. 2 at 71:20-25. The Llano Library System uses the "CREW" method to

determine which books to weed from the library catalog, Ex. 23, and has continuously used the

CREW method, and only the CREW method, for weeding since no later than June 2019. Hr'g Tr.

Vol. 1 at 13:19-20, 18:12-15. CREW stands for "Continuous Review, Evaluation and Weeding."

Ex. 23 at 2. "The CREW method uses an acronym, MUSTIE, to indicate when an item should be

removed from the collection." *Id.* MUSTIE stands for: "**M**isleading and/or factually inaccurate,"

"**U**gly (worn out beyond mending or rebinding)," "**S**uperseded by a new edition or a better

source," "**T**rivial (of no discernable literary or scientific merit), "**I**rrelevant to the needs and interests of the community," and "**E**lsewhere (the material may be easily borrowed from another source)." *Id.*

Weeding decisions "are based on some combination of these criteria—that is, an item will probably *not* be discarded based on meeting *only one* of [the MUSTIE] criteria." *Id.* (emphasis added). Tina Castelan, a former Llano County Children's Librarian, explained that historically the Llano Library looked for two or three MUSTIE criteria to be satisfied for weeding eligibility. Hr'g Tr. Vol. 1 at 21:17-21. Milum agreed with that assessment. Hr'g Tr. Vol. 2 at 125:2-5. By way of example, irrelevance alone is not a sufficient basis to weed books. Indeed, there are currently more than 5,800 books in the Llano Library that have not been checked out since March 1, 2018, and thus technically would meet the irrelevance criteria. Ex. 79.

Based on her experience as a librarian, her knowledge of the CREW factors and MUSTIE criteria, and her review of each of the Banned Books, Tina Castelan testified that all but one of the Banned Books were weeded improperly and contrary to Llano County Library policies. Hr'g Tr. Vol. 1 at 33:15-34:3, 35:7-38:16, 40:1-41:8, 41:16-42:19, 43:12-44:14, 45:5-18. Indeed, none of the Banned Books—which were removed from the shelves and the library catalog—met more than one MUSTIE criterion, and most met none. Ex. 52; Hr'g Tr. Vol. 1 at 42:14-19, 43:20-25.

| Title | Deleted | All-Time Circs | Circ Within 3 Years? | Special Topic Book? | Evidence of Damage? |
|---|---|---|---|---|---|
| I Need a New Butt! | 2021-07-20 | 0 | | | No |
| Larry The Farting Leprechaun | 2021-08-05 | 0 | | | No |
| Harvey The Heart Had Too Many Farts | 2021-08-05 | 0 | | | No |
| Gary the Goose and His Gas on the Loose | 2021-08-05 | 0 | | | No |
| Freddie the Farting Snowman | 2021-08-05 | 0 | | | No |
| I Broke My Butt! | 2021-08-09 | 4 | Yes | | No |
| My Butt is So Noisy! | 2021-08-09 | 4 | Yes | | No |
| It's Perfectly Normal: Changing Bodies, Growing Up, Sex, and Sexual Health | 2021-10-12 | 7 | Yes | | No |
| In the Night Kitchen | 2021-11-09 | 33 | Yes | | No |
| Shine | 2021-11-12 | 10 | Yes | | No |
| Spinning | 2021-11-12 | 4 | Yes | | No |
| Caste: The Origins of Our Discontents | 2021-11-12 | 3 | Yes | | No |
| Being Jazz: My Life as a (Transgender) Teen | 2021-11-12 | 1 | No | Yes | No |
| They Called Themselves the K.K.K.: The Birth of an American Terrorist Group | 2021-11-12 | 2 | No | Yes | No |
| Gabi, a Girl in Pieces | 2021-11-17 | 3 | Yes | | No |
| Under the Moon: A Catwoman Tale | 2021-11-18 | 4 | Yes | | No |
| Freakboy | 2021-11-12 | 1 | No | | No |

As Castelan testified, and as the above chart shows, five of the books—the Fart Books and *I Need a New Butt*—were brand new and were weeded before they even hit the shelves. Hr'g Tr. Vol. 1 at 33:15-34:3 (*I Need a New Butt*), 34:4-13 (*Larry the Farting Leprechaun*), 34:16-18 (*Harvey the Heart Had Too Many Farts*), 34:19-35:1 (*Gary the Goose and His Gas on the Loose*), 35:2-6 (*Freddie the Farting Snowman*). There is no Library policy, or factor under CREW or MUSTIE, by which new books may be weeded before they make it into circulation. And Defendants did not provide a single reason under CREW or MUSTIE justifying the removal of the Fart Books and *I Need a New Butt*.

As for the other two Butt Books—*I Broke My Butt* and *My Butt Is So Noisy*—Castelan explained that, because the books were brand new and had already been checked out four times each, they did not meet *any* of the MUSTIE criteria. *Id.* at 35:7-36:19. Milum's testimony to the contrary was nonsensical, as she explained that the books were getting checked out *too much*, and that is why she weeded them. Hr'g Tr. Vol. 1 at 125:22-24. Of course, a book being too popular is not a proper reason to weed it under CREW or MUSTIE. *Id.* at 133:25-134:3.

*In the Night Kitchen* and *It's Perfectly Normal* also did not meet the CREW and MUSTIE criteria for weeding. *In the Night Kitchen* was checked out 33 times while in the Llano Library, including in 2020, and it did not meet any other MUSTIE factor. *Id.* at 37:20-38:16. As for *It's Perfectly Normal*, that title was checked out within three years of its removal and it was special topic book, meaning it was the "only book of its category that is as extensive in its information that it gives." *Id.* at 37:15-19. Accordingly, it was not eligible to be weeded. Any testimony to the contrary is belied by the fact that Moss told Castelan he did not want the book in the library, *id.* at 29:2-9, and then made Milum "remove *It's Perfectly Normal*," *id.* at 197:8-10.

The majority of the remaining Banned Books were in regular circulation, had been checked out within three years of their removal, and did not otherwise meet any of the MUSTIE criteria for weeding. In fact, Castelan's testimony that none of these books were properly weeded pursuant to the Library's policies is supported by the record. *Id.* at 40:1-41:8, 41:16-42:6, 44:1-14, 45:5-18. For example, *Caste* was checked out three separate times in the eleven months before it was removed from the library system, and there is no record anywhere of the book being damaged. *Id.* at 90:19-23. *Being Jazz* and *They Called Themselves the K.K.K.* were unique special topic titles so, even though they had not been checked out within three years, they were not eligible for weeding under the Library's historic application of the MUSTIE criteria. *Id.* at 22:6-10, 42:14-19, 43:20-25. According to Castelan, only one of the Banned Books—*Freakboy*—which was last checked out in 2016, was weeded consistent with MUSTIE criteria. *Id.* at 38:25-39:9.

### B. Defendants' Testimony About Weeding Was Contradictory and Implausible.

In addition to being contradicted by Castelan's testimony and the record evidence, Milum's testimony that the Banned Books were properly weeded was riddled with contradictory and implausible statements. Hr'g Tr. Vol. 2 at 97:3-11; 99:6-13, 101:22-102:5, 102:18-25, 104:5-

15, 105:2-8, 105:17-24. *First*, the CREW Manual states that books are to remain on shelves unless they do not circulate "for 3-5 years." Ex. 23 at 44. It is also implausible that, as part of a standard weeding application, Milum would remove the Banned Books (most of which had been checked out within the previous three years) for lack of circulation but leave approximately *5,800* titles that had not been checked out in those prior three years on the shelves, including hundreds which had not been checked out for decades. *Compare* Ex. 52 *with* Ex. 79A; *see also, e.g.*, Hr'g Tr. Vol. 2 at 127:21-25, 136:4-7. Indeed, that is why when pressed, Milum could not come up with any reason to justify *Caste*'s removal, other than the obvious—it was removed for its viewpoint and content—and suggested that "it was possibly put in a different stack when we were looking through all these other books because it was new." Hr'g Tr. Vol. 1 at 91:6-9.

*Second*, by Milum's own admission, there was no need to weed books in November 2021 because the Commissioners Court suspended all new purchases a month *earlier*. Hr'g Tr. Vol. 2 at 120:25-121:10. *Finally*, Milum's testimony regarding *In the Night Kitchen* was flatly contradicted by physical evidence. Milum testified at the Hearing that the book met the Ugly factor because "it was old and worn." Hr'g Tr. Vol. 1 at 93:24-25. However, when the physical copy of *In the Night Kitchen* removed from the Library was introduced into evidence, it was found to be "in excellent condition" and lacking "any tears or stains or any damage." Ex. 91; Hr'g Tr. Vol. 2 at 41:11-42:7.

### C. Defendants' Contemporaneously Stated Reasons for Removing Books Had to Do with Viewpoint and Content, Not Weeding.

Defendants' true motivation for removing these books from the Llano Library shelves is plain from the record: Milum admitted that "the reason that [the Banned Books] were selected to be weeded and reviewed to be weeded, as opposed to other books, w[as] because Ms. Wallace had them on her list" of books Defendants disagreed with. Hr'g Tr. Vol. 1 at 82:24-83:3. Even

when Milum could not recall what certain titles were about, she knew that these books were on the Wallace List, and that was why she had evaluated them. *Id.* at 101:6-12.

Defendants' pre-litigation correspondence also lays bare their true motivations. For example, in February 2022, Wallace (who had then been elevated from resident to a Library Advisory Board member) circulated to Cunningham and Moss a "Harmful Content Analysis" form for determining whether a book should be removed from the library. Ex. 37; Hr'g Tr. Vol. 1 at 182:10-21. The form offered 13 viewpoint- and content-based grounds to remove books, including categories such as "[r]acist or condescending toward a specific demographic," "[p]romotes globalism or anti patriotism such as burning of the U.S. flag, demeaning towards armed services or members, critical of our nation, ex America is racist, etc.," or "[p]romotes condemnation or mocking of a religion." Ex. 76.

In another plain statement, Wells testified at the hearing that "if there was any book that [in her opinion] was harmful to minors that was in the library, I would speak with the director, [Milum] to have it removed." Hr'g Tr. Vol. 1 at 205:9-14. If Milum disagreed with her assessment—as with the Butt and Fart Books—she would speak to Milum's superiors, County officials Moss and/or Cunningham and have them removed. *Id.* at 205:15-206:12. Wells was not alone. Defendants were not shy about describing the types of books whose content or viewpoints they found to be offensive or inappropriate and unabashedly removing those titles from the library. *See, e.g.*, Hr'g Tr. Vol. 1 at 29:2-9, 197:8-10; Ex. 19.

## V.   DEFENDANTS PROPOSE INADEQUATE POST-LITIGATION "ALTERNATIVES" TO TRADITIONAL ACCESS.

Defendants offered several post-hoc "remedies" for the removal of the Banned Books, but as explained below, those half-hearted measures neither restore the Banned Books to the shelves nor cure the First Amendment violation.

**A.      Interlibrary Loan Is Costly, Slow, and Does Not Include All of the Banned Books.**

Other than *Caste*, *It's Perfectly Normal*, and *Being Jazz*, the other Banned Books are

purportedly available through interlibrary loan. Milum Decl., Dkt. No. 49-1, ¶ 10. Interlibrary

loan is a service by which patrons can pay money to borrow a book from another library in

Texas. Hr'g Tr. Vol. 1 at 53:12-17. Books can take more than a month to arrive through the

interlibrary loan program, depending on their location. Hr'g Tr. Vol. 2 at 124:24-125:1. That is,

the Banned Books, which used to be freely and immediately available on Llano Library shelves,

are now only available to patrons by a request-only service that requires library staff

involvement, payment by the patron, and may have wait times of up to a month or more.

**B.      The Bibliotheca eBook Catalog Omits Most of the Banned Books and Requires Access to Expensive Technology.**

In December 2021, Defendants suspended access to OverDrive, the Library System's

eBook catalog, because they did not want children to be able to access *Gender Queer* and *Lawn*

*Boy*, 2 out of more than 17,000 books available in the catalog. Hr'g Tr. Vol. 1 at 79:25-81:2; Ex.

88, at 4. In May of 2022 (after this suit was filed), Defendants adopted Bibliotheca and now

claim that it cures their constitutional violations. Bibliotheca, however, does not provide access

to twelve of the Banned Books. Milum Decl., ¶ 10. It also requires a patron to have a compatible

electronic device—a significant expense for some patrons. Hr'g Tr. Vol. 2 at 47:2-4.

**C.      Defendants' Secret Lending Library Is Unknown to Patrons and Functionally Unknowable.**

Finally, in the summer of 2022, Defendants contrived a secret lending library and

informed none of the library's patrons of its existence. Specifically, in July—*after* this litigation

was filed—Defendants' lawyer, Jonathan Mitchell, donated nine of the Banned Books to the

Llano Library.[7] The donated books make up the entirety of the Llano Library's in-house checkout program. Dkt. No. 53 ("Milum Suppl. Decl.") ¶ 3; Hr'g Tr. Vol. 1 at 116:7-9, 117:1-9; Vol. 2 at 182:10-13. As Defendants have acknowledged, these books are not listed in the Library System catalog—they are kept behind a desk, out of public view. Hr'g Tr. Vol. 1 at 54:23-55:3, 55:25-56:2, 114:16-115:1. Their presence has never been advertised on the library bulletin board or physical signs, and there was no announcement of their presence released in the library newsletter or posted on social media. *Id.* at 55:19-24, 115:2-4, 116:3-6; Hr'g Tr. Vol. 2 at 43:1-19.[8] Their appearance is distinct because they do not have a barcode, spine label, or genre label. Hr'g Tr. Vol. 1 at 55:6-13. The only way that a patron might know these books are available is because "of the lawsuit." *Id.* at 56:6-11.

## ARGUMENT

An applicant for preliminary injunction must show four elements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012). Where the case revolves around a violation of constitutional rights, the final three elements follow from the constitutional violation. *See Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539

---

[7] This fact was revealed at the hearing. In her declaration Milum does not identify Mr. Mitchell, she just refers to an anonymous donor. Dkt. No. 53, ¶ 3. On the stand, Defendants' counsel argued that the identity of the anonymous donor as protected by the attorney client privilege, Hr'g Tr. Vol. 1 at 116:12-23, but Mr. Mitchell later revealed he was the donor, Hr'g Tr. Vol. 2 at 182:10-19.

[8] The library's standard practice is to publicize all newly acquired titles in the Llano County Library System in its newsletter. Hr'g Tr. Vol. 1 at 115:12-14.

(5th Cir. 2013); *accord Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). The evidence presented at the hearing proves Defendants removed the Banned Books from the public library based on disapproval of their content or viewpoint in violation of the First Amendment. Defendants' pretextual claim that the books were properly weeded is demonstrably false, and the alternate means of access they rely on still impose greater burdens than existed prior to their censorship campaign. Accordingly, the Court should grant Plaintiffs' motion.

**I.  LLANO COUNTY'S VIEWPOINT AND CONTENT DISCRIMINATION GIVE PLAINTIFFS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.**

**A.  Content- and Viewpoint-Based Removal of Books from a Public Library Violates the First Amendment.**

The First Amendment prohibits the removal of books from libraries based on either content or viewpoint discrimination. *See Bd. of Educ. v. Pico*, 457 U.S. 853, 871 (1982); *Campbell v. St. Tammany Par. Sch. Bd.*, 64 F.3d 184, 188 (5th Cir. 1995); *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547-548 (N.D. Tex. 2000).[9] That Defendants' post-litigation actions have sought to transform their initial outright ban into a burden on access to the Banned Books does not change the calculus. "Lawmakers may no more silence unwanted speech by burdening its utterance than by censoring its content." *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 566 (2011); *see also Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641-42 (1994) ("Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or

---

[9] While the law protecting individuals' right to receive information from their libraries was developed in the context of school libraries, *see Pico*, 457 U.S. at 871; *Campbell*, 64 F.3d at 188; *Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 582 (6th Cir. 1976); *Pratt v. Ind. Sch. Dist. No. 831*, 670 F.2d 771, 776 (8th Cir. 1982), the principles set forth in those cases "have even greater force when applied to public libraries," *Sund*, 121 F. Supp. 2d at 547-48.

impose differential burdens upon speech *because* of its content."). "The Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 812 (2000).

To establish a likelihood of success on the merits, therefore, Plaintiffs need only show Defendants removed books from the Llano County Library System—or placed burdens on accessing books—based either on the viewpoints expressed or on their content without narrowly tailoring the burden to a compelling government interest.[10] *See Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (viewpoint discrimination); *Reed*, 576 U.S. at 163 (content discrimination). Courts faced with fact patterns similar to—but less extreme than—the current situation in Llano County have had no difficulty concluding there was a constitutional violation. *See, e.g.*, *Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 1001 (W.D. Ark. 2003) (granting summary judgment where school moved Harry Potter books from shelves to "highly visible" location behind the staff counter); *Sund*, 121 F. Supp. 2d at 533-534 (granting preliminary injunction where pro-LGBTQ books were moved from children's section to adult section of library). Defendants were explicit about their animosity toward the viewpoints expressed in the Banned Books at the time they removed those books. Their post hoc efforts to recast their actions as

---

[10] While neither selection nor removal of library books may be based on unlawful discrimination, not every title has a First Amendment right to exist in every library so the standards for selection and removal are necessarily different. *See Chiras v. Miller*, 432 F.3d 606, 619 (5th Cir. 2005) ("Because *Pico* addressed the **removal** of an optional book from the school library, not the **selection** of a textbook for use in the classroom, we decline to apply *Pico* to the facts before us." (emphasis added)). All of Defendants' pre-hearing brief cases dealt with selection, not removal. *See United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 212 (2003) (library can install devices to exclude pornography); *Chiras*, 432 F.3d at 619 (textbook author has no right to have his book selected for curriculum); *Egli v. Chester Cnty. Libr. Sys.*, 394 F. Supp. 3d 497, 504 (E.D. Pa. 2019) (author does not have a right to have his book selected for library); *Gay Guardian Newspaper v. Ohoopee Reg'l Libr. Sys.*, 235 F. Supp. 2d 1362, 1376 (S.D. Ga. 2002) (library does not have to offer newspapers to the public).

routine "weeding" and to offer partial and more burdensome "alternatives" to traditional access do nothing to remedy the constitutional infirmity of their actions.

**B.      Defendants Removed the Wallace List Books Because They Disagreed with the Viewpoints Expressed.**

Viewpoint discrimination—namely, the suppression of information driven by subjective views and opinions—is a *per se* violation of the First Amendment. *Iancu*, 139 S. Ct. at 2299 (if a speech restriction "is viewpoint-based, it is unconstitutional"); *see Rosenberger v. Rector & Visitors of Univ. of Va*., 515 U.S. 819, 828-29 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."). "Official censorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint discrimination." *Robinson v. Hunt County*, 921 F.3d 440, 447 (5th Cir. 2019) (citing *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017); *accord Texas v. Johnson*, 491 U.S. 397 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").

The record is replete with evidence of Defendants admitting the real reason they pulled the "CRT and LGTBQ" books—including, *Caste: The Origins of Our Discontent*; *They Called Themselves the K.K.K: The Birth of an American Terrorist Group*; *Spinning*; *Being Jazz: My Life as a (Transgender) Teen*; *Shine*; *Under the Moon: A Catwoman Tale*; *Gabi, a Girl in Pieces*; and *Freakboy*—from shelves was because the books took positions with which Defendants disagreed. Ex. 8; Hr'g Tr. Vol 1 at 72:2-21, *id.* at 82:3-10, 82:24-83:3, 83:9-11, 84:2-7; 84:12-13 (*Shine*), 84:8-9 (*Spinning*), 84:10-11 (*Being Jazz*), 84:16-17 (*Gabi, A Girl in Pieces*), 84:18-19 (*Freakboy*), 84:20-21 (*Caste*), 94:23-25 (*They Called Themselves the KKK*), 75:24-76:9 (*How to Be an Anti-Racist*). Even when Milum could not recall what certain books were about, she knew

the books were on the Wallace List, and she knew that was why she removed them. *Id.* at 101:8-12. Indeed, "other than the fact that they were on a list entitled pornographic filth that [her] boss sent [her]," Milum testified that she knew nothing about the books she removed. *Id.* at 104:6-9.

Defendants targeted the books because they were on the Wallace List and removed them because they discussed topics Defendants deemed inappropriate or offensive. This is the sort of viewpoint discrimination that constitutes a *per se* violation of the First Amendment. *See Iancu*, 139 S. Ct. at 2299; *Robinson*, 921 F.3d at 447.

### C. Defendants' Removal of Books Was Unconstitutionally Content Based.

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. Content discrimination is a violation of the First Amendment unless narrowly tailored to achieve a compelling government interest. *Id.*; *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) ("Content-based regulations are presumptively invalid."). An action that is "content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed*, 576 U.S. at 165 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). Defendants' conduct easily meets this standard because they admittedly removed books discussing bodily functions and books depicting nudity based on content and have not offered, much less proven, a compelling government interest in doing so.

The evidence presented during the Hearing unequivocally demonstrated Defendants removed books from the library based on their content. Indeed, Defendants expressly admitted that the Butt and Fart Books were removed because of their content. Hr'g Tr. Vol. 1 at 127:24-128:5; *see also* Ex. 52 at 1-2; Ex. 2A; Ex. 2; Hr'g Tr. Vol. 1 at 66:9-14. Likewise, Defendants

repeatedly acknowledged that they removed *In the Night Kitchen*, and *It's Perfectly Normal* because of the content of those two books. Hr'g Tr. Vol. 1 at 70:13-18, 71:9-15; Ex. 19. Defendants chose the LGBTQ and racial equity books for removal as a result of their contents as well. Hr'g Tr. Vol. 1 at 82:3-10, 82:24-83:3, 84:12-21, 94:23-25.

### D. Defendants' Actions Did Not Serve a Compelling Government Interest, nor Were They Narrowly Tailored.

Content-based restrictions may only stand if they survive strict scrutiny; they must be narrowly tailored to serve a compelling government interest. *See Krishna Consciousness*, 505 U.S. at 678. Actions are not narrowly tailored unless they employ "the least restrictive means to further the articulated interest." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000) (quoting *Sable Communications of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989)). Defendants have never identified any governmental interest served by removal of the Banned Books, let alone a compelling one, and their contemporaneous communications evince only a desire to remove books they personally found "disgusting" or "filth[y]." Ex. 5; Ex. 19.

Even if Defendants had identified any arguably compelling governmental interest advanced by their actions, they would still be required to show their approach was narrowly tailored to achieving that objective. But Defendants' approach to removing books was not tailored at all, much less narrowly so. The Supreme Court has repeatedly noted that slipshod actions that target subsets of larger content categories provide evidence that the stated interest is not the defendant's true interest, that the purported government interest is not actually compelling, and that the government's actions fail the narrow tailoring requirement. *See Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 448 (2015) (noting that "underinclusiveness can raise 'doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint'"); *Carey v. Brown*, 447 U.S. 455, 468-69 (1980)

(holding prohibition on non-labor picketing was not narrowly tailored to interest in preserving residential privacy because labor picketing could be just as intrusive).

The record reflects a purely ad hoc process wherein books were removed based solely on allegations from sources outside the Llano Library that the books were in some way objectionable. Indeed, not one Defendant who testified at the hearing had read any of the Banned Books. *See, e.g.*, Hr'g Tr. Vol. 1 at 103:23-104:5 (Milum); *id.* at 171:23-24, 174:21-24 (Moss); Hr'g Tr. Vol. 2 at 12:8-12, 23:13-24:12 (Wells); *id.* at 154:7-10 (Cunningham). While removing the Banned Books, Defendants did not employ guidelines for achieving a specified interest, compelling or otherwise. Nor did they seek to minimize the restrictive nature of their actions— initially removing the books entirely and only restoring some of them to a secret repository ordinary library patrons could never discover. And when they eventually tried after the fact to formulate a policy for book removal, their criteria were explicitly viewpoint based. Ex. 37; Ex. 76; Hr'g. Tr. Vol. 1 at 182:10-21. Defendants' treatment of the Banned Books was thus unconstitutionally content-based. *See Krishna Consciousness*, 505 U.S. at 678.

### E.   The Evidence Shows Defendants' Argument That They Properly Weeded the Books Is a Pretext.

Defendants claimed that the books they removed were "weeded," meaning removed from the catalog, pursuant to library policies. This theory—that the books at issue just happened to come up for weeding based on content-neutral principles at the exact moment national groups and prominent political commentators were urging the removal of these titles from libraries, and immediately after an email was circulated referring to the books as "pornographic filth"— contradicts the documentary evidence and Defendants' own testimony. *See supra*, pp. 6-11. Defendants' "weeding" explanation for their actions is transparently pretextual for three reasons: (1) the books Defendants removed do not meet the Library's weeding criteria, Hr'g Tr. Vol. 1 at

33:15-34:3, 35:7-38:16, 40:1-41:8, 41:16-42:19, 43:12-44:14, 45:5-18, (2) Defendants' proffered explanations were contradicted by their own testimony and by physical evidence, *see supra* pp. 9-11, and (3) Defendants' testimony is contradicted by their contemporaneous explanations for why they removed the books, *see supra* pp. 9-11.[11]

Predictably, the evidence adduced at the Hearing further confirms that serendipitous content neutrality did not drive the removal of the Banned Books. In fact, Library staff pulled the Banned Books not as part of any regular weeding process, but explicitly due to concerns about their contents among county and Library officials. Hr'g Tr. Vol. 1 at 82:8-9. Routine weeding would not have involved personal oversight from county officials outside the Library, and county officials had never ordered a book removed prior to Defendants' book-banning campaign. *Id*. at 109:23-3; *see also* Ex. 2A; Ex. 19; Hr'g Tr. Vol. 1 at 67:1-3; *id.* at 172:7-11 (showing Cunningham and Moss, the highest-ranking officials, were copied on correspondence discussing the removal of these books and expressly ordered certain books be removed). The Library removed the Banned Books because Library and county officials objected to their contents. They did so despite—not because of—the Library System's weeding criteria. Defendants' attempt to manufacture a content-neutral explanation for their actions after the fact further proves their contemporaneous conduct was constitutionally impermissible.

## II.     PLAINTIFFS SUFFERED AND CONTINUE TO SUFFER IRREPARABLE HARM.

The "loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury." *Texans for Free Enter*, 732 F.3d at 539; *accord Ingebretsen*, 88 F.3d at 280;

---

[11] Defendants have admitted they withheld additional salient evidence of their intent—contemporaneous emails on Yahoo accounts set up for librarians to communicate with each other during the time period at issue. These critical discovery omissions will be the subject of a forthcoming motion to compel.

*Elrod*, 427 U.S. at 373; 11A C[HARLES]{.smallcaps} A[LAN]{.smallcaps} W[RIGHT]{.smallcaps}, A[RTHUR]{.smallcaps} R. M[ILLER]{.smallcaps}, & M[ARY]{.smallcaps} K. K[ANE]{.smallcaps}, F[ED]{.smallcaps}. P[RAC]{.smallcaps}. [AND]{.smallcaps} P[ROC]{.smallcaps}. § 2948.1 (3d ed. 2008) ("When an alleged deprivation of a constitutional right is involved . . . most courts hold that no further showing of irreparable injury is necessary."). Defendants do not dispute that the Banned Books were available in physical form at the Llano Library in November 2021 before being removed. Ex. 52. Nor do they dispute that none of the Banned Books is currently available on the Library's public shelves or searchable in its public catalog. Hr'g Tr. Vol. 1 at 47:13-17; 55:25-56:2, 91:19-23, 114:16-115:4, 118:8-10.

At the Hearing, Defendants asserted three alternative means of accessing the Banned Books they implicitly contended remedied their constitutional violation: (1) the availability of interlibrary loans, (2) the availability of e-books on Bibliotheca, and (3) the library's secret in-house repository. Defendants' arguments fail as a matter of law because these are quintessential examples of voluntary cessation, which is insufficient to rebut a showing of irreparable harm. *See Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (defendants cannot "evade sanction by predictable protestations of repentance and reform after a lawsuit is filed").

Moreover, all three "alternatives" still impermissibly place "a significant burden on Library patrons' ability to gain access to those books." *Sund*, 121 F. Supp. 2d at 534; *see also Playboy*, 529 U.S. at 812 ("The Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans."). The Banned Books remain off the Library's public shelves; patrons cannot find them, either purposefully or while browsing, through normal means. The "alternatives" do not restore the ease of access patrons enjoyed prior to Defendants' actions.

<u>Interlibrary Loan</u>. Three of the Banned Books—*Caste*, *It's Perfectly Normal*, and *Being Jazz*—are not available through interlibrary loan at all. Milum Decl., ¶ 10. As for the books that

are available from other libraries, postage for interlibrary loans costs $3.15 per book, and titles

can take a month or more to arrive. Hr'g Tr. Vol. 1 at 53:12-17; Hr'g Tr. Vol. 2 at 124:24-125:1.

Thus, even where interlibrary loan is possible, it still imposes a constitutionally impermissible

burden on access to the Banned Books.

     <u>Electronic Books</u>. Bibliotheca does not provide access to twelve of the Banned Books.

Milum Decl., ¶ 10. It also requires a patron to have a compatible electronic device—a substantial

expense—and does not provide access to a physical book. Hr'g Tr. Vol. 2 at 47:2-4.

     <u>Secret In-House Repository</u>: Defendants' secret lending library contains only nine of the

Banned Books. Milum Supp. Decl., ¶ 3; Hr'g Tr. Vol. 1 at 116:7-9, 117:1-9; Vol. 2 at 182:10-13.

It also places an impermissible burden on those seeking to check out the Banned Books. The

books are not advertised in any way nor are they in the library catalog, and thus patrons have no

way of knowing they exist or finding them. Hr'g Tr. Vol. 1 at 54:23-57:1 114:16-116:6. There is

also only one copy of each book, and they are present only at the Llano branch, further depriving

patrons of the opportunity to find and read the Banned Books. *Id.* at 116:7-9, 117:15-17. By

hiding the Banned Books behind a desk at the Library, Defendants have sent a chilling message

to the community that they believe these books are "bad," and thus patrons "don't want to check

them out." *Id.* at 56:23-57:1.

     Courts have held similar—and less burdensome—relocations of disfavored books to be

unconstitutional. In *Sund v. City of Wichita Falls*, a city moved two children's books portraying

LGBTQ relationships in a positive light from the children's section to the adult section. 121 F.

Supp. 2d at 533-34. The court found a substantial likelihood of success on the merits because,

even though the books remained on publicly accessible shelves, they would not be found by

those browsing the children's section or looking for them there; the differential burden was

unconstitutional. *Id.* at 549-51, 554. Similarly, the library in *Counts v. Cedarville School District* relocated the Harry Potter books to a "highly visible" location that was nonetheless inaccessible to students and required parental permission to access them. 295 F. Supp. 2d at 1001. The court held that the "stigmatizing effect" of having to get permission and the fact that patrons could not simply access the books on the shelves constituted an impermissible burden. *Id.* at 1002, 1005.

The Supreme Court reached the same conclusion in a closely analogous case. In *Denver Area Educational Telecommunications Consortium, Inc. v. F.C.C.*, the Court addressed a statute requiring cable providers to segregate "patently offensive" material on a separate, blocked channel subscribers could only access by making a request to their cable provider. 518 U.S. 727, 734, 753 (1996). The Court held the statute unconstitutional, pointing to the fact that viewers could not make decisions minute-to-minute while channel surfing and the stigma associated with having a record of requesting access to disfavored material. *Id.* at 754. The same result should obtain here, where Llano Library patrons cannot make decisions regarding the Banned Books while browsing the shelves and may be deterred from accessing those books from the secret in-house checkout—if they even learn of it—due to the stigma associated with having to request books Llano officials have openly described as "disgusting." Ex. 19.

## III. THE EQUITIES AND THE PUBLIC INTEREST WEIGH IN FAVOR OF A PRELIMINARY INJUNCTION.

"[I]njunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter.*, 732 F.3d at 539. "There simply is no interest, let alone a compelling one, in restricting access to non-obscene, fully-protected library books solely on the basis of the majority's disagreement with their perceived message." *Sund*, 121 F. Supp. 2d at 552. As established in Plaintiffs' opening and reply briefs, the specific equities and the public interest in this case also favor a preliminary injunction. Dkt. No. 22 at 20; Dkt. No. 59 at 10. "[T]he onus

should not be on the general public to overcome barriers to their access to fully-protected information." *Sund*, 121 F. Supp. 2d at 551 (citing *Denver Area Educ.*, 518 U.S. at 757). The threatened injury to Plaintiffs—violation their First Amendment right to access information—outweighs Defendants' interest in suppressing viewpoints and content with which they disagree. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 757-58 (1976) (citing cases on First Amendment right to receive information).

