# Exhibit 1
## (Declaration of Ron Cunningham)

DocuSign Envelope ID: D9B5-682E-ADB3-4657-BF91-DF142D24DA56

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**Leila Green Little**, et al.,

              Plaintiffs-Appellees,

v.

**Llano County**, et al.,

              Defendants-Appellants.

Case No. 23-50224

---

### SUPPLEMENTAL DECLARATION OF RON CUNNINGHAM

1.  My name is Ron Cunningham. I am over the age of 18 and fully competent in all respects to make this declaration.

2.  I have personal knowledge of the facts stated in this declaration, and all of these facts are true and correct.

3.  I serve as county judge of Llano County and am a named defendant and appellant in this lawsuit. I submit this declaration in support of the defendants-appellants' motion for stay pending appeal and motion to expedite the appeal.

4.  The plaintiffs' claim that I "directed" Amber Milum to "permanently remove" the butt and fart books from Llano library is false. *See* Response at 11. My e-mail to Amber Milum, which the plaintiffs introduced as Exhibit 2A at the hearing on the motion for preliminary injunction, recommended only that Ms. Milum *temporarily* remove those books from the shelves to determine whether they should remain in the children's section of the library. *See* Pls.' Ex. 2A ("Amber, I am still receiving calls, letters and emails concerning the Farts and Butts books. I think it is best to remove these books from the shelves *for now.*" (emphasis added)). I have attached an authentic copy of that e-mail as Exhibit A to this declaration. I *never* directed Amber Milum or any other library employee to weed those books or any other book.

---

5.  I also never "directed" Ms. Milum to "permanently remove" or weed books containing nudity. I merely asked Ms. Milum to *temporarily* pull certain books from the shelves to *review* whether they should continue be housed in the library or stored in the children's section. I was not involved in and had nothing to do with Ms. Milum's subsequent decision to weed any of those books. I never instructed or told anyone at the library to weed or permanently remove any book, either physical books or ebooks.

6.  I have testified repeatedly and consistently, both at the preliminary-injunction hearing and in my sworn declarations, that I did not order, direct, or pressure Ms. Milum to permanently remove or weed any material from the Llano County libraries. *See* Cunningham Decl., ECF No. 49-2, at ¶ 11 ("I have never instructed any library staff, including Ms. Milum, to remove any books from the Llano County library shelves. Nor have I removed any books. It is not within my duties as County Judge to either acquire or remove books from the libraries.").

7.  Ms. Milum has confirmed in her testimony and depositions that I did not order, direct, or pressure to permanently remove or weed any material from the Llano County libraries, and that the decision to weed the 17 disputed books in this litigation was entirely her own. *See* Hr'g Tr. Vol. 1 at 130:23–131:3 ("Q. Were any of your ultimate decisions to weed any book from the library shelves influenced in any way by anyone on the commissioners' court? A. No. Q. Were they influenced by anyone on the library advisory board? A. No."); *id.* at 90:16–17, 92:23–93:1, 97:9–12, 98:6–8, 98:24–99:3, 100:3–5, 101:13–19, 103:10–13; Milum Decl., ECF No. 49-1, at ¶ 16 ("I was never instructed or pressured by the County Judge or any of the County Commissioners to weed or otherwise permanently remove any books from the Llano County libraries. I was also never instructed to remove any books from the libraries by the Llano County Advisory Board."); Third Milum Decl., ECF No. 100-5, at ¶ 14 ("The plaintiffs' claim that Judge Cunningham 'directed' me to weed the 'butt' and

'fart' books is false. *See* Pls.' Br., ECF No. 91, at 3. Judge Cunningham recommended only that I *temporarily* remove those books from the shelves. . . . He never directed me to weed those books, and my decision to weed those books was entirely my own."); *id.* at ¶ 15 ("No other defendant in this case, including Bonnie Wallace, Rochelle Wells, Rhonda Schneider, Jerry Don Moss, or Ron Cunningham, has ever weeded a book from Llano library or directed me to weed a book."); *id.* at ¶ 16 ("The plaintiffs' claim that the "defendants" (plural) weeded or temporarily removed books from the Llano library is false. I am the only defendant who weeded the 17 disputed books from the Llano library, and I am the only defendant who temporarily removed any of those books from the shelves.").

8. The plaintiffs' lawyers, however, repeatedly and falsely accuse me of "directing" Milum to *permanently* remove books from the library. *See* Response to 11 ("Moss and Cunningham directed Milum to permanently remove seven children's books from the Llano County Library System."); *id.* ("Cunningham and Moss 'told [Milum] to take the books out of the system'; Milum followed her superiors' directives"); *id.* at 19 ("Defendants Cunningham and Moss directed Milum to remove the Books based on their own discriminatory views"). The plaintiffs' lawyers know full well that Milum and I have repeatedly and consistently denied under oath that I have ever directed Milum (or anyone else) to weed or permanently remove any book in the Llano County libraries. The plaintiffs' lawyers are misrepresenting the evidence and testimony.

