No. 23-50224

# In the United States Court of Appeals for the Fifth Circuit

———————————

Leila Green Little; Jeanne Puryear; Kathy Kennedy; Rebecca Jones; Richard Day; Cynthia Waring; Diane Moster,

*Plaintiffs-Appellees*,

v.

Llano County; Ron Cunningham, in his official capacity as Llano County Judge; Jerry Don Moss, in his official capacity as Llano County Commissioner; Peter Jones, in his official capacity as Llano County Commissioner; Mike Sandoval, in his official capacity as Llano County Commissioner; Linda Raschke, in her official capacity as Llano County Commissioner; Amber Milum, in her official capacity as Llano County Library System Director; Bonnie Wallace, in her official capacity as Llano County Library Board Member; Rochelle Wells, in her official capacity as Llano County Library Board Member; Rhoda Schneider, in her official capacity as Llano County Library Board Member; Gay Baskin, in her official capacity as Llano County Library Board Member,

*Defendants-Appellants*.

———————————

On Appeal from the United States District Court
for the Western District of Texas
Case No. 1:22-cv-424-RP

———————————

## Motion To Stay District-Court Proceedings Pending Appeal

———————————

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Defendants-Appellants*

## Certificate of Interested Persons

Counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiffs | Plaintiffs' Counsel |
|---|---|
| • Leila Green Little<br>• Jeanne Puryear<br>• Kathy Kennedy<br>• Rebecca Jones<br>• Richard Day<br>• Cynthia Waring<br>• Diane Moster | Ellen V. Leonida<br>Matthew Borden<br>J. Noah Hagey<br>Max Bernstein<br>Ellis E. Herington<br>Marissa Benavides<br>BraunHagey & Borden LLP<br><br>Ryan A. Botkin<br>Katherine P. Chiarello<br>María Amelia Calaf<br>Wittliff \| Cutter PLLC |

| Defendants | Defendants' Counsel |
|---|---|
| • Llano County,<br>• Ron Cunningham<br>• Jerry Don Moss<br>• Peter Jones<br>• Mike Sandoval<br>• Linda Raschke<br>• Amber Milum<br>• Bonnie Wallace<br>• Rochelle Wells<br>• Rhonda Schneider<br>• Gay Baskin | Jonathan F. Mitchell<br>Mitchell Law PLLC<br><br>Dwain K. Rogers<br>Matthew L. Rienstra<br>Llano County Attorney's Office |

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Defendants-Appellants*

i

# TABLE OF CONTENTS

Certificate of interested persons.................................................................. i

Table of contents......................................................................................... ii

Table of authorities .................................................................................... iii

Argument ......................................................................................................5

   I. The defendants-appellants have made a strong showing of likely
      success on appeal ..................................................................................6

      A. The defendants cannot "violate" the plaintiffs' First Amendment
         rights when the disputed books remain available to them through
         Llano Library's in-house checkout system ...............................6

      B. Content and viewpoint discrimination are permissible and
         inevitable when weeding library materials ...............................7

   II. The defendants-appellants will suffer irreparable harm absent a stay of
      district-court proceedings ...................................................................10

   III.A stay of the district-court proceedings will not substantially injure the
      plaintiffs or any other party interested in the proceeding...........................14

   IV.A stay of the district-court proceedings is in the public interest...................15

Conclusion .................................................................................................17

Certificate of conference ............................................................................18

Certificate of service...................................................................................19

Certificate of compliance............................................................................ 20

Certificate of electronic compliance ...........................................................21

# Table of Authorities

**Cases**

*Board of Education v. Pico*, 457 U.S. 853 (1982) ................................................. 8, 9, 10

*Campbell v. St. Tammany Parish School Board*,
    64 F.3d 184 (5th Cir. 1995) ................................................................................ 8, 9

*Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005) .................................................... 1, 8, 9

*Christiansburg Garment Co. v. EEOC,* 434 U.S. 412 (1978) ..................................... 10

*Earl v. Boeing Co.*, 21 F.4th 895 (5th Cir. 2021) .............................................. 5, 13, 15

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................ 5

*United States v. American Library Ass'n Inc.*, 539 U.S. 194 (2003) .................... 1, 8, 9

On Friday, May 5, 2023, a motions panel of this Court granted our motion to expedite the appeal from the district court's preliminary injunction and instructed the clerk to expedite the appeal "to the next available oral argument calendar." *See* Order, ECF No. 58 (attached as Exhibit 1). Now that the appeal has been expedited, the defendants-appellants respectfully ask this Court to stay discovery and further proceedings in the district court until this Court rules on the pending appeal. The defendants-appellants also respectfully request that the Court rule on this motion by Wednesday, May 17, 2023.

