No. 23-50224

# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘 𝖋𝖔𝖗 𝖙𝖍𝖊 𝕱𝖎𝖋𝖙𝖍 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

LEILA GREEN LITTLE, JEANNE PURYEAR, KATHY KENNEDY, REBECCA JONES, RICHARD DAY, CYNTHIA WARING, AND DIANE MOSTER,

*Plaintiffs-Appellees,*

v.

LLANO COUNTY, RON CUNNINGHAM, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY JUDGE, JERRY DON MOSS, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, PETER JONES, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, MIKE SANDOVAL, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, LINDA RASCHKE, IN HER OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, AMBER MILUM, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY SYSTEM DIRECTOR, BONNIE WALLACE, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, ROCHELLE WELLS, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, RHONDA SCHNEIDER, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, AND GAY BASKIN, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Texas, Austin Division
1:22-cv-00424-RP

## APPELLEES' RESPONSE IN OPPOSITION TO APPELLANTS' MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING APPEAL

(Counsel Listed Inside Cover)

Katherine P. Chiarello
(TX Bar No. 24006994)
Ryan A. Botkin
(TX Bar No. 00793366)
María Amelia Calaf
(TX Bar No. 24081915)
Botkin Chiarello Calaf PLLC
1209 Nueces Street
Austin, Texas 78701
Tel: 512-615-2341
Fax: 737-289-4695
ryan@bccaustin.com
katherine@bccaustin.com
mac@bccaustin.com

Ellen V. Leonida
(CA Bar No. 184194)
Matthew Borden
(CA Bar No. 214323)
Marissa R. Benavides
(NY Bar No. 5796891)
Max Bernstein
(NY Bar No. 5609037)
BraunHagey & Borden LLP
351 California Street, 10th Floor
Tel: 415-599-0210
Fax: 415-276-1808
leonida@braunhagey.com
borden@braunhagey.com
benavides@braunhagey.com
bernstein@braunhagey.com

*Attorneys for Plaintiffs-Appellees*

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dwain K. Rogers
Texas Bar No. 00788311
County Attorney

Matthew L. Rienstra
Texas Bar No. 16908020
First Assistant County Attorney

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

*Attorneys for Defendants-Appellants*

No. 23-50224

# In the United States Court of Appeals for the Fifth Circuit

LEILA GREEN LITTLE, JEANNE PURYEAR, KATHY KENNEDY, REBECCA JONES, RICHARD DAY, CYNTHIA WARING, AND DIANE MOSTER,

*Plaintiffs-Appellees,*

v.

LLANO COUNTY, RON CUNNINGHAM, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY JUDGE, JERRY DON MOSS, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, PETER JONES, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, MIKE SANDOVAL, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, LINDA RASCHKE, IN HER OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, AMBER MILUM, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY SYSTEM DIRECTOR, BONNIE WALLACE, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, ROCHELLE WELLS, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, RHONDA SCHNEIDER, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, AND GAY BASKIN, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER,

*Defendants-Appellants.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees**
Leila Green Little
Jeanne Puryear
Kathy Kennedy
Rebecca Jones

Richard Day
Cynthia Waring
Diane Moster

**Plaintiffs-Appellants' Counsel**
Katherine P. Chiarello
Ryan A. Botkin
María Amelia Calaf
Botkin Chiarello Calaf PLLC

Ellen V. Leonida
Matthew Borden
Marissa R. Benavides
Max Bernstein
BraunHagey & Borden LLP

**Defendants-Appellants**
Llano County
Ron Cunningham
Jerry Don Moss
Peter Jones
Mike Sandoval
Linda Raschke
Amber Milum
Bonnie Wallace
Rochelle Wells
Rhonda Schneider
Gay Baskin

**Defendants-Appellants' Counsel**
Jonathan F. Mitchell
Mitchell Law PLLC

Dwain K. Rogers
Matthew L. Rienstra
Llano County Attorney's Office

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ............................................................ i

TABLE OF CONTENTS ....................................................................................... iii

TABLE OF AUTHORITIES .................................................................................. iv

I.     DEFENDANTS' STAY MOTION SHOULD BE DENIED BECAUSE
       THEY DID NOT FAIRLY PRESENT IT TO THE DISTRICT COURT ........................ 3

II.    DEFENDANTS HAVE NOT PROVEN THAT ANY OF THE *NKEN*
       FACTORS SUPPORTS A STAY, MUCH LESS THAT ALL OF THEM
       NECESSITATE EXTRAORDINARY RELIEF ................................................. 6

       A.     Defendants Have Not Proven Irreparable Harm ...................................... 7

       B.     Defendants Have Not Shown a Strong Likelihood of Success on Their Appeal .. 12

              1.     The District Court Properly Determined that Defendants' Voluntary
                     Cessation Does Not Obviate Plaintiffs' First Amendment Claims ........... 13

              2.     Defendants' Conduct Constituted Impermissible Discrimination in
                     Violation of the First Amendment ........................................... 14

       C.     Plaintiffs Will Be Harmed by an Unjustified Stay in Trial Proceedings .............. 20

       D.     The Public Interest Disfavors a Stay of Proceedings ........................................... 21

CERTIFICATE OF COMPLIANCE ..................................................................... 24

CERTIFICATE OF SERVICE ............................................................................. 25

# TABLE OF AUTHORITIES

Cases                                                                                                    Pages(s)

*Alice L. v. Dusek,*
    492 F.3d 563 (5th Cir. 2007) ............................................................4, 5

*Barber v. Bryant,*
    833 F.3d 510 (5th Cir. 2016) ...............................................................7

*Board of Education v. Pico,*
    457 U.S. 853 (1982) ..................................................................... 16, 17

*Campbell v. St. Tammany Parish School Board,*
    64 F.3d 184 (5th Cir. 1995) ...................................................... 2, 16, 17

*Chem. Weapons Working Grp. (CWWG) v. Dep't of the Army,*
    101 F.3d 1360 (10th Cir. 1996) ...........................................................5

*Chiras v. Miller,*
    432 F.3d 606 (5th Cir. 2005) .................................................... 2, 16, 17

*Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.,*
    908 F.2d 951 (Fed. Cir. 1990) .............................................................9

*Cincinnati v. Discovery Network, Inc.,*
    507 U.S. 410 (1993) ..........................................................................16

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.,*
    704 F.3d 413 (5th Cir. 2013) .............................................................13

*Cumberland Tel. & Telegraph Co. v. La. Pub. Serv. Comm'n,*
    260 U.S. 212 (1922) ............................................................................4

*Earl v. Boeing Co.,*
    21 F.4th 895 (5th Cir. 2021) .............................................................22

*Eli Lilly & Co., Inc. v. Generix Drug Sales, Inc.,*
    460 F.2d 1096 (5th Cir. 1972) .............................................................8

*Hilton v. Braunskill,*
    481 U.S. 770 (1987) ............................................................................7

*Iancu v. Brunetti,*
   139 S. Ct. 2294 (2019) ........................................................................15

*In re Montes,*
   677 F.2d 415 (5th Cir. 1982) ................................................................5

*Int'l Soc. for Krishna Consciousness, Inc. v. Lee,*
   505 U.S. 672 (1992) ............................................................................15

*Matal v. Tam,*
   137 S. Ct. 1744 (2017) ........................................................................15

*Nat. Employees Treasury Union v. Von Raab,*
   808 F.2d 1057 (5th Cir. 1987) ..............................................................3

*Nken v. Holder,*
   556 U.S. 418 (2009) ..................................................................... 1, 6, 7

*R.A.V. v. City of St. Paul, Minn.,*
   505 U.S. 377 (1992) ............................................................................15

*Reed v. Town of Gilbert, Ariz.,*
   576 U.S. 155 (2015) ............................................................................15

*Robinson v. Hunt County, Tex.,*
   921 F.3d 440 (5th Cir. 2019) ..............................................................15

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
   515 U.S. 819 (1995) ............................................................................15

*Ruiz v. Estelle,*
   650 F.2d 555 (5th Cir. 1981) ................................................................5

*Sund v. City of Wichita Falls, Tex.,*
   121 F. Supp. 2d 530 (N.D. Tex. 2000) ......................................... 13, 18

*Taylor v. W.L. Sterrett,*
   640 F.2d 663 (5th Cir. 1981) ................................................................4

*Texas v. United States,*
   40 F.4th 205 (5th Cir. 2022) ................................................................6

*United States v. American Library Association, Inc.*,
539 U.S. 194 (2003) ...............................................................................17

*W. Virginia State Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943) ...............................................................................17

**Rules**

Fed. R. App. P. 8 ............................................................................ 1, 3, 5

Fed. R. App. P. 8(a) ...................................................................................4

Fed. R. App. P. 8(a)(1) ..............................................................................5

Fed. R. App. P. 8(a)(2)(A)(i), (ii) .............................................................1

Defendants-Appellants' ("Defendants") motion to stay proceedings in the

District Court during their interlocutory appeal of a preliminary injunction is

procedurally improper because they filed their motion before allowing the District

Court to rule on the issue as required by Fed. R. App. P. 8. Defendants' motion is

also substantively unwarranted because they have not offered any proof of

irreparable injury; nor have they met their burden, under *Nken v. Holder*, 556 U.S.

418, 427 (2009), of proving the other factors necessary to establish that they are

entitled to extraordinary relief.

Defendants offer no evidence that "moving first in the district court would

be impracticable" or that "a motion having been made, the district court denied the

motion or failed to afford the relief requested," as required by Rule 8(a)(2)(A)(i)

and (ii). To the contrary, Defendants moved the District Court for relief then filed

an identical motion herein thirty hours later. Their motion thus falls outside the

plain language of Rule 8 and defeats its purpose, which is to provide this Court

with the ability to review an analysis of the dispute by the decision maker closest

to the facts, issues and equities. This failure alone is fatal to their motion.

The motion separately fails because Defendants cannot prove irreparable

injury. Defendants claim two types of harm, neither of which is irreparable or

extraordinary. First, they claim that they are irreparably injured because discovery

is proceeding in District Court. Mot. at 10. But ongoing discovery is not an

extraordinary harm; it is exactly what the Rules provide for in every case. And discovery would not be ongoing but for Defendants' refusal to produce it in the first instance, requiring seven motions to compel and a court order. Defendants also assert that the expedited briefing schedule in this Court—which Defendants requested—is irreparably injuring them. ECF No. 64 ("Mot.") at 16. Both "injuries" Defendants claim are self-inflicted, and neither warrants a stay of District Court proceedings.

