No. 23-50224

# In the United States Court of Appeals for the Fifth Circuit

Leila Green Little; Jeanne Puryear; Kathy Kennedy; Rebecca Jones; Richard Day; Cynthia Waring; Diane Moster,

*Plaintiffs-Appellees*,

v.

Llano County; Ron Cunningham, in his official capacity as Llano County Judge; Jerry Don Moss, in his official capacity as Llano County Commissioner; Peter Jones, in his official capacity as Llano County Commissioner; Mike Sandoval, in his official capacity as Llano County Commissioner; Linda Raschke, in her official capacity as Llano County Commissioner; Amber Milum, in her official capacity as Llano County Library System Director; Bonnie Wallace, in her official capacity as Llano County Library Board Member; Rochelle Wells, in her official capacity as Llano County Library Board Member; Rhoda Schneider, in her official capacty as Llano County Library Board Member; Gay Baskin, in her official capacity as Llano County Library Board Member,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas
Case No. 1:22-cv-424-RP

**Reply Brief In Support Of Motion To Stay District-Court Proceedings Pending Appeal**

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Defendants-Appellants*

# Table Of Contents

Table of contents ................................................................................................. i

Table of authorities ............................................................................................ ii

    I.  The defendants will suffer irreparable harm absent a stay of district-court proceedings ........................................................................................ 2

    II.  The defendants have made a strong showing of likely success on appeal ........................................................................................................ 4

          A.  The defendants cannot "violate" the plaintiffs' First Amendment rights when the disputed books remain available to them through Llano Library's in-house checkout system ................................................................. 5

          B.  Content and viewpoint discrimination are permissible and inevitable when weeding library materials ......................... 6

    III. A stay of the district-court proceedings will not substantially injure the plaintiffs ..................................................................................................... 9

    IV. A stay of the district-court proceedings is in the public interest ................. 10

Conclusion ....................................................................................................... 11

Certificate of service ........................................................................................ 12

Certificate of compliance ................................................................................. 13

Certificate of electronic compliance ................................................................ 14

## Table of Authorities

**Cases**

*Board of Education v. Pico*, 457 U.S. 853 (1982) ............................................................ 8

*Brown v. Wal-Mart Stores, Inc.*, No. 5:09-CV-03339-EJD, 2012 WL
     5818300 (N.D. Cal. Nov. 15, 2012) ..................................................................... 4

*Campbell v. St. Tammany Parish School Board*,
     64 F.3d 184 (5th Cir. 1995) .................................................................................. 8

*Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005) ..................................................... 6, 9

*Earl v. Boeing Co.*, 21 F.4th 895 (5th Cir. 2021) ................................................ 4, 11

**Rules**

Fed. R. App. P. 8(a)(1) ............................................................................................. 1

Fed. R. App. P. 8(a)(2)(A)(ii) ................................................................................... 1

W.D. Tex. R. CV-7(d)(2) .......................................................................................... 1

The plaintiffs' procedural objections are meritless because Rule 8(a)(1) applies only to motions for "a stay of the judgment or order of a district court." Fed. R. App. P. 8(a)(1). The defendants are requesting a stay of the district-court proceedings, not a stay of the district court's "judgment or order."

Even if Rule 8(a)(1) applied (and it doesn't), the defendants complied by moving for a stay of proceedings in the district court on May 8—two days before seeking relief from the motions panel. The plaintiffs' response to the district-court motion is due on May 15, and the defendants will reply shortly thereafter. *See* W.D. Tex. R. CV-7(d)(2); Mitchell Decl. ¶ 4 (attached as Exhibit 1). The defendants have not requested a ruling from this Court until May 17. The district-court motion will be fully briefed by then and the district court will have an opportunity to weigh in before the panel.

The plaintiffs complain that our initial motion did not state whether the district court "denied the motion or failed to afford the relief requested,"[1] but Rule 8(a)(2)(A) is inapplicable to motions to stay the district-court proceedings. In all events, we will submit a letter to the clerk's office if the district court denies our motion or fails to afford the relief requested by May 17. *See* Mitchell Decl. ¶ 5. The defendants needed to seek relief quickly because expert depositions are scheduled for May 19 and May 26, and the defendants wish to obtain a ruling before undertaking the expense of traveling to, preparing for, paying for, and deposing two different experts in two different locations.

---

1. Fed. R. App. P. 8(a)(2)(A)(ii).

The plaintiffs also claim that our motion fails to satisfy the *Nken* factors, but none of their arguments have merit.

