No. 23-50224

# In the United States Court of Appeals for the Fifth Circuit

LEILA GREEN LITTLE; JEANNE PURYEAR; KATHY KENNEDY; REBECCA JONES; RICHARD DAY; CYNTHIA WARING; DIANE MOSTER,

*Plaintiffs-Appellees,*

v.

LLANO COUNTY; RON CUNNINGHAM, *in his official capacity as Llano County Judge*; JERRY DON MOSS, *in his official capacity as Llano County Commissioner*; PETER JONES, *in his official capacity as Llano County Commissioner*; MIKE SANDOVAL, *in his official capacity as Llano County Commissioner*; LINDA RASCHKE, *in her official capacity as Llano County Commissioner*; AMBER MILUM, *in her official capacity as Llano County Library System Director*; BONNIE WALLACE, *in her official capacity as Llano County Library Board Member*; ROCHELLE WELLS, *in her official capacity as Llano County Library Board Member*; RHODA SCHNEIDER, *in her official capacity as Llano County Library Board Member*; GAY BASKIN, *in her official capacity as Llano County Library Board Member*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas
No. 1:22-cv-424-RP

**BRIEF OF STATES OF FLORIDA, TEXAS, ALASKA, ARKANSAS, IDAHO, INDIANA, IOWA, KANSAS, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, SOUTH CAROLINA, UTAH, AND WEST VIRGINIA AS AMICI CURIAE IN SUPPORT OF APPELLANTS' PETITION FOR REHEARING EN BANC**

KEN PAXTON
  *Attorney General of Texas*
AARON L. NIELSON
  *Solicitor General*
LANORA C. PETTIT
  *Principal Deputy Solicitor General*

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, TX 78711-2548
(512) 936-1700
*aaron.nielson@oag.texas.gov*

June 27, 2024

ASHLEY MOODY
  *Attorney General of Florida*
HENRY C. WHITAKER
  *Solicitor General*
DANIEL W. BELL
  *Chief Deputy Solicitor General*
BRIDGET K. O'HICKEY
  *Assistant Solicitor General*

Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*henry.whitaker@myfloridalegal.com*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION AND INTEREST OF AMICI CURIAE ...................... 1

ARGUMENT ........................................................................................ 2

I.  The panel majority's misapplication of the First Amendment to library-book-removal decisions poses questions of exceptional importance. ............................................................. 2

    A.  The selection and removal of public-library materials is government speech. .............................................................. 3

    B.  The panel improperly extended *Stanley's* right to receive information to the public-library context. ............................ 6

    C.  The Court should grant rehearing en banc to restore consistency in this Court's precedent and align it with Supreme Court precedent. ..................................................... 8

II. The standard the majority adopted is likely to confuse librarians and lower courts. .......................................................... 10

CONCLUSION ................................................................................... 11

CERTIFICATE OF COMPLIANCE .................................................... 14

CERTIFICATE OF SERVICE ............................................................. 15

# TABLE OF AUTHORITIES

Cases

*Ark. Educ. Television Comm'n v. Forbes*,
   523 U.S. 666 (1998) ................................................................................ 4
*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
   457 U.S. 853 (1982) ............................................................................ 3, 9
*Campbell v. St. Tammany Par. Sch. Bd.*,
   64 F.3d 184 (5th Cir. 1995) ............................................................ 3, 8, 9
*Chiras v. Miller*,
   432 F.3d 606 (5th Cir. 2005) ......................................................... 8, 9, 10
*Doe ex rel. Doe v. Governor of N.J.*,
   783 F.3d 150 (3d Cir. 2015) .................................................................. 7
*Johanns v. Livestock Marketing Association*,
   544 U.S. 550 (2005) ................................................................................ 9
*Little v. Llano Cnty.*,
   No. 23-50224, 2024 WL 2860213 (5th Cir. June 6, 2024) ... 1, 3, 7, 8, 10
*Nat'l Endowment for the Arts v. Finley*,
   524 U.S. 569 (1998) ................................................................................ 4
*Parnell v. Sch. Bd. of Lake Cnty.*,
   No. 4:23-cv-414, 2024 WL 2703762 (N.D. Fla. Apr. 25, 2024) .............. 2
*Pelts & Skins, LLC v. Landreneau*,
   448 F.3d 743 (5th Cir. 2006) .................................................................. 6
*People for the Ethical Treatment of Animals, Inc. v. Gittens*,
   414 F.3d 23 (D.C. Cir. 2005) .................................................................. 4
*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009) ........................................................................ 4, 5, 7
*Rosenberger v. Rector & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) ................................................................................ 4
*Shurtleff v. City of Bos.*,
   596 U.S. 243 (2022) ............................................................................ 5, 6
*Stanley v. Georgia*,
   394 U.S. 557 (1969) ........................................................................ 3, 6, 7
*United States v. Am. Libr. Ass'n, Inc. (ALA)*,
   539 U.S. 194 (2003) ........................................................................ 5, 6, 9
*United States v. 12 200-Foot Reels of Super 8mm. Film*,
   413 U.S. 123 (1973) ................................................................................ 8

