# In the United States Court of Appeals for the Fifth Circuit

LEILA GREEN LITTLE, JEANNE PURYEAR, KATHY KENNEDY, REBECCA JONES, RICHARD DAY, CYNTHIA WARING, AND DIANE MOSTER,

*Plaintiffs-Appellees,*

v.

LLANO COUNTY, RON CUNNINGHAM, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY JUDGE, JERRY DON MOSS, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, PETER JONES, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, MIKE SANDOVAL, IN HIS OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, LINDA RASCHKE, IN HER OFFICIAL CAPACITY AS LLANO COUNTY COMMISSIONER, AMBER MILUM, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY SYSTEM DIRECTOR, BONNIE WALLACE, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, ROCHELLE WELLS, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, RHONDA SCHNEIDER, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER, AND GAY BASKIN, IN HER OFFICIAL CAPACITY AS LLANO COUNTY LIBRARY BOARD MEMBER,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Texas, Austin Division
1:22-cv-00424-RP

## PLAINTIFFS-APPELLEES' RESPONSE TO PETITION FOR REHEARING EN BANC

(Counsel Listed Inside Cover)

Katherine P. Chiarello
(TX Bar No. 24006994)
Ryan A. Botkin
(TX Bar No. 00793366)
María Amelia Calaf
(TX Bar No. 24081915)
Botkin Chiarello Calaf PLLC
1209 Nueces Street
Austin, Texas 78701
Tel: 512-615-2341
Fax: 737-289-4695
ryan@bccaustin.com
katherine@bccaustin.com
mac@bccaustin.com


Matthew Borden
(CA Bar No. 214323)
Marissa R. Benavides
(NY Bar No. 5796891)
Kory James DeClark
(CA Bar No. 310571)
BraunHagey & Borden LLP
747 Front Street, 4th Floor
Tel: 415-599-0210
Fax: 415-276-1808
borden@braunhagey.com
benavides@braunhagey.com
declark@braunhagey.com


*Attorneys for Plaintiffs-Appellees*

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dwain K. Rogers
Texas Bar No. 00788311
County Attorney

Matthew L. Rienstra
Texas Bar No. 16908020
First Assistant County Attorney
Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

*Attorneys for Defendants-Appellants*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees**
Leila Green Little
Jeanne Puryear
Kathy Kennedy
Rebecca Jones
Richard Day
Cynthia Waring
Diane Moster

**Plaintiffs-Appellants' Counsel**
Katherine P. Chiarello
Ryan A. Botkin
María Amelia Calaf
Botkin Chiarello Calaf PLLC

Matthew Borden
Marissa R. Benavides
Kory James DeClark
BraunHagey & Borden LLP

**Defendants-Appellants**
Llano County
Ron Cunningham
Jerry Don Moss
Peter Jones
Mike Sandoval
Linda Raschke
Amber Milum
Bonnie Wallace
Rochelle Wells

Rhonda Schneider
Gay Baskin

**Defendants-Appellants' Counsel**
Jonathan F. Mitchell
Mitchell Law PLLC

Dwain K. Rogers
Matthew L. Rienstra
Llano County Attorney's Office

Llano County officials circulated a list of books that they labeled as "pornographic filth" and began removing them from the public libraries. The District Court found that Defendants were removing books because they disliked the ideas expressed therein. Applying this Court's decision in *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995), the panel affirmed the District Court's finding that Defendants' conduct likely violated the First Amendment as to eight books, noting that this was a "relatively straightforward application" of *Campbell*. PO18.[1]

Defendants offer three bases for seeking rehearing en banc, none of which satisfies Rule 35.

1.      Defendants assert that the panel opinion "split three different ways" over how librarians may "weed" library books, and they discuss the MUSTIE standard that some libraries use to guide their decisions about when to remove books that are falling apart, become superseded, are misleading, or that nobody wants to read. Pet.ii-iii. But this case does not challenge or otherwise implicate that standard. The only relevance of weeding and weeding standards to this case is that

---

[1] All citations to "PO##" are to the panel opinion at ECF No. 164. All citations to "Pet.##" are to Defendants-Appellants' Petition for Rehearing En Banc at ECF No. 174-1.

the District Court found them to be a pretext that Defendants used for censorship. ROA.3524-25.

