# In the United States Court of Appeals for the Fifth Circuit

Leila Green Little; Jeanne Puryear; Kathy Kennedy; Rebecca Jones; Richard Day; Cynthia Waring; Diane Moster,

*Plaintiffs-Appellees,*

v.

Llano County; Ron Cunningham, in his official capacity as Llano County Judge; Jerry Don Moss, in his official capacity as Llano County Commissioner; Peter Jones, in his official capacity as Llano County Commissioner; Mike Sandoval, in his official capacity as Llano County Commissioner; Linda Raschke, in her official capacity as Llano County Commissioner; Amber Milum, in her official capacity as Llano County Library System Director; Bonnie Wallace, in her official capacity as Llano County Library Board Member; Rochelle Wells, in her official capacity as Llano County Library Board Member; Rhoda Schneider, in her official capacty as Llano County Library Board Member; Gay Baskin, in her official capacity as Llano County Library Board Member,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas
Case No. 1:22-cv-424-RP

## APPELLANTS' SUPPLEMENTAL BRIEF

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Defendants-Appellants*

# Certificate of Interested Persons

Counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiffs | Plaintiffs' Counsel |
|---|---|
| <ul><li>Leila Green Little</li><li>Jeanne Puryear</li><li>Kathy Kennedy</li><li>Rebecca Jones</li><li>Richard Day</li><li>Cynthia Waring</li><li>Diane Moster</li></ul> | Ellen V. Leonida<br>Matthew Borden<br>J. Noah Hagey<br>Max Bernstein<br>Ellis E. Herington<br>Marissa Benavides<br>BraunHagey & Borden LLP<br><br>Ryan A. Botkin<br>Katherine P. Chiarello<br>María Amelia Calaf<br>Kayna Stavast Levy<br>Botkin Chiarello Calaf |

| Defendants | Defendants' Counsel |
|---|---|
| <ul><li>Llano County,</li><li>Ron Cunningham</li><li>Jerry Don Moss</li><li>Peter Jones</li><li>Mike Sandoval</li><li>Linda Raschke</li><li>Amber Milum</li><li>Bonnie Wallace</li><li>Rochelle Wells</li><li>Rhonda Schneider</li><li>Gay Baskin</li></ul> | Jonathan F. Mitchell<br>Mitchell Law PLLC<br><br>Dwain K. Rogers<br>Matthew L. Rienstra<br>Llano County Attorney's Office |

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Defendants-Appellants*

i

# TABLE OF CONTENTS

Certificate of interested persons ............................................................... i

Table of contents ...................................................................................... ii

Table of authorities ................................................................................. iii

Statement of the case ............................................................................... 1

   I.  Facts and evidence ....................................................................... 1

      A.  The facts stated in the appellants' panel-stage brief ................. 1

      B.  The facts as stated in the appellees' panel-stage brief............... 3

      C.  The facts as stated in the panel opinion ................................... 3

   II.  The panel opinion's rationale ..................................................... 11

Summary of argument............................................................................. 14

Argument ............................................................................................... 16

   I.  The en banc court should overrule *Campbell*, limit *Pico* to its facts, and hold that a public library's acquisition and weeding decisions are government speech immune from First Amendment scrutiny .................... 16

   II.  A public library cannot violate the plaintiffs' First Amendment right to access and receive information when each of the 17 disputed books remained available for the plaintiffs to read and check out through Llano Library's in-house checkout system................................... 26

   III. The district court's remedy is overbroad.................................... 29

   IV. The en banc court should reaffirm that a preliminary injunction cannot issue unless the movant makes a "clear showing" on all four prongs of the preliminary-injunction inquiry ............................... 30

Conclusion ............................................................................................. 32

Certificate of service .............................................................................. 33

Certificate of compliance ........................................................................ 34

Certificate of electronic compliance........................................................ 35

Appendix.................................................................................................

# Table of Authorities

**Cases**

*Board of Education v. Pico*, 457 U.S. 853 (1982) .................... 14, 15, 19, 20, 21, 24, 25

*Campbell v. St. Tammany Parish School Board*,
  64 F.3d 184 (5th Cir. 1995)................................................ 12, 14, 15, 19, 20, 22, 24

*Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam) ................................................... 24

*Marks v. United States*, 430 U.S. 188 (1977) ........................................................15, 24

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam)........................................ 31

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.*,
  760 F.2d 618 (5th Cir. 1985)............................................................................... 31

*Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024) ...............................14, 17, 18, 19, 27

*Murthy v. Missouri*, 144 S. Ct. 1972 (2024) ............................................................. 31

*Planned Parenthood Ass'n of Hidalgo County Texas, Inc. v. Suehs*,
  692 F.3d 343 (5th Cir. 2012) .............................................................................. 31

*Planned Parenthood of Houston and Southeast Texas v. Sanchez*,
  403 F.3d 324 (5th Cir. 2005) .............................................................................. 31

*Texas Medical Providers Performing Abortion Services v. Lakey*,
  667 F.3d 570 (5th Cir. 2012) .............................................................................. 31

*Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571 (2017) ................................. 27

*United States v. American Library Ass'n, Inc.*, 539 U.S. 194 (2003) ........................ 17

*United States v. Students Challenging Regulatory Agency Procedures
  (SCRAP)*, 412 U.S. 669 (1973)............................................................................28

*Vernonia School District 47J v. Acton*, 515 U.S. 646 (1995)........................................20

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) ........................... 16, 31

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)................................ 31

**Rules**

Fed. R. Civ. P. 52(a)(2) .......................................................................................... 10

## I. FACTS AND EVIDENCE

### A. The Facts Stated In The Appellants' Panel-Stage Brief

The appellants' panel-stage brief accurately states the facts of this case. *See* Appellants' Br. at 5–15. But there are two sentences that require clarification.

1. On page 11, we wrote that "47 of the books on Ms. Wallace's spreadsheet were on the shelves at Llano Library." Appellants' Br. at 11. Those 47 books were actually on the shelves of three different libraries within the Llano County library system: Llano Library, Kingsland Library, and Lakeshore Library. Most of those 47 books were housed at Llano Library, but not all of them were. This sentence in our opening brief should have said: "47 of the books on Ms. Wallace's spreadsheet were on the shelves at *Llano County's libraries*," rather than "47 of the books on Ms. Wallace's spreadsheet were on the shelves at *Llano Library*."

A spreadsheet that contains the books on Ms. Wallace's list, which we have attached to this brief and which appears on page 357 of the record, indicates the library where each of the books was housed. "LC" stands for Llano Library; "KB" for Kingsland, and "LB" for Lakeshore. "O" means Overdrive, which is an online collection of books. ROA.357.

2. Page 12 of our opening panel-stage brief contains the following sentence:

> Ms. Milum concluded that only 6 of the 47 books on Ms. Wallace's spreadsheet should be weeded according to the MUSTIE

criteria: *Freakboy*; *Shine*; *Caste: The Origins of our Discontents*; *Gabi, a Girl in Pieces*; and *They Called Themselves the K.K.K.: The Birth of an American Terrorist Group*. ROA.675. Ms. Milum determined that the remaining 41 books did not meet the criteria for weeding and she returned those 41 books to the shelves.

