No. 23-50224

# In the United States Court of Appeals for the Fifth Circuit

LEILA GREEN LITTLE; JEANNE PURYEAR; KATHY KENNEDY; RE-
BECCA JONES; RICHARD DAY; CYNTHIA WARING; DIANE MOSTER,

*Plaintiffs-Appellees,*

v.

LLANO COUNTY; RON CUNNINGHAM, *in his official capacity as
Llano County Judge*; JERRY DON MOSS, *in his official capacity
as Llano County Commissioner*; PETER JONES, *in his official ca-
pacity as Llano County Commissioner*; MIKE SANDOVAL, *in his
official capacity as Llano County Commissioner*; LINDA
RASCHKE, *in her official capacity as Llano County Commis-
sioner*; AMBER MILUM, *in her official capacity as Llano County
Library System Director*; BONNIE WALLACE, *in her official ca-
pacity as Llano County Library Board Member*; ROCHELLE
WELLS, *in her official capacity as Llano County Library Board
Member*; RHODA SCHNEIDER, *in her official capacity as Llano
County Library Board Member*; GAY BASKIN, *in her official ca-
pacity as Llano County Library Board Member*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas
No. 1:22-cv-424-RP

## BRIEF OF STATES OF FLORIDA, TEXAS, ALASKA, ARKANSAS, IDAHO, INDIANA, IOWA, KANSAS, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, OHIO, SOUTH CAROLINA, UTAH, AND WEST VIRGINIA AS AMICI CURIAE IN SUPPORT OF APPELLANTS

KEN PAXTON
  *Attorney General of Texas*
BRENT WEBSTER
  *First Assistant Attorney General*
AARON L. NIELSON
  *Solicitor General*
LANORA C. PETTIT
  *Principal Deputy Solicitor General*

ASHLEY MOODY
  *Attorney General of Florida*
HENRY C. WHITAKER
  *Solicitor General*
NATHAN A. FORRESTER
  *Senior Deputy Solicitor General*
BRIDGET K. O'HICKEY
  *Assistant Solicitor General*

Texas Attorney General's Office
P.O. Box 12548 (MC 059)
Austin, TX 78711-2548
(512) 936-1700
*aaron.nielson@oag.texas.gov*

Florida Attorney General's Office
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*henry.whitaker@myfloridalegal.com*

August 9, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION AND INTEREST OF AMICI CURIAE ...................... 1

ARGUMENT ........................................................................... 3

I.    The selection and removal of public-library materials are government speech. .......................................................... 3

II.   The district court's arguments to the contrary are wrong. ........... 11

CONCLUSION ...................................................................... 17

CERTIFICATE OF COMPLIANCE ......................................... 21

CERTIFICATE OF SERVICE ................................................ 22

# TABLE OF AUTHORITIES

## Cases

*Am. Civil Liberties Union v. Miami-Dade Cnty. Sch. Bd.*,
    557 F.3d 1177 (11th Cir. 2009) ........................................................... 16
*Bd. of Educ. v. Pico*,
    457 U.S. 853 (1982) ..................................................... 3, 13, 15, 16, 17
*Bd. of Regents of Univ. of Wis. Sys. v. Southworth*,
    529 U.S. 217 (2000) ............................................................................. 5
*Campbell v. St. Tammany Parish School Board*,
    64 F.3d 184 (5th Cir. 1995) ..................................................... 12, 13, 16
*Chiras v. Miller*,
    432 F.3d 606 (5th Cir. 2005) ......................................................... 14, 15
*Doe ex rel. Doe v. Governor of N.J.*,
    783 F.3d 150 (3d Cir. 2015) ............................................................... 14
*Johanns v. Livestock Marketing Ass'n*,
    544 U.S. 550 (2005) .................................................... 4, 5, 10, 13
*Little v. Llano Cnty.*,
    103 F.4th 1140 (5th Cir. 2024) ........................................................... 9
*Marks v. United States*,
    430 U.S. 188 (1977) .......................................................................... 15
*Matal v. Tam*,
    582 U.S. 218 (2017) ................................................................ 2, 4, 10
*Murthy v. Missouri*,
    144 S. Ct. 1972 (2024) ...................................................................... 13
*Nat'l Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998) ............................................................................ 4
*Parnell v. Sch. Bd. of Lake Cnty.*,
    No. 4:23-cv-414, 2024 WL 2703762 (N.D. Fla. Apr. 25, 2024) .............. 2
*People for the Ethical Treatment of Animals, Inc. v. Gittens*,
    414 F.3d 23 (D.C. Cir. 2005) ............................................................... 3
*Pleasant Grove City v. Summum*,
    555 U.S. 460 (2009) ......................................... 3, 4, 5, 6, 7, 8, 9, 10, 14
*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) ............................................................................ 4
*Shurtleff v. City of Boston*,
    596 U.S. 243 (2022) ......................................................... 4, 6, 7, 8, 10