## V.    THE PROPOSED INJUNCTION IS NARROWLY TAILORED TO PRESERVE PLAINTIFFS' FIRST AMENDMENT RIGHTS AND DOES NOT IMPOSE UNDUE BURDEN ON DEFENDANTS.

District Courts enjoy broad discretion in awarding injunctive relief. *See Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 695 (N.D. Tex. 2016). The injunction Plaintiffs seek would simply preserve the status quo ante by replacing the Banned Books and prohibiting Defendants from violating the First Amendment while this litigation is pending. *See* Dkt. No. 76-1.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request an order preliminarily enjoining Defendants' censorship.

Dated: December 9, 2022

Respectfully Submitted,

**BRAUNHAGEY & BORDEN LLP**
/s/ *Ellen Leonida*
Ellen V. Leonida (*pro hac vice*)
Matthew Borden (*pro hac vice*)
J. Noah Hagey (*pro hac vice*)
Max Bernstein (*pro hac vice*)

**BraunHagey & Borden LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel & Fax: 415-599-0210
leonida@braunhagey.com
borden@braunhagey.com

hagey@braunhagey.com
bernstein@braunhagey.com

**WITTLIFF | CUTTER PLLC**
/s/ *María Amelia Calaf*
Ryan A. Botkin (TX Bar No. 00793366)
Katherine P. Chiarello (TX Bar No. 24006994)
María Amelia Calaf (TX Bar No. 24081915)
Kayna Stavast Levy (TX Bar No. 24079388)

**Wittliff | Cutter PLLC**
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December, 2022, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

/s/ *Ellen Leonida*
Ellen V. Leonida

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**<u>PLAINTIFFS' REPLY IN SUPPORT OF THEIR POST-HEARING BRIEF</u>**

P.App.216

# <u>TABLE OF CONTENTS</u>

ARGUMENT ...................................................................................................................2

I.     Plaintiffs Have Established a Likelihood of Success on the Merits ...................................2

     A.     Defendants' Creation of a Secret Repository of Banned Books Is Irrelevant to Plaintiffs' Likelihood of Success and Does Not Negate Irreparable Harm .......................4

     B.     Strict Scrutiny Applies to Defendants' Content-Based Removal Decisions and They Have Not Even Attempted to Satisfy That Standard .................................................6

     C.     Milum Did Not Follow MUSTIE Protocols ........................................................10

           1.     The Record Cannot Be Rewritten with Unauthorized Declarations .............10

           2.     Milum's Weeding Testimony Is Implausible and Not Credible ...................12

II.     Because County Commissioners Are Final Policymakers, the Preliminary Injunction Should Extend to All Defendants ...................................................................................14

CERTIFICATE OF SERVICE .......................................................................................17

P.App.217

In their Response, Defendants ask the Court to reject the evidence that was adduced at the PI hearing in favor of new, unauthorized declarations from three defendants and argue that the secret book repository created by Defendant's lawyer moots Plaintiffs' need for injunctive relief. These arguments are not supported by the law of the Fifth Circuit or the evidence in this case.

All contemporaneous evidence shows that Llano County's removal of books from its library system was driven by political animus and the unprecedented personal involvement of the County's Commissioners Court. In the Fifth Circuit, "the key inquiry in a book removal case is the . . . officials' substantial motivation in arriving at the removal decision." *Campbell v. St. Tammany Par. Sch. Bd.*, 64 F.3d 184, 190 (5th Cir. 1995) (adopting reasoning of the plurality in *Bd. of Educ. v. Pico*, 457 U.S. 853, 872 (1982)). That a library may have greater leeway in its acquisition of materials does not give officials free reign to deny citizens access to already-available materials "simply because they dislike the ideas contained in those books." *Id.* at 188 (quoting *Pico*, 457 U.S. at 872).

Instead of engaging in the "key inquiry" prescribed by the Fifth Circuit, Defendants seek to divert attention with a series of post-litigation efforts to rewrite the facts. Most prominently, they point to a secret book repository created in an attempt to moot Plaintiffs' injuries—an effort that fails for at least three reasons. *First*, this is textbook voluntary cessation and does not moot the need for injunctive relief; Defendants could simply resume the unlawful conduct. This is especially true here because Defendants deny that their conduct was wrongful and have offered shifting accounts of what occurred. *Second*, Defendants waived this argument when their lawyer, who donated the books, largely avoided cross-examination by testifying that he was not going to argue that his donations mooted the need for an injunction. Hr'g Tr. Vol. 2 at 82:4-21. *Third*, keeping the books behind a desk still makes it more difficult, and embarrassing, for Plaintiffs to

check them out. Even if this post hoc conduct were relevant, it still burdens Plaintiffs' First Amendment rights and would not moot the need for an injunction.

Defendants also suggest that whether Milum correctly applied the MUSTIE criteria is dispositive, devoting the bulk of their brief to the subject. On their telling, Milum did not target any of the Banned Books but, coincidentally, weeded those same books under routine weeding criteria shortly after Defendants identified them as pornographic filth. Defendants assert that the Court must believe this narrative because Plaintiffs did not expressly accuse Milum of lying. Not so. As the finder of fact, the Court may assess the veracity of Defendants' story and, based on the evidence presented at the hearing—including Defendants' admission that the books were only pulled for removal because the Commissioners ordered it or they appeared on the Wallace list— find Defendants removed the books before ultimately hiding them from public view.[1] The Court may also consider that Defendants withheld Llano County librarians' internal emails—the most probative evidence of intent—but inaccurately certified their production under Rule 26(g).[2] For all these reasons, the Court should issue the requested injunction.

## ARGUMENT

## I. Plaintiffs Have Established a Likelihood of Success on the Merits

The core facts of this case are well-known to the Court. Post-Hr'g Br. at 2-13. Testimony and evidence adduced at the hearing established that:

- Milum, in her capacity as Llano County Library Director, pulled the Banned Books off of the shelves for review because of their content and viewpoint;[3]

- Milum then removed the Banned Books from the Llano County Library shelves and catalog;[4]

---

[1] Resp. at 8-18, 25-27. Some books were pulled due to individual inquiries from the Commissioners, while others were never made available for circulation for the same reason.
[2] *See* ECF No. 92.
[3] Post-Hr'g Br. at 3-5.
[4] Ex. 52; Milum Dep. Tr. at 78:5-79:13.

P.App.219

- The Banned Books were not eligible to be weeded under the CREW and MUSTIE criteria as those criteria had been previously applied by Milum and Tina Castelan, the only librarians with weeding authority at the Llano Library;[5]

- Milum and Castelan would typically not weed a book unless it met two or more MUSTIE factors;[6]

- Milum followed the instructions of her superiors, Moss and Cunningham, when they wanted books removed from the library;[7]

- Removal of the Banned Books from the Library coincided with a statewide campaign to have the same books removed because of their expressed viewpoints;[8]

- Defendants' lawyer donated new copies of the Banned Books to the "in-house checkout program" after Plaintiffs moved for a preliminary injunction,[9] and Plaintiffs only became aware of the existence of those books through this litigation;[10]

- Plaintiffs legitimately claimed personalized injury as of the filing of this lawsuit.[11]

Defendants' Post-earing Response—complete with new, unauthorized declarations from

Milum, Cunningham, and Moss—fails to meaningfully call any of these core facts into question.

---

[5] Post-Hr'g Br. at 8-11. Plaintiffs acknowledge that *It's Perfectly Normal* was last checked out three years and twenty days before the date it was removed from the library (rather than three years before), but it is the "only book of its category that is as extensive in its information that it gives," Hr'g Tr. Vol. 1 at 37:11-19, which brings it within the definition of "special topic books," *id.* at 22:6-16, and it was not properly weeded.

[6] Hr'g Tr. Vol. 1 at 21:17-21 (Castelan's testimony that she weeded books only if they met two-to-three MUSTIE factors); Milum Dep. Tr. at 24:5-10 (agreeing that decision to weed "are based on some combination of [the MUSTIE] criteria; that is, an item will probably not be discarded based on meeting only one of these criteria); *id.* at 69:3-13 (agreeing that "any one [MUSTIE] factor isn't enough to remove a book");

[7] Hr'g Tr. Vol. 1 at 65:10-67:3, 68:15-69:17, 79:5-7, 89:6-90:9, 91:24-92:4, 98:6-14, 98:24-99:10, 100:3-11, 101:13-19, 103:10-16, 109:8-14; Exs. 2B, 8, 19, 60.

[8] Hr'g Tr. Vol. 1 at 30:24-32:4, 71:16-72:12.

[9] In their Post-Hearing Brief, Plaintiffs wrote that Defendants' counsel donated nine of the Banned Books to the Llano Library, but mistakenly stated that those nine books made up the entire in-house checkout program. Post-Hr'g Br. at 22. At the time of Plaintiffs' opening brief, the in-house checkout program also contained the Butt and Fart Books.

[10] Hr'g Tr. Vol. 2 at 42:16-19. Plaintiffs first learned of the in-house checkout program when Defendants described it in their original opposition papers on July 15, 2022. ECF No. 49.

[11] Each Plaintiff attempted to check out at least one of the Banned Books, none were able to do so, and none were informed that any book was available through "in-house checkout." ECF Nos. 59-2, 59-3, 59-4, 59-5, 59-6, 59-7.

### A. Defendants' Creation of a Secret Repository of Banned Books Is Irrelevant to Plaintiffs' Likelihood of Success and Does Not Negate Irreparable Harm

Defendants argue that, because their lawyer purchased and donated the Banned Books to the library to be held behind a desk where the public cannot find them three months after this litigation began, Plaintiffs can no longer allege any injury.[12] Resp. at 19-22, 28; *compare* ECF No. 53 ("Second Milum Decl.") ¶ 4 (Milum stating her intention to add nine of the Banned Books to the in-house checkout program between July 23 and 27, 2022), *with* ECF No. 1 (Complaint dated April 25, 2022). Defendants do not claim Plaintiffs lacked such an injury at the time this case was filed; indeed, counsel for Defendants expressly conceded that Plaintiffs did— and continue to—suffer an injury in fact. Hr'g Tr. Vol. 2 at 82:11-15 (picking a library book out from the shelf "as opposed to having to go talk to the librarian and go to this inhouse checkout system . . . is a difference enough to create an injury in fact").

Instead, Defendants argue that the secret repository of Banned Books rendered Plaintiffs' claims moot. Defendants scrupulously avoid using the word "moot," but their argument is plain: even though Plaintiffs did not have access to the Banned Books when the case began, they now have access to them, so they are no longer suffering any impediment to accessing the books. Resp. at 19-22. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (describing mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)") (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68, n. 22 (1997)).

---

[12] The cases Defendants cite for the personal injury requirement, Resp. at 20, merely stand for the unremarkable proposition that a plaintiff must allege a personal injury when bringing suit; they do not allow a defendant to evade suit by voluntarily removing the source of injury after litigation begins.

Defendants' reticence to call their mootness argument by its name is understandable: Defendants' lawyer previously represented to the Court that he would not argue that the existence of the secret repository moots Plaintiffs' claims. Hr'g Tr. Vol. 2 at 82:19-20. Defendants have thus waived any mootness argument. *See Caleb v. Grier*, 598 F. App'x 227, 235 (5th Cir. 2015) (waiver where argument "has been abandoned explicitly").

Even if this argument were allowed, Defendants' conduct has *not* mooted Plaintiffs' injury in this case. Having to directly request a book to which the County has attached such opprobrium is a burden Plaintiffs did not have to bear before the actions giving rise to this case.[13] *See Denver Area Educ. Telecomms. Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 734, 754 (1996) (stigma of requesting access created burden on plaintiffs); *Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 1002, 1005 (W.D. Ark. 2003) (stigma imposed unconstitutional burden). Defendants' lawyer (and secret book donor) admitted as much. Hr'g Tr. Vol. 2 at 82:11-15.

Finally, Defendants make no effort to meet the high standard required for voluntary cessation to effectively moot a case or to preclude a finding of irreparable injury. A defendant pressing a voluntary cessation argument "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190. Defendants cannot "evade sanction by predictable protestations of repentance and reform after a lawsuit is filed." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (citation omitted). Courts thus routinely

---

[13] Plaintiffs uniformly attested to feeling such a stigma. *See* ECF No. 59-2 ("Moster Decl.") ¶ 5 ("offensive and impractical"); ECF No. 59-5 ("Kennedy Decl.") ¶ 5 ("offensive and impractical"); ECF No. 59-3 at 1-2 ("Day Decl.") ¶ 6 (inconvenient and draws unnecessary attention to the Plaintiffs and their reading choices); ECF No. 59-3 at 3-5 ("Waring Decl.") ¶ 7 ("exceedingly insulting"); ECF No. 59-4 ("Jones Decl.") ¶ 7 ("offensive, manipulative and absurd"); ECF No. 59-6 ("Puryear Decl.") ¶ 5 ("humiliating"); ECF No. 59-7 ("Little Decl.") ("disheartening").

find that a defendant's voluntary cessation "does not preclude a finding of irreparable injury" or the entry of injunctive relief. *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 166 (5th Cir. 1993); *see Prison Legal News v. Lindsey*, No. 3:07-CV-00367-P, 2007 WL 9717318, at *3 (N.D. Tex. June 18, 2007) ("It is well settled in the Fifth Circuit that a defendant's 'mere voluntary cessation' of a challenged practice does not preclude a finding of irreparable injury."); *Cisco Sys., Inc. v. Huawei Techs., Co.*, 266 F. Supp. 2d 551, 554 (E.D. Tex. 2003) (rejecting voluntary cessation argument, and adding that defendants' ability to cease the unlawful practice is evidence they will not be harmed by issuance of injunction).

The voluntary cessation here was driven by Defendants' counsel, who blithely inserted himself into the case as a fact witness by personally creating the secret repository, albeit behind a veil of anonymity. Hr'g Tr. Vol. 1 at 116:12-117-9; Hr'g Tr. Vol. 2 at 182:10-183:9. This fact alone demonstrates that Defendants' purported cessation is merely a litigation strategy, not an irrevocable act. And, given the overwhelming evidence of Defendants' viewpoint and content-based motivations, they are more likely than not going to relapse absent judicial intervention. The secret repository—and the circumstances of its creation—smack of "litigation posturing" rather than proof "the controversy is actually extinguished." *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018); *see also 6th Cong. Dist. Republican Comm. v. Alcorn*, 913 F.3d 393, 407 (4th Cir. 2019) (rejecting mootness where defendant altered challenged election form during litigation because "such backpedaling will rarely serve to moot a case in federal court"). The secret repository of Banned Books does not cure the First Amendment violation.

**B.    Strict Scrutiny Applies to Defendants' Content-Based Removal Decisions and They Have Not Even Attempted to Satisfy That Standard**

Both the *Pico* plurality and the Fifth Circuit have held that, even in the context of school libraries, where the government is acting in a *parens patriae* capacity, removing library books

P.App.223

due to animus against the viewpoints expressed is categorically unconstitutional. In *Campbell*, the Fifth Circuit adopted the Supreme Court's *Pico* reasoning, stating that "school officials are prohibited from exercising their discretion to remove books from school library shelves 'simply because they dislike the ideas contained in those books and seek by their removal to 'prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.'" *Campbell*, 64 F.3d at 188 (quoting *Pico*, 457 U.S. at 872). The *Campbell* court thus held that the constitutionality of library book removal depends on the removal authority's motives. *Id.* at 190. *Pico*'s reasoning—adopted by the Fifth Circuit—has "even greater force when applied to public libraries," which are "designed for freewheeling inquiry." *Sund v. City of Wichita Falls, Tex.,* 121 F. Supp. 2d 530, 548 (N.D. Tex. 2000) (quoting Pico, 457 U.S. at 915 (Rehnquist, J., dissenting)); *see also* Post-Hr'g Br. at 14-17.

Here, the contemporaneous evidence uniformly confirms Defendants' hostility to the Banned Books' contents and viewpoints, and shows Defendants' concerted action to remove those books from library shelves. Defendants suggest nonetheless that, if their viewpoint discrimination does not resolve the case, their content-based removal decisions do not merit strict scrutiny. Resp. at 21-22, 25. But, when making removal decisions, the County's library system, "like all other public libraries," is a First Amendment limited public forum. *Sund*, 121 F. Supp. 2d at 548 (citing *Kreimer v. Bureau of Police*, 958 F.2d 1242, 1261 (3d Cir. 1992) ("Library constitutes a limited public forum")); *see* ECF No. 22 at 14-15. Even if it were not, Defendants cite no case in which a court has applied rational-basis review to library removal decisions, much less to politically motivated or discriminatory removal decisions. Instead, they merely assert that, because removal of books that are "pervasively vulgar" or lacking "educational suitability" from *school* libraries might pass muster, anything goes in terms of content-based decisions in *public*

libraries. Resp. at 22-23 (citing *Pico* and *Campbell*). Of course, courts have held both protecting minors from obscenity and ensuring educational suitability to be compelling government interests under strict scrutiny, so the two *Pico* exceptions are hardly evidence *against* application of strict scrutiny to library removal decisions. *See, e.g.*, *Reno v. A.C.L.U.*, 521 U.S. 844, 875 (1997) ("we have repeatedly recognized the governmental interest in protecting children from harmful material"); *Murray v. W. Baton Rouge Par. Sch. Bd.*, 472 F.2d 438, 442 n.2 (5th Cir. 1973) ("The interest of the state in maintaining an educational system is a compelling one.").[14] Nor are those exceptions applicable with the same force in public libraries because "the Government may not 'reduc[e] the adult population . . . to . . . only what is fit for children.'" *Reno*, 521 U.S. at 875 (citation omitted) (alterations in original).

Defendants cite two decisions in support of their position that this case falls outside the default position of strict scrutiny for content-based speech restrictions. Both involve **selection**, and not **removal**, of content, a distinction Defendants have consistently ignored. *See* Post-Hr'g Br. at 15 n.10; ECF No. 59 at 6-7. In *ALA*, a plurality approved a restriction requiring blocking software on federally funded internet stations, analogizing this to the library's decisions when selecting books for its shelves and advocating substantial leeway for such decisions. *United States v. Am. Libr. Ass'n, Inc.* ("*ALA*"), 539 U.S. 194, 204-05 (2003) (plurality op.). *Chiras*, which Defendants characterize as having "adopt[ed]" *ALA* instead of *Pico*, Resp. at 23, dealt with the acquisition of mandatory curriculum textbooks, an area where *Pico* also acknowledges wide government discretion. *Chiras v. Miller*, 432 F.3d 606, 611 (5th Cir. 2005); *see Pico*, 457 U.S. at 864. Far from rejecting *Pico*, *Chiras* distinguished textbook acquisition from "the

---

[14] Defendants have never argued that the Banned Books were removed because they met the legal definition of obscenity or that they were unfit in any way. They have thus waived any argument that they have satisfied strict scrutiny.

removal of an optional book from the school library." *Id.* at 619; *see ALA*, 539 U.S. at 242 (Souter, J., dissenting) ("The difference between choices to keep out and choices to throw out is . . . enormous, a perception that underlay the good sense of the plurality's conclusion in [*Pico*].")

Neither case suggests the sort of carte blanche Defendants advocate, where government officials can censor books already available to the public based on their personal preferences so long as they unilaterally declare that the books are "misleading," "trivial," or "irrelevant" to the public. Resp. at 24. Indeed, Llano County exercised its broad discretion under *Chiras* and *ALA* when it determined the Banned Books were of sufficient public interest to purchase and make available to patrons. Its authority to remove them due to county officials' antipathy to their messages is a different matter entirely, narrowly circumscribed by *Pico* and *Campbell*.

Defendants' "policy" argument in favor of rational-basis review lacks any constitutional basis and would eviscerate the marketplace of ideas. Resp. at 24-25. Under Defendants' theory, officials could remove books authored by their political rivals or that adopt a disfavored position on controversial issues such as racial or gender equality, abstinence-only education, abortion, or the proper role of patriotism in society. Such unbound removal decisions are not only anathema to libraries and their pursuit of open inquiry, study, and understanding, but they are an affront to the First Amendment and its guarantee of "the right to receive information and ideas." *Pico*, 457 U.S. at 867 (citing *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). By contrast, despite Defendants' hypothetical concerns, there is little likelihood Llano County will find its libraries overrun with flat-earth books if its officials are not allowed to remove materials they personally dislike; in fact, it is unlikely the library ever acquired any.

At any rate, the question of whether to allow reduced scrutiny for routine decisions regarding library collections is not before this Court. In this case, the facts demonstrate (1) clear

political animus against the Banned Books' viewpoints and content, running afoul of the unequivocal prohibition in *Campbell* and *Pico*, (2) nothing about the decision or process to remove them was routine, and (3) the County's supposedly neutral system for evaluating retention decisions was not correctly applied in any case, *see infra*, Section C.2. On the facts of the case before the Court, Defendants' constitutional overreach is readily apparent.

### C. Milum Did Not Follow MUSTIE Protocols

#### 1. The Record Cannot Be Rewritten with Unauthorized Declarations

Defendants' new declarations cannot cure their First Amendment violations. Each of the declarants—Milum, Moss, and Cunningham—testified *twice* at the hearing. Defendants had ample opportunity to elicit all relevant testimony at that time. Defendants' latest, unauthorized declarations do not address new facts or arguments, and there is no justification for submitting them after the close of evidence, where witnesses are not subject to cross-examination.[15] The Court should ignore these new declarations—to do otherwise, particularly in light of Defendants' *continuing* withholding of contemporaneous evidence of their intent, *see* ECF No. 92 (describing Defendants' repeated violations of their discovery obligations), would deprive Plaintiffs of a fair opportunity to litigate this case.[16] But even if the Court considers them, the declarations are inconsistent with the declarants' prior depositions, declarations, and/or hearing testimony.

---

[15] Defendants submitted these declarations without either (1) seeking leave from the Court to do so or (2) providing Plaintiffs the opportunity via deposition to challenge the attestations contained therein.

[16] Notably, Defendants have still not produced emails between individual librarians during the relevant period. ECF No. 92 at 1. This contemporaneous evidence is the most salient of Defendants' intent and is central to Plaintiffs' Motion. Defendants only admitted they are withholding this critical evidence *after* the hearing on the Motion. Worse yet, Defendants were supposed to have responded to Plaintiffs' motion to compel this evidence on December 23, 2022, and even though the parties agreed to a two-week extension, Defendants *still* have not responded to Plaintiff's motion to compel or produced a single responsive document, and instead sought another extension from this Court. ECF No. 97.

Milum's unauthorized *third* declaration, for example, opines on certain text in Exhibit 23 detailing Llano Library's weeding policies. ECF No. 96 Ex. 5 ("Third Milum Decl.") ¶ 23. But Milum had a full and fair opportunity to discuss Exhibit 23 when it was admitted and considered at length during either of her two days of hearing testimony. Similarly, Moss and Cunningham newly discuss the accuracy of Rochelle Wells's emails, documents that were admitted and discussed during both days of the hearing, yet not disputed by either Moss or Cunningham.

The declarants' new assertions are inconsistent with the evidence already submitted to the Court—Milum and Cunningham now claim that Cunningham never directed Milum to remove any books from the library, but instead to only to temporarily pull certain books from shelves. ECF No. 96 Ex. 3 ("Second Cunningham Decl.") ¶ 3; Third Milum Decl. ¶ 14. This cannot be squared with the previously submitted evidence: (1) Milum's hearing testimony that Cunningham "told [her] to ***remove*** the Butt books from the ***library***," Hr'g Tr. Vol. 1 at 68:15-18; (2) her deposition testimony that "Cunningham directed [her] to remove [the Butt and Fart Books] ***from the library system***," Milum Dep. Tr. at 47:13-23; and (3) her contemporaneous August 5, 2021 communication to Cunningham confirming that she was going to "delete" the Butt and Fart Books from the library catalog, *id.* at 43:16-44:1. Milum also attests that her removal of *In the Night Kitchen* "had nothing whatsoever to do with the content of the book," Third Milum Decl. ¶ 35, despite her verified interrogatory response and sworn testimony that she "removed [*In the Night Kitchen*] from the library system based on inappropriate content," Hr'g Tr. Vol. 1 at 95:5-96:6; Ex. 87.

For his part, Moss now avers that he never instructed Milum to remove books from the library, but merely expressed his personal opinion that *he* would remove the books if he was the library administrator. ECF No. 96 Ex. 4 ("Second Moss Decl.") ¶ 4; *see also* Third Milum Decl.

P.App.228

¶ 12. Again, this claim cannot be reconciled the evidence properly in the record—it is refuted by Wells's multiple contemporaneous communications thanking Moss for removing books from the library, Ex. 8; Ex. 19, which Moss never refuted in his hearing testimony, despite being presented with one of the the emails at the hearing, Hr'g Tr. Vol. 2 at 175:12-176:15. Further the new Moss and Milum declarations are flatly contradicted by Milum's own August 2021 notes, memorializing her recollection that Moss "told me that I should take [the Butt Books] out of the system," and that if she did not, he said "the next step would be to take this to the [Commissioners Court]," which would "take them off the shelf and . . . would be bad publicity for the library." Ex. 2B. An assertion that Moss was merely giving his *personal* recommendation is hard to reconcile with the text of the contemporaneous note, particularly in light of the fact that he was (and remains) Milum's superior.[17]

### 2. Milum's Weeding Testimony Is Implausible and Not Credible

In their Response, Defendants claim that Plaintiffs have never challenged Milum's assertion that she merely weeded the Banned Books pursuant to County policies. *See, e.g.*, Resp. at 8. But Plaintiffs have repeatedly highlighted Milum's lack of credibility. At the hearing and in previous briefing, Plaintiffs impeached Milum with her contradictory contemporaneous statements and sworn testimony. *See* Post-Hr'g Br. at 8-11. Milum's contradictory and unbelievable testimony reveals the discriminatory intent underlying her actions. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is . . . circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.").

---

[17] Moss Dep. Tr. at 77:2-7 (testifying that the Commissioner's Court has the authority to hire and fire the library director); Milum Dep. Tr. at 48:23-49:2 (stating that Moss and Cunningham were her "supervisors"); Hr'g Tr. Vol. 1 at 59:7-8 (Milum testifying that Moss is "one of [her] employers").

Milum first presented her current, MUSTIE-based justification for having "weeded" the Butt and Fart Books during her second round of testimony, on the second day of the hearing. Hr'g Tr. Vol. 2 at 108:6-9. However, in her two previous sworn statements, at her deposition, and during her first day of testimony—even while being questioned by her own lawyer—Milum never claimed that she weeded the Butt and Fart Books because they were "Trivial" or available "Elsewhere." *See* ECF No. 49-1 ("First Milum Decl.") ¶¶ 6-7; Second Milum Decl.; Milum Dep. Tr. at 39:10-15, 43:2-7; Hr'g Tr. Vol. 1 at 125:22-126:1. Indeed, at her deposition Milum flatly admitted that the real reason she "ultimately removed [the Butt and Fart Books] from the shelves is because certain individuals found these books offensive." Milum Dep. Tr. at 43:2-7. And in her verified Interrogatory response, Milum stated that the Butt and Fart Books were removed "on the basis of INAPPROPRIATE CONTENT." Ex. 87.

Milum's testimony that the balance of the Banned Books met any MUSTIE factor other than "Irrelevant" is similarly not credible in the face of her first declaration, deposition testimony, and testimony during the first day of the hearing (even when being questioned by her own lawyer). In each, Milum conveyed that she weeded the books because they had not been checked out enough, and specifically acknowledged, with regard to *Being Jazz* and *Freakboy*, that there was *no other reason* for their removal. *See* First Milum Decl. ¶¶ 8, 13-14;[18] Milum Dep. Tr. at 31:5-33:12, 86:22-90:10; Hr'g Tr. Vol. 1 at 123:18-126:13.[19] But even Milum agreed

---

[18] Milum did not address *Under the Moon: A Catwoman Tale* in that declaration.

[19] During her deposition and during the first day of the hearing, Milum could not recall why she weeded *Caste*, Milum Dep. Tr. at 31:3-4, 32:19-24, 90:11-25; Hr'g Tr. Vol. 1 at 126:6-13, so it is inexplicable how she was able to recall those details during the second day of the hearing, Hr'g Tr. Vol. 2 at 104-5-21, or in her unauthorized declaration, Third Milum Decl. ¶ 18 (attesting that she "permanently removed" *Caste* and the other Banned Books "in the fall of 2021 because in [her] judgment, these books met the criteria for weeding").

that "any one [MUSTIE] factor isn't enough to remove a book." *See* Milum Dep. Tr. at 24:5-10; 69:3-13.

The real reason that Milum removed the Banned Books from the shelves and then from the Llano County Library was because of the books' contents and viewpoints. Her testimony regarding her purported application of the weeding criteria is unpersuasive and immaterial: the critical decision to remove each of the Banned Books was based on her and/or her co-Defendants' discriminatory animus, amply demonstrated through the record evidence. *See Tompkins v. Vickers*, 26 F.3d 603, 609 (5th Cir. 1994) ("Circumstantial evidence is equally as probative as direct evidence in proving illegitimate intent," especially considering "direct evidence of an improper motive is usually difficult, if not impossible, to obtain.").

## II. Because County Commissioners Are Final Policymakers, the Preliminary Injunction Should Extend to All Defendants

County liability for a violation of First Amendment rights arises when the execution of an official policy causes the injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A "single action by a municipal official possessing final policymaking authority regarding the action in question constitutes the official policy of the municipality." *Brady v. Fort Bend County*, 145 F.3d 691, 698 (5th Cir. 1998); *accord Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001). Whether a municipal official possesses final policymaking authority is a question of state law. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997). Texas law expressly grants the commissioner's court final policymaking authority over county libraries. *See* Tex. Const. art. 5, § 18(b) ("[T]he County Commissioners Court . . . shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State[.]"); Tex. Loc. Gov't Code § 323.006 ("The county library is under the general supervision of the commissioners court."); *see also Doe AW v. Burleson Cnty.*, No. 1:20-CV-00126-SH,

2022 WL 875912, at *4 (W.D. Tex. Mar. 24, 2022) (holding county commissioners court has

final policymaking authority over all areas entrusted to them by the state constitution and

statutes); *K.D. Pool & Ven-Ken, Inc. v. Johnson Cnty.*, No. 3:00-CV-2246-R, 2002 WL 245973,

at *5 (N.D. Tex. Feb. 15, 2002) (holding final policymaker for county was commissioners court).

 The hearing evidence unequivocally demonstrates the Llano County Commissioners

Court's direct involvement in purging the Banned Books. The county judge (Cunningham) and

another commissioner (Moss) expressly drove efforts to remove the books from library shelves.

*See, e.g.*, Hr'g Tr. Vol. 1 at 66:5-67:3, 68:15-25, 70:2-19; Exs. 2A, 2B, 5, 7, 8, 19, 60. The entire

Commissioners Court participated, by closing the library system for three days so all

"inappropriate" books could be purged from the shelves and then by replacing the previous

library board with other individuals who had been driving efforts to remove the Banned Books.

Ex. 11. The full Court's approval of the efforts of Cunningham and Moss amounted to

ratification of their actions. *See Young v. Bd. of Supervisors*, 927 F.3d 898, 903 (5th Cir. 2019)

("If the authorized policymakers approve a subordinate's decision and the basis for it, their

ratification would be chargeable to the municipality because their decision is final."); *Hatten v.

Mathis*, No. 2:15-CV-601-RSP, 2016 WL 4572366, at *4 (E.D. Tex. Sept. 1, 2016) (holding

individual commissioner could have final policymaking authority where commissioners court

rubber stamps his actions). A preliminary injunction against the County, and against the

Commissioners individually, is thus warranted. The library board members are also subject to

injunction, having demonstrated their individual willingness to engage in similar activity in the

future.[20]

---

[20] That the library board has supposedly agreed not to meet during the pendency of this litigation,
Resp. at 29-30, merely ensures they face no injunctive burden; it does not absolve their liability.