9. The plaintiffs falsely claim that we considered closing the libraries not because wanted to protect our librarians and county officials from future lawsuits, but because we were unwilling to put pornographic books back into the children's section. *See* Response at 27 (quoting a text message from Bonnie Wallace on February 2, 2023, months before the district court issued its preliminary injunction). The judge's order does not require us to put *any* of the previously weeded books into the children's

section, so Ms. Wallace's concerns had nothing to do with whether we would close the libraries in response to the judge's decision. Although our libraries remain open for now, the Commissioners Court will again consider closing the libraries if the litigation risks posed by Judge Pitman's order make it financially infeasible to continue operating a library system.

10.   The County will suffer irreparable harm absent a stay pending appeal and expedited consideration. We have already spent well over $100,000 on this litigation, and the plaintiffs' attorneys are doing everything possible to run up the costs of defending this lawsuit. They have overwhelmed the county with discovery demands, insisting that we search every librarian and county official's e-mails and text messages and produce relevant communications in native format. They have already taken 12 depositions, and last week Judge Pitman and his magistrate extended the discovery deadline and authorized additional depositions, including repeat depositions of three defendants who had already been deposed. *See* Order, ECF No. 164. The plaintiffs have even deposed one of our attorneys and are demanding that he sit for a second deposition, and they are trying to force him to divulge confidential attorney–client communications despite our assertions of privilege. *See* Motions to Compel, ECF Nos. 124 & 151. The county has no prospect of recouping these costs of litigation even if we are ultimately successful in this litigation.

11.   The prospect of a trial over whether Amber Milum engaged in "content discrimination" or "viewpoint discrimination" will impose additional costs on the county that can never be recovered, and the entire trial will be held on a false premise: That the First Amendment prohibits "content discrimination" and "viewpoint discrimination" in public-library weeding decisions. The only way these harms can be avoided is for this Court to expedite the appeal and rule before the trial date of October 16, 2023.

DocuSign Envelope ID: D9B5682F-AD82-4857-BE91-DF142D24DA58

 

 

 

 

 

This concludes my sworn statement. I declare under penalty of perjury that the foregoing is true and correct.

Dated: __5/1/2023_____

DocuSigned by:

*Ron Cunningham*

19A091CC191Z46F...

Ron Cunningham

# Exhibit A to Cunningham Declaration

Amber,
I am still receiving calls, letters and emails concerning the Farts and Butts
books. I think it is best to remove these books from the shelves for now.
Thank you,

**Ron Cunningham**
Llano County Judge
325.247.7730
801 Ford Street
Suite 101
Llano, Texas 78643
**Judge Ron Cunningham** rcunningham@co.llano.tx.us
**Jennifer Buchanan-Administrative Assistant** jbuchanan@co.llano.tx.us

MILUM 4 RFP - 00580

**Plaintiffs' Exhibit**

**2-A**

# Exhibit 2
## (Declaration of Jerry Don Moss)

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**Leila Green Little**, et al.,

        Plaintiffs-Appellees,

v.

**Llano County**, et al.,

        Defendants-Appellants.

Case No. 23-50224

## DECLARATION OF JERRY DON MOSS

1.  My name is Jerry Don Moss. I am over the age of 18 and fully competent in all respects to make this declaration.

2.  I have personal knowledge of the facts stated in this declaration, and all of these facts are true and correct.

3.  I serve as one of the county commissioners of Llano County and am a named defendant and appellant in this lawsuit. I submit this declaration in support of the defendants-appellants' motion for stay pending appeal and motion to expedite the appeal.

4.  The response that the plaintiffs filed with this Court on April 29, 2023, misrepresents my testimony and falsely claims that I "directed" Amber Milum to remove books from the Llano County library system.

5.  I have *never* "ordered" or "directed" the removal of *any* book from the Llano County library system, either on a temporary or permanent basis, and I have no authority over Ms. Milum's decisionmaking. I made this clear repeatedly, both in my courtroom testimony and my sworn declarations. *See* Hr'g Tr. Vol. 2 at 164:20–24 (Moss) ("Q. How many times, if any, did you direct Amber Milum to remove a particular book from the Llano County Library System? A. I did not direct her to

DocuSign Envelope ID: D73F5CF3-2B51-4B51-8821-1298B1D1C27C

remove any books from the library." (emphasis added)); *id.* at 164:16–19 ("I made sure and told her that I was not her supervisor . . . . I wanted to make sure that she understood I wasn't her boss. I think she knew that."); Second Moss Decl., ECF No. 100-4, at ¶ 6 (App. 339) ("I never 'ordered' or 'directed' the removal of any book from the library and that I have no authority over Ms. Milum's decisionmaking"); *id.* at ¶ 10 (App. 340) ("I never instructed or told anyone at the library to weed or temporarily remove any book, either physical books or ebooks"); First Moss Decl., ECF No. 49-3, at ¶ 4 ("I made clear to Ms. Milum that I was not her boss and could not tell her what to do.").