A stay of the district-court proceedings is appropriate for numerous reasons. First, the parties are in the midst of expensive and costly discovery that is premised on the plaintiffs' belief that the First Amendment prohibits public librarians from engaging in "content discrimination" or "viewpoint discrimination" when weeding books.[1] The district court agreed with the plaintiffs' stance in its order granting the preliminary injunction. ROA.3523 ("[T]he First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination."). The defendants vigorously dispute this and are asking this Court to hold that the First Amendment allows public librarians to consider the content and viewpoint of books when making weeding decisions. *See Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005) ("'Public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.'" (quoting *United States v. American Library Ass'n Inc.*, 539 U.S. 194, 205 (2003) (plurality opinion of

---

1. ROA.67 (accusing the defendants of "unconstitutional content-based and viewpoint-based discrimination in violation of Plaintiffs' First Amendment rights.").

Rehnquist, C.J.))); Mot. to Stay Prelim. Inj., ECF No. 14-1, at 10–12. The defendants are also asking this Court to rule that the defendants cannot be "violating" the plaintiffs' First Amendment right to "access and receive information" when each of the 17 disputed books remains available for the plaintiffs to check out at Llano Library through the in-house checkout system. *See* Mot. to Stay Prelim. Inj., ECF No. 14-1, at 7–9.

It will serve judicial economy and conserve the parties' resources if this Court postpones discovery, including expert discovery and *Daubert* motions, until after the merits panel resolves these issues in the pending expedited appeal. The parties have already spent hundreds of hours in discovery as the plaintiffs attempt to divine Amber Milum's subjective motivations for weeding the 17 disputed books, and the plaintiffs have retained two expert witnesses who accuse Milum of bad faith and unprofessionalism in her weeding decisions. ROA.3145-3147. But these factual disputes could be rendered moot by the pending decision from this Court. And regardless of how the merits panel rules, it would be better for the parties to conduct discovery with knowledge of this Court's ruling on the disputed legal issues rather than awaiting its decision after the close of discovery. The merits panel's ruling on the First Amendment issues will determine how the parties conduct their expert depositions and argue their *Daubert* motions. And it would be wasteful to have the parties barrel ahead with expert discovery when this Court could pull the rug from under the experts' analysis at any moment between now and the scheduled trial date of October 16, 2023.

For the same reasons, this Court should postpone summary-judgment briefing and trial until after the merits panel rules on the law. The motions panel has already expedited the appeal "to the next available oral argument calendar,"[2] which means that the merits panel's ruling is likely to drop before the district court enters final judgment. Yet a ruling from the merits panel that disagrees with the district court's analysis will upend any summary-judgment briefing or trial proceedings premised on the views expressed in the district court's preliminary-injunction order of March 30, 2023. ROA.3507-3532. The sounder approach is to await the merits panel's ruling and allow the parties to litigate summary-judgment issues with knowledge of this Court's views, and for trial to be conducted after this Court has weighed in on the disputed First Amendment issues.

The Court should stay discovery for an additional reason: The parties will be writing their appellate briefs and preparing for oral argument on a highly expedited schedule, and need to devote their attention to those appellate-court tasks during the months of May and June. Proceeding on the current district-court schedule with expert depositions and *Daubert* motions in May,[3] summary-judgment briefing in June and July,[4] and trial preparation throughout the summer[5] will distract coun-

---

2. Order, ECF No. 58 (attached as Exhibit 1).

3. ROA.742 (scheduling order requiring parties to complete expert discovery by May 19, 2023, with *Daubert* motions due 11 days after the expert's deposition).