Defendants also are unlikely to win on the merits. The District Court's findings of unconstitutional viewpoint and content discrimination are based on substantial evidence of Defendants' discriminatory intent—two days of testimony, hundreds of exhibits, and 120 pages of briefing and supporting evidence. Defendants' theory that the government has unfettered authority to censor library books based on their viewpoint has been rejected by this Court. *See Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995). Defendants' reliance on *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005), and other cases addressing the state's ability to select school textbooks is misplaced. Even in the context of a school, where the state is tasked with educating minors, the conduct found by the District Court here is prohibited. *See id.* at 619-20 ("If a Democratic school board, motivated by party affiliation, ordered the removal of all books written by or in favor of Republicans, few would doubt that the order violated the constitutional

rights of the students . . .The same conclusion would surely apply if an all-white school board, motivated by racial animus, decided to remove all books authored by blacks or advocating racial equality and integration.").

Finally, the balance of equities and public interest militate against a stay. Just last week this Court ruled that Defendants' appeal would be expedited, and Defendants' motion to stay the preliminary injunction ("Stay Motion I") would be carried over to the argument on the merits. ECF No. 58. The expedited appeal weighs even further in favor of keeping things as they are. *See*, *e.g.*, *Nat. Employees Treasury Union v. Von Raab*, 808 F.2d 1057, 1060 (5th Cir. 1987) (denying motion to stay injunction when appeal had been expedited because keeping injunction in place "for another three weeks is not, in our view, hardship sufficient to warrant our action when plenary consideration of the motion can be afforded by the oral argument panel concurrently with its consideration of the merits of this case").

For all of these reasons, Defendants' motion should be denied.

## I.   DEFENDANTS' STAY MOTION SHOULD BE DENIED BECAUSE THEY DID NOT FAIRLY PRESENT IT TO THE DISTRICT COURT

This motion is the second time within two weeks that Defendants have violated Rule 8 by seeking a stay from this Court before allowing the District Court to rule on the issue. This type of motion practice subverts the structure of the legal system and violates the plain language of the Rules.

"'It is the general rule that a district court is divested of jurisdiction upon the filing of the notice of appeal with respect to any matters involved in the appeal. However, where an appeal is allowed from an interlocutory order, the district court may still proceed with matters not involved in the appeal.'" *Alice L. v. Dusek*, 492 F.3d 563, 564-65 (5th Cir. 2007) (quoting *Taylor v. W.L. Sterrett*, 640 F.2d 663, 667-68 (5th Cir. 1981)).

In recognition of this, Defendants have moved to stay proceedings in the District Court. Under the Federal Rules of Appellate Procedure, Defendants were required to obtain a decision by the District Court on its request to stay proceedings before seeking the same relief from this Court. Generally, a party may not ask an appellate court for a stay or injunction unless the trial court has already denied that same request. Fed. R. App. P. 8(a). "The requirement that the application [for a stay of proceedings] be first made to the district court is the case law rule." Fed. R. App. P. 8(a) Advisory Committee's Note to 1967 adoption. Such has been the case for a century—as Chief Justice Taft recognized, "we are generally inclined to refer [stay] applications of this kind to the . . . judges who have heard the whole matter, have read the record, and can pass on the issue without additional labor." *Cumberland Tel. & Telegraph Co. v. La. Pub. Serv. Comm'n*, 260 U.S. 212, 219 (1922) (Taft, C.J.) (referring request for injunction of

proceedings to district court). Similarly here, the District Court had the benefit of hearing and reading the full record of the case prior to issuing its decision.

This Court has also recognized this requirement. *See*, *e.g.*, *Alice L.*, 492 F.3d at 565 (citing Fed. R. App. P. 8(a)(1) in refusing to hear request for stay of proceedings pending resolution of interlocutory appeal when appellant "made no argument before the district court for a stay of trial").

Applying Rule 8, this Court has explained that "the district court should have the opportunity to rule on the reasons and evidence presented in support of a stay" prior to appellate consideration. *Ruiz v. Estelle*, 650 F.2d 555, 567 (5th Cir. 1981) (per curiam); *see also In re Montes*, 677 F.2d 415, 416 (5th Cir. 1982) (refusing request to suspend injunction without district court decision as appellate court "cannot take evidence or hear matters initially" and is "dependent entirely on the record made in a trial court"). That is because "the fundamentally different roles of appellate and trial courts mandate consideration of [a stay motion's] new evidence by the district court under Fed. R. Civ. P. 62(c) before Rule 8 proceedings in th[e appellate] court . . . Only upon completion of the district court's factfinding role, should [the appellate] court consider any relief pending appeal." *Chem. Weapons Working Grp. (CWWG) v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996).

That Defendants "do not . . . expect the district court to grant the motion" below, Mot. at 5, is not adequate grounds to flout Rule 8's requirement. Defendants' speculation as to how the District Court will rule on their request does not supplant a judicial determination, and Defendants cite no authority to support such efforts. Accordingly, the Court should deny this motion as procedurally improper.

## II.   DEFENDANTS HAVE NOT PROVEN THAT ANY OF THE *NKEN* FACTORS SUPPORTS A STAY, MUCH LESS THAT ALL OF THEM NECESSITATE EXTRAORDINARY RELIEF

Defendants' motion fails on the merits as well. "A stay [pending appeal] is an extraordinary remedy." *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022) (per curiam) (quotation omitted) (denying federal agency's request to stay vacatur of agency rule). It is "an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal citations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Id*. at 433–34 (emphasis added). In deciding whether to stay a preliminary injunction pending appeal, federal courts consider four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the

stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken*, 556 U.S. at 427 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors of this standard carry the greatest weight. *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016).

Defendants must satisfy the four *Nken* factors to be entitled to a stay of proceedings. They cannot not satisfy any here: first, Defendants cannot be irreparably injured by completing required trial court proceedings while pursuing an appeal they requested to be expedited; second, Defendants continue to be unable to show likelihood of success on the merits of their appeal; third, a stay would cause Plaintiffs-Appellees ("Plaintiffs") to suffer an unjustified delay of proceedings; and fourth, a stay of proceedings due to circumstances arising from Defendants' own conduct does not advance the public interest.

## A.    Defendants Have Not Proven Irreparable Harm

Defendants will not be harmed by completing their discovery obligations while pursuing this appeal, nor will they be harmed by briefing the appeal while completing these obligations. Defendants are required to complete trial court proceedings regardless of this Court's determination here, and the concurrent timing of these requirements and the parties' briefing on appeal results from Defendants' own request.

*First*, Defendants cite no authority for the proposition that doing discovery is

an irreparable harm. As noted above, the Federal Rules of Appellate Procedure contemplate that discovery continues when a party takes an interlocutory appeal.

Moreover, the discovery at issue is being conducted now because, after seven motions to compel, the District Court has ordered Defendants to provide key evidence that they have been withholding since the outset of this case. *See* Ex. 2 (Leonida Decl.) ¶¶ 3, 19-20; Exs. 4-5. This evidence relates directly to Defendants' claims that Defendant Milum alone engaged in "inevitable and permissible" weeding.[1] Mot. at 6. In contrast to Defendants having to produce court-ordered discovery—which is a litigation process, not an injury—Plaintiffs are suffering immediate harm from Defendants withholding evidence that contradicts arguments that they are making to this Court and below. *See infra* Section II.C.

As set forth *supra* Part I, the District Court retains jurisdiction to proceed with Plaintiffs' underlying claims even as this Court considers the preliminary injunction appeal. And the discovery required to try those claims will not be affected by this Court's decision as to whether the preliminary injunction was proper; Plaintiffs are still entitled to a complete record of discovery on their claims before proceeding to summary adjudication and trial. *See Eli Lilly & Co., Inc. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1106 (5th Cir. 1972) (vacating portion of

---

[1] While Defendants cast aspersions on Plaintiffs' motivations for their discovery requests, this compelled discovery shows why such efforts have been necessary.

district court's preliminary injunction decision that made a final determination on the claims without notice to parties before fact discovery was complete); *cf. Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 954 (Fed. Cir. 1990) (ruling on preliminary injunction motion "does not prejudge the ultimate question on the merits"). Contrary to Defendants' assertion, a stay will not "obviate" the need for any of the discovery here, Mot. at 13, nor will it avert the need to litigate and resolve Plaintiffs' claims. Defendants have acknowledged as much. *See* Ex. 1 (May 10, 2023 email from Defendants' counsel stating "If the district court or the Fifth Circuit decides to stay the district-court proceedings, it will simply place a pause on discovery and summary-judgment briefing until the appeal concludes."). Moreover, to the extent that costs could even be considered irreparable injury, Defendants' concerns about "the unrecoverable costs that will be inflicted on Llano County" absent a stay, Mot. at 13, ring hollow in the face of their acknowledged obligation to complete discovery and summary judgment briefing regardless of the outcome of the appeal.

Because Defendants must complete discovery and dispositive briefing on the claims below, it is inevitable that Defendants will incur the burdens they describe. It is as an accepted part of civil litigation.[2] And the burdens of civil litigation are

---

[2] It bears noting that Defendants have voluntarily incurred the cost of preparing and filing multiple motions while asserting concerns over the cost of inevitable court-ordered discovery, especially as it was also Defendants who made that

not irreparable harms.

Moreover, the burden is one that Defendants already should have satisfied. Defendants' conduct during discovery required Plaintiffs to file seven motions to compel documents and testimony over the course of ten months, including a motion the District Court granted to extend the fact discovery deadline so Plaintiffs could obtain the discovery Defendants had refused to produce. *See* Ex. 2 ¶ 3.

At the April 27, 2023 argument on a subset of these motions, Defendants represented to the District Court that they could complete the outstanding discovery within thirty days. Ex. 3 (Mots. Hr'g Tr.) at 15:22. Relying on that representation, the District Court ordered Defendants to produce responsive documents they had failed to timely produce by May 30, 2023. Ex. 4 at 1-2 (admonishing Defendants for "a year's worth of back-and-forth on the simplest issue, which is the exchange of relevant e-mails"). The District Court further ordered that Defendants sit for depositions after failing to appear at their noticed depositions. Ex. 5. These obligations all come now because Defendants did not satisfy them in a timely manner in the preceding months. Defendants cannot now claim that they will be harmed by completing, at long last, this errant discovery.