## I. THE DEFENDANTS WILL SUFFER IRREPARABLE HARM ABSENT A STAY OF DISTRICT-COURT PROCEEDINGS

The plaintiffs deny that that the defendants will suffer irreparable harm absent a stay because they insist that we will be "required to complete trial court proceedings regardless." Response, ECF No. 78-1, at 7; *see also id.* at 9. But there will be no need for further trial-court proceedings if this Court rules in the defendants favor, either by holding that content and viewpoint discrimination are permissible in public-library weeding decisions,[2] or ruling that the defendants cannot "violate" the First Amendment when the 17 disputed books remain available at Llano Library.[3] And if this Court rejects even *part* of the district court's analysis, it will require the parties to re-litigate summary judgment, as the soon-to-be-submitted summary-judgment briefs will be premised on the district court's belief that "content discrimination" and "viewpoint discrimination" are categorically forbidden in library-weeding decisions. ROA.3523 ("[T]he First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination."). It will also require re-litigation of expert discovery, as the expert reports are premised on the plaintiffs' insistence that content- and viewpoint-based weeding is constitutionally impermissible. *See* Mitchell Decl. ¶ 6. The plaintiffs do not deny any of this, yet

---

2. *See* Mot. for Stay, ECF No. 64, at 7–10.
3. *See* Mot. for Stay, ECF No. 64, at 6–7.

they want this Court to assume that the defendants will incur the same litigation costs regardless of what happens on appeal. That assumption is unwarranted.

The plaintiffs suggest that the impending litigation costs are attributable to the defendants' "withholding" of evidence during fact discovery. *See* Response, ECF No. 78-1, at 8. That is patently false. The discovery and litigation costs that we seek to avoid include expert discovery, *Daubert* motions, summary-judgment briefing, trial preparation, and the trial itself. *See* Mot. for Stay, ECF No. 64, at 2–3; *id.* at 10–13; *id.* at 15. All of that is occurring on schedule, and none of it has anything to do with the parties' lingering fact-discovery disputes. There is still *some* fact discovery left because the district court extended the fact-discovery deadline,[4] the magistrate judge authorized second depositions of Bonnie Wallace, Jerry Don Moss, and Amber Milum,[5] and the defendants are finishing their production of e-mails.[6] But the parties are in the final throes of fact discovery, and the costs of the remaining fact discovery are trivial compared to the looming costs of expert discovery, *Daubert* litigation, summary-judgment briefing, and trial preparation. *See* Mitchell Decl. ¶ 7. The defendants would be facing all of those remaining litigation costs even if fact discovery had been completed on time.[7]

---

4. *See* Mot. for Stay Ex. 4, ECF No. 65.
5. *See* Order, ECF No. 164.
6. *See* Mitchell Decl. ¶ 7.
7. The plaintiffs falsely accuse the defendants of "withholding" evidence. *See* Response, ECF No. 78-1, at 8. The defendants have acknowledged the plaintiffs' entitlement to the requested e-mails; it has simply taken them more time to produce those e-mails in native format because Llano County lacks a full-time IT person. *See* Mitchell Decl. ¶ 8. It is false and defamatory to accuse an oppos-

3

We certainly agree that the plaintiffs are "entitled to a complete record of discovery on their claims before proceeding to summary adjudication and trial." Response, ECF No. 78-1, at 8. But they are not entitled to impose unwarranted and unrecoverable litigation costs on the defendants when their First Amendment claims are unlikely to survive appeal. *See* Section II, *infra*; *Earl v. Boeing Co.*, 21 F.4th 895, 900 (5th Cir. 2021) ("[T]he public interest supports staying district court proceedings to avoid potentially wasteful and unnecessary litigation costs where, as here, the appellant has shown a substantial likelihood of success on appeal."); *Brown v. Wal-Mart Stores, Inc.*, No. 5:09-CV-03339-EJD, 2012 WL 5818300, at *4 (N.D. Cal. Nov. 15, 2012) ("Forcing Defendant to incur potentially substantial fees and engage in discovery that may ultimately be unnecessary constitutes at least some harm to Defendant."). The plaintiffs will have every opportunity to complete discovery on whatever remains of their case after the merits panel's ruling.

## II. The Defendants Have Made A Strong Showing Of Likely Success On Appeal

The district court's decision is unlikely to survive appeal, and the plaintiffs' response only reinforces the indefensibility of the district court's ruling.

---

ing party of "withholding" evidence when the opposing party is attempting to produce the requested discovery but has been delayed by resource constraints.

### A. The Defendants Cannot "Violate" The Plaintiffs' First Amendment Rights When The Disputed Books Remain Available To Them Through Llano Library's In-House Checkout System

The defendants are not "violating" the plaintiffs' First Amendment rights when the 17 disputed books remain available through Llano Library's in-house checkout system. ROA.3463-3465. The plaintiffs repeat their false claim that the in-house checkout system leaves them with "no reliable way of knowing whether or when" the disputed books are "actually available,"[8] but we have shown that the plaintiffs can call the library to ask about the availability of an in-house book and reserve that book over the phone. *See* Milum Decl., ECF No. 48-4, at ¶ 11. They do not need to "repeatedly visit the library" to check on the disputed books. And the plaintiffs do not present any argument or authority for how this supposed "burden" would violate the First Amendment—even if this burden actually existed.