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
  576 U.S. 200 (2015) .............................................................................. 7

Statutes

Section 323.005 of the Texas Local Government Code ............................ 5

**INTRODUCTION AND INTEREST OF AMICI CURIAE**

The question presented to the panel in this case was whether a county library abridged its patrons' First Amendment rights by removing 17 books from its shelves, including *Larry the Farting Leprechaun* and *Gary the Goose and His Gas on the Loose*. The panel majority applied a four-part framework for answering this question, concluding that the First Amendment bars government officials from removing books from public libraries to deny access to ideas they disagree with but permits removing books that are inaccurate, "pervasively vulgar," or "educationally unsuitable." *Little v. Llano Cnty.*, No. 23-50224, 2024 WL 2860213, at *6 (5th Cir. June 6, 2024) (cleaned up); *see also id*. at *26 (Duncan, J., dissenting). But then the majority itself could not agree on how its novel test applies to more than half of the books at issue in this case. Now, lower courts are left with more questions than answers.

The panel majority's fundamental error lies in its determination that the First Amendment has anything to say about a government's decisions over what books to carry in its libraries. A government's selection of books in a library constitutes its own speech that the First Amendment does not restrain. Amici the States of Florida, Texas, Alaska, Arkansas,

1

Idaho, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, South Carolina, Utah, and West Virginia have an interest in preventing federal courts from improperly inserting themselves into States' and their subdivisions' library-curation decisions. Similar cases are before the Eighth Circuit and the Northern District of Florida. *See, e.g.*, *GLBT Youth in Iowa Sch. Task Force v. Reynolds*, No. 24-1075 (8th Cir. 2024); *Parnell v. Sch. Bd. of Lake Cnty.*, No. 4:23-cv-414, 2024 WL 2703762, at *1 (N.D. Fla. Apr. 25, 2024). En banc review is warranted to prevent the federal courts from meddling in state and local governments' decisions about which speech to promote in their libraries.

## ARGUMENT

The Court should rehear this case en banc because it raises issues of exceptional importance concerning the First Amendment's application to library-curation decisions. The standard the majority adopted is both erroneous and impossible to apply in a principled fashion.

I. **The panel majority's misapplication of the First Amendment to library-book-removal decisions poses questions of exceptional importance.**

The majority announced that a government's discretion to select what books to purchase and maintain in its library "must be balanced

against patrons' First Amendment rights," *Little*, 2024 WL 2860213, at *5 (quoting *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 865 (1982) (plurality opinion)), which include "the right to receive information and ideas," *id.* (quoting *Stanley v. Georgia*, 394 U.S. 557, 564 (1969)). A librarian violates a patron's right to receive information, the majority says, when he removes a book "for the sole—or a substantial—reason that [he] does not wish patrons to be able to access the book's viewpoint or message." *Id.* (citing *Campbell v. St. Tammany Par. Sch. Bd.*, 64 F.3d 184, 191 (5th Cir. 1995)). That reasoning overlooks that the curation of public-library books is government speech. In concluding otherwise, the panel erroneously elevated the prior Fifth Circuit panel opinion in *Campbell* over subsequent controlling Supreme Court precedent establishing that the Free Speech Clause of the First Amendment does not restrain such decisions.

A. **The selection and removal of public-library materials is government speech.**

Though the panel acknowledged that "[t]he Free Speech Clause . . . does not regulate government speech," it nonetheless concluded that "collection decisions are not such speech." *Little*, 2024 WL 2860213, at *7. That conclusion is wrong and conflicts with D.C. Circuit precedent. "With

3

respect to the public library," the D.C. Circuit has explained, "the government speaks through its selection of which books to put on the shelves and which books to exclude." *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005).

The Supreme Court has repeatedly held that the government's authority to "regulate the content of . . . its own message," *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995), includes the discretionary selection and compilation of materials for presentation to citizens—the selection of library materials is no different. *See Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (1998) (government broadcaster has discretion to select and present programming); *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 586 (1998) (government has discretion to make content-based judgments when selecting art for funding); *Pleasant Grove City v. Summum*, 555 U.S. 460, 470–73 (2009).