Nor did the panel "split three different ways" on the legal principle in play. Judges Wiener and Southwick agreed that the *Campbell* standard—which has been in place for thirty years—applies. While they disagreed about *Campbell*'s application to eight books, they issued a single, unified opinion that adopted Judge Southwick's narrower view. No court reading the opinion could be confused about the decades-old rule the panel applied to the facts here, and no librarian could be confused about what the rule means.[2] Moreover, Defendants fail to explain why they think *Campbell* is wrong, or what standard should apply where, as here, a district court finds that government officials have removed books, not as part of the

---

[2] On June 27, 2024, several states, mostly from outside the Fifth Circuit, submitted an amicus brief arguing that the full Court should take this case and declare that library removal decisions are government speech—a position Defendants did not raise on appeal and do not defend, or even mention, in their petition for rehearing en banc. The states' argument for such a radical departure from long established Fifth Circuit law is unsupported. Indeed, it contradicts Defendants' own library policy, which states that "[t]he Library does not promulgate particular beliefs or views, nor is the selection of any given media equivalent to endorsement of the viewpoint of the author expressed therein." ROA.1496. It is also untimely. Early in 2023, Texas—which authored the states' amicus brief—sought to intervene in this case on a government interest theory. ROA.602-607. It later withdrew its request. ROA.739-740. Now, after this issue has been decided by both the District Court and a panel of this Court, Texas seeks to reassert this argument, which it elected not to present to the District Court and the panel.

standard weeding process, but simply because they do not want library patrons to have access to ideas with which they personally disagree.

2. After Plaintiffs moved for a preliminary injunction, Defendants' lawyer "donated" copies of the books that Defendants belatedly argued were in poor condition or unwanted, and Defendants kept the new copies off the shelves in an undisclosed location without listing them in the catalog. Defendants' argument—that whether this conduct mooted Plaintiffs' claim constitutes an issue of exceptional importance, Pet.3-4—fails, among other reasons, because there is no evidence that such a tactic has ever been deployed, or would be used, in any other case.

Although framed in terms of "injury," Defendants' argument is really one of voluntary cessation and whether the District Court abused its discretion in requiring Defendants to re-shelve the books—neither of which meets the standard of Rule 35. It is rudimentary that, absent a showing of an absolute and permanent cure, a party cannot moot the need for injunctive relief through voluntary cessation, and the U.S. Supreme Court has repeatedly held that any First Amendment injury, no matter how small and how briefly sustained, is irreparable for purposes of a preliminary injunction. Nothing in the panel's decision affronts that settled law.

3.     Defendants argue that the panel misstated certain nondispositive facts. Pet.14-15. Defendants do not explain how such alleged errors constitute a matter of exceptional importance or are capable of repetition. Instead, they claim that Judges Wiener and Southwick cannot be trusted as jurists, and the full Court must step in for them. Defendants are incorrect, and nothing in Rule 35 would require rehearing en banc on this ground.

For each of these reasons, Defendants' petition should be denied.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

RULE 35(B) STATEMENT ...................................................................... iii

TABLE OF CONTENTS ......................................................................... vii

TABLE OF AUTHORITIES ..................................................................... viii

INTRODUCTION ................................................................................ 1

STATEMENT OF COURSE OF PROCEEDINGS ................................................. 1

STATEMENT OF FACTS ....................................................................... 4

ARGUMENT .................................................................................. 7

I.    THIS CASE IS A STRAIGHTFORWARD APPLICATION OF THIS COURT'S 30-YEAR-OLD PRECEDENT .......................................... 7

II.   DEFENDANTS' "INJURY" ARGUMENTS ARE LIMITED TO THE FACTS OF THIS CASE AND INVOLVE BASIC PRINCIPLES OF VOLUNTARY CESSATION AND A COURT'S DISCRETION TO ENJOIN UNCONSTITUTIONAL CONDUCT ....................................................... 11