Appellants' Br. at 12. But there is an additional wrinkle that needs to be explained. The library system had *two* copies of *Being Jazz*: one at Llano Library and one at Kingsland Library. Ms. Milum weeded the copy at Llano Library because it had not been checked out in more than four years.[1] But she retained the one at Kingsland, where it had been checked out more frequently.[2] So whether Ms. Milum weeded six of the 47 titles or seven of the 47 titles depends on whether *Being Jazz* should be counted as a weeded book. Titles that were held in more than location were counted only once in the denominator of 47, so it is more precise to say that Ms. Milum weeded 6 ½ of the 47 titles on Ms. Wallace's spreadsheet.

If we had counted by actual book copies rather than by titles, there would be 52 physical items in the denominator (counting twice for *Being Jazz*, *New Kid*, and *I'll Give You the Sun*, and three times for *Me and Earl and the Dying Girl*). ROA.357. By that count, Ms. Milum would have weeded 7 of the 52 physical items on Ms. Wallace's spreadsheet. However the precise ratio is

---

1. ROA.346 (showing last checkout was July 19, 2017).
2. ROA.3995 ("Q. Why did you decide to weed *Being Jazz: My Life As A Transgender Teen*? A: It was not getting checked out at the Llano library, but it was popular at Kingsland, so we had an extra copy. Q. Did you weed the book at Kingsland where it was popular? A. No.").

calculated, the vast majority of the materials on Ms. Wallace's list were not weeded and were returned to the library shelves after Ms. Milum's review.

### B.     The Facts As Stated In The Appellees' Panel-Stage Brief

Our panel-stage reply brief explains the many false and misleading factual assertions that appear throughout the plaintiffs' panel-stage brief. *See* Appellants' Reply Br. at 1–4, 7–15. Some of these falsehoods found their way into the panel opinion, such as the claim that *Under The Moon: A Catwoman Tale* was listed on Bonnie Wallace's spreadsheet. *Compare* Appellees' Br. at 8 *with* Lead Panel Opinion, ECF No. 164, at 4. We urge the en banc court to carefully check the plaintiffs' factual assertions against the primary sources before relying on any factual claim that that plaintiffs assert in their briefing or at oral argument.

### C.     The Facts As Stated In The Panel Opinion

The panel opinion contains many misstatements of the facts, and we are flagging these so the en banc court will avoid these errors.

1.     The panel opinion says that all 17 of the disputed books are "on the Wallace List." *See* Lead Panel Opinion, ECF No. 164, at 4 ("By the end of 2021, seventeen books—all on the Wallace List—had been removed from the Llano County library system entirely."); *id.* at 4 (listing titles of those 17 books); *id.* at 18 ("Each of the books Milum removed were on the Wallace list."); *id.* at 22 ("Milum decided to weed only those books on the Wallace list"). That is untrue, as only 7 of the 17 disputed books appear on the Wallace List. ROA.357; *see also* App.

2.   The panel opinion says that "Defendants' attorney donated copies of the seventeen books back to the library after the inception of this litigation." Lead Panel Opinion, ECF No. 164, at 5. That is untrue; the defendants' attorney donated only 10 of those 17 books, as Amber Milum had already added the seven "butt" and "fart" books to the in-house checkout system before receiving the donation of the remaining disputed books. ROA.2293-2294 (¶¶ 4–6).

3.   The panel opinion says that "no other books were weeded" during the time period in which Milum weeded the 17 disputed books. *See* Lead Panel Opinion, ECF No. 164, at 18. It also says that Milum "pulled no other books for review during that time period." *Id.* at 4; *see also id.* at 22 ("Milum decided to weed only those books on the Wallace list."). Those statements are untrue. Hundreds of other books were pulled for review and weeded between August 5, 2021 (the date on which the first of the 17 disputed books were weeded), and November 18, 2021 (the date on which Milum weeded the last of the 17 disputed books). ROA.1660-1665. Exhibit 52 from the preliminary-injunction hearing shows that the Llano County library system weeded no fewer than 212 books, DVDs, and other items between August 5, 2021, and November 18, 2021—in addition to the 17 disputed books that the plaintiffs are suing over. ROA.1660-1665.

4.   The panel opinion says that by the end of 2021, the 17 disputed books "had been removed from the Llano County library system entirely." Lead Panel Opinion, ECF No. 164, at 4. That statement is untrue. *Being*

*Jazz: My Life as a (Transgender) Teen* remained in the Llano County library system and catalog because Milum did not weed the copy held at Kingsland library, where it was being checked out sufficiently to warrant retention. ROA.2503-2504 (¶ 29); ROA.3995.

5.    The panel opinion says that "today"—meaning June 6, 2024, the date on which the panel opinion issued—the 17 disputed books "are not on shelves nor in the catalog system." Lead Panel Opinion, ECF No. 164, at 5. That statement is untrue because the defendants have been complying with Judge Pitman's preliminary injunction since March 31, 2023, which ordered the 17 disputed books returned to the shelves and restored to the catalog. ROA.3531-3532. The defendants asked for a stay of the preliminary injunction pending appeal, but the Court carried that motion with the case and the panel denied the motion as moot. *See* Docket Entry No. 58; Lead Panel Opinion, ECF No. 164, at 27. The preliminary injunction remains in effect and the defendants are in full compliance with it. The en banc court should also describe the presence of the 17 disputed books in the in-house check-out system in the past tense rather than the present tense, as those 17 books were returned to the shelves over a year ago and are not currently part of Llano Library's in-house checkout system. *See* Lead Panel Opinion, ECF No. 164, at 5.

6.    The panel opinion says that all of "the seventeen books at issue here were removed after constituents complained that they were 'pornographic filth' inappropriate for children." Lead Panel Opinion, ECF No. 164, at 18.

This statement is untrue because no constituent ever complained about *Under the Moon: A Catwoman Tale*—and no one ever described it as "pornographic filth." *Under the Moon* is not on the Wallace list (although the panel opinion incorrectly states that it is),[3] and there is no evidence in the record showing that any person complained to anyone about the presence of this book at Llano Library. We remain at a loss to understand why the plaintiffs are suing over the weeding of this book, as none of the plaintiffs complained about the removal of *Under the Moon* or expressed interest in checking out that book in their declarations. ROA.227-228 (¶ 4) (complaining about the removal of 16 of the 17 disputed books, with no mention of *Under the Moon*); ROA.230 (¶ 3) (same); ROA.233-234 (¶ 3) (same); ROA.236 (¶ 3); ROA.244 (¶ 3); ROA.278-279 (¶ 3); ROA.423 (¶ 3) (same).

The panel opinion's conclusion that the defendants "likely violated plaintiffs' First Amendment rights"[4] rests on its assertions that Milum "likely 'adopted' the motivations of the other Defendants" and that other people's "complaints . . . were likely also the motivating factor in [Milum's] decision to remove the seventeen books from the shelves permanently." Lead Panel Opinion, ECF No. 164, at 18–20. But there were *no* constituent complaints about *Under the Moon*, and none of the other defendants ever objected to this

---

3. *Compare* ROA.357 *with* Lead Panel Opinion, ECF No. 164, at 18 ("Each of the books Milum removed were on the Wallace list."); *see also supra*, at p. 1.
4. Lead Panel Opinion, ECF No. 164, at 18 (some capitalization removed).

book or expressed any concerns about it. The panel opinion's statement that *Under the Moon* was "removed after constituents complained that [it was] 'pornographic filth' inappropriate for children"[5] is untrue.