*Stromberg v. California,*
   283 U.S. 359 (1931) .................................................................. 5
*United States v. Am. Libr. Ass'n, Inc. (ALA),*
   539 U.S. 194 (2003) ...................................... 6, 7, 9, 11, 13, 14
*Walker v. Texas Div., Sons of Confederate Veterans, Inc.,*
   576 U.S. 200 (2015) ......................................... 4, 5, 7, 10, 14

**Statutes**

24 Pa. Stat. and Cons. Stat. § 9318(f) .......................................... 8
29 R.I. Gen. Laws § 29-4-6 ........................................................... 8
29 R.I. Gen. Laws § 29-4-7 ........................................................... 8
75 Ill. Comp. Stat. 10/7 ................................................................. 8
Ala. Code § 11-90-3(a) ................................................................. 8
Ariz. Rev. Stat. § 11-901 .............................................................. 8
Ariz. Rev. Stat. § 11-909.A. ........................................................ 8
Ark. Code § 13-2-401(a) ............................................................... 8
Cal. Educ. Code § 19100 .............................................................. 8
Cal. Educ. Code § 19146 .............................................................. 8
Colo. Rev. Stat. § 24-90-122(2) .................................................... 8
Conn. Gen. Stat. § 11-21 .............................................................. 8
Del. Code tit. 9, § 801 ................................................................... 8
Ga. Code § 20-5-23 ....................................................................... 8
Ga. Code § 20-5-43 ....................................................................... 8
Idaho Code § 33-2607 .................................................................... 8
Idaho Code § 33-2608 .................................................................... 8
Idaho Code § 33-2616 .................................................................... 8
Ind. Code § 36-12-3-3 .................................................................... 8
Ind. Code § 36-12-6-3 .................................................................... 8
Iowa Code § 336.8 ......................................................................... 8
Kan. Stat. § 12-1225 ...................................................................... 8
Ky. Rev. Stat. § 173.520(1) ........................................................... 8
La. Stat. § 25:215(A) ..................................................................... 8
La. Stat. § 25:234 .......................................................................... 8
Mass. Gen. Laws ch. 78, § 11 ....................................................... 8
Mass. Gen. Laws ch. 78, § 15 ....................................................... 8
Me. Rev. Stat. tit. 27, § 101 .......................................................... 8
Mich. Comp. Laws § 397.155 ........................................................ 8