Dated: January 6, 2023

Respectfully submitted,

/s/ Ellen Leonida
Ellen V. Leonida (CA Bar No. 184194)
Matthew Borden (CA Bar No. 214323)
J. Noah Hagey (CA Bar No. 262331)
Max Bernstein (NY Bar No. 5609037)
**BraunHagey & Borden LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel: 415-599-0210
Fax: 415-276-1808
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com

Ryan A. Botkin (TX Bar No. 00793366)
Katherine P. Chiarello (TX Bar No. 24006994)
María Amelia Calaf (TX Bar No. 24081915)
Kayna Stavast Levy (TX Bar No. 24079388)
**Wittliff | Cutter PLLC**
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

Case 3:22-cv-04042-EMC Document 72 Filed 01/06/23 Page 5 of 7

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2023, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

/s/ Ellen Leonida
Ellen V. Leonida

P.App.234

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**Leila Green Little**, et al.

                Plaintiffs,

v.

**Llano County**, et al.,

                Defendants.

Case No. 1:22-cv-00424-RP

## DEFENDANTS' SUR-REPLY

The plaintiffs' reply brief, like their initial post-hearing brief, contains falsehoods and misrepresentations of the evidence and testimony. We have asked the plaintiffs to correct these inaccuracies but they refuse to do so. *See* Letter from Ellen V. Leonida (Jan. 17, 2023) (attached as Exhibit 2). The defendants therefore wish to bring these false statements to the Court's attention so that it does not rely on them in any way.

   1.  The plaintiffs' statement that "Milum . . . pulled the Banned Books off of the shelves for review because of their content and viewpoint"[1] is false in three respects: (a) The "fart" books and "*I Need a New Butt*" were never on the shelves,[2] so Ms. Milum could not have "pulled" them "off the shelves"; (b) There is no evidence that any of the 17 books was pulled off the shelves because of its "viewpoint"; and (c) Ms. Milum pulled books containing nudity (such as *It's Perfectly Normal* and *In the Night Kitchen*) from the shelves for review because of their content, per Judge Cunningham's directive,[3] but there is no evidence that Milum pulled any of the books on Bonnie Wallace's list for review because of their "content."

---

1. Pls.' Reply, ECF No. 98, at 2.
2. *See* Defs.' Br., ECF No. 100, at 11 n.22; Third Milum Decl., ECF No. 100-5, at ¶ 10 ("*I Need a New Butt* . . . and the four 'fart' books were never placed on the shelves and were never checked out by anyone.").
3. Hr'g Tr. Vol. 1 at 145:8–13.

2. The plaintiffs' statement that "The Banned Books were not eligible to be weeded under the CREW and MUSTIE criteria as those criteria had been previously applied by Milum and Tina Castelan"[4] is false. Castelan conceded that *Freakboy* was appropriately weeded under CREW and MUSTIE,[5] and she acknowledged that *Being Jazz* "could have been" weeded under CREW and MUSTIE but that she personally would have left it on the shelves.[6]

3. The plaintiffs' claim that there was "a statewide campaign to have the same books removed because of their expressed viewpoints"[7] is not supported by the citations from the hearing transcript or by any other evidence. The cited portions of the hearing transcript[8] reveal only the existence of the so-called Krause list, but there is nothing that indicates a "statewide campaign," or that Krause (or anyone else) objected to "viewpoints" in those books.

4. The plaintiffs' claim that "Plaintiffs only became aware of the existence of those books through this litigation"[9] is false. Leila Little testified that she also learned of the in-house checkout through the newspaper and from a librarian.[10] None of the other plaintiffs testified or provided evidence of how they learned about it.

The plaintiffs have refused our request to correct or withdraw these falsehoods and misrepresentations in their reply brief. *See* Letter from Ellen V. Leonida (Jan. 17, 2023) at 9–12

---

4. Pls.' Reply, ECF No. 98, at 3.

5. *See* Hr'g Tr. Vol. 1 at 38:25–39:7 ("Q. Was [*Freakboy*] appropriately removed pursuant to Llano County Library policies? A. Yes. Q. Tell me about that. A. Because its last circulation was in 2016. It was only checked out once. It was added in 2015, and so, for me, this book would have been one that I would have discovered and gotten rid of.").

6. *See* Hr'g Tr. Vol. 1 at 42:14–19 ("Q. Was [*Being Jazz*] appropriately weeded pursuant to library policy and CREW and MUSTIE criteria? A. So it could have been because it has— it was checked out in 2017. However, we only had one or two of the books that pertained to this subject and so, I would have left it.").

7. Pls.' Reply, ECF No. 98, at 3.

8. *See* Hr'g Tr. Vol. 1 at 30:24-32:4, 71:16-72:12.

9. Pls.' Reply, ECF No. 98, at 3.

10. Hr'g Tr. Vol. 2 at 42:18–22 ("I believe I first became aware of that through legal documents pertaining to this litigation. Following that, I did read about it. I believe it was in the Daily Trib newspaper that referred to the court filings referring to it. And following that, a librarian had told me about it.").

P.App.236

(attached as Exhibit 2). The plaintiffs are likewise unwilling to acknowledge the misstatements in their post-hearing brief of December 9, 2022, apart from their now-repudiated assertion that the in-house checkout system contained "only nine" of the 17 disputed books and their false claim that *It's Perfectly Normal* "was checked out within three years of its removal." *See id.* at 2–9. We have attached a letter from plaintiffs' counsel explaining their stance, and we believe that this letter, along with the prior correspondence that we have submitted to the Court,[11] will be sufficient to ensure that the Court will not misled by the plaintiffs' briefing.

We are also attaching to this sur-reply a copy of "the CREW Manual," which the plaintiffs continue to invoke in their briefs despite the fact that it was never introduced as evidence. *See* Pls.' Br., ECF No. 91 (asserting that "the CREW Manual states that books are to remain on shelves unless they do not circulate 'for 3-5 years,'" and falsely equating Exhibit 23 with "the CREW Manual"). This document is publicly available[12] and plaintiffs' counsel are fully aware of its existence and content. *See* Letter from Ellen V. Leonida (Jan. 17, 2023) at 8 (acknowledging that "[t]here is a document called 'CREW: A Weeding Manual for Modern Libraries' available online" and citing the URL). Plaintiffs' counsel are also aware that Exhibit 23 is not "the CREW Manual," but a mere slideshow produced by Dawn Vogler,[13] yet they continue to insist on equating the two while misrepresenting the contents of both the CREW Manual and the Vogler slideshow.

Because the plaintiffs continue to invoke "the CREW Manual" and refuse to withdraw their reliance on that document, the Court should be aware of what "the CREW Manual" actually says. To begin, the CREW Manual mandates not only content discrimination but also viewpoint discrimination in weeding decisions. *See* CREW Manual at 19 (attached as Exhibit 3) (listing "poor *content*" as grounds for weeding, including "[m]aterial that contains

---

11. *See* Notice to the Court, Ex. 1, ECF No. 102-1.
12. *See* https://bit.ly/3RjyQ6y (last visited on January 30, 2023).
13. *See* Letter from Ellen V. Leonida (Jan. 17, 2023) at 7–8.

P.App.237

biased, racist, or sexist terminology *or views*" (emphasis added)); *id*. at 21 (instructing librarians to consider "current interest in the subject matter"); *id*. at 33 ("[L]ook for books that contain stereotyping, including stereotypical images and views of people with disabilities and the elderly, or gender and racial biases."); *id*. at 65 ("Weed biased or unbalanced and inflammatory items."); *id*. ("Weed career guides with gender, racial, or ethnic bias."); *id*. at 68 ("Discard books that are MUSTIE or that reflect gender, family, ethnic, or racial bias."); *id*. ("Weed based on the quality of the retelling, especially if racial or ethnic bias is present."); *id*. at 73 ("While information may not become dated, watch for cultural, racial, and gender biases."); *id*. at 74 ("Discard books . . . that feature gender bias."); *id*. at 75 ("Watch for gender and racial bias in sports and athletics."); *id*. at 76 ("Watch for collections that feature gender or nationality bias and outdated interests and sensitivities."); *id*. at 77 ("Watch for outdated interests and collections that feature gender or race bias."); *id*. at 81 ("Weed books that reflect racial and gender bias."); *id*. at 82 ("Do not retain books that have erroneous and dangerous information simply because the book is still in great shape."). The plaintiffs need to explain how they can insist throughout their brief that content and viewpoint discrimination are constitutionally forbidden in weeding decisions while simultaneously invoking "the CREW Manual" as if it were an *ex cathedra* pronouncement.

The CREW Manual also flatly contradicts the plaintiffs' claim that books can never be weeded unless they have gone uncirculated "for 3–5 years." In many places, the CREW Manual endorses weeding after one or two years since last circulation, and explicitly states that fiction becomes eligible for weeding after *two* years of non-circulation. *See id*. at 33 ("Consider discarding older fiction especially when it has not circulated in the past two or three years."); *id*. at 77 ("F (Fiction) X/2/MUSTIE"); *id*. ("[C]onsider weeding any [graphic novel] that hasn't circulated in the past year."); *id*. at 81 ("Weed any [picture] book that has not circulated in the past two years."); *id*. ("[C]onsider weeding [juvenile fiction] that hasn't circulated in the past two years."); *id*. at 82 ("Any item [of young adult fiction] that has not

P.App.238

circulated within two years should be considered 'dead' and removed (and anything that hasn't circulated within the past year is suspect . . .)").

Finally, the plaintiffs' reply falsely accuses the defendants of arguing that this case (and the motion for preliminary injunction) are moot. *See* Pls.' Reply Br., ECF No. 98, at 4–6. Neither the case nor the motion is moot, and it would be wrong for the Court to hold that they are moot. An Article III case or controversy continues to exist because the plaintiffs' inability to obtain or check out the disputed books from the shelves (as opposed to the in-house checkout system) supplies the "identifiable trifle" needed for injury in fact. *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973). The donation of the disputed books to the in-house checkout system does not moot anything, but it does eliminate any possibility of "irreparable harm" or violation of the plaintiffs' First Amendment rights that might otherwise occur between now and the end of trial. The plaintiffs have established an ongoing Article III injury, but they have *not* shown that they will suffer irreparable harm or a violation of their constitutional rights absent a preliminary injunction. The plaintiffs' "voluntary cessation" analysis is irrelevant because the defendants have not mooted the plaintiffs' Article III injury and are not attempting to moot the case by returning the books to the shelves. Voluntary cessation is an *exception* to moot-ness, and that exception cannot be implicated when the defendants have done nothing that could eliminate an Article III case or controversy.[14]

## CONCLUSION

The motion for preliminary injunction should be denied.

---

14. The plaintiffs falsely claim that mootness can be "waived." *See* Pls.' Reply Br., ECF No. 98, at 5 ("Defendants have thus waived any mootness argument."). Mootness can never be waived, as it goes to the subject-matter jurisdiction of the Court. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases").

P.App.239

Respectfully submitted.

|  |  |
|---|---|
| Dwain K. Rogers<br>Texas Bar No. 00788311<br>County Attorney | /s/ Jonathan F. Mitchell<br>Jonathan F. Mitchell<br>Texas Bar No. 24075463<br>Mitchell Law PLLC |

Dwain K. Rogers
Texas Bar No. 00788311
County Attorney

Matthew L. Rienstra
Texas Bar No. 16908020
First Assistant County Attorney

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

Dated: January 30, 2023

   /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on January 30, 2023, I served this document through CM/ECF upon:

Ellen V. Leonida
Matthew Borden
J. Noah Hagey
Sarah Salomon
Pratik Ghosh
Amy Senia
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
salomon@braunhagey.com
ghosh@braunhagey.com
senia@braunhagey.com

Ryan A. Botkin
Katherine P. Chiarello
María Amelia Calaf
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com

*Counsel for Plaintiffs*

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| Llano County, *et al.*, | § | |
| Defendants. | § | |

## PLAINTIFFS' OPPOSED MOTION TO COMPEL AND FOR SANCTIONS

Plaintiffs Leila Green Little, Jeanne Puryear, Diane Moster, Rebecca Jones, Richard Day, Cynthia Waring, and Kathy Kennedy (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby move to compel Defendants to produce Defendant Bonnie Wallace for her deposition after she failed to object to her notice of deposition and then failed to appear at the noticed time and place. Plaintiffs also move for sanctions against Defendants for failing to produce Defendant Wallace, including the reasonable fees incurred in preparing for and appearing at the time and place noticed for Defendant Wallace's deposition.

## FACTUAL BACKGROUND

On March 1, 2023, Plaintiffs noticed Defendant Wallace's deposition for March 22, 2023, to commence at 10:00 a.m., at the offices of Wittliff Cutter, PLLC, 1209 Nueces St., Austin, TX 78701. That Notice and proof of its service is attached as Exhibit 1 to the Declaration of Ellis Herington, filed contemporaneously with this Motion (the "Herington Decl.").[1] Defendant Wallace did not serve any response or objection to the Notice.

[1] This was the second deposition Plaintiffs have noticed for Defendant Wallace. Notably, Defendant Wallace's previous deposition was taken during expedited discovery in connection with Plaintiffs' Motion for Preliminary Injunction. Plaintiffs and Defendants entered a Joint Notice Regarding Plaintiffs' Motion for Expedited Discovery (the "Joint Notice," ECF No. 39.) In the Joint Notice, the parties agreed that "[o]btaining this discovery [including Defendant

Plaintiffs' counsel appeared at the time and place stated in Defendant Wallace's deposition notice, prepared to go forward with Defendant Wallace's deposition. Also in attendance were the court reporter and videographer retained by Plaintiffs to record Defendant Wallace's deposition.

Without any prior attempt by counsel for Defendants to meet and confer on the propriety or scheduling of this deposition, much less a written response or objection to the Notice, neither Defendant Wallace nor any attorney representing her appeared for her deposition on March 22, 2023. Nearly an hour after the time designated in the deposition notice directed to Defendant Wallace for her deposition, Defendants' counsel sent a seemingly unrelated email concerning the remaining depositions noticed by Plaintiffs, claiming that "witnesses that you have already deposed (such as Bonnie Wallace) . . . are under no obligation to appear." (Herington Decl., Ex. 2.)

Plaintiffs' counsel obtained a Certificate of Non-Appearance from the court reporter to memorialize Defendant Wallace's failure to attend her deposition as noticed, which will be filed with the Court promptly upon receipt. Plaintiffs' counsel entered her appearance, described the circumstances of Defendant Wallace's failure to appear, and stated on the record that Defendant Wallace's deposition would be suspended, subject to reopening at a later date.

Prior to filing this Motion, Plaintiffs' counsel emailed Defendants' counsel on March 22, 2023 at 3:32 p.m., requesting that Mr. Mitchell advise if Defendant Wallace's deposition would be rescheduled or if Defendants would oppose this motion. A response was requested by 5:00 p.m. on March 22, 2023. Defendants' counsel indicated that this motion would be opposed. (Herington Decl., Ex. 3.)

Wallace's first deposition] *does not prejudice Plaintiffs from later seeking additional discovery or deposing witnesses during the formal discovery phase of this litigation.* By entering into this stipulation, *the parties do not waive, and expressly reserve, the right to take all discovery to which they are entitled under the Federal Rules of Civil Procedure.*" (*Id.* (emphasis added).)

## ARGUMENT

The Court should enter an order compelling Defendant Wallace to appear for her deposition, pursuant to Federal Rule of Civil Procedure 37(a)(1). Plaintiffs are entitled to take Defendant Wallace's deposition under the broad scope of discovery established by Federal Rule of Civil Procedure 26. Further, the parties previously agreed that Defendant Wallace's prior deposition, in the expedited discovery phase of this proceeding, would not prejudice Plaintiffs' ability to take her deposition for a second time during the formal discovery phase. (ECF No. 39.)

Defendant Wallace's failure to appear was procedurally improper for a host of reasons. Defendants never served any objections to her deposition notice, and never sought to meet and confer regarding the scheduling or propriety of her deposition. Defendants' counsel's belated claim—without any supporting basis and made after the deposition was scheduled to begin—that Defendant Wallace was "under no obligation to appear" (*see* Herington Decl., Ex. 2) does not suffice to meet Defendants' or their counsel's obligations under the Federal Rules. Defendant Wallace and her counsel's unilateral decision to refuse to appear for her deposition—without providing any advance notice at all to Plaintiffs or their counsel—is wholly outside both the scope of proper discovery conduct under the Federal Rules of Civil Procedure and the bounds of appropriate, ethical attorney conduct. *See* Local Rule AT-7 (adopting "the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct, Texas Government Code, Title 2, Subtitle G, App. A, art. X, sec. 9 (Vernon) . . . as the standards of professional conduct of this court"); *see also* Local Rules, Appendix M (adopting the Texas Lawyer's Creed, by which Texas lawyers agree that they "will be courteous, civil, and prompt in oral and written communications," "will notify opposing counsel . . . when hearings, depositions, meetings, conferences or closing are cancelled," "will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility," and "will not engage in any conduct which offends the dignity and decorum of proceedings").

The Court should also enter an order granting Plaintiffs sanctions against both Defendant Wallace and her counsel. Federal Rule of Civil Procedure 37(a)(5) requires a court to award

sanctions after granting a motion to compel discovery against the party whose conduct necessitated the motion. Specifically, the Rule states, "the court must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." Defendant Wallace's conduct is exactly the type of conduct Rule 37 was intended to address. Defendant Wallace has evaded the deposition notice properly served on her by failing to appear at the time and place noticed for her deposition.

Federal Rule of Civil Procedure 37(d) also authorizes the Court to grant sanctions "if: . . . a party . . . fails, after being served with proper notice, to appear for [their] deposition." The Rule further provides,

> Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)—(vi). Instead of or in addition to these sanctions, *the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure*, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Rule 37(d)(3) (emphasis added). No justification exists for Defendant Wallace's failure to appear at the time and place noticed for her deposition after failing to object to the Notice. Further, no justification exists for Defendants' counsel's stated position that Defendant Wallace was "under no obligation to appear." (Herington Decl., Ex. 2.) Accordingly, sanctions should issue against both Defendant Wallace and her counsel.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court enter an order:

A.     Finding that Defendant Wallace failed to appear at the time and place properly noticed for her deposition;

B.     Finding that Defendant Wallace had no justification for her failure to appear at the time and place properly noticed for her deposition;

C.      Compelling Defendant Wallace to appear for her deposition on or before March

29, 2023, subject to Defendant Wallace's availability; and

D.      Requiring that Defendant Wallace and her counsel pay the reasonable expenses,

including attorney's fees, caused by Defendant Wallace's failure to attend her deposition.


Dated: March 22, 2023                     Respectfully submitted,

                                          /s/ *Ellen V. Leonida*
                                          Ellen V. Leonida (CA Bar No. 184194)
                                          Matthew Borden (CA Bar No. 214323)
                                          J. Noah Hagey (CA Bar No. 262331)
                                          Max Bernstein (NY Bar No. 5609037)
                                          Ellis E. Herington (CA Bar No. 343085)
                                          **BraunHagey & Borden LLP**
                                          351 California Street, 10th Floor
                                          San Francisco, CA 94104
                                          Tel:  415-599-0210
                                          Fax: 415-276-1808
                                          leonida@braunhagey.com
                                          borden@braunhagey.com
                                          hagey@braunhagey.com
                                          bernstein@braunhagey.com
                                          herington@braunhagey.com

                                          Ryan A. Botkin (TX Bar No. 00793366)
                                          Katherine P. Chiarello (TX Bar No. 24006994)
                                          María Amelia Calaf (TX Bar No. 24081915)
                                          Kayna Stavast Levy (TX Bar No. 24079388)
                                          **Wittliff | Cutter PLLC**
                                          1209 Nueces Street
                                          Austin, Texas 78701
                                          Tel: 512-960-4730
                                          Fax: 512-960-4869
                                          ryan@wittliffcutter.com
                                          katherine@wittliffcutter.com
                                          mac@wittliffcutter.com
                                          kayna@wittliffcutter.com

                                          *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 22, 2023, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

                                      */s/ Ellen V. Leonida*
                                      Ellen V. Leonida

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

|  |  |  |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DECLARATION OF ELLIS HERINGTON

I, Ellis E. Herington, declare:

1.     I am an attorney at BraunHagey & Borden LLP and counsel of record for Plaintiffs in the above-captioned matter. I make this declaration based on personal knowledge and if called upon to testify, I could and would testify competently to the facts stated herein.

2.     Attached as **Exhibit 1** is a true and correct copy of Plaintiffs' deposition notice directed to Defendant Bonnie Wallace and accompanying proof of service.

3.     Attached as **Exhibit 2** is a true and correct copy of an email I received from Jonathan Mitchell, counsel for Defendants in this action, on March 22, 2023.

4.     Attached as **Exhibit 3** is a true and correct copy of an email thread including emails that I sent to Jonathan Mitchell and received from Jonathan Mitchell on March 22, 2023.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: March 22, 2023          By: _____

                                        Ellis E. Herington

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFFS' NOTICE OF DEPOSITION OF BONNIE WALLACE**

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition upon oral examination of Defendant Bonnie Wallace. The deposition will take place at the offices of Wittliff | Cutter 1209 Nueces Street Austin, Texas 78701 on March 22, 2023, commencing at 10:00 A.M. Central Standard Time or at a time and place mutually agreeable to the parties.

The deposition will continue from day to day and shall be taken before an officer, notary public, or other person duly authorized to administer oaths. Pursuant to Federal Rule of Civil Procedure 30(b)(3), the testimony will be recorded by stenographic means and videotape. All or part of the deposition may be used at a hearing or trial as permitted under Rule 32 of the Federal Rules of Civil Procedure.

Dated: March 1, 2023        BRAUNHAGEY & BORDEN LLP

By: */s/ Ellen Leonida*
         Ellen Leonida

*Attorneys for Plaintiffs*

1

P.App.250

# IN THE UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF TEXAS

## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PROOF OF SERVICE

P.App.251

I, Ellis Herington, declare:

I am over the age of 18 and not a party to this action. My business address is BraunHagey & Borden LLP, 351 California Street, 10th Floor, San Francisco, CA 94104, which is located in the county where the service described below occurred.

I certify that on March 1, 2023, based on an agreement of the parties to accept email or electronic service, I served the below documents by causing them to be sent from my email address, herington@braunhagey.com, to counsel for Defendants at the email addresses listed below. I did not receive, within a reasonable time after the transmission was sent, any message or indication that the transmission was unsuccessful.

Documents Served:

- Plaintiffs' Notice of Deposition of Ron Cunningham
- Plaintiffs' Notice of Deposition of Jerry Don Moss
- Plaintiffs' Notice of Deposition of Peter Jones
- Plaintiffs' Notice of Deposition of Mike Sandoval
- Plaintiff's Notice of Deposition of Linda Raschke
- Plaintiff's Notice of Deposition of Amber Milum
- Plaintiff's Notice of Deposition of Bonnie Wallace
- Plaintiff's Notice of Deposition of Rhonda Schneider
- Plaintiff's Notice of Deposition of Gay Baskin
- Proof of Service

Parties Served:

Jonathan Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
jonathan@mitchell.law

*Counsel for Defendants*

Dwain K. Rogers
Matthew L. Rienstra
Llano County Attorney's Office
804 Ford Street
Llano, TX 78643
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

*Counsel for Defendants*

1

P.App.252

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: March 1, 2023                              By: _____

                                                        Ellis Herington

P.App.253

P.App.254

| | |
|---|---|
| **From:** | Jonathan Mitchell |
| **To:** | Ellen Leonida |
| **Cc:** | Ellis Herington; Matt Rienstra; Dwain K. Rogers; Katherine Chiarello; Maria Calaf; Ryan Botkin; Kayna Levy; Max Bernstein; Shannon Morrissey; Andrew Levine; Gemma Null |
| **Subject:** | remaining depositions |
| **Date:** | Wednesday, March 22, 2023 11:56:29 AM |

**\*\*\* EXTERNAL MESSAGE \*\*\***

D                    :

This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

R    D  D    D        R        MM        R      R
R  D

P.App.257

| | |
|---|---|
| **From:** | Jonathan Mitchell |
| **To:** | Ellis Herington |
| **Cc:** | Dwain K. Rogers; Matt Rienstra; Ellen Leonida; Andrew Levine; Max Bernstein; Shannon Morrissey; Gemma Null; Katherine Chiarello; Kayna Levy; Maria Calaf; Ryan Botkin |
| **Subject:** | Re: Deposition of Bonnie Wallace |
| **Date:** | Wednesday, March 22, 2023 5:19:10 M |

**\*\*\* EXTERNAL MESSAGE \*\*\***

Jonathan,

Please refer to the parties' Joint Notice Regarding Plaintiffs' Motion for Expedited Discovery (ECF No. 39), wherein the parties agreed that the expedited discovery obtained in connection with Plaintiffs' Motion for Preliminary Injunction would "not prejudice Plaintiffs from later seeking additional discovery or deposing witnesses during the formal discovery phase of this litigation." The parties further specified: "By entering into this stipulation, the parties do not waive, and expressly reserve, the right to take all discovery to which they are entitled under the Federal Rules of Civil Procedure." For ease of reference, I attach ECF No. 39 here.

Please confirm whether you will offer new dates for her deposition in light of the parties' prior agreement, or if you will oppose our motion to compel and for sanctions. Otherwise, we still intend to file our motion promptly after 5:00 p.m.

Best,
Ellis

Ellis E. Herington
**B R A U N H A G E Y & B O R D E N** L L P
Direct: (415) 491-7025 ext. 185
Cell: (415) 672-0066

---

**S**    Jonathan Mitchell <jonathan@mitchell.law>
Wednesday, March 22, 2023 1:51 PM
**T**    Ellis Herington <herington@braunhagey.com>
Dwain K. Rogers <drogers@co.llano.tx.us>; Matt Rienstra
<matt.rienstra@co.llano.tx.us>; Ellen Leonida <Leonida@braunhagey.com>; Andrew

P.App.258

Levine <levine@braunhagey.com>; Max Bernstein <bernstein@braunhagey.com>;
Shannon Morrissey <Morrissey@braunhagey.com>; Gemma Null
<null@braunhagey.com>; Katherine Chiarello <katherine@wittliffcutter.com>; Kayna
Levy <kayna@wittliffcutter.com>; Maria Calaf <mac@wittliffcutter.com>; Ryan Botkin
<ryan@wittliffcutter.com>

**S**       Re: Deposition of Bonnie Wallace

**\*\*\* EXTERNAL MESSAGE \*\*\***

Read FRCP 30(a)(2)(A)(ii).

On Mar 22, 2023, at 1:32 PM, Ellis Herington
<herington@braunhagey.com> wrote:

Jonathan,

I write regarding Defendant Bonnie Wallace's failure to attend her
deposition, which was scheduled for 10:00 a.m. today per the notice
served on you by email on March 1, 2023. I was in attendance along with
the court reporter and videographer Plaintiffs retained to record her
deposition. Will you offer new dates on which Defendant Wallace is
available for us to take her deposition? If not, we will be filing a motion to
compel her deposition and a motion for sanctions for her failure to
attend, seeking sanctions against both Defendant Wallace and
Defendants' counsel.

Please confirm whether you will offer new dates for her deposition, or if
you will oppose our motion, by 5:00 p.m. today. We intend to file our
motion promptly after 5:00 p.m.

Best,
Ellis

Ellis E. Herington
**B R A U N** **H A G E Y** **& B O R D E N** LLP
Direct: (415) 491-7025 ext. 185
Cell: (415) 672-0066

P.App.259

**CONFIDENTIALITY NOTICE**:
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

**PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK PRODUCT**

Case 1:22-cv-00424-RP Document 42-3 Filed 03/22/23 Page 1 of 2

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| v. | § | **[PROPOSED] ORDER GRANTING** |
| | § | **PLAINTIFFS' OPPOSED MOTION TO** |
| Llano County, *et al.*, | § | **COMPEL AND FOR SANCTIONS** |
| | § | |
| Defendants. | § | |
| | § | |

The Court, having reviewed all materials submitted in support of Plaintiffs' Opposed Motion to Compel and for Sanctions ("Motion"), and all other pleadings and arguments by counsel properly before the Court, and after careful consideration, hereby **GRANTS** Plaintiffs' Motion, and **ORDERS**:

1.    The Court finds that Defendant Wallace failed to appear at the time and place properly noticed for her deposition;

2.    The Court finds that Defendant Wallace had no justification for her failure to appear at the time and place properly noticed for her deposition;

3.    Defendant Wallace must appear for her deposition on or before March 29, 2023, subject to Defendant Wallace's availability; and

4.    Defendant Wallace and her counsel must pay the reasonable expenses, including attorney's fees, caused by Defendant Wallace's failure to attend her deposition.

**IT IS SO ORDERED**.

Dated: _____          _____
                                    Hon. Robert Pitman
                                    United States District Judge

P.App.262

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFFS' OPPOSED MOTION TO COMPEL AND FOR SANCTIONS

Plaintiffs Leila Green Little, Jeanne Puryear, Diane Moster, Rebecca Jones, Richard Day, Cynthia Waring, and Kathy Kennedy (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby move to compel Defendants to produce Defendant Jerry Don Moss for his deposition after he failed to object to his notice of deposition and then failed to appear at the noticed time and place. Plaintiffs also move for sanctions against Defendants and their counsel for failing to produce Defendant Moss, including the reasonable fees incurred in preparing for and appearing at the time and place noticed for Defendant Moss's deposition. Defendant Moss's failure to appear is merely the latest example of Defendants' continued obstruction of the discovery process in this litigation, and an order compelling his deposition and issuing sanctions is warranted by Defendants' pattern of discovery misconduct.

## FACTUAL BACKGROUND

On March 1, 2023, Plaintiffs noticed Defendant Moss's deposition for March 27, 2023, to commence at 10:00 a.m., at the offices of Wittliff Cutter, PLLC, 1209 Nueces St., Austin, TX 78701. That Notice and proof of its service is attached as Exhibit 1 to the Declaration of Ellis

Herington, filed contemporaneously with this Motion (the "Herington Decl.").[1] Defendant Moss did not serve any response or objection to the Notice.

Plaintiffs' counsel appeared at the time and place stated in Defendant Moss's deposition notice, prepared to go forward with Defendant Moss's deposition. Also in attendance were the court reporter and videographer retained by Plaintiffs to record Defendant Moss's deposition. Without any prior attempt by counsel for Defendants to meet and confer on the propriety or scheduling of Defendant Moss's deposition, much less a written response or objection to the Notice, neither Defendant Moss nor any attorney representing him appeared for his deposition on March 27, 2023.

This was not the first time Defendants failed to appear for a scheduled deposition without filing any objection and without notice. On March 22, Defendant Bonnie Wallace failed to appear for her noticed deposition. That same day, after Defendant Wallace's deposition was scheduled to start, Defendants' counsel sent a seemingly unrelated email concerning the remaining depositions noticed by Plaintiffs, claiming that "witnesses that you have already deposed . . . are under no obligation to appear." (Herington Decl. Ex. 2.) When Plaintiffs' counsel contacted Defendants' counsel to meet and confer with respect to Defendant Wallace's failure to appear for her deposition,[2] Defendants' counsel reiterated the claim that Defendants

_____

[1] This was the second deposition Plaintiffs have noticed for Defendant Moss. Notably, Defendant Moss's previous deposition was taken during expedited discovery in connection with Plaintiffs' Motion for Preliminary Injunction. Plaintiffs and Defendants entered a Joint Notice Regarding Plaintiffs' Motion for Expedited Discovery (the "Joint Notice," ECF No. 39.) In the Joint Notice, the parties agreed that "[o]btaining this discovery [including Defendant Moss's first deposition] *does not prejudice Plaintiffs from later seeking additional discovery or deposing witnesses during the formal discovery phase of this litigation*. By entering into this stipulation, *the parties do not waive, and expressly reserve, the right to take all discovery to which they are entitled under the Federal Rules of Civil Procedure*." (*Id.* (emphasis added).)
[2] Plaintiffs subsequently filed a Motion to Compel Defendant Wallace's deposition, and sought sanctions in connection with her failure to attend. (ECF No. 123.)

who had been deposed in connection with Plaintiffs' expedited discovery were not obligated to appear. (*Id.* Ex. 3.) Defendants' counsel did not specifically refer to Defendant Moss in either communication.