6.  Ms. Milum's courtroom testimony and sworn declarations confirm that I have *never* ordered, directed, or pressured her in any way to remove a book from our libraries, either on a temporary or permanent basis, and I have no authority over Ms. Milum's decisionmaking. *See* Third Milum Decl., ECF No. 100-5, ¶ 15 (App. 346) ("No other defendant in this case, including Bonnie Wallace, Rochelle Wells, Rhonda Schneider, Jerry Don Moss, or Ron Cunningham, has ever weeded a book from Llano library or directed me to weed a book."); *id.* at ¶ 11 ("The plaintiffs' claim that Commissioner Moss 'directed' me to 'remove the Butt and Fart Books' is false."); Hr'g Tr. Vol. 2 at 112:24–113:5 ("Q. Does Jerry Don Moss have any authority or ability to remove or weed a book from the Llano County Library System? A. No. Q. Does Jerry Don Moss have the authority to direct you to weed or remove a book? A. No.").

7.  The plaintiffs' lawyers, however, repeatedly and falsely accuse me of "directing" Milum to remove books from the library. *See* Response to 11 ("Moss and Cunningham directed Milum to permanently remove seven children's books from the Llano County Library System."); *id.* ("Cunningham and Moss 'told [Milum] to take the books out of the system'; Milum followed her superiors' directives"); *id.* at 19 ("Defendants Cunningham and Moss directed Milum to remove the Books based on

their own discriminatory views"); *id.* at 20 (mentioning "communications from . . . Moss to Milum directing her to remove the [disputed books] from the shelves"). The plaintiffs' lawyers know full well that Milum and I have repeatedly and consistently denied under oath that I have ever directed Milum (or anyone else) to move or remove any book in the Llano County libraries. The plaintiffs' lawyers are misrepresenting the evidence and testimony.

This concludes my sworn statement. I declare under penalty of perjury that the foregoing is true and correct.

Dated: 5/1/2023

JERRY DON MOSS

# Exhibit 3
## (Declaration of Amber Milum)

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**Leila Green Little**, et al.,

Plaintiffs-Appellees,

v.

**Llano County**, et al.,

Defendants-Appellants.

Case No. 23-50224

## SUPPLEMENTAL DECLARATION OF AMBER MILUM

1.  My name is Amber Milum. I am over the age of 18 and fully competent in all respects to make this declaration.

2.  I have personal knowledge of the facts stated in this declaration, and all of these facts are true and correct.

3.  I serve as the director of the Llano County library system and am a named defendant and appellant in this lawsuit. I submit this declaration in support of the defendants-appellants' motion for stay pending appeal and motion to expedite the appeal.

4.  I have testified repeatedly and unequivocally, both in the courtroom and in my numerous sworn declarations, that I alone made the decision to "weed," *i.e.*, permanently remove, the 17 disputed books in this litigation. *See* Hr'g Tr. Vol. 1 at 130:23–131:3 ("Q. Were any of your ultimate decisions to weed any book from the library shelves influenced in any way by anyone on the commissioners' court? A. No. Q. Were they influenced by anyone on the library advisory board? A. No."); *id*. at 90:16–17, 92:23–93:1, 97:9–12, 98:6–8, 98:24–99:3, 100:3–5, 101:13–19, 103:10–13; Milum Decl., ECF No. 49-1, at ¶ 16 ("I was never instructed or pressured by the County Judge or any of the County Commissioners to weed or otherwise permanently remove

any books from the Llano County libraries. I was also never instructed to remove any books from the libraries by the Llano County Advisory Board."); Third Milum Decl., ECF No. 100-5, at ¶ 15 ("I alone made the decisions to weed the 17 disputed books in this case. No other defendant in this case, including Bonnie Wallace, Rochelle Wells, Rhonda Schneider, Jerry Don Moss, or Ron Cunningham, has ever weeded a book from Llano library or directed me to weed a book. Nor has any of these individuals pressured or attempted to pressure me to weed any book from the library.").

5. I also have testified repeatedly and unequivocally, both in the courtroom and in sworn declarations, that my decision to weed those books had *nothing* to do with the content or viewpoints expressed in those books. *See* Milum Decl., ECF No. 49-1, at ¶ 15 ("I did not consider the content of any of the books I weeded when I made the decision to weed them. I also did not consider any of the viewpoints expressed in any of the books I weeded. I weeded the books based on the objective criteria I always use in determining which books to weed."); *id*. at ¶ 17 ("No book was removed based on its content or viewpoint during this process."). I didn't even read the books before weeding them, so I have no idea what the "content" or "viewpoints" in those books might have been. *See* Hr'g Tr. Vol. 1 at 104:3–5 ("Q. Have you read any of the books that we've been talking about? A. No.").

6. The plaintiffs' attorneys claim that I am lying and that my courtroom testimony contradicts my sworn declarations. *See* Response at 20. Their accusations are false and defamatory.