4. ROA.742-743 (scheduling order requiring defendants' motion for summary judgment to be filed by June 9, 2023; plaintiffs' response and cross-motion for summary judgment to be filed by June 23, 2023, the defendants' response to the cross-motion and reply brief in support of their motion for summary judgment

sel from the appeal and hinder their ability to present this Court with a clear, vigorous, and adversarial presentation of the facts and law. At the same time, the pending expedited appeal and its tight briefing deadlines will make it difficult for counsel to devote careful attention to their discovery obligations and district-court filings as the appeal quickly unfolds. That is especially true on the defendants-appellants' side, where their lead attorney works as a solo practitioner and is handling all briefwriting and oral-argument responsibilities in this Court as well as motions practice and expert discovery in the district court. *See* Mitchell Decl., ¶ 10 (attached as Exhibit 3).

Finally, the plaintiffs will not be prejudiced by a stay of discovery and further proceedings in the district court because they have already obtained a preliminary injunction that restores the 17 disputed books to the library shelves and catalogs,[6] and the motions panel allowed that preliminary injunction to remain in place while the defendants pursue their expedited appeal. *See* Order, ECF No. 58 (attached as Exhibit 1) ("IT IS FURTHER ORDERED that Appellants' Opposed Motion to stay the preliminary injunction pending appeal is CARRIED WITH THE CASE."). The preliminary injunction eliminates any possibility that the plaintiffs might suffer a violation of their constitutional rights or other forms of irreparable

---

to be filed by July 7, 2023; and the plaintiffs' reply brief in support of their cross-motion to be filed by July 21, 2023).

5. ROA.743 (scheduling order setting a trial date of October 16, 2023).

6. ROA.3531-3532.

harm during the appeal, and our requested stay of proceedings will not disturb the preliminary injunction or its protections in any way.[7]

The defendants-appellants respectfully request that the Court rule on this motion by Wednesday, May 17, if possible, so that the parties will know whether they can cancel the depositions of the plaintiffs' experts and avoid litigating *Daubert* motions and ongoing discovery issues. *See* Mitchell Decl. ¶ 11 (attached as Exhibit 3). A ruling by May 17 will also enable the parties to focus their efforts on briefing and preparing for argument in the expedited appeal. *See id.* at ¶ 12.

## ARGUMENT

When deciding whether to stay proceedings in the district court pending appeal, this Court employs the traditional four-part test from *Nken v. Holder*, 556 U.S. 418 (2009): "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.* at 426 (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)); *see also Earl v. Boeing Co.*, 21 F.4th 895, 898 (5th Cir. 2021) (using the four-part *Nken* test when deciding whether to stay district-court proceedings pending appeal). All four factors support a stay of proceedings.

---

7.  We have already moved in the district court for a stay of discovery and further proceedings pending the outcome of this appeal. *See* Opposed Motion to Stay Case, ECF No. 168. We do not, however, expect the district court to grant the motion.

## I.   THE DEFENDANTS-APPELLANTS HAVE MADE A STRONG SHOWING OF LIKELY SUCCESS ON APPEAL

The facts and procedural history of this case are described in our previous motion to stay the preliminary injunction and expedite the appeal. *See* Motion to Stay Prelim. Inj., ECF No. 14-1, at 2–6. Our previous motion also explains why the defendants-appellants are likely to succeed on appeal. *See id.* at 6–14.  We incorporate that discussion by reference and emphasize two fatal problems with the plaintiffs' First Amendment claims that counsel in favor of staying discovery and summary-judgment briefing while this appeal proceeds. First, the plaintiffs cannot possibly show that the defendants are violating their "right to access and receive information" under the First Amendment because every one of the 17 disputed books remains available for the plaintiffs to check out through the Llano Library's in-house checkout system. ROA.3463-3465. Second, the plaintiffs' (and the district court's) belief that the First Amendment forbids "viewpoint discrimination" or "content discrimination" in public-library weeding decisions is incompatible with the precedent of this Court and is manifestly untenable, as content and viewpoint consideration are both inevitable and permissible when weeding library materials.