*Second*, the fact that Defendants must brief their appeal while they complete

---

discovery unnecessarily costly by necessitating seven rounds of motion practice and multiple court hearings before agreeing to produce requisite discovery. Ex. 2 ¶ 3.

outstanding discovery is of Defendants' own design. Defendants asked this Court to expedite their appeal two days *before* representing to the District Court that they could complete discovery in thirty days. ECF No. 14. Defendants did not inform the District Court that their request to expedite the appeal was pending, or forecast that their ability to complete discovery may be compromised if that request was granted. *See generally* Ex. 3. Now, Defendants have received both the thirty-day discovery extension they sought and the expedited appeal that they requested. They cannot argue that this is irreparable harm.

Defendants do not acknowledge any of this in their motion. They do not acknowledge that discovery will proceed regardless of the interlocutory appeal. They do not acknowledge that the reason that discovery remains ongoing is because of Defendants' own conduct in the preceding months. And they do not acknowledge that the concurrence of their discovery obligations and appellate briefing is in accordance with their own representations and requests.[3] Each of these circumstances obviates Defendants' claims that they are suffering or will suffer irreparable harm. There is no harm arising from required discovery and dispositive briefing; and there is no harm in overlapping obligations when

---

[3] Nor do Defendants' counsel acknowledge that this potential strain on their time generally appears to be of their own making. *See* Chris Geidner, "Jonathan Mitchell is too busy for court deadlines, but still has time to file new lawsuits," Law Dork (Apr. 18, 2023), https://www.lawdork.com/p/jonathan-mitchell-is-too-busy.

Defendants themselves made it so.

**B.    Defendants Have Not Shown a Strong Likelihood of Success on Their Appeal**

The District Court has already ruled that "Defendants have failed to show that they are likely to succeed on the merits of their claim" based on the same arguments and evidence presented here. *Little v. Llano County*, No.1:22-cv-424 (W.D. Tex. May 4, 2023) (text order). Defendants were required to brief this exact issue when they submitted concurrent motions to the District Court and this Court to stay the preliminary injunction at issue in this appeal. Their arguments on those motions replicate their arguments here. *Compare* ROA.3675-76 *and* ECF No. 14-1 at 6 *with* Mot. at 6. Both this Court and the District Court considered these arguments, but neither granted Defendants' request for a stay. The District Court denied the motion for failure to show a likelihood of success on appeal. And this Court held its decision in abeyance pending resolution of Defendants' expedited appeal. ECF No. 58-2 at 2.

Plaintiffs already showed why Defendants are unlikely to succeed on the merits in opposing Stay Motion I and incorporate those arguments by reference. ECF No. 38. Here, Plaintiffs specifically address why the two arguments Defendants identify in this motion as likely bases for success are unpersuasive. Notably, both arguments recycle arguments put forth to the District Court and Fifth Circuit on Stay Motion I.

First, as the District Court explained, Defendants' efforts to moot this case through voluntary cessation do not negate Plaintiffs' First Amendment claims. Second, the District Court correctly interpreted and applied binding precedent to the robust evidentiary record in finding that Defendants' content and viewpoint-based discrimination violated the First Amendment.

### 1. The District Court Properly Determined that Defendants' Voluntary Cessation Does Not Obviate Plaintiffs' First Amendment Claims

The District Court correctly determined that "Defendants' creation of an 'in-house checkout system' comprises precisely the type of posturing the voluntary cessation exception is meant to prevent." ROA.3518; *see also Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (defendants cannot "evade sanction by predictable protestations of repentance and reform after a lawsuit is filed"). Allowing that system to resume would place a significant and disproportionate burden on Plaintiffs' ability to access books Defendants deem unacceptable. *See, e.g.,  Sund v. City of Wichita Falls, Tex.*, 121 F. Supp. 2d 530, 534 (N.D. Tex. 2000). Plaintiffs would have no reliable way of knowing whether and when the books at issue in this litigation (the "Banned Books") are actually available. Instead, they must repeatedly visit the library and request the status of any Book they wish to check out.

Two weeks ago, Defendants acknowledged that Plaintiffs "remain 'injured' by the continued absence of the Books from the library shelves." ECF No. 14 at 8.

While they characterized denying Plaintiffs' constitutional rights as a mere "trifle," *id.*, the District Court's Order found that Defendants' original book removal and their secret library system are both intended to obstruct Plaintiffs' exercise of their fundamental right to access information. ROA.3519. This is a First Amendment injury.

### 2. Defendants' Conduct Constituted Impermissible Discrimination in Violation of the First Amendment

Defendants' additional attacks on the District Court's decision fail for two reasons: first, the District Court correctly identified binding precedent holding that it is unconstitutional for government officials to remove library books based on discriminatory motivations; and second, the District Court relied on a robust evidentiary record to find that Defendants likely engaged in such unconstitutional conduct, making Plaintiffs likely to prevail on their claims.

### a. The evidence showing Defendants' book removal decisions were motivated by personal viewpoint and content-based discrimination triggers strict scrutiny.

Defendants argue that the District Court's determination will not survive appeal because it "imposes intolerable burdens on librarians, who must occasionally weed books for content or viewpoint reasons." Mot. at 8. Defendants conflate an individual librarian's routine content-based weeding to balance a library's collection with the systemic targeted weeding of books that government officials personally dislike. The District Court found that Defendants—not only Defendant Milum—engaged in the latter conduct. The evidence showed that their

viewpoint and content-based discrimination surpassed permissible weeding and crossed into unconstitutional suppression of the free flow of ideas. ROA.3528. Defendants' arguments defending routine weeding are inapposite.

The District Court's decision is correct under longstanding First Amendment principles. *Iancu v. Brunetti,* 139 S. Ct. 2294, 2299 (2019) (if a speech restriction "is viewpoint-based, it is unconstitutional"); *Rosenberger v. Rector & Visitors of Univ. of Va*., 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."). "Official censorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint discrimination." *Robinson v. Hunt County, Tex.*, 921 F.3d 440, 447 (5th Cir. 2019) (citing *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017)).

Similarly, content discrimination violates the First Amendment unless the law is narrowly tailored to achieve a compelling government interest. *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992) ("Content-based regulations are presumptively invalid."). An action that is "content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 165 (2015) (quoting

*Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)).

> b.   Removing materials from public libraries based on viewpoint and content discrimination violates the First Amendment.

Defendants assert that the District Court erred in relying on *Board of Education v. Pico*, 457 U.S. 853 (1982) and *Campbell*, 64 F.3d at 184. Mot. at 8-10. Their arguments are incorrect. *Pico* and *Campbell* squarely address the removal of books from a library.

*Pico* holds that "the First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination," ROA.3523 (Injunction Order citing *Pico*, 457 U.S. at 871); and *Campbell* similarly holds that "the 'decision to remove [books] must withstand greater scrutiny within the context of the First Amendment than would a decision involving a curricular matter,'" ROA.3520 (Injunction Order quoting *Campbell*, 64 F.3d at 189-90). "To hold otherwise" that removal is not subject to heightened scrutiny "would be to entirely disregard *Campbell*." ROA.3521; *see Pico*, 457 U.S. at 871-72 ("[O]ur holding today affects only the discretion to *remove* books . . . simply because they dislike the ideas contained in those books . . . ." (emphasis in original)).

The cases on which Defendants rely also recognize the distinction between selection and removal. *Chiras*, a school textbook selection case, relied on that difference in distinguishing that matter from *Pico*: "Because *Pico* addressed the *removal* of an optional book from the school library, not the *selection* of a textbook

for use in the classroom, we decline to apply *Pico* to the facts before us." 432 F.3d

at 619 (emphasis added). The Supreme Court in *United States v. American Library*

*Association, Inc.* also only addressed the constraints on content selection in holding

that blocking pornography downloads on library public computers is a permissible

form of content selection. 539 U.S. 194, 212 (2003).

Defendants cite *Pico* and *Campbell's* language allowing schools to engage in

limited book removal. Mot. at 8-9. This is inapposite. Public schools, unlike public

libraries, are recognized "vehicles for inculcating fundamental values," *Pico*, 457

U.S. at 864; *Chiras*, 432 F.3d at 611 ("states enjoy broad discretionary powers in

the field of public education . . . to establish public school curricula which

accomplishes the states' educational objectives"). Courts therefore permit schools

to remove books they determine to be "pervasively vulgar" or lacking "educational

suitability." *Id.* at 871. Even then, "local school boards may not remove books

from school library shelves simply because they dislike the ideas contained in

those books and seek by their removal to 'prescribe what shall be orthodox in

politics, nationalism, religion, or other matters of opinion.'" *Pico*, 457 U.S. at 871

(*quoting W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)); *see*

*also Campbell*, 64 F.3d at 189 (*Pico's* most narrow concurrence "does not reject

the plurality's assessment of the constitutional limitations on school officials'

discretion to remove books from a school library").

These limited exceptions for schools—none of which would permit Defendants' removal of the Banned Books here—do not extend to public libraries, in which people of all ages and orthodoxies engage in freewheeling inquiry and exploration of ideas. The First Amendment protects school libraries from all but the most narrow forms of education-motivated censorship *a fortiori* it is even more protective of the free flow of information in public libraries. *See, e.g.*, *Sund*, 121 F. Supp. 2d at 548 ("The [First Amendment] principles set forth in *Pico*—a school library case—have even greater force when applied to public libraries.")

c.   The District Court correctly found that Defendants engaged in impermissible viewpoint and content-based discrimination.

The District Court found that "Plaintiffs have clearly shown that Defendants' decisions were likely motivated by a desire to limit access to the viewpoints to which Wallace and Wells objected," including views on LGBTQ and racial equity. ROA.3525. These discriminatory acts were not limited to Milum. "[T]here is no real question that [Milum's] targeted review [of the Banned Books] was directly prompted by complaints from patrons and county officials over the content of these titles." The Court's findings were based on substantial evidence. ROA.3527; *see generally* ROA.3524-27 (collecting record evidence of viewpoint and content-based discrimination).

The Injunction identifies the robust evidentiary record showing that Milum was working with other Defendants to target specific books for weeding,

including: communications from Defendants Wallace and Wells to Defendants Cunningham, Moss, and Milum complaining about the Banned Books as "pornographic filth" and "CRT and LGBTQ books," ROA.3524 (citing emails, call logs, and complaint logs)); communications from Defendants Cunningham and Moss to Milum directing her to remove the Banned Books from the shelves, *id.* (citing emails and meeting logs)[4]; emails and hearing testimony confirming Milum closed the library to check for "inappropriate books" at the direction of the Commissioners Court, *id.*; and testimony from Milum that "the books that she pulled were books that Wallace, Wells, or the Commissioners identified as 'inappropriate,'" *id.* The Court observed that additional evidence of Defendants' dislike of the Banned Books included that Defendants did not follow their own weeding criteria in removing the Books. ROA.3524-27.