The "voluntary cessation" doctrine is irrelevant because the defendants did not return the disputed books to the shelves and catalog, and the plaintiffs continue to suffer Article III injury from the absence of the 17 books from the library shelves. *See* Mot. for Stay of Prelim. Inj., ECF No. 14-1, at 8. The problem for the plaintiffs is that their Article III injury does not remotely approach a violation of their First Amendment rights, nor does it qualify as an "irreparable harm" that warrants a preliminary injunction. *Id.* at 9; ROA.2560.

---

8. *See* Response, ECF No 78-1, at 13.

### B. Content And Viewpoint Discrimination Are Permissible And Inevitable When Weeding Library Materials

The district court held that content and viewpoint discrimination are categorically forbidden in public-library weeding decisions. ROA.3523 ("[T]he First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination.").[9] The district court's holding and analysis tracked exactly how the plaintiffs argued the case, as the plaintiffs repeatedly and emphatically proclaimed that the First Amendment prohibits "viewpoint discrimination" and "content discrimination" in public-library weeding decisions. ROA.1903 ("The First Amendment prohibits the removal of books from libraries based on either content or viewpoint discrimination.").[10]

This stance is indefensible because it contradicts the precedent of this Court, which recognizes that "'[p]ublic library staffs *necessarily consider content* in making collection decisions and enjoy broad discretion in making them.'" *Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005) (emphasis added) (citation omitted)). It also con-

---

9. Later in its opinion, the district court walked back its stance slightly by allowing for "content-based" weeding that satisfies "strict scrutiny." ROA.3526 ("Content-based restrictions on speech are presumptively unconstitutional and subject to strict scrutiny.").
10. *See also* ROA.1904 ("Plaintiffs need only show Defendants removed books from the Llano County Library System—or placed burdens on accessing books—based either on the viewpoints expressed or on their content without narrowly tailoring the burden to a compelling government interest."); ROA.1891 ("Plaintiffs are likely to prevail on the merits because viewpoint and content discrimination are repugnant to the First Amendment."); ROA.202 ("Defendants' content-based suppression of access to books in public libraries—which are limited public forums—likewise violates the First Amendment.").

tradicts library-weeding manuals, which require librarians to engage in content and viewpoint discrimination when weeding books. ROA.3191 (listing "poor content" as grounds for weeding, including "[m]aterial that contains biased, racist, or sexist terminology or views"); Milum Decl., ECF No. 14-4, at ¶ 8. Libraries must establish standards for their materials and ensure that their limited shelf space is reserved for quality publications, and there is nothing wrong with content- or viewpoint-based weeding of books that contain pornography, deny the Holocaust, or espouse obsolete and debunked scientific theories such as spontaneous generation or scientific racism.

Now, for the first time in this litigation, the plaintiffs appear to be conceding that content-based weeding might actually be permissible, bowing to the evidence from library-weeding manuals that not only authorize but *compel* librarians to engage in content and viewpoint discrimination. *See* Response, ECF No. 78-1, at 14 (attempting to distinguish "an individual librarian's routine content-based weeding to balance a library's collection" from "the systemic targeted weeding of books that government officials personally dislike."). Yet later in their brief, the plaintiffs revert to their old ways by insisting that the First Amendment categorically prohibits "content discrimination" and "viewpoint discrimination" in library-book removals. *See id.* at 16 ("Removing materials from public libraries based on viewpoint and content discrimination violates the First Amendment."). The plaintiffs cannot keep their story straight.

Even if the plaintiffs try to walk back their previous argument, the fact remains that the district-court injunction and opinion unequivocally ban *all* forms of content

7

discrimination and viewpoint discrimination in public-library weeding decisions. The injunction compels the defendants to return "*all* print books that were removed because of their viewpoint or content, including" the 17 books that the plaintiffs sued over. ROA.3531 (emphasis added). The injunction makes no exception or allowance for books that were removed by "an individual librarian's routine content-based weeding to balance a library's collection." Response, ECF No. 78-1, at 14. And the district-court opinion declares that "the First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination,"[11] consistent with what the plaintiffs argued in their district-court briefing. ROA.1903 ("The First Amendment prohibits the removal of books from libraries based on either content or viewpoint discrimination."). It is clear from the district court's ruling that any *Daubert* litigation, summary-judgment briefing, and trial will be premised on its false belief that content- or viewpoint-based weeding decisions are unconstitutional *per se*.