For example, in *Summum*, the Court held that the selection of monuments for a public park was government speech, even when the monuments were funded or donated by private parties. 555 U.S. at 470–73. "Government decisionmakers select[ed] the monuments that portray[ed] what they view[ed] as appropriate for the place in question, taking into

4

account such content-based factors as esthetics, history, and local culture." *Id.* at 472. Accordingly, the "decision to accept certain privately donated monuments while rejecting respondent's" was "government speech," and the government was not required to "maintain viewpoint neutrality" in making that decision. *Id.* at 479, 481. Because these same "principles . . . also apply to a public library's exercise of judgment in selecting the material it provides to its patrons," *United States v. Am. Libr. Ass'n, Inc. (ALA)*, 539 U.S. 194, 205 (2003) (plurality opinion), such decisions are also government speech funded through government dollars.

In asking whether expression is government speech, the Supreme Court has also consulted three factors, including "the history of the expression at issue; the public's likely perception as to who . . . is speaking; and the extent to which the government has actively shaped or controlled the expression." *Shurtleff v. City of Bos.*, 596 U.S. 243, 252 (2022). All three dictate that the government is speaking when it selects public-library books.

First, the government "actively control[s]," *id.* at 256, the selection of library books. Section 323.005 of the Texas Local Government Code, for instance, provides for a "county librarian," "if a county library is

established," and tasks that individual with "determin[ing] which books and library equipment will be purchased." *See also Pelts & Skins, LLC v. Landreneau*, 448 F.3d 743, 743 (5th Cir. 2006) ("Speech constitutes government speech when it is 'effectively controlled' by the government.").

Second, "the public would tend to view the [collection of books selected for a county library] as the government's" speech. *Shurtleff*, 596 U.S. at 255. When it selects library materials to make available in a public library, the government conveys that those materials are of the "requisite and appropriate quality" and will "be of the greatest direct benefit or interest to the community." *ALA*, 539 U.S. at 204. The public understands perfectly well that publicly employed librarians, not patrons, select library materials. *See id.*

Third and finally, "the history of the expression at issue," *Shurtleff*, 596 U.S. at 252, points in the same direction. There is a firmly rooted history of government control over the selection of public-library materials. *ALA*, 539 U.S. at 203–04.

### B. The panel improperly extended *Stanley's* right to receive information to the public-library context.

The panel held that the First Amendment "right to receive information and ideas" recognized under *Stanley*, 394 U.S. at 564, "applies to

6

libraries and book removal." *Little*, 2024 WL 2860213, at *3. But that is equivalent to saying that motorists have a constitutional right to see vanity license plates of their choosing, and that tourists have a right to view public monuments that align with their preferred message—even if the Government may constitutionally decline to offer such a license plate, *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 210 (2015), or erect such a monument, *Summum*, 555 U.S. at 470–73. There is no basis for such a rule in either law or logic. *Doe ex rel. Doe v. Governor of N.J.*, 783 F.3d 150, 155 (3d Cir. 2015) ("[A] listener's right to receive information is reciprocal to the speaker's right to speak."). Because public-library patrons have no right to speak through book-selection or -removal decisions, they have no reciprocal right to receive information either.

*Stanley* cannot bear the weight the panel placed on it. There, the Court upheld the petitioner's "right to read or observe what he please[d] . . . in the privacy of his own home." 394 U.S. at 565. But subsequent Supreme Court precedent makes clear that this "explicitly narrow and precisely delineated privacy right," which "reflects no more than . . . the law's 'solicitude to protect the privacies of the life within (the home),'" has no

7

application outside the home, in public—much less in a public library. *United States v. 12 200-Foot Reels of Super 8mm. Film*, 413 U.S. 123, 127 (1973).

**C. The Court should grant rehearing en banc to restore consistency in this Court's precedent and align it with Supreme Court precedent.**

The panel majority concluded that library-collection decisions are not government speech because "[n]owhere in *Campbell*, which is binding . . . , did [the court] suggest that a public official's decision to remove a book from a school library was government speech." *Little*, 2024 WL 2860213, at *7 (citing *Campbell*, 64 F.3d at 190). But *Campbell* is wrong under current doctrine because the selection of public-school-library materials is also government speech, and the majority's opinion and *Campbell* are in tension with this Court's decision in *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005).

In *Campbell*, the Court held that the First Amendment prohibits school officials from "remov[ing] books from school library shelves simply because they dislike the ideas contained in those books." *Campbell*, 64 F.3d at 188 (quotation omitted). In doing so, it took "guidance" from Justices Brennan, Marshall, and Stevens's right-to-receive-information

8

theory that even Justice Blackmun refused to adopt. *Id.* at 189; *Pico*, 457 U.S. at 878–79 (Blackmun, J., concurring in part and concurring in the judgment). But *Campbell* was decided in 1995 before the Supreme Court's guidance in *ALA*, 539 U.S. at 205, explaining that public library staff enjoy broad discretion in making collection decisions, and about ten years before the Court formally recognized the government-speech doctrine in *Johanns v. Livestock Marketing Association*, 544 U.S. 550 (2005). For the reasons explained above, it is clear now that the selection of public-library materials is government speech.