III.  ALLEGED FACTUAL ERRORS IN A PANEL DECISION ARE NOT GROUNDS FOR REHEARING EN BANC ........................... 15

CONCLUSION ................................................................................ 17

CERTIFICATE OF COMPLIANCE............................................................. 19

CERTIFICATE OF SERVICE ................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013)..................................................................13

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
  457 U.S. 853 (1982)...............................................................3,8

*Campbell v. St. Tammany Parish School Board*,
  64 F.3d 184 (5th Cir. 1995) ............................................ *passim*

*Elrod v. Burns*,
  427 U.S. 347 (1976)..................................................................13

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
  567 U.S. 298 (2012)..................................................................14

*Spell v. Edwards*,
  962 F.3d 175 (5th Cir. 2020) ...................................................13

*Stanley v. Georgia*,
  394 U.S. 557 (1969)....................................................................3

*Uzuegbunam v. Preczewski*,
  141 S. Ct. 792 (2021)................................................................12

**Rules**

Fed. R. App. P. 27(d)(2)(A).............................................................19

Fed. R. App. P. 32(a)(5)...................................................................19

Fed. R. App. P. 32(a)(6)...................................................................19

Fed. R. App. P. 32(f).........................................................................19

Fed. R. App. P. 35(a) .......................................................................11

Fed. R. App. P. 40(a)(3)...................................................................16

# INTRODUCTION

Defendants claim that the panel's ruling is an error of such significance that the full Court must now hear the case. All three of its arguments fail. First, the panel applied longstanding precedent that government officials cannot remove public library books if their aim is to deny the public access to ideas they personally do not like. Second, the panel properly found that Plaintiffs established an irreparable injury where, as Defendants concede, they had suffered a First Amendment injury. Third, Defendants' allegations of factual errors in the panel opinion are false, and even if true, they would not merit rehearing en banc.

## STATEMENT OF COURSE OF PROCEEDINGS

**District Court**. On March 30, 2023, the District Court issued a 26-page order denying Defendants' motion to dismiss and partially granting Plaintiffs' motion for a preliminary injunction. ROA.3507-32. Applying *Campbell*, it held that Plaintiffs' "First Amendment right to receive information" prohibited Defendants from removing books from the library shelves "simply because they dislike the ideas contained in [them]." ROA.3519 (quoting *Campbell*, 64 F.3d at 189) (internal quotations omitted). The "key inquiry," the court held, was "whether the governments' 'substantial motivation' was to deny library users access to ideas with which [it] disagreed." ROA.3520 (quoting *Campbell*, 64 F.3d at 190). The court then found—based on extensive briefing, 65 declarations, 120 exhibits, and

two days of live testimony—that Defendants harbored precisely that motivation when it removed the 17 books at issue in this litigation. ROA.3526.

The District Court also held that Defendants could not moot the lawsuit by having their lawyer donate copies of the banned books to the library that would be kept off the shelves and out of the catalog so that nobody would know that they are there (what Defendants call an "in-house checkout system"). This gambit was "calculated to promote his clients' litigation position" and was "precisely the type of posturing the voluntary cessation exception [to mootness] is meant to prevent." ROA.3518. ("Making books 'available' in a back room, only upon specific request by a patron who has no way of knowing that the books even exist, is hardly a 'formally announced change[] to official governmental policy' deserving less scrutiny.'")

The court ordered Defendants to return the 17 books to the library shelves and update its catalogs to reflect their availability. ROA.3532. It also enjoined Defendants from removing additional books during the litigation. *Id.*

**Court of Appeals**. On June 6, 2024, a panel of this Court affirmed the District Court's application of *Campbell* and upheld the injunction with respect to eight of the 17 books at issue. PO27.