7.    The panel opinion says that all 17 of the disputed books were described by constituents as "'pornographic filth' inappropriate for children." Lead Panel Opinion, ECF No. 164, at 18; *id.* ("The seventeen books at issue here were removed after constituents complained that they were 'pornographic filth' inappropriate for children."). This statement is untrue. Bonnie Wallace's e-mail to Ron Cunningham on November 10, 2021, in which the subject line reads "Pornographic Filth at the Llano Public Libraries," complained about pictures in a book entitled "Gender Queer" and included the Wallace List as an attachment. *See* ROA.349-351. Even if one were to surmise that Ms. Wallace was denouncing every book on her attached spreadsheet as "pornographic filth," that document contains only 7 of the 17 disputed books in this lawsuit. *See supra* at p. 3; *see also* App. No one ever described *Under the Moon*, *It's Perfectly Normal*, *In the Night Kitchen*, or any of the butt or fart books as "pornographic filth."

8.    The panel opinion says that "[t]he district court, which had the opportunity to observe Milum's live testimony, found her explanations for her alleged reasons for removing the books to be contradictory and unconvincing." Lead Panel Opinion, ECF No. 164, at 18. This statement is false. There

---

5.    Lead Panel Opinion, ECF No. 164, at 18.

is nothing in the district court's 26-page opinion that rejects Milum's testimony or declares it "contradictory" or "unconvincing." ROA.3507-3532. On the contrary, the district court recognized the conflicting testimony between Milum and Tina Castelan but refused to resolve the dispute, declaring that "given its subjective nature, reasonable minds may disagree over how to apply the CREW and MUSTIE criteria":

> The record contains competing testimony on this point. Milum stated in her declarations and testimony that she weeded the 17 disputed books because she believed that each of them met the library's criteria for weeding under the CREW and MUSTIE factors. *See* Milum Decl., Dkt. No. 49-1, at ¶¶ 8, 12–16; Hr'g Tr. Vol. 2 95:16–106:20. In contrast, Tina Castelan stated that Milum's decisions to weed some of [the] disputed books violated the library's weeding policies. *See id.* at 6–9; Hr'g Tr. Vol. 1 at 33:15–45:18. It appears to be undisputed that, given its subjective nature, reasonable minds may disagree over how to apply the CREW and MUSTIE criteria. *Id.* at 127:6–8.

ROA.3526-3527 n.7.

9. The panel opinion says that Milum "likely weeded these [17] books because she was told to by those who disagreed with their message." Lead Panel Opinion, ECF No. 164, at 20. This statement is untrue. Milum was never told by anyone to weed any book in the library. Milum was instructed by Judge Cunningham to *temporarily* pull the butt and fart books from the library shelves.[6] And Milum was instructed by Judge Cunningham to tempo-

---

6. ROA.2499 (quoting e-mail from Judge Cunningham that says: "Amber, I am still receiving calls, letters and emails concerning the Farts and Butts books. I think it is best to remove these books from the shelves *for now*." (emphasis added)); *id.* (Milum) ("Judge Cunningham recommended

rarily pull books containing "sexual activity or questionable nudity."[7] But no

one ever instructed Milum to weed a book.[8] The testimony on this point is

only that I *temporarily* remove those books from the shelves."); ROA.2488 (Cunningham) ("My e-mail to Amber Milum . . . recommended only that Ms. Milum *temporarily* remove those books from the shelves to determine whether they should remain in the children's section of the library."); ROA.4009-4010 ("[M]y intent was to neutralize the situation until we could investigate it further.").

7.   ROA.349 ("Amber, As we discussed in our meeting in my office at 9:45 AM on November 9, 2021 any and all books that depict any type of sexual activity or questionable nudity are to be pulled immediately."); ROA.682 ("I did in at least one email to Ms. Milum direct her to 'pull' books with 'sexual activity or questionable nudity,' it was the shared understanding of both myself and Ms. Milum that 'pull' in the context used meant to remove such books from the shelves for review prior to making a decision on whether to re-shelve the books in a different section of the library such as the adult section.").

8.   ROA.2499 ("I alone made the decisions to weed the 17 disputed books in this case. No other defendant in this case, including Bonnie Wallace, Rochelle Wells, Rhonda Schneider, Jerry Don Moss, or Ron Cunningham, has ever weeded a book from Llano library or directed me to weed or permanently remove a book from the library. Nor has any of these individuals pressured or attempted to pressure me to weed any book from the library."); ROA.676 ("I was never instructed or pressured by the County Judge or any of the County Commissioners to weed or otherwise permanently remove any books from the Llano County libraries. I was also never instructed to remove any books from the libraries by the Llano County Advisory Board."); ROA.4000-4001 ("Q. Were any of your ultimate decisions to weed any book from the library shelves influenced in any way by anyone on the commissioners' court? A. No. Q. Were they influenced by anyone on the library advisory board? A. No."); ROA.2499 (Milum) ("Judge Cunningham . . . never directed me to weed those books, and my decision to weed those books was entirely my own."); ROA.2488 (Cunningham) ("I never directed Amber Milum or any other library employee to weed those books or any other book.").

unrebutted and the plaintiffs do not contest this fact. *See* Appellants' Reply Br. at 4.

The panel opinion also says that the district court made findings or understood that Cunningham and Moss's communications with Milum's were directives to weed the 17 disputed books. *See* Lead Panel Opinion, ECF No. 164, at 19 ("Although Moss and Cunningham testified that they did not expressly direct Milum to permanently remove the books, it was not clear error for the district court to understand their communications as instructions to do just that."). But there is nothing in the district court's opinion that attempts to characterize Cunningham's or Moss's instructions this way, and the district court did not make any finding that Milum was instructed by Cunningham or Moss (or anyone else) to weed the books. *See* Fed. R. Civ. P. 52(a)(2) (requiring district courts to state findings of fact and conclusions of law when granting "an interlocutory injunction," in the same manner as required for a bench trial under Rule 52(a)(1)). Milum was instructed to temporarily pull the books, not to permanently remove them, and neither the plaintiffs nor the district court disputes this fact.

---

ROA.2492 (Moss) ("I never 'ordered' or 'directed' the removal of any book from the library and . . . I have no authority over Ms. Milum's decision-making"); ROA.4244 (Moss) ("Q. How many times, if any, did you direct Amber Milum to remove a particular book from the Llano County Library System? A. I did not direct her to remove any books from the library.").

## II. The Panel Opinion's Rationale

On March 30, 2023, the district court granted the plaintiffs' motion for preliminary injunction and ruled that the First Amendment prohibits a public library from engaging in "content discrimination" or "viewpoint discrimination" when weeding books. ROA.3523 ("[T]he First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination."). The district court issued a preliminary injunction that ordered the return of "all print books that were removed because of their viewpoint and content, including" the 17 books at issue in this litigation. ROA.3531. The district court's order also enjoined the defendants from "removing any books from the Llano County Library Service's catalog for any reason during the pendency of this action." ROA.3532.