Mich. Comp. Laws § 397.182.................................................................8
Mich. Comp. Laws § 397.205.................................................................8
Minn. Stat. § 134.11 ............................................................................8
Miss. Code § 39-3-17(1) .......................................................................8
Miss. Code § 39-3-17(2) .......................................................................8
Mo. Stat. § 182.200 .............................................................................8
Mont. Code § 22-1-309 .........................................................................8
N.C. Gen. Stat. § 153A-263 ..................................................................8
N.C. Gen. Stat. § 153A-266 ..................................................................8
N.D. Cent. Code § 40-38-04 ..................................................................8
N.H. Rev. Stat. § 202-A:6 .....................................................................8
N.H.Rev. Stat. § 202-A:11 .....................................................................8
N.J. Stat. § 40:54-12 ............................................................................8
N.M. Stat. § 3-18-14 ............................................................................8
Neb. Rev. Stat. § 51-207 .......................................................................8
Neb. Rev. Stat. § 51-211(1) ...................................................................8
Neb. Rev. Stat. § 51-211(2) ...................................................................8
Nev. Rev. Stat.§ 379.025 ......................................................................8
Ohio Rev. Code § 3375.40(A) ................................................................8
Ohio Rev. Code § 3375.40(B) ................................................................8
Okla. Stat. tit. 11, § 31-104 ...................................................................8
Okla. Stat. tit. 11, § 31-105 ...................................................................8
Or. Rev. Stat. § 357.410 .......................................................................8
Or. Rev. Stat. § 357.490 .......................................................................8
S.C. Code § 4-9-36(2) ..........................................................................8
S.C. Code § 4-9-36(3) ..........................................................................8
S.D. Codified Laws § 14-2-40(1) ............................................................8
S.D. Codified Laws § 14-2-42(4) ............................................................8
Tenn. Code § 10-3-104 .........................................................................8
Tex. Local Gov. Code § 323.005(c) .........................................................8
Utah Code § 9-7-404 ............................................................................8
Utah Code § 9-7-504 ............................................................................8
Va. Code § 42.1-35 ..............................................................................8
Vt. Stat. tit. 22, § 105 ..........................................................................8
Vt. Stat. tit. 22, § 143 ..........................................................................8
W. Va. Code § 10-1-6(c) .......................................................................8
Wash. Rev. Code § 27.12.210(9) ............................................................8
Wis. Stat. § 43.58(1) ............................................................................8

Wyo. Stat. § 18-7-103(a) ............................................................... 8

**Other Authorities**

*A History of US Public Libraries: First Public Libraries*, Digital Public
   Library of America, bit.ly/3YyEreI (last visited Aug. 6, 2024) ........... 11
Francis K.W. Drury, *Book Selection* (1930),
   bit.ly/3WyPFO0 ................................................................. 11, 12
U.S. Dep't of the Interior, *Public Libraries in the United States of
   America: Their History, Condition, and Management* (1876),
   bit.ly/4dcouzw .................................................................... 11
W. Katz, *Collection Development: The Selection of Materials for
   Libraries* (1980) ..................................................................... 9

**INTRODUCTION AND INTEREST OF AMICI CURIAE**

This case presents the question whether the First Amendment restricts a county's decision to remove such books from its public library as *Larry the Farting Leprechaun* and *Gary the Goose and His Gas on the Loose*:

 

It is incontestable that patrons of a public library have no First Amendment right to compel a librarian to *purchase* any particular book. Nevertheless, the district court ruled that patrons have the right to prevent a librarian from *removing* particular books, reasoning that the First Amendment requires public libraries to demonstrate that any "content-based" decisions regarding what books it offers are "narrowly tailored to serve a compelling interest"—even decisions concerning "children's

picture books . . .depict[ing] bodily functions in a humorous . . . cartoon format." ROA.3528, ROA.3508. The court was wrong.

The county's decisions over which books to offer its patrons in its public libraries, at its own expense, are its own speech. Because "[w]hen a government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others," the government does not violate anyone's free-speech rights merely by speaking—no matter what it chooses to say or not to say. *Matal v. Tam*, 582 U.S. 218, 234 (2017).

Amici States of Florida, Texas, Alaska, Arkansas, Idaho, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, South Carolina, Utah, and West Virginia have an interest in preventing federal courts from second-guessing state and local governments' decisions about which materials to include in their public libraries—an issue that regrettably is the subject of considerable litigation in other federal courts. *See, e.g.*, *GLBT Youth in Iowa Sch. Task Force v. Reynolds*, No. 24-1075 (8th Cir. 2024); *Parnell v. Sch. Bd. of Lake Cnty.*, No. 4:23-cv-414, 2024 WL 2703762, at *1 (N.D. Fla. Apr. 25, 2024). The Court should reject the district court's decision to countermand the county's discretion in managing the content of its public libraries, thereby

turning a matter historically left to local democratic process into a federal issue settled by lawyers and judges in courtrooms far removed from the community the relevant library was created to serve.