Plaintiffs' counsel obtained a Certificate of Non-Appearance from the court reporter to memorialize Defendant Moss's failure to attend his deposition as noticed, which will be filed with the Court promptly upon receipt. Plaintiffs' counsel entered her appearance and described the circumstances of Defendant Moss's failure to appear.

Prior to filing this Motion, Plaintiffs' counsel emailed Defendants' counsel on March 27, 2023 at 1:10 p.m., requesting that Mr. Mitchell advise if Defendant Moss's deposition would be rescheduled or if Defendants would oppose this motion. A response was requested by 4:00 p.m. on March 27, 2023. Defendants' counsel indicated that this motion would be opposed. (Herington Decl. Ex. 4.)

## **ARGUMENT**

The Court should enter an order compelling Defendant Moss to appear for his deposition, pursuant to Federal Rule of Civil Procedure 37(a)(1). Plaintiffs are entitled to take Defendant Moss's deposition under the broad scope of discovery established by Federal Rule of Civil Procedure 26. Further, the parties previously agreed that Defendant Moss's prior deposition, in the expedited discovery phase of this proceeding, would not prejudice Plaintiffs' ability to take his deposition for a second time during the formal discovery phase. (ECF No. 39.)

Defendant Moss's failure to appear was procedurally improper for a host of reasons. Defendants never served any objections to his deposition notice, and never sought to meet and confer regarding the scheduling or propriety of his deposition. Defendants' counsel's belated claim—without any supporting basis—that Defendant Moss was "under no obligation to appear"

(*see* Herington Decl. Ex. 2) does not suffice to meet Defendants' or their counsel's obligations under the Federal Rules. Defendant Moss and his counsel's unilateral decision to refuse to appear for his deposition—despite never objecting to the Notice or meeting and conferring regarding scheduling—is wholly outside both the scope of proper discovery conduct under the Federal Rules of Civil Procedure and the bounds of appropriate, ethical attorney conduct. *See* Local Rule AT-7 (adopting "the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct, Texas Government Code, Title 2, Subtitle G, App. A, art. X, sec. 9 (Vernon) . . . as the standards of professional conduct of this court"); *see also* Local Rules, Appendix M (adopting the Texas Lawyer's Creed, by which Texas lawyers agree that they "will be courteous, civil, and prompt in oral and written communications," "will notify opposing counsel . . . when hearings, depositions, meetings, conferences or closings are cancelled," "will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility," and "will not engage in any conduct which offends the dignity and decorum of proceedings").

The Court should enter an order granting Plaintiffs sanctions against both Defendant Moss and his counsel. Federal Rule of Civil Procedure 37(a)(5) requires a court to award sanctions after granting a motion to compel discovery against the party whose conduct necessitated the motion. Specifically, the Rule states, "the court must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." Defendant Moss's conduct is exactly the type of conduct Rule 37 was intended to address. Defendant Moss has evaded the deposition notice properly served on him by failing to appear at the time and place noticed for his deposition.

Federal Rule of Civil Procedure 37(d) also authorizes the Court to grant sanctions "if: . . . a party . . . fails, after being served with proper notice, to appear for [their] deposition[.]" The Rule further provides,

> Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)—(vi). Instead of or in addition to these sanctions, *the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure*, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Rule 37(d)(3) (emphasis added). No justification exists for Defendant Moss's failure to appear at the time and place noticed for his deposition after failing to object to the Notice. Further, no justification exists for Defendants' counsel's stated position that Defendant Moss was "under no obligation to appear." (Herington Decl. Ex. 2.) Accordingly, sanctions should issue against both Defendant Moss and his counsel.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court enter an order:

A.      Finding that Defendant Moss failed to appear at the time and place properly noticed for his deposition;

B.      Finding that Defendant Moss had no justification for his failure to appear at the time and place properly noticed for his deposition;

C.      Compelling Defendant Moss to appear for his deposition on or before March 31, 2023, subject to Defendant Moss's availability; and

D.      Requiring that Defendant Moss and his counsel pay the reasonable expenses, including attorney's fees, caused by Defendant Moss's failure to attend his deposition.

Dated: March 27, 2023                    Respectfully submitted,

                                          /s/ *Ellen Leonida*
                                          Ellen V. Leonida (CA Bar No. 184194)

Matthew Borden (CA Bar No. 214323
J. Noah Hagey (CA Bar No. 262331)
Max Bernstein (NY Bar No. 5609037)
Ellis E. Herington (CA Bar No. 343085)
**BraunHagey & Borden LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel:  415-599-0210
Fax: 415-276-1808
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

Ryan A. Botkin (TX Bar No. 00793366)
Katherine P. Chiarello (TX Bar No. 24006994)
María Amelia Calaf (TX Bar No. 24081915)
Kayna Stavast Levy (TX Bar No. 24079388)
**Wittliff | Cutter PLLC**
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

P.App.268

### CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2023, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

*/s/ Ellen Leonida*
Ellen V. Leonida

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| Leila Green Little, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 1:22-cv-00424-RP |
| Llano County, *et al.*, | § § § | |
| Defendants. | § § § | |

## <u>DECLARATION OF ELLIS HERINGTON</u>

I, Ellis E. Herington, declare:

1.      I am an attorney at BraunHagey & Borden LLP and counsel of record for Plaintiffs in the above-captioned matter. I make this declaration based on personal knowledge and if called upon to testify, I could and would testify competently to the facts stated herein.

2.      Attached as **Exhibit 1** is a true and correct copy of Plaintiffs' deposition notice directed to Defendant Jerry Don Moss and accompanying proof of service.

3.      Attached as **Exhibit 2** is a true and correct copy of an email I received from Jonathan Mitchell, counsel for Defendants in this action, on March 22, 2023.

4.      Attached as **Exhibit 3** is a true and correct copy of an email thread including emails that I sent to Jonathan Mitchell and received from Jonathan Mitchell on March 22, 2023.

5.      Attached as **Exhibit 4** is a true and correct copy of an email thread including an email that I sent to Jonathan Mitchell on March 27, 2023 and an email received from Jonathan Mitchell on March 27, 2023.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: March 27, 2023                    By: _____
                                              Ellis E. Herington

# EXHIBIT 1

P.App.272

# IN THE UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS

### AUSTIN DIVISION

| | |
|---|---|
| Leila Green Little, *et al.*, | §<br>§<br>§ |
| Plaintiffs, | §<br>§ |
| v. | §  Civil Action No. 1:22-cv-00424-RP<br>§ |
| Llano County, *et al.*, | §<br>§ |
| Defendants. | §<br>§ |

## <u>PLAINTIFFS' NOTICE OF DEPOSITION OF  ERR  DON MOSS</u>

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition upon oral examination of Defendant  erry Don Moss. The deposition will take place via at the offices of Wittliff | Cutter 1209 Nueces Street Austin, Texas 78701 on March 27, 2023, commencing at 10:00 A.M. Central Standard Time or at a time and place mutually agreeable to the parties.

The deposition will continue from day to day and shall be taken before an officer, notary public, or other person duly authorized to administer oaths. Pursuant to Federal Rule of Civil Procedure 30(b)(3), the testimony will be recorded by stenographic means and videotape. All or part of the deposition may be used at a hearing or trial as permitted under Rule 32 of the Federal Rules of Civil Procedure.

Dated: March 1, 2023

BRAUNHAGEY & BORDEN LLP

By:   */s/ Ellen Leonida*
      Ellen Leonida

*Attorneys for Plaintiffs*

1

P.App.273

# IN THE UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF TEXAS

# AUSTIN DIVISION

Leila Green Little, *et al.*,

Plaintiffs,

v.

Llano County, *et al.*,

Defendants.

§
§
§
§
§
§
§   Civil Action No. 1:22-cv-00424-RP
§
§
§
§
§

## PROOF OF SERVICE

P.App.274

I, Ellis Herington, declare:

I am over the age of 18 and not a party to this action. My business address is BraunHagey & Borden LLP, 351 California Street, 10th Floor, San Francisco, CA 94104, which is located in the county where the service described below occurred.

I certify that on March 1, 2023, based on an agreement of the parties to accept email or electronic service, I served the below documents by causing them to be sent from my email address, herington@braunhagey.com, to counsel for Defendants at the email addresses listed below. I did not receive, within a reasonable time after the transmission was sent, any message or indication that the transmission was unsuccessful.

Documents Served:

- Plaintiffs' Notice of Deposition of Ron Cunningham
- Plaintiffs' Notice of Deposition of Jerry Don Moss
- Plaintiffs' Notice of Deposition of Peter Jones
- Plaintiffs' Notice of Deposition of Mike Sandoval
- Plaintiff's Notice of Deposition of Linda Raschke
- Plaintiff's Notice of Deposition of Amber Milum
- Plaintiff's Notice of Deposition of Bonnie Wallace
- Plaintiff's Notice of Deposition of Rhonda Schneider
- Plaintiff's Notice of Deposition of Gay Baskin
- Proof of Service

Parties Served:

Jonathan Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
jonathan@mitchell.law

*Counsel for Defendants*

Dwain K. Rogers
Matthew L. Rienstra
Llano County Attorney's Office
804 Ford Street
Llano, TX 78643
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

*Counsel for Defendants*

1

P.App.275

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: March 1, 2023                By: _____

                                         Ellis Herington

P.App.276

P.App.277

| | |
|---|---|
| **From:** | Jonathan Mitchell |
| **To:** | Ellen Leonida |
| **Cc:** | Ellis Herington; Matt Rienstra; Dwain K. Rogers; Katherine Chiarello; Maria Calaf; Ryan Botkin; Kayna Levy; Max Bernstein; Shannon Morrissey; Andrew Levine; Gemma Null |
| **Subject:** | remaining depositions |
| **Date:** | Wednesday, March 22, 2023 11:56:29 AM |

**\*\*\* EXTERNAL MESSAGE \*\*\***

D                          :

P.App.278

This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

R       D  D     D         R           MM           R       R
R  D

P.App.279

P.App.280

| From: | Jonathan Mitchell |
|---|---|
| To: | Ellis Herington |
| Cc: | Dwain K. Rogers; Matt Rienstra; Ellen Leonida; Andrew Levine; Max Bernstein; Shannon Morrissey; Gemma Null; Katherine Chiarello; Kayna Levy; Maria Calaf; Ryan Botkin |
| Subject: | Re: Deposition of Bonnie Wallace |
| Date: | Wednesday, March 22, 2023 5:19:10 M |

**\*\*\* EXTERNAL MESSAGE \*\*\***

Jonathan,

Please refer to the parties' Joint Notice Regarding Plaintiffs' Motion for Expedited Discovery (ECF No. 39), wherein the parties agreed that the expedited discovery obtained in connection with Plaintiffs' Motion for Preliminary Injunction would "not prejudice Plaintiffs from later seeking additional discovery or deposing witnesses during the formal discovery phase of this litigation." The parties further specified: "By entering into this stipulation, the parties do not waive, and expressly reserve, the right to take all discovery to which they are entitled under the Federal Rules of Civil Procedure." For ease of reference, I attach ECF No. 39 here.

Please confirm whether you will offer new dates for her deposition in light of the parties' prior agreement, or if you will oppose our motion to compel and for sanctions. Otherwise, we still intend to file our motion promptly after 5:00 p.m.

Best,
Ellis

Ellis E. Herington
B R A U N **H A G E Y** & B O R D E N LLP
Direct: (415) 491-7025 ext. 185
Cell: (415) 672-0066

---

Jonathan Mitchell <jonathan@mitchell.law>

**S**   Wednesday, March 22, 2023 1:51 PM

**T**   Ellis Herington <herington@braunhagey.com>
Dwain K. Rogers <drogers@co.llano.tx.us>; Matt Rienstra
<matt.rienstra@co.llano.tx.us>; Ellen Leonida <Leonida@braunhagey.com>; Andrew

Levine <[levine@braunhagey.com](mailto:levine@braunhagey.com)>; Max Bernstein <[bernstein@braunhagey.com](mailto:bernstein@braunhagey.com)>; Shannon Morrissey <[Morrissey@braunhagey.com](mailto:Morrissey@braunhagey.com)>; Gemma Null <[null@braunhagey.com](mailto:null@braunhagey.com)>; Katherine Chiarello <[katherine@wittliffcutter.com](mailto:katherine@wittliffcutter.com)>; Kayna Levy <[kayna@wittliffcutter.com](mailto:kayna@wittliffcutter.com)>; Maria Calaf <[mac@wittliffcutter.com](mailto:mac@wittliffcutter.com)>; Ryan Botkin <[ryan@wittliffcutter.com](mailto:ryan@wittliffcutter.com)>

**S**      Re: Deposition of Bonnie Wallace

**\*\*\* EXTERNAL MESSAGE \*\*\***

Read FRCP 30(a)(2)(A)(ii).

On Mar 22, 2023, at 1:32 PM, Ellis Herington <[herington@braunhagey.com](mailto:herington@braunhagey.com)> wrote:

Jonathan,

I write regarding Defendant Bonnie Wallace's failure to attend her deposition, which was scheduled for 10:00 a.m. today per the notice served on you by email on March 1, 2023. I was in attendance along with the court reporter and videographer Plaintiffs retained to record her deposition. Will you offer new dates on which Defendant Wallace is available for us to take her deposition? If not, we will be filing a motion to compel her deposition and a motion for sanctions for her failure to attend, seeking sanctions against both Defendant Wallace and Defendants' counsel.

Please confirm whether you will offer new dates for her deposition, or if you will oppose our motion, by 5:00 p.m. today. We intend to file our motion promptly after 5:00 p.m.

Best,
Ellis

Ellis E. Herington
**BRAUN HAGEY & BORDEN** LLP
Direct: (415) 491-7025 ext. 185
Cell: (415) 672-0066

P.App.282

**CONFIDENTIALITY NOTICE**:
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

**PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK PRODUCT**

# EXHIBIT 4

| From: | Jonathan Mitchell |
|---|---|
| To: | Ellis Herington |
| Cc: | Dwain K. Rogers; Matt Rienstra; Ellen Leonida; Andrew Levine; Kayna Levy; Max Bernstein; Shannon Morrissey; Katherine Chiarello; Ryan Botkin; Maria Calaf |
| Subject: | Re: Deposition of Jerry Don Moss |
| Date: | Monday, March 27, 2023 2:20:00 PM |

**\*\*\* EXTERNAL MESSAGE \*\*\***

You already deposed Commissioner Moss and you cannot depose him again without leave of court or our stipulation. See FRCP 30(a)(2)(A)(ii).

We will produce Commissioner Sandoval tomorrow for his deposition.

> On Mar 27, 2023, at 11:10 AM, Ellis Herington <herington@braunhagey.com> wrote:
>
> Jonathan,
>
> I write regarding Defendant Jerry Don Moss's failure to attend his deposition, which was scheduled for 10:00 a.m. today per the notice served on you by email on March 1, 2023. As we have previously stated with respect to the deposition of Defendant Bonnie Wallace, their failure to appear is not appropriate under the Federal Rules of Civil Procedure and the Joint Notice filed by the parties with respect to expedited discovery earlier in this case. Plaintiffs' counsel was in attendance this morning along with the court reporter and videographer Plaintiffs retained to record today's deposition. Will you offer new dates on which Defendant Moss is available for us to take his deposition? If not, we will be filing another motion to compel and for sanctions against both Defendant Moss and Defendants' counsel.
>
> Please confirm whether you will offer new dates for his deposition, or if you will oppose our motion, by 4:00 p.m. today. We intend to file our motion promptly thereafter.
>
> Additionally, given the repeated failure of your clients to appear as noticed, please confirm the following:
> - Whether you will produce Defendant Mike Sandoval for his noticed deposition on Tuesday, March 28
> - Whether you will produce Defendant Amber Milum for her noticed deposition on Thursday, March 30
> - Whether you will produce Defendant Peter Jones for his noticed deposition on Friday, March 31
> - Whether you intend to appear at your subpoenaed deposition on Friday, March 31

Best,
Ellis

Ellis E. Herington

B R A U N **H A G E Y** & B O R D E N L L P

Direct: (415) 491-7025 ext. 185
Cell: (415) 672-0066

**San Francisco**

351 California Street, 10th Floor
San Francisco, CA 94104
Tel. (415) 599-0209
Fax. (415) 276-1808

**New York**

118 W 22nd Street, 12th Floor
New York, NY 10011
Tel. (646) 829-9403
Fax. (646) 403-4089

This message is intended only for the confidential use of the intended recipient(s) and may contain protected
information that is subject to attorney-client, work product, joint defense and/or other legal privileges. If you
are not the intended recipient, please contact me immediately at the phone number listed above and
permanently delete the original message and any copies thereof from your email system. Thank you.


------------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law
papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842


**CONFIDENTIALITY NOTICE**:
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the
use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any
disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this
electronic mail message is strictly prohibited. If you have received this message in error, please delete it
immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

**PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK
PRODUCT**

P.App.286

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

Leila Green Little, *et al.*,

    Plaintiffs,

v.

Llano County, *et al.*,

    Defendants.

§
§
§
§  Civil Action No. 1:22-cv-00424-RP
§
§  **[PROPOSED] ORDER GRANTING
§  PLAINTIFFS' OPPOSED MOTION TO
§  COMPEL AND FOR SANCTIONS**
§
§
§

The Court, having reviewed all materials submitted in support of Plaintiffs' Opposed Motion to Compel and for Sanctions ("Motion"), and all other pleadings and arguments by counsel properly before the Court, and after careful consideration, hereby **GRANTS** Plaintiffs' Motion, and **ORDERS**:

1.    The Court finds that Defendant Moss failed to appear at the time and place properly noticed for his deposition;

2.    The Court finds that Defendant Moss had no justification for his failure to appear at the time and place properly noticed for his deposition;

3.    Defendant Moss must appear for his deposition on or before March 31, 2023, subject to Defendant Moss's availability; and

4.    Defendant Moss and his counsel must pay the reasonable expenses, including attorney's fees, caused by Defendant Moss's failure to attend his deposition.

**IT IS SO ORDERED**.

Dated: _____

_____
Hon. Robert Pitman
United States District Judge

P.App.287

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **Leila Green Little**, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>**Llano County**, et al.,<br><br>                    Defendants. | Case No. 1:22-cv-00424-RP |

## RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF BONNIE WALLACE AND MOTION FOR SANCTIONS

The plaintiffs already deposed Bonnie Wallace on June 29, 2022. They cannot depose her a second time without first obtaining leave of court or a stipulation of the parties. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii). The plaintiffs have not even sought, let alone obtained, the required leave or stipulation. Yet they went ahead and noticed Ms. Wallace for a second deposition in disregard of Rule 30(a)(2). Ms. Wallace had no obligation to appear for this unauthorized deposition.

The plaintiffs claim that the parties' agreement of June 7, 2022, allows them to depose Ms. Wallace a second time without obtaining the leave of court or stipulation required by Rule 30(a)(2). *See* Mot. to Compel, ECF No. 123, at 3. That is a lie and a misrepresentation of the parties' agreement. Paragraph 4 of the joint agreement says:

> Obtaining this discovery does not prejudice Plaintiffs from later seeking additional discovery or deposing witnesses during the formal discovery phase of this litigation. By entering into this stipulation, the parties do not waive, and expressly reserve, the right to take all discovery to which they are entitled under the Federal Rules of Civil Procedure.

Joint Notice, ECF No. 39, at ¶ 4. There is nothing in this agreement that even remotely implies that the plaintiffs can take repeat depositions of witnesses without a

P.App.288

stipulation or leave of court, or that they can flout the requirements of Rule 30 when scheduling future depositions. On the contrary, the agreement allows discovery only to which the plaintiffs are "entitled under the Federal Rules of Civil Procedure." The Federal Rules of Civil Procedure do not allow second depositions of witnesses absent a stipulation of the parties or leave of court.

For the plaintiffs to be seeking sanctions against the defendants for their own disregard of the rules is beyond the pale. The Court should deny out of hand the motion to compel and motion for sanctions.

Respectfully submitted.

Dwain K. Rogers
Texas Bar No. 00788311
County Attorney

Matthew L. Rienstra
Texas Bar No. 16908020
First Assistant County Attorney

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

Dated: March 29, 2023

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Defendants*

P.App.289

# CERTIFICATE OF SERVICE

I certify that on March 29, 2023, I served this document through CM/ECF upon:

Ellen V. Leonida
Matthew Borden
J. Noah Hagey
Max Bernstein
Ellis E. Herington
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

Ryan A. Botkin
Katherine P. Chiarello
María Amelia Calaf
Kayna Stavast Levy
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Counsel for Plaintiffs*

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**Leila Green Little**, et al.,

                Plaintiffs,

v.

**Llano County**, et al.,

                Defendants.

Case No. 1:22-cv-00424-RP

## RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF JERRY DON MOSS AND MOTION FOR SANCTIONS

The plaintiffs already deposed Jerry Don Moss on June 28, 2022. They cannot depose him a second time without first obtaining leave of court or a stipulation of the parties. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii). The plaintiffs have not even sought, let alone obtained, the required leave or stipulation. Yet they went ahead and noticed Mr. Moss for a second deposition in disregard of Rule 30(a)(2). Mr. Moss had no obligation to appear for this unauthorized deposition.

The plaintiffs do not even cite Rule 30(a)(2) and address the second-deposition point only in a footnote. *See* Mot. to Compel, ECF No. 127, at 2 n.1. In this footnote, the plaintiffs appear to suggest that the parties' agreement of June 7, 2022, allowed them to depose Mr. Moss a second time without obtaining the leave of court or stipulation required by Rule 30(a)(2)—although the plaintiffs never actually come out and say this. *See id*.[1] The agreement of June 7, 2022, says nothing of the sort. Paragraph 4 of the joint agreement says:

---

1. The plaintiffs' circumspect reliance on the joint agreement from June 7, 2022, represents a marked retreat from the stance they took in their motion to compel the deposition of Bonnie Wallace, where they had the temerity to tell this Court that "the parties previously agreed that Defendant Wallace's prior deposition, in

P.App.291

>     Obtaining this discovery does not prejudice Plaintiffs from later seeking
>     additional discovery or deposing witnesses during the formal discovery
>     phase of this litigation. By entering into this stipulation, the parties do
>     not waive, and expressly reserve, the right to take all discovery to which
>     they are entitled under the Federal Rules of Civil Procedure.

Joint Notice, ECF No. 39, at ¶ 4. There is nothing in that statement that even re-motely implies that the plaintiffs can take repeat depositions of witnesses without a stipulation or leave of court, or that they can flout the requirements of Rule 30 when scheduling future depositions. On the contrary, the agreement allows discovery only to which the plaintiffs are "entitled under the Federal Rules of Civil Procedure." The Federal Rules of Civil Procedure do not allow second depositions of witnesses absent a stipulation of the parties or leave of court.

For the plaintiffs to be seeking sanctions against the defendants for their own disregard of the rules is beyond the pale. The Court should deny out of hand the motion to compel and motion for sanctions.

Respectfully submitted.

DWAIN K. ROGERS
Texas Bar No. 00788311
County Attorney

MATTHEW L. RIENSTRA
Texas Bar No. 16908020
First Assistant County Attorney

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

---

the expedited discovery phase of this proceeding, would not prejudice Plaintiffs' ability to take her deposition for a second time during the formal discovery phase." Mot. to Compel, ECF No. 123, at 3. The plaintiffs make no such asser-tion in this go-around, but merely quote the language to which the parties agreed.

dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

Dated: March 30, 2023                    *Counsel for Defendants*

P.App.293

## CERTIFICATE OF SERVICE

I certify that on March 30, 2023, I served this document through CM/ECF upon:

ELLEN V. LEONIDA
MATTHEW BORDEN
J. NOAH HAGEY
MAX BERNSTEIN
ELLIS E. HERINGTON
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

RYAN A. BOTKIN
KATHERINE P. CHIARELLO
MARÍA AMELIA CALAF
KAYNA STAVAST LEVY
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Counsel for Plaintiffs*

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Defendants*

P.App.294

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| **Leila Green Little**, et al., | |
| Plaintiffs, | |
| v. | Case No. 1:22-cv-00424-RP |
| **Llano County**, et al., | |
| Defendants. | |

## NOTICE OF APPEAL

Defendants Llano County, Ron Cunningham, Jerry Don Moss, Peter Jones, Mike Sandoval, Linda Raschke, Amber Milum, Bonnie Wallace, Rochelle Wells, Rhonda Schneider, and Gay Baskin appeal to the United States Court of Appeals for the Fifth Circuit from the order granting in part the plaintiffs' motion for preliminary injunction entered on March 30, 2023 (ECF No. 133).

Respectfully submitted.

 /s/ Jonathan F. Mitchell 

| | |
|---|---|
| Dwain K. Rogers | Jonathan F. Mitchell |
| Texas Bar No. 00788311 | Texas Bar No. 24075463 |
| County Attorney | Mitchell Law PLLC |
| | 111 Congress Avenue, Suite 400 |
| Matthew L. Rienstra | Austin, Texas 78701 |
| Texas Bar No. 16908020 | (512) 686-3940 (phone) |
| First Assistant County Attorney | (512) 686-3941 (fax) |
| | jonathan@mitchell.law |
| Llano County Attorney's Office | |
| Llano County Courthouse | |
| 801 Ford Street | |
| Llano, Texas 78643 | |
| (325) 247-7733 | |
| dwain.rogers@co.llano.tx.us | |
| matt.rienstra@co.llano.tx.us | |

Dated: March 30, 2023                    *Counsel for Defendants*

P.App.295

## CERTIFICATE OF SERVICE

I certify that on March 30, 2023, I served this document through CM/ECF

upon:

ELLEN V. LEONIDA
MATTHEW BORDEN
J. NOAH HAGEY
MAX BERNSTEIN
ELLIS E. HERINGTON
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, California 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

RYAN A. BOTKIN
KATHERINE P. CHIARELLO
MARÍA AMELIA CALAF
KAYNA STAVAST LEVY
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Counsel for Plaintiffs*

         /s/ Jonathan F. Mitchell
         JONATHAN F. MITCHELL
         *Counsel for Defendants*

P.App.296

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**OPPOSED MOTION TO EXTEND DISCOVERY AND**
**<u>MODIFY THE AGREED SCHEDULING ORDER</u>**

Plaintiffs Leila Green Little, Jeanne Puryear, Diane Moster, Rebecca Jones, Richard Day, Cynthia Waring, and Kathy Kennedy (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby move this Court for an order pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Western District of Texas to extend all discovery deadlines for this litigation to May 19, 2023 and to modify the Agreed Scheduling Order (ECF No. 56) accordingly. Fact discovery is currently set to close March 31, 2023. This Motion is opposed.

## **INTRODUCTION**

Since May 2022, Plaintiffs have diligently sought discovery from Defendants and third parties with personal knowledge of Defendants' decision to remove books from the Llano County Library System to, as the Court recently ruled, "prevent access to viewpoints and content to which they objected" in violation of Plaintiffs' First and Fourteenth Amendment rights. (Order re Mot. Prelim. Inj., ECF No. 133 at 15.) Defendants know that discovery of their written and oral communications will further prove their Constitutional violations. To thwart the truth-finding process, they have consistently delayed, refused, and obstructed disclosure—withholding responsive documents for months, failing to respond to discovery requests, asserting baseless privilege claims, instructing witnesses not to answer at depositions, and unilaterally refusing to appear for timely noticed depositions.

To police Defendants' misconduct, Plaintiffs diligently met and conferred with Defendants, and when that failed, timely filed five motions to compel, four of which are now pending before Magistrate Judge Mark Lane. On March 29, 2023, the Court granted Plaintiffs leave to take nine additional depositions. (ECF No. 128.) Plaintiffs were unable to complete fact discovery and depositions by the current March 31 deadline because of Defendants' misconduct.

This is an important case. It strikes at the heart of citizens' Free Speech Rights and the continuing vitality of our public libraries as places of discovery and wonder. The information Defendants have withheld, including contemporaneous communications among Defendants and their allies regarding the decision to remove books from the library, goes to the key inquiry in book removal cases, "whether the government's 'substantial motivation' was to deny library users access to ideas with which [the government] disagreed." (ECF No. 133 at 14 (citation omitted).) Defendants' misconduct has delayed disclosure of this information. Good cause exists to briefly extend the discovery deadline from March 31, 2023 to May 19, 2023, to permit the Court to rule on the pending discovery motions and provide Plaintiffs with sufficient time to obtain the discovery to which they are entitled to prepare this case for trial in October 2023. Defendants, whose own conduct has caused the delay, will suffer no prejudice as the requested extension will not disturb the trial date or any other deadlines. Accordingly, the Court should extend the discovery deadline to May 19, 2023, so that this important matter may be tried on a full factual record.

## CERTIFICATE OF CONFERENCE

Counsel for the parties have conferred and engaged in a good faith attempt to resolve this matter by agreement. Those efforts have been unsuccessful, thus necessitating this Motion. Plaintiffs' position is that the fact discovery deadline in the Agreed Scheduling Order should be extended from March 31, 2023 to May 19, 2023 to allow the parties time to produce all responsive documents and complete depositions. All other deadlines in the Agreed Scheduling Order would remain the same. By email from Defendants' counsel on March 16, 2023, Defendants refused to agree to any extension of discovery deadlines in this case. (Herington Decl. Ex. 1.)

# BACKGROUND

### A.    The Agreed Scheduling Order

On August 2, 2022, the Court entered the Agreed Scheduling Order, which set March 31,

2023 as the deadline to conclude fact discovery, but expressly permitted the parties to "request

that this Court extend" that deadline. (ECF No. 56 ¶¶ 6, 13.)

### B.    Plaintiffs Diligently Seek Document Discovery; Defendants Withhold Responsive Documents; Plaintiffs' Timely Motions to Compel Are Pending

Plaintiffs have diligently pursued discovery in this case, but have been thwarted by

Defendants' delay tactics, which have made this Motion necessary.

**Plaintiffs' First and Second Sets of Discovery Requests**. On May 11, 2022, Plaintiffs

served Requests for Admission (Set One), Requests for Production of Documents (Set One) and

Interrogatories (Set One) on Defendants Llano County, Amber Milum, Bonnie Wallace, and

Jerry Don Moss. (ECF Nos. 23-1, 23-2, 23-3.) Defendants served responses and objections on

June 22, 2022. (ECF No. 114-1, Ex. 2.) That same day, Defendants purportedly produced

documents in their possession responsive to RFPs Set One. However, Defendants subsequently

admitted that they had not made any effort to search for documents or communications in

response to RFPs Set One. Instead, what they produced were documents previously gathered

before this litigation started. And the few documents that Defendants did produce did not include

email attachments or metadata, despite their agreement to produce both. (*Id.* ¶¶ 5, 9, 11, 15, 17.)

On September 14, 2022, Plaintiffs served the following discovery requests:

- RFAs (Set Two) to Defendant Llano County;
- RFPs (Set Two) to Defendants Llano County, Milum, Wallace, and Moss;
- Interrogatories (Set Two) to Defendants Llano County, Wallace, and Moss;
- RFPs (Set One) to Defendants Baskin, Raschke, Sandoval, Jones, Schneider, Wells, and Cunningham;
- Interrogatories (Set One) to Defendants Baskin, Raschke, Sandoval, Jones, Schneider, Wells, and Cunningham.

(*Id.* ¶ 6.) Defendants Milum, Wallace, Moss, Baskin, Raschke, Sandoval, Jones, Schneider, Wells, and Cunningham never served (and still have not served) responses and objections to these RFPs. (*Id.* ¶ 24.) Defendant Llano County served responses and objections to these requests on October 14, 2022. As with its responses to the first set of discovery served May 2022, Defendant Llano County claimed to produce all responsive documents in its possession, but later admitted that it had not conducted a comprehensive search of Llano County's ESI for the requested discovery and had instead obtained only piecemeal document collections from certain individuals and ESI sources. (*Id.* ¶¶ 15, 17, 20, 23.) Defendants also admitted that they entirely failed to search Llano County's email system for responsive communications. (*Id.* ¶¶ 11, 15, 17.) What Defendants did produce remained deficient under the parties' ESI-related agreement. (*Id.* ¶¶ 11, 17.)

**Plaintiffs' First Motion to Compel**. On February 6, 2023, after meet and confer efforts failed, Plaintiffs filed a Motion to Compel relating to Defendants' deficient document production (the "First Motion to Compel," ECF No. 92 (corrected version at ECF No. 114)). These Motions were referred to Magistrate Judge Lane on March 29, 2023 and remain pending.