7. The plaintiffs' claim that Judge Cunningham "directed" me to weed the "butt" and "fart" books (or any other book) is false. *See* Response at 11, 20. Judge Cunningham recommended only that I *temporarily* remove those books from the shelves. *See* Pls.' Ex. 2A ("Amber, I am still receiving calls, letters and emails concerning the Farts and Butts books. I think it is best to remove these books from the shelves

*for now.*" (emphasis added)). He never directed me to weed those books, and my decision to weed those books was entirely my own.

8.   Judge Cunningham also asked me to *temporarily* pull for review books containing nudity, but decision to *weed* any of these books (*i.e.*, to "remove the book from the library system") was entirely my own. The plaintiffs' attorneys are attempting to conflate these separate actions by using the ambiguous word "remove." Judge Cunningham never asked or pressured me to weed (*i.e.*, *permanently* remove) a book; he asked only that certain books be *temporarily* pulled from the shelves so that I could review whether they were appropriate for our library. The decision whether to weed those books rested entirely with me.

9.   The plaintiffs' attorneys do not identify anything from my live testimony that contradicts my sworn declarations, even though they insinuate that there were discrepancies. *See* Response at 20 ("The District Court was entitled to credit Milum's live testimony, subject to the crucible of cross-examination, over post-hoc declarations written by her lawyer who was, himself, a participant in the underlying book banning.").

10.   The plaintiffs' claim that I "pulled" books "that Wallace, Wells, or the Commissioners identified as 'inappropriate'" is misleading. *See* Response at 20. My decision to pull those books for review (*i.e.*, to *temporarily* remove the book) was because Judge Cunningham asked me to review books containing nudity, but my decision to weed the books (*i.e.*, to *permanently* remove them) was *solely* because I determined they met the criteria for weeding. The vast majority of the "pulled" books were returned to the shelves because I concluded that they did *not* meet the criteria for weeding. The plaintiffs' statement implies that I *weeded* the books because others considered them inappropriate, and that is categorically false.

11.   The plaintiffs complain that the absence of the 17 books from the library's catalog leaves them with "no reliable way of knowing" their availability, which forces

them to "repeatedly visit the library" to check on their status. *See* Response at 26. That is false; the plaintiffs can call the library to ask about the availability of an in-house book, and they can reserve a book over the phone to ensure that no one checks it out before they arrive.

This concludes my sworn statement. I declare under penalty of perjury that the foregoing is true and correct.

Dated: __5/1/2023__

Amber Milum

Amber Milum

# Exhibit 4
## (District-Court Motion for Stay Pending Appeal)

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |
|---|---|
| **Leila Green Little**, et al., | |
| Plaintiffs, | |
| v. | Case No. 1:22-cv-00424-RP |
| **Llano County**, et al., | |
| Defendants. | |

**OPPOSED MOTION FOR STAY PENDING APPEAL**

# TABLE OF CONTENTS

Table of contents ................................................................................................ i

Table of authorities ........................................................................................... ii

    I.  The defendants are likely to succeed on the merits of their appeal ................ 1

        A.  The in-house checkout system does not and cannot violate the plaintiffs' First Amendment right to access information ......................... 2

        B.  The plaintiffs failed to establish "irreparable harm" when each of the 17 books remains available for them to check out through the Llano Library's in-house checkout system ....................................................... 2

        C.  A public library's weeding decisions are subject only to rational-basis review, and a public librarian must consider the content and viewpoints expressed in books when making weeding decisions ............. 3

        D.  The plaintiffs failed to make a "clear showing" that Amber Milum engaged in viewpoint or content discrimination when weeding the 17 disputed books ............................................................................... 6

        E.  The preliminary injunction is overbroad ................................................ 7

    II.  The defendants will suffer irreparable injury absent a stay ........................... 8

    III. A stay will not harm the plaintiffs or any other party interested in this litigation ..................................................................................................... 9

    IV. The public interest favors a stay ................................................................. 9

Conclusion ...................................................................................................... 10

Certificate of Conference ................................................................................ 11

Certificate of service ...................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017) ........................................................ 8

*Board of Education v. Pico*, 457 U.S. 853 (1982) ................................................. 4, 5

*Campbell v. St. Tammany Parish School Board*,
    64 F.3d 184 (5th Cir. 1995) ............................................................................. 4

*Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005) ...................................................... 5

*CK-W by and through TK v. Wentzville R-IV School District*,
    --- F. Supp. 3d ----, 2022 WL 3138989, *5 (W.D. Mo.) ................................... 5

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ........................................... 8

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ............................................................ 1

*Jones v. District of Columbia*, 177 F. Supp. 3d 542 (D.D.C. 2016) ....................... 3

*Serra v. U.S. General Sevices Administration*,
    847 F.2d 1045 (2d Cir. 1988) ........................................................................... 5

*United States v. American Library Ass'n Inc.*, 539 U.S. 194 (2003) ...................... 5

*United States v. Students Challenging Regulatory Agency Procedures
    (SCRAP)*, 412 U.S. 669 (1973) ....................................................................... 2

*Virgil v. School Board of Columbia County, Florida*,
    862 F.2d 1517 (11th Cir. 1989) ........................................................................ 5

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) ..................... 2, 3

**Statutes**

Fed. R. App. P. 8(a)(1)(A) .................................................................................... 1

On March 30, 2023, this Court entered a preliminary injunction that compels the defendants to return "all print books that were removed because of their viewpoint or content," including the 17 books at issue in this litigation. *See* Order, ECF No. 125, at 25. The Court's order also enjoins the defendants "from removing any books from the Llano County Library Service's catalog for any reason during the pendency of this action." *See id.* at 26. The defendants have appealed the Court's order and respectfully request a stay pending appeal. *See* Fed. R. App. P. 8(a)(1)(A) (requiring parties seeking a stay pending appeal to first request that relief from the district court).[1]

In deciding whether to stay a preliminary injunction pending appeal, a court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Each of these factors favors a stay.