### A.   The Defendants Cannot "Violate" The Plaintiffs' First Amendment Rights When The Disputed Books Remain Available To Them Through Llano Library's In-House Checkout System

After the plaintiffs sued and accused the defendants of violating their First Amendment rights by weeding 17 books from the Llano Library shelves, the Llano Library accepted a donation of the 17 disputed books and made them available for the plaintiffs to read and check out through the library's "in-house checkout" sys-

tem.[8] *See* Mot. to Stay Prelim. Inj., ECF No. 14-1, at 3–4 (explaining the "in-house checkout" system at Llano Library). The defendants cannot be "violating" the plaintiffs' supposed First Amendment "right to access and receive information," as each plaintiff is aware of the in-house checkout system and the availability of the disputed books,[9] and the plaintiffs have the same ability to check out the disputed books from Llano Library that they had before the books were weeded.

To be sure, the plaintiffs would prefer that the 17 disputed books be returned to the library shelves and catalog rather than offered through the in-house checkout system, which is why they refuse to accept this arrangement and have continued litigating in the hope of forcing the defendants to restore the books to their previous location. But the plaintiffs cannot plausibly assert that the defendants are violating their First Amendment rights when each of the disputed books remains available to them at Llano Library through the in-house checkout system.

### B.    Content And Viewpoint Discrimination Are Permissible And Inevitable When Weeding Library Materials

The district court agreed with the plaintiffs' claim that the First Amendment prohibits content and viewpoint discrimination in public-library weeding decisions. ROA.3523 ("[T]he First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination."); ROA.3526 ("Content-based

---

8.  *See* First Milum Decl., ECF No. 49-1, at ¶¶ 10–11 (ROA.673-674); Second Milum Decl., ECF No. 53, at ¶¶ 3–4 (ROA.720-721); Third Milum Decl., ECF No. 100-5, at ¶¶ 5–8 (ROA.2497); Stipulation of Undisputed Facts, ECF No. 126, at ¶¶ 1–7 (ROA.3463-3465).

9.  *See* Stipulation of Undisputed Facts, ECF No. 126, at ¶¶ 1–7 (App. 491–493).

restrictions on speech are presumptively unconstitutional and subject to strict scrutiny.").  This stance is unlikely to survive appeal, as it contradicts the precedent of this Court and imposes intolerable burdens on librarians, who *must* occasionally weed books for content or viewpoint reasons.

This Court has recognized that "'[p]ublic library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.'" *Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005) (quoting *United States v. American Library Ass'n Inc.*, 539 U.S. 194, 205 (2003) (plurality op.)). It has also recognized that "forum analysis and heightened judicial scrutiny are . . . incompatible with the discretion that public libraries must have to fulfill their traditional missions.'" *Id.* (quoting *American Library*, 539 U.S. at 205 (plurality op.)). The district court's stance is incompatible with these principles. The plaintiffs have tried to defend the district court by citing cases that disapprove of content and viewpoint discrimination when the government restricts or regulates speech, but weeding a library book does not restrict or regulate speech; it merely determines the optimal allocation of a library's limited shelf space.

The plaintiffs and the district court rely on *Board of Education v. Pico*, 457 U.S. 853 (1982), and *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995). ROA.3523 (citing *Pico* to support its claim that "the First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination."); ROA.3526 (holding that *Campbell* is incompatible with the defendants' claim that "'content discrimination is permissible and inevitable in library-book selection.'"). But Justice Brennan's plurality opinion in *Pico* acknowledges

that content discrimination is permissible in library-book selection, and it allows libraries to remove books that are "pervasively vulgar" or lack "educational suitability." *Pico*, 457 U.S. at 871 (plurality op.). *Campbell* re-affirms the *Pico* plurality's allowance for content-based weeding. *See Campbell*, 64 F.3d at 188–89 ("The Court in its plurality opinion implicitly recognized . . . that an unconstitutional motivation would not be demonstrated if the school officials removed the books from the public school libraries based on a belief that the books were 'pervasively vulgar' or on grounds of 'educational suitability.'"). The *Pico* plurality opinion says only that school libraries may not weed books "in a narrowly partisan or political manner"[10]—a far cry from the categorical prohibition on viewpoint or content discrimination that the district court endorsed.