Each of these findings alone, and especially together, supports the District Court's determination that Defendants collectively engaged in unconstitutional viewpoint and content-based discrimination, not a routine single-librarian content-based review that Defendants unsuccessfully try to cast this as.

---

[4] In one email thread including Moss, Wells reported that Moss and Cunningham had "instructed" Milum to "remove certain books," and she thanked Moss "for [his] help in this situation and all [he had] done to remedy it!" ROA.354. Wells then reported that the work of ascertaining which of the "CRT and LGBTQ book[s]" were in the Library had been completed.

### C.    Plaintiffs Will Be Harmed by an Unjustified Stay in Trial Proceedings

Plaintiffs would be harmed by a stay of trial court proceedings pending this Court's decision on appeal. This Court has discretion to issue its decision on whatever timeline it views as appropriate. Neither Plaintiffs nor Defendants can know when that decision will issue. If this Court requires extended time to consider its decision, Plaintiffs will be left without recourse for many months. Even after this Court issues its decision, the parties must wait for the mandate to issue, then for the District Court to reset the case schedule, then to complete the outstanding discovery.

Not only will this outcome reward Defendants for their months-long obstruction of fact discovery, but it also risks prejudicing Plaintiffs' ability to obtain needed testimony. Defendants Schneider and Wells already testified that they do not remember certain essential aspects of the events giving rise to Plaintiffs' claims, even as those events only occurred within the last year. *See* Ex. 6 (Schneider Dep. Tr. at 79:10-14, 81:19-21) (testifying that she cannot remember some of the Books or whether she repeatedly checked out any Books to keep them unavailable), Ex. 7 (Wells Dep. Tr. at 71:25-73:12) (testifying that she cannot remember why she sent an email saying "Commissioner Moss and Judge Cunningham have instructed Amber, the head librarian, to remove certain books"). Defendants are likely to forget even more key details as time goes by.

Summary judgment adjudication also will be commensurately delayed. The parties cannot proceed with summary judgment briefing until all discovery is complete. Depending on the many factors at play, a stay of proceedings could result in summary judgment briefing being pushed to the end of the calendar year, and a trial likely would not go until spring of 2024 at earliest.

This delay harms Plaintiffs, who are pursuing their First Amendment rights to be free of government censorship even as they face significant strain from the resulting controversy in their community. *See* ROA.4130-32 (hearing testimony of Plaintiff Little). A stay of proceedings will deprive Plaintiffs of the speedy resolution of their claims and subject them to protracted proceedings in the trial court.

### D.      The Public Interest Disfavors a Stay of Proceedings

Plaintiffs agree with Defendants that the public has an interest in judicial economy. Plaintiffs disagree that Defendants' discovery delays and motions to two courts to further delay trial proceedings serve that interest. Quite the opposite. Defendants thwarted that interest by refusing to respond to document requests, refusing to produce documents, refusing to attend noticed depositions, and requiring Plaintiffs to seek court intervention on each of these matters. Ex. 2 *passim*. Now, Defendants seek to leverage their own tactical delay to delay trial court proceedings even further. They cite no apposite authority for why such delay

would be in the public interest. Their sole authority, *Earl v. Boeing Co*., 21 F.4th 895, 900 (5th Cir. 2021), addresses only the propriety of "whether to stay discovery pending a Rule 23(f) appeal" of a class certification order. The "potentially wasteful and unnecessary litigation costs" sought to be avoided were class action costs in the event that the class certification order was overturned. *Id.* Here, the preliminary injunction appeal has no effect on the underlying trial proceedings. Yet Defendants still seek to use it as a shield against their outstanding discovery. This conduct flies in the face of the public's interest in the integrity of civil proceedings and efficient use of judicial resources. It further suggests to other similarly situated parties that they too can avoid discovery if they simply delay long enough. The public interest factor thus weighs against a stay of proceedings.

## CONCLUSION

For the reasons set forth above, Defendants' motion to stay district court proceedings pending appeal should be denied.

Dated: May 12, 2023        Respectfully submitted,
*/s/ Ellen Leonida*
Ellen V. Leonida
(CA Bar No. 184194)
Matthew Borden
(CA Bar No. 214323)
Marissa Benavides
(NY Bar No. 5796891)
Max Bernstein
(NY Bar No. 5609037)
BraunHagey & Borden LLP

351 California Street, 10th Floor
Tel.: 415-599-0210
Fax: 415-276-1808
leonida@braunhagey.com
borden@braunhagey.com
benavides@braunhagey.com
bernstein@braunhagey.com

Katherine P. Chiarello
(TX Bar No. 24006994)
Ryan A. Botkin
(TX Bar No. 00793366)
María Amelia Calaf
(TX Bar No. 24081915)
BOTKIN CHIARELLO CALAF PLLC
1209 Nueces Street
Austin, Texas 78701
Tel: 512-615-2341
Fax: 737-289-4695
katherine@bccaustin.com
ryan@bccaustin.com
mac@bccaustin.com

*Attorneys for Plaintiffs-Appellees*

## **CERTIFICATE OF COMPLIANCE**

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,168 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Ellen Leonida*

Ellen V. Leonida

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of May, 2023, I electronically submitted the foregoing to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the Court's ECF system, which sent a Notice of Electronic Filing to the attorneys of record.

*/s/ Ellen Leonida*
Ellen V. Leonida

# EXHIBIT 1

| From: | Jonathan Mitchell |
|---|---|
| To: | Ellen Leonida |
| Cc: | Ellis Herington; Dwain K. Rogers; Matt Rienstra; Andrew Levine; Kayna Levy; Max Bernstein; Shannon Morrissey; Katherine Chiarello; Maria Calaf; Marissa Benavides; Mac@bccaustin.com; Katherine@bccaustin.com; ryan@bccaustin.com; Kayna Levy |
| Subject: | Re: motion for stay of district-court proceedings |
| Date: | Wednesday, May 10, 2023 6:16:10 AM |

*** EXTERNAL MESSAGE ***

Ellen:

There was no misrepresentation whatsoever. Dwain told the magistrate judge that we can produce the outstanding discovery within 30 days, and we intend to comply with all orders of the district court and the magistrate judge while the district-court proceedings remain ongoing. That does not waive our right to request a stay of the district-court proceedings, any more than the agreed scheduling order that we entered into on August 2, 2022 (ECF No. 56). Note that paragraph 11 of the agreed scheduling order states: "All parties reserve the right to move for a stay of proceedings in the District Court in the event of an interlocutory appeal."

If the district court or the Fifth Circuit decides to stay the district-court proceedings, it will simply place a pause on discovery and summary-judgment briefing until the appeal concludes. It does not "deny plaintiffs access to discovery." If you think our request is unwarranted or misguided, then you can say so in your response.

I have a responsibility to act in the best interests of my clients. It is in my clients' best interest to request a stay of the district-court proceedings. Do not accuse me of misrepresentation unless you identify a false or misleading statement that I made.


—Jonathan




On May 8, 2023, at 1:40 PM, Ellen Leonida <mailto:Leonida@braunhagey.com> wrote:

Counsel,

Thanks for the clarification.

First, we note that you represented to Judge Lane on April 27, 2023, that you would need 30 days to produce outstanding written discovery – before Judge Lane granted you that time and ordered you to turn over emails that we have been requesting since the outset of this case.

You separately represented to plaintiffs that you would facilitate an inspection of the removed books but have thus far refused to provide a date certain for that inspection despite multiple requests. And are now imposing an apparent time limitation by insisting that the inspection happen after 4:00 pm.

Your representation to the court that Defendants would comply with discovery and produce all outstanding documents appears to have been false, as you actually intend to move to stay discovery entirely and deny plaintiffs access to the discovery necessary to bring this case to a trial on the merits. We cannot consent to your request for a motion to stay.

Ellen Leonida
B R A U N H A G E Y  &  B O R D E N  L L P
Direct:  (415) 684-7285
http://www.braunhagey.com/impact

From: Jonathan Mitchell <mailto:jonathan@mitchell.law>
Sent: Monday, May 8, 2023 1:26 PM
To: Ellen Leonida <mailto:Leonida@braunhagey.com>
Cc: Ellis Herington <mailto:herington@braunhagey.com>; Dwain K. Rogers <mailto:drogers@co.llano.tx.us>;
Matt Rienstra <mailto:matt.rienstra@co.llano.tx.us>; Andrew Levine <mailto:levine@braunhagey.com>; Kayna
Levy <mailto:kayna@wittliffcutter.com>; Max Bernstein <mailto:bernstein@braunhagey.com>; Shannon
Morrissey <mailto:Morrissey@braunhagey.com>; Katherine Chiarello <mailto:katherine@wittliffcutter.com>;
Ryan Botkin <mailto:ryan@wittliffcutter.com>; Maria Calaf <mailto:mac@wittliffcutter.com>
Subject: Re: motion for stay of district-court proceedings

*** EXTERNAL MESSAGE ***

(1) Yes, we will be requesting a stay of all discovery and all proceedings in the district court until the Fifth Circuit
rules on the appeal.

(2) I believe Dwain or Matt is available on either May 10 and May 11 for the inspection. I will let them confirm
their availability. The inspection will start at 4:00 p.m. Again, we ask that you not communicate with library staff
during the inspection and communicate only with Dwain or Matt.


—Jonathan




On May 8, 2023, at 3:33 PM, Ellen Leonida <mailto:Leonida@braunhagey.com> wrote:

Counsel,

Can you please clarify whether you will be seeking to stay the written discovery and depositions Judge Lane ordered
Defendants complete?

Separately, we are still waiting for confirmation from you on the physical inspection. Will counsel or any other
representative for Defendants be available May 10th or 11th for the inspection?