Neither *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995), nor the plurality opinion in *Board of Education v. Pico*, 457 U.S. 853 (1982), comes anywhere close to establishing a categorical prohibition on "content discrimination" or "viewpoint discrimination" in public-library weeding decisions. *See* Mot. for Stay, ECF No. 64, at 8-9. The plaintiffs' claim that only school libraries (but not public libraries) may weed materials that are "pervasively vulgar" or lack "educational suitability" is untenable,[12] as public libraries no less than school librar-

---

11. ROA.3523.
12. See Response, ECF No. 78-1, at 17.

8

ies must reserve their limited shelf space for worthy materials. *See Chiras*, 432 F.3d at 614.

Finally, the plaintiffs (once again) misrepresent *Pico* by citing Justice Brennan's plurality opinion as if it were an opinion of the Court, even after we flagged this misrepresentation in previous briefing. *See* Reply Br., ECF No. 48-1, at 3 n.5 ("The plaintiffs repeatedly misrepresent Justice Brennan's plurality opinion in *Pico* by citing it as if it were a majority opinion."). The Court should not tolerate this if it appears in the merits briefing.

### III. A Stay Of The District-Court Proceedings Will Not Substantially Injure The Plaintiffs

The plaintiffs will not be harmed by a stay of district-court proceedings because the preliminary injunction prevents any possible violation of their First Amendment rights during the appeal. The injunction even extends beyond the 17 disputed books, by banning the removal of *any* books from the catalog for *any* reason. ROA.3532. The plaintiffs will not be "left without recourse"[13] when the preliminary injunction provides all the "recourse" the plaintiffs are seeking, and then some.

Nor will a stay prejudice the plaintiffs' ability to obtain testimony. The plaintiffs worry that defendants will forget details if trial is delayed,[14] but the plaintiffs have already deposed every named defendant and can use their deposition testimony to refresh their recollection. *See* Mitchell Decl. ¶ 10.

---

13. Response, ECF No. 78-1, at 20.
14. *See* Response, ECF No. 78-1, at 20.

## IV. A Stay Of The District-Court Proceedings Is In The Public Interest

The plaintiffs agree that judicial economy is in the public interest. *See* Response, ECF No. 78-1, at 21. But they do not explain how it would further judicial economy to conduct expert discovery, litigate *Daubert* motions, submit summary-judgment briefs, and prepare for and conduct a trial while this Court considers the appeal. The plaintiffs do not deny that these efforts will be wasted (or largely wasted) if this Court rejects some or all of the district court's analysis. And even the plaintiffs now appear to be losing confidence in their formerly intrepid claims that the First Amendment categorically forbids "content discrimination" or "viewpoint discrimination" in public-library weeding decisions. *See* Response, ECF No. 78-1, at 14; *supra* at 7–8.

The plaintiffs' attempt to dredge up past fact-discovery disputes are irrelevant to whether the public interest supports a stay of district-court proceedings going forward. Fact discovery is nearly over. *See* ECF No. 65, Ex. 4 (order extending fact-discovery deadline to May 19, 2023); Mitchell Decl. ¶ 7. The defendants are requesting a stay of proceedings to avoid expert discovery, *Daubert* motions, summary-judgment briefing, and trial preparation while this Court considers the appeal. The plaintiffs' claim that the ongoing appeal "has no effect on the underlying trial proceedings"[15] is false. If this Court rejects the district court's analysis, then further trial proceedings will be conducted under a different understanding of the law or avoided altogether. Finally, the plaintiffs correctly observe that *Earl v. Boeing*

---

15. Response, ECF No. 78-1, at 22.

10

*Co.*, 21 F.4th 895 (5th Cir. 2021), involved a Rule 23(f) appeal, but its analysis is no less relevant to an appeal from a preliminary-injunction order.

## Conclusion

The motion to stay the district-court proceedings should be granted.

Respectfully submitted.

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: May 14, 2023                              *Counsel for Defendants-Appellants*

## Certificate Of Service

I certify that on May 14, 2023, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Fifth Circuit and served through CM/ECF upon:

Ellen V. Leonida
Matthew Borden
J. Noah Hagey
Max Bernstein
Ellis E. Herington
Marissa Benavides
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com
benavides@braunhagey.com

Ryan A. Botkin
Katherine P. Chiarello
María Amelia Calaf
Kayna Stavast Levy
Botkin Chiarello Calaf
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
katherine@bccaustin.com
ryan@bccaustin.com
mac@bccaustin.com
kayna@bccaustin.com

*Counsel for Plaintiffs-Appellees*

    /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Defendants-Appellants*

### Certificate of Compliance

with type-volume limitation, typeface requirements,
and type-style requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 2,596 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

Dated: May 14, 2023

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Defendants-Appellants*

## Certificate of Electronic Compliance

Counsel also certifies that on May 14, 2023, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through http://www.pacer.gov.

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Defendants-Appellants*