*Campbell* and the majority's opinion are in tension with this Court's decision in *Chiras*. In *Chiras*, the court recognized that under *ALA*, "public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them." 432 F.3d at 614 (quoting *ALA*, 539 U.S. at 205); *see also ALA*, 539 U.S. at 204; *id.* at 217 (Breyer, J., concurring in the judgment) (discussing "the discretion necessary to create, maintain, or select a library's 'collection'"). Though *Chiras* concerned "the selection of curricular materials," which the court determined to be government speech, 432 F.3d at 618, the broad discretion afforded libraries under *ALA* and recognized by this Court in *Chiras*

9

applies with at least the same force in the library, rather than the textbook, context. Because *Campbell* was decided without the benefit of *ALA* or the Supreme Court's now well-established government-speech jurisprudence, this Court should overrule *Campbell*, consistent with this Court's reasoning in *Chiras*.

## II. The standard the majority adopted is likely to confuse librarians and lower courts.

Tellingly, even the majority was unable to agree on the proper application of the standard it adopted. The majority concluded that (1) "[l]ibrarians may consider books' contents in making [collection] decisions"; (2) library patrons have a First Amendment right to receive information, (3) which is violated when a government official removes a book to deny access to ideas he disagrees with; but (4) an official may remove a book if it is "pervasively vulgar" or educationally unsuitable. *Little*, 2024 WL 2860213, at \*5, \*8. Of the 17 books at issue, however, the two judges in the majority could only agree on how the rules applied to eight books. *Id.* at \*11 (Southwick, J, concurring in part and concurring in the judgment in part). They disagreed about whether it was permissible to remove *In the Night Kitchen* and *It's Perfectly Normal* in response to objections that they contained sexually explicit material that was not

appropriate for children, and whether the "butt and fart books" even "express an 'idea' or 'viewpoint.'" *Id.* at *11–12 (Southwick, J, concurring in part and concurring in the judgment in part). If the majority cannot apply its own rules to the set of facts before it, lower courts surely will fare no better. This Court should grant rehearing en banc to spare them the confusion that is sure to result from these rules.

## CONCLUSION

The Court should grant Appellants' petition for rehearing en banc.

Dated: June 27, 2024

Respectfully submitted,

| | |
|---|---|
| KEN PAXTON<br>  *Attorney General of Texas* | ASHLEY MOODY<br>  *Attorney General of Florida* |
| */s/ Aaron L. Nielson*<br>AARON L. NIELSON<br>  *Solicitor General*<br>LANORA C. PETTIT<br>  *Principal Deputy Solicitor General* | */s/ Henry C. Whitaker*<br>HENRY C. WHITAKER<br>  *Solicitor General*<br>DANIEL W. BELL<br>  *Chief Deputy Solicitor General*<br>BRIDGET K. O'HICKEY<br>  *Assistant Solicitor General* |
| Texas Attorney General's Office<br>P.O. Box 12548 (MC 059)<br>Austin, TX 78711-2548<br>(512) 936-1700<br>*aaron.nielson@oag.texas.gov* | Florida Attorney General's Office<br>The Capitol, PL-01<br>Tallahassee, Florida 32399<br>(850) 414-3300<br>*henry.whitaker@myfloridalegal.com* |
| *Counsel for Amicus Curiae State of Texas* | *Counsel for Amicus Curiae State of Florida* |

*Amici Curiae*

Treg Taylor
Attorney General of Alaska

Tim Griffin
Attorney General of Arkansas

Raúl R. Labrador
Attorney General of Idaho

Theodore E. Rokita
Attorney General of Indiana

Brenna Bird
Attorney General of Iowa

Kris W. Kobach
Attorney General of Kansas

Liz Murrill
Attorney General of Louisiana

Lynn Fitch
Attorney General of Mississippi

Andrew Bailey
Attorney General of Missouri

Austin Knudsen
Attorney General of Montana

Michael T. Hilgers
Attorney General of Nebraska

Drew Wrigley
Attorney General of North Dakota

Alan Wilson
Attorney General of South Carolina

Sean Reyes
Attorney General of Utah

Patrick Morrisey
Attorney General of West Virginia

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limits of Federal Rule of Appellate Procedure 29(b)(4) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,143 words.

2. This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Henry C. Whitaker*
Solicitor General

## CERTIFICATE OF SERVICE

I certify that on June 27, 2024, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Henry C. Whitaker*
Solicitor General