Writing for the majority, Judge Wiener explained that the question on appeal was "answered … in 1995 in *Campbell*, a directly applicable decision that

circumscribes the boundaries of [the Court's] analysis." *Id*. at 8. Under *Campbell*, the majority held, "the 'key inquiry in a book removal case' is the remover's 'substantial motivation in arriving at the removal decision.'" *Id*. at 10 (quoting *Campbell*, 64 F.3d at 190). "[W]hen an official who removes a book is 'substantially motivated' by the desire to deny 'access to ideas with which [she] disagree[s]," she violates library patrons' First Amendment "right to receive information and ideas." PO11-12 (quoting *Stanley v. Georgia*, 394 U.S. 557, 564 (1969), and *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 871 (1982); citing *Campbell*, 64 F.3d at 191).

Writing separately, Judge Southwick praised Judge Wiener's "thorough and nuanced" opinion and expressly "concur[red] in [its] explication of the law." PO28. *Campbell* is the "standard … to apply here," Judge Southwick held, and under *Campbell* government officials may not remove books from library shelves "simply because they dislike the ideas contained in [them.]" PO28 (quoting *Campbell*, 64 F.3d at 188).

The only issue on which Judge Wiener and Judge Southwick disagreed was *Campbell*'s application to nine books included in the District Court's injunction. Judge Southwick found that the "butt and fart" books could be removed because they do not express a viewpoint "in the sense required by the caselaw," and that, "at this stage of the case," the factual record did not sufficiently demonstrate that

two other books—*In the Night Kitchen* and *It's Perfectly Normal*—were removed to prevent library patrons from accessing their viewpoints. PO28. Judge Wiener believed that these books expressed viewpoints and were removed for reasons that fell under *Campbell*, but he explained that, because Judges Southwick and Duncan did not agree on that limited question, the panel's holding "d[id] not require the return of those books." *Id*. at 21 n.12.

The panel therefore affirmed the District Court's application of *Campbell* but narrowed the scope of the injunction to include only eight of the 17 books from the District Court's preliminary injunction. *Id*. at 27. It ordered Defendants to return those eight books to the shelves and to update the library catalogs accordingly. It also ordered Defendants to notify Plaintiffs before removing or concealing any other books, and to provide the name of the person responsible for the removal and the reason. *Id*.

Judge Duncan dissented on the grounds that a government's decision to removal library books is government speech not subject to First Amendment limitations, *id*. at 31-76, an argument Defendants did not make on appeal, *see* Plaintiffs-Appellees' Brief (ECF No. 99) at 38 n.18.

## STATEMENT OF FACTS

**Defendants' Targeted Book Removal.** Plaintiffs are Llano County library patrons. Defendants are Llano County Judge Ron Cunningham, County

Commissioners Jerry Don Moss *et al.*, librarian Amber Milum and members of the re-constituted library board who began removing certain books from the public library system in the summer of 2021. Seven of the books they removed were on a list of 57 titles curated by Defendant Wallace for removal purposes that Defendants internally called "pornographic filth." ROA.350-51. These books included *They Called Themselves the KKK* and other works that had nothing to with pornography. ROA.357.

Within four months, Defendants had purged 17 books from the library (the "Banned Books"). These included National Book Award nominee *Caste: The Origins of Our Discontents*, by Isabel Wilkerson, and *Being Jazz: My Life as a (Transgender) Teen*, by Jazz Jennings. ROA.3510 (citing Defendants' contemporaneous emails and hearing testimony). None of the books met the library's standard for removing a book from a library collection.[3] ROA.1660-65, 3891:17-21, 3912:14-19, 3913:20-25, 4204:2-5. Some had been purchased by Defendant Milum herself shortly before Defendants' complaints began. ROA.3929-30, 3934.

In the evidentiary hearing below, Defendants offered no contemporaneous evidence to show that they had removed the Banned Books for reasons of library

---

[3] The Llano library officially follows the CREW system for managing its collection, in which librarians remove books only when the books satisfy at least two MUSTIE criteria. ROA.1543-1610, 3883:12-15, 3888:6-15.

maintenance. The District Court found that Defendants' argument that they had "weeded" the books was not credible. *See* ROA.3526 ("Plaintiffs have offered sufficient evidence to suggest this post-hoc justification [of weeding] is pretextual."). It found, instead, that "the reason that [the books] were selected to be weeded and reviewed to be weeded, as opposed to other books, w[as] because Ms. Wallace had them on her list."[4] ROA.3527 (quoting Milum testimony at ROA.3952-53).