The defendants appealed and asked this Court to stay the preliminary injunction and expedite the appeal. *See* Mot. for Stay, ECF No. 14-1. On May, 5, 2023, this Court granted the motion to expedite and carried the motion for stay pending appeal with the case. *See* Order, ECF No. 58-2. On June 6, 2024, a panel of this Court, over dissent, affirmed the preliminary injunction with respect to 8 of the 17 disputed books. *See* Lead Panel Opinion, ECF No. 164, at 27.

None of the three judges could agree on the disposition or rationale. The lead opinion, authored by Judge Wiener, rejected the district court's claim that the First Amendment bans "content discrimination" in public-library weeding decisions. *See* Lead Panel Opinion, ECF No. 164, at 11 ("[L]ibraries

must consider content to some degree in selecting material."); *id.* ("Librarians may consider books' contents in making curation decisions."); *id.* at 12 ("[C]ontent is necessarily relevant in removal decisions."). Instead, Judge Wiener opined that public librarians violate the First Amendment if they weed a book "with the substantial motivation to prevent access to particular points of view." Lead Panel Opinion, ECF No. 164, at 15. According to Judge Wiener, a "motivation is 'substantial' when in its absence 'the opposite decision would have been reached.'" *Id.* at 21–22 (citations omitted). Judge Wiener would have held that all 17 books were "likely" weeded in violation of the First Amendment. *See id.* at 18–23 & n.12.

Judge Southwick concurred in part and concurred in the judgment in part. His partial concurrence describes the governing standard somewhat differently from Judge Wiener's lead opinion, declaring that public librarians violate the First Amendment by weeding books "'*simply because* they dislike the ideas contained in those books *and seek by their removal to prescribe what shall be orthodox* in politics, nationalism, religion, or other matters of opinion.'" Lead Panel Opinion, ECF No. 164, at 28 (quoting *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184, 188 (5th Cir. 1995) (emphasis added)). In applying this standard, Judge Southwick held that the weeding of the seven "butt and fart books" did not violate the First Amendment because there was no evidence showing that these books express an "idea" or "viewpoint." *See id.* ("I do not find those books were removed on the basis of a dislike for the ideas within them when it has not been shown the books contain

any ideas with which to disagree."). Judge Southwick also held that the removal of books containing nudity were constitutionally permissible because those books "were removed as part of the library's efforts to respond to objections that certain books promoted grooming and contained sexually explicit material that was not appropriate for children." *Id.* at 29–30. But Judge Southwick agreed with Judge Wiener that the plaintiffs had shown that the remaining eight books were likely weeded in violation of the First Amendment.

Judge Wiener and Judge Southwick also agreed that the district court's preliminary injunction was overbroad, and they vacated the portions of the injunction that had ordered the return of "all print books that were removed because of their viewpoint or content," and that restrained the defendants from "removing *any* books from the Llano County Library Service's catalog for *any* reason during the pendency of this action." Lead Panel Opinion, ECF No. 164, at 25 (internal quotation marks omitted); *id.* at 27. But the Court added a new provision to the injunction that reads as follows:

> Defendants are hereby enjoined from removing any books from the Llano County Library Service's publicly visible and accessible shelves and/or searchable catalog without first providing Plaintiffs with documentation of (a) the individual who decided to remove or conceal the books, and (b) the reason or reasons for that removal or concealment.

*Id.* at 27.

Judge Duncan dissented, arguing that a public library's curating decisions are government speech and that the First Amendment should be inapplicable to a public librarian's weeding decisions. *See id.* at 31–76.

## Summary Of Argument

The en banc court should overrule *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995), and hold that a public library's curating decisions are government speech immune from scrutiny under the First Amendment. *Campbell* rejected this idea and held that the constitutionality of a library-book removal turns on the "officials' substantial motivation in arriving at the removal decision." *Id.* at 190. And this holding from *Campbell* precluded the district court and the three-judge panel from disposing of the plaintiffs' First Amendment claims on government-speech grounds. But the en banc court is not constrained by *Campbell*, and it can and should overrule that decision and hold that *all* acquisition and weeding decisions in public libraries are government speech that cannot be challenged under the First Amendment. This follows inevitably from the Supreme Court's pronouncement in *Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024), which holds that an entity engages in "speech" of its own whenever it presents "a curated compilation of speech originally created by others." *Id.* at 2400. A library's acquisition and weeding decisions are no less "speech" than a social-media company's decisions to convey or exclude speech on its platforms. *See id.*

If the en banc court decides to overrule *Campbell*, then the Supreme Court's ruling in *Board of Education v. Pico*, 457 U.S. 853 (1982), presents no

obstacle to a government-speech disposition of the plaintiffs' claims. There was no majority opinion in *Pico*, and that means that the lower courts are bound only by the opinion of the justice who "concurred in the judgment[] on the narrowest ground." *Marks v. United States*, 430 U.S. 188, 193 (1977). In *Pico*, the only binding opinion is the opinion of Justice White, who concurred only in the judgment and refused to weigh in on *any* of the First Amendment issues discussed in Justice Brennan's plurality opinion. *See Pico*, 457 U.S. at 883–84 (White, J., concurring in the judgment); *Campbell*, 64 F.3d at 189 (acknowledging that "Justice White's concurrence in *Pico* represents the narrowest grounds for the result in that case"). Justice White's concurrence in the judgment places no constraints on a lower court's analysis of the First Amendment issues in this case, and it presents no obstacle to a holding from this Court that a public library's curating decisions are government speech.

If the en banc court is unwilling to dispose of the plaintiffs' claims on government-speech grounds, then it should vacate the preliminary injunction for the other reasons provided in our panel-stage briefing. The plaintiffs cannot show that the defendants were violating their First Amendment rights to access and receive information when each of the 17 disputed books remained available for the plaintiffs to read and check out through Llano Library's in-house system, and the panel opinion had no persuasive response to this. *See* Lead Panel Opinion, ECF No. 164, at 23–24.

The en banc court should also rebuke the district court for imposing a remedy that went far beyond what was necessary to remedy the plaintiffs' alleged constitutional injuries, and even the panel opinion agreed that the district court had no business awarding relief that went beyond what the plaintiffs requested and that the plaintiffs lack Article III standing to pursue. *See* Lead Panel Opinion, ECF No. 164, at 25–27.

Finally, the en banc court should issue an emphatic reminder—not only to the district court but to future panels of this Court—that a preliminary injunction is an "extraordinary remedy" that it cannot issue unless the movant has "clearly carried the burden of persuasion on all four requirements" of the preliminary-injunction inquiry. *See Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013). The panel opinion did not acknowledge the "clear showing" requirement, and it affirmed a preliminary injunction that rested on speculation and dubious circumstantial evidence surrounding a librarian's subjective state of mind. This is not the stuff of which a "clear showing" is made.