## ARGUMENT

The Court should reverse because the selection and the removal of public-library materials are government speech that the Free Speech Clause of the First Amendment does not address.

## I.    The selection and removal of public-library materials are government speech.

The district court held that plaintiffs-appellees were likely to succeed on their viewpoint- and content-based discrimination claims because "[a]lthough libraries are afforded great discretion for their selection and acquisition decisions, the First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination." ROA.3523 (citing *Bd. of Educ. v. Pico*, 457 U.S. 853, 871 (1982) (plurality opinion)). But the selection of public-library materials is government speech, *see People for the Ethical Treatment of Animals, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005), and "[t]he Free Speech Clause . . . does not regulate government speech," *Pleasant Grove City v. Summum*, 555

U.S. 460, 467 (2009) (citing *Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550, 553 (2005)).

**A.** The government may "regulate the content of . . . its own message," *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995), including when it speaks through the discretionary selection, commission, purchase, or compilation of materials for presentation to the public. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 586 (1998) (government has discretion to make content-based judgments when selecting art for funding); *Summum*, 555 U.S. at 470–73.

This principle extends to presentation of viewpoint as well. "When the government encourages diverse expression—say, by creating a forum for debate—the First Amendment prevents it from discriminating against speakers based on their viewpoint." *Shurtleff v. City of Boston*, 596 U.S. 243, 247 (2022) (citing *Rosenberger*, 515 U.S. at 828–30). "But when the government speaks for itself, the First Amendment does not demand airtime for all views." *Id.* at 247–48. "After all, the government must be able to 'promote a program' or 'espouse a policy' in order to function." *Id.* at 248 (quoting *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208 (2015)); *accord Matal*, 582 U.S. at 234

4

(discussing the limits of the doctrine but recognizing that "a requirement of viewpoint-neutrality on government speech would be paralyzing").

That principle recognizes that "it is the democratic electoral process that first and foremost provides a check on government speech." *Walker*, 576 U.S. at 207 (citing *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 235 (2000)). Indeed, much of the theory behind the Free Speech Clause is that by "produc[ing] informed opinions among members of the public," it will produce an electorate "able to influence the choices of a government that, through words and deeds, will reflect its electoral mandate." *Id.* (citing *Stromberg v. California*, 283 U.S. 359, 369 (1931)). "If the citizenry objects," they can vote the offending official out of office, and "newly elected officials later could espouse some different or contrary position." *Southworth,* 529 U.S. at 235; *accord, e.g., Johanns*, 544 U.S. at 553 (contrasting constitutional status of private and government speech). This is no less true for the selection and removal of library materials than for any other kind of government speech.

In *Summum*, for example, the Supreme Court held that the selection of monuments for a public park was government speech, even when the monuments were funded or donated by private parties. 555 U.S. at

470–73. "Government decisionmakers select[ed] the monuments that portray[ed] what they view[ed] as appropriate for the place in question, taking into account such content-based factors as esthetics, history, and local culture." *Id.* at 472. Accordingly, the "decision to accept certain privately donated monuments while rejecting" others was "government speech." *Id.* at 481. Critically, the government was not required to "maintain viewpoint neutrality" in making that decision. *Id.* at 479. And because these same "principles . . . also apply to a public library's exercise of judgment in selecting the material it provides to its patrons," *United States v. Am. Libr. Ass'n, Inc. (ALA)*, 539 U.S. 194, 205 (2003) (plurality opinion), collection decisions are also government speech.