**Plaintiffs' Omnibus Document Requests**. On January 20, 2023, Plaintiffs served their Omnibus Requests for Production of Documents on all Defendants regarding the Llano County Library System's so-called "in-house checkout system," which contains books donated by Defendants' counsel Jonathan Mitchell. Defendants served responses and objections on February 20, 2023, in which they asserted privilege over a number of responsive documents and refused to produce them.

**Plaintiffs' Second Motion to Compel**. On March 22, 2023, Plaintiffs filed a Motion to Compel production of these documents (the "Second Motion to Compel," ECF No. 124). This Motion was referred to Magistrate Judge Lane on March 29, 2023 and remains pending.

**Plaintiffs' Additional Discovery Requests**. On March 1, 2023, Plaintiffs served the following discovery requests:

- Fourth Set of Requests for Production of Documents (directed to Defendants Llano County and Milum);
- Second Set of Interrogatories (directed to Defendant Milum);
- Third Set of Interrogatories (directed to Defendant Llano County).

As of this filing, Defendant Amber Milum served responses to Plaintiffs' Second Set of Interrogatories and Defendant Llano County served responses to Plaintiffs' Third Set of Interrogatories. Otherwise, Defendants have yet to serve responses or produce responsive documents to these requests.

On March 7, 2023, Plaintiffs served their First Set of Requests for Inspection of Tangible Things on Defendant Llano County. Defendant Llano County has yet to serve responses or produce the requested tangible things for Plaintiffs' inspection.

### C. Plaintiffs Timely Noticed Depositions, Which Defendants Failed to Object to and Refused to Attend

On March 1, 2023, Plaintiffs served deposition notices on the following Defendants:

- Ron Cunningham, deposition noticed for March 20, 2023;
- Linda Raschke, deposition noticed for March 21, 2023;
- Bonnie Wallace, deposition noticed for March 22, 2023;
- Gay Baskin, deposition noticed for March 23, 2023;
- Rhonda Schneider, deposition noticed for March 24, 2023;
- Jerry Don Moss, deposition noticed for March 27, 2023;
- Mike Sandoval, deposition noticed for March 28, 2023;
- Amber Milum, deposition noticed for March 30, 2023;
- Peter Jones, deposition noticed for March 31, 2023.

Plaintiffs took the depositions as noticed of Defendants Cunningham, Raschke, Baskin, Schneider, Sandoval, and Jones. Without serving any response or objections to the deposition notices, Defendants unilaterally refused to produce Defendants Wallace, Moss, and Milum. Plaintiffs moved to compel these depositions, and moved for sanctions for Defendants' refusal to produce these witnesses. (ECF Nos. 123, 127, 135.) These Motions[1] were referred to Magistrate Judge Lane on March 29, 2023 and remain pending.

### D.   Outstanding Third-Party Discovery to Witnesses Under Defendants' Control

Plaintiffs also timely served third-party subpoenas under Rule 45 on the following individuals, seeking deposition testimony from all recipients, and production of documents by all recipients except Jonathan Mitchell:

- Jonathan Mitchell, attorney for Defendants and "anonymous donor" of Banned Books to Llano County Library System, deposition noticed for March 31, 2023;
- Cindy Travers, non-Defendant member of the Library Advisory Board, deposition noticed for March 22, 2023;
- Nancy Miller, non-Defendant member of the Library Advisory Board, deposition noticed for March 24, 2023;
- Sharon Maki, non-Defendant member of the Library Advisory Board, deposition noticed for March 27, 2023;
- Louann Raley, non-Defendant member of the Library Advisory Board, deposition noticed for March 28, 2023;
- Anita Hilton, non-Defendant member of the Library Advisory Board, deposition noticed for March 29, 2023.

Plaintiffs took the depositions of Mitchell and Travers. Travers, Maki, Raley, and Hilton produced responsive documents; Miller did not do so. Plaintiffs temporarily suspended the depositions of the remaining witnesses for their failure to produce responsive documents. As to the remaining witnesses, Plaintiffs moved for leave to exceed the ten-deposition limit set forth under Federal Rule of Civil Procedure 30(a)(2)(A)(i) (the "Motion for Leave," ECF No. 122)).

---

[1] With the exception of Plaintiffs' Motion to Compel Defendant Milum's deposition, which was filed on March 31, 2023 and has not yet been referred to Magistrate Judge Lane.

### E. The Court Grants Plaintiffs Leave to Take Additional Depositions and Refers the Pending Motions to Compel to Magistrate Judge Lane

On March 29, 2023, two days before the current discovery deadline, the Court granted Plaintiffs Motion for Leave, expressly granting Plaintiffs permission to take the depositions of all proposed deponents identified in the Motion for Leave. (ECF No. 128.) That same day, the Court referred four of Plaintiffs' discovery motions to Magistrate Judge Mark Lane: the First Motion to Compel, the Second Motion to Compel, and the motions to compel the deposition testimony of Defendants Wallace and Moss. (Mar. 29, 2023 Dkt. Entry (referring ECF Nos. 92, 114, 123, 124, and 127 to Magistrate Judge Lane for resolution).)

## <u>ARGUMENT</u>

## I. LEGAL STANDARD

A scheduling order may be modified for good cause and with the Court's consent. Fed. R. Civ. P. 16(b)(4). The "good cause" standard focuses on the diligence of the party seeking to modify the scheduling order. *Howard v. Lowe's Home Centers, LLC*, No. 1:16-CV-1279-RP, 2017 WL 10729621, at *1 (W.D. Tex. Oct. 19, 2017) (granting Defendant's motion to modify the scheduling order). In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: "(1) the party's explanation; (2) the importance of the requested relief; (3) potential prejudice in granting the relief; and (4) the availability of a continuance to cure such prejudice." *Howard*, 2017 WL 10729621, at *1 (citing *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007)). "No single factor is dispositive, nor must all the factors be present." *Vazquez v. State Farm Lloyds*, No. EP-17-CV-00330-DCG, 2019 WL 2564573, at *2 (W.D. Tex. Mar. 13, 2019) (quoting *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 869 (5th Cir. 2010)). These factors favor an extension here.

P.App.304

## II.    PLAINTIFFS HAVE DILIGENTLY PURSUED DISCOVERY IN THIS CASE

As described above, Plaintiffs have acted diligently to obtain discovery from Defendants and third parties in this litigation. Plaintiffs have propounded thirteen sets of written discovery requests, all with response deadlines prior to the close of fact discovery on March 31. Upon receiving insufficient responses and objections to those requests from Defendants, Plaintiffs promptly sought to meet and confer with Defendants regarding the same. When meet and confer efforts failed to resolve the outstanding issues, Plaintiffs diligently sought relief from the Court by filing motions to compel. (ECF Nos. 92, 114, 124.) These motions remain pending, and were recently referred to Magistrate Judge Lane for resolution. Plaintiffs have been nothing but diligent in seeking written discovery and document production from Defendants, and have been stymied by Defendants' repeated misconduct. *See infra*, Section III.

Plaintiffs also timely noticed—and were prepared to take—every relevant deposition prior to the close of fact discovery on March 31. While Plaintiffs completed a number of those depositions, others were thwarted by Defendants' (and third parties under Defendants' control—many of whom were represented by Defendants' counsel) refusal to produce documents or to appear for deposition. Given the number of parties (eleven Defendants) and third-party witnesses, Plaintiffs requested that Defendants stipulate that the parties may take more than ten depositions. When Defendants refused, Plaintiffs moved for leave and the Court recently granted that Motion, which would have enabled Plaintiffs to complete all nineteen proposed depositions prior to the fact discovery deadline. (ECF No. 128.) Had Defendants not improperly withheld certain witnesses' deposition testimony, Plaintiffs would have completed these depositions timely. Thus, Plaintiffs' inability to complete discovery within the deadline set by the Agreed Scheduling Order is not due to any lack of diligence by Plaintiffs. *See infra*, Section III.

P.App.305

## III. EXTENDING THE DISCOVERY DEADLINE IS NECESSARY DUE TO DEFENDANTS' DISCOVERY MISCONDUCT

As a result of Defendants' discovery misconduct, Plaintiffs have been forced to file five separate discovery motions; four have already been referred to Magistrate Judge Lane for adjudication. At minimum, the discovery deadline should be extended to permit the Court to rule on those motions and provide sufficient time for Defendants to produce additional materials and Plaintiffs time to review those materials and complete the depositions that the Court has already ordered are permitted, and, if necessary, reopen depositions for which Plaintiffs did not have key documents. *Amin-Akbari v. City of Austin, Tex.*, No. A–13–CV–472–DAE, 2014 WL 4657491, at *5 (W.D. Tex. Sept. 16, 2014) (granting motion to extend discovery deadline "to the extent necessitated by" court's order granting motions to compel document production and deposition).

As set forth in the Status Update and Request for Status Conference filed herewith, Defendants (i) delayed producing crucial discovery for months, in some instances producing text messages of deponents during the deponent's testimony, (ii) failed to respond to numerous discovery requests at all, (iii) continue to withhold categories of ESI and documents (*e.g.*, the Yahoo! email accounts used by Llano County librarians) and (iv) unilaterally refused to produce witnesses for deposition after failing to object to their deposition notices. Courts have found that similar delays in document production warranted extending the discovery deadline. *E.g.*, *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *4 (W.D. Tex. Dec. 9, 2022) ("[T]he Defendant Intervenors' months-long delay in document production . . . constitute[s] good cause to extend the deadline for primary discovery by and upon the Defendant Intervenors, which will not prejudice any party, nor delay the proceedings.").

The Court has already ruled that Plaintiffs are entitled to take additional depositions. There is good cause to extend the discovery deadline to allow the Court to rule on the pending

motions to compel so that Plaintiffs have the written discovery and the time they need to efficiently complete those depositions and to prepare this case for trial.

## IV.    DEFENDANTS WILL NOT BE PREJUDICED BY THE PROPOSED EXTENSION

Plaintiffs' requested brief extension of the discovery deadline will not prejudice Defendants. Plaintiffs do not seek to extend any of the other deadlines in the Scheduling Order and there is ample time in the schedule to accommodate a brief extension without moving the October 16, 2023 trial date. *E.g.*, *Gray-Standberry v. Ashley Distrib. Servs., Ltd.*, No. 6:20-CV-00638-ADA-JCM, 2021 WL 2792984, at *3 (W.D. Tex. Mar. 3, 2021) (granting motion to extend expert discovery deadline by 60 days where extension would not impact trial date).

Moreover, as noted above, this Court has already referred certain pending discovery motions filed by Plaintiffs to Magistrate Judge Lane and granted Plaintiffs leave to take additional depositions. "When the parties will already be engaging in significant post-deadline discovery, it is difficult to say that any great prejudice would take place" by granting a limited extension of the discovery deadline. *Nat'l Western Life Ins. Co. v. Western Nat'l Life Ins. Co.*, No. A–09–CA–711 LY, 2010 WL 4809102, at *2 (W.D. Tex. Nov. 17, 2010) (extending discovery deadline by approximately one month).[2]

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' request to extend the fact discovery deadline to May 19, 2023 and modify the Agreed Scheduling Order accordingly.

---

[2] A brief extension would also permit Defendants the opportunity to pursue their own discovery requests, which the parties have not yet conferred on. *E.g.*, *One Wellington Pl. of Beaumont Owners Ass'n, Inc. v. Acceptance Indem. Ins. Co.*, No. 1:19-CV-00317, 2020 WL 13538626, at *3 (E.D. Tex. Aug. 11, 2020) ("Nevertheless, the Plaintiff will not be prejudiced by continuing the trial setting, discovery deadline, and dispositive motions deadline. Both parties can benefit from additional discovery[.]").

Dated: March 31, 2023

Respectfully submitted,

/s/ *Ellen Leonida*

Ellen V. Leonida (CA Bar No. 184194)
Matthew Borden (CA Bar No. 214323)
J. Noah Hagey (CA Bar No. 262331)
Max Bernstein (NY Bar No. 5609037)
Ellis E. Herington (CA Bar No. 343085)
**BraunHagey & Borden LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel: 415-599-0210
Fax: 415-276-1808
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

Ryan A. Botkin (TX Bar No. 00793366)
Katherine P. Chiarello (TX Bar No. 24006994)
María Amelia Calaf (TX Bar No. 24081915)
Kayna Stavast Levy (TX Bar No. 24079388)
**Wittliff | Cutter PLLC**
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2023 a true and correct copy of the foregoing

document was served on all counsel of record who have appeared in this case using the Court's

CM/ECF system as a Filing User.


*/s/ Ellen Leonida*
Ellen V. Leonida

P.App.309

**INALIN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Civil Action No. 1:22-cv-00424-RP |
| Llano County, *et al.*, | § § | |
| Defendants. | § § § | |

**DECLARATION OF ELLIS HERINGTON IN SUPPORT OF PLAINTIFFS' MOTION
TO EXTEND DISCOVERY AND MODIFY THE AGREED SCHEDULING ORDER**

I, Ellis E. Herington, declare:

1.      I am an attorney at BraunHagey & Borden LLP and counsel of record for Plaintiffs in the above-captioned matter. I make this declaration based on personal knowledge and if called upon to testify, I could and would testify competently to the facts stated herein.

2.      Attached as **Exhibit 1** is a true and correct copy of an email thread including an email that I sent to Jonathan Mitchell on March 15, 2023 and an email I received from Jonathan Mitchell on March 16, 2023.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: March 31, 2023                  By: _____
                                                                 Ellis E. Herington

# EXHIBIT 1

P.App.311

| From: | Jonathan Mitchell |
| --- | --- |
| To: | Ellis Herington |
| Cc: | Matt Rienstra; Dwain K. Rogers; Katherine Chiarello; Maria Calaf; Ryan Botkin; Kayna Levy; Max Bernstein; Shannon Morrissey; Ellen Leonida; Andrew Levine; Gemma Null |
| Subject: | Re: Little v. Llano County - Discovery Deadline |
| Date: | Thursday, March 16, 2023 2:30:07 AM |

**\*\*\* EXTERNAL MESSAGE \*\*\***

No.

On Mar 15, 2023, at 3:14 PM, Ellis Herington <herington@braunhagey.com> wrote:

Hi Jonathan,

I write to ask if you would be willing to stipulate to an extension of the discovery deadline through April 28 (representing a 4-week extension of the discovery period). We believe this would be beneficial to both Plaintiffs and Defendants in completing production and review of documents, including documents we have requested from the third-party witnesses who have been subpoenaed pursuant to Rule 45, and extending the period for us both to complete the numerous depositions that have been noticed thus far. We further believe this would be appropriate given the large document productions we have recently received from certain Defendants, as well as the motion to compel that is still pending before Judge Pitman.

Please let us know whether you will or will not agree to this stipulation. If you agree, we will prepare a form of stipulation and send it to you for review and signature.

Thanks,
Ellis

Ellis E. Herington
B R A U N H A G E Y & B O R D E N LLP
Direct: (415) 491-7025 ext. 185
Cell: (415) 672-0066

**San Francisco**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel. (415) 599-0209
Fax. (415) 276-1808

**New York**

P.App.312

118 W 22nd Street, 12th Floor
New York, NY 10011
Tel. (646) 829-9403
Fax. (646) 403-4089

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.


-----------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law
papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842


**CONFIDENTIALITY NOTICE:**
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

**PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK PRODUCT**

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| | § | **[PROPOSED] ORDER GRANTING** |
| v. | § | **PLAINTIFFS' OPPOSED MOTION TO** |
| | § | **EXTEND DISCOVERY AND MODIFY** |
| Llano County, *et al.*, | § | **THE AGREED SCHEDULING ORDER** |
| | § | |
| Defendants. | § | |
| | § | |

The Court, having reviewed all materials submitted in support of Plaintiffs' Opposed Motion to Extend Discovery and Modify the Agreed Scheduling Order ("Motion"), and all other pleadings and arguments by counsel properly before the Court, and after careful consideration, hereby **GRANTS** Plaintiffs' Motion, and **ORDERS**:

1.      The fact discovery deadline in this case, currently set for March 31, 2023, is extended to May 19, 2023.

2.      Paragraph 6 of the Agreed Scheduling Order is amended to read: "The parties shall complete all fact discovery on or before May 19, 2023."

**IT IS SO ORDERED**.

Dated: _____        _____

Hon. Robert Pitman
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION TO COMPEL AND FOR SANCTIONS

Plaintiffs respectfully submit this Reply in further support of their Motion to Compel and for Sanctions concerning Defendant Bonnie Wallace's failure to appear for her deposition as noticed (the "Motion," ECF No. 123), and in response to Defendants' Response thereto (the "Opposition," ECF No. 129).

## ARGUMENT

Defendants' position that Defendant Wallace "had no obligation to appear"[1] for her deposition, noticed for March 22, 2023, is plainly incorrect in light of the parties' prior agreement as memorialized in their Joint Notice Regarding Plaintiffs' Motion for Expedited Discovery (the "Joint Notice," ECF No. 39). In the Joint Notice, the parties expressly agreed that discovery exchanged during the expedited discovery phase of this litigation would "not prejudice

---

[1] Defendants' use of this phrase mirrors their claim in an email sent on March 22, 2023, after Defendant Wallace's deposition was scheduled to start. (Ex. 2 to Decl. of Ellis Herington in Supp. of Mot., ECF No. 123-3.) Whether or not Defendants' believed certain witnesses were "under no obligation to appear" (*id.*), they were not excused from serving objections to those witnesses' deposition notices, moving to quash their depositions, moving for protective orders, or otherwise following a valid procedural path to obtain relief from the deposition notice. Simply failing to appear is not proper, and the Court should not condone it here.

Plaintiffs from later seeking additional discovery or deposing witnesses during the formal discovery phase of this litigation." (*Id.* at 2.) The parties also specifically preserved "the right to take all discovery to which they are entitled under the Federal Rules of Civil Procedure." (*Id.*) There is no question that Plaintiffs would, in the normal course, be entitled to depose a named defendant during the formal discovery phase of litigation; the right to take such a deposition is precisely what was preserved in the Joint Notice, with any prior depositions "not prejudic[ing]" this later discovery. (*Id.*) Defendants' newly adopted interpretation of this provision is merely the latest example of their pattern of bad faith litigation tactics and discovery misconduct. It is also unpersuasive and illogical considering the purpose and nature of expedited discovery in cases like this one. The depositions taken during the expedited discovery phase of this litigation, including Defendant Wallace's first deposition, were limited in time and were taken after Defendants produced what they characterized as "'limited' discovery for use by Plaintiffs[] in their Application for Preliminary Injunction," (ECF No. 113-1 ¶ 9), and before they made their substantial productions in this case.

Moreover, the Court specifically granted leave to take Defendant Wallace's deposition "as previously noticed" in its Order (ECF No. 128, at 1) granting Plaintiffs' Motion for Leave to Exceed Ten-Deposition Limit (the "Motion for Leave," ECF No. 122). Any suggestion Defendants may make that Plaintiffs were obligated to separately seek leave to take Defendant Wallace's deposition under Federal Rule of Civil Procedure 30(a)(2)(A)(ii), when *leave had already been granted* to take her deposition specifically, is absurd and would serve only to impose unnecessary costs and inefficiencies on the parties and this Court. The repeat nature of Defendant Wallace's deposition was described in Plaintiffs' Motion for Leave and thus apparent to and fairly before the Court. (Mot. for Leave at 3 & n.1.) Plaintiffs have already obtained leave

to take Defendant Wallace's deposition for a second time, and need not now separately seek

leave to take it under an alternative prong of Rule 30(a)(2).

<u>**CONCLUSION**</u>

For the foregoing reasons and those discussed in Plaintiffs' Motion, Plaintiffs respectfully

request that the Court (1) grant the Motion, (2) order Defendants to produce Defendant Wallace

for her deposition within ten days of the date of the order granting the Motion, and (3) order

Defendant Wallace and her counsel to pay the reasonable expenses, including attorney's fees,

caused by Defendant Wallace's failure to attend her deposition.


Dated: April 5, 2023                              Respectfully submitted,

                                                  /s/ *Ellen Leonida*
                                                  Ellen V. Leonida (CA Bar No. 184194)
                                                  Matthew Borden (CA Bar No. 214323)
                                                  J. Noah Hagey (CA Bar No. 262331)
                                                  Max Bernstein (NY Bar No. 5609037)
                                                  Ellis E. Herington (CA Bar No. 343085)
                                                  **BraunHagey & Borden LLP**
                                                  351 California Street, 10th Floor
                                                  San Francisco, CA 94104
                                                  Tel: 415-599-0210
                                                  Fax: 415-276-1808
                                                  leonida@braunhagey.com
                                                  borden@braunhagey.com
                                                  hagey@braunhagey.com
                                                  bernstein@braunhagey.com
                                                  herington@braunhagey.com

                                                  Ryan A. Botkin (TX Bar No. 00793366)
                                                  Katherine P. Chiarello (TX Bar No. 24006994)
                                                  María Amelia Calaf (TX Bar No. 24081915)
                                                  Kayna Stavast Levy (TX Bar No. 24079388)
                                                  **Wittliff | Cutter PLLC**
                                                  1209 Nueces Street
                                                  Austin, Texas 78701
                                                  Tel: 512-960-4730
                                                  Fax: 512-960-4869
                                                  ryan@wittliffcutter.com

katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

P.App.318

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 5, 2023, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

*/s/ Ellen Leonida*
Ellen V. Leonida

P.App.319

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| Leila Green Little, *et al.*, | § |
| | § |
| Plaintiffs, | § |
| | § |
| v. | §    Civil Action No. 1:22-cv-00424-RP |
| | § |
| Llano County, *et al.*, | § |
| | § |
| Defendants. | § |
| | § |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION TO COMPEL AND FOR SANCTIONS

Plaintiffs respectfully submit this Reply in further support of their Motion to Compel and

for Sanctions concerning Defendant Jerry Don Moss's failure to appear for his deposition as

noticed (the "Motion," ECF No. 127), and in response to Defendants' Response thereto (the

"Opposition," ECF No. 132).

## ARGUMENT

Defendants' position that Defendant Moss "had no obligation to appear"[1] for his

deposition, noticed for March 27, 2023, is plainly incorrect in light of the parties' prior

agreement as memorialized in their Joint Notice Regarding Plaintiffs' Motion for Expedited

Discovery (the "Joint Notice," ECF No. 39). In the Joint Notice, the parties expressly agreed that

discovery exchanged during the expedited discovery phase of this litigation would "not prejudice

---

[1] Defendants' use of this phrase mirrors their claim in an email sent on March 22, 2023. (Ex. 2 to Decl. of Ellis Herington in Supp. of Mot., ECF No. 123-3.) Whether or not Defendants' believed certain witnesses were "under no obligation to appear" (*id.*), they were not excused from serving objections to those witnesses' deposition notices, moving to quash their depositions, moving for protective orders, or otherwise following a valid procedural path to obtain relief from the deposition notice. Simply failing to appear is not proper, and the Court should not condone it here.

Plaintiffs from later seeking additional discovery or deposing witnesses during the formal discovery phase of this litigation." (*Id.* at 2.) The parties also specifically preserved "the right to take all discovery to which they are entitled under the Federal Rules of Civil Procedure." (*Id.*) There is no question that Plaintiffs would, in the normal course, be entitled to depose a named defendant during the formal discovery phase of litigation; the right to take such a deposition is precisely what was preserved in the Joint Notice, with any prior depositions "not prejudic[ing]" this later discovery. (*Id.*) Defendants' newly adopted interpretation of this provision is merely the latest example of their pattern of bad faith litigation tactics and discovery misconduct. It is also unpersuasive and illogical considering the purpose and nature of expedited discovery in cases like this one. The depositions taken during the expedited discovery phase of this litigation, including Defendant Moss's first deposition, were limited in time and were taken after Defendants produced what they characterized as "'limited' discovery for use by Plaintiffs[] in their Application for Preliminary Injunction," (ECF No. 113-1 ¶ 9), and before they made their substantial productions in this case.

Moreover, the Court specifically granted leave to take Defendant Moss's deposition "as previously noticed" in its Order (ECF No. 128, at 1) granting Plaintiffs' Motion for Leave to Exceed Ten-Deposition Limit (the "Motion for Leave," ECF No. 122). Any suggestion Defendants may make that Plaintiffs were obligated to separately seek leave to take Defendant Moss's deposition under Federal Rule of Civil Procedure 30(a)(2)(A)(ii), when *leave had already been granted* to take his deposition specifically, is absurd and would serve only to impose unnecessary costs and inefficiencies on the parties and this Court. The repeat nature of Defendant Moss's deposition was described in Plaintiffs' Motion for Leave and thus apparent to and fairly before the Court. (Mot. for Leave at 3 & n.1.) Plaintiffs have already obtained leave to

take Defendant Moss's deposition for a second time, and need not now separately seek leave to take it under an alternative prong of Rule 30(a)(2).

## **CONCLUSION**

For the foregoing reasons and those discussed in Plaintiffs' Motion, Plaintiffs respectfully request that the Court (1) grant the Motion, (2) order Defendants to produce Defendant Moss for his deposition within ten days of the date of the order granting the Motion, and (3) order Defendant Moss and his counsel to pay the reasonable expenses, including attorney's fees, caused by Defendant Moss's failure to attend his deposition.

Dated: April 6, 2023

Respectfully submitted,

/s/ *Ellen Leonida*
Ellen V. Leonida (CA Bar No. 184194)
Matthew Borden (CA Bar No. 214323)
J. Noah Hagey (CA Bar No. 262331)
Max Bernstein (NY Bar No. 5609037)
Ellis E. Herington (CA Bar No. 343085)
**BraunHagey & Borden LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel: 415-599-0210
Fax: 415-276-1808
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

Ryan A. Botkin (TX Bar No. 00793366)
Katherine P. Chiarello (TX Bar No. 24006994)
María Amelia Calaf (TX Bar No. 24081915)
Kayna Stavast Levy (TX Bar No. 24079388)
**Wittliff | Cutter PLLC**
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
ryan@wittliffcutter.com

P.App.322

katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

P.App.323

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2023, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

*/s/ Ellen Leonida*
Ellen V. Leonida

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **Leila Green Little**, et al.,<br><br>                Plaintiffs,<br><br>v.<br><br>**Llano County**, et al.,<br><br>                Defendants. | Case No. 1:22-cv-00424-RP |

**OPPOSED MOTION FOR STAY PENDING APPEAL**

P.App.325

# TABLE OF CONTENTS

Table of contents ............................................................................... i

Table of authorities ........................................................................... ii

   I.  The defendants are likely to succeed on the merits of their appeal ............... 1

      A.  The in-house checkout system does not and cannot violate the plaintiffs' First Amendment right to access information ........................ 2

      B.  The plaintiffs failed to establish "irreparable harm" when each of the 17 books remains available for them to check out through the Llano Library's in-house checkout system ....................................... 2

      C.  A public library's weeding decisions are subject only to rational-basis review, and a public librarian must consider the content and viewpoints expressed in books when making weeding decisions ............. 3

      D.  The plaintiffs failed to make a "clear showing" that Amber Milum engaged in viewpoint or content discrimination when weeding the 17 disputed books ............................................................ 6

      E.  The preliminary injunction is overbroad ................................ 7

   II.  The defendants will suffer irreparable injury absent a stay ........................... 8

   III. A stay will not harm the plaintiffs or any other party interested in this litigation ................................................................................ 9

   IV. The public interest favors a stay ................................................ 9

Conclusion ...................................................................................... 10

Certificate of Conference ............................................................... 11

Certificate of service ...................................................................... 12

P.App.326

# TABLE OF AUTHORITIES

## Cases

*Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017) ...................................................... 8

*Board of Education v. Pico*, 457 U.S. 853 (1982) ............................................... 4, 5

*Campbell v. St. Tammany Parish School Board*,
   64 F.3d 184 (5th Cir. 1995) ............................................................................. 4

*Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005) ...................................................... 5

*CK-W by and through TK v. Wentzville R-IV School District*,
   --- F. Supp. 3d ----, 2022 WL 3138989, *5 (W.D. Mo.) ................................... 5

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ........................................... 8

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ............................................................. 1

*Jones v. District of Columbia*, 177 F. Supp. 3d 542 (D.D.C. 2016) ........................ 3

*Serra v. U.S. General Sevices Administration*,
   847 F.2d 1045 (2d Cir. 1988) ........................................................................... 5

*United States v. American Library Ass'n Inc.*, 539 U.S. 194 (2003) ....................... 5

*United States v. Students Challenging Regulatory Agency Procedures
   (SCRAP)*, 412 U.S. 669 (1973) ........................................................................ 2

*Virgil v. School Board of Columbia County, Florida*,
   862 F.2d 1517 (11th Cir. 1989) ........................................................................ 5

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) ...................... 2, 3

## Statutes

Fed. R. App. P. 8(a)(1)(A) ....................................................................................... 1

P.App.327

On March 30, 2023, this Court entered a preliminary injunction that compels the defendants to return "all print books that were removed because of their viewpoint or content," including the 17 books at issue in this litigation. *See* Order, ECF No. 125, at 25. The Court's order also enjoins the defendants "from removing any books from the Llano County Library Service's catalog for any reason during the pendency of this action." *See id.* at 26. The defendants have appealed the Court's order and respectfully request a stay pending appeal. *See* Fed. R. App. P. 8(a)(1)(A) (requiring parties seeking a stay pending appeal to first request that relief from the district court).[1]

In deciding whether to stay a preliminary injunction pending appeal, a court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Each of these factors favors a stay.

## I. THE DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL

Although we respect this Court and its decision, we do not believe that the Fifth Circuit is likely to affirm the preliminary-injunction order. The plaintiffs are not suffering any violation of their supposed "right to receive information" under the First Amendment because every one of the 17 disputed books is currently available for the plaintiffs to check out through the Llano Library's in-house checkout system. *See* Stipulation, ECF No. 126, at ¶¶ 3–7. Nor can the plaintiffs make *any* showing of irreparable harm when they can check out each of the 17 disputed books from Llano Library without an injunction from this Court. *See id.* For these and other reasons,

---

1.    We have conferred with the plaintiffs and they oppose this motion.

P.App.328

we respectfully believe that the Court's preliminary-injunction order is unlikely to survive appellate review.

### A. The In-House Checkout System Does Not And Cannot Violate The Plaintiffs' First Amendment Right To Access Information

The plaintiffs' First Amendment claims cannot get off the ground when each of the 17 disputed books is available for them to check out through Llano Library's in-house system. The Court's opinion does not explain how the defendants can be violating the plaintiffs' supposed "right to receive information" when each plaintiff remains able to check out and read every one of the disputed books from Llano Library. The Court correctly held that the defendants have not *mooted* the plaintiffs' First Amendment claims by offering the disputed books through the in-house checkout system, as the plaintiffs remain "injured" by the continued absence of those books from the library shelves. *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) ("[A]n identifiable trifle is enough for standing" (citation and internal quotation marks omitted)).[2] But the plaintiffs *still* must show that their First Amendment rights are being violated before they can obtain a preliminary injunction. And the Court's opinion does not attempt to explain how the in-house checkout system violates the plaintiffs' "right to receive information" under the First Amendment when every one of the disputed books remains available for the plaintiffs to read and check out.

### B. The Plaintiffs Failed To Establish "Irreparable Harm" When Each Of The 17 Books Remains Available For Them To Check Out Through The Llano Library's In-House Checkout System

The plaintiffs must make a "clear showing" that *they* will suffer irreparable harm absent a preliminary injunction. *See Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish . . .

---

2.   We have acknowledged that the defendants did not (and cannot) moot the plaintiffs' First Amendment claims by offering the disputed books

P.App.329

that *he is* likely to suffer irreparable harm in the absence of preliminary relief." (emphasis added)); *Jones v. District of Columbia*, 177 F. Supp. 3d 542, 546 n. 3 (D.D.C. 2016) ("[T]he irreparable harm prong . . . only concerns harm suffered by the party or parties seeking injunctive relief . . . . [A]ny alleged harm to third parties is properly addressed under the public interest prong"). The plaintiffs cannot establish irreparable harm when each of the 17 disputed books remains available for them to check out through the Llano Library's in-house checkout system.