## I. THE DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL

Although we respect this Court and its decision, we do not believe that the Fifth Circuit is likely to affirm the preliminary-injunction order. The plaintiffs are not suffering any violation of their supposed "right to receive information" under the First Amendment because every one of the 17 disputed books is currently available for the plaintiffs to check out through the Llano Library's in-house checkout system. *See* Stipulation, ECF No. 126, at ¶¶ 3–7. Nor can the plaintiffs make *any* showing of irreparable harm when they can check out each of the 17 disputed books from Llano Library without an injunction from this Court. *See id.* For these and other reasons,

---

1.    We have conferred with the plaintiffs and they oppose this motion.

we respectfully believe that the Court's preliminary-injunction order is unlikely to survive appellate review.

### A. The In-House Checkout System Does Not And Cannot Violate The Plaintiffs' First Amendment Right To Access Information

The plaintiffs' First Amendment claims cannot get off the ground when each of the 17 disputed books is available for them to check out through Llano Library's in-house system. The Court's opinion does not explain how the defendants can be violating the plaintiffs' supposed "right to receive information" when each plaintiff remains able to check out and read every one of the disputed books from Llano Library. The Court correctly held that the defendants have not *mooted* the plaintiffs' First Amendment claims by offering the disputed books through the in-house checkout system, as the plaintiffs remain "injured" by the continued absence of those books from the library shelves. *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) ("[A]n identifiable trifle is enough for standing" (citation and internal quotation marks omitted)).[2] But the plaintiffs *still* must show that their First Amendment rights are being violated before they can obtain a preliminary injunction. And the Court's opinion does not attempt to explain how the in-house checkout system violates the plaintiffs' "right to receive information" under the First Amendment when every one of the disputed books remains available for the plaintiffs to read and check out.

### B. The Plaintiffs Failed To Establish "Irreparable Harm" When Each Of The 17 Books Remains Available For Them To Check Out Through The Llano Library's In-House Checkout System

The plaintiffs must make a "clear showing" that *they* will suffer irreparable harm absent a preliminary injunction. *See Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish . . .

---

2. We have acknowledged that the defendants did not (and cannot) moot the plaintiffs' First Amendment claims by offering the disputed books

that *he is* likely to suffer irreparable harm in the absence of preliminary relief." (emphasis added)); *Jones v. District of Columbia*, 177 F. Supp. 3d 542, 546 n. 3 (D.D.C. 2016) ("[T]he irreparable harm prong . . . only concerns harm suffered by the party or parties seeking injunctive relief . . . . [A]ny alleged harm to third parties is properly addressed under the public interest prong"). The plaintiffs cannot establish irreparable harm when each of the 17 disputed books remains available for them to check out through the Llano Library's in-house checkout system.

The Court's opinion does not explain how the seven *plaintiffs* will suffer irreparable harm from using the Llano Library's in-house checkout system. The Court notes that *other* library patrons might not be aware of the in-house collection. *See* Order, ECF No. 133, at 23 ("A patron must, notwithstanding the fact that the books' existence is not reflected in the library catalog, know that the books can be requested."). But effects on non-parties are irrelevant to the irreparable-harm inquiry; only harms to the seven named plaintiffs may be considered. *See Winter*, 555 U.S. at 20; *Jones*, 177 F. Supp. 3d at 546 n.3. And each of the seven plaintiffs heard the testimony describing the in-house checkout system at Llano Library and the availability of the 17 disputed books through the in-house collection. *See* Stipulation, ECF No. 126, at ¶¶ 3–7. The plaintiffs cannot possibly suffer "irreparable harm" from a library that offers them the 17 books through an in-house checkout system—especially when the plaintiffs presented no evidence or arguments showing how this arrangement would impose any inconveniences on them.

### C.   A Public Library's Weeding Decisions Are Subject Only To Rational-Basis Review, And A Public Librarian Must Consider The Content And Viewpoints Expressed In Books When Making Weeding Decisions

The Court's opinion holds that "viewpoint discrimination" is categorically forbidden in a public library's weeding decisions, and that any content-based weeding decision must satisfy the strict-scrutiny standard. *See* Order, ECF No. 133, at 17

("[T]he First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination."); *id.* at 20 ("Content-based restrictions on speech are presumptively unconstitutional and subject to strict scrutiny."). The Court's stance is unlikely to survive appellate review.