More importantly, a prohibition on content-based weeding decisions is incompatible with *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005), which recognizes that "'[p]ublic library staffs *necessarily consider content* in making collection decisions and enjoy broad discretion in making them.'" *Id.* at 614 (emphasis added) (quoting *United States v. American Library Ass'n Inc.*, 539 U.S. 194, 205 (2003) (plurality op.). The district court and the plaintiffs try to get around *Chiras* by claiming that it applies only to *acquisition* (not removal) decisions at *school* libraries, but nothing in the quoted passages from *Chiras* support these distinctions. It is also nonsensical to give public libraries "broad discretion" when acquiring new books while forbidding

---

10. *See Pico*, 457 U.S. at 870 (plurality op.); *id.* at 872 ("[S]chool boards may not remove books from school library shelves simply because they dislike the ideas contained in those books.").

them to consider content or viewpoints when weeding. Library shelf space is limited, and older books *must* be weeded so that new materials can be added. A library must determine whether the content of the new material is superior to the content being replaced, and this comparison requires librarians to consider the content and viewpoints of the incoming and existing materials.

Finally, neither the plaintiffs nor the district court denies that library-weeding manuals *compel* librarians to engage in content and viewpoint discrimination when weeding books. *See, e.g.*, Mot. for Stay, ECF No. 14-1, at 12; CREW Manual, ECF No. 117-2 (ROA.3172-3279); *id.* at 19 (ROA.3191) (listing "poor *content*" as grounds for weeding, including "[m]aterial that contains biased, racist, or sexist terminology *or views*" (emphasis added)). Libraries may establish standards for the material on their shelves, and there is nothing problematic (or unconstitutional) with weeding books that deny the Holocaust, declare that the earth is flat, or peddle crackpot or discredited conspiracy theories. Nor is there anything wrong with the content-based weeding of "pervasively vulgar" books, or material that lacks "educational suitability." *Pico*, 457 U.S. at 871 (1982) (plurality op.).

## II.  The Defendants-Appellants Will Suffer Irreparable Harm Absent A Stay Of District-Court Proceedings

The defendants-appellants will suffer irreparable harm absent a stay of proceedings because they will incur additional litigation costs related to fact discovery, expert discovery, *Daubert* motions, summary-judgment briefing, and trial preparation—and they cannot recover these costs even if they prevail in the litigation. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978) (forbidding defend-

ants to recover attorneys' fees under 42 U.S.C. § 1988, even when they qualify as "prevailing parties," unless the plaintiffs' action was "frivolous, unreasonable, or without foundation"); Cunningham Decl. ¶ 5 (attached as Exhibit 2).

The plaintiffs' litigation tactics and discovery demands have imposed considerable costs on Llano County and its taxpayers. *See* Cunningham Decl. ¶ 4 ("Llano County has already spent more than $150,000 in attorneys' fees and expenses defending this action"); *id.* at ¶ 6. After filing their complaint, the plaintiffs demanded expedited discovery and deposed defendants Amber Milum, Jerry Don Moss, Bonnie Wallace, and Rochelle Wells. ROA.429-440; Mitchell Decl. ¶ 5 (attached as Exhibit 3); Exhibit 7 (notices of deposition). The plaintiffs also demanded e-mails from every conceivable e-mail account, including personal e-mail accounts of former librarians that the defendants do not have passwords for, and they insisted that every e-mail be produced in its native format rather as a PDF. *See* Mitchell Decl. ¶ 4 (attached as Exhibit 3). The plaintiffs' demands for native-format e-mails overwhelmed the resources of Llano County, which does not have a full-time IT person on staff, and the defendants are still struggling to respond to the plaintiffs' e-mail demands. *See id.*

On March 1, 2023, shortly before the close of fact discovery on March 31, 2023, the plaintiffs scheduled 19 depositions during the last two weeks of discovery— including second depositions of Milum, Wallace, and Moss. *See* Mitchell Decl. ¶ 6 (attached as Exhibit 3); Exhibit 8 (notices and subpoenas). The plaintiffs did not

move for leave of court to exceed the ten-deposition limit until March 20, 2023,[11] and the district court did not grant their motion until March 29, 2023,[12] only two days before the close of fact discovery. But the plaintiffs asked the district court to extend the fact-discovery deadline[13] and the district court granted their request,[14] giving the plaintiffs an additional two months to conduct depositions that they were unable to squeeze in before the deadline of March 31, 2023.