Ellen Leonida
B R A U N H A G E Y & B O R D E N L L P
Direct: (415) 684-7285
http://www.braunhagey.com/impact

From: Jonathan Mitchell <mailto:jonathan@mitchell.law>
Sent: Monday, May 8, 2023 12:26 PM
To: Ellen Leonida <mailto:Leonida@braunhagey.com>
Cc: Ellis Herington <mailto:herington@braunhagey.com>; Dwain K. Rogers <mailto:drogers@co.llano.tx.us>;
Matt Rienstra <mailto:matt.rienstra@co.llano.tx.us>; Andrew Levine <mailto:levine@braunhagey.com>; Kayna
Levy <mailto:kayna@wittliffcutter.com>; Max Bernstein <mailto:bernstein@braunhagey.com>; Shannon
Morrissey <mailto:Morrissey@braunhagey.com>; Katherine Chiarello <mailto:katherine@wittliffcutter.com>;
Ryan Botkin <mailto:ryan@wittliffcutter.com>; Maria Calaf <mailto:mac@wittliffcutter.com>
Subject: Re: motion for stay of district-court proceedings

*** EXTERNAL MESSAGE ***

Counsel:

Same with this one. Please let us know your position within the next hour. Otherwise I will go ahead and file.

—Jonathan

On May 8, 2023, at 1:20 AM, Jonathan Mitchell <mailto:jonathan@mitchell.law> wrote:

Counsel:

As I mentioned in my e-mail of May 5, 2023, we will be filing a motion for a stay of discovery and further district-court proceedings until the Fifth Circuit rules on the expedited appeal. Please let us know your position on the motion. Thanks.

—Jonathan

------------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
mailto:jonathan@mitchell.law
http://papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842

CONFIDENTIALITY NOTICE:
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK PRODUCT

------------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
mailto:jonathan@mitchell.law

http://papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842

CONFIDENTIALITY NOTICE:
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the
use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any
disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in
this electronic mail message is strictly prohibited. If you have received this message in error, please delete
it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK
PRODUCT

-----------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
mailto:jonathan@mitchell.law
http://papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842

CONFIDENTIALITY NOTICE:
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the
use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any
disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in
this electronic mail message is strictly prohibited. If you have received this message in error, please delete
it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK
PRODUCT

-----------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
mailto:jonathan@mitchell.law
papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842

CONFIDENTIALITY NOTICE:
This e-mail and any attachments are confidential and legally privileged. This information is intended only for the
use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any
disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in
this electronic mail message is strictly prohibited. If you have received this message in error, please delete
it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK
PRODUCT

# EXHIBIT 2

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Leila Green Little, *et al.*,

Plaintiffs-Appellees,

v.

Llano County, *et al.*,

Defendants-Appellants.

§
§
§
§
§
§
§
§
§
§
§

Case No. 23-50224

## DECLARATION OF ELLEN V. LEONIDA

I, Ellen Leonida, declare:

1.      I am an attorney at BraunHagey & Borden LLP and counsel of record for Plaintiffs in the above-captioned matter. I make this declaration based on personal knowledge and if called upon to testify, I could and would testify competently to the facts stated herein.

2.      I represent Plaintiffs-Appellees in this litigation, and I submit this declaration in support of Plaintiffs-Appellees Opposition to Defendants-Appellants' Motion to Stay the District Court Proceedings Pending Appeal.

3.      Plaintiffs-Appellees ("Plaintiffs") initiated this case in April 2022, and issued their first set of discovery demands in May 2022.  Since then, Defendants-Appellants ("Defendants") have repeatedly refused to comply with their discovery obligations, including failing to produce relevant documents responsive to requests

Plaintiffs served more than one year ago and refusing to sit for duly noticed depositions without giving Plaintiffs' any advanced notice. As a result of Defendants' discovery misconduct, Plaintiffs have had to file seven motions to compel and spend tens of thousands of dollars trying to induce Defendants' compliance with their basic discovery obligations. ROA.743-803, 3066-78, 3404, 3418-19, 3467-73, 3534-35, 3693-94.

4. Five of Plaintiffs' seven motions were heard by the Honorable Judge Mark P. Lane during an April 27, 2023, hearing, the transcript of which is attached to Plaintiffs' Opposition as Exhibit B. At the hearing and through orders entered subsequently, the Court granted nearly all of Plaintiffs' motions and admonished Defendants and their counsel for their discovery conduct to date. Judge Lane ordered Defendants to produce documents and sit for depositions within weeks of the entry of his orders. But instead of complying, Defendants filed the instant motion, seeking to further obstruct and delay.

5. On May 11, 2022, Plaintiffs filed a Motion for a Preliminary Injunction and a Motion for Expedited Discovery. ROA.187-214, 429-40. That same day, Plaintiffs served on Defendants Amber Milum, Bonnie Wallace, Jerry Don Moss, and Llano County their first set of Requests for Production ("RFPs"), Interrogatories, and Requests for Admission. ROA.441-535.

---

6.     On June 7, 2022, Defendants agreed to respond to Plaintiffs'
discovery demands, and in exchange, the parties agreed that there were no
outstanding issues regarding Plaintiffs' Motion for Expedited Discovery.
ROA.570-71, 597-98.

7.     On June 22, 2022, Defendants Amber Milum, Bonnie Wallace, Jerry
Don Moss, and Llano County provided responses and objections to Plaintiffs' First
Set of RFPs. ROA. 1947-71.  Defendants also made a production of documents on
behalf of the County and Defendants Milum, Moss, and Wallace. However,
Defendants did not include in their production the list of books that have been
removed from shelves during the relevant period, even though that list is critical to
this litigation and responsive to RFPs 1 and 4.  *See, e.g.*, ROA.510.  Further,
Defendants produced emails as PDFs, many without attachments, and all without
any metadata.

8.     On July 29, 2022, Plaintiffs filed a motion to compel, seeking the
withheld documents in advance of the parties' preliminary injunction hearing.
ROA.744-49.

9.     Only after Plaintiffs filed their motion to compel did Defendants
produce the list of books that had been removed from shelves during the relevant
period.  ROA.1000.  Once Defendants did so, the Parties agreed that there were no
outstanding disputes as to Plaintiffs' motion to compel.

10.     Because Defendants' first production lacked any usable metadata, on September 7, 2022, Plaintiffs sent to Defendants a proposed protocol governing the production of electronically stored information (the "ESI protocol"). After numerous follow-up emails, Defendants' counsel emailed back stating, "I am meeting with our IT guy tomorrow to be sure as to what Llano County is capable of in regards to the ESI proposal. We will send our edits once we know our system's limitations." The next day, Defendants' counsel sent back an edited version of the ESI protocol, with only one edit, proposing that the protocol not go into effect until after the hearing concluded on October 31, 2022.  ROA.1972-1989.

11.     On September 14, 2022, Plaintiffs served RFPs and interrogatories on Defendants Amber Milum, Bonnie Wallace, Gay Baskin, Jerry Don Moss, Linda Raschke, Llano County, Mike Sandoval, Peter Jones, Rhonda Schneider, Rochelle Wells, and Ron Cunningham.  ROA.1990-2188.

12.     On September 28, 2022, Defendants emailed Plaintiffs, stating that they could not respond to Plaintiffs' discovery requests by October 14, and thus they requested an extension. On October 4, 2022, the parties met and conferred regarding, among other things, the negotiation of an extension. The parties agreed that Llano County would respond to the Plaintiffs' discovery requests by October 14, and the remaining Defendants would respond no later than November 14.

Plaintiffs sent Defendants an email on October 5, 2022, memorializing that agreement. The following day, Defendants agreed to Plaintiffs' ESI protocol as originally written. ROA.2189-94.

13.     On October 14, 2022, Llano County provided responses and objections to Plaintiffs' Second Set of RFPs and interrogatories.  ROA.2195-2215.

14.     Also on October 14, Llano County made a production of documents. The production did not comply with the parties agreed-to ESI protocol. The documents were, among other things, not produced in their native format, did not contain metadata or load files, were not text searchable, and many emails did not include attachments.  Defendants contend that producing documents in their native format or with basic metadata is beyond their and their lawyers' capabilities, but these kinds of production are standard in any civil case. Defendants also specifically agreed to production in this format after reviewing the parties' ESI protocol and conferring with their "IT guy".

15.     The remaining Defendants—Amber Milum, Bonnie Wallace, Gay Baskin, Jerry Don Moss, Linda Raschke, Llano County, Mike Sandoval, Peter Jones, Rhonda Schneider, Rochelle Wells, and Ron Cunningham—failed to produce any documents by the agreed-to November 14, 2022, deadline.

16.     Throughout November and early December 2022, Plaintiffs wrote to Defendants numerous times regarding the deficiencies in their production and all

non-Llano County Defendants' failure to produce documents. ROA.2216-31.
Defendants repeatedly moved the goal posts, promising productions would be
forthcoming, but none came.

17.    Accordingly, on December 16, 2023, Plaintiffs filed a motion to
compel regarding Defendants' failures to comply with their discovery obligations.

18.    Defendants opposed the motion and asked for numerous extensions,
ROA.2236-39, 2375-77, 2696-2700, 2803-09, but did not produce any documents
for more than a month.  Defendants finally made a responsive production on
January 17, 2023, and followed up with additional productions on February 17 and
28, March 6, 10, 16, and 21, and on April 25.

19.    Despite making numerous productions, Defendants failed to produce
some of the most critical evidence in this case.  For example, to date, Defendants
have not produced emails from the Library Advisory Board's email account,
individual Llano County Librarian's Yahoo! email accounts, or two of Defendant
Wells's and Wallace's personal email accounts.

20.    Defendants' failure to produce emails from these critical accounts was
the subject of Plaintiffs' motion to compel, ROA. 3066-78, and the subject of the
April 27, 2023, hearing before Judge Lane.  Judge Lane ruled that Defendants must
produce documents from each of the aforementioned email accounts—the Library
Advisory Board's email account, the individual Llano County Librarian's Yahoo!

email accounts, and Defendant Wells's and Wallace's personal email accounts—and that such production must occur within thirty days. Ex. 3 to Resp. at 17:4-18:25; Ex. 5 to Resp. The Court also admonished Defendants and their counsel for failing to "prioritize" this case and explained that it has taken Defendants nearly a year to deal with "the simplest of issues," that is, collecting emails from key custodian's accounts, reviewing those emails, and producing them. Ex. 3 to Resp. at 18:9-17.

21.     Even after Judge Lane's order that Defendants must comply with the most basic and "simplest" of discovery issues, Defendants have produced nothing. Instead, they seek a stay of discovery in this Court.

22.     In addition to their failure to comply with their documentary discovery obligations, Defendants have failed to appear for properly noticed depositions, without informing Plaintiffs ahead of time that the Defendants would not appear. As a result, Plaintiffs have had to spend thousands of dollars in hard costs, including paying court reporters and videographers after Defendants failed to appear at their depositions.