In December 2021, the Llano County Commissioners Court, led by Defendants, voted to approve three days of library closures to check the library for "inappropriate" books. ROA.3510-11. Defendant Milum testified to the District Court that during these days the staff mainly focused on pulling the books Defendants personally identified as inappropriate. *Id.*

**Plaintiffs Seek Relief.** In April 2022, Plaintiffs filed this action alleging that Defendants, acting under color of state law, violated their First Amendment rights by removing the Banned Books from the Llano library simply because those books express views and contain content that do not align with Defendants' personal

---

[4] Defendants submitted a new declaration on appeal. *See* ECF No. 14-4 (Declaration of Amber Milum); 174-1 at 1. This declaration was not before the District Court when it made its factual determinations, nor was it relied on by any member of the panel.

views. ROA.65. Plaintiffs moved for a preliminary injunction to restore the

Banned Books to the Llano library while their claims are tried.

**Defendants' Post-Filing Actions**. Three months after Plaintiffs requested

injunctive relief to restore the Banned Books, Defendants' lawyer donated copies

of the Banned Books to be placed in a backroom storage area of the Llano library.

These books "were not donated by a neutral benefactor with the intent of making

them available to library patrons." ROA.3518. Rather, "Defendants' Counsel,

Jonathan Mitchell, provided these books ostensibly anonymously." *Id.* Defendants

kept the newly donated Banned Books off the library shelves and did not list them

in the library catalog. *Id*.

## ARGUMENT

## I.   THIS CASE IS A STRAIGHTFORWARD APPLICATION OF THIS COURT'S 30-YEAR-OLD PRECEDENT

Defendants ask this Court to rehear this appeal en banc because, they say,

the rule the panel adopted will "leave[] every public librarian in a state of

confusion over whether and when they can be sued for weeding a library book."

Pet.10. But this case has nothing to do with "weeding"—a process by which

librarians remove books from a library for well-defined, viewpoint-neutral reasons,

such as those provided under the MUSTIE standard. As the District Court found,

Defendants' claim that they were merely weeding these books was "post-hoc" and

"pretextual," not supported by any documentary proof, and inconsistent with

Defendants' own testimony. *See, e.g.*, ROA.3523-25, 3526-28. Moreover, librarians have been weeding books under the *Campbell* standard—which is narrowly drawn to prohibit government censorship—for three decades without incident. Each of the four arguments Defendants offer, Pet.10-13, misconstrues the panel's opinion and is meritless.

*First*, Defendants claim that Judges Wiener and Southwick's opinions "adopt different formulations of the test for determining whether a public librarian violates the First Amendment by weeding a book." Pet.10. Not so.

Judge Wiener, writing for the panel majority, did not announce a new rule in this case. He simply made a "relatively straightforward application of *Campbell*." PO18. *Campbell* held that officials "exercised their discretion [to remove a book] in violation of the Constitution" where "the decisive factor in the removal decision" was the officials' desire "to deny … access to ideas with which [they] disagreed." *Campbell*, 64 F.3d at 188 (quoting *Pico* at 457 U.S. at 872). The panel here held the same: an official violates the Constitution when her decision to remove a book "is 'substantially motivated' by the desire to deny 'access to ideas with which [she] disagree[s].'" PO12 (quoting *Pico*, 457 U.S. at 871; citing *Campbell*, 64 F.3d at 191).

Defendants try to distinguish Judge Wiener's reasoning from Judge Southwick's, but Judge Southwick agreed that *Campbell* is "the [standard] to apply

here" and expressly "concur[red] in [Judge Wiener's] explication" of it, which he called "accurate[]." *Id*. at 28. Defendants' claim that Judge Southwick adopted a different standard because he quoted a passage from *Campbell* that does not contain the term "substantially motivated," Pet.10-11, is impossible to square with his concurrence.