## ARGUMENT

### I. THE EN BANC COURT SHOULD OVERRULE *CAMPBELL*, LIMIT *PICO* TO ITS FACTS, AND HOLD THAT A PUBLIC LIBRARY'S ACQUISITION AND WEEDING DECISIONS ARE GOVERNMENT SPEECH IMMUNE FROM FIRST AMENDMENT SCRUTINY

Judge Duncan's panel-stage dissent argues that a public library's acquisition and weeding decisions should be treated as government speech immune

from First Amendment scrutiny. *See* Panel Dissent, ECF No. 164, at 31–76 (Duncan, J., dissenting). As a matter of first principles, Judge Duncan is correct. A library's curating decisions are no less "speech" than a social-media company's decisions regarding the third-party speech that it chooses to convey on its platforms. *See Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2400 (2024) ("[E]xpressive activity includes presenting a curated compilation of speech originally created by others."). As the Supreme Court explained in *NetChoice*:

> An entity "exercis[ing] editorial discretion in the selection and presentation" of content is "engage[d] in speech activity." *Arkansas Ed. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (1998). And that is as true when the content comes from third parties as when it does not. (Again, think of a newspaper opinion page or, if you prefer, a parade.) Deciding on the third-party speech that will be included in or excluded from a compilation—and then organizing and presenting the included items—is expressive activity of its own. And that activity results in a distinctive expressive product.

*Id.* at 2402. And "none of that changes just because a compiler includes most items and excludes just a few." *Id.*; *see also id.* at 2406 ("That those platforms happily convey the lion's share of posts submitted to them makes no significant First Amendment difference."). Most libraries are willing to carry the vast majority of available books, but that does not mean that they are no longer engaged in "speech" when they choose to exclude certain materials from their collections. *See United States v. American Library Ass'n Inc.*, 539 U.S. 194, 204 (2003) (plurality op. of Rehnquist, C.J.) ("[L]ibraries collect

only those materials deemed to have 'requisite and appropriate quality.'");
*id.* ("'The librarian's responsibility . . . is to separate out the gold from the
garbage, not to preserve everything'" (quoting W. Katz, *Collection Development: The Selection of Materials for Libraries* 6 (1980)).

And a library's acquisition and weeding decisions remain its own
"speech" even though a library is conveying the speech of others when deciding whether to include materials in its collection. Like a social-media platform, a library is "in the business . . . of combining 'multifarious voices' to
create a distinctive expressive offering." *NetChoice*, 144 S. Ct. at 2405. As
*NetChoice* explains:

> The individual messages may originate with third parties, but
> the larger offering is the platform's. It is the product of a wealth
> of choices about whether—and, if so, how—to convey posts
> having a certain content or viewpoint. Those choices rest on a
> set of beliefs about which messages are appropriate and which
> are not (or which are more appropriate and which less so). And
> in the aggregate they give the feed a particular expressive quality.

*Id.* at 2405. So too with a library. The "individual messages" originate with
the authors, but "the larger offering" is the library's speech. *See id.* And a
library's acquisition and weeding decisions "rest on a set of beliefs about
which [materials] are appropriate" to include in the library's collection and
"which [materials] are not." *Id.* Finally, the aggregate of the library's curating decisions gives the collection "a particular expressive quality" unique to

that library. A library is "engage[d] in speech activity"[9] when it curates its collection, and a public library's acquisition and weeding decisions are government speech immune from First Amendment attack.

The difficulty arises in reconciling this stance with the Supreme Court's pronouncement in *Board of Education v. Pico*, 457 U.S. 853 (1982), and this Court's ruling in *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995), each of which subjects a public-school library's book-removal decisions to First Amendment scrutiny. In the district-court proceedings and before the original three-judge panel, both *Pico* and *Campbell* had the status of binding precedent, which made it hard to advance a government-speech argument that would not defy these binding authorities. Judge Duncan tried to thread this needle by limiting the holdings of *Pico* and *Campbell* to *school* libraries, while insisting that *county* libraries in the Llano County Library System are engaged in "government speech" and therefore have carte blanche under the First Amendment to add and remove books as they see fit. *See* Panel Dissent, ECF No. 164, at 49–50 (Duncan, J., dissenting) ("*Campbell* addressed the 'unique role of the school library.' . . . A county library does not implicate the 'unique' First Amendment concerns at play in a public school." (citations omitted)). But it is hard for us to see why the First Amendment analysis should differ depending on whether a library is run by a public school rather than a county or municipality. If anything, one would

---

9.   *NetChoice*, 144 S. Ct. at 2402 (quoting *Arkansas Ed. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (1998)).

think that a public-school library should have more latitude than a county library to remove books because school officials act *in loco parentis* and children in a public-school setting do not enjoy the same constitutional rights as adults. *See Vernonia School District 47J v. Acton*, 515 U.S. 646, 654–56 (1995). Yet Justice Brennan's plurality opinion in *Pico* contains a paean to the "unique role of the school library" and "the regime of voluntary inquiry that there holds sway,"[10] could open the door for this Court to cabin the holdings of *Pico* and *Campbell* in the manner that Judge Duncan proposed. *See Campbell*, 64 F.3d at 188 ("The *Pico* plurality stressed the 'unique role of the school library' as a place where students could engage in voluntary inquiry.").

The en banc court, however, enjoys the prerogative to overrule *Campbell* and repudiate its analysis, and we urge the Court to do so. *Campbell* is incompatible with the idea that a public or public-school library's curating decisions are government speech, and it holds that the constitutionality of a library-book removal turns on the "officials' substantial motivation in arriving at the removal decision." *Id.* at 190; *see also id.* ("[T]he key inquiry in a book removal case is the school officials' substantial motivation in arriving at the removal decision."). But the *Campbell* opinion never explains (or attempts to explain) which "motivations" are constitutionally impermissible when weeding a book—and even if it had it is not apparent how a court is supposed to

---

10.  *Pico*, 457 U.S. at 869 (plurality op. of Brennan, J.).

distinguish a "substantial" motivation from a "non-substantial" motivation. The lead panel opinion claimed that *Campbell* had "announced" a "clear rule,"[11] but whatever rule one attempts to discern from *Campbell* is anything but clear.

Two of the three panel members in this case tried to apply *Campbell* to the Llano Library's book-weeding decisions, but the competing opinions from Judge Wiener and Judge Southwick show the difficulties and indeterminacies that arise when judges attempt to apply *Campbell* to a particular set of facts. Judge Wiener's opinion claims that *Campbell* prohibits the removal of library books "for the sole—or a substantial—reason that the decisionmaker does not wish patrons to be able to access the book's viewpoint or message." Lead Panel Opinion, ECF No. 164, at 12; *see also id.* at 11–12 ("This [First Amendment] right is violated when an official who removes a book is 'substantially motivated' by the desire to deny 'access to ideas with which [they] disagree[].'" (quoting *Board of Education v. Pico*, 457 U.S. 853, 871 (1982) (plurality opinion)). Judge Wiener further explained that a "motivation is 'substantial' when in its absence 'the opposite decision would have been reached.'" *Id.* at 21–22 (citations omitted).