**B.** The three-factor test that the Supreme Court has established for determining whether a particular expressive activity constitutes government speech confirms that library-selection decisions are indeed government speech. Those factors are "the history of the expression at issue; the public's likely perception as to who . . . is speaking; and the extent to which the government has actively shaped or controlled the expression." *Shurtleff*, 596 U.S. at 252. All three compel the conclusion that the government is speaking when it selects or removes public-library books.

*First*, the government "actively control[s]" the selection and removal of library books. *Id.* at 256. In *Summum*, the Supreme Court explained that the City "'effectively controlled' the messages sent by the monuments in the Park" because it exercised "'final approval authority' over their selection." 555 U.S. at 473. Specifically, it "selected th[e] monuments that it want[ed] to display for the purpose of presenting the image of the City that it wish[ed] to project," took "ownership" of the monuments, and "set forth the criteria it [would] use in making future selections." *Id.* It did not matter that the City did "not design[] or buil[d]" the monuments—it was enough that the City accepted and displayed them. *Id.* at 472–73; *see also, e.g.*, *Walker*, 576 U.S. at 212 ("including the designs that Texas adopts on the basis of proposals made by private individuals and organizations" among the license plates deemed government speech).

Public libraries, like the Llano County Library, are no different. When the government selects library materials to make available in a public library, it conveys that, in its view, those materials are of the "requisite and appropriate quality" and will "be of the greatest direct benefit or interest to the community." *ALA*, 539 U.S. at 204 (plurality opinion)

(quotations omitted). The government, through public-library staff, effectively controls this message because it both funds and exercises final approval authority over book selection. *See, e.g.*, Tex. Local Gov. Code § 323.005(c) (stating that the county librarian "shall determine which books and library equipment will be purchased"). Many states have similar statutory schemes, empowering a city or county librarian or library board to establish and maintain a public library.[1]

*Second,* "the public would tend to view the [collection of books selected for a county library] as the government's" speech. *Shurtleff*, 596 U.S. at 255. Again, in *Summum*, the Court remarked that "property owners" do "not common[ly] . . . open up their property for the installation of

---

[1] Ala. Code § 11-90-3(a); Ariz. Rev. Stat. §§ 11-901, 11-909.A.; Ark. Code § 13-2-401(a); Cal. Educ. Code §§ 19100, 19146; Colo. Rev. Stat. § 24-90-122(2); Conn. Gen. Stat. § 11-21; Del. Code tit. 9, § 801; Ga. Code §§ 20-5-23, 20-5-43; Idaho Code §§ 33-2607, 33-2608, 33-2616; 75 Ill. Comp. Stat. 10/7; Ind. Code §§ 36-12-3-3, 36-12-6-3; Iowa Code § 336.8; Kan. Stat. § 12-1225; Ky. Rev. Stat. § 173.520(1); La. Stat. §§ 25:215(A), 25:234; Me. Rev. Stat. tit. 27, § 101; Md. Code, Educ. § 23-405(c), (d); Mass. Gen. Laws ch. 78, §§ 11, 15; Mich. Comp. Laws §§ 397.155, 397.182, 397.205; Minn. Stat. § 134.11; Miss. Code § 39-3-17(1), (2); Mo. Stat. § 182.200; Mont. Code § 22-1-309; Neb. Rev. Stat. §§ 51-207, 51-211(1), (2); Nev. Rev. Stat.§ 379.025; N.H. Rev. Stat. §§ 202-A:6, 202-A:11; N.J. Stat. § 40:54-12; N.M. Stat. § 3-18-14; N.C. Gen. Stat. §§ 153A-263, 153A-266; N.D. Cent. Code § 40-38-04; Ohio Rev. Code § 3375.40(A), (B); Okla. Stat. tit. 11, §§ 31-104, 31-105; Or. Rev. Stat. §§ 357.410, 357.490; 24 Pa. Stat. and Cons. Stat. § 9318(f); 29 R.I. Gen. Laws §§ 29-4-6, 29-4-7; S.C. Code § 4-9-36(2), (3); S.D. Codified Laws §§ 14-2-40(1), 14-2-42(4); Tenn. Code § 10-3-104; Utah Code §§ 9-7-404, 9-7-504; Vt. Stat. tit. 22, §§ 105, 143; Va. Code § 42.1-35; Wash. Rev. Code § 27.12.210(9); W. Va. Code § 10-1-6(c); Wis. Stat. § 43.58(1); Wyo. Stat. § 18-7-103(a).