The Court's opinion does not explain how the seven *plaintiffs* will suffer irreparable harm from using the Llano Library's in-house checkout system. The Court notes that *other* library patrons might not be aware of the in-house collection. *See* Order, ECF No. 133, at 23 ("A patron must, notwithstanding the fact that the books' existence is not reflected in the library catalog, know that the books can be requested."). But effects on non-parties are irrelevant to the irreparable-harm inquiry; only harms to the seven named plaintiffs may be considered. *See Winter*, 555 U.S. at 20; *Jones*, 177 F. Supp. 3d at 546 n.3. And each of the seven plaintiffs heard the testimony describing the in-house checkout system at Llano Library and the availability of the 17 disputed books through the in-house collection. *See* Stipulation, ECF No. 126, at ¶¶ 3–7. The plaintiffs cannot possibly suffer "irreparable harm" from a library that offers them the 17 books through an in-house checkout system—especially when the plaintiffs presented no evidence or arguments showing how this arrangement would impose any inconveniences on them.

### C. A Public Library's Weeding Decisions Are Subject Only To Rational-Basis Review, And A Public Librarian Must Consider The Content And Viewpoints Expressed In Books When Making Weeding Decisions

The Court's opinion holds that "viewpoint discrimination" is categorically forbidden in a public library's weeding decisions, and that any content-based weeding decision must satisfy the strict-scrutiny standard. *See* Order, ECF No. 133, at 17

("[T]he First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination."); *id.* at 20 ("Content-based restrictions on speech are presumptively unconstitutional and subject to strict scrutiny."). The Court's stance is unlikely to survive appellate review.

The Court appears to believe that *Board of Education v. Pico*, 457 U.S. 853 (1982), and *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995), prohibit content or viewpoint discrimination in a public library's weeding de-cisions. *See* Order, ECF No. 133, at 17 (citing *Pico* to support its claim that "the First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination."); *id.* at 20 (holding that *Campbell* is incompatible with the defendants' claim that "'content discrimination is permissible and inevitable in library-book selection.'"). Neither *Pico* nor *Campbell* says anything of the sort. Justice Brennan's plurality opinion in *Pico* acknowledges that content discrimination is per-missible and inevitable in library-book selection, and it allows libraries to remove books based on content that is "pervasively vulgar" or that lacks "educational suita-bility." *Pico*, 457 U.S. at 871 (plurality op.). *Campbell* re-affirms the *Pico* plurality's allowance for content-based weeding of books that are "pervasively vulgar" or that lack "educational suitability." *See Campbell*, 64 F.3d at 188–89 ("The Court in its plurality opinion implicitly recognized . . . that an unconstitutional motivation would not be demonstrated if the school officials removed the books from the public school libraries based on a belief that the books were 'pervasively vulgar' or on grounds of 'educational suitability.'"); *see also Pico*, 457 U.S. at 869 (plurality op.) ("[L]ocal school boards have a substantial legitimate role to play in the determination of school library *content*." (emphasis added)); *id.* at 870 (plurality op.) ("Petitioners rightly pos-sess significant discretion to determine the *content* of their school libraries." (emphasis added)); *id.* at 880 (1982) (Blackmun, J., concurring in part and concurring in the judgment) (endorsing specific examples of content and viewpoint discrimination in

P.App.331

library-book selection).[3] The *Pico* plurality opinion says only that school libraries may not weed books "in a narrowly partisan or political manner"[4]—a far cry from a total prohibition on viewpoint or content discrimination.

More importantly, a prohibition on content- or viewpoint-based weeding decisions is incompatible with the Fifth Circuit's binding pronouncement in *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005), which holds that "'[p]ublic library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.'" *Id.* at 614 (quoting *United States v. American Library Ass'n Inc.*, 539 U.S. 194, 205 (2003) (plurality op.). The Court acknowledged this passage but insisted that it applies only to the selection and not the removal of library materials. *See* Order, ECF No. 133, at 13 ("[T]his discretion . . . applies only to materials' selection."). But neither *Chiras* nor the plurality opinion in *American Library* made any distinction between "selection" decisions and removal decisions. And the distinction makes no sense because a public library must enjoy the same latitude in "selecting" new materials that it has in weeding the books that no longer belong in the library's collection—and that must to be removed to create the shelf space needed to accommodate the new arrivals. An outdated book that is no longer accurate should be

---

3. *See Virgil v. School Board of Columbia County, Florida*, 862 F.2d 1517 (11th Cir. 1989) (acknowledging that under Justice Brennan's plurality opinion in *Pico*, the "removal of books from library would be permissible if decision were based on determination that books were 'pervasively vulgar' or not 'educational[ly] suitab[le]'"); *Serra v. U.S. General Sevices Administration*, 847 F.2d 1045 (2d Cir. 1988) ("Removal of books that were pervasively vulgar or educationally unsuitable would, even in the [*Pico*] plurality's view, be 'perfectly permissible.'" (citations omitted); *CK-W by and through TK v. Wentzville R-IV School District*, --- F. Supp. 3d ----, 2022 WL 3138989, *6 (W.D. Mo.) ("[I]t is 'perfectly permissible' for a school to remove a book based upon the book's 'educational suitability.'" (quoting *Board of Education v. Pico*, 457 U.S. 853 (1982) (plurality opinion of Brennan, J.)).

4. *See Pico*, 457 U.S. at 870 (plurality op.); *id.* at 872 ("[S]chool boards may not remove books from school library shelves simply because they dislike the ideas contained in those books.").

P.App.332

weeded and replaced with a newer and more accurate source, and both the decision to weed and the decision to "select" the replacement are equally content-based and equally within the discretion of the public library.

Finally, the Court's opinion never addresses the undisputed evidence showing that library weeding manuals *require* librarians to engage in content and viewpoint discrimination when deciding whether to remove a book. Three of the six MUSTIE factors instruct librarians to remove materials whose content is "Misleading," "Superseded," or "Trivial." This *requires* a librarian to consider the content of a book and discriminate against content that falls within the "Misleading," "Superseded," or "Trivial" categories. Viewpoint discrimination is also required, as weeding manuals instruct librarians to remove and replace materials that contain "bias, racist, sexist terminology or *views*." Pls.' Ex. 22 at 45 (attached as ECF No. 100-2) (emphasis added). A public library cannot function if its librarians are prohibited from making content- or viewpoint based weeding decisions, or if its librarians can be subjected to lawsuits whenever a library patron suspects that a weeding decision was influenced by the content or viewpoints expressed in a book.

### D. The Plaintiffs Failed To Make A "Clear Showing" That Amber Milum Engaged In Viewpoint Or Content Discrimination When Weeding The 17 Disputed Books

Even if one were to assume that the First Amendment prohibits content- or viewpoint-based weeding decisions, the plaintiffs failed to make a "clear showing" that Amber Milum engaged in content or viewpoint discrimination when she weeded the disputed books. Milum has denied repeatedly and under oath that her decisions to weed those books had anything to do with their content or viewpoints. *See* First Milum Decl., ECF No. 49-1, ¶ 15 ("I did not consider the content of any of the books I weeded when I made the decision to weed them. I also did not consider any of the viewpoints expressed in any of the books I weeded. I weeded the books based on the

P.App.333

objective criteria I always use in determining which books to weed."); Third Milum Decl., ECF No. 100-5, ¶ 38 ("I did not read any of those books before weeding them, and I am not even aware of the 'viewpoints' or 'positions' (if any) that might be expressed in any of those books."); *id*. at ¶ 37 ("I did not consider any of the 17 books that I weeded to be pornographic or in any way inappropriate for a public library. I weeded those books solely based on my application of the CREW/MUSTIE factors."); *id*. at ¶ 36 ("I have never in my entire career weeded a book because of its viewpoints, and I have never considered the content of a book when making a weeding decision except to the extent that the MUSTIE factors might require me to consider whether a book should be considered 'misleading,' 'superseded,' 'trivial,' or 'irrelevant.'"); *id*. ("For the plaintiffs to accuse me of weeding books because I disapprove of nudity, critical race theory, or LGBTQ content is false and defamatory."). The Court does not claim that Milum is lying in these declarations. On the contrary, it acknowledges the existence of "conflicting testimony" without attempting to resolve whether Milum is telling the truth. *See* Order, ECF No. 133, at 20–21 n.7. But the existence of "conflicting testimony" is incompatible with a "clear showing" that Milum weeded the books because of their content or viewpoint — unless the Court is willing to proclaim Milum's testimony false and explain why it thinks Milum is lying.

## E.     The Preliminary Injunction Is Overbroad

The preliminary-injunction order goes far beyond what the plaintiffs requested and awards relief that the plaintiffs do not even have Article III standing to pursue. *Compare* Proposed Order, ECF No. 76-1, *with* Order, ECF No. 133, at 25–26. The plaintiffs asked this Court to order the return of only the 17 disputed books. *See* Proposed Order, ECF No. 76-1. The Court's order, however, demands the return of "*all* print books that were removed because of their viewpoint and content, *including*" the 17 books at issue in this litigation. *See* Order, ECF No. 133, at 25 (emphasis

P.App.334

added). The plaintiffs, however, made no showing (let alone a "clear showing") that they are suffering Article III injury from the removal of any library materials other than the 17 books that they have complained about. *See DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief" that is sought." (citation omitted)); *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) ("Because a preliminary injunction 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief,' the plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction.").

The Court's order also enjoins the defendants from "removing *any* books from the Llano County Library Service's catalog for *any* reason during the pendency of this action." Order, ECF No. 133, at 26 (emphasis added). This, too, goes well beyond what the plaintiffs asked for, and the plaintiffs lack Article III standing to pursue relief of that scope because they cannot be injured by the removal of a book that they have no interest in reading. The plaintiffs had requested a more limited injunction that would prohibit removal of books absent documentation of "(a) the individual who decided to remove or conceal the book and (b) the reason or reasons for that removal or concealment." Proposed Order, ECF No. 76-1.

## II. THE DEFENDANTS WILL SUFFER IRREPARABLE INJURY ABSENT A STAY

A public library cannot function if its librarians can be sued whenever they weed a book for content- or viewpoint-based reasons. The county is now considering whether to close its libraries in response to the Court's order, as it cannot continue to expose its librarians and county officials to lawsuits whenever a disgruntled library patron disagrees with a selection or weeding decision. *See* Exhibit 1. Even if the county allows its libraries to remain open during the appeal, the Court's categorical prohibition on weeding will prevent the library from removing even books that have been

P.App.335

damaged beyond repair. The Court's order also purports to compel the return of *every* book that has *ever* been weeded for its content or viewpoints, and there is no way for the defendants to determine the reasons behind every previous weeding decision—many of which were made by librarians who are no longer employed by the county. Nor is it possible for the defendants to re-shelve previously weeded books that are no longer in the library's possession and may not even be in print.

### III.  A STAY WILL NOT HARM THE PLAINTIFFS OR ANY OTHER PARTY INTERESTED IN THIS LITIGATION

The plaintiffs will suffer no harm from a stay because each of the 17 books will remain available through the Llano Library's in-house checkout system—and each of the plaintiffs is aware of the in-house checkout system and the availability of the 17 disputed books. *See* Stipulation, ECF No. 126, at ¶¶ 3–7. The plaintiffs have yet to explain how they will be "harmed" by obtaining these books through the in-house checkout system rather than the library shelves, and the Court has yet to explain how the in-house library system inflicts any harm (let alone irreparable harm) on any of the seven plaintiffs. Nor will a stay harm other parties interested in the litigation, as there is no evidence that anyone else wants to check out the 17 disputed books, and their lackluster circulation record makes it impossible to infer that a stay would inflict harm on other library patrons not before this Court.

### IV.  THE PUBLIC INTEREST FAVORS A STAY

A stay of proceedings will ensure that the county's libraries will remain open while the appeal proceeds. It will also deter other library patrons from filing "me-too" law-suits over previous weeding decisions that they disagreed with, and it will enable the county's librarians to work without fear of being held in contempt of court if a previously weeded book is alleged to have been removed for content- or viewpoint-based reasons.

P.App.336

## CONCLUSION

The motion for stay pending appeal should be granted.

Respectfully submitted.

Dwain K. Rogers
Texas Bar No. 00788311
County Attorney

Matthew L. Rienstra
Texas Bar No. 16908020
First Assistant County Attorney

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

Dated: April 11, 2023

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Defendants*

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with Ellis Herington, counsel for the plaintiffs, and she informed me that the plaintiffs oppose this motion.

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
*Counsel for Defendants*

P.App.338

## CERTIFICATE OF SERVICE

I certify that on April 11, 2023, I served this document through CM/ECF upon:

Ellen V. Leonida
Matthew Borden
J. Noah Hagey
Max Bernstein
Ellis E. Herington
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

Ryan A. Botkin
Katherine P. Chiarello
María Amelia Calaf
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com

*Counsel for Plaintiffs*

                                       /s/ Jonathan F. Mitchell
                                     Jonathan F. Mitchell
                                     *Counsel for Defendants*

P.App.339

# SPECIAL CALLED...
# NOTICE OF SPECIAL MEETING OF THE
# COMMISSIONERS COURT OF LLANO COUNTY, TEXAS

| Peter R. Jones | Linda Raschke | Ron Cunningham | Mike Sandoval | Jerry Don Moss |
|---|---|---|---|---|
| Precinct 1 | Precinct 2 | Judge | Precinct 3 | Precinct 4 |

Notice is hereby given that a Special Called Meeting of the above-named Commissioners' Court will be held on the **13th Day of APRIL, 2023 at 3:00pm** at the Llano County JP#4 Courtroom, 2001 North State Hwy 16, Ste B., Llano, Texas, at which time the following subjects will be discussed and appropriate action taken, to-wit:

**The Pledge of Allegiance:**
*I pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation under God, Indivisible, with Liberty and Justice for all.*

**Pledge to the Texas Flag:**
*Honor the Texas Flag; I pledge allegiance to thee, Texas, one state under God, one and indivisible.*

1. **Discussion/Action:** Continue or cease operations of the current physical Llano County Library System pending further guidance from the Federal Courts. This action item will include discussion and action regarding the continued employment and/or status of the Llano County Library System employees and the feasibility of the use of the library premises by the public.

2. **Executive Closed Session** – Receive legal advice regarding pending or contemplated litigation or settlement offers, or other legal advice pursuant to §551.071(1) & (2), regarding purchases, exchanges, leases, or value of real property pursuant to §551.072, or security devices or security audits pursuant to §551.076 of the Texas Government Code, including but not limited to the following items:
   *Llano County Sheriff's office including the jail, audit, and current inmate census*
   *Little, et.al v. Llano County, et.al; United States District Court (Austin)*
   Legal advice includes the Texas Local Government Code, the Open Meetings Act, the Public Information Act, Llano jail, employment and personnel law, utility law, Llano Local Health Authority, property law, potential litigation, procurement, and contract law, evidentiary and procedural law, road and bridge law, ethics law and general government law and any additional federal or state law regarding any item on this open or executive/closed session meeting agenda.

3. **Return to Open Session** for further discussion and possible action on any matter posted for discussion in Executive Session. Any matter posted in Executive Session also may be subject of discussion and/or action in open session prior to Executive Session.

*Ron Cunningham*
Ron Cunningham, Llano County Judge

I, the undersigned County Clerk do hereby certify that the above Notice of Meeting of the above named Commissioners' Court is a true and correct copy of said Notice, and that a true and correct copy of said Notice was posted on the bulletin board at the Courthouse of Llano County, Texas at a place readily accessible to the general public at all times on the 10 day of APRIL, 2023 and said Notice remained so posted continuously for at least Seventy-two (72) hours preceding the scheduled time of said Meeting. So dated this the 10 day of APRIL, 2023, at 2:52 am/pm.

*Marci Hadeler*
*by Cecilia McClintock, deputy*
Marci Hadeler, Llano County Clerk

1

P.App.340

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**Leila Green Little**, et al.,

Plaintiffs,

v.

**Llano County**, et al.,

Defendants.

Case No. 1:22-cv-00424-RP

## RESPONSE TO PLAINTIFFS' MOTION TO EXTEND DISCOVERY AND MODIFY THE AGREED SCHEDULING ORDER

The plaintiffs do not need a formal extension of the discovery deadline to continue pursuing discovery requests that they served before March 31, 2023. The parties disagree on whether the plaintiffs are entitled to obtain some of that requested discovery, and the plaintiffs' motions to compel are currently pending before the magistrate judge. But the defendants will produce that discovery if the courts order them to do so—regardless of whether this Court extends the discovery deadline. *See* Mitchell Decl. ¶ 4 (attached as Exhibit 1). The plaintiffs do not need an extension of the deadline to continue litigating these discovery disputes, or to obtain their sought-after discovery if they prevail on any of the pending motions to compel.

The rules of this Court envision the precise scenario described in the plaintiffs' motion, where discovery disputes continue after the formal close of discovery. *See* Local Rule CV-16(e). And the rules make clear that the plaintiffs are entitled to obtain the discovery that they sought if they prevail on their soon-to-be-resolved motions to compel, even if the discovery disputes are resolved after the deadline. *See id.* (allowing motions to compel to be litigated after the discovery deadline, including motions to compel that post-date the discovery deadline, so long as those post-deadline motions

P.App.341

to compel "are filed within 14 days after the discovery deadline and pertain to conduct occurring during the final 7 days of discovery."). It is normal for discovery disputes to remain unresolved after the formal close of discovery, and for discovery to be produced after the deadline in response to a court's ruling on a motion to compel. None of that requires an extension or modification of the discovery cut-off date. And it does not come anywhere close to justifying a complete re-opening of discovery that would allow the plaintiffs to bombard the defendants with all manner of discovery demands, including discovery requests that they could (and should) have served during the time period in the agreed scheduling order.

The only scenario that could justify a re-opening of discovery is if: (1) The plaintiffs obtain evidence after the discovery deadline that was improperly withheld or delayed, either in response to a motion to compel or because the defendants failed to produce the requested discovery before March 31, 2023; and (2) The evidence discovered after March 31, 2023, leads the plaintiffs to request additional discovery that they could not reasonably have sought in the absence of the recently discovered evidence, and which they would have sought during the agreed-upon discovery window had they obtained the discovered evidence in a timely fashion. But the Court cannot determine any of this until the magistrate rules on the pending motions to compel and the plaintiffs obtain the evidence (if any) that they should have received during the time for discovery. So the Court should either deny the plaintiffs' motion without prejudice, or it should hold the motion in abeyance until the magistrate rules on the pending motions to compel and the plaintiffs obtain the evidence that could be used to justify a re-opening of discovery.

The defendants will not oppose additional discovery requests if the plaintiffs show that they were unable to make those requests on account of a delayed discovery production. But the Court should not extend or re-open the discovery period unless the plaintiffs identify *what* they want to discover and *why* they could not have sought and

P.App.342

obtained that discovery before March 31, 2023. The current motion does not do that, although it is possible that the plaintiffs will be able to submit a more targeted request for additional discovery if the magistrate grants their motions to compel or the plaintiffs obtain discoverable evidence that should have been provided before the discovery cut-off date.

* * *

Instead, the plaintiffs are demanding that the Court re-open the discovery window and allow them to take *any* discovery they wish between now and May 19, 2023 — including discovery that the plaintiffs could have requested before the March 31 cutoff. They attempt to justify this request with a screed that falsely accuses the defendants of discovery misconduct and repeats the misrepresentations and outright lies that appear in their previous filings with the Court. We have repeatedly confronted the plaintiffs' attorneys about these falsehoods and demanded their correction, but to no avail. *See* Mitchell Decl. ¶ 6 (attached as Exhibit 1). We will (once again) rebut the falsehoods and misrepresentations in the plaintiffs' court filings.

First. The plaintiffs repeat their claim that counsel for the defendants "admitted that they had not made any effort to search for documents or communications in response to" their first request for production of documents. *See* Mot. to Extend Discovery, ECF No. 136, at 3. This is an outright lie, and the plaintiffs know it. Counsel for the defendants have *never* admitted that we "had not made any effort to search for documents or communications." *Id*. What we admitted was that we did not instruct our clients to run searches for particular words or phrases in their e-mails when plaintiffs' counsel asked us whether our clients had searched their e-mails for the particular words and phrases that they thought should have been searched for. *See* Rienstra Decl., ECF No. 113-1, at ¶ 15; Mitchell Decl., ECF No. 113-2, at ¶ 7.

Plaintiffs' counsel know this statement in their brief is false because both Matt Rienstra and Jonathan F. Mitchell have submitted sworn declarations denying that

P.App.343

any such admission was ever made. *See* Rienstra Decl., ECF No. 113-1, at ¶ 15; Mitchell Decl., ECF No. 113-2, at ¶ 7. Rienstra also submitted a sworn declaration stating that the defendants *did* conduct an independent search for responsive documents after receiving the plaintiffs' set of RFPs:

> The plaintiffs' claim that "we admitted that defendants did not search for any documents in response to Plaintiffs' First Set of Discovery Requests" is false. We informed Mr. Bernstein that we looked for any additional documents that may have been missed. Mr. Bernstein continued to ask for the search terms we used. We asked our clients, except for Amber Milum to look for any documents related to the library, library advisory board and plaintiffs; those are fairly broad terms and capture most, if not all, documents. We received from Amber Milum every document and we produced those to Ms. Kennedy, a plaintiff, before the lawsuit was filed and then added to that production during the "limited" discovery phase of this litigation plus additional responses during the second phase.

Rienstra Decl., ECF No. 113-1 at ¶ 15. Yet the plaintiffs continue to repeat this falsehood, even after we confronted them about it in our e-mail correspondence and in our response to their motion to compel from December. They are lying to the Court and misrepresenting what we said in our phone calls.[1]

Second. The plaintiffs' claim that "the few documents that Defendants did produce did not include email attachments or metadata, despite their agreement to produce both" is also a lie. *See* Mot. to Extend Discovery, ECF No. 136, at 3. The plaintiffs know this statement is false because we confronted them about a similar statement that they made in the motion to compel that they filed on December 16, 2022. *See* Mot. to Compel, ECF No. 92, at 4 ("[C]ommunications Defendants produced were PDF versions of emails, *stripped of all attachments* and metadata." (emphasis added)). In an e-mail that we sent to plaintiffs' counsel on February 2, 2023, we informed

---

1. The plaintiffs' claim on page 4 that "Defendants also admitted that they entirely failed to search Llano County's email system for responsive communications" is also false, for the reasons explained above. *See* Mot. to Extend Discovery, ECF No. 136, at 4.

P.App.344

them that many of the e-mails that we produced in response to their first set of RFPs *did* include attachments. *See* Mitchell Decl. ¶¶ 8–9 (attached as Exhibit 1); E-mail from Jonathan F. Mitchell to plaintiffs' counsel of February 2, 2023 (attached as Exhibit 3). We also e-mailed plaintiffs' counsel on February 3, 2023, and attached the e-mails that we initially produced from Bonnie Wallace, *all* of which had attachments included, so that plaintiffs' counsel could see for themselves that we did indeed produce e-mail attachments in our initial response to their first set of RFPs. *See* Mitchell Decl. ¶¶ 8–10 (attached as Exhibit 1); E-mail from Jonathan F. Mitchell to plaintiffs' counsel of February 3, 2023 (attached as Exhibit 4); Document production of Bonnie Wallace's e-mails, ECF No. 113-5. The plaintiffs are lying when they say that our initial document production "did not include e-mail attachments." *See* Mot. to Extend Discovery, ECF No. 136, at 3. Many of the e-mails that we produced had attachments, and the plaintiffs know it.

Third. The plaintiffs' claim that we "have yet to serve responses or produce responsive documents" the RFPs that they served on March 1, 2023, is untrue. *See* Mot. to Extend Discovery, ECF No. 136, at 5. The defendants served and produced the responsive documents by mailing a thumb drive to BraunHagey by certified mail, return receipt requested, well before the March 31 deadline. *See* Mitchell Decl. ¶ 11 (attached as Exhibit 1); Copies of Return Receipts (attached as Exhibit 5). The return receipts show that the thumb drive was successfully delivered to BraunHagey's San Francisco office. Plaintiffs' counsel never consulted with us or asked about the production of these documents before falsely accusing us of failing to produce them. An "inquiry reasonable under the circumstances"[2] should have led plaintiffs' counsel to at least ask us whether we had served or produced responsive documents before accusing us in a court filing of failing to do so.

---

2.    Fed. R. Civ. P. 11(b)(3).

The defendants have not engaged in any discovery misconduct. The only discovery that the defendants have withheld are based on good-faith claims of attorney–client privilege, and the only witnesses that failed to appear for depositions did so because the plaintiffs failed to obtain the leave of court required by Rule 30(a)(2)(a)(i) and (ii). The plaintiffs inexplicably waited until March 20, 2023, before seeking leave of court to exceed the 10-deposition limit in Rule 30(a)(2)(a)(i), even though they knew on February 23, 2023, that they intended to depose more than ten witnesses and that they needed leave of court to do so because the defendants were unwilling to stipulate. *See* E-mail from Ellen Leonida to Jonathan F. Mitchell of February 23, 2023 (attached as Exhibit 6) ("Will you stipulate that the parties can take more than ten depositions? We believe that additional depositions are warranted . . . . Please advise us of your position so that we may seek leave of the court if necessary."); E-mail from Jonathan F. Mitchell to Ellen Leonida of February 23, 2023 (attached as Exhibit 7) ("The defendants are opposed to any additional depositions."). Yet the plaintiffs sat on their hands and waited 28 days before finally moving for leave of court on March 20, 2023, and the district court did not grant the motion until March 29, 2023—only two days before the close of discovery. The plaintiffs have only themselves to blame for their delay in filing their motion for leave of court, which forced them to cancel several depositions that had been scheduled before March 29, 2023, so that they would not burn their tenth deposition before the Court could rule on the motion for leave. It is farcical for the plaintiffs to claim that they "acted diligently to obtain discovery"[3] in light of their inexcusable 28-day delay in asking for leave of court under Rule 30(a)(2)(a)(i). And it is patently false for them to say that their "inability to complete discovery within the deadline set by the Agreed Scheduling Order is not due to any lack of diligence by Plaintiffs." The plaintiffs failed to obtain

---

3.   *See* Mot. to Extend Discovery, ECF No. 136, at 8.

P.App.346

leave of court in time to complete the depositions that they wanted, and the responsibility for that failure lies squarely with the plaintiffs' attorneys.

The parties met and conferred earlier today and agreed to produce all outstanding and unopposed discovery before the hearing before the magistrate judge on April 27, 2023. *See* Mitchell Decl. ¶ 12 (attached as Exhibit 1). The remaining discovery disputes will be resolved by the magistrate or by the parties. A litigant does not engage in "discovery misconduct" by asserting privilege claims that an opposing litigant disagrees with, or by failing to produce witnesses for depositions that are not authorized by Rule 30(a)(2)(A). Lawyers are not only permitted but required to zealously defend their clients' interests in discovery, even when (perhaps especially when) the opposing lawyers disagree with their interpretations of the rules. That is not "discovery misconduct"; it is the inevitable byproduct of an adversarial system.

## CONCLUSION

The plaintiffs' motion to extend discovery and modify the agreed scheduling order should be denied without prejudice or held in abatement.

Respectfully submitted.

Dwain K. Rogers
Texas Bar No. 00788311
County Attorney

Matthew L. Rienstra
Texas Bar No. 16908020
First Assistant County Attorney

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Defendants*

P.App.347

## CERTIFICATE OF SERVICE

I certify that on April 14, 2023, I served this document through CM/ECF upon:

ELLEN V. LEONIDA
MATTHEW BORDEN
J. NOAH HAGEY
MAX BERNSTEIN
ELLIS E. HERINGTON
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

RYAN A. BOTKIN
KATHERINE P. CHIARELLO
MARÍA AMELIA CALAF
KAYNA STAVAST LEVY
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Counsel for Plaintiffs*

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**Leila Green Little**, et al.,

               Plaintiffs,

v.

**Llano County**, et al.,

               Defendants.

Case No. 1:22-cv-00424-RP

## DECLARATION OF JONATHAN F. MITCHELL

1. My name is Jonathan F. Mitchell. I am over the age of 18 and fully competent in all respects to make this declaration.

2. I have personal knowledge of the facts stated in this declaration, and all of these facts are true and correct.

3. I represent the defendants in this litigation.

4. There are currently some outstanding discovery disputes between the parties that are subject to motions to compel. The defendants will produce that discovery if the courts order them to do so, regardless of whether this Court extends the discovery deadline.

5. The plaintiffs once again claim that counsel for the defendants "admitted that they had not made any effort to search for documents or communications in response to" their first request for production of documents. *See* Mot. to Extend Discovery, ECF No. 136, at 3. This statement is false. Counsel for the defendants have *never* admitted to plaintiffs' counsel that we "had not made any effort to search for documents or communications." What we admitted was that we did not instruct our clients to run searches for particular words or phrases in their e-mails when plaintiffs'

DECLARATION OF JONATHAN F. MITCHELL

P.App.349

counsel asked us whether our clients had searched their e-mails for the particular words and phrases that they thought should have been searched for.

6.  I have repeatedly confronted the plaintiffs' attorneys about this falsehood, which appears not only in their motion to extend the discovery deadline but also in their motion to compel that the filed on December 16, 2022 (ECF No. 92). The plaintiffs' attorneys, however, refuse to retract this and continue to misrepresent what we said to them.

7.  Regardless of what we told the plaintiffs' attorneys (or what the plaintiffs' attorneys think we told them), our clients *did* conduct an independent search for responsive documents after receiving the plaintiffs' set of RFPs, and we have said so in sworn declarations. *See, e.g.*, Rienstra Decl., ECF No. 113-1 at ¶ 15.

8.  The plaintiffs also repeat their false claim the e-mails that we initially produced were stripped of all attachments. *See* Mot. to Extend Discovery, ECF No. 136, at 3. I confronted them about a similar statement that they made in the motion to compel that they filed on December 16, 2022. Those e-mails are attached as Exhibits 3 and 4 to this brief.

9.  The document attached as Exhibit 3 to this brief is an authentic copy of an e-mail sent by me to plaintiffs' counsel on February 2, 2023, which confronts them about the false statements in their motion to compel of December 16, 2023, many of which are repeated in their motion to extend the discovery deadline

10.  The document attached as Exhibit 4 to this brief is an authentic copy of an e-mail sent by me to plaintiffs' counsel on February 3, 2023. I attached to that e-mail our previous document production of the e-mails from Bonnie Wallace with attachments included, and rebuts their claim that no attachments were included in our initial production of e-mails. The attachments in my e-mail of February 3, 2023, are the same as the documents that appear at ECF No. 113-5.

11.   The plaintiffs' claim that we "have yet to serve responses or produce responsive documents" the RFPs that they served on March 1, 2023, is untrue. *We* served and produced the responsive documents by mailing a thumb drive to BraunHagey by certified mail, return receipt requested, well before the March 31 deadline. Authentic copies of those return receipts are attached as Exhibit 5 to this brief.

12.   The parties met and conferred earlier today and agreed to produce all outstanding and unopposed discovery before the hearing before the magistrate judge on April 27, 2023. The remaining discovery disputes will be resolved by the magistrate or by the parties.

This concludes my sworn statement. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts stated in this declaration are true and correct.

Dated: April 14, 2023

JONATHAN F. MITCHELL

DECLARATION OF JONATHAN F. MITCHELL

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**Leila Green Little**, et al.,

        Plaintiffs,

v.

**Llano County**, et al.,

        Defendants.

Case No. 1:22-cv-00424-RP

## DECLARATION OF MATTHEW L. RIENSTRA

1. My name is Matthew L. Rienstra and I am over the age of 18 and fully competent in all respects to make this declaration.

2. I have personal knowledge of the facts stated in this declaration, and all of these facts are true and correct.

3. I serve as First Assistant County Attorney for Llano County. I have held that position since June 2014. In that capacity I am representing the defendants in this cause of action and I have been working with our clients, as well as Dwain Rogers, Llano County Attorney, Clay Etter, Llano County IT, and our legal assistants, to gather documentary evidence in response to the plaintiffs' discovery requests, including electronically stored information (ESI).

4. To date we have produced, through Dropbox, to plaintiffs' counsel the following ESI:

    a. Judge Ron Cunningham's official Llano County emails;

    b. Commissioner Peter Jones' official Llano County emails;

    c. Commissioner Linda Raschke's official Llano County emails;

    d. Commissioner Mike Sandoval's official Llano County emails;

    e. Commissioner Jerry Don Moss's official Llano County emails; and

P.App.352

    f.   Llano Library Director Amber Milum's official Llano County emails, including the emails from her prior library email address at Yahoo.