The Court appears to believe that *Board of Education v. Pico*, 457 U.S. 853 (1982), and *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995), prohibit content or viewpoint discrimination in a public library's weeding decisions. *See* Order, ECF No. 133, at 17 (citing *Pico* to support its claim that "the First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination."); *id.* at 20 (holding that *Campbell* is incompatible with the defendants' claim that "'content discrimination is permissible and inevitable in library-book selection.'"). Neither *Pico* nor *Campbell* says anything of the sort. Justice Brennan's plurality opinion in *Pico* acknowledges that content discrimination is permissible and inevitable in library-book selection, and it allows libraries to remove books based on content that is "pervasively vulgar" or that lacks "educational suitability." *Pico*, 457 U.S. at 871 (plurality op.). *Campbell* re-affirms the *Pico* plurality's allowance for content-based weeding of books that are "pervasively vulgar" or that lack "educational suitability." *See Campbell*, 64 F.3d at 188–89 ("The Court in its plurality opinion implicitly recognized . . . that an unconstitutional motivation would not be demonstrated if the school officials removed the books from the public school libraries based on a belief that the books were 'pervasively vulgar' or on grounds of 'educational suitability.'"); *see also Pico*, 457 U.S. at 869 (plurality op.) ("[L]ocal school boards have a substantial legitimate role to play in the determination of school library *content*." (emphasis added)); *id.* at 870 (plurality op.) ("Petitioners rightly possess significant discretion to determine the *content* of their school libraries." (emphasis added)); *id.* at 880 (1982) (Blackmun, J., concurring in part and concurring in the judgment) (endorsing specific examples of content and viewpoint discrimination in

library-book selection).[3] The *Pico* plurality opinion says only that school libraries may not weed books "in a narrowly partisan or political manner"[4]—a far cry from a total prohibition on viewpoint or content discrimination.

More importantly, a prohibition on content- or viewpoint-based weeding decisions is incompatible with the Fifth Circuit's binding pronouncement in *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005), which holds that "'[p]ublic library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.'" *Id.* at 614 (quoting *United States v. American Library Ass'n Inc.*, 539 U.S. 194, 205 (2003) (plurality op.). The Court acknowledged this passage but insisted that it applies only to the selection and not the removal of library materials. *See* Order, ECF No. 133, at 13 ("[T]his discretion . . . applies only to materials' selection."). But neither *Chiras* nor the plurality opinion in *American Library* made any distinction between "selection" decisions and removal decisions. And the distinction makes no sense because a public library must enjoy the same latitude in "selecting" new materials that it has in weeding the books that no longer belong in the library's collection—and that must to be removed to create the shelf space needed to accommodate the new arrivals. An outdated book that is no longer accurate should be

---

3.   *See Virgil v. School Board of Columbia County, Florida*, 862 F.2d 1517 (11th Cir. 1989) (acknowledging that under Justice Brennan's plurality opinion in *Pico*, the "removal of books from library would be permissible if decision were based on determination that books were 'pervasively vulgar' or not 'educational[ly] suitab[le]'"); *Serra v. U.S. General Sevices Administration*, 847 F.2d 1045 (2d Cir. 1988) ("Removal of books that were pervasively vulgar or educationally unsuitable would, even in the [*Pico*] plurality's view, be 'perfectly permissible.'" (citations omitted); *CK-W by and through TK v. Wentzville R-IV School District*, --- F. Supp. 3d ----, 2022 WL 3138989, *6 (W.D. Mo.) ("[I]t is 'perfectly permissible' for a school to remove a book based upon the book's 'educational suitability.'" (quoting *Board of Education v. Pico*, 457 U.S. 853 (1982) (plurality opinion of Brennan, J.)).

4.   *See Pico*, 457 U.S. at 870 (plurality op.); *id.* at 872 ("[S]chool boards may not remove books from school library shelves simply because they dislike the ideas contained in those books.").

weeded and replaced with a newer and more accurate source, and both the decision to weed and the decision to "select" the replacement are equally content-based and equally within the discretion of the public library.

Finally, the Court's opinion never addresses the undisputed evidence showing that library weeding manuals *require* librarians to engage in content and viewpoint discrimination when deciding whether to remove a book. Three of the six MUSTIE factors instruct librarians to remove materials whose content is "Misleading," "Superseded," or "Trivial." This *requires* a librarian to consider the content of a book and discriminate against content that falls within the "Misleading," "Superseded," or "Trivial" categories. Viewpoint discrimination is also required, as weeding manuals instruct librarians to remove and replace materials that contain "bias, racist, sexist terminology or *views*." Pls.' Ex. 22 at 45 (attached as ECF No. 100-2) (emphasis added). A public library cannot function if its librarians are prohibited from making content- or viewpoint based weeding decisions, or if its librarians can be subjected to lawsuits whenever a library patron suspects that a weeding decision was influenced by the content or viewpoints expressed in a book.