The defendants will also incur significant costs from the upcoming expert discovery. The plaintiffs have proffered not one but *two* expert reports that accuse Amber Milum of bad faith and unprofessionalism. ROA.3145-3147. One of the experts (Belinda Boon) is located in Kent, Ohio, and the other (David Lankes) is located in Austin, Texas. The defendants' lead counsel, who will depose each of the experts, is located on the west coast and will need to travel separately to conduct each deposition. *See* Mitchell Decl. ¶ 8 (attached as Exhibit 3). The defendants asked the plaintiffs' attorneys to make their experts available for depositions on back-to-back days to reduce the defendants' travel burdens and discovery costs, but the plaintiffs refused to accommodate this request. *See id.*; *see also* Exhibit 5 (e-mail exchange between plaintiffs' counsel and defendants' counsel).

The defendants also asked the plaintiffs to reschedule the deposition of the defendants' expert Peter Wood, which was held in New York on May 8, 2023, to May

---

11. ROA.3294-3305.
12. ROA.3492-3493.
13. ROA.3569-3580.
14. *See* Exhibit 4.

17 or May 18 because the defendants were seeking a stay of the district-court proceedings and were hoping to obtain a ruling on that request before Dr. Wood's deposition, which could obviate the need for the deposition. *See* Mitchell Decl. ¶ 9 (attached as Exhibit 3). The plaintiffs flatly refused to reschedule the deposition of Dr. Wood, even though they did not claim that they were unavailable to depose him on May 17 or May 18, and even though the defendants offered to pay any non-refundable costs that the plaintiffs might have incurred when preparing for Dr. Wood's deposition. *See id.*; *see also* Exhibit 6 (e-mail exchange between plaintiffs' counsel and defendants' counsel).

We are not suggesting that plaintiffs' counsel are acting unlawfully or unethically by making discovery expensive and inconvenient for Llano County. The rules of civil procedure establish a liberal discovery regime that enables litigants to impose heavy costs on their adversaries with depositions and document requests—and the duty of zealous representation may occasionally compel an attorney to bombard the other side with extensive discovery demands in the hopes of forcing settlement or capitulation. But this Court must consider the extent of the unrecoverable costs that will be inflicted on Llano County if the district-court proceedings are not stayed pending appeal. *See Earl v. Boeing Co.*, 21 F.4th 895, 900 (5th Cir. 2021) ("[T]he public interest supports staying district court proceedings to avoid potentially wasteful and unnecessary litigation costs where, as here, the appellant has shown a substantial likelihood of success on appeal."). The plaintiffs have sought to maximize the defendants' litigation costs throughout this litigation, which counsels

in favor of staying discovery and further proceedings in the district court pending the outcome of this expedited appeal. *See id.*

## III. A Stay Of The District-Court Proceedings Will Not Substantially Injure The Plaintiffs Or Any Other Party Interested In The Proceeding

A stay of the district-court proceedings will not "substantially injure" the plaintiffs or any other party interested in the proceeding because the district court's preliminary injunction requires the 17 disputed books to remain in the library shelves and catalog until the appeal is resolved,[15] and the motions panel has left that preliminary injunction in place while the defendants pursue their expedited appeal. *See* Exhibit 1 ("IT IS FURTHER ORDERED that Appellants' Opposed Motion to stay the preliminary injunction pending appeal is CARRIED WITH THE CASE."). A ruling from this Court that stays the district-court proceedings will not stay the preliminary-injunction order, and that injunction will remain in effect until the merits panel issues its ruling.

The only conceivable injury that the plaintiffs might encounter from a stay of proceedings is that it will hinder their ability run up the defendants' costs of defending this lawsuit, as well as their attempts to moot the defendants' expedited appeal by fast-tracking the district-court proceedings to final judgment. Neither of these considerations should receive solicitude in deciding whether to stay the district-court proceedings. This Court has indicated its desire to rule quickly on the defendants' appeal by expediting it "to the next available oral argument calendar,"[16]

---

15. ROA.3531-3532.
16. Order, ECF No. 58 (attached as Exhibit 1).

and it should not empower a litigant to sabotage the ruling of the motions panel (and waste the resources invested in an appeal) by triggering a race between the district court and the Fifth Circuit. Nor should a court seek to accommodate tactics that serve no apparent purpose other than to impose avoidable litigation costs on an adversary. *See Earl*, 21 F.4th at 900 ("[T]he public interest supports staying district court proceedings to avoid potentially wasteful and unnecessary litigation costs where, as here, the appellant has shown a substantial likelihood of success on appeal.").