23.     On March 1, 2023, Plaintiffs noticed Defendant Bonnie Wallace's deposition for March 22, 2023, and noticed Defendant Jerry Don Moss's deposition for March 27, 2023. ROA.3410-12, 3480-81. Plaintiffs' counsel appeared at the time and place stated in Defendant Wallace's and Defendant

Moss's deposition notices, prepared to go forward with both. ROA.3398-99, 3467-68. Also in attendance were the court reporter and videographer retained by Plaintiffs to record the depositions. *Id.* Without any prior attempt by counsel for Defendants to meet and confer on the propriety or scheduling of this deposition, much less a written response or objection to the Notice, neither Defendant Wallace nor Defendant Moss (or any attorney representing them) appeared for their depositions. *Id.*

24.     Similarly, on March 1, 2023, Plaintiffs noticed Defendant Amber Milum's deposition for March 30, 2023. ROA.3328-29  On March 28, counsel for Defendants, Jonathan Mitchell, stated in an email to Plaintiffs' counsel that Defendants would not produce Defendant Milum for her deposition. ROA.3550-59. By that time Plaintiffs already had to pay non-refundable deposits to the reporter and videographer hired to record Milum's deposition.

25.     Plaintiffs filed motions to compel Defendants Wallace, Moss, and Milum to sit for depositions, and sought sanctions for their failure to appear without providing proper notice to Plaintiffs. ROA.3398-3403, 3467-73, 3535-34.

26.     The motions were also the subject of the April 27 hearing before Judge Lane. Judge Lane admonished Defendants for their failure to appear for depositions, admonished Defendants' counsel for lacking the professional courtesy to inform Plaintiffs ahead of time that the Defendants would not appear, and

ordered Defendants Wallace, Moss, and Milum to sit for depositions within ten days of May 30, 2023.  (Ex. 3 to Resp. at 27:10-28:24, 48:6-49:9; Ex. 5 to Resp.)

27.    Instead of complying with Judge Lane's clear order, Defendants seek a stay of discovery in this Court.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.


        Dated: May 12, 2023            */s/* Ellen Leonida
                                       Ellen V. Leonida

# EXHIBIT 3

<pre>
 1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF TEXAS
 2                         AUSTIN DIVISION

 3   LEILA GREEN LITTLE, ET AL) Docket No. A 22-CA-424 RP
                              )
 4   vs.                      ) Austin, Texas
                              )
 5   LLANO COUNTY, ET AL       ) April 27, 2023

 6
                          TRANSCRIPT OF MOTIONS HEARING
 7               BEFORE THE HONORABLE MARK P. LANE

 8   APPEARANCES:

 9   For the Plaintiff:        Ms. Ellen V. Leonida
                               Braun, Hagey & Borden, LLP
10                             351 California Street, 10th Floor
                               San Francisco, California 94104
11
                               Mr. Ryan A. Botkin
12                             Ms. Maria Amelia Calaf
                               Ms. Katherine P. Chiarello
13                             Ms. Kayna S. Levy
                               Wittliff Cutter, PLLC
14                             1209 Nueces Street
                               Austin, Texas 78701
15

16   For the Defendant:        Jonathan F. Mitchell
                               Mitchell Law, PLLC
17                             111 Congress Avenue, Suite 400
                               Austin, Texas 78701
18
                               Mr. Dwain K. Rogers, Jr.
19                             Munsch, Hardt, Kopf & Harr
                               111 Congress Avenue, Suite 2010
20                             Austin, Texas 78701

21   Transcriber:              Ms. Lily Iva Reznik, CRR, RMR
                               501 West 5th Street, Suite 4153
22                             Austin, Texas 78701
                               (512)391-8792
23


24


25   Proceedings reported by digital sound recording,
     transcript produced by computer-aided transcription.
</pre>

 1   almost a proxy battle between different groups.  I get it,

 2   you get it.  But it's a lawsuit.  We've gotta honor the

 3   lawsuit.  We have to honor the rules.  It's been here for

 4   a year.

 5           What do I need to do or order to get y'all to the

 6   point very soon so that you can represent to the Court, we

 7   have tendered everything that we have in -- that's within

 8   our care, custody and control and it's consistent with the

 9   requests that plaintiffs made?  That's what I want to

10   order.  So is there anything helpful I can include in that

11   order that gets that done?

12           MR. ROGERS:  Your Honor, I'm going through my

13   memory, but I believe based on the work that we have done

14   in the last few weeks that we are between 96 and 99

15   percent done with all production.  We, I believe, now

16   either have control of or have the ability to access those

17   e-mail addresses which we have represented we have the

18   ability to do.  And I believe that if the Court issued an

19   order with a date certain that was a short but reasonable

20   timeframe, that we could meet it.

21           THE COURT:  Like what?

22           MR. ROGERS:  Thirty days.  I don't even think it

23   would necessarily take that long, but I would prefer that,

24   given some of the other things that we're dealing with in

25   our office.

1          THE COURT:  I'll offer this comment on Llano

2   County resources.  Listen, I'm not -- I'm the last to

3   willy-nilly spend taxpayer money on things.  I don't like

4   doing that.  But it does strike me, this is a crisis for

5   Llano County right now and leadership needs to provide the

6   resources to deal with the crisis.  Whether it was a

7   bridge that falls or something that happens to a roadway,

8   a crisis would be dealt with.  That's not happening.  I

9   can tell that with a year's worth of back-and-forth on the

10  simplest issue, which is the exchange of relevant e-mails.

11  I mean, it's stunning how this issue comes up in every

12  case, but in this case, it warrants court time to resolve

13  it.

14          So when, 30 days?  Let me ask you this.  The

15  order that y'all have given me with -- in the motion, is

16  it one of those orders that's not very helpful?  Or is it

17  an order that, if violated, is airtight enough for the

18  application of sanctions on either a rolling or daily

19  basis?  I mean, Llano County's going to have decide who

20  they want to pay, an IT expert to answer these questions

21  in a timely manner or the court through fines and

22  sanctions, which I don't want to do.  I don't do that that

23  often.

24          So is 30 days, first of all, is that reasonable?

25          MS. LEONIDA:  Thirty days is fine.  And, your

1    Honor, we're happy to prepare a very specific order that

2    targets the remaining discovery and submit that.  We can

3    do that later today.

4            THE COURT:  All right.  Well, do it tomorrow, but

5    I want you to exchange it with the other side.  And I know

6    they're not going to agree with it, but I want them to put

7    eyes on it and let you know if they have any -- and it's

8    the form-substance review of your proposed order and then,

9    file it.  All right.  And just to be clear, that's a tight

10   order on the production of whatever remains to be produced

11   that's memorialized just in these charts here, nothing

12   else, because you've told me this is the remaining issues,

13   but it seems like it's everything.

14           But to Llano County's point, whether any of us

15   think it was a good practice to have individual government

16   employees with Gmail and Yahoo addresses, let's put that

17   aside, that's what it was.  So what do you -- what can

18   Llano County do to get into an e-mail from somebody who

19   has left their employ and doesn't want to give them the

20   password?

21           MS. LEONIDA:  Your Honor, as noted in the joint

22   -- two responses to that.  As noted in the joint

23   statement, the majority of those e-mail addresses they can

24   get into.  When they finally asked last week, they got the

25   passwords and have represented they can't get into them.

1          THE COURT:  Time out.  Y'all didn't ask for their

2     passwords until last week?

3          MR. ROGERS:  I don't believe that's correct, your

4     Honor.  I think we had been trying to locate which

5     addresses we already had passwords for that were

6     controlled through the library itself, and many of the

7     employees for some of the Yahoo accounts had separated

8     some time ago.

9          THE COURT:  I'm going to tell you what I told you

10    before.  I believe everything you're telling me but what I

11    do also -- this is what I hear.  Llano County hasn't

12    prioritized this.  This -- whether it's you or Mr.

13    Mitchell, I don't know, nobody's prioritized getting this

14    done.  I appreciate what you've told me that you've worked

15    in good faith.  Maybe you have.  But a year later, on the

16    simplest of issues to be here tells me that you haven't.

17    You haven't done so.

18          So here's all I'm going to do.  Y'all send me an

19    order, it's gotta be tight compliance within 30 days, end

20    of a business day, and then, I'll take that and review it

21    and it's going to include a sanctions warning.  Either pay

22    an IT expert to resolve these issues and get it done or

23    you're going to be paying the federal court system.  I

24    don't want to do either one of those things.  Just get it

25    done.

1  important?

2       MR. MITCHELL:  It's important because, first, the

3  discovery deadline has passed, so it's too late for them

4  to seek leave of court now.  We don't think it's proper

5  for them.  And they suggested in the reply brief that this

6  court grant leave that they failed to seek and obtain

7  prior to March 30th.  We don't believe that's proper

8  because the discovery deadline has already passed.  I have

9  a responsibility to my clients to protect them from

10  harassing discovery.  They've already been deposed once

11  and the rules protect them from a second deposition unless

12  the plaintiffs seek leave of court.

13       It's not my responsibility to tell the plaintiffs

14  that they need to seek leave of court if they don't read

15  the rule and understand that they need to get that.  My

16  responsibility is to my clients.  It's not to coach

17  opposing counsel how to practice law.

18       THE COURT:  You love saying that, they didn't

19  read the rules, you're providing helpful guidance as a

20  lawyer, they don't know what they're doing.  I just love

21  this final paragraph of your -- I guess it was your

22  response on the Milum deposition issue.  Plaintiffs seem

23  to think we have some duty to inform them of the rules

24  requirements.  That is absurd.  When the plaintiffs

25  violate the rules and even though -- you don't like their

1  characterization of the stipulation last summer.  I think

2  a reasonable person could say that that covered it.  So

3  that's a reasonable lawyer position for them to take, but

4  you think that they are -- they need to go back to law

5  school and study the rules.  We also have no way of

6  knowing that plaintiffs would never bother seeking leave

7  of court.

8          I gotta tell you, are you a Texan?

9          MR. MITCHELL:  No.

10          THE COURT:  Okay.  I mean, what part of courteous

11  lawyering is this?  I mean, you look at Rule AT-4,

12  standards for pretrial conduct here in our district, a

13  lawyer should treat all other lawyers, all parties and all

14  witnesses courteously not only in court but also in

15  written and oral communication.

16          How hard would it have been in advance of those

17  deposition notices to pick up the phone and write an

18  e-mail and say, we're not going to be there?  How hard

19  would that have been?