**Second**, Defendants claim that the panel opinion is unclear because it "simultaneously reject[s] and vindicate[s] the district court's legal standard." Pet.12. But Defendants conflate two separate arguments. The District Court found that Defendants violated the First Amendment *both* under *Campbell* (which prohibits viewpoint discrimination in removal decisions) and *alternatively* under traditional forum analysis (content discrimination). PO7. The panel agreed with the District Court that *Campbell* applies but rejected its forum analysis. *See* PO12 ("We agree with Defendants that public forum principles are 'out of place in the context of this case.'"). No reader could possibly be confused by these consistent findings.[5]

_____

[5] Defendants also claim that they do not know what it means to be "substantially motivated" by a desire to "deny access" to a book. Pet.12. They ask: "Can a librarian—who knows full well that her decision to weed a book will *always* result in a denial of access to future library patrons—ever deny that she is 'substantially motivated' by what she knows will be the inevitable result of her actions?" *Id*. The answer is: "Yes, she can." The difference between taking an action one recognizes will have a certain result and taking it *because* it will have that result is the difference between self-defense and murder, between disparate treatment and disparate impact, and between a war crime and collateral damage. These are

**Third**, Defendants claim that Judges Wiener and Southwick "could not agree on how to apply their standards to the 17 disputed books." Pet.12-13. But the panel opinion was unified. While Judge Wiener noted that he believed all 17 books fell within *Campbell*'s scope, PO21 n.12, the panel's opinion and injunction—to which Judges Wiener and Southwick both subscribed—adopted Judge Southwick's narrower application. If en banc rehearing were appropriate any time two judges on a panel *would have* applied a rule differently, the Circuit's en banc docket would have a decades-long waitlist.

**Fourth**, Defendants assert that it is unclear "which portions of the lead opinion were joined by both Judge Wiener and Judge Southwick." Pet.13. As discussed above, Judge Wiener and Judge Southwick expressly agreed that the *Campbell* standard applies. PO28. They disagreed, based on the factual record, about whether that standard should apply to nine of the 17 books at issue. *Id.* at 21 n.12, 28-29. But because they disagreed, the *panel opinion* adopted Judge Southwick's narrower application. *Id*. at 21 n.12 ("[M]y colleagues disagree, however, so our holding does not require the return of those books."); *see also id.* at 27, 28-29.

concepts everyone understands, and Defendants have provided no reason to think librarians are any different.

## II.  DEFENDANTS' "INJURY" ARGUMENTS ARE LIMITED TO THE FACTS OF THIS CASE AND INVOLVE BASIC PRINCIPLES OF VOLUNTARY CESSATION AND A COURT'S DISCRETION TO ENJOIN UNCONSTITUTIONAL CONDUCT

Defendants' second basis for seeking en banc review is their claim that they mooted Plaintiffs' injury by having their lawyer donate the Banned Books to the library, where they would not be publicly displayed or listed in the catalog. Pet.3-4. But this issue is unique to this case and is not one of exceptional importance or necessary to maintain uniformity within this Circuit. Moreover, questions of voluntary cessation, mootness, or whether an injunction is an appropriate remedy—all which Defendants attempt to recast as "injury"—are commonplace and do not merit en banc consideration. *See* Fed. R. App. P. 35(a). Defendants' arguments for en banc review fail for at least three reasons.

*First*, Defendants do not meet the requirements of Rule 35 because their real argument is that the District Court abused its discretion by issuing an injunction when they had mooted the need for one by acquiring and then hiding the Banned Books. Leaving aside that they are incorrect, this argument is not an issue of exceptional importance.

Defendants' effort to frame this argument in terms of injury (which also is not an issue of exceptional importance) separately fails. Defendants concede that the panel properly recognized that Plaintiffs suffered an injury sufficient for Article III standing. *See* Pet.3 (purchasing, then hiding the Banned Books "does not moot

the plaintiffs' First Amendment claims, as the plaintiffs continue to suffer Article III injury from the absence of the 17 disputed books from the library shelves and catalog"). At the same time, Defendants argue that Plaintiffs' First Amendment claims "cannot get off the ground" because Plaintiffs cannot prove that their First Amendment right to access information and ideas was violated. Pet.7. Defendants then fault the panel for not providing an explanation that could make sense of their inconsistent position: namely, that Plaintiffs both sustained a First Amendment injury from the Banned Books not being on the library bookshelves, but also are not so injured from the First Amendment violation that they can obtain injunctive relief to put the books back. *Id.*