Judge Southwick's partial concurrence described the *Campbell* test differently, declaring that public librarians violate the First Amendment by

---

11.  *See* Lead Panel Opinion, ECF No. 164, at 12 ("[W]e . . . hesitate to ascribe *ALA* with significant precedential power, such that it could have modified the clear rule that we announced in *Campbell*.").

weeding books "'*simply because* they dislike the ideas contained in those books *and* seek by their removal to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.'" Panel Concurrence, ECF No. 164, at 28 (quoting *Campbell*, 64 F.3d at 188 (emphasis added)). Under Judge Southwick's formulation, a librarian violates the First Amendment only when: (1) Her *sole* motivation for weeding a book is because she "dislike[s]" its "ideas"; and (2) The librarian is *also* seeking to "prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." Judge Wiener's opinion, by contrast, asks whether a librarian's "substantial[]" (not sole) motivation is "to deny access to ideas." Lead Panel Opinion, ECF No. 164, at 11–12. And Judge Wiener's opinion does not ask or consider whether Milum was seeking to "prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion" when she weeded the 17 disputed books.

Judge Wiener's opinion also struggled when attempting to define the categories of constitutionally permissible "motivations" and constitutionally impermissible "motivations" under *Campbell*. His opinion correctly repudiates the district court's claim that the First Amendment prohibits "content discrimination" in public-library weeding decisions. *Compare* ROA.3523 ("[T]he First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination."), *with* Lead Panel Opinion, ECF No. 164, at 11 ("[L]ibraries must consider content to some degree in selecting material."); *id.* ("Librarians may consider books' contents in

making curation decisions."); *id.* at 12 ("[C]ontent is necessarily relevant in removal decisions."). But his opinion simultaneously insists that a book removal is constitutionally impermissible if it was "substantially motivated by the desire to deny access" to the book's ideas. It is not clear, however, how to distinguish an act of permissible "content discrimination" from an act that is "substantially motivated to deny access" to the weeded content. Any time a librarian weeds a book on account of its content, she *knows* that her decision to weed will "deny access" to future library patrons who will want to read or check out the weeded book. Can a librarian—who knows full well that her decision to weed a book will *always* result in a denial of access to future library patrons—ever deny that she is "substantially motivated" by what she knows will be the inevitable result of her actions? And how is a librarian supposed to disprove this motivation when she is sued by a library patron who has been "denied access" to the weeded book?

The test established in *Campbell* is vague, indeterminate, and nonfalsifiable—and *Campbell* was wrong to impose any First Amendment restrictions on library-book removals beyond those that are inescapably compelled by binding Supreme Court precedent. The en banc court should overrule *Campbell* and hold that public (and public-school) library curating decisions are government speech—and that they will be treated as government speech in this circuit unless and until a binding pronouncement from the Supreme Court of the United States compels a different approach.

* * *

There remains the question of what to do with *Pico*, which (unlike *Campbell*) cannot be overruled by the en banc court. *See Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."). The justices in *Pico* failed to produce a rationale that garnered five or more votes, and in these situations the Supreme Court instructs lower courts to follow the opinion of the justice (or justices) who "concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977); *see also id.* ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). In *Pico*, the controlling opinion under *Marks* belonged to Justice White, who concurred in the judgment and refused to join any portion of Justice Brennan's plurality opinion. *See Pico*, 457 U.S. at 883–84 (White, J., concurring in the judgment); *Campbell*, 64 F.3d at 189 (acknowledging that "Justice White's concurrence in *Pico* represents the narrowest grounds for the result in that case"). Yet Justice White's opinion refused to weigh in on the constitutional standards for determining whether a library-book removal violates the First Amendment:

The District Court found that the books were removed from the school library because the school board believed them "to be, in essence, vulgar." 474 F. Supp. 387, 397 (E.D.N.Y. 1979). Both Court of Appeals judges in the majority concluded, however, that there was a material issue of fact that precluded summary judgment sought by petitioners. The unresolved factual issue, as I understand it, is the reason or reasons underlying the school board's removal of the books. I am not inclined to disagree with the Court of Appeals on such a fact-bound issue and hence concur in the judgment of affirmance. Presumably this will result in a trial and the making of a full record and findings on the critical issues.

The plurality seems compelled to go further and issue a dissertation on the extent to which the First Amendment limits the discretion of the school board to remove books from the school library. I see no necessity for doing so at this point. . . . [I]f there is an appeal, if there is dissatisfaction with the subsequent Court of Appeals' judgment, and if certiorari is sought and granted, there will be time enough to address the First Amendment issues that may then be presented. . . .

We should not decide constitutional questions until it is necessary to do so, or at least until there is better reason to address them than are evident here. I therefore concur in the judgment of affirmance.

*Pico*, 457 U.S. at 883–84 (White, J., concurring in the judgment). The controlling opinion in *Pico* remains entirely agnostic on whether the First Amendment imposes *any* constraints on book-removal decisions made by public-school libraries, and it merely concurs in a judgment that affirms a federal court of appeals' decision vacating a ruling that granted summary judgment for the school district and remanding the case for trial. *See id.* at 856–61 (plurality op. of Brennan, J.) (describing the lower-court proceed-

ings). So there is *no* binding precedent from the Supreme Court that precludes this Court from holding that public-library (and public-school library) curating decisions are government speech immune from First Amendment scrutiny. *Campbell* is the only obstacle to such a holding, and if the en banc court overrules *Campbell* then it can (and should) shield both acquisition and removal decisions in government-owned libraries from First Amendment attack.[12]

## II. A Public Library Cannot Violate The Plaintiffs' First Amendment Right To Access And Receive Information When Each Of The 17 Disputed Books Remained Available For The Plaintiffs To Read And Check Out Through Llano Library's In-House Checkout System

The plaintiffs' First Amendment claims cannot get off the ground when each of the 17 disputed books remained available for them to read and check out through Llano Library's in-house system. Neither the lead panel opinion nor Judge Southwick's partial concurrence explains how the defendants can be violating the plaintiffs' "right to access information and ideas"[13] when each plaintiff remains able to read and check out every single one of the 17 disputed books at Llano Library—and when each plaintiff is fully aware that

---

12. As Judge Duncan noted in his dissent, a government-speech holding will not go so far as to immunize public-library weeding decisions from *all* forms of constitutional attack, and it may still be possible to challenge book-removal decisions on Establishment Clause or Equal Protection grounds. *See* Panel Dissent, ECF No. 164, at 67 n.28 (Duncan, J., dissenting).

13. Slip op. at 2.

the library has made each of the 17 disputed books available for reading and checkout through the library's in-house system. ROA.3463-3465 (stipulation of undisputed facts).

The panel opinion observes that *other* library patrons may not be aware of the in-house checkout option. *See* Lead Panel Opinion, ECF No. 164, at 5 ("Without reading the briefs in this lawsuit, there is no way to know that the books are available."). But the plaintiffs have no standing to assert the First Amendment rights or interests of non-party library patrons,[14] and a preliminary injunction cannot issue unless the plaintiffs show that the in-house checkout system violates *their* constitutional rights. *See Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 581 (2017) (staying a preliminary injunction to the extent it reached beyond the named litigants and protected "foreign nationals abroad who have no connection to the United States at all"); Lead Panel Opinion, ECF No. 164, at 24 ("We agree with Defendants that the injuries to other library patrons, who may not know about the availability of the contested books, is irrelevant for this analysis.").