permanent monuments that convey a message with which they do not wish to be associated." 555 U.S. at 471. And for that reason, "persons who observe [those] monuments routinely—and reasonably—interpret them as conveying some message on the property owner's behalf." *Id.*

So too here. People know that publicly employed librarians, not patrons, select library materials for a purpose. That purpose is not that the government necessarily endorses every word on every page of every book in its collection, but that the materials it makes available are, in its view, of the "requisite and appropriate quality" and will "be of the greatest direct benefit or interest to the community." *ALA*, 539 U.S. at 204 (plurality opinion) (quotations omitted); *see also id.* ("The librarian's responsibility . . . is to separate out the gold from the garbage, not to preserve everything." (quoting W. Katz, *Collection Development: The Selection of Materials for Libraries* 6 (1980))).

Library books may lack the permanence of the stone monuments in *Summum*, but as the panel recognized, they can be held for many years until they have been "worn out beyond mending or rebinding" or "[s]uperseded by a new edition or a better source." *Little v. Llano Cnty.*, 103 F.4th 1140, 1144 (5th Cir. 2024) (quotations omitted). The Court has found *far*

more transitory communications to be government speech, where the "public would tend to view the speech . . . as the government's." *Shurtleff*, 596 U.S. at 255; *cf. Walker*, 576 U.S. at 217 (explaining that "Texas vehicle owners must pay annual fees in order to display specialty license plates"); *Johanns*, 544 U.S. at 555, 560 (explaining that beef advertisements, "including print and television messages," were government speech); *accord Matal*, 582 U.S. at 234–35 (acknowledging that "posters to promote the war effort" during World War II were "essential" government speech). For the reasons just discussed, the "presence and position" of these books in a county library—a prominent building in many smaller communities—"convey[s] important messages about government" and its views on their social and literary value. *Shurtleff*, 596 U.S. at 254.

*Third* and finally, "the history of the expression at issue," *id.* at 252, supports that the selection and removal of public-library books are government speech. This factor favored the city in *Summum* because "[g]overnments have long used monuments to speak to the public." 555 U.S. at 470. The same is true of library books. Governments have long exercised control over the selection of public-library materials, conveying the message that the chosen materials are of the "requisite and

10

appropriate quality" and will most benefit and interest the community. *ALA*, 539 U.S. at 203–04 (plurality opinion). "Public libraries," meaning those that are board-governed and tax-funded, "began spreading in earnest in American towns and cities after the Civil War." *A History of US Public Libraries: First Public Libraries*, Digital Public Library of America, bit.ly/3YyEreI (last visited Aug. 6, 2024). And even 19th and early 20th century public-library collections were to be "carefully selected by the directors, or their library committees." U.S. Dep't of the Interior, *Public Libraries in the United States of America: Their History, Condition, and Management* 479 (1876), bit.ly/4dcouzw; *see also* Francis K.W. Drury, *Book Selection* 292 (1930), bit.ly/3WyPFO0 (explaining that "[a] public library is generally administered by a board of trustees, created as a result of a library law of the state," which has "the responsibility . . . [to] establish[], maint[ain], and manage[] . . . the library").

## II.  The district court's arguments to the contrary are wrong.

None of the reasons the district court advanced for concluding the contrary persuade.