5.  Commissioner Jerry Don Moss does use another email service with Hotmail. The Llano County IT just accessed the ESI from Commissioner Moss's Hotmail account. The ESI is currently being reviewed by the Llano County Attorney's office for relevance as well as other privileged material. The review should be completed by the end of next week, and will be produced to the plaintiffs' counsel through Dropbox.

6.  We have just been provided the ESI for the previously produced emails of Bonnie Wallace. The ESI is currently being reviewed by the Llano County Attorney's office for relevance as well as other privileged material. The review should be completed by the end of next week, and will be produced to the plaintiffs' counsel through Dropbox.

7.  Currently the Llano County offices are closed due to a weather event affecting the entire Texas Hill Country. Due to the closure Clay Etter could not meet with Ronda Schneider, Rochelle Wells, or Gay Baskin to access the ESI stored on their devices. I hope that a meeting can occur next week and additional ESI produced late next week or early the following week.

8.  It is important for the court to recall that Llano County has limited resources even within the county attorney's office. Beside this case, the Llano County Attorney's office is actively involved in CPS, criminal cases, environmental cases and permitting as well as reviewing contracts. For example, this morning, the below attorney was assisting with efforts to locate a runaway CPS child with special needs and to coordinate with CPS the steps that would be taken after the child was located. Fortunately, the child was located prior to lunch and is currently being treated at an area hospital. Our office will be actively involved over the next few days with local CPS court and state CPS officials to find a suitable placement for this child.

DECLARATION OF MATTHEW L. RIENSTRA

9.   Prior to the ESI production, Defendants agreed to "limited" discovery for use by Plaintiffs' in their Application for Preliminary Injunction. Defendants agreed to and responded to the following discovery requests: Production propounded to Llano County, Jerry Don Moss, Amber Milum and Bonnie Wallace; Request for Admissions to most of these same defendants, Interrogatories to most of the these same defendants, and; depositions of Commissioner Moss, Llano Library Director Milum, civilian volunteer Wallace and civilian volunteer Wells.

10.   At no time in the discussion with plaintiffs' counsel regarding the "limited" discovery did plaintiff ask for ESI. Nor did plaintiffs' counsel complain prior to the depositions or the preliminary injunction that they wanted the attachments for each of the contemporaneous emails. When plaintiffs' counsel did raise the issue later (after the preliminary hearing, I believe), that the attachments were located and plaintiff counsel made aware of their location in the production.

11.   Also, prior to the initiation of this lawsuit, plaintiff Kathy Kennedy obtained, through public information requests, four thousand five hundred twenty six (4526) documents, including library emails, polices & procedures, and documents regarding the weeding process. Any and all attachments to those emails were provided to Ms. Kennedy. Due to the many other obligations, tasks and issues that confront the office of the office of the county attorney, the decision was made to provide Ms. Kennedy with practically every document that pertained to the Llano library system and its operations.

12.   Since that agreed "limited" discovery requests defendants have been served with additional discovery requests and to date defendants have served their responses.

DECLARATION OF MATTHEW L. RIENSTRA

13.   I was on the November 10, 2022 phone conference with plaintiffs' counsel with Mr. Bernstein, and Mr. Bernstein is correct that defense counsel had agreed to the ESI protocol. What is missing form Mr. Bernstein's declaration is that during an earlier conversation defense counsel agreed because within the ESI protocol there is a clause that protects the parties from undue expense of producing "inaccessible" ESI data. On page 2 of the protocol this clause appears, "Inaccessibility is based on the burden and expense of recovering and producing the ESI and the relative need for the data. However, the Parties shall not be required to preserve or search for information in data sources that are not reasonably accessible, including, but not limited to, back-up tapes, disaster recovery systems, offline archives, and data sources that are not used for normal business operations and/or require unreasonable expense or burden to search and produce." The below signed counsel prior to the agreement spoke of the expense concern with Plaintiff counsel Sarah Conway and expressed this concern due to the expedited and "limited" discovery that had already occurred and the massive document production which Llano had already provided to Ms. Kennedy pursuant to her public information requests. Defense counsel was extremely concerned that due to the fact that defendant Llano County had, and still has, limited resources (for example, earlier this week, during a winter ice storm,, the below attorney was assisting with efforts to locate a runaway CPS child with special needs), both in time and money, to engage in an ESI search demanded by plaintiffs' counsel that only a Google-like defendant could conduct.

14.   Further, at the time of this conversation defense counsel was aware of the potential effort by plaintiff counsel to engage in tactics that would seek to "stretch" defendants with outrageous and useless discovery demands that would not aid the trier of fact in the "search" for truth but are simply used to harass defendants and prolong this litigation. No better example for that prescient concern is the amount of print that Mr. Bernstein uses in justifying his demand for attorneys fees.

DECLARATION OF MATTHEW L. RIENSTRA

15.   The plaintiffs' claim that "we admitted that defendants did not search for any documents in response to Plaintiffs' First Set of Discovery Requests" is false. We informed Mr. Bernstein that we looked for any additional documents that may have been missed. Mr. Bernstein continued to ask for the search terms we used. We asked our clients, except for Amber Milum to look for any documents related to the library, library advisory board and plaintiffs; those are fairly broad terms and capture most, if not all, documents. We received from Amber Milum every document and we produced those to Ms. Kennedy, a plaintiff, before the lawsuit was filed and then added to that production during the "limited" discovery phase of this litigation plus additional responses during the second phase.

16.   Mr. Bernstein seems to believe that a search for "library-related" documents is a "mere" effort to search. In fact, is covers the world of information that he and his clients want. Unfortunately, for him and the plaintiffs, "there is no there' of proof that Llano County, its officials or its civilian volunteers (4 out of 13) violated the rights of these plaintiffs.

   This concludes my sworn statement. All the facts and information contained within this declaration are within my personal knowledge and are true and correct. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

                                          /s/ Matthew L. Rienstra
Dated: February 3, 2023                   MATTHEW L. RIENSTRA

**From:** **Jonathan Mitchell** jonathan@mitchell.law
**Subject:** motion to compel
**Date:** February 2, 2023 at 9:27 PM
**To:** Ellen Leonida Leonida@braunhagey.com
**Cc:** Max Bernstein bernstein@braunhagey.com, Matt Rienstra matt.rienstra@co.llano.tx.us, Dwain K. Rogers drogers@co.llano.tx.us, Maria Calaf mac@wittliffcutter.com, katherine@wittliffcutter.com, Kayna Levy kayna@wittliffcutter.com, Shannon Morrissey Morrissey@braunhagey.com, Ryan Botkin ryan@wittliffcutter.com

Counsel:

Thank you taking time to confer earlier today.

As I mentioned on the phone, there are additional falsehoods and misrepresentations in your motion to compel and motion for sanctions, which will describe in detail below.

We continue to believe that it would be in everyone's best interest if we stipulate to extend the deadline for our response to your motion to compel (which is currently due tomorrow).

An extension will: (1) Give us time to finish producing the requested documents in native format; (2) Obviate the need for us to bring the additional falsehoods and misrepresentations in your motion to compel to the Court's attention; (3) Spare you the need to file yet another corrected brief and supporting declaration; (4) Spare the Court the need to adjudicate the veracity of your accusations in the motion to compel; and (5) Spare the Court the need to resolve the discovery disputes, as we are on the cusp of providing all of the requested data in its native format consistent with the agreed ESI protocol.

As for the additional problems in your motion to compel:

(1) Your claim on page 1 that we "admitted" that we "did not search for any documents responsive to Plaintiffs' First Set of RFPs" and that we "only re-produced documents they had gathered in response to pre-litigation public records requests" is false. We never made any such admission, either in writing or on the phone. Your accusation that we never conducted a "search" in response to your first set of RFPs is equally false.

The following passage in paragraph 15 of Mr. Bernstein's declaration is also false:

"[O]n the November 10, 2022 call, Defendants' counsel admitted that Defendants did not search for any documents in response to Plaintiffs' First Set of Discovery Requests, served on May 11, 2022. Rather, Defendants just turned over what they had already collected and provided to certain Plaintiffs pursuant to pre-litigation Texas Public Information Act requests."

What we "admitted" was that **we did not search for specified terms that you thought we should search for** when reviewing our clients' e-mails. That is a far cry from an admission that we did not conduct any "search" for documents, which is what you are falsely accusing us of. We **did** search for documents in response to your first request for RFPs, and we did so independently of the response to the previous open-records request.

For Mr. Bernstein to claim in a sworn declaration that we admitted on the phone that we never conducted any search at all in response to your first request for production of documents is a flat-out lie. There is nothing we said on the phone call of November 10, 2022, that could reasonably be construed as an admission that we never conducted a search or that we did nothing more than turn over documents that had previously been produced in response to an open-records request, and no lawyer with a modicum of competence could interpret our statements that way.

If we file a response tomorrow, we will submit sworn declarations stating that Mr. Bernstein is misrepresenting what we said on the phone call, and we will explain in detail how we did "search" for documents and how we went beyond the documents produced in response to the earlier Texas Public Information Act request.

(2) Your claim on page 3 that the "PDF versions of emails" that we produced we "stripped of **all** attachments" is false. Many of those e-mail PDFs included PDFs of the attachments, although we acknowledge that not all of them did. Sarah Salomon's declaration (ECF No. 57-1) which you cite to support this claim, never says that all of the attachments were missing from that production of documents.

(3) Your repeated claims that we are "intentionally withholding" documents are false. We have made clear throughout this discovery dispute that we agree that you are entitled to the documents that you are requesting. The failure to produce the requested documents in the result of resource constraints in Llano County and in its county attorney's office, not because we have the documents ready but are refusing to turn them over. Accusing a litigant of "intentionally withholding" documents in this situation is false and defamatory.

I am continuing to review with Dwain and Matt whether there are other false statements and accusations in your motion to compel, and we may uncover more before we file our response tomorrow.

I recommend that we agree to an additional one-week or two-week extension rather than having us respond to the motion to compel tomorrow. Any response that we file tomorrow will be accompanied by evidence proving that Mr. Bernstein's accusations are false. We have also made substantial progress toward producing the e-mails in their native format, and we expect to have that completed by next week. We are on the verge of resolving this without the Court's involvement, and we are all in agreement that you are entitled to the documents that you are requesting. I think the Court will appreciate our making an effort to resolve this matter among ourselves, especially when there is no disagreement between us over your entitlement to the relevant documents.

especially when there is no disagreement between us over your entitlement to the relevant documents.

Thanks for considering this.


—Jonathan



------------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law
papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842

**CONFIDENTIALITY NOTICE**:
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

**PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK PRODUCT**

From: **Jonathan Mitchell** jonathan@mitchell.law
Subject: Re: motion to compel
Date: February 3, 2023 at 3:33 PM
To: Katherine Chiarello katherine@wittliffcutter.com
Cc: Ellen Leonida Leonida@braunhagey.com, Max Bernstein bernstein@braunhagey.com, Matt Rienstra matt.rienstra@co.llano.tx.us
, Dwain K. Rogers drogers@co.llano.tx.us, Maria Calaf mac@wittliffcutter.com, Kayna Levy kayna@wittliffcutter.com,
Shannon Morrissey Morrissey@braunhagey.com, Ryan Botkin ryan@wittliffcutter.com

And are you standing by your claim that our initial production of PDF e-mails was "stripped of all attachments"?

Look at the e-mails that we produced from Bonnie Wallace (attached). The attachments to those e-mails are included.

WALLACE 1
RFP.pdf
Downloading...

WALLACE 2
RFP.pdf
8.8 MB

WALLACE 3
RFP.pdf
11.7 MB

WALLACE 4
RFP.pdf
Downloading...

WALLACE 5
RFP.pdf
Downloading...

WALLACE 6
RFP.pdf
Downloading...

On Feb 3, 2023, at 3:26 PM, Katherine Chiarello <katherine@wittliffcutter.com> wrote:

Yes.

**From:** Jonathan Mitchell <jonathan@mitchell.law>
**Sent:** Friday, February 3, 2023 5:04 PM
**To:** Katherine Chiarello <katherine@wittliffcutter.com>
**Cc:** Ellen Leonida <Leonida@braunhagey.com>; Max Bernstein <bernstein@braunhagey.com>; Matt Rienstra <matt.rienstra@co.llano.tx.us>; Dwain K. Rogers <drogers@co.llano.tx.us>; Maria Calaf <mac@wittliffcutter.com>; Kayna Levy <kayna@wittliffcutter.com>; Shannon Morrissey <Morrissey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** Re: motion to compel

[EXTERNAL SENDER]

Are you backing Mr. Bernstein's account of our phone call on November 10, 2022, or not?

We have told you that his account of what we said on that phone call is untrue. Unless you intend to deny or dispute what we have said in our e-mail from last night, you cannot continue advocating the motion to compel or Mr. Bernstein's supporting declaration.

On Feb 3, 2023, at 1:47 PM, Katherine Chiarello <katherine@wittliffcutter.com> wrote:

Jonathan –

Your contention that Defendants' response to Plaintiffs' motion to compel is due today—February 3, 2023—is incorrect. Per the Court's January 18, 2023 order, Defendants' response to Plaintiff's Motion to Compel was due on January 20, 2023.

You have previously expressed concern that the Court may rule quickly on the pending Motion for Preliminary Injunction and used that concern to justify filing papers with the Court without properly conferring with Plaintiff's counsel. *Compare* January 11, 2023 email at 2:50 pm ("I will circulate a draft later today and you can decide whether or not to join it.") with January 12, 2023 email at 5:12 am ("I decided to go ahead and file a notice with the Court unilaterally. I don't want to take the risk that the Court rules before we seek leave to file our sur-reply."). Given that, you must surely believe there is significant risk that the Court may soon rule on that motion, given that briefing was complete almost a month ago on January 6, 2023. *See* December 1, 2022 Order [#90].

Defendants have also indicated more than once that the production of the documents Plaintiffs seek is imminent – and yet Defendants have continued to fail to produce all of the documents sought in the motion to compel.

Given these facts, it is certainly reasonable to infer that Defendants' true intent is to drag out this discovery fight so that the missing documents—which we believe are likely to be highly probative of Plaintiffs' claims —will not be produced until after the Court's entry of an order that will certainly go up on appeal to the Fifth Circuit.

But even if this were not Defendants' intent, there is simply no reason for Defendants to continue to seek to avoid having the Court determine what they are required to produce and on what timeline. Whether the Defendants (1) are in agreement that they will produce the three categories of documents sought by Plaintiffs; (2) dispute that they are required to produce some or all of the three categories of documents sought by Plaintiffs; or (3) some combination thereof, it is far past time for Defendants to make that representation to the Court. If, as you state below, "we are all in agreement that [Plaintiffs] are entitled to the documents that [Plaintiffs] are requesting," then the substance of your opposition is straight forward. And if, in fact, we are not all in agreement, it is time to crystalize any remaining dispute for resolution by the Court.

Under these circumstances, we simply have no more extensions to give. We look forward to your response and will reply accordingly.

Thanks,

Katherine

**Katherine P. Chiarello**
Partner
**Wittliff I Cutter**
1209 Nueces Street
Austin, Texas 78701
katherine@wittliffcutter.com
www.wittliffcutter.com
Office: 512.960.4524 I Cell: 512.487.2876 I Fax: 512.960.4869

*This message and its contents are confidential. If you received this message in error, do not use or rely upon it. Instead, please inform the sender and then delete it. Thank you.*

---

**From:** Jonathan Mitchell <jonathan@mitchell.law>
**Sent:** Thursday, February 2, 2023 11:28 PM
**To:** Ellen Leonida <Leonida@braunhagey.com>
**Cc:** Max Bernstein <bernstein@braunhagey.com>; Matt Rienstra <matt.rienstra@co.llano.tx.us>; Dwain K. Rogers <drogers@co.llano.tx.us>; Maria Calaf <mac@wittliffcutter.com>; Katherine Chiarello <katherine@wittliffcutter.com>; Kayna Levy <kayna@wittliffcutter.com>; Shannon Morrissey <Morrissey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** motion to compel

[EXTERNAL SENDER]

Counsel:

Thank you taking time to confer earlier today.

As I mentioned on the phone, there are additional falsehoods and misrepresentations in your motion to compel and motion for sanctions, which we will describe in detail below.

We continue to believe that it would be in everyone's best interest if we stipulate to extend the deadline for our response to your motion to compel (which is currently due tomorrow).

An extension will: (1) Give us time to finish producing the requested documents in native format; (2) Obviate the need for us to bring the additional falsehoods and misrepresentations in your motion to compel to the Court's attention; (3) Spare you the need to file yet another corrected brief and supporting declaration; (4) Spare the Court the need to adjudicate the veracity of your accusations in the motion to compel; and (5) Spare the Court the need to resolve the discovery disputes, as we are on the cusp of providing all of the requested data in its native format consistent with the agreed ESI protocol.

As for the additional problems in your motion to compel:

(1) Your claim on page 1 that we "admitted" that we "did not search for any documents responsive to

(1) Your claim on page 1 that we "admitted" that we "did not search for any documents responsive to Plaintiffs' First Set of RFPs" and that we "only re-produced documents they had gathered in response to pre-litigation public records requests" is false. We never made any such admission, either in writing or on the phone. Your accusation that we never conducted a "search" in response to your first set of RFPs is equally false.

The following passage in paragraph 15 of Mr. Bernstein's declaration is also false:

"[O]n the November 10, 2022 call, Defendants' counsel admitted that Defendants did not search for any documents in response to Plaintiffs' First Set of Discovery Requests, served on May 11, 2022. Rather, Defendants just turned over what they had already collected and provided to certain Plaintiffs pursuant to pre-litigation Texas Public Information Act requests."

What we "admitted" was that **we did not search for specified terms that you thought we should search for** when reviewing our clients' e-mails. That is a far cry from an admission that we did not conduct any "search" for documents, which is what you are falsely accusing us of. We **did** search for documents in response to your first request for RFPs, and we did so independently of the response to the previous open-records request.

For Mr. Bernstein to claim in a sworn declaration that we admitted on the phone that we never conducted any search at all in response to your first request for production of documents is a flat-out lie. There is nothing we said on the phone call of November 10, 2022, that could reasonably be construed as an admission that we never conducted a search or that we did nothing more than turn over documents that had previously been produced in response to an open-records request, and no lawyer with a modicum of competence could interpret our statements that way.

If we file a response tomorrow, we will submit sworn declarations stating that Mr. Bernstein is misrepresenting what we said on the phone call, and we will explain in detail how we did "search" for documents and how we went beyond the documents produced in response to the earlier Texas Public Information Act request.

(2) Your claim on page 3 that the "PDF versions of emails" that we produced we "stripped of **all** attachments" is false. Many of those e-mail PDFs included PDFs of the attachments, although we acknowledge that not all of them did. Sarah Salomon's declaration (ECF No. 57-1) which you cite to support this claim, never says that all of the attachments were missing from that production of documents.

(3) Your repeated claims that we are "intentionally withholding" documents are false. We have made clear throughout this discovery dispute that we agree that you are entitled to the documents that you are requesting. The failure to produce the requested documents in the result of resource constraints in Llano County and in its county attorney's office, not because we have the documents ready but are refusing to turn them over. Accusing a litigant of "intentionally withholding" documents in this situation is false and defamatory.

I am continuing to review with Dwain and Matt whether there are other false statements and accusations in your motion to compel, and we may uncover more before we file our response tomorrow.

I recommend that we agree to an additional one-week or two-week extension rather than having us respond to the motion to compel tomorrow. Any response that we file tomorrow will be accompanied by evidence proving that Mr. Bernstein's accusations are false. We have also made substantial progress toward producing the e-mails in their native format, and we expect to have that completed by next week. We are on the verge of resolving this without the Court's involvement, and we are all in agreement that you are entitled to the documents that you are requesting. I think the Court will appreciate our making an effort to resolve this matter among ourselves, especially when there is no disagreement between us over your entitlement to the relevant documents.

Thanks for considering this.


—Jonathan


------------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842

**CONFIDENTIALITY NOTICE:**
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

**PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK PRODUCT**

-----------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law
papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842

**CONFIDENTIALITY NOTICE:**
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

**PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK PRODUCT**

-----------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law
papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842

**CONFIDENTIALITY NOTICE:**
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

**PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK PRODUCT**

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postmark
Here

MAR 31 2023

Postage
$
Total Postage and Fees
$

Sent To *Ellen V. Leonida*
*Braunhagey & Borden LLP*
Street and Apt. No., or PO Box No. *351 California St, 10th floor*
City, State, ZIP+4® *San Francisco, CA 94104*

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7020 1290 0001 3550 6003

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**Ellen V. Leonida**
**Braunhagey & Borden LLP**
**351 California St, 10th floor**
**San Francisco, CA 94104**

9590 9402 7986 2305 0799 87

2. Article Number *(Transfer from service label)*
7020 1290 0001 3550 6003

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Xlanaer*
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)         $ _____
☐ Return Receipt (electronic)        $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$ 8.10

Total Postage and Fees
$

Sent To
Braun Hagey & Borden LLP
Street and Apt. No., or PO Box No.
354 California St. 10th Floor
City, State, ZIP+4®
San Francisco, Ct. 94104

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

7020 1290 0001 3550 5990

LLANO, TEXAS
Postmark
Here
MAR 28 2023

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Braun Hagey & Borden LLP
354 California St. 10th Floor
San Francisco, Ct.
94104

9590 9402 7986 2305 0799 94

2. Article Number *(Transfer from service label)*
7020 1290 0001 3550 5990

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
   ...ed Mail Restricted Delivery
   ($500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053        Domestic Return Receipt

From: **Ellen Leonida** Leonida@braunhagey.com
Subject: RE: defendants' first set of written discovery requests
Date: February 23, 2023 at 11:50 AM
To: Jonathan Mitchell jonathan@mitchell.law
Cc: Katherine Chiarello katherine@wittliffcutter.com, Max Bernstein bernstein@braunhagey.com, Matt Rienstra matt.rienstra@co.llano.tx.us, Dwain K. Rogers drogers@co.llano.tx.us, Maria Calaf mac@wittliffcutter.com, Kayna Levy kayna@wittliffcutter.com, Shannon Morrissey Morrissey@braunhagey.com, Ryan Botkin ryan@wittliffcutter.com, Ellis Herington herington@braunhagey.com

EL

Counsel,

Defendants' first set of written discovery requests was served on February 22, 2023. Please correct your recent requests to prevent future confusion.

We will consult with our clients regarding their availability for deposition in March and get back to you.

Will you stipulate that the parties can take more than ten depositions? We believe that additional depositions are warranted based on the factual disputes in this case, as well as the Defendants' continued failure to produce all relevant discovery, including contemporaneous emails and messages. Please advise us of your position so that we may seek leave of the court if necessary.

Finally, can you confirm whether you are contending that Defendants' recent discovery production—which does not appear to include librarians' contemporaneous emails, documents related to Defendant Cunningham, or any messaging application or social media messages—completes your responses to Plaintiffs' discovery requests.

Best,
Ellen Leonida
B R A U N **H A G E Y** & B O R D E N LLP
Direct: (415) 684-7285
braunhagey.com/impact

**From:** Jonathan Mitchell <jonathan@mitchell.law>
**Sent:** Wednesday, February 22, 2023 2:23 PM
**To:** Ellen Leonida <Leonida@braunhagey.com>
**Cc:** Katherine Chiarello <katherine@wittliffcutter.com>; Max Bernstein <bernstein@braunhagey.com>; Matt Rienstra <matt.rienstra@co.llano.tx.us>; Dwain K. Rogers <drogers@co.llano.tx.us>; Maria Calaf <mac@wittliffcutter.com>; Kayna Levy <kayna@wittliffcutter.com>; Shannon Morrissey <Morrissey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>; Ellis Herington <herington@braunhagey.com>
**Subject:** defendants' first set of written discovery requests

**\*\*\* EXTERNAL MESSAGE \*\*\***

Counsel:

Attached are the defendants' first set of written discovery requests for each of the seven plaintiffs.

—Jonathan


----------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law
papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842


**CONFIDENTIALITY NOTICE**:
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

**PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK PRODUCT**

From: **Jonathan Mitchell** jonathan@mitchell.law
Subject: **Re: defendants' first set of written discovery requests**
Date: February 23, 2023 at 12:31 PM
To: Ellen Leonida Leonida@braunhagey.com
Cc: Katherine Chiarello katherine@wittliffcutter.com, Max Bernstein bernstein@braunhagey.com, Matt Rienstra matt.rienstra@co.llano.tx.us, Dwain K. Rogers drogers@co.llano.tx.us, Maria Calaf mac@wittliffcutter.com, Kayna Levy kayna@wittliffcutter.com, Shannon Morrissey Morrissey@braunhagey.com, Ryan Botkin ryan@wittliffcutter.com, Ellis Herington herington@braunhagey.com

The defendants are opposed to any additional depositions.

My understanding is that additional discovery responses will be served today or tomorrow, although Dwain and Matt will have more details on that.

> On Feb 23, 2023, at 11:50 AM, Ellen Leonida <Leonida@braunhagey.com> wrote:
>
> Counsel,
>
> Defendants' first set of written discovery requests was served on February 22, 2023. Please correct your recent requests to prevent future confusion.
>
> We will consult with our clients regarding their availability for deposition in March and get back to you.
>
> Will you stipulate that the parties can take more than ten depositions? We believe that additional depositions are warranted based on the factual disputes in this case, as well as the Defendants' continued failure to produce all relevant discovery, including contemporaneous emails and messages. Please advise us of your position so that we may seek leave of the court if necessary.
>
> Finally, can you confirm whether you are contending that Defendants' recent discovery production—which does not appear to include librarians' contemporaneous emails, documents related to Defendant Cunningham, or any messaging application or social media messages—completes your responses to Plaintiffs' discovery requests.
>
> Best,
> Ellen Leonida
> **B R A U N** HAGEY **& B O R D E N** LLP
> Direct: (415) 684-7285
> braunhagey.com/impact
>
> **From:** Jonathan Mitchell <jonathan@mitchell.law>
> **Sent:** Wednesday, February 22, 2023 2:23 PM
> **To:** Ellen Leonida <Leonida@braunhagey.com>
> **Cc:** Katherine Chiarello <katherine@wittliffcutter.com>; Max Bernstein <bernstein@braunhagey.com>; Matt Rienstra <matt.rienstra@co.llano.tx.us>; Dwain K. Rogers <drogers@co.llano.tx.us>; Maria Calaf <mac@wittliffcutter.com>; Kayna Levy <kayna@wittliffcutter.com>; Shannon Morrissey <Morrissey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>; Ellis Herington <herington@braunhagey.com>
> **Subject:** defendants' first set of written discovery requests
>
> **\*\*\* EXTERNAL MESSAGE \*\*\***

EXTERNAL MESSAGE

Counsel:

Attached are the defendants' first set of written discovery requests for each of the seven plaintiffs.

—Jonathan

------------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law
papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842

**CONFIDENTIALITY NOTICE**:
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

**PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK PRODUCT**

------------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law
papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842

**CONFIDENTIALITY NOTICE**:
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

**PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK PRODUCT**

P.App.370

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**Leila Green Little**, et al.,

        Plaintiffs,

v.

**Llano County**, et al.,

        Defendants.

Case No. 1:22-cv-00424-RP

## MOTION TO EXPEDITE CONSIDERATION OF DEFENDANTS' MOTION FOR STAY PENDING APPEAL

On April 11, 2023, the defendants filed an opposed motion to stay the preliminary-injunction order pending appeal. (ECF No. 146). The defendants acknowledged that this Court had already rejected most of the arguments presented in their motion, but the rules of appellate procedure required the defendants to seek and obtain a ruling on their stay pending appeal before requesting such relief from the Fifth Circuit. *See* Fed. R. App. P. 8(a)(2)(A)(ii).

Because this Court has already considered most the defendants' arguments in its preliminary-injunction order and found them unpersuasive, the defendants respectfully ask the Court to expedite consideration by summarily denying their motion for stay pending appeal without awaiting a response from the plaintiffs. This will allow the defendants to request a stay pending appeal from the Fifth Circuit under Rule 8(a). We have conferred with counsel for the plaintiffs and they oppose this request.

A proposed order is attached.

Respectfully submitted.

<div style="display:flex;">
<div style="flex:1;">

Dwain K. Rogers
Texas Bar No. 00788311
County Attorney

Matthew L. Rienstra
Texas Bar No. 16908020
First Assistant County Attorney

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

Dated: April 19, 2023

</div>
<div style="flex:1;">

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940
(phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Defendants*

</div>
</div>

P.App.372

## CERTIFICATE OF CONFERENCE

I certify that I e-mailed Ellis Herington, counsel for the plaintiffs, and she informed me that the plaintiffs opposed this motion.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Defendants*

P.App.373

## CERTIFICATE OF SERVICE

I certify that on April 19, 2023, I served this document through CM/ECF upon:

Ellen V. Leonida
Matthew Borden
J. Noah Hagey
Max Bernstein
Ellis E. Herington
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

Ryan A. Botkin
Katherine P. Chiarello
María Amelia Calaf
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com

*Counsel for Plaintiffs*

                                       /s/ Jonathan F. Mitchell
                                       Jonathan F. Mitchell
                                       *Counsel for Defendants*

P.App.374

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

**Leila Green Little**, et al.,

        Plaintiffs,

v.

**Llano County**, et al.,

        Defendants.

Case No. 1:22-cv-00424-RP

## [PROPOSED] ORDER DENYING DEFENDANTS' MOTION FOR STAY PENDING APPEAL

The defendants' motion for stay pending appeal is DENIED.

_____

Dated: _____

HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

Case 23-50224 Document 40-3 Page: 381 Date Filed: 06/01/2023

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFFS' REPLY IN SUPPORT OF
## <u>THEIR MOTION TO EXTEND DISCOVERY</u>

Plaintiffs respectfully submit this Reply in further support of their Motion to Extend

Discovery (the "Motion," ECF No. 136), and in response to Defendants' Response thereto (the

"Opposition," ECF No. 152). Defendants concede that they have not yet produced all discovery

to which Plaintiffs are entitled and that, when they do, Plaintiffs may well need additional

discovery. They also recognize Plaintiffs have six outstanding motions for discovery pending.

Yet Defendants oppose extending the discovery period—without citing *any* prejudice they would

suffer as a result of a reasonable extension. Instead, Defendants re-assert baseless claims that

Plaintiffs have misrepresented Defendants' conduct during this litigation. Throughout this

litigation, Defendants have submitted false certifications regarding their discovery compliance,

withheld critical discovery, and unilaterally refused to appear for depositions. (*See* ECF Nos. 92,

114, 123, 124, 127, 135, & 151.) Extending the fact discovery cut-off is necessary to enable

Plaintiffs to secure the discovery to which they are entitled. The Court should grant Plaintiffs'

Motion.

P.App.376

# ARGUMENT

Plaintiffs seek to extend the fact discovery cut-off for the very reason Defendants concede "could justify a re-opening of discovery" (Opp'n at 2)—namely, the likely scenario that some or all of Plaintiffs' pending discovery motions are granted, and Plaintiffs must seek new discovery from Defendants based on what they find in the compelled document productions or depositions. (*See* Mot. at 9-10.)

Defendants make two arguments in their Opposition; both miss the mark. Defendants argue that "the Court should not extend or re-open the discovery period unless the plaintiffs identify *what* they want to discover and *why* they could not have sought and obtained that discovery before March 31, 2023." (Opp'n at 2-3 (emphasis in original).) But Plaintiffs need not, and indeed could not, identify the specific additional discovery that they may need to take during the extended discovery period. The additional discovery Plaintiffs may seek is contingent on the discovery Plaintiffs have yet to receive from Defendants—this includes materials responsive to discovery requests served in May and September 2022, as well as any discovery ordered produced by the Court pursuant to Plaintiffs' pending motions. It is precisely because Defendants have repeatedly obstructed discovery in this case that Plaintiffs cannot identify what additional discovery they want at this juncture.