### D. The Plaintiffs Failed To Make A "Clear Showing" That Amber Milum Engaged In Viewpoint Or Content Discrimination When Weeding The 17 Disputed Books

Even if one were to assume that the First Amendment prohibits content- or viewpoint-based weeding decisions, the plaintiffs failed to make a "clear showing" that Amber Milum engaged in content or viewpoint discrimination when she weeded the disputed books. Milum has denied repeatedly and under oath that her decisions to weed those books had anything to do with their content or viewpoints. *See* First Milum Decl., ECF No. 49-1, ¶ 15 ("I did not consider the content of any of the books I weeded when I made the decision to weed them. I also did not consider any of the viewpoints expressed in any of the books I weeded. I weeded the books based on the

objective criteria I always use in determining which books to weed."); Third Milum Decl., ECF No. 100-5, ¶ 38 ("I did not read any of those books before weeding them, and I am not even aware of the 'viewpoints' or 'positions' (if any) that might be expressed in any of those books."); *id.* at ¶ 37 ("I did not consider any of the 17 books that I weeded to be pornographic or in any way inappropriate for a public library. I weeded those books solely based on my application of the CREW/MUSTIE factors."); *id.* at ¶ 36 ("I have never in my entire career weeded a book because of its viewpoints, and I have never considered the content of a book when making a weeding decision except to the extent that the MUSTIE factors might require me to consider whether a book should be considered 'misleading,' 'superseded,' 'trivial,' or 'irrelevant.'"); *id.* ("For the plaintiffs to accuse me of weeding books because I disapprove of nudity, critical race theory, or LGBTQ content is false and defamatory."). The Court does not claim that Milum is lying in these declarations. On the contrary, it acknowledges the existence of "conflicting testimony" without attempting to resolve whether Milum is telling the truth. *See* Order, ECF No. 133, at 20–21 n.7. But the existence of "conflicting testimony" is incompatible with a "clear showing" that Milum weeded the books because of their content or viewpoint—unless the Court is willing to proclaim Milum's testimony false and explain why it thinks Milum is lying.

### E.     The Preliminary Injunction Is Overbroad

The preliminary-injunction order goes far beyond what the plaintiffs requested and awards relief that the plaintiffs do not even have Article III standing to pursue. *Compare* Proposed Order, ECF No. 76-1, *with* Order, ECF No. 133, at 25–26. The plaintiffs asked this Court to order the return of only the 17 disputed books. *See* Proposed Order, ECF No. 76-1. The Court's order, however, demands the return of "*all* print books that were removed because of their viewpoint and content, *including*" the 17 books at issue in this litigation. *See* Order, ECF No. 133, at 25 (emphasis

added). The plaintiffs, however, made no showing (let alone a "clear showing") that they are suffering Article III injury from the removal of any library materials other than the 17 books that they have complained about. *See DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief" that is sought." (citation omitted)); *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) ("Because a preliminary injunction 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief,' the plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction.").

The Court's order also enjoins the defendants from "removing *any* books from the Llano County Library Service's catalog for *any* reason during the pendency of this action." Order, ECF No. 133, at 26 (emphasis added). This, too, goes well beyond what the plaintiffs asked for, and the plaintiffs lack Article III standing to pursue relief of that scope because they cannot be injured by the removal of a book that they have no interest in reading. The plaintiffs had requested a more limited injunction that would prohibit removal of books absent documentation of "(a) the individual who decided to remove or conceal the book and (b) the reason or reasons for that removal or concealment." Proposed Order, ECF No. 76-1.

## II.  THE DEFENDANTS WILL SUFFER IRREPARABLE INJURY ABSENT A STAY

A public library cannot function if its librarians can be sued whenever they weed a book for content- or viewpoint-based reasons. The county is now considering whether to close its libraries in response to the Court's order, as it cannot continue to expose its librarians and county officials to lawsuits whenever a disgruntled library patron disagrees with a selection or weeding decision. *See* Exhibit 1. Even if the county allows its libraries to remain open during the appeal, the Court's categorical prohibition on weeding will prevent the library from removing even books that have been

damaged beyond repair. The Court's order also purports to compel the return of *every* book that has *ever* been weeded for its content or viewpoints, and there is no way for the defendants to determine the reasons behind every previous weeding decision—many of which were made by librarians who are no longer employed by the county. Nor is it possible for the defendants to re-shelve previously weeded books that are no longer in the library's possession and may not even be in print.

## III.   A Stay Will Not Harm The Plaintiffs Or Any Other Party Interested In This Litigation

The plaintiffs will suffer no harm from a stay because each of the 17 books will remain available through the Llano Library's in-house checkout system—and each of the plaintiffs is aware of the in-house checkout system and the availability of the 17 disputed books. *See* Stipulation, ECF No. 126, at ¶¶ 3–7. The plaintiffs have yet to explain how they will be "harmed" by obtaining these books through the in-house checkout system rather than the library shelves, and the Court has yet to explain how the in-house library system inflicts any harm (let alone irreparable harm) on any of the seven plaintiffs. Nor will a stay harm other parties interested in the litigation, as there is no evidence that anyone else wants to check out the 17 disputed books, and their lackluster circulation record makes it impossible to infer that a stay would inflict harm on other library patrons not before this Court.