## IV. A Stay Of The District-Court Proceedings Is In The Public Interest

A stay of the district-court proceedings serves the public interest in numerous respects. First, a stay of proceedings will serve judicial economy and "avoid potentially wasteful and unnecessary litigation costs." *Earl*, 21 F.4th at 900. If this Court reverses the district court's preliminary injunction and holds that the First Amendment permits public librarians to engage in content and viewpoint discrimination when weeding books, then the time spent on discovery, *Daubert* motions, summary-judgment briefing, and trial preparation will be wasted. Likewise if this Court reverses the preliminary injunction on the ground that the in-house checkout system fully accommodates the plaintiffs' First Amendment right to "access and receive information." Even if this Court affirms the district court across the board, it is far more sensible to conduct discovery, *Daubert* motions, summary-judgment briefing and trial after this Court rules on the law rather than before.

Second, a stay of district-court proceedings will serve the public interest by allowing counsel to devote their full attention to briefing and arguing the expedited appeal, which will be held on an exceedingly tight schedule with deadlines that cannot be moved. Requiring counsel to litigate fact discovery, expert discovery, *Daubert* motions, and summary judgment simultaneously with this expedited appeal could lead to slapdash work product—not only in this Court but in the district court as well. The expert discovery deadline is currently set for May 19, 2023, with *Daubert* motions due 11 days after each expert's deposition date,[17] and there are *three* experts (two on the plaintiffs' side and the defendants' rebuttal expert) that will be the subject of *Daubert* litigation. Each of the plaintiffs' two experts has yet to be deposed. The defendants' motion for summary judgment is due on June 9, 2023, with responses, replies, and cross-motions due shortly thereafter.[18] All of this is scheduled to occur while the parties are rushing to prepare appellate briefs on a expedited schedule and mooting their appellate attorneys for an argument that could occur in June or July. The public interest is best served by allowing the expedited appeal to unfold while counsel is unencumbered by the persistent and often unpredictable responsibilities of trial-court practice.

---

17. ROA.742 (scheduling order requiring parties to complete expert discovery by May 19, 2023, with *Daubert* motions due 11 days after the expert's deposition).

18. ROA.742-743 (scheduling order requiring defendants' motion for summary judgment to be filed by June 9, 2023; plaintiffs' response and cross-motion for summary judgment to be filed by June 23, 2023, the defendants' response to the cross-motion and reply brief in support of their motion for summary judgment to be filed by July 7, 2023; and the plaintiffs' reply brief in support of their cross-motion to be filed by July 21, 2023).

Third, a stay of district-court proceedings will serve the public interest by ensuring that this Court can rule on the expedited appeal and eliminating any possibility that the district court might moot the appeal by entering final judgment. The parties and this Court will be investing considerable time and resources into the pending appeal, and a stay of proceedings will ensure that the merits panel can take the time it needs to consider the issues and render a well-reasoned decision without having to race the district court to the finish line.

## Conclusion

The motion to stay the district-court proceedings should be granted.

Respectfully submitted.

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: May 10, 2023                    *Counsel for Defendants-Appellants*

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for the plaintiffs-appellees, and they oppose this motion. They have not yet told us whether they intend to file a written response.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Defendants-Appellants*

## Certificate Of Service

I certify that on May 10, 2023, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Fifth Circuit and served through CM/ECF upon:

Ellen V. Leonida
Matthew Borden
J. Noah Hagey
Max Bernstein
Ellis E. Herington
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

Ryan A. Botkin
Katherine P. Chiarello
María Amelia Calaf
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com

*Counsel for Plaintiffs-Appellees*

      /s/ Jonathan F. Mitchell
      Jonathan F. Mitchell
      *Counsel for Defendants-Appellants*

### CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 4,404 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.


 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Dated: May 10, 2023                    *Counsel for Defendants-Appellants*

## CERTIFICATE OF ELECTRONIC COMPLIANCE

Counsel also certifies that on May 10, 2023, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through http://www.pacer.gov.

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Defendants-Appellants*