20          MR. MITCHELL:  I believe we did tell them before

21  the deposition we aren't going to appear for Bonnie

22  Wallace.  We told them for at least some of these, we

23  weren't going to show up.  And, your Honor, we did not

24  have an obligation to tell them that they needed to seek

25  leave of court.  That's what they have insinuated in their

 1  motion to this court.  And the passage from my response

 2  that your Honor quoted was in direct response to their

 3  claim that we somehow acted improperly by not informing

 4  them that they needed to seek court before --

 5          THE COURT:  They acted properly within the rules.

 6  They noticed these people to appear for the deposition.

 7  You decided unilaterally, Judge Mitchell, that they didn't

 8  need to do that because they needed to get leave of court

 9  and you could have picked up a phone.  You could have

10  e-mailed them and told them they're not going to be there.

11  Even though we as defendants could file a motion to quash

12  -- motion for protective order, we're not going to do

13  that.  Plaintiff, you really want to get this done, you've

14  gotta do a motion to compel.  That's what you could have

15  done.

16          And I understand you don't believe that's your

17  duty.  I agree with you.  It's not.

18          MR. MITCHELL:  Right.

19          THE COURT:  But you have an obligation to treat

20  people courteously.  That's what I don't understand here.

21  Just the -- it's just a -- if this is the way this

22  lawsuit's being practiced, this is one of those lawsuits,

23  boy, I'm glad I'm not one of the lawyers in and treat

24  people like this.

25          So the bottom line is, you want to hear the magic

1   words, leave of court is granted to conduct these three

2   depositions, Wallace, Moss, Milum.  And I don't understand

3   what lofty principle has been protected or governed to get

4   us all the way to this point and yours is basically that

5   it's the rules, Judge.  Okay.  All right.  Black and

6   white, right or wrong, letter of the law.  So that's the

7   ruling on the depositions.  Get those done.

8           When do you want to get them done?

9           MR. BOTKIN:  Judge, our proposed order requests

10  the deponents to appear within 10 days of the date of the

11  order.  I'd like to amend that.  I think it probably makes

12  more sense for them to appear 10 days after production of

13  the documents in the document production request so that

14  we've got an opportunity to see what the documents are

15  that they're producing before we take these three

16  deponents.  They are arguably the three most important

17  witnesses in the case.

18          THE COURT:  Okay.

19          MR. BOTKIN:  We are also seeking Rule 37

20  sanctions.  We're not seeking attorneys' fees.  Simply our

21  out-of-pocket expenses for the court reporter and the

22  videographer.  That total is $3,032.50.  And I'm mindful

23  -- we didn't specify this in the motion.  I'm mindful of

24  the narrative about Llano County and limited resources,

25  and we would submit to the Court that perhaps these

1  started.  I read the joint notice and it was really well

2  done, whoever did it.  But when I read it, it's one of

3  those it didn't -- nothing got resolved.  So I was right

4  back to square one.

5          MR. BOTKIN:  Yeah.

6          THE COURT:  And that happens sometimes.  That's

7  okay.  But that's what I read into this is that -- and

8  that's why I really challenge you, Mr. Mitchell, what --

9  leave of court, we have preliminary hearings in this

10  courthouse all the time.  We have expedited discovery and

11  depositions in advance of those preliminary hearings all

12  the time.  They're commonly re-deposed after the

13  preliminary injunction hearings.  It's the run-of-the-mill

14  here.

15          So I appreciate you reminding us all of the

16  import of Rule 30, but the practical realties of an

17  overworked courthouse and overworked district judges is,

18  we rely on the lawyers to resolve these things.  That's

19  why I challenged you.  If this -- with my little scenario,

20  if this had all been back in February and they had -- the

21  plaintiff had done what you propose, sought leave, you

22  would have objected because -- even though the rules allow

23  for a second deposition, you've gotta get leave, your

24  principled objection would have been to a second

25  deposition, you don't have one.

 1          So this exercise, this spring has been a waste of

 2    time and it's been a waste of the three good people from

 3    Llano County who are here, who I ordered to be here this

 4    morning.  Thank you for being here, y'all.  But this has

 5    been a big waste of time and you've gained nothing by it.

 6    And the worst part about it is, I've had to get way into

 7    the weeds on this and I've taken a measure of how you

 8    defend cases.  It's -- you're allowed to do it that way.

 9    It's not the way I do it.  We're adjourned.

10          MR. BOTKIN:  Thank you.

11          (Proceedings conclude at 10:56 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2

 3                    REPORTER'S CERTIFICATE

 4

 5      I, LILY I. REZNIK, DO HEREBY CERTIFY THAT THE FOREGOING

 6  WAS TRANSCRIBED FROM AN ELECTRONIC RECORDING MADE AT THE

 7  TIME OF THE AFORESAID PROCEEDINGS AND IS A CORRECT

 8  TRANSCRIPT, TO THE BEST OF MY ABILITY, MADE FROM THE

 9  PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, AND THAT THE

10  TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE PRESCRIBED BY

11  THE COURT AND JUDICIAL CONFERENCE OF THE UNITED STATES,

12  ON THIS 3rd DAY OF MAY, 2023.

13

14

15                    Lily Iva Reznik

16                    ~~~~~~~~~~~~~~~~~~~~~~~~~~~
                      LILY I. REZNIK, CRR, RMR
17                    Official Court Reporter
                      United States District Court
18                    Austin Division
                      501 West 5th Street, Suite 4153
19                    Austin, Texas 78701
                      (512)391-8792
20                    SOT Certification No. 4481
                      Expires: 1-31-25
21

22

23

24

25
```

# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **Leila Green Little,** *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **1:22-cv-424-RP** |
| | § | |
| **Llano County,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## ORDER REGARDING
## <u>PLAINTIFFS' MOTIONS TO COMPEL DISCOVERY</u>

Before the Court are Dkt. Nos. 92 and 114.[1] After reviewing all the relevant briefing and receiving oral arguments at the April 27, 2023 Motions Hearing, and reviewing the entire case file, the Court **GRANTS** the Motions **IN PART** and issues the following **ORDER**:

**On or before 5:00 PM Central Time on May 30, 2023**, Defendants are **ORDERED** to produce the following:

1. All responsive emails to and from llanoco.libraryadvisoryboard@gmail.com, bwpandc@gmail.com, and LibertyForTheCaptives@hotmail.com.

2. All responsive emails to and from Llano County Library and Librarian email addresses:

    a. llanocountylibrary@yahoo.com,
    b. amilum.klib@yahoo.com,
    c. llano_bookcomment@yahoo.com,
    d. il.klib@yahoo.com,
    e. lakeshore.library@gmail.com, and
    f. llano.circ@yahoo.com.

---

[1] On March 29, 2023, U.S. District Judge Robert Pitman referred the above motions for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

**On or before 5:00 PM Central Time on May 30, 2023**, Defendants are **FURTHER ORDERED** to produce responsive documents to and from the following email addresses, to the extent they are able to access the applicable passwords:

  a. nrenshaw.klib@yahoo.com,
  b. sbaker.klib@yahoo.com,
  c. suzette2699@yahoo.com, and
  d. apuryear.klib@yahoo.com.

Defendants are **FURTHER ORDERED** to **CERTIFY on or before May 30, 2023 at 5:00 p.m. Central time**, in a written document to be filed with the Court and under penalty of perjury, that they have produced all documents responsive to Plaintiffs' discovery requests, as detailed above. Such certification shall include a statement that Defendants have taken all reasonable efforts to ascertain the passwords for all responsive Llano County Library and Librarian email addresses, regardless of email domain.

Defendants are **WARNED** that should they fail to timely comply with this and subsequent discovery orders Defendants will be subject to **SANCTIONS** as permitted by Federal Rule of Civil Procedure 37(d) and other authority.

Plaintiffs filed two versions of their Opposed Motion to Compel Discovery Responses and Sanctions. The version at Dkt. No. 92 was mooted by the corrected version at Dkt. No. 114. Accordingly, Plaintiffs' Opposed Motion to Compel Discovery Responses and Sanctions (Dkt. #114) is **GRANTED IN PART** consistent with this order and Dkt. No. 92 is **DISMISSED AS MOOT**.

SIGNED May 1, 2023.

_____
HON. MARK LANE
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| LEILA GREEN LITTLE, et al., | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | 1:22-CV-424-RP |
| LLANO COUNTY, et al., | § | |
| Defendants. | § | |

## ORDER

Before the Court are Dkt. Nos. 123, 127, and 135.[1] After reviewing all the relevant briefing and receiving oral arguments at the April 27, 2023 Motions Hearing, and reviewing the entire case file, the Court **GRANTS in PART** the Motions and issues the following **ORDER**:

Having previously been granted leave by U.S. District Judge Robert Pitman to exceed the ten-deposition limit imposed by Federal Rule of Civil Procedure 30(a)(2)(A)(i), Dkt. #128, Plaintiffs now are **GRANTED LEAVE**, pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(ii), to conduct an additional deposition each of Defendants Amber Milum, Jerry Don Moss, and Bonnie Wallace. As stated at the Motions Hearing, these depositions shall be conducted within 10 days of May 30, 2023.

Accordingly, Defendants Amber Milum, Jerry Don Moss, and Bonnie Wallace are **ORDERED** to appear for deposition **on or before 5:00 PM Central Time on June 9, 2023.**

SIGNED May 1, 2023.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE

---

[1] On March 29, 2023 and April 11, 2023, U.S. District Judge Robert Pitman referred the above motions for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

# EXHIBIT 6

1

2          IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TEXAS
3

4   LEILA GREEN LITTLE,          )
    ET AL.,                      )
5                                )
                   Plaintiffs,   )
6                                ) CIVIL ACTION FILE
              vs.                )
7                                ) NO: 1:22-CV-00424-RP
    LLANO COUNTY, ET AL.,        )
8                                )
                   Defendants.   )
9

10

11

12

13

14

15        ORAL AND VIDEOTAPED DEPOSITION OF

16               RHONDA SCHNEIDER

17               AUSTIN, TEXAS

18          FRIDAY, MARCH 24, 2023

19

20            (Reported Remotely)

21

22

23   REPORTED BY:  TANYA L. VERHOVEN-PAGE,
                   GA CCR-B-1790, TX CSR-12254
24

25   JOB NO.  223529

1                    R. SCHNEIDER

2       A    I don't think any of what you're saying

3  makes any sense, to be honest.  I'm sorry.  It's just

4  -- it's common sense, doesn't exist in that little

5  hypothetical world.

6       Q    All right.  Understood.  And you don't

7  recall any situation where a stranger came into the

8  library to read to children?

9       A    No.

10       Q    So then I want to turn -- I know we've

11  briefly talked about what you remembered as The Butt

12  Books.  You said that you don't remember exactly what

13  those books were, right?

14       A    (Witness nods.)

15       Q    Okay.  You also, I believe, said you

16  don't remember the content of those books; is that

17  correct?

18       A    I mean, I kind of have a general idea.

19       Q    Okay.  Can you tell me what that general

20  idea is?

21       A    They're butt books.  I mean, I can't -- I

22  mean, you know, I can't expand on it.  I don't know.

23  They're just --

24       Q    So when you say that they were butt

25  books, were they -- they were books about butts, is