The true explanation is simple. Defendants are attempting to recast their attempt to moot Plaintiffs' claims as implicating Plaintiffs' First Amendment injury, rather than argue the true issue of mootness.[6] *See*, *e.g.*, *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021) ("The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings."). In doing so, Defendants hope to sidestep the voluntary cessation doctrine, which does not allow a defendant

---

[6] As the panel recognized, if Defendants were truly concerned about Plaintiffs' standing, that argument should have been advanced in Defendants' motion to dismiss. PO23. Instead, Defendants argue standing only as a substitute for mootness on the issue of Plaintiffs' irreparable injury.

to void an injury by temporarily ceasing its violative conduct. "If [voluntary cessation] is all it took to moot a case, 'a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.'" *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

Defendants themselves cannot articulate what First Amendment injury Plaintiffs may seek to remedy if not access to information. (*See* Pet.7-9.) Across many pages, Defendants argue that Plaintiffs' First Amendment claim from Defendants removing the Banned Books is not an access to information claim, but they do not describe how the claim otherwise arises. If Defendants cannot explain their own position, it cannot be of such prudential significance as to warrant en banc consideration. Both the District Court and the panel saw through Defendants' attempt to manufacture a justiciability argument and, applying settled law, recognized that hiding the Banned Books in the library (after litigation ensued) causes an unconstitutional and therefore irreparable injury to Plaintiffs' access to information. PO24; ROA.3518.

In any event, a "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." PO24 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). So whatever alternative First

Amendment injury Defendants admit Plaintiffs have sustained, it is sufficient for injunctive relief and supports the District Court's order.

In sum, where Defendants have conceded both the viability of Plaintiffs' First Amendment claim and the existence of a constitutional injury as a result of Defendants' conduct, it is difficult to imagine how the panel could have erred by coming to the same conclusion. It is even more difficult to imagine how such conclusion could justify rehearing en banc.

*Second*, the panel's holding that Plaintiffs' injury is not mooted does not pose a question of exceptional importance or conflict with this Court's or the Supreme Court's precedents. A case is moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (quotations omitted).

As the majority opinion explained, the panel's task was to assess whether the District Court abused its discretion in concluding that Plaintiffs were suffering an irreparable First Amendment injury from Defendants hiding the Banned Books. PO23-24. Correctly applying U.S. Supreme Court precedent, the panel determined that requiring Plaintiffs to request access to Defendants' hidden book repository— Banned Books that were removed from the library catalog and whose availability could not be readily ascertained—was unconstitutional and caused irreparable injury. *Id*. at. 24.

**Third**, Defendants argue that the panel's straightforward application of precedent to their post-litigation attempt to moot Plaintiffs' claims has somehow manifested a new First Amendment claim. Pet.9. Among their parade of horribles, Defendants claim that the opinion creates a First Amendment violation of "ask[ing] a librarian for assistance in accessing a book" or storing a library book, and that it will cause public librarians to "pay millions of dollars in costs and attorneys' fees." *Id*. As both the District Court and the panel concluded, this is a red herring. PO24 n.13. Defendants created a hidden book repository specifically to try to moot Plaintiffs' claims—an issue that is unique to this litigation, not one of exceptional public importance or that will commonly recur. Were Defendants' concerns well-founded, this Court and the lower courts should have seen similar First Amendment "hidden book" suits. Yet Defendants have not identified—and Plaintiffs have been unable to find—any such phenomenon.

\* \* \*

Defendants' attempt to moot Plaintiffs' claims does not present an issue that extends beyond this case, much less one of exceptional concern. No en banc reconsideration is necessary to address this argument.

## III. ALLEGED FACTUAL ERRORS IN A PANEL DECISION ARE NOT GROUNDS FOR REHEARING EN BANC

In violation of 5th Cir. R. 35.2, Defendants incorporate their list of alleged panel "errors" from their petition for panel rehearing as a reason the full Court

must now consider their appeal.[7] Pet.14. As Defendants tell it, "there are too many misstatements and misrepresentations of the record for anyone to have confidence" in Judge Wiener and Judge Southwick, thus the full Court must take the time to correct them. *Id*. at 15. This argument cannot support rehearing en banc for two reasons. First, it is Defendants who are ignoring the extensive credibility determinations and factual findings below (and associated standard of review). Second, alleged factual errors in a panel opinion cannot warrant rehearing en banc.

Just as they did at the District Court and on appeal, Defendants remain determined to rewrite the factual record below and twist the majority opinion to fit. But Judge Wiener and Judge Southwick's so-called "errors and falsehoods," *id*. at 14, are nothing of the sort:

- While the 17 Banned Books were not all on the Wallace List, the evidence submitted to the District Court shows Wallace's complaints, joined at points by Wells' and Schneider's, were a motivating factor behind the removals and that the Wallace List spurred ongoing targeted book removals. PO4; ROA.3524-25.

- The majority opinion correctly references Milum's testimony that she pulled no other books for review and weeding at the time she pulled books from the Wallace List. PO4; ROA.3954:2-7.

- While Wallace's direct complaint of "pornographic filth" was targeted at the books on the Wallace List, she, Wells and Schneider also

---

[7] As the panel did not call for Plaintiffs to respond to Defendants' petition for panel rehearing, Plaintiffs are not permitted to respond directly. Fed. R. App. P. 40(a)(3). Plaintiffs' response therefore is limited to the few alleged errors Defendants raise in their petition for rehearing en banc.

complained about the other removed books as inappropriate and not belonging in a public library. ROA.1525-26, 3525, 4088:10-19.

- The majority opinion correctly summarizes the District Court's rejection of Milum's testimony that she conducted routine weeding as not credible, and determination that Milum indeed removed the 17 Banned Books on instructions from Defendants Moss and Cunningham. The District Court cited extensive evidence that contradicted Milum's sworn affidavits and testimony. *See, e.g.*, ROA.3526 n.7, 3525 (rejecting Milum's testimony that she merely performed routine weeding on the 17 books because "[t]he short amount of time between the complaints, commissioners' actions, and Mil[um]'s removal strongly suggests that the actions were in response to each other").

Further, even if the majority opinion contained minor discrepancies, rehearing by the full Court would not be necessary or appropriate to correct them. If such outcome were allowed, any party losing on appeal would be incentivized to call for an en banc vote of no confidence on the panel members who went against it.

## <u>CONCLUSION</u>

For the foregoing reasons, this honorable Court should vote to DENY Defendants-Appellants' petition for rehearing en banc.

Dated: July 1, 2024                    Respectfully submitted,

                                       */s/ Matthew Borden*
                                       Matthew Borden
                                       (CA Bar No. 214323)
                                       Marissa Benavides
                                       (NY Bar No. 5796891)

Kory James DeClark
(CA Bar No. 310571)
BraunHagey & Borden LLP
747 Front Street, 4th Floor
Tel.: 415-599-0209
Fax: 415-276-1808
borden@braunhagey.com
benavides@braunhagey.com
declark@braunhagey.com

Katherine P. Chiarello
(TX Bar No. 24006994)
Ryan A. Botkin
(TX Bar No. 00793366)
María Amelia Calaf
(TX Bar No. 24081915)
BOTKIN CHIARELLO CALAF PLLC
1209 Nueces Street
Austin, Texas 78701
Tel: 512-615-2341
Fax: 737-289-4695
katherine@bccaustin.com
ryan@bccaustin.com
mac@bccaustin.com

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3899 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Matthew Borden*
Matthew Borden

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of July, 2024, I electronically submitted the foregoing to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the Court's ECF system, which sent a Notice of Electronic Filing to the following attorneys of record:

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dwain K. Rogers
Texas Bar No. 00788311
County Attorney

Matthew L. Rienstra
Texas Bar No. 16908020
First Assistant County Attorney

First Assistant County Attorney
Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
drogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

*/s/ Matthew Borden*
Matthew Borden