---

14. The plaintiffs have not brought (and cannot bring) an "overbreadth" or "facial" challenge that might allow them to litigate or assert the First Amendment rights of non-parties to this proceeding. *See, e.g., Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397–2399 (2024). That is because the plaintiffs are not challenging the constitutionality of a statute or ordinance, but are instead suing over a librarian's decisions to weed 17 particular books from the Llano Library. The "overbreadth" and "facial challenge" doctrines are inapplicable to claims of this sort.

The panel opinion notes that the plaintiffs will be "injured by being unable to anonymously peruse the books in the library without asking a librarian for access." Lead Panel Opinion, ECF No. 164, at 24. And that certainly qualifies as an Article III injury sufficient to preserve a justiciable "case" or "controversy." *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) ("'[A]n identifiable trifle is enough for standing" (citation and internal quotation marks omitted)). But it does not remotely qualify as a violation of the plaintiffs' constitutional rights under the First Amendment, because it does not in any way limit the plaintiffs' ability "to access and receive information." Lead Panel Opinion, ECF No. 164, at 13 n.11. None of the plaintiffs claim that they are unable to access the 17 disputed books through the Llano Library's in-house checkout system, and none of them claim to suffer from any condition (such as a speech impediment or extreme shyness) that would make use of the in-house checkout system burdensome or impractical.

Yet the panel opinion held that the defendants *are* violating the plaintiffs' First Amendment rights by offering the 17 disputed books through an in-house checkout system. *See* Lead Panel Opinion, ECF No. 164, at 23–24. Indeed, the panel opinion implies that a library patron's First Amendment rights are violated whenever he needs to ask a librarian for assistance in accessing a book, or whenever a library book is stored in a location that is not accessible to the public. *See* Lead Panel Opinion, ECF No. 164, at 24 ("Plaintiffs have shown that they themselves will be injured by being unable to

anonymously peruse the books in the library without asking a librarian for access. *This burden on accessing their right to receive information is a valid First Amendment injury.*" (emphasis added)). Under this rationale, any public librarian in the Fifth Circuit who maintains an in-house collection—or who offers books through InterLibrary Loan or other mechanisms that deprive library patrons of the ability to "peruse" books "anonymously"—can be sued under 42 U.S.C. § 1983 and forced to pay millions of dollars in costs and attorneys' fees. And Llano Library's in-house collection predates this litigation,[15] so its librarians could also be sued for damages by any library patron who attempted to access a book within that collection and had to suffer the burden of seeking a librarian's assistance.

It is absurd for the plaintiffs (and the panel) to claim that the defendants were violating the plaintiffs' First Amendment rights by offering them access to the 17 disputed books through an in-house checkout system of which each of the plaintiffs is fully aware. ROA.3463-3465. None of the plaintiffs were suffering any infringement of their "right to access and receive information" when each of the 17 books remained available for the plaintiffs to read and check out at Llano Library, and the en banc court should so hold.

## III. The District Court's Remedy Is Overbroad

Even if the en banc court concludes that the defendants were violating the plaintiffs' First Amendment rights when the district court entered its

---

15. ROA.3924-3925.

preliminary injunction, it should nonetheless reject the district court's remedy because it awards relief beyond what the plaintiffs requested and awards relief that they lack Article III standing to pursue. *See* Appellants' Br. at 38–40. Even the panel opinion agreed that the district court's remedy went far beyond what was needed to remedy the plaintiffs' alleged constitutional injuries. *See* Lead Panel Opinion, ECF No. 164, at 25–27. And the plaintiffs' panel-stage brief made no effort to defend an injunction that orders the return of anything beyond the 17 books that the plaintiffs are suing over. *See* Appellees' Br. at 57.

The en banc court should also, at the very least, remove *Under the Moon: A Catwoman Tale* from the scope of the preliminary injunction, as there is no evidence that anyone ever complained about it, and there is no evidence that anyone asked Amber Milum to do anything with respect to that book. Nor is there any evidence that the plaintiffs were "injured" by the removal of *Under the Moon* because the declarations that they submitted in support of their motion for preliminary injunction say nothing about it. *See supra*, at pp. 6–7; Lead Panel Opinion, ECF No. 164, at 25.

## IV. The En Banc Court Should Reaffirm That A Preliminary Injunction Cannot Issue Unless The Movant Makes A "Clear Showing" On All Four Prongs Of The Preliminary-Injunction Inquiry

The Supreme Court and the Fifth Circuit have held time and time again that a preliminary injunction cannot issue unless the movant makes a "clear

showing" that it is entitled to relief. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." (emphasis in original) (citation and internal quotation marks omitted)); *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008) ("[A] preliminary injunction . . . may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) ( "clear showing" is required at the preliminary-injunction stage).

And this Court has gone even further by requiring a clear showing on all four prongs of the preliminary-injunction inquiry. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("A preliminary injunction is an extraordinary remedy. It should only be granted if the movant has clearly carried the burden of persuasion on all four . . . prerequisites."); *Planned Parenthood of Houston and Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005) ("A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." (citations and internal quotation marks omitted)); *Texas Medical Providers Performing Abortion Services v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012) (same); *Planned Parenthood Ass'n of Hidalgo County Texas, Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012) (same); *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) ("This court has repeatedly cautioned that 'a preliminary injunction is an ex-

traordinary remedy which should not be granted unless the party seeking it has "clearly carried the burden of persuasion on all four requirements."'" (citations omitted)).

Neither the lead panel opinion by Judge Wiener nor Judge Southwick's partial concurrence acknowledged or applied the "clear showing" requirement, even though it was cited throughout our panel-stage briefs. *See, e.g.*, Appellants' Br. at 20–21. And they affirmed a preliminary injunction even though the evidence surrounding Amber Milum's subjective motivations was entirely circumstantial. *See* Lead Panel Opinion, ECF No. 164, at 19 ("[I]t is Milum's motivation that matters"). We respectfully ask this Court to issue a more emphatic reminder—not only to the district courts in this circuit but also to future panels of this Court—that preliminary injunctions are not to issue unless the movant "clearly carries the burden of persuasion" on all four prongs of the preliminary-injunction inquiry.

## Conclusion

The preliminary injunction should be vacated.

Respectfully submitted.

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940
jonathan@mitchell.law

Dated: August 2, 2024          *Counsel for Defendants-Appellants*

## Certificate Of Service

I certify that on August 2, 2024, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Fifth Circuit and served through CM/ECF upon:

Ellen V. Leonida
Matthew Borden
J. Noah Hagey
Max Bernstein
Ellis E. Herington
Marissa Benavides
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com
benavides@braunhagey.com

Ryan A. Botkin
Katherine P. Chiarello
María Amelia Calaf
Kayna Stavast Levy
Botkin Chiarello Calaf
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
katherine@bccaustin.com
ryan@bccaustin.com
mac@bccaustin.com
kayna@bccaustin.com

*Counsel for Plaintiffs-Appellees*

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 8,511 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.


 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Dated: August 2, 2024           *Counsel for Defendants-Appellants*

## Certificate of Electronic Compliance

Counsel also certifies that on August 2, 2024, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through http://www.pacer.gov.

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
*Counsel for Defendants-Appellants*

# APPENDIX

| Title | Author | Location | Shelf | Added to the system | Been checked out | Purchased by |
|---|---|---|---|---|---|---|
| Be dazzled | La Sala, Ryan | Overdrive | | | | |
| The girls I've been | Sharpe, Tess | LC | YF+ SHA | 3/30/2021 | 2 | Tina/Amber |
| A good kind of trouble | Ramee, Lisa Moore | O, LC | JF RAM | 2/3/2020 | 1 | Tommi |
| A home for goddesses and dogs | | O | | | | |
| All out : the no-longer-secret stories of queer teens throughout the ages | Saundra Mitchell | O | | | | |
| Ana on the edge | Sass, AJ | KB | JF SAS | 2/2/2021 | 0 | Suzette/Amber |
| Brave Face: A Memoir | Hutchinson, Shaun David | O | | | | |
| Caste : the origins of our discontents | Wilkerson, Isabel | LC | 305.5 | 12/15/2020 | 3 | Tommi |
| Cemetery boys | Thomas, Aiden | KB | YF THO | 6/3/2021 | 3 | Tina/Amber |
| Cinderella is dead | Bayron, Kalynn | O | | | | |
| Class act | Craft, Jerry | LB | JF CRA | 12/14/2020 | 5 | Tommi |
| Darius the Great deserves better | Khorram, Adib | O | | | | |
| Felix ever after | Callender, Kacen | O | | | | |
| Hot dog girl | Dugan, Jennifer | O | | | | |
| In The Dream House | Machado, Carmen Maria | O | | | | |
| In the role of Brie Hutchens . . . | Melleby, Nicole | O | | | | |
| Into the real | Brewer, Z | O | | | | |
| Reverie | La Sala, Ryan | LC | YF LAS | 2/3/2020 | 0 | Tommi |
| The whispers | Howard, Greg | KB | YF HOW | 1/23/2019 | 4 | Amber |
| How to be an antiracist | Kendi, Ibram X. | KB | 305.8 | 10/22/2020 | 1 | Amber |
| Ivy Aberdeen's letter to the world | Blake, Ashley Herring | LC | YF+ BLA | 5/7/2020 | 0 | Tommi |
| New kid | Craft, Jerry | LC, KB | JF CRA | 6-25-2019   2<br>10-2020 | 5<br>11 | Amber<br>Tommi |
| The devouring gray | Herman, Christine Lynn | LC | YF HER | 7/20/2020 | 2 | Tommi |
| The Deck of Omens | Herman, Christine Lynn | LC | YF HER | 7/20/2020 | 2 | Tommi |
| The downstairs girl | Lee, Stacey | LB | YF LEE | 8/29/2020 | 3 | Melissa |
| The last to let go | Smith, Amber | LC | YF SMI | 9/6/2019 | 1 | Tommi |
| The mighty heart of Sunny St. James | Blake, Ashley Herring | LC | YF+ BLA | 2/3/2020 | 1 | Tommi |
| Boys and Sex | Pomeroy, Wardell Baxter | O | | | | |
| The upside of unrequited | Albertalli, Becky | KB | YF ALB | 5/5/2017 | 10 | Renny |
| They both die at the end | Silvera, Adam | KB | YF SIL | 7/8/2021 | 1 | Suzette/Amber |
| We are the ants | Hutchinson, Shaun David | KB | YF HUT | 2/9/2016 | 6 | Renny |
| Between the world and me | Coates, Ta-Nehisi | KB | 305 | 7/29/2021 | 0 | Suzette/Amber |
| Cradle and all | Patterson, James | KB | F PAT | 10/25/2007 | 61 | Diane |
| Freakboy | Clark, Kristin Elizabeth | LC | YF CLA | 10/8/2015 | 1 | Diane |
| When the moon was ours | McLemore, Anna-Marie | KB | YF MCL | 3/2/2017 | 2 | Renny |
| Grasshopper jungle : a history | Smith, Andrew | LC | YF SMI | 10/8/2015 | 2 | Diane |
| I'll give you the sun | Nelson, Jandy | LC, KB | YF NEL | 11/5/2014<br>10/8/2015 | 10<br>4 | Diane |
| Me and Earl and the Dying Girl | Andrews, Jesse | KB | YF AND | 9/13/2017 | 5 | Amber |
| Me and Earl and the Dying Girl | Andrews, Jesse | KB, LB | DVD | 1/4/2016<br>1/3/2020 | 15<br>2 | Diane<br>Amber |
| Simon vs. the Homo Sapiens agenda | Albertalli, Becky | KB | YF ALB | 5/4/2018 | 6 | Amber |
| Beyond magenta : transgender teens speak out | Kuklin, Susan | LC | Y305 KUK | 10/8/2015 | 2 | Diane |
| Some assembly required : the not-so-secret life of a transgender teen | Andrews, Arin | LC | Y306 AND | 1/28/2016 | 4 | Diane |
| Gabi, a girl in pieces | Quintero, Isabel | LC | YF QUI | 1/28/2016 | 3 | Diane |
| Separate is never equal | Tonatiuh, Duncan | LC | J379 TON | 3/31/2015 | 7 | Diane |
| Drama | Telgemeier, Raina | KB | YF+ TEL | 2/25/2014 | 48 | Diane |
| Far from the tree : parents, children, and the search for identity | Solomon, Andrew | LC | 362 SOL | 1/28/2013 | 8 | Diane |
| Shine | Myracle, Lauren | LC | YF MYR | 1/23/2012 | 10 | Diane |
| They called themselves the K.K.K. : the birth of an American terrorist group | Bartoletti, Susan Campbell | LC | 322.4 BAR | 5/17/2011 | 2 | Diane |
| The teenage guy's survival guide | Daldry, Jeremy | KB | Y305 DAL | 5/4/2018 | 1 | Amber |
| Changing bodies, changing lives : a book for teens on sex and relationships | Bell, Ruth | LC | Y613.9 BEL | 3/5/2001 | 10 | Diane |
| The Cider House Rules | Irving, John | LC | DVD | 12/13/2010 | 72 | Diane |
| Boy erased : a memoir of identity, faith, and family | Conley, Garrard | KB | DVD | 3/28/2019 | 18 | Amber |
| What if it's us? | Albertalli, Becky | KB | YF ALB | 1/18/2019 | 3 | Amber |
| At the edge of the universe | Hutchinson, Shaun David | KB | YF HUT | 3/2/2018 | 5 | Amber |
| The 57 Bus | Slater, Dashka | KB | Y364 SLA | 6/25/2020 | 2 | Amber |
| Being Jazz : my life as a (transgender) teen | Jennings, Jazz. | LC | Y306 JEN | 10/14/2016<br>3/2/2017 | 1<br>3 | Jackie |
| Far from the tree : how children and their parents learn to accept one another | Solomon, Andrew | LC | 362 SOL | duplicate on list | | |
| Spinning | Walden, Tillie | LC | Y796 WAL | 9/11/2018 | 4 | Tommi |
| The best man | Peck, Richard | LC | YF+ PEC | 8/18/2017 | 11 | Tommi |
| Girl made of stars | Blake, Ashley Herring | LC | YF+ BLA | 6/6/2018 | 2 | Tommi |
| | | | | | | |
| | | | | | | |
| | | | | | | |