**A.** The district court rejected the government-speech argument, and distinguished many of the precedents above, on the ground that they

"mostly involve the initial selection[] not removal of materials."
ROA.3520. But there is no reason to treat initial-selection decisions differently from later-removal decisions. The selection of some books necessarily excludes others. *See* Francis K.W. Drury, *Book Selection* 293 (1930), bit.ly/3WyPFO0 ("Physical and financial limitations prohibiting the purchase of everything, choice must be made of the items which are most suitable."). And the timing of when a book is excluded—at the outset or sometime later—should not alter the analysis of whether its exclusion is constitutionally permissible. Selection and removal decisions are based on the same considerations and bear the same three indicators of government speech: government control, public perception, and historical practice.

**B.** The district court supported its distinction between book selection and removal decisions with *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995). There, the Court held that the First Amendment prohibits school officials from "remov[ing] books from school library shelves simply because they dislike the ideas contained in those books." 64 F.3d at 188 (quotation omitted).

In doing so, the Court took "guidance," *id.* at 189, from a right-to-receive-information theory that garnered only three votes in *Board of Education v. Pico*, 457 U.S. 853, 863–69 (1982) (Part II.A.1 of plurality opinion; Brennan, J., joined by Marshall and Stevens, JJ.); *id.* at 878–79 (Blackmun, J., concurring in part and concurring in the judgment; not joining Part II.A.1); *id.* at 883–84 (White, J., concurring in judgment only). But *Campbell* was decided in 1995 before the Supreme Court's guidance in *ALA*, 539 U.S. at 205 (plurality opinion), explaining that public-library staff enjoy broad discretion in making collection decisions. *Campbell* was also decided about ten years before the Court formally recognized the government-speech doctrine in *Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550 (2005). And it was decided nearly thirty years before the Court responded to "startlingly broad" assertions of the right to hear by clarifying that such a theory applies "only where the listener has a concrete, specific connection to the speaker." *Murthy v. Missouri*, 144 S. Ct. 1972, 1996 (2024).

For the reasons explained above, Supreme Court precedent now makes clear that the selection of public-library materials is government speech. Because book-selection and -removal decisions are government

speech, public-library patrons have no right to speak through those decisions. And since public-library patrons have no right to speak through those decisions, they also have no reciprocal right to receive information to compel the government to make a different decision. *See, e.g.*, *Doe ex rel. Doe v. Governor of N.J.*, 783 F.3d 150, 155 (3d Cir. 2015) ("[A] listener's right to receive information is reciprocal to the speaker's right to speak."). Holding otherwise would be equivalent to saying that motorists have a constitutional right to see vanity license plates of their choosing, or that tourists have a right to view public monuments that align with their preferred message—even if the government may constitutionally decline to offer such a license plate, *see Walker*, 576 U.S. at 210–14, or erect such a monument, *see Summum*, 555 U.S. at 470–73. That is not the law.

*Campbell* also clashes with this Court's subsequent decision in *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005). In *Chiras*, the Court recognized that under *ALA*, "public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them." 432 F.3d at 614 (quoting *ALA*, 539 U.S. at 205 (plurality opinion)); *see also ALA*, 539 U.S. at 204 (plurality opinion); *id.* at 217 (Breyer, J.,

concurring in the judgment) (discussing "the discretion necessary to create, maintain, or select a library's 'collection'"). Though *Chiras* concerned "the selection of curricular materials," which this Court determined to be government speech, 432 F.3d at 618, the broad discretion afforded libraries under *ALA* and recognized in *Chiras* applies with at least the same force in the library context. Because *Campbell* was decided without the benefit of *ALA* or the Supreme Court's now-established government-speech jurisprudence, the en banc Court should overrule *Campbell*, consistent with *Chiras*.

**C.** The Supreme Court's decision in *Pico* does not support the preliminary injunction entered below either.

In *Pico*, a plurality concluded that removing a book from a school library would violate students' First Amendment right to receive information and ideas, if the "decisive factor" motivating the removal was to deny access to ideas with which the officials disagreed. 457 U.S. at 867–68, 871 (plurality opinion). To the extent that opinion produced binding law, however, that would be true only by virtue of Justice White's opinion concurring only in the judgment, which provided the fifth vote for the result in the case. *See Marks v. United States*, 430 U.S. 188, 193 (1977);

*Campbell*, 64 F.3d at 189 ("Justice White's concurrence in *Pico* represents the narrowest grounds for the result in that case . . . ."). And Justice White was willing to affirm the denial of summary judgment to the school board in *Pico* only because he thought there remained triable issues of fact that might obviate the need to engage in any First Amendment analysis. *See* 457 U.S. at 883–84 (White, J., concurring in the judgment). His concurrence refused to opine about any of the First Amendment issues discussed in Justice Brennan's plurality opinion. *See id*. And that narrow, fact-bound procedural ruling, which failed to garner more than one vote, has no bearing on the First Amendment issues presented in this case. *See Am. Civil Liberties Union v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1200 (11th Cir. 2009) (noting that "*Pico* is of no precedential value as to the application of the First Amendment" to public-school-library removal decisions) (cleaned up)).

The *Pico* plurality opinion is therefore useful only insofar as it is persuasive, and time has not been kind to its reasoning. The plurality thought that a public official could not constitutionally remove a book from a public library based on a motive to suppress "ideas with which" the official disagreed. *Pico*, 457 U.S. at 871 (plurality opinion). At the

same time, the opinion apparently agreed that such officials did have constitutional "discretion . . . to choose books to *add* to the libraries of their schools." *Id.* Like the district-court decision below, however, the opinion provided no coherent "theory" for distinguishing "a school board's decision to remove a book from the library" from its "decision not to purchase that identical book." *Id.* at 895 (Powell, J., dissenting). And there is none. "The failure of a library to acquire a book denies access to its contents just as effectively as does the removal of the book from the library's shelf." *Id.* at 916 (Rehnquist, J., dissenting, joined by Burger, C.J., and Powell, J.). The *Pico* plurality's unsound reasoning should be interred, not extended.

## CONCLUSION

The Court should reverse and vacate the preliminary injunction.

Dated: August 9, 2024

Respectfully submitted,

KEN PAXTON
  *Attorney General of Texas*

BRENT WEBSTER
  *First Assistant Attorney General*

*/s/ Aaron L. Nielson*
AARON L. NIELSON
  *Solicitor General*
LANORA C. PETTIT
  *Principal Deputy Solicitor*
  *General*
Texas Attorney General's Office
P.O. Box 12548 (MC 059)
Austin, TX 78711-2548
(512) 936-1700
*aaron.nielson@oag.texas.gov*

*Counsel for Amicus Curiae State of Texas*

ASHLEY MOODY
  *Attorney General of Florida*

*/s/ Henry C. Whitaker*
HENRY C. WHITAKER
  *Solicitor General*
NATHAN A. FORRESTER
  *Senior Deputy Solicitor General*
BRIDGET K. O'HICKEY
  *Assistant Solicitor General*

Florida Attorney General's Office
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
*henry.whitaker@myfloridale-gal.com*

*Counsel for Amicus Curiae State of Florida*

*Amici Curiae*

Treg Taylor
Attorney General of Alaska

Tim Griffin
Attorney General of Arkansas

Raúl R. Labrador
Attorney General of Idaho

Theodore E. Rokita
Attorney General of Indiana

Brenna Bird
Attorney General of Iowa

Kris W. Kobach
Attorney General of Kansas

Liz Murrill
Attorney General of Louisiana

Lynn Fitch
Attorney General of Mississippi

Andrew Bailey
Attorney General of Missouri

Austin Knudsen
Attorney General of Montana

Michael T. Hilgers
Attorney General of Nebraska

Drew Wrigley
Attorney General of North Dakota

Dave Yost
Attorney General of Ohio

Alan Wilson
Attorney General of South Carolina

Sean Reyes
Attorney General of Utah

Patrick Morrisey
Attorney General of West Virginia

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limits of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 3,456 words.

2.    This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Henry C. Whitaker*
Solicitor General

## CERTIFICATE OF SERVICE

I certify that on August 9, 2024, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Henry C. Whitaker*
Solicitor General