Defendants also argue that because the Court has yet to rule on Plaintiffs' discovery motions, and Plaintiffs cannot yet identify what additional discovery they want, "the Court should either deny the plaintiffs' motion without prejudice, or it should hold the motion in abeyance until the magistrate rules on the pending motions to compel[.]" (Opp'n at 2.) This approach would only inject further unnecessary delay into this case and stall Plaintiffs' ongoing discovery efforts without justification. While Plaintiffs primarily seek to use the requested

additional time for fact discovery to follow up on the subject matter of requests that are the subject of Plaintiffs' pending discovery motions, Plaintiffs do not concede (and Defendants do not establish in their Opposition) that additional discovery unrelated to those pending motions would be somehow off-limits or unavailable to Plaintiffs in the event that the Court does grant the Motion. Defendants' pattern of discovery misconduct during this case has stymied many of Plaintiffs' discovery efforts, as set forth more fully in Plaintiffs' Motion and in Plaintiffs' Supplemental Brief in support of their Motions to Compel (ECF No. 137). Extending the fact discovery cut-off to provide more time for Plaintiffs' continued attempts to obtain discovery to which they are entitled is also warranted.[1]

## **CONCLUSION**

For the foregoing reasons and those discussed in Plaintiffs' Motion, Plaintiffs respectfully request that the Court grant the Motion and extend fact discovery in this case until May 19, 2023.

Dated: April 21, 2023

Respectfully submitted,

*/s/ Ellen Leonida*
Ellen V. Leonida (CA Bar No. 184194)
Matthew Borden (CA Bar No. 214323)
J. Noah Hagey (CA Bar No. 262331)
Max Bernstein (NY Bar No. 5609037)
Ellis E. Herington (CA Bar No. 343085)
**BraunHagey & Borden LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel:  415-599-0210
Fax: 415-276-1808
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com

---

[1] Similarly, Defendants' statement that they "agreed to produce all outstanding and unopposed discovery before the hearing before the magistrate judge on April 27, 2023" is of little merit given that no additional discovery has been produced in the last week, and Defendants have made no indication that it is, in fact, forthcoming. (Leonida Decl. ¶ 2.)

herington@braunhagey.com

Ryan A. Botkin (TX Bar No. 00793366)
Katherine P. Chiarello (TX Bar No. 24006994)
María Amelia Calaf (TX Bar No. 24081915)
Kayna Stavast Levy (TX Bar No. 24079388)
**Wittliff | Cutter PLLC**
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2023, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

<div align="right">

*/s/* Ellen Leonida

Ellen V. Leonida
</div>

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## <u>DECLARATION OF ELLEN LEONIDA</u>

I, Ellen Leonida, declare:

1.      I am an attorney at BraunHagey & Borden LLP and counsel of record for Plaintiffs in the above-captioned matter. I make this declaration based on personal knowledge and if called upon to testify, I could and would testify competently to the facts stated herein.

2.      As of close of business on April 21, 2023, Defendants have not produced any additional documents to Plaintiffs, or served any additional discovery responses on Plaintiffs, since the parties met and conferred regarding outstanding discovery disputes on April 14, 2023.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.


Dated: April 21, 2023                    By:  */s/ Ellen Leonida*

                                                         Ellen Leonida

P.App.381

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|                                | §  |                              |
|--------------------------------|----|------------------------------|
| Leila Green Little, *et al.*,  | §  |                              |
|                                | §  |                              |
| Plaintiffs,                    | §  |                              |
|                                | §  |                              |
| v.                             | §  | Civil Action No. 1:22-cv-00424-RP |
|                                | §  |                              |
| Llano County, *et al.*,        | §  |                              |
|                                | §  |                              |
| Defendants.                    | §  |                              |
|                                | §  |                              |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR STAY PENDING APPEAL

Plaintiffs Leila Green Little, Jeanne Puryear, Kathy Kennedy, Rebecca Jones, Richard Day, Cynthia Waring, and Diane Moster ("Plaintiffs") respectfully submit their response in opposition to Defendants' Motion For Stay Pending Appeal (the "Motion," ECF No. 146).

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

I.     DEFENDANTS ARE UNLIKELY TO SUCCEED ON THE MERITS ........................... 2

     A.     The Court Correctly Found that Defendants Engaged in Impermissible Viewpoint and Content-Based Discrimination ......................................................... 3

     B.     The Court's Factual Findings Show Defendants' Conduct Violated the First Amendment Under Binding Supreme Court and Fifth Circuit Precedent ............. 5

          1.     The Court's factual findings of impermissible discrimination trigger strict scrutiny of Defendants' book removal decisions ........................................ 5

          2.     Removing materials from public libraries based on viewpoint and content discrimination violates the First Amendment ............................................ 6

     C.     The Court Properly Determined that Defendants' Voluntary Cessation Does Not Obviate Plaintiffs' First Amendment Claims ........................................... 8

     D.     The Context of the Court's Order Clearly Establishes Its Reasonable Scope ........ 8

II.     DEFENDANTS HAVE NOT SUFFERED AND WILL NOT SUFFER ANY INJURY FROM THE PRELIMINARY INJUNCTION ......................................... 9

III.     PLAINTIFFS WILL SUFFER AN IRREPARABLE DEPRIVATION OF THEIR FIRST AMENDMENT RIGHTS IF A STAY IS GRANTED ........................... 10

IV.     THE PUBLIC INTEREST WEIGHS HEAVILY TOWARDS KEEPING AN INJUNCTION THAT PROTECTS FIRST AMENDMENT FREEDOMS ................................................................................................... 11

CONCLUSION ................................................................................................... 12

CERTIFICATE OF SERVICE ............................................................................... 13

P.App.383

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Barber v. Bryant*,
   833 F.3d 510 (5th Cir. 2016) ................................................................. 2

*Board of Education v. Pico*,
   457 U.S. 853 (1982)........................................................................... 6, 7

*Bell v. Itawamba Cnty. Sch. Bd.*,
   799 F.3d 379 (5th Cir. 2015) ................................................................. 6

*Campbell v. St. Tammany Parish School Board*,
   64 F.3d 184 (5th Cir. 1995) ............................................................... 6, 7

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
   704 F.3d 413 (5th Cir. 2013) ................................................................. 8

*Hilton v. Braunskill*,
   481 U.S. 770 (1987)............................................................................... 2

*Morse v. Frederick*,
   551 U.S. 393 (2007)............................................................................... 6

*NetChoice, L.L.C. v. Paxton*,
   49 F.4th 439 (5th Cir. 2022) ............................................................... 6, 7

*Nken v. Holder*,
   556 U.S. 418 (2009)........................................................................... 1, 2

*Sund v. City of Wichita Falls*,
   121 F. Supp. 2d 530 (N.D. Tex. 2000) ................................................ 7, 8

*Texans for Free Enter. v. Texas Ethics Comm'n*,
   732 F.3d 535 (5th Cir. 2013) ............................................................... 11

*Texas v. United States*,
   40 F.4th 205 (5th Cir. 2022) ................................................................. 2

*United States v. Fluitt*,
   No. 22-30316, 2022 WL 3098734 (5th Cir. Aug. 4, 2022) .................... 10

*W. Virginia State Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943)............................................................................... 7

**Other Authorities**

*Fed. Prac. & Proc. Civ.* § 2949 (3d ed. 2023).......................................... 4

## INTRODUCTION

Defendants' motion to stay the Court's Preliminary Injunction (the "Order," ECF No. 133) should be denied. Defendants cannot meet any of the requirements for a stay as set forth in *Nken v. Holder*, 556 U.S. 418, 433-34 (2009): they cannot show they are likely to succeed on appeal; they suffer no irreparable injury from temporarily putting the Banned Books back in the library catalog; they will cause Plaintiffs irreparable deprivations of their First Amendment rights if they are granted a stay; and their request conflicts with the public interest.[1]

The merits overwhelmingly favor Plaintiffs. The Court issued the Preliminary Injunction after conducting a two-day hearing, reviewing hundreds of documents, evaluating the credibility of numerous witnesses, and considering seven briefs. Defendants' attacks on the Injunction (Mot. at 3, 6-7) ignore the Court's factual determinations and ask the Court to credit post hoc declarations written by Defendants' lawyers, instead of live witness testimony and documents Defendants wrote before this case was filed. Defendants also seek to re-hash legal theories the Court has rejected based on controlling Fifth Circuit and Supreme Court precedent. (Mot. at 3-6.) These arguments fail for the reasons this Court already has given.

The other *Nken* factors similarly weigh against Defendants. Defendants' assertion that complying with the Injunction threatens closure of the libraries (Mot. at 8) has proven untrue; the libraries remain open. Defendants also claim that the Injunction requires them to restore every book they have ever weeded to the shelves. (Mot. at 7.) This theory—which Defendants have made no effort to comply with—misinterprets the Injunction, which is based on the books that Defendants attempted to censor in this case. Now that Defendants have replaced the Banned

---

[1] Plaintiffs understand Defendants seek only a stay of the Court's preliminary injunction, not the ongoing trial proceedings in the District Court. Defendants refer to a "stay of proceedings" once, in the final paragraph of their brief, (Mot. at 9), and context suggests this too refers to the preliminary injunction.

Books, the status quo is that Plaintiffs and the public are free to access books of their choosing. Staying such relief would cause the same irreparable injury to Plaintiffs and harm to the public interest that warranted the Injunction in the first place.

## ARGUMENT

"A stay [pending appeal] is an extraordinary remedy." *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022) (quotation omitted) (per curiam) (denying federal agency's request to stay vacatur of agency rule). It is "an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal citations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Id*. at 433–34. In deciding whether to stay a preliminary injunction pending appeal, federal courts consider four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors of this standard carry the greatest weight. *Id*. at 511.

## I. DEFENDANTS ARE UNLIKELY TO SUCCEED ON THE MERITS

Defendants cannot satisfy the requisite "strong showing" of likelihood of success on their appeal. *Nken*, 556 U.S. at 433. None of the infirmities they allege of the Court's Order have merit. First, the Court has already weighed and rejected Defendants' post-hoc explanation for their discriminatory conduct. Second, Defendants cannot point to any legitimate flaws in the Court's legal conclusions. Third, as the Court explained, Defendants' efforts to moot this case

through voluntary cessation does not negate Plaintiffs' First Amendment claims. And last, the Court's Order is properly limited in scope.

**A.    The Court Correctly Found that Defendants Engaged in Impermissible Viewpoint and Content-Based Discrimination**

After a two-day evidentiary hearing, the Court found that "Plaintiffs have clearly shown that Defendants' decisions were likely motivated by a desire to limit access to the viewpoints to which Wallace and Wells objected," including views on LGBTQ and racial equity. (Order at 19.) "[T]here is no real question that [Defendant Milum's] targeted review [of the Banned Books] was directly prompted by complaints from patrons and county officials over the content of these titles." (*Id.* at 21; *see generally id.* at 18-21 (collecting record evidence of viewpoint and content-based discrimination motivating weeding).)

Defendants do not challenge the Court's finding that county official Defendants Cunningham and Moss directed Milum to remove the Books based on their own discriminatory views, or the record on which its findings were based. Nor do Defendants identify any substantial evidence to the contrary. Defendants point only to Milum's contradictory and self-serving declarations, then demand that the Court "explain why it thinks Milum is lying." (Mot. at 7.) But the Court already explained its basis for rejecting Milum's narrative as a "pretextual" and "post-hoc justification." (Order at 20.) The Injunction identifies the robust evidentiary record that contradicts Milum's statements, including: communications from Defendants Wallace and Wells to Defendants Cunningham, Moss, and Milum complaining about the Banned Books as "pornographic filth" and "CRT and LGBTQ books," (Order at 18 (citing emails, call logs, and complaint logs)); communications from Defendants Cunningham and Moss to Milum directing her to remove the Banned Books from the shelves, (*id.* (citing emails and meeting logs)); emails and hearing testimony confirming Milum closed the library to check for "inappropriate books" at

the direction of the Commissioners Court (*id.*); and testimony from Milum that "the books that she pulled were books that Wallace, Wells, or the Commissioners identified as 'inappropriate'" (*id.*). The Court was entitled to credit Milum's live testimony, subject to the crucible of cross-examination, over post-hoc declarations written by her lawyer who was, himself, a participant in the underlying book banning. *See* 11A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2949 (3d ed. 2023) ("When the outcome of a Rule 65(a) application depends on resolving a factual conflict by assessing the credibility of opposing witnesses, it seems desirable to require that the determination be made on the basis of their demeanor during direct and cross-examination, rather than on the respective plausibility of their affidavits."). Further, the Court underscored the additional direct and circumstantial evidence showing Defendants' dislike of the Banned Books, including that the Banned Books did not meet the standards for weeding but were removed anyway. (Order at 18-21.)

Each of these findings, whether taken individually or together, provides overwhelming support for the Court's determination that Milum acted to enforce Defendants' unconstitutional discrimination against books they disliked. Indeed, Defendants' attacks on the Court's factual findings are particularly inappropriate in light of their repeated discovery violations, including withholding critical discovery until after the Preliminary Injunction hearing. [2] (*See generally* Pls.' Mot. Compel Disc. Responses and for Sanctions (ECF No. 114).)

---

[2] In a March 28, 2022 message, for example, Defendant Moss states "I gripped [sic] at Amber and Tina yesterday at the library and let them know that anything the commissioners court decide to do that's the way it is and that[']s what they need to do and go by or they should probably find a job they were happy at." (Decl. of Ellen Leonida ("Leonida Decl.") Ex. 1.) This evidence, **which was not produced until March 16, 2023**, directly contradicts Moss's hearing testimony, including that he did not instruct Milum to remove the Books and "wanted to make sure that she understood I wasn't her boss." (Hr'g Tr. Vol. 2 at 165:16-17.)

**B.    The Court's Factual Findings Show Defendants' Conduct Violated the First
Amendment Under Binding Supreme Court and Fifth Circuit Precedent**

Defendants' attacks on the Court's legal conclusions fail for two reasons: first, the Court

correctly applied strict scrutiny to its finding that Defendants were motivated by improper

viewpoint and content-based discrimination; and second, the Court correctly identified binding

precedent that does not allow Defendants to remove books based on that discrimination simply

because they operate a public library.

**1.    The Court's factual findings of impermissible discrimination trigger
strict scrutiny of Defendants' book removal decisions**

Defendants argue that the Court ruled that "'viewpoint discrimination' is categorically

forbidden in a public library's weeding decisions, and that any content-based weeding decision

must satisfy the strict-scrutiny standard." (Mot. at 3.) The Court's actual ruling was substantially

narrower, and addressed only whether the evidence of Defendants' specific discriminatory

motivations was sufficient to impose strict scrutiny.

As the Court correctly determined, Plaintiffs made "a clear showing that the substantial

motivation for Defendants['] actions appears to be discrimination," which triggers strict scrutiny.

(Order at 22 (internal quotation marks omitted).) On review of the record, the Court found, *inter

alia*, that Defendants' motivations in instructing Milum to weed the Banned Books bypassed

permissible "cull[ing] and curat[ing]," (Order at 21), and crossed into prohibited viewpoint and

content-based discrimination (*see id.* at 18 ("Here, the evidence shows Defendants targeted and

removed books, including well-regarded, prize-winning books, based on complaints that the

books were inappropriate."), 20 ("[E]ach of the books in question were slated for review (and

ultimately removal) precisely because certain patrons and county officials complained that their

contents were objectionable.")). As the Court found, Defendants' censorship of books they found

"inappropriate" or "objectionable" is a direct violation of the First Amendment. "[S]peech that

'might be perceived as offensive to some . . . is at the core of what the First Amendment is designed to protect.'" *Bell v. Itawamba Cnty. Sch. Bd.*, 799 F.3d 379, 402 (5th Cir. 2015) (citing *Morse v. Frederick*, 551 U.S. 393, 403, 409 (2007)). Therefore the Court's application of strict scrutiny was appropriate.

### 2. Removing materials from public libraries based on viewpoint and content discrimination violates the First Amendment

Defendants challenge the Court's determination that discriminatory content removal gives rise to a First Amendment violation under *Board of Education v. Pico*, 457 U.S. 853 (1982) (plurality opinion) and *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995). Their disagreements with the Court's analysis are unavailing.

Both the Court and the parties have repeatedly addressed the applicability of *Pico* and *Campbell* to book removal. As the Court rightly found, *Pico* holds that "the First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination," (Order at 17 (citing *Pico*, 457 U.S. at 871)), and *Campbell* similarly holds that "the 'decision to remove [books] must withstand greater scrutiny within the context of the First Amendment than would a decision involving a curricular matter'" (Order at 19 (quoting *Campbell*, 64 F.3d at 189-90)). "To hold otherwise" that removal is not subject to heightened scrutiny "would be to entirely disregard *Campbell*." (Order at 20.) *See Pico*, 457 U.S. at 871-72 ("[O]ur holding today affects only the discretion to *remove* books . . . simply because they dislike the ideas contained in those books . . . ." (emphasis in original)).

The Fifth Circuit recently reiterated this principle in an analogous context. In *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022), the Circuit Court considered the validity of a Texas law that would prohibit social media platforms from removing posted user content that they dislike. The social media companies argued that they have equal editorial discretion to

P.App.390

select what content may be made available and to remove content after it has already been posted. The Fifth Circuit rejected this argument, stating there is no authority "even remotely suggesting that *ex post* censorship constitutes editorial discretion akin to *ex ante* selection." *Id.* at 465. It held that removal of content already made accessible to the public was subject to greater scrutiny than the editorial "selection and presentation of content *before* that content is . . . disseminated." *Id.* at 464 (emphasis in original).

Defendants do not try to disprove that discriminatory motivations for removing books in public libraries face strict scrutiny. Instead, they argue that *Pico* and *Campbell* hold that schools may engage in discriminatory book removal. (Mot. at 3-6.) This is inapposite. Public schools, unlike public libraries, are recognized "vehicles for inculcating fundamental values," *Pico*, 457 U.S. at 864. Federal courts therefore permit school officials to remove books they determine to be "pervasively vulgar" or lacking "educational suitability." *Id.* at 871. But even then, "local school boards may not remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal to 'prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.'" *Pico*, 457 U.S. at 871 (*quoting W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)); *see also Campbell*, 64 F.3d at 189 (*Pico's* most narrow concurrence "does not reject the plurality's assessment of the constitutional limitations on school officials' discretion to remove books from a school library").

These limited exceptions for school officials—none of which would permit Defendants' removal of the censored books here—do not restrict public access to the "freewheeling inquiry" facilitated by public libraries. *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 548 (N.D. Tex. 2000). "The [First Amendment] principles set forth in *Pico*—a school library case—have even greater force when applied to public libraries." *Id.* Strict scrutiny therefore applies.

**C.** **The Court Properly Determined that Defendants' Voluntary Cessation Does Not Obviate Plaintiffs' First Amendment Claims**

As the Court has already found, Defendants cannot moot the need for injunctive relief by having their lawyer purchase the banned books and then donate them to the library to be kept in a secret, although theoretically accessible, location. (Order at 22-23.) The Court determined that "Defendants' creation of an 'in-house checkout system' comprises precisely the type of posturing the voluntary cessation exception is meant to prevent." (Order at 12); *see also Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (defendants cannot "evade sanction by predictable protestations of repentance and reform after a lawsuit is filed"). Allowing that system to resume would place "a significant burden on [Plaintiffs'] ability to gain access to those books." *Sund*, 121 F. Supp. 2d at 534. Under the secret library system, Plaintiffs have no reliable way of knowing whether and when the Books are actually available. Instead, they must repeatedly visit the library and request the status of any Book they wish to check out. Plaintiffs thus would face a heightened burden on their ability to access these Books solely as a result of Defendants' impermissible discrimination.

Defendants also acknowledge that Plaintiffs "remain 'injured' by the continued absence of those books from the library shelves." (Mot. at 2.) While they inexplicably characterize denying Plaintiffs' constitutional rights as a mere "trifle," (Mot. at 2), the Court's Order found that Defendants' original book removal and their secret library system are both intended to obstruct Plaintiffs' exercise of their fundamental right to access information. (Order at 13.) This is a First Amendment injury.

**D.** **The Context of the Court's Order Clearly Establishes Its Reasonable Scope**

Defendants posit an overbroad interpretation of Court's Order to restore to the library system all "books that were removed because of their viewpoint or content." (Mot. at 7-9.) The

P.App.392

Injunction, however, only includes those books that Defendants removed or ordered removed based on their viewpoint and content-based discrimination since the initiation of the events that gave rise to Plaintiffs' claims. Defendants' interpretation, that the Court has ordered them to locate and interrogate every librarian in the history of the Llano County Library System for the identity of all books ever weeded, strains credulity, particularly within the circumstances of this litigation, and Defendants offer no evidence with their moving papers that they have made any effort to comply with this contrived interpretation of the Court's Injunction.

None of the alleged defects in the Court's reasoning pass muster. As Defendants have not met their burden to show likelihood of success on appeal, this factor counsels in favor of denial.

## II.   DEFENDANTS HAVE NOT SUFFERED AND WILL NOT SUFFER ANY INJURY FROM THE PRELIMINARY INJUNCTION

Defendants have not identified any irreparable injury they would suffer absent a stay. Their first alleged injury—closing the Llano County Library System—has been eliminated by the people of Llano County. On April 13, 2023, after holding a public hearing for members of the Llano County community, the Llano County Commissioners' Court voted to remove the proposed closure of the library system from consideration.[3] Even if the Commissioners' Court had closed the library system, it would not be an injury to Defendants as much as a circumstance of their own making. Defendants previously planned to close the Llano County Library System in the event of an injunction, not from fear of "expos[ing] its librarians and county officials to lawsuits," (Mot. at 8), but to continue their unconstitutional censorship. (*See* Leonida Decl. Ex. 2 (Feb. 2, 2023 text message from Defendant Wallace to M. Goodson stating "Llano's County

---

[3] *See Commissioner Court Minutes*, Llano County Texas, Apr. 13, 2023, https://www.co.llano.tx.us/upload/page/0961/2023%20Minutes/11LCCC%20SPECIAL%20CAL LED%20MINUTES%2004-13-2023.pdf

leaders are amazing!! The judge had said, if we lose the injunction, he will CLOSE the library because he WILL NOT put the porn back into the kid's section!").)

Defendants' second alleged harm, that librarians will not be able to remove books if they are damaged, is neither concrete nor an actual injury. "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant [for a stay]." *United States v. Fluitt*, No. 22-30316, 2022 WL 3098734, at *2 (5th Cir. Aug. 4, 2022).

Last, Defendants argue that the Court's Order asks them to complete an impossible task. *See supra* Section I.D. That is certainly the case under Defendants' interpretation of the Order, but that is not what the Order requires. *See id.* Defendants appear to know this too, as they have made the 17 Banned Books available as part of the library catalog since entry of the Order.[4] Defendants have suffered and will suffer no harm from following the Order.

Because Defendants cannot show any harm to them under the injunction, this factor weighs in favor of denial as well.

## III. PLAINTIFFS WILL SUFFER AN IRREPARABLE DEPRIVATION OF THEIR FIRST AMENDMENT RIGHTS IF A STAY IS GRANTED

A stay of the injunction would allow Defendants to inflict irreparable harm on Plaintiffs. The preliminary injunction proceedings and later events have made clear that Defendants intend to keep the Banned Books from Plaintiffs' access however possible, despite Defendants' protestations to the contrary. Defendants have engaged in a range of tactics to slow Plaintiffs' ability to vindicate their rights, including (i) delaying the production of crucial discovery, in some instances producing text messages of deponents during the deponent's testimony, (ii) failing to respond at all to numerous discovery requests, (iii) withholding information (*e.g.*, the

---

[4] *See* Llano County Library System Catalog, https://llano.biblionix.com/catalog/, in which the Banned Books now appear.

Yahoo! Email accounts used by Llano County librarians), and (iv) refusing to produce witnesses for deposition after failing to object to their deposition notices. (*See generally* Pls.' Mot. Extend Discovery, ECF No. 136.)

Defendants' "in-house checkout system" is just one more example of their efforts to deny Plaintiffs legal recourse. But as the Court determined, "the library system's in-house checkout system [does not] mitigate the constitutional harm Plaintiffs are suffering," (Order at 22), as it is merely a form of voluntary cessation. Further, it would impermissibly burden Plaintiffs' access to information. *See supra* Section I.C.

Finally, upon entry of the Preliminary Injunction, Defendants initiated planned proceedings to close the Llano Library System rather than comply with the Court's Order. (*See* Leonida Decl. Ex. 2.) These efforts show Defendants' true intent to keep the Banned Books inaccessible to Plaintiffs and the Llano County community and to perpetuate deprivation of Plaintiffs' First Amendment rights. This immediate and irreparable harm to Plaintiffs weighs towards denying the stay.

## IV. THE PUBLIC INTEREST WEIGHS HEAVILY TOWARDS KEEPING AN INJUNCTION THAT PROTECTS FIRST AMENDMENT FREEDOMS

As the Court found, "injunctions protecting First Amendment freedoms are always in the public interest." (Order at 24 (quoting *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013)).) Defendants offer no countervailing interest that would be served by a stay. There is no risk of library closure—the Llano County Commissioners' Court has already rejected that proposal. Contrary to Defendants' arguments (Mot. at 9), there also is no public interest in using a stay to deter other library patrons from enforcing their First Amendment rights against similar censorship elsewhere. Such an effect would injure, not protect, the public.

Because a stay would not serve any cognizable public interest, this factor weighs entirely in favor of denial.

## **CONCLUSION**

For the reasons stated above, the Court should deny Defendants' Motion.

Dated: April 25, 2023

Respectfully submitted,

/s/ *Ellen Leonida*

Ellen V. Leonida (CA Bar No. 184194)
Matthew Borden (CA Bar No. 214323
J. Noah Hagey (CA Bar No. 262331)
Max Bernstein (NY Bar No. 5609037)
Ellis E. Herington (CA Bar No. 343085)
Marissa R. Benavides (NY Bar. No. 5796891)
**BraunHagey & Borden LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel: 415-599-0210
Fax: 415-276-1808
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com
benavides@braunhagey.com

Ryan A. Botkin (TX Bar No. 00793366)
Katherine P. Chiarello (TX Bar No. 24006994)
María Amelia Calaf (TX Bar No. 24081915)
Kayna Stavast Levy (TX Bar No. 24079388)
**Wittliff | Cutter PLLC**
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2023, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

<div align="right">

*/s/ Ellen Leonida*
Ellen V. Leonida

</div>

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

Leila Green Little, *et al.*,

    Plaintiffs,

        v.

Llano County, *et al.*,

    Defendants.

§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 1:22-cv-00424-RP

## <u>DECLARATION OF ELLEN LEONIDA</u>

I, Ellen Leonida, declare:

1.     I am an attorney at BraunHagey & Borden LLP and counsel of record for Plaintiffs in the above-captioned matter. I make this declaration based on personal knowledge and if called upon to testify, I could and would testify competently to the facts stated herein.

2.     Attached as **Exhibit 1** is a true and correct copy of text messages between Defendants Jerry Don Moss and Ron Cunningham produced by Defendants to Plaintiffs on March 16, 2023.

3.     Attached as **Exhibit 2** is a true and correct copy of text messages between Defendant Bonnie Wallace and non-party Molly Goodson produced by Defendants to Plaintiffs on March 21, 2023.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: April 25, 2023                 By: */s/ Ellen Leonida*
                                    Ellen Leonida

P.App.398

# EXHIBIT 1

P.App.399



**Ron Cunningham**  (+1 (254) 760-8259)

I am at the West Texas CJ &C conference and was calling to remind you about the TAC legislative conference to make sure you got a room.

9:27:05 AM

Voicemail  (+1 (325) 423-1451)

9:27:40 AM    Yes sir if that is the one in August I did



**Ron Cunningham**  (+1 (254) 760-8259)

Also, if you get a chance go by and listen to some of the voice mails to me…

9:27:46 AM

At the office .

9:27:56 AM

Voicemail  (+1 (325) 423-1451)

9:28:18 AM    OK I will Bonnie has got a couple of disturbing voicemails on her cell phone also

9:29:38 AM    And just so you know I gripped at Amber and Tina yesterday at the library and let them know that anything the commissioners court decide to do that's the way it was and that 's what they need to do and go by or they should probably find a job they were happy at



**Ron Cunningham**  (+1 (254) 760-8259)

Understood!

10:41:30 AM

**Thursday, May 5, 2022**

**Ron Cunningham**  (+1 (254) 760-8259)

I am in class . If you would, please call Matt .

8:35:39 AM

Voicemail  (+1 (325) 423-1451)

8:35:49 AM    Okay



**Wednesday, May 11, 2022**

Voicemail  (+1 (325) 423-1451)

7:07:08 PM    Will you let me know if you cancel that meeting tomorrow please

**Ron Cunningham**  (+1 (254) 760-8259)

Yes we are going to discuss in the morning.

7:15:35 PM



# EXHIBIT 2

P.App.401

Bonnie N Wallace  (+1 (956) 330-8106)

Llano's County leaders are amazing !! The judge had said , if we lose the injunction , he will CLOSE the library because he WILL NOT put the porn back into the kid 's section ! Very courageous! Keep praying !

10:36:26 PM

**Friday, February 3, 2023**

Molly Goodson  (Bonham ) (+1 (254) 217-1688)

That's awesome ! That's what it takes !! Praise the Lord !! My hubby 's words exactly . 🙏

12:01:06 AM

**Sunday, February 12, 2023**

Bonnie N Wallace  (+1 (956) 330-8106)

https://podcasts .apple.com/us/podcast /the-secret-to-sharing-your-faith-with-ba rry-meguiar/id1460600818?i=10005989 98309

9:02:41 AM

**Thursday, February 16, 2023**

Molly Goodson  (Bonham ) (+1 (254) 217-1688)

Please call me when you have a moment . Thanks

11:03:00 AM

Bonnie N Wallace  (+1 (956) 330-8106)

Yes I will . In a meeting now but probably about 1pm.

11:05:35 AM

Molly Goodson  (Bonham ) (+1 (254) 217-1688)

👍

11:44:24 AM

I'm available if u are .

1:16:06 PM

**Sunday, February 19, 2023**

Molly Goodson  (Bonham ) (+1 (254) 217-1688)

Good morning ,
Would you be able to join us a zoom meeting on Monday at 7pm to answer questions about our local from this group? I can forward you these questions I received last night ahead of time .

10:18:31 AM

7:30- sprry

10:18:48 AM

Sorry

10:18:51 AM

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court [LIVE]

### Western District of Texas

**Notice of Electronic Filing**

The following transaction was entered on 4/20/2023 at 11:17 AM CDT and filed on 4/20/2023

**Case Name:** Little et al v. Llano County et al
**Case Number:** 1:22-cv-00424-RP
**Filer:**
**Document Number:** No document attached

**Docket Text:**
**Text Order DENYING [154] Motion to Expedite entered by Judge Robert Pitman. For lack of good cause shown, IT IS ORDERED that Defendants' motion is DENIED. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc)**

**1:22-cv-00424-RP Notice has been electronically mailed to:**

Dwain K. Rogers , Jr    drogers@co.llano.tx.us, cao5@co.llano.tx.us

Ellen V. Leonida    leonida@braunhagey.com, morrissey@braunhagey.com, OkaiKoi@braunhagey.com, rivera@braunhagey.com

Ellis E. Herington    herington@braunhagey.com

J. Noah Hagey    hagey@braunhagey.com, kushnir@braunhagey.com, morrissey@braunhagey.com, noah-hagey-9147@ecf.pacerpro.com, ridge@braunhagey.com, shaw@braunhagey.com

Jonathan F. Mitchell    jonathan@mitchell.law

Katherine Patrice Chiarello    katherine@wittliffcutter.com, joy@wittliffcutter.com, tracy@wittliffcutter.com

Kayna Stavast Levy    kayna@wittliffcutter.com

Maria Amelia Calaf    mac@wittliffcutter.com, joy@wittliffcutter.com, tracy@wittliffcutter.com

Matthew Borden    borden@braunhagey.com, morrissey@braunhagey.com, rivera@braunhagey.com

Matthew L. Rienstra    matt.rienstra@co.llano.tx.us, cao5@co.llano.tx.us, drogers@co.llano.tx.us

Max Benjamin Bernstein    bernstein@braunhagey.com, morrissey@braunhagey.com, rivera@braunhagey.com

Ryan A. Botkin    ryan@wittliffcutter.com, joy@wittliffcutter.com, tracy@wittliffcutter.com

**1:22-cv-00424-RP Notice has been delivered by other means to:**