## IV.   The Public Interest Favors A Stay

A stay of proceedings will ensure that the county's libraries will remain open while the appeal proceeds. It will also deter other library patrons from filing "me-too" lawsuits over previous weeding decisions that they disagreed with, and it will enable the county's librarians to work without fear of being held in contempt of court if a previously weeded book is alleged to have been removed for content- or viewpoint-based reasons.

# CONCLUSION

The motion for stay pending appeal should be granted.

Respectfully submitted.

_/s/ Jonathan F. Mitchell_

| | |
|---|---|
| Dwain K. Rogers | Jonathan F. Mitchell |
| Texas Bar No. 00788311 | Texas Bar No. 24075463 |
| County Attorney | Mitchell Law PLLC |
| | 111 Congress Avenue, Suite 400 |
| Matthew L. Rienstra | Austin, Texas 78701 |
| Texas Bar No. 16908020 | (512) 686-3940 (phone) |
| First Assistant County Attorney | (512) 686-3941 (fax) |
| | jonathan@mitchell.law |
| Llano County Attorney's Office | |
| Llano County Courthouse | |
| 801 Ford Street | |
| Llano, Texas 78643 | |
| (325) 247-7733 | |
| dwain.rogers@co.llano.tx.us | |
| matt.rienstra@co.llano.tx.us | |

Dated: April 11, 2023                    *Counsel for Defendants*

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with Ellis Herington, counsel for the plaintiffs, and she informed me that the plaintiffs oppose this motion.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on April 11, 2023, I served this document through CM/ECF upon:

Ellen V. Leonida
Matthew Borden
J. Noah Hagey
Max Bernstein
Ellis E. Herington
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

Ryan A. Botkin
Katherine P. Chiarello
María Amelia Calaf
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com

*Counsel for Plaintiffs*

                                         /s/ Jonathan F. Mitchell
                                         Jonathan F. Mitchell
                                         *Counsel for Defendants*

# SPECIAL CALLED...
# NOTICE OF SPECIAL MEETING OF THE
# COMMISSIONERS COURT OF LLANO COUNTY, TEXAS

| Peter R. Jones | Linda Raschke | Ron Cunningham | Mike Sandoval | Jerry Don Moss |
|---|---|---|---|---|
| Precinct 1 | Precinct 2 | Judge | Precinct 3 | Precinct 4 |

Notice is hereby given that a Special Called Meeting of the above-named Commissioners' Court will be held on the **13th Day of APRIL, 2023 at 3:00pm** at the Llano County JP#4 Courtroom, 2001 North State Hwy 16, Ste B., Llano, Texas, at which time the following subjects will be discussed and appropriate action taken, to-wit:

**The Pledge of Allegiance:**
*I pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation under God, Indivisible, with Liberty and Justice for all.*

**Pledge to the Texas Flag:**
*Honor the Texas Flag; I pledge allegiance to thee, Texas, one state under God, one and indivisible.*

1. **Discussion/Action:** Continue or cease operations of the current physical Llano County Library System pending further guidance from the Federal Courts. This action item will include discussion and action regarding the continued employment and/or status of the Llano County Library System employees and the feasibility of the use of the library premises by the public.

2. **Executive Closed Session** – Receive legal advice regarding pending or contemplated litigation or settlement offers, or other legal advice pursuant to §551.071(1) & (2), regarding purchases, exchanges, leases, or value of real property pursuant to §551.072, or security devices or security audits pursuant to §551.076 of the Texas Government Code, including but not limited to the following items:
   *Llano County Sheriff's office including the jail, audit, and current inmate census*
   *Little, et.al v. Llano County, et.al; United States District Court (Austin)*
   Legal advice includes the Texas Local Government Code, the Open Meetings Act, the Public Information Act, Llano jail, employment and personnel law, utility law, Llano Local Health Authority, property law, potential litigation, procurement, and contract law, evidentiary and procedural law, road and bridge law, ethics law and general government law and any additional federal or state law regarding any item on this open or executive/closed session meeting agenda.

3. **Return to Open Session** for further discussion and possible action on any matter posted for discussion in Executive Session. Any matter posted in Executive Session also may be subject of discussion and/or action in open session prior to Executive Session.

Ron Cunningham, Llano County Judge

I, the undersigned County Clerk do hereby certify that the above Notice of Meeting of the above named Commissioners' Court is a true and correct copy of said Notice, and that a true and correct copy of said Notice was posted on the bulletin board at the Courthouse of Llano County, Texas at a place readily accessible to the general public at all times on the **10** day of **APRIL, 2023** and said Notice remained so posted continuously for at least Seventy-two (72) hours preceding the scheduled time of said Meeting. So dated this the **10** day of **APRIL, 2023**, at **2:52** am/**pm**

Marci Hadeler
by Cecilia McClintock, deputy
Marci Hadeler, Llano County Clerk

1