```
 1                    R. SCHNEIDER
 2   your general recollection?
 3        A    I remember the title was Butt Books.
 4        Q    But you don't remember any of the
 5   substance of the books?
 6        A    I remember I didn't -- I didn't think it
 7   was library material.  It's kind of something I might
 8   buy for my nephew, outside, as funny, but definitely
 9   not library quality material.
10        Q    Why don't you think they're library
11   quality material?
12        A    They were stupid.
13        Q    And stupid in what way?
14        A    There's no -- there's no redeeming value
15   to them.  There was no -- no -- it was -- it wasn't
16   good for reading, it didn't teach you anything good,
17   it had no good message and it was just offensive,
18   really.  I mean, it's funny, and like I gave my
19   nephews -- I have them all like the Everybody Poops
20   book.  But I don't think that's a book for the
21   library, either.
22        Q    Okay.
23        A    We have a very small budget to waste it
24   on books when we actually had a strong need for
25   better books.
```

1        R. SCHNEIDER

2        Q     Do you think a parent might want to check

3  out a Butt Book because they thought it would be

4  funny?

5        A     Well, all the parents, except for one,

6  that use the library, and grandparents, they saw the

7  books and came and spoke to the library director.

8  That I remember.

9        Q     And they talked to Amber about them?

10       A     Uh-huh.

11       Q     Did they talk to you about them?

12       A     Well, I sent out that one message and

13 told people, and then they came and saw them

14 themselves, and then they decided from there, I

15 guess.  I mean, I'm presuming things.

16       Q     That's okay.

17       A     I just remember people came and they

18 agreed that it wasn't good for the library.

19       Q     Do you remember ever checking those books

20 out of the library yourself?

21       A     I don't remember.

22       Q     If Amber Milum had testified that you did

23 check those books out repeatedly for the purpose of

24 keeping them off the shelves so other people couldn't

25 check them out, would that surprise you or would you

1                    R. SCHNEIDER

2  believe that?

3                MR. ROGERS:  I'm trying to have a

4        lot of latitude, but I'm going to object

5        to form on that one.

6                But, please, go ahead and answer.

7                THE WITNESS:  Okay.  Yeah -- wait.

8        What was what's the question?

9  BY MS. HERINGTON:

10       Q     So if Amber Milum had testified that you

11  repeatedly checked The Butt Books out of the library

12  for the purpose of keeping other people from checking

13  them out, would you believe that?

14               MR. ROGERS:  Same objection.

15               Go ahead and answer.

16               THE WITNESS:  She has a better

17       memory than me, probably.

18  BY MS. HERINGTON:

19       Q     So you would believe that?

20               MR. ROGERS:  Same objection.

21               THE WITNESS:  Yes.

22  BY MS. HERINGTON:

23       Q     Okay.

24       A     But not based on my -- I mean, just -- I

25  don't know.

1                    R. SCHNEIDER

2      Q     Right.  So you don't specifically

3  remember doing that?

4      A     I don't specifically remember it at all.

5  I don't remember it at all.

6      Q     But it wouldn't surprise you if Amber

7  testified to that fact?

8            MR. ROGERS:  Same objection.

9            THE WITNESS:  I don't -- yeah, I

10         don't know what she had testified to.  I

11         don't know how to answer that question,

12         really.

13  BY MS. HERINGTON:

14      Q     Okay.  Now I want to turn back to the

15  book, It's Perfectly Normal.  I want to figure out

16  which exhibit that was.

17            MR. ROGERS:  It's 77, it looks

18         like?

19            MS. HERINGTON:  Yes, 77.

20  BY MS. HERINGTON:

21      Q     Do you have the e-mail in front of you?

22      A     Uh-huh.

23      Q     So I just want to talk a little bit more

24  about these screen shots in here and the excerpts.

25            I know that you said you don't remember

```
 1
 2                    C E R T I F I C A T E

 3

 4   STATE OF GEORGIA:

 5   FULTON COUNTY:

 6

 7             I hereby certify that the foregoing

 8         deposition was reported, as stated in the

 9         caption, and the questions and answers

10         thereto were reduced to written page

11         under my direction, that the preceding

12         pages represent a true and correct

13         transcript of the evidence given by said

14         witness.

15             I further certify that I am not of

16         kin or counsel to the parties in the

17         case, am not in the regular employ of

18         counsel for any of said parties, nor am I

19         in any way financially interested in the

20         result of said case.

21             Dated this 5th day of April, 2023.

22

23         _____

24         Tanya L. Verhoven-Page,
           Certified Court Reporter,
25         B-1790, CSR-12254
```

# EXHIBIT 7

```
1              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF TEXAS
2                      AUSTIN DIVISION

3  LEILA GREEN LITTLE, et      )
   al.,                        )
4                              )
        Plaintiffs,            )
5                              )
               v.              ) CIVIL ACTION
6                              )
   LLANO COUNTY, et al.,       ) NO.: 1:22-cv-00424-RP
7                              )
        Defendants.            )
8

9              ------------------------------------

10          ORAL AND VIDEOTAPED DEPOSITION OF

11                    ROCHELLE WELLS

12               APPEARING REMOTELY FROM

13                        TEXAS

14                  OCTOBER 17, 2022

15             ------------------------------------

16      ORAL AND VIDEOTAPED DEPOSITION OF ROCHELLE WELLS,

17  produced as a witness at the instance of the PLAINTIFFS,

18  and duly sworn, was taken in the above-styled and

19  numbered cause on the 17th of October, 2022, from 9:19

20  a.m. to 1:50 p.m., via videoconference, before Velma C.

21  LaChausse, Shorthand Reporter and Notary Public in and

22  for the State of Texas, reported by machine shorthand,

23  appearing remotely from Harris County, Texas, pursuant

24  to the Federal Rules of Civil Procedure and the

25  provisions stated on the record or attached hereto.
```

Rochelle Wells
October 17, 2022                                          71

1   an effective way to get the book removed from the

2   library is as it says here because you spoke with

3   Commissioner Moss and Judge Cunningham, and they had

4   books removed at your request.  Is that right?

5        A.  Not at my request, but at the request of many

6   of the people in Llano.

7        Q.  Okay.  You were one of those people that

8   requested to have the books removed.  Right?

9        A.  Yes.

10       Q.  In this e-mail when you say that the

11  commissioner and the judge have instructed the librarian

12  to remove certain books, do you remember which books

13  you're talking about right there?

14       A.  I'm going to read it.  Are you talking about

15  the first paragraph?

16       Q.  The first sentence where it says,

17  "Commissioner Moss and Judge Cunningham have instructed

18  Amber, the head librarian, to remove certain books"?

19       A.  Okay.  What was the question again concerning

20  that sentence?

21       Q.  Do you remember which books you were referring

22  to when you write, "Certain books"?

23       A.  Well, it says here that one of them was Lawn

24  Boy and Gender Queer.

25       Q.  Okay.  Did Commissioner Moss and Judge

 1  Cunningham tell you that they had instructed her to

 2  remove the books?

 3      A.  I don't recall.

 4      Q.  Then how did you know that?

 5      A.  I am trying to remember how I knew that.  I'm

 6  sorry.  I don't believe I spoke with Judge Cunningham,

 7  but I was in contact with Commissioner Moss as my

 8  commissioner, like I said before, about books or

 9  whenever I would find one.

10      Q.  So is he the one that told you that he and

11  Judge Cunningham had instructed Amber, the head

12  librarian, to remove certain books?

13      A.  I don't remember, to be honest.

14      Q.  Did Amber tell you that they had instructed her

15  to remove the books?

16      A.  No.

17      Q.  So if it wasn't Commissioner Moss, who was it

18  who told you that?

19      A.  I'm just being honest with you.  I don't

20  remember who told me.

21      Q.  Okay.  Somebody told you.  Right?

22      A.  Yes.

23      Q.  You weren't there when they instructed Amber to

24  remove the books, were you?

25      A.  No, I was not.

1     Q.  Okay.  So somebody told you that they had

2  instructed her to remove the books.  Right?

3     A.  Someone told me, yes.

4     Q.  Okay.  And you don't think it was Judge

5  Cunningham?

6     A.  I don't believe so because I did not speak very

7  much with Judge Cunningham.

8     Q.  Okay.  So it was probably Commissioner Moss?

9          MR. RIENSTRA:  Objection; form, calls for

10  speculation.

11     A.  I don't remember.  I'm not going to say it was

12  him.  I don't remember.  I want to be truthful.

13     Q.  (BY MS. LEONIDA)  We all want you to be

14  truthful, Ms. Wells.

15          When you later write, "Commissioner Moss,

16  we are very grateful for your help in this situation and

17  all you have done," what are you referring to there?

18     A.  I just mean part of helping us to take, I

19  guess, books like Lawn Boy and Gender Queer and the butt

20  book out of the library, books that are being harmful to

21  children.

22     Q.  How did he help you do that?

23     A.  Because as commissioner, he was able to do

24  that.

25     Q.  To do what?

1  direction; that the above and foregoing deposition as

2  set forth in typewriting is a full, true, and correct

3  transcript of the proceedings had at the time of taking

4  of said deposition.

5          I further certify that I am not, in any

6  capacity, a regular employee of the party in whose

7  behalf this deposition is taken, nor in the regular

8  employ of his attorney; and I certify that I am not

9  interested in the cause, nor of kin or counsel to either

10  of the parties;

11          GIVEN UNDER MY HAND AND SEAL OF OFFICE, on

12  this, the 21st day of October, 2022.

13

14                                          _____
                      Velma C. LaChausse

15                      Notary Public in and for
                       The State of Texas

16                      My Commission Expires: 03-22-2026
                       U.S. Legal Support, Inc.

17                      Firm Registration No. 122
                       16825 Northchase Drive

18                      Suite 800
                       Houston, Texas 77060

19                      Phone: (713)653-7100

20

21

22

